Lawrence Hinkle (SBN 180551)
lhinkle@sandersroberts.com
Stephanie Jones Nojima (SBN 178453)
sjonesnojima@sandersroberts.com
Matthew Barzman (SBN 309063)
mbarzman@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for Plaintiffs
**HIDDEN EMPIRE HOLDINGS, LLC;**
**HYPER ENGINE, LLC; AND DEON**
**TAYLOR**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE, LLC formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS, LLC, a Florida limited liability company, <br><br> Defendants. | **CASE NO.** <br><br> **COMPLAINT FOR** <br><br> 1. **BREACH OF CONTRACT** <br><br> 2. **VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. §§1030(a)(2)(C) & (a)(5))** <br><br> 3. **VIOLATION OF COMPUTER DATA ACCESS AND FRAUD ACT (CAL. PENAL CODE § 502)** <br><br> 4. **CONVERSION** <br><br> 5. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)** <br><br><br> **DEMAND FOR JURY TRIAL** |

## I.   **INTRODUCTION**

1.     Defendant Darrick Angelone is a former information technology contractor to Plaintiffs who, through the defendant corporate entities he owns, has brazenly hijacked Plaintiffs' corporate email, websites, domains and social media accounts, effectively preventing Plaintiffs from using or controlling their own intellectual property or running their businesses.   Defendants further damaged Plaintiffs by infringing on the valid copyright associated with Plaintiffs' movie titled "Fear"  by using expressions from the film to create a video game and non functional tokens ("NFTs") for their  own benefit and without a valid license to use fottage from the film or exploit the unique characters in the film.  Defendants AOne Creative, LLC and On Chain Innovations, LLC are the companies owned by Darrick Angelone under which he perpetrated the subject unlawful acts.

2.     Plaintiffs bring this action to stop defendants' hijacking of their intellectual property, stop defendants' unlawful infringement of Plaintiffs' protected work, and to recover injunctive relief, damages, costs and attorneys fees, and other available relief.

## II.   **THE PARTIES**

3.     Plaintiff Hidden Empire Holdings, LLC ("HEFG") is a limited liability company formed under the laws of the state of Delaware that does business in Los Angeles, California. HEFG is an independent film studio that has produced numerous successful movies that have been distributed nationally and internationally to critical acclaim. HEFG has two members, Plaintiff Deon Taylor and his wife, Roxanne Taylor, both of whom do business in Los Angeles County, California.  HEFG also produces "Black History in Two Minutes," a series of brief episodes about the African-American experience narrated by Henry Louis Gates, Jr. and published on YouTube and Facebook.  HEFG also has  initiatives called BeWoke.Vote which aims to encourage younger generations to vote and become educated about politics, Together We Will Save Lives, where it partners with the Conference of National



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**COMPLAINT**

Case No.:

Black Churches in philanthropic endeavors, and "The Black Chair Show" where Deon Taylor interviews other celebrities about empowerment behaviors.  HEFG also runs the CLIMB Organization, a non-profit that mentors inner-city youth to help them excel and pursue their dreams. HEFG's website address is www.hiddenempirefilmgroup.com (the "HEFG  Website").

4.     Plaintiff Hyper Engine LLC ("Hyper Engine") is a limited liability company formed under the laws of the State of California that does business in Los Angeles, California. Hyper Engine is a branding and marketing agency that specializes in reaching diverse audiences.  Hyper Engine serves as the marketing agency for HEFG as well as its films and initiatives.  Plaintiff Deon Taylor is the founding member of Hyper Engine and Roxanne Taylor manages its day-to-day operations.

5.     HEFG, Hyper Engine and Deon Taylor hold the rights to prosecute this action to recover the intellectual property rights associated with the domains/websites/emails/social media properties that are the subject of this Complaint.

6.     Plaintiffs HEFG and Hyper Engine maintain an office at 1657 12th Street, Santa Monica, California, 90404.

7.     Plaintiff Deon Taylor ("Deon" or "Taylor") is an individual who does business in Los Angeles County, California.  HEFG, Hyper Engine and Taylor are sometimes collectively referred to herein as the "Plaintiffs."

8.     Defendant Darrick Angelone ("Angelone") is an individual.  Plaintiffs are informed and believe that Angelone resides in Los Angeles County, California. Plaintiffs are further informed and believe that Angelone is a managing member of Defendants AOne Creative LLC ("AOne") and On Chain Innovations LLC ("On Chain") and at all times was acting as an agent, alter ego, or representative in doing all of the acts described herein and acting within the course and scope of such agency, alter ego, or representative capacity.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

9. Plaintiffs further allege that Angelone used AOne and On Chain as a shield to perpetrate the wrongful and illegal acts alleged herein, and there is such unity of interest and ownership between them that separate personalities of Angelone, AOne and OnChain do not in reality exist.

10. If the wrongful acts in question are treated only as those of AOne and On Chain alone, an inequitable result will occur because Angelone is solely responsible for the wrongful and illegal acts alleged herein.

11. Defendant AOne was formerly known as AOne Entertainment, LLC and is a limited liability company formed under the laws of Florida. Plaintiffs are informed and believe that Angelone and his wife Laura Angelone are the sole members of AOne. AOne does business in Los Angeles County, California.

12. Defendant On Chain is a limited liability company formed under the laws of Florida. Plaintiffs are informed and believe that Angelone is the sole member and manager of On Chain. On Chain does business in Los Angeles County, California. Plaintiffs are further informed and believe that Angelone created Defendant On Chain for the sole purpose of infringing on HEFG's valid trademarks associated with HEFG's movie titled "Fear" (the "Fear Movie"). Angelone, AOne and On Chain are collectively referred to herein as the "Defendants."

## III. <u>JURISDICTION AND VENUE</u>

13. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 17 U.S.C. § 501 because Plaintiffs allege that Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and infringed on their valid copyrights associated with the Fear Movie. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

14. The Court has personal jurisdiction over all Defendants because they conduct business in California and have contacts with the state that are continuous, systematic, and purposeful such that they are each subject to the personal jurisdiction of this Court.

COMPLAINT
Case No.:

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

15.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## IV.   STATEMENT OF FACTS

### A. The Parties' Independent Contractor Agreement

16.   On or about April 26, 2012, HEFG entity Hidden Empire Film Group LLC entered into a written agreement with AOne Creative's predecessor in interest, AOne Entertainment LLC (the "2012 Agreement"). Through the 2012 Agreement, signed by Angelone on behalf of AOne, HEFG engaged AOne as an independent contractor to design, develop and manage HEFG's websites and related media properties.   Prior to filing this action, Hidden Empire Film Group, LLC assigned all of its rights and obligations in connection with the 2012 Agreement to HEFG.



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

17.   The 2012 Agreement expressly provides that (a) AOne would be paid a fee not to exceed $25,000, for Angelone's services in connection with the design and development of two HEFG websites; (b) HEFG would retain all rights in and to any resulting intellectual property; and (c) all such HEFG intellectual property should be turned over by Angelone/AOne immediately upon demand by HEFG.  Paragraph 11 of the 2012 Agreement, which addresses HEFG's intellectual property rights, states as follows:

> All processes, improvements, formulations, ideas, inventions, designs and discoveries, whether patentable or not (collectively "Discoveries") and all patents, copyrights, trademarks, and other intangible rights (collectively "Intellectual Property Rights") that may be conceived, developed, expressed, or stated by Developer, either alone or with others, during the term in connection with or related to Developer's performances of Services hereunder shall be the sole property of the Client. Developer shall take all action and execute and deliver all agreements, assignments and other

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

documents, including, without limitation, all patent, copyright, and trademark applications and assignments, requested by the Client to establish the Client's rights under this paragraph and to vest in the Client title to all Discoveries and Intellectual Property Rights which are the property of the Client under this paragraph. The Client does not grant any license to Developer to the Client's technology and Confidential Information (as defined herein) or any of the Client's trademarks, copyrights, patents, or trade secrets, provided however that the Client grants to Developer a non-exclusive license to use the Client's registered trademarks to provide the services during the term. Developer acknowledges that the Client's intellectual property remains the exclusive property of the Client. At no time shall Developer own or register for its own benefit or otherwise acquire any rights in the domain names www.lmaocomedyseries.com or www.hiddenempirefilmgroup.com, or any simulations or related domains thereto. To the extent Developer is provided with access thereto or is designated as administrative or technical contact, it shall be for the benefit of Client hereunder and not for the benefit of Developer and any such designations shall be immediately returned or changed to such individuals or entities as are designed by Client upon Client making such demand."

18. In the 2012 Agreement, AOne further agreed that: (a) modifications of the terms of this contract must be written and authorized by both parties; (b) either party could terminate this Agreement by giving 30 days written notice to the other of such termination; and (c) AOne and HEFG are independent parties and nothing in the contract shall constitute either party as the employer, principal or partner of or joint venture with the other party.

COMPLAINT

19. From 2012 through 2022, AOne provided a variety of information technology services to HEFG and its films and initiatives, to Hyper Engine and to Taylor and other representatives of HEFG. The types of services AOne provided included the following: hosting the domains of HEFG and its related entities and Hyper Engine and making sure the domain registrations are current; design, development and maintenance of the HEFG and Hyper Engine websites; maintaining and renewing the registrations for the HEFG Google workspace accounts used for HEFG emails, contacts, calendars, etc.; maintaining the servers that host the HEFG websites; creating social profiles for, posting content on and managing the social media accounts (Instagram, Facebook, Twitter, Linkedin) of HEFG, the HEFG initiatives and the personal accounts of certain HEFG personnel; publishing Hyper Engine content on YouTube, Instagram and Facebook; copywriting; managing paid digital media campaigns and handling digital marketing campaigns for HEFG film releases.

20. AOne served as an independent contractor for HEFG, Hyper Engine and Taylor while performing the foregoing services. Angelone has never been an employee, member, investor, partner or owner of HEFG, its affiliated entities, or Hyper Engine.

21. All of the services provided by AOne outside of the scope of work of the 2012 Agreement over the years were agreed upon by the parties in each instance, based on a rate card provided by AOne.

22. Any time services were provided by AOne, it would send an invoice to HEFG personnel that set forth in detail the work performed and the amount of the fee charged. HEFG has paid in full all of the invoices it has received from AOne. Plaintiffs are informed and believe that there are no services AOne performed for HEFG, its affiliated entities, Hyper Engine or any HEFG personnel for which it has not received payment in full.

///

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**B. <u>The HEFG Domain And The HEFG GoDaddy/Namecheap Accounts</u>**

23. In or about June 11, 2011, HEFG secured the domain hiddenempirefilmgroup.com (the "HEFG Domain") through GoDaddy, a domain registrar and web hosting company. Roxanne Taylor created HEFG's login credentials (e.g., username and password) for a GoDaddy account (the "HEFG GoDaddy Account") that hosted the HEFG Domain.

24. Since securing the HEFG Domain, HEFG has been the owner of it, and it has never agreed to sell, transfer or assign said domain to any other person or non-HEFG entity. Neither Angelone nor AOne ever obtained an ownership interest in the HEFG Domain or the HEFG GoDaddy Account.

25. In late 2012, Angelone requested and was provided the login credentials for the HEFG Domain to perform his website development work under the 2012 Agreement, including the creation of the HEFG Website. Since 2012, AOne has remained in possession of the login credentials to access and control the HEFG GoDaddy Account.

26. At Angelone's urging, HEFG later transferred the HEFG Domain from the HEFG GoDaddy Account to an HEFG account with a company called Namecheap (the "HEFG Namecheap Account"). Namecheap is another domain name registrar providing domain name registration and web hosting. Since creating the HEFG Website and managing the HEFG Domain, Angelone, through AOne, has made further made changes and updates to the HEFG Website and has been the only company managing said website.

27. Unbeknownst to HEFG and without its authorization, Angelone and AOne registered the HEFG Namecheap Account in AOne's name and, despite repeated demands they have refused to provide the current login credentials for the HEFG Namecheap Account to anyone at HEFG.

28. Since Angelone registered the HEFG Domain in AOne's own name on

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Namecheap, HEFG has been unable to recover its domain credentials from Namecheap.

**C. Angelone Starts To Manage All Of The Domains Owned By HEFG, Hyper Engine And HEFG Personnel**

29.   In late 2014, Angelone convinced HEFG to allow AOne to manage all of the HEFG domains (including domains related to the company name and its various businesses as well as its films and initiatives) and the domains for Hyper Engine and HEFG personnel (collectively, the "Domains").

30.   Since 2014, AOne has been responsible securing and/or managing on HEFG's behalf various domains using a variation of the HEFG name including the following Domains:

a.   hiddenempirefilmgroup.com

b.   hiddenempirefilms.com

c.   hiddenempiremediagroup.com

d.   hiddenempiremedia.com

e.   hiddenempirereleasing.com

f.   hiddenempireproductions.com

g.   hiddenempire.productions

h.   hiddenempire.media

i.   hiddenempiremedia.group

j.   hiddenempire.studio

k.   hiddenempire.org

l.   hiddenempireentertainment.com

m.   foreveryoungfabrics.com

n.   hiddenempirestudios.com

o.   hefg.com

p.   hiddenempire.productions

31.   Since 2014, AOne has also been responsible for securing and/or

managing numerous domains related to HEFG films. Those HEFG films and the corresponding Domains are as follows:

      a.   "Fatale" – fatale.movie

      b.   "Intruder" - theintruder.movie

      c.   "Traffik" – traffik.movie and traffikmovie.com

      d.   "Meet the Blacks" – meettheblacksmovie.com and meettheblacksthemovie.com

      e.   "The House Next Door: Meet the Blacks 2" – thehousenextdoor.movie

      f.   "Supremacy" – supremacyfilm.com and supremacymovie.com

      g.   "Fear" - fear.movie and fearthemovie.com

      h.   "Free Agents" - freeagantsmovie.com and freeagents.movie

      i.   "Hoop 2" - hoop2film.com and hooptofilm.com

32.   Since 2014, AOne has also been responsible for securing and/or managing the domains based on the names of HEFG personnel including the following Domains:

      a.   Deon Taylor (HEFG co-founder) – deontaylor.com and deontaylorfilms.com

      b.   Roxanne Avent Taylor (HEFG co-founder) – Aventviii.com.

33.   Since 2014, AOne has been responsible for securing and/or managing the domains related to HEFG initiatives including the following Domains:

      a.   Facts Not Politics – factsnotpolitics.com and factsnotpolitics.org

      b.   Climb – climborganization.org, climb.org and climb.network

      c.   Blackchairshow.com

      d.   Blackhistoryintwominutes.com

      e.   2getherwesavelives.com,togetherwewillsavelives.com, togetherwewillsavelives.com,togetherwewillsavelives.org,and 2getherwewillsavelives.com

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

COMPLAINT

f.   Be.woke.vote

34.   Since 2014, AOne has been responsible for managing the Domains for Hyper Engine including: hyperenginellc.com and hyperengine.ai.

35.   The foregoing Domains were either registered by HEFG itself or HEFG requested that AOne register them on HEFG's behalf and in HEFG's name.

36.   For example, in August 2021, HEFG representative Quincy Newell instructed Angelone to secure the following Domains on behalf of HEFG in anticipation of a potential brand refresh of the company business portfolio: hiddenempiremediagroup.com;hiddenempiremedia.com, hiddenempirereleasing.com, hiddenempireproductions.com, hiddenempire.productions, hiddenempire.media, hiddenempiremedia.group, hiddenempire.studio and hiddenempire.org.  In an August 6, 2021 email, Angelone confirmed that he had secured all of those domains for HEFG.  HEFG has paid for all of the costs associated with securing and maintaining those Domains, and all of the other Domains AOne has secured and/or maintained on HEFG's behalf.

**D. Angelone's Acknowledgment That The Domains Belong To HEFG**

37.   On July 6, 2018, Angelone transmitted a spreadsheet with all of the HEFG related domain and social media accounts as well as the corresponding passwords for those. accounts to HEFG representatives Deon and Roxanne Taylor. In that communication, Angelone acknowledged that the HEFG related Domains and social media accounts belong to HEFG, not AOne.  Angelone further acknowledged in said email the harm that could occur to HEFG's business if "someone with access changes the passwords, email credentials, with malicious intent."

38.   No HEFG representative has ever agreed that Angelone or AOne could own any of the HEFG related Domain or social media or web hosting accounts and there has never been a transfer of ownership of those assets to AOne or Angelone.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

39.     As yet another example, in 2018, Angelone provided marketing services to HEFG and Lionsgate in connection with the release of HEFG's movie titled "Traffik."   A dispute arose between Lionsgate and AOne that implicated HEFG and required that all three parties enter into a settlement agreement.  In a July 19, 2018 email exchange with Deon and Roxanne Taylor concerning settlement of that matter, Angelone again acknowledged that AOne was merely a vendor (as opposed to an owner) providing IT services to HEFG such as managing HEFG's Domains, the HEFG Google Account and HEFG's Social Media accounts.

40.     In an April 22, 2022 email to Deon and Roxanne Taylor discussing marketing for the Fear Movie, Angelone again acknowledged that AOne has always served as a vendor to HEFG, as opposed to being an owner of the subject assets.  In that email he stated: "[w]e are not looking for a financial commitment at this time and indeed HEFG has almost always engaged AONE when the time came and we are very familiar with the processes of HEFG…we are only looking for a commitment to be that *vendor* when the time comes for this project."

**E. Angelone "Locks Out" HEFG, Hyper Engine And HEFG Personnel From Being Able To Access The Domains**

41.     AOne's process for securing and/or maintaining the Domains on HEFG and Hyper Engine's behalf included AOne advancing the costs owed to Namecheap for securing and maintaining the Domains.  After AOne advanced those costs, it sent an invoice to HEFG seeking reimbursement of those costs which invoice was then paid by HEFG.  HEFG has always been responsible for payment of, and has actually paid for, registering and maintaining (e.g., payment of renewal fees) all of the Domains.

42.     In August 2022,  HEFG discovered that Angelone had "locked out" all HEFG personnel from being able to access all of the Domains by changing the login credentials (i.e., usernames and passwords).  This has severely frustrated and damaged HEFG and Hyper Engine's ability to conduct its business.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

43.     In attempting to restore access to the Domains, HEFG and Hyper Engine representatives engaged Angelone and his outside counsel, Darryl Thompson, Esq., in discussions to determine why Angelone locked them out and how to get Angelone to restore their access to the Domains and provide the login credentials.

44.     At that time, Angelone represented to HEFG that access to the Domains would be restored and the credentials would be provided if AOne's outstanding invoices were paid.  In written communications, Angelone's counsel, Mr. Thompson, confirmed that access would be restored if the invoices were paid.

45.     Relying on Angelone's promises, HEFG paid in full all of the invoices Angelone claimed were outstanding.  However, Angelone then reneged on his promises by failing and refusing to restore HEFG's access and provide to HEFG the login credentials to the Domains.

46.     Mr. Thompson subsequently re-confirmed that the access and login credentials should be provided by Angelone. Shortly thereafter, Mr. Thompson resigned as counsel for Angelone and AOne.  Angelone then retained another lawyer, JT Fox, Esq.  During subsequent discussions between Mr. Fox and counsel for Plaintiffs, Mr. Fox represented that Angelone would restore HEFG's access to the HEFG Domains and turn over the login credentials. However, Angelone has continued to refuse to restore HEFG's access and turn over the login credentials to the Domains.

**F.**  **AOne Obtains Control Of The HEFG Google Account And Email System**

47.     Several years ago, Angelone set up HEFG's corporate email system using the Google Workspace (formerly GSuite) tied to the HEFG Domain (the "HEFG Google Account").  As part of AOne setting up the HEFG Google Account, Angelone obtained the login credentials to HEFG's Google Account so he could complete the set up and deployment of the HEFG personnel email addresses on HEFG's behalf.  At that point, Angelone provided Roxanne Taylor with the HEFG

Case No.:

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Google Account login credentials.

48.    After setting up the HEFG Google Account, Angelone created individual email accounts for HEFG personnel and its support team using the HEFG Domain. All of the HEFG email addresses are tied to the HEFG Domain and the HEFG Google Account.

49.    Each individual HEFG email account has been regularly used by HEFG personnel to conduct HEFG business.  Said email accounts have served as the primary method of communicating amongst HEFG personnel and between HEFG personnel and non-HEFG individuals and companies about HEFG business.  HEFG personnel also circulate banking and financial information through their HEFG email accounts, and use their HEFG Google account to store and manage important files like contracts for various HEFG projects.

50.    At some point unknown to HEFG, Angelone changed the login credentials to the HEFG Google Account and he has not provided the new login credentials to HEFG.

### G. Angelone "Locks Out" HEFG Personnel From Being Able To Use The HEFG Email And HEFG Google Account

51.    On or about August 7, 2022, HEFG discovered that Angelone had "locked out" all HEFG personnel from being able to access, send, or receive HEFG emails or control and use the HEFG Google Account.

52.    From August 7, 2022 to the present, HEFG personnel have been unable to access emails previously sent to their email accounts, write or receive new emails, access any documents in their email accounts (e.g., contracts), or otherwise access any other information stored in HEFG emails or Google Account.

53.    Since learning that Angelone "locked out" HEFG personnel from their emails, representatives of HEFG have made repeated demands that Angelone "unlock" the emails so that HEFG personnel could access their email accounts and turn over to HEFG the pertinent login credentials for the HEFG Google Account that

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

would allow for HEFG to take over control of and use its email system. Despite repeated demands by HEFG, and representations from Angelone's counsel that access would be restored, Angelone has refused to provide any of the login credentials to HEFG or restore email access to any HEFG personnel.

54.     Angleone's actions of shutting off HEFG's email access and refusing to turn over the HEFG Google Account credentials have severely frustrated and damaged HEFG's ability to conduct its business, and caused it to lose out on important business opportunities.

### H. Angelone's Management Of All Of The Social Media Accounts Owned By HEFG, Hyper Engine And HEFG Personnel

55.     In or around December 2014, Angelone convinced HEFG to create and allow AOne to manage the social media accounts for HEFG, Hyper Engine and the HEFG films and initiatives.

56.     On October 22, 2015, Roxanne Taylor provided Angelone with the log-in credentials (i.e., usernames and passwords) for several social media accounts owned by HEFG, which Angelone then began managing.

57.     HEFG currently owns the following social media accounts:

a.     hiddenempirefilmgroup (related to the HEFG company name)– Facebook, Instagram, Twitter and Linkedin

b.     Blackhistoryintwominutes (related to a HEFG production) – Facebook, Instagram, YouTube, Apple Podcast, Twitter and Linkedin.

c.     Be.Woke.Vote (related to a HEFG initiative) – Facebook, Instagram, YouTube, Twitter.

d.     Climb.organization (related to a HEFG initiative) - Facebook, Instagram, YouTube, Twitter.

e.     Fear.movie (related to a HEFG film) - Facebook, Instagram, YouTube, Twitter.

f.     Fatalemovie (related to a HEFG film) - Facebook, Instagram, YouTube,

1    Twitter.

2           g.      Meet_the_blacks (related to a HEFG film) - Facebook, Instagram,

3    YouTube, Twitter.

4           h.      Theintrudermovie (related to a HEFG film) - Facebook, Instagram,

5    YouTube, Twitter.

6           i.      Traffikmovie (related to a HEFG film) - Facebook, Instagram, YouTube,

7    Twitter.

8           j.      Supremacy.movie (related to a HEFG film) - Facebook, Instagram,

9    YouTube, Twitter. The foregoing are collectively referred to herein as the "HEFG

10   Social Media Accounts").

11          58.     Each of the foregoing HEFG Social Media Accounts have login

12   credentials (i.e., usernames and passwords) as well as administrator rights credentials.

13   HEFG has either provided to AOne or AOne has created all of the credentials

14   necessary to access and control said social media accounts.



15   **I.   Angelone Has "Locked Out" HEFG, Hyper Engine And**

16          **HEFG Personnel From Being Able To Access The HEFG**

17          **Social Media Accounts**

18          59.     At some point unknown to HEFG, Angelone changed the login

19   credentials for all of the HEFG Social Media Accounts provided to it by HEFG.

20   Neither Angelone or AOne have provided the current credentials for said Social

21   Media Accounts to anyone at HEFG, despite repeated demands that they be turned

22   over, and despite representations from his counsel that the credentials would be turned

23   over.

24   **J.   Angelone's Unauthorized Use OfThe HEFGSocial Media**

25          **Accounts To Promote AOne**

26          60.     After locking HEFG out of the HEFG Social Media Accounts, Angelone

27   began posting content to HEFG's Social Media Accounts promoting his Unauthorized

28   Fear Game (defined below) based on the Fear Movie.  HEFG has not authorized

1   Angelone to make any of those posts.

2   61.   On September 6, 2022, Angelone removed an image HEFG had

3   authorized to be on its Instagram account and replaced it with AOne's logo, all

4   without HEFG's authorization.  In addition, Angelone added text next to his post of

5   that logo which states:  "brought to you by." By adding that text, Angelone is implying

6   that AOne has an ownership interest in HEFG.

7   62.   Angelone reposted that unauthorized Instagram post on HEFG's Twitter

8   account, and also used his AOne Twitter account to like the post, again implying he

9   has an ownership interest in HEFG.

10   63.   These actions by Angelone are very damaging to HEFG's business and

11   are harmful to its relationships with its actual business partners.

12   **K.   Angelone's   Unauthorized   Fear Game Based On The Fear**

13   **Movie**

14   64.   HEFG completed its production of the Fear Movie in or about July, 2020,

15   with a copy of the film being "fixed" at that time.  A teaser video for the film was

16   released in January, 2022.

17   65.   The Fear Movie introduces several unique characters; including "Rom"

18   played by Joseph Sikora, "Benny," played by Andrew Bachelor, "Russ," played by

19   Terrence Jenkins, "Bianca," played by Annie Ilonzeh, "Kim," played by Tyler Abron,

20   "Michael," played by Iddo Goldberg, "Meg," played by Jessica Allain, and "Serena,"

21   played by Ruby Modine. These unique characters and their relationships are the

22   central feature of HEFG's film.  The "Fear" unique characters have not appeared in

23   any other motion picture.

24   66.   In the Spring of 2022, Angelone informed Deon and Roxanne Taylor

25   that he had created a mobile video game and NFT experience that is directly derived

26   from the Fear Movie and incorporates the film's unique characters into the game (the

27   "Unauthorized Fear Game").   No one at HEFG was aware Angelone had been

28   developing a game based on the Fear Movie until after Angelone told Deon and

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Case No.:

Roxanne Taylor that he had already developed the game.

67.     HEFG never authorized Angelone to use any of HEFG's intellectual property from the Fear Movie in any mobile game, nor did HEFG provide a license to Angelone to utilize the film or any expressions in it in any manner.

68.     Plaintiffs are informed and believe that Angelone formed the On Chain company for his development of the Unauthorized Fear Game.

69.     Most of the characters in the Unauthorized Fear Game are exactly the same as the characters in the Fear Movie including; "Rom," "Serena," "Benny," "Lou," "Meg," "Michael," "Bianca," "Russ," and "Kim." In addition to giving his characters the same name as  HEFG's "Fear" characters, Angelone also created the characters for his Unauthorized Fear Game to physically resemble the actors who play those roles in our film.  In addition, the Unauthorized Fear Game uses scenes directly taken from the HEFG Fear Movie.

70.     On or about May 2, 2022, Angelone caused a press release about the Unauthorized Fear Game to be released without HEFG's knowledge or consent. Also, that press release includes an alleged quote from Deon Taylor. However, neither Deon nor any other HEFG representative provided or authorized that quote. In addition, the press release falsely states that the game was a result of a partnership between On Chain and HEFG.

71.     There is not, and has never been, any partnership between On Chain and HEFG.

72.     Angelone has promoted the Unauthorized Fear Game on his personal Instagram and Facebook pages.  No HEFG representative ever authorized Mr. Angelone's promotion of that game in any manner.

**L.  <u>Angelone's Use of HEFG's Confidential Email Communications Without Authorization And For His Own Economic Advantage</u>**

73.     The scope of Angelone and Aone's authorized services to Deon, HEFG

COMPLAINT

and Hyper Engine has never included permission for Angelone or AOne to access or review private HEFG email messages.

74.     On August 22, 2022, Mr. Angelone sent a series of text messages to Deon evidencing that he had reviewed emails of HEFG personnel without authorization. Angelone was not an author or recipient of any of the emails he provided to Deon by text.

75.     In the text messages he sent to Deon, Angelone even admitted he had accessed Deon and Roxanne Taylor's private email messages.

76.     In addition, on August 25, 2022, Mr. Fox (Angelone and AOne's attorney) sent an email to counsel for Plaintiffs purporting to be emails and other documents Angelone had gathered. Upon HEFG's review of those emails and documents, it became evident that Angelone obtained them from looking through the personal and private emails of Deon and Roxanne Taylor without authorization.  The emails Angelone improperly reviewed and extracted from Deon and Roxanne's private email accounts included HEFG emails and documents that were protected by the attorney-client privilege.

77.     Plaintiffs are informed and believe that Angelone's purpose in looking through the private, confidential emails of Deon and Roxanne Taylor was to improperly leverage that information to force Deon to enter into a partnership with Angelone for an equity stake in Deon's Hyper Engine venture.

## M. **Angelone's Theft Of The hiddenempire.com Domain**

78.     In early August 2022, an HEFG employee secured a new domain—hiddenempire.com – utilizing GoDaddy.  In the process of setting up the new hiddenempire.com domain, the employee used office@hiddenempirefilmgroup.com as the contact email for the account. As a result, GoDaddy used that contact email to send confirmation that the account was set up and paid for, and to confirm the login credentials for that domain.

79.     No HEFG representative told Angelone that HEFG would be securing or

did secure that domain, or authorized him to access that domain.

80.     Days after securing that domain, HEFG was locked out of the new hiddenempire.com account.

81.     HEFG personnel attempted to access the account using the username and password originally used by HEFG to set up that account, but were unable to do so because the password had been changed.  No representative of HEFG changed the password on the hiddenempire.com account.

82.     On August 16, 2022, HEFG received a notification from Google confirming that the password had been changed.  The notification required that HEFG "contact the account administrator" to regain access.

83.     After contacting GoDaddy, HEFG was advised that the account information on the account did not match the account information used to set up the account. As a result, HEFG no longer had information sufficient to show its proof of ownership of the account.  HEFG had not changed any of the account information it used when setting up the account.

84.     Plaintiffs are informed and believe that Angelone is the only person currently with access to the office@hiddenempirefilmgroup.com email address and, by reading through HEFG's confidential emails without HEFG's permission, discovered the email from GoDaddy with HEFG's account credentials.  Plaintiffs are further informed and believe that Angelone used the private credentials sent to HEFG's office@hiddenempirefilmgroup.com account to change the password and account ownership information.

85.     Plaintiffs have made repeated demands that Angelone provide the credentials for the hiddenempire.com account, but Angelone has refused to do so.

**N. Angelone's Improper Registration of Hidden Empire Group, LLC**

86.     On our about August 19, 2022, Angelone established a new LLC with the California Secretary of State named Hidden Empire Film Group, LLC.  Plaintiffs

Case No.:

1   are informed and believe that Angelone did so for the purpose of further leveraging

2   HEFG's intellectual property for Angelone's own benefit and convincing third

3   parties that Angelone has a financial interest in HEFG.

**O. Harm to HEFG**

5   87.   As a result of the foregoing conduct by Angelone and AOne, Plaintiffs

6   have incurred costs in excess of Ten Thousand Dollars ($10,000) investigating the

7   matter. The costs relate to the Plaintiffs' retention of a private forensic consulting firm

8   to conduct an investigation of Angelone and AOne's conduct regarding Plaintiffs'

9   emails, Domains, and Social Media Accounts.  Costs for the completed investigation

10  are expected to far exceed $100,000.   Plaintiffs have also incurred significant

11  attorneys' fees in attempting to secure the return of access to the credentials for the

12  subject Domains, websites, HEFG Google Account, and Social Media Accounts.

13  88.   HEFG is also being damaged by Mr. Angelone's continued unauthorized

14  access to its email and Social Media Accounts.  Before Angelone locked HEFG out

15  of their email accounts, HEFG personnel regularly used email communications to

16  transmit banking and other financial information and other sensitive information

17  regarding film projects in development.

18  89.   Angelone confirmed as recently as August 25, 2022 that he had been

19  reading HEFG personnel emails in an attempt to extract financial advantages for

20  himself and AOne.  In addition, as recently as September 6, 2022, Angelone added

21  content to HEFG's Instagram account implying that he has an ownership in HEFG,

22  raising significant concerns that Angelone will continue to use the sensitive

23  information contained in HEFG personnel emails and create content on HEFG's

24  Social Media Accounts in improper ways that will further harm HEFG.

25  ///

26  ///

27  ///

28  ///



## CLAIMS FOR RELIEF

## **FIRST CAUSE OF ACTION**

BREACH OF CONTRACT

(Against Defendants Darrick Angelone and AOne Creative LLC)

90.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

91.     On April 26, 2012, HEFG and AOne entered into the 2012 Agreement.

92.     The 2012 Agreement is valid and enforceable and HEFG has performed all conditions, covenants, and promises required of it in accordance with its terms.

93.     Defendants, through their actions describe above, knowingly, willfully, repeatedly, and systematically breached and continue to breach the 2012 Agreement by, among other things, claiming an ownership interest in Plaintiffs' intellectual property and refusing to turn such intellectual property over to Plaintiffs, despite repeated demands by Plaintiffs that Defendants do so.

94.     Defendants' breaches directly and proximately caused and continue to cause irreparable and incalculable harm and injury to Plaintiffs.

## **SECOND CAUSE OF ACTION**

COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C §1030

(Against Defendants Darrick Angelone and AOne Creative LLC)

95.     Plaintiffs reallege and incorporated by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

96.     Plaintiffs' corporate email server and websites are protected computers under 18 U.S.C §1030(e)(2) because they are used in and affect interstate and foreign commerce and communication.

97.     Defendants accessed Plaintiffs' protected computers without authorization and thereby obtained information from Plaintiffs' protected computers in violation of 18 U.S.C.  §1030(a)(2).  After Plaintiffs expressly revoked Defendants' permission to access Plaintiffs' protected computers, Defendants combed through and

Case No.:

locked Plaintiffs out of Plaintiffs' private, corporate email accounts, changed the passwords for Plaintiffs' websites and Domains, and refused to relinquish the administrator credentials for their websites, Domains and corporate email accounts.

98.    Plaintiffs have been damaged in excess of $5,000 during a one year period by Defendants' unauthorized access and abuse of Plaintiffs' protected computers.  For example, as a result of Defendants' illegal activities Plaintiffs have had to engage a consultant and pay the consultant a $10,000 retainer to begin work on a forensic analysis of changes Defendants may have made to Plaintiffs' intellectual property without Plaintiffs' permission.  The complete investigation is anticipated to cost far more than $100,000.

99.    Defendants' unlawful access to Plaintiffs' protected computers continues to this day and their restriction of Plaintiffs' access to data has caused Plaintiffs irreparable injury, including but not limited to rendering Plaintiffs unable to communicate with their business partners and potentially lose important business opportunities.  Unless restrained or enjoined, Defendants will continue to commit such acts.  Plaintiffs' remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs to equitable remedies including injunctive relief as provided by 18 U.S.C § 1030(g).

### THIRD CAUSE OF ACTION

CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (Cal. Penal Code § 502(c))

(Against Defendants Darrick Angelone and AOne Creative LLC)

100.    Plaintiffs reallege and incorporated by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

101.    Defendants violated California Penal Code § 502(c)(2) by knowingly, willfully, and without permission, accessing and making use of data and files from Plaintiffs' computers, websites, software, and/or computer networks.

102.    Defendants violated California Penal Code § 502(c)(2) by knowingly

COMPLAINT

Case No.:

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

and willfully, and without permission, interrupting Plaintiffs' duly authorized access to Plaintiffs' own computers, websites, software, and/or computer networks.

103. Plaintiffs own the data accessed, obtained and/or interrupted by Defendants.

104. Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e)(2).

105. Defendants' actions have directly, proximately and irreparably harmed Plaintiffs by among other things, rendering Plaintiffs unable to communicate with their business partners and potentially lose important business opportunities.  Unless restrained or enjoined, Defendants will continue to commit such acts.  Plaintiffs' remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs to equitable remedies including injunctive relief.

**FOURTH CAUSE OF ACTION**

CONVERSION

(Against Defendants Darrick Angelone and AOne Creative LLC)

106. Plaintiffs reallege and incorporated by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

107. Plaintiffs have a valid right to possess their intellectual property that is the subject of this action.

108. Defendants have intentionally refused to transfer Plaintiffs' intellectual property back to them, as required by, for example, the 2012 Agreement, which refusal has substantially interfered with Plaintiffs' ownership of their intellectual property and impaired their business operations.

109. Plaintiffs have not consented to Defendants' actions and have been harmed because they are not able to access their email, Domains, websites and social Media Accounts.

110. Defendants' withholding of access rights to Plaintiffs' intellectual property is a substantial factor in causing harm to Plaintiffs.

COMPLAINT

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**FIFTH CAUSE OF ACTION**

COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

(Against Defendants Darrick Angelone and On Chain Innovations)

111.   Plaintiffs reallege and incorporated by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

112.   The Fear Movie is a motion picture within the meaning of 17 U.S.C. §101.   The Fear Movie was created and "fixed" by Plaintiffs in July, 2020 automatically securing copyright protection for the expressions fixed in the film.

113.   Defendants copied, displayed, and distributed the expressions fixed in the Fear Movie and made derivates of those expressions without Plaintiffs' authorization in the Unauthorized Fear Game in violation of 17 U.S.C. § 501.

114.   Defendants performed the alleged acts in the course and scope of their business activities.

115.   Defendants' acts were willful.

116.   The harm caused to Plaintiffs is irreparable, and unless restrained or enjoined, Defendants will continue to commit such acts.  Plaintiffs' remedies at law are not adequate to compensate them for these inflicted and threatened injuries, entitling Plaintiffs to equitable remedies including injunctive relief.

117.   As a result of Defendants' acts, they are required to pay Plaintiffs their actual damages and Defendants' profits attributable to the infringement, or, at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. § 504.

**PRAYER FOR RELIEF**

WHEREFORE,  Plaintiffs ask for the following relief:

A.     For a permanent injunction against all Defendants and their agents, employees and any person acting on behalf of or in concert with Defendants:

1.     Restraining Defendants from accessing or using, or engaging third parties to access or use, Plaintiffs' email systems, websites, Domains, and Social Media Accounts.

Case No.:

2.       Requiring Defendants to provide to Plaintiffs all login credentials including but not limited to usernames and passwords associated with Plaintiffs' email systems, websites, Domains, and Social Media Accounts.

3.       Requiring Defendants to immediately restore access to Plaintiffs' Google account, HEFG and Hyper Engine email addresses, websites, Domains, and Social Media Accounts.

4.       Restraining Defendants from engaging in any unlawful or malicious activities directed at or relating to Plaintiffs' email systems, websites, Domains, and/or Social Media Accounts.

5.       Restraining Defendants from promoting or advertising the Unauthorized Fear Game or otherwise infringing on Plaintiffs' valid copyrighted expressions and content in the Fear Movie.

B.       An order requiring Defendants to account for and disgorge all profits derived by Defendants and their agents, employees and any person acting on behalf of or in concert with Defendants from his unfair and unlawful conduct, as permitted by law.

C.       An award to Plaintiffs of damages as permitted by law, including but not limited to compensatory, exemplary, restitution or statutory, and in such amounts to be proven at trial.

D.       For pre- and post-judgment interest as allowed by law.

E.       For attorneys' fees and costs to the extent allowed by law.

F.       For such other relief as this Court may deem just and proper.

*[Signature on the following page]*

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Dated:  September 12, 2022          **SANDERS ROBERTS LLP**

By:

*/s/ Lawrence Hinkle*
Lawrence Hinkle, Esq.
Stephanie Jones Nojima, Esq.
Matthew Barzman, Esq.
Attorneys for Plaintiffs
HIDDEN EMPIRE HOLDINGS, LLC; HYPER
ENGINE, LLC; AND DEON TAYLOR

Case No.:
COMPLAINT