J.T. Fox, Esq., SBN 195063
LAW OFFICES OF JT FOX, APC
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Work
(888) 750-5530 Fax
E-Mail: jt@jtfoxlaw.com

Attorney for Defendants and Counterclaimants,
DARRICK ANGELONE, AONE CREATIVE, LLC AND ON CHAIN INNOVATIONS, LLC

# UNITED STATED DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, | **CASE NO.** 2:22-cv-06515-MFW-AGR |
| Plaintiffs, | **DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT FOR DAMAGES BASED ON:** |
| v. | **(1) BREACH OF EXPRESS PARTNERSHIP AGREEMENT** |
| DARRICK ANGELONE, an individual; AONE CREATIVE, LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS, LLC, a Florida limited liability company, | **(2) BREACH OF IMPLIED PARTNERSHIP AGREEMENT** |
| | **(3) BREACH OF FIDUCIARY DUTY** |
| | **(4) CONSTRUCTIVE FRAUD** |
| | **(5) PROMISSORY FRAUD** |
| Defendants. | **(6) NEGLIGENT MISREPRESENTATION** |
| | **(7) CONSPIRACY TO COMMIT FRAUD** |
| | **(8) UNJUST ENRICHMENT** |
| | **(9) UNLAWFUL BUSINESS PRACTICES (VIOLATION OF BUS. & PROF. CODE §17200)** |
| | **(10) DECLARATORY RELIEF** |
| | **(11) SPECIFIC PERFORMANCE** |
| | **(12) QUANTUM MERUIT** |
| | **(13) NEGLIGENCE** |
| | Complaint Filed: Sept. 12, 2022 |

Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald

DARRICK ANGELONE, an individual; AONE CREATIVE, LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS, LLC, a Florida limited liability company,

       Counterclaimants,

   v.

HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; and DEON TAYLOR, an individual,

       Counterclaim Defendants.

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

Counterclaimants DARRICK ANGELONE; AONE CREATIVE, LLC; and ON CHAIN INNOVATIONS, LLC (collectively "Counterclaimants") allege against HIDDEN EMPIRE HOLDINGS, LLC; HYPER ENGINE, LLC; and DEON TAYLOR (collectively "Cross-Defendants") as follows:

## THE PARTIES

1.    At all times mentioned herein, Plaintiff DARRICK ANGELONE (hereinafter referred to as "Darrick"), is now, and at all times mentioned herein, an individual residing in the County of Los Angeles, California. Darrick is the founder, CEO, and managing-member of Plaintiff AONE Creative, LLC.

2.    Plaintiff AONE CREATIVE, LLC, a Florida Limited Liability Company, (hereinafter referred to as "AONE") is now, and at all times mentioned herein, an entity doing business in the City of Fort Lauderdale, County of Broward, Florida.

3.    Plaintiff ON CHAIN INNOVATIONS, LLC, a Florida Limited Liability Company, (hereinafter referred to as "On Chain") is now, and at all times mentioned herein, an entity doing business in the City of Fort Lauderdale, County of Broward, Florida.

4.    Defendant DEON TAYLOR (hereinafter referred to as "Deon") is now, and at all times mentioned herein, an individual residing in the County of Placer, California.

5.    Defendant HIDDEN EMPIRE HOLDINGS, LLC (hereinafter referred to as "Hidden Empire"), a Delaware Limited Liability Company, is now, and at all times mentioned herein, an entity doing business in the City of Santa Monica, County of Los Angeles, California, and qualified to do business in the State of California.

6.      Defendant HYPER ENGINE, LLC (hereinafter referred to as "Hyper Engine"), a California Limited Liability Company, is now, and at all times mentioned herein, an entity doing business in the City of Granite Bay, County of Placer, California, and qualified to do business in the State of California

## JURISDICTION AND VENUE

7.      As stated in Plaintiffs' Complaint, Plaintiffs alleged as follows: This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 17 U.S.C. § 501 because Plaintiffs allege that Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and infringed on their valid copyrights associated with the Fear Movie. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

8.      As stated in Plaintiffs' Complaint, Plaintiffs alleged as follows: The Court has personal jurisdiction over all Defendants because they conduct business in California and have contacts with the state that are continuous, systematic, and purposeful such that they are each subject to the personal jurisdiction of this Court.

9.      As stated in Plaintiffs' Complaint, Plaintiffs alleged as follows: Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## INTRODUCTION

10.     On September 12, 2022, Plaintiffs Hidden Empire Holdings, LLC; Hyper Engine, LLC; and Deon Taylor filed their Complaint in this action against Defendants

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

Darrick Angelone; AONE Creative, LLC; and On Chain Innovations, LLC, alleging claims for (1) Breach of Contract; (2) Violation of Federal Computer Fraud And Abuse Act (18 U.S.C. §§1030(A)(2)(C) & (A)(5); (3) Violation of Computer Data Access And Fraud Act (Cal. Penal Code § 502); (4) Conversion; and (5) Copyright Infringement.

11.    Counterclaimants deny that they have any liability to Cross-Defendants, but to the extent of Plaintiffs' asserted claims in their Complaint, Counterclaimants allege that Cross-Defendants should be held responsible for defending and indemnifying Counterclaimants.

## FACTUAL ALLEGATIONS

12.    Counterclaimants bring this cross-complaint to obtain relief from the betrayal and fraudulent conduct committed by Cross-Defendants involving a marketing company founded for the general purpose of using Counterclaimants' digital and creative services to benefit Cross-Defendants, their companies, and/or their clients.

13.    Counterclaimants agreed to engage in business with and offer their services to Cross-Defendants for the purpose of forming a mutually beneficial business relationship through the formation of a marketing subsidiary to service Cross-Defendants' companies and other clients. Counterclaimants and Cross-Defendants did in fact enter into an operating agreement for this purpose, agreeing to divide equally any profits and equally sharing in any losses.

14.    On or about June 24, 2021, Hidden Empire Film Group was reincorporated in Delaware under the name Hidden Empire Holdings, LLC.  Hidden Empire is

hereinafter referred to as "HEFG" for the purposes of this Complaint.

15.    On or about April 26, 2012, AONE and HEFG entered into contract to develop websites at the domains of www.lmaocomedyseries.com and www.hiddenempirefilmgroup.com for $22,500. This contract term was completed in October 2013. HEFG subsequently lost ownership of the hiddenempirefilmgroup.com domain in 2014. The hiddenempirefilmgroup.com domain did not return for use by HEFG until 2015 when AONE recovered it from whomever had registered it away from HEFG in 2014. During that time, HEFG had no access to the domain, while AONE secured the hiddenempirefilms.com domain on behalf of Cross-Defendants. AONE thereafter continued to renew the HEFG domain name every year as necessary.

16.    Since then, Cross-Defendants and Counterclaimants agreed that Counterclaimants would continue to provide marketing and other digital services to Cross-Defendants, which included digital and social media marketing, developing website domains, and creating digital content such as video and applications.

## Counterclaimants And Cross-Defendants Form an LLC Called Hyper Engine

17.    Counterclaimants, Cross-Defendants, and Roxanne Taylor (co-founder of HEFG) have been discussing the formation of a digital marketing company between Counterclaimants and Cross-Defendants since as early as 2016.

18.    On or about October 3, 2016, Darrick first sent an email to Deon Taylor in which he suggested incorporating the services Darrick had been providing into a marketing company that the parties would both have an interest in.

19.     On or about January 10, 2017, Roxanne sent a follow up email to Darrick regarding an outline Darrick prepared with the proposed terms for a digital marketing company, which would handle the marketing of HEFG theatrical releases, among other things. Darrick then sent this outline to Cross-Defendants for them to consider. This outline included, among other things, a breakdown of initial investment/capitalization, a breakdown of each partner's shares, the scope of the marketing company's duties, comparable businesses, monthly costs, and first year expenses and revenues.

20.     On or about November 1, 2017, Roxanne Taylor sent an email to Darrick concerning the need to "connect" regarding the creation and structure of a digital marketing company between Counterclaimants and Cross-Defendants.

21.     On or about December 12, 2017, Darrick was asked by Deon Taylor to join a meeting between Deon and Kevin Wiess at the Ramada Inn in Burbank, to discuss a potential partnership between HEFG and Optimad Media, LLC to create a digital marketing company for HEFG motion pictures. Later, on or about December 18, 2017, Deon sent an email to Darrick imploring him to meet with Optimad again and investigate their business operations to evaluate whether it was a good idea to partner with them to create a joint marketing company. Thereafter, Cross-Defendants decided that the parties should move forward with no other partners at that time and to instead create an in-house marketing company.

22.     On or about January 29, 2018, Darrick and Cross-Defendants engaged in verbal discussions regarding the creation of Hyper Engine, LLC ("Hyper Engine"), a

digital marketing company in which AONE and HEFG would be partners.

23.     On or about January 30, 2018, Velma Skyes, Head of Business of Affairs for HEFG, reached out to Darrick by email regarding a budget proposal for the proposed marketing company, which Darrick sent to HEFG on January 16, 2018. Darrick replied that same day and sent a revised budget proposal, stating that the terms are open for discussion. Velma Skyes then replied in acknowledgment.

24.     On or about February 24, 2018, AONE submitted to Cross-Defendants by email a revised budget created by AONE for HEFG digital infrastructure, which discussed equity in Hyper Engine.

25.     On or about March 1, 2018, Cross-Defendants created a draft operating agreement for Hyper Engine, created by Deon Taylor, Roxanne Taylor, and Velma Sykes. It was sent to Counterclaimants for review on August 1, 2019. Within this agreement, Darrick was designated as a member of Hyper Engine, LLC along with Deon Taylor, Roxanne Taylor, and Robert Smith. The agreement further provided that Robert Smith would split 50% in net profits and losses, while Deon, Roxanne, and Darrick would evenly split the remaining 50% in profits and losses. Counterclaimants are informed and believe that a long-form version of this operating agreement was signed and executed by Deon Taylor.

26.     Hyper Engine, LLC was officially formed on March 1, 2018 (CA Secretary of State No. 201807410500) and remains active as of the date of this Cross-Complaint. Following the formation of Hyper Engine, Counterclaimants began efforts to provide

marketing services for HEFG and other various clients through Hyper Engine. As part of their partnership (and executive role within the partnership) within Hyper Engine, Counterclaimants were solely responsible for marketing, web domain, and all other digital, creative, or IP services which includes but is not limited to:

a. Creating and presenting decks to pitch Hyper Engine services to entertainment companies such as Sony Pictures Entertainment, Lionsgate Films, and Warner Brothers;

b. Creating and executing digital marketing and political outreach campaigns wherein AONE created a significant amount digital graphics and branding across social media, television, print, and other online digital media;

c. Creating digital marketing campaigns to promote films created or directed by HEFG and other independent entertainment clients;

d. Creating digital branding, domain names, pitch decks, and other digital marketing for various endeavors and projects undertaken by Cross-Defendants and clients referred to Darrick or AONE by Cross-Defendants; and

e. Developing a COVID-19 vaccine campaign to be executed by hyper engine with CDC grant money given to the Coalition of National Black Churches ("CNBC"), whereby AONE was engaged to advertise for the vaccine campaign, create pitch decks, perform copy writing, register domain name(s), and conduct political advertising research, while creating and

executing the digital strategies.

27.     On or about December 1, 2019, Cross-Defendants created a second operating agreement for Hyper Engine, in which Deon was named 33.34% owner, Roxanne Taylor was named 33.33% owner, and Counterclaimants were named 33.33% owner. This agreement further provided that company profits and losses shall be split 66.67% to Deon and Roxanne Taylor and 33.33% to Counterclaimants. Counterclaimants are informed and believe that a long-form version of this operating agreement was signed and executed by Deon Taylor.

28.     Since the inception of Hyper Engine, Cross-Defendants repeatedly assured Counterclaimants that they were partners in Hyper Engine as reflected in written operating agreements, verbal communications, and Cross-Defendants' manifestations or actions consistent with the operation of a partnered business. Namely, Cross-Defendants repeatedly represented and reassured Counterclaimants that they were a partner or member of Hyper Engine and would share equally in the profits of the company. Specific facts supporting Counterclaimants' status as a member of Hyper Engine include, but are not limited to:

    a.  Counterclaimants were named as a member and 16.66% owner of Hyper Engine, LLC in a draft operating agreement for Hyper Engine dated March 1, 2018;

    b.  Counterclaimants were named as a member and 33% owner of Hyper Engine, LLC in an operating agreement dated December 1, 2019;

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

c.  Counterclaimants are informed and believe that, during September 2019, Cross-Defendants confirmed with Counterclaimants the details of Hyper Engine, LLC, which also reflected a mutual understanding and confirmation of the creation of Hyper Engine, LLC, with the California Secretary of State, which was brought to Counterclaimants' attention by Cross-Defendants verbally;

d.  On or about Sept. 20, 2019, Roxanne created a Hyper Engine bank account in which Darrick is listed as signatory, of which Cross-Defendants advised Counterclaimants by email and verbally;

e.  On or about September 20, 2019, Roxanne created a debit card in Darrick's name for the abovementioned Hyper Engine bank account, of which Cross-Defendants advised Counterclaimants by email and verbally;

f.  In a telephone discussion on or about February 23, 2020 with Roxanne regarding the formation of Hyper Engine, Roxanne verbally proposed the split in ownership of 1/3 (33%) to each Deon, Roxanne, and Darrick;

g.  The aforementioned marketing, web domain, and other digital or IP services conducted through Darrick's company, AONE, are consistent with a membership role in Hyper Engine and within the scope of Darrick's expected duties as a digital marketing/social media partner;

h.  Counterclaimants were consistently referred to as a partner, member, or executive of Hyper Engine, both orally and in written documents,

throughout the parties' business relationship;

i. In or around December 2019, AONE created and printed Hyper Engine business cards for Deon, Roxanne, and Darrick;

j. On or about March 6, 2018, AONE circulated a Hyper Engine pitch deck created by AONE in collaboration with an HEFG designer, in which Darrick is listed as "Chief Technology Officer" of the executive team consisting of Darrick, Deon, and Roxanne. All words and data included in the deck were provided by AONE; and

k. Following the creation of the Hyper Engine pitch deck, subsequent changes to the decks each list Darrick as an executive of Hyper Engine.

29. Counterclaimants are further informed and believe that Cross-Defendants, without Counterclaimants' knowledge or approval, were diverting funds from the Hyper Engine bank account and committing them to personal use and to finance debts for various HEFG projects throughout the course of the parties' business relationship.

30. On or about August 20, 2019, Darrick notified Cross-Defendants by email that AONE maintains ownership of all works created by AONE, including domains and social accounts created in collaboration between AONE and HEFG.

### Cross-Defendants Exclude Counterclaimants From Hyper Engine

31. Unbeknownst to Counterclaimants, at some time after the formation of Hyper Engine, Cross-Defendants formed an undisclosed intent to breach the company operating agreement, exclude Counterclaimants from the LLC, and take Hyper Engine's

assets, proprietary information, and intellectual property and claim it as their own. At this time, while outwardly manifesting a continuing intent to develop Hyper Engine as an equal partner with Counterclaimants, Cross-Defendants secretly began to take steps in preparation of excluding Counterclaimants from their rightful share in the company.

32.     Cross-Defendants have continuously failed to recognize to Counterclaimants as a member or partners in Hyper Engine, despite numerous promises and reassurances that such partnership was created. Further, Cross-Defendants have repeatedly refused to create written services agreements or contracts to define much of the work performed by Counterclaimants for Cross-Defendants. As such, Counterclaimants have relied to their detriment on Cross-Defendants' knowingly false representations that they were a member of Hyper Engine.  Had Counterclaimants known the actual facts as set forth herein concerning Cross-Defendants' failure to consummate a binding partnership or operating agreement for Hyper Engine, Counterclaimants would not have performed their services for Cross-Defendants nor otherwise agreed to partner with Cross-Defendants as member of Hyper Engine and sustain resulting losses. Counterclaimants are thus entitled to a share in the control and management of Hyper Engine, and a share equal to no less than 33% of the profits and losses of Hyper Engine.

33.     Beginning in or around April 2021, Cross-Defendants hired Quincy Newell, Esq. as Chief Operating Officer (COO) of HEFG. As part of his role, Quincy was employed to help restructure HEFG, which included adding Hyper Engine as a subsidiary or wing of HEFG. During this time, Counterclaimants were continuously relying on the

aforementioned false promises and actions by Cross-Defendants which gave them the impression that they were a member of Hyper Engine and would retain their partnership interest upon restructuring. However, Counterclaimants were notably excluded from discussions regarding the restructuring of HEFG to include Hyper Engine as the marketing subsidiary of HEFG, an act which raised Counterclaimants' suspicions.

34.    Following the hiring of Quincy Newell, Cross-Defendants knowingly ignored or disregarded any attempts by Counterclaimants to formalize a partnership or operating agreement for Hyper Engine upon restructuring, and further continued to refuse to create written contracts for the work and services provided by Counterclaimants to Cross-Defendants.

35.    On or about February 22, 2022, Darrick introduced Darrell Thompson, Esq. to Deon, Roxanne, and Quincy Newell via email to negotiate the terms of a binding Hyper Engine LLC operating agreement, to protect Counterclaimants' one third (33.33%) interest in the company upon restructuring. Specifically, Darrick's email states "I want to make sure that the loose ends of our partnership surrounding Hyper Engine are nailed down. My hope is that Darrell can work with Quincy to formalize the terms and that an agreement can be made without any further delay." Following this email, Quincy and Darrell had a conversation about the matter sometime in March. On or about March 15, 2022, Darrell followed up with Quincy by providing proposed nonbinding terms for the Hyper Engine partnership. In an email dated March 16, 2022, Quincy acknowledged the proposed terms and asked some questions about them, but otherwise did not agree to any

terms. Thereafter, Darrell followed up with Quincy by email on Mar 21 and Mar 24, 2022, each time without a response. Weeks later, Darrell again followed up with Quincy on April 8, 2022. This time, Quincy responded on April 8, 2022 stating that HEFG is not ready to "engage in any discussion" regarding plans for Hyper Engine, to which Darrick expressed his concern that formalization was long overdue and should be addressed with urgency. That same date, Darrick received a voice memo from Deon in which Deon stated that Hyper Engine "is not a real company." At this moment, Counterclaimants became aware of Cross-Defendants' intent to continue operating Hyper Engine to the exclusion of Counterclaimants as a partner or member. Later, on or about April 21, 2022, Quincy responded with a demand for a master services agreement to cover all services then provided by Counterclaimants to HEFG or Hyper Engine, which was seemingly to detract from Counterclaimants' demand to formalize an operating agreement. On or about Apr 22, 2022, Roxanne then responded and claimed that HEFG or Hyper Engine will engage AONE as they have been doing, but notably refused to put it in writing. Based on the foregoing, it is evident that Cross-Defendants knowingly sought to avoid continuing a partnership with Counterclaimants in breach of past promises and mutual understanding between the parties.

36.     On or about Apr 26, 2022, Roxanne asked Darrick in an email for social media account access, to which Darrick replied and stated AONE's position about outstanding balances for past services provided by Counterclaimants and his personal dissatisfaction with the approach Quincy was taking in avoiding formalization of a Hyper

Engine partnership, which was counter to the parties understanding and longstanding professional relationship.

37.    During 2022, through conversations with Cross-Defendants, Counterclaimants became aware that Hyper Engine was being restructured by Cross-Defendants without consultation from Counterclaimants, and Counterclaimants were being formally excluded from ownership and the business decision-making process.

38.    On or about June 28, 2022 Darrick sent an email follow up to Deon, Roxanne, and Quincy checking on when payment of past due balances would be made. On that same date, Roxanne replied to the above email and said payment will be made before the end of July 2022. On or about August 1, 2022, Deon emailed AONE and Darrell stating that he plans to pay any outstanding balance on that same date and suggested that, because they are paying past due balance for services long past provided, he should get access to AONE property that was never contingent on payment of the invoices originally or in past due status. On that same date, Quincy added to the abovementioned email chain in an attempt to change terms by seeking to confirm whether Darrick "will turn over all admin passwords and account access information e.g., email accounts, social media etc.. to Roxanne and Deon." Darrick responded by rejecting that assertion as contrary to his understanding.

39.    On or about August 3, 2022, payment for past due balances for services provided by Counterclaimants to Cross-Defendants spanning from 2020 to April 2022 were received by AONE. Thereafter, from August 4 to 9, Quincy and Deon made email

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

demands to Darrick and AONE to turn over account credentials and server logins created and owned by AONE, none of which have been under contract nor ever been the property of HEFG.

40.     On or about Aug 9, 2022, AONE emailed the HEFG team reiterating that since past due balances have then been paid, the parties may address all the outstanding issues at hand. That same day, Deon added to the above email discussion with more promises about how HEFG "are willing to keep building" and "have other business to do." In response, Darrick once again reiterated that the mutual understanding was that a "Hyper Engine partnership be formalized and to include a master agreement over all digital IP owned by AONE and or claimed by HEFG" before the transfer of any property rightfully belonging to AONE or Darrick. Counterclaimants are informed and believe that Cross-Defendants by their abovementioned acts intended to exclude Counterclaimants from membership in Hyper Engine, contrary to past understanding and agreement between the parties. Counterclaimants have since been denied their rightful share in the control and management of Hyper Engine, including its accounting, profits, and losses.

**Counterclaimants and HEFG**

41.     In or around August 2021, Counterclaimants were engaged, to handle the digital marketing for the Theatrical release of the HEFG movie titled "Fear", which at the time was schedule for release on February 12, 2022. Weekly Zoom meetings ensued for approximately 7 months regarding the film. The film release was later moved to May 10, then August 26, 2022. As of the date of this Cross-Complaint, the film's release is

expected on January 27, 2023. Upon information and belief, Cross-Defendants are actively using the Fear marketing strategy, created for Cross-Defendants by AONE, without permission or any compensation to Counterclaimants. Meanwhile, AONE has spent in excess of $250,000.00 for development and time invested by AONE staff to be present at meetings, which remains unrecouped by Counterclaimants.

42.    Counterclaimants have spent countless hours in their engagement for marketing the Fear film, all of which was done at Cross-Defendants' request. The services Counterclaimants have performed or developed for this project include, but are not limited to:

a.    On or about August 2, 2021, Counterclaimants registered the necessary domains and social media handles for Fear;

b.    On or about August 6, 2021, Darrick submitted a demo website design for the Fear movie teaser launch via an iMessage thread with Cross-Defendants;

c.    From August 2021 through the present, Counterclaimants have endeavored to develop a marketing strategy for Fear based on weekly meeting discussions and to develop special integrations such as NFT and mobile gaming elements; and

d.    On or about January 13, 2022, Counterclaimants introduced via email the Fear Instagram Filter concept to the HEFG team, created by AONE to be a part of the Fear movie marketing strategy.

43.    On or about April 1, 2022, Darrick Submitted a social concept and

publishing strategy for HEFG via iMessage to Deon and Omar Joseph, VP of production at HEFG

44.    In or around November 2021, Darrick proposed a Fear video game and NFT activation as part of a larger marketing plan to Deon, to which Deon replied, "Let's go" and engaged the rest of the HEFG executives to start the project. AONE continued planning and development for the game/app, including design and beta testing at Cross-Defendants' behest. On or about January 21, 2022, AONE shared the Fear game plan via email with another Web3 company named Cube, along with their principals. Later, in April 2022, Roxanne set up a meeting with Cube and their principals, to the exclusion of Counterclaimants, to discuss engaging them to execute a strategy similar to the one created by and presented to them by AONE. On August 1, 2022, Roxanne again met with Cube, to the exclusion of Counterclaimants, asking for next steps between them to further engage. Cube was a company that Counterclaimants originally had a relationship with, in which Counterclaimants introduced Cube to Cross-Defendants.

45.    On or about September 8, 2018, Darrick sent Deon via email a proposal for a campaign, presently named Be Woke Vote, to encourage voting across different political campaigns and promote political outreach. Counterclaimants have spent numerous hours in their performance and development of this project, which includes but is not limited to:

a. From October 2018 to July 2020, AONE exclusively created all digital graphics for the Be Woke Vote campaign branding across social media,

DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT

television, print, and other online digital media. The rights to these graphics
and authorship of copywriting have never been transferred away from
AONE;

b. On or about September 19, 2018, AONE registered BE WOKE LLC. With
the California Secretary of State (CA Secretary of State No. 201826710371);

c. In or around October 2018, HEFG executed all Be Woke Vote talent
contacts in the name of the AONE-owned BE WOKE LLC;

d. In or around November 2020, AONE oversaw the partnership and creative
development between Mike Bloomberg's Hawkfish digital targeting
company, the P.A.C. BlackPAC, and Be Woke.Vote's final 72hr Get Out To
Vote (GOTV) digital targeting campaigns; and

e. From December 2020 through the filing of this Counterclaim, AONE has
financed the entire cost to maintain the digital infrastructure associated with
Be Woke Vote.

46.     Further, in or around October 2018, Be Woke Vote production call sheets
circulated to Counterclaimants and HEFG list Darrick as creative director and social
media director for the campaign. There was never a written contract or services
agreement presented to Counterclaimants regarding the agreed upon work AOne and
Darrick completed on this project. From August 2020 through January 2021, Darrick
and AOne designed, developed, and executed the entire digital strategy for the Be Woke
Vote 2020 Get Out The Vote Campaign (GOTV). AOne has maintained the digital

infrastructure for Be Woke Vote and paid the fees necessary for all times between campaigns, which consists of a 2-year hiatus and five months of activity.

47.     In May 2018, while discussing Hyper Engine business with Deon Taylor, it was suggested that AOne should create the branding and build out the entire digital infrastructure to distribute and market the educational series titled "Black History in Two Minutes (or so)", which was produced by McGee Media and is owned by a partnership with McGee Media, Dr. Henry Louis Gates, and Robert F. Smith. Following that discussion, AOne built out the entire system and was then tasked with distributing over 90 episodes and integrating learning curriculum which is utilized by millions of students, teachers and interested parties. AOne has exclusively managed this project from top to bottom with no direction and without second guessing the decisions made by AOne in the development or execution. The only direction AOne received was that the websites for blackhistoryintwominutes.com and bewoke.vote should include SEO terms and descriptions for the projects financial benefactor, Robert F. Smith. Discussions between Aone and Cross-Defendants have Be Woke as the political marketing subsidiary of Hyper Engine.  In December 2017 and again in June 2018, prior to the creation of Be Woke, and during the creation of Hyper Engine, AOne was tasked with running support campaigns for Doug Jones for US Senate in Alabama, and the Andrew Gillium primary race for Governor in Florida.

48.     On or about March 25, 2022, Darrick presented to Deon and Omar, via iMessage, merchandise and ecommerce that Counterclaimants had been developing for

HEFG for several years.

49.    Throughout the parties' relationship, Counterclaimants consistently advanced significant marketing campaign costs on behalf of HEFG or Hyper Engine. Specifically, Counterclaimants routinely advanced over $100,000 for digital marketing on each project performed for Cross-Defendants, which was done under the impression that Counterclaimants were a member with ownership interest in Hyper Engine, and not merely an independent contractor.

50.    Based on the aforementioned representations by Cross-Defendants and services or contributions provided by Counterclaimants throughout the parties' longstanding business relationship, it is Counterclaimants' reasonable belief that a partnership agreement arose between Counterclaimants, Deon, and Roxanne with respect to Hyper Engine. Specifically, Cross-Defendants' actions and Counterclaimants' performance of services throughout the parties' professional relationship were consistent with an unambiguous intent to form a business partnership, such that Counterclaimants are entitled to no less than a one third (33.33%) ownership stake in Hyper Engine, as well as the right to share in the management and profits of the business. Cross-Defendants are now wrongfully retaining the interest and use of Counterclaimants' services and proprietary information to derive profits and pecuniary gain to the exclusion of Counterclaimants.

51.    Counterclaimants additionally claim ownership rights over various works and intellectual property created by AONE for HEFG and/or Hyper Engine in reliance

on Cross-Defendants misrepresentations or material omissions. Specifically, the ICANN registered domain owner of ALL domains is AONE Creative LLC, as has been the case since such domains were first registered. Further, the domains were all paid for entirely by AONE when registered and when renewed. Additionally, AONE retained all ownership of creative and authored works. Moreover, all social profiles and/or pages were created by AONE. No persons except employees and contractors of AONE have ever had access to any of the social media accounts created by AONE. Further, Darrick was never paid for the many executive roles he covered for HEFG and Hyper Engine.

52. Beginning in May of 2022, Counterclaimants have additionally incurred expenses in providing their time and services to Cross-Defendants and HEFG, for which there are still outstanding balances and expenses still presently accruing. Specifically, Counterclaimants are owed by HEFG or Hyper Engine a total of $35,818.41 for the following 7 invoices:

    a. Invoice dated June 2, 2022 in the amount of $8,864.06, for Web & Email Server Management ($1,999.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($321.30); and carrying cost of 2.5%. balance fee for open HEFG invoices from February 2021 through April 2022 ($3,000.00.);

    b. Invoice dated July 1, 2022 in the amount of $2,245.82, for management and hosting of podcast archive ($999.00); management and use of social

($499.00); and carrying cost of 2.5%. courtesy fee for Jan, Feb, Mar, and Apr 2022 ($747.82.);

c. Invoice dated July 2, 2022 in the amount of $7,764.06, for Web & Email Server Management ($1,999.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($321.30); and carrying cost of 2.5%. balance fee for open HEFG invoices from February 2021 through April 2022 ($1,900.00.);

d. Invoice dated August 1, 2022 in the amount of $2,398.68, for management and hosting of podcast archive ($999.00); management and use of social ($499.00); and carrying cost of 2.5%. courtesy fee for Jan, Feb, Mar, and Apr 2022 ($900.68.);

e. Invoice dated August 2, 2022 in the amount of $7,764.06, for Web & Email Server Management ($1,999.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($321.30); and carrying cost of 2.5%. balance fee for open HEFG invoices from February 2021 through April 2022 ($1,900.00.);

f. Invoice dated August 16, 2022 in the amount of $5,283.73, for Web & Email Server Management ($1,499.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); and HEFG Server costs

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

($43.76) 3rd Party Workspace Email server costs ($240.97); and

g.  Invoice dated August 16, 2022 in the amount of $1,498.00, for management and hosting of podcast archive ($999.00); and management and use of social ($499.00)

53.   Cross-Defendants knew, or had reasonable grounds to believe, that their above misstatements and omissions were false and misleading to Counterclaimants.

54.   Cross-Defendants, with the willful intent to defraud, intended that that their misstatements and omissions had the unlawful purpose of inducing Counterclaimants into dealing with Cross-Defendants and providing them with marketing, web domain, and all other digital or IP services on numerous projects under the false impression that Counterclaimants had a shared partnership interest with Cross-Defendants.  The Cross-Defendants had actual knowledge that Counterclaimants would not have entered into any business dealings with Cross-Defendants nor provided any abovementioned services if they were told the truth of any of the above statements or omissions.

55.   The Cross-Defendants were owners and controlling persons of HEFG and Hyper Engine, and had direct involvement in their day-to-day operations.  The material misrepresentations or omissions from HEFG's verbal solicitations that were made to Counterclaimants in connection with Counterclaimants' services was the collective and concerted action of the Cross-Defendants.  The Cross-Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made verbal representations to Counterclaimants as well.

56.     Counterclaimants are informed and believe, and based thereon allege, that after Cross-Defendants breached the parties' operating agreement and excluded Counterclaimants from Hyper Engine, Cross-Defendants have continued to operate the companies as their own businesses and investments without allowing Counterclaimants to share in the management and profits of that business as agreed upon when the company was formed.

57.     The Cross-Defendants had actual knowledge, or had reasonable grounds to know, of the misrepresentations and omissions of material facts set forth in this Complaint as all such facts were readily available to them. The Cross-Defendants' material misrepresentations and omissions were done knowingly and recklessly and for the purpose and effect of concealing information from the Counterclaimants in order to further the Cross-Defendants' inappropriate and excessive gains from Counterclaimants' services and contributions in reliance on an ownership stake in Cross-Defendants' companies. As a result of Cross-Defendants' representations of materially false and misleading information and failure to disclose material facts, as set forth above, and in reliance on that information, Counterclaimants continued to deal with Cross-Defendants in providing marketing, web domain, and any other digital or IP services, which ultimately caused Counterclaimants direct damages in the form of lost profits, reputational harm, and general, special, or consequential damages in an amount according to proof at trial.

## FIRST CAUSE OF ACTION

## **BREACH OF EXPRESS PARTNERSHIP AGREEMENT**

### **(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

58.     Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

59.     On or about December 1, 2019, Counterclaimants and Cross-Defendants entered into an operating agreement to form Hyper Engine for the general purpose of using Counterclaimants' digital marketing services to benefit Cross-Defendants, HEFG, Hyper Engine, and/or their clients, as set forth above. Pursuant to this agreement, Deon was named 33.34% owner, Roxanne Taylor was named 33.33% owner and Counterclaimants were named 33.33% owner. This agreement further provided that company profits and losses shall be split 66.67% to Deon and Roxanne Taylor, and 33.33% to Counterclaimants.

60.     At all times, Counterclaimants performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms of the operating agreement.

61.     Cross-Defendants breached the agreement by, among other things, failing to treat Counterclaimants as a formal partner of the LLC, excluding Counterclaimants from Hyper Engine's management and profits, and claiming ownership of Counterclaimants' proprietary information and intellectual property developed for Hyper Engine and HEFG, and owned by Counterclaimants.

62.     As a direct and proximate result of Cross-Defendants' wrongful conduct,

Counterclaimants have sustained damages in an amount according to proof within the jurisdiction of this Court.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED PARTNERSHIP AGREEMENT
### (Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)

63.    Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

64.    In performing the acts and engaging in the conduct of creating pitch decks, executing marketing campaigns, creating digital branding, registering domain names, and executing other digital or IP services conducted through AONE, Counterclaimants and Cross-Defendants manifested an intention to enter into an LLC operating agreement to do those things and to equally share in the profits and losses therefrom.

65.    Counterclaimants and Cross-Defendants held themselves out to the public as equal partners for the development and execution of the described digital marketing and IP services.

66.    Cross-Defendants performed these acts and conduct with the intent to form the described LLC and operating agreement with Counterclaimants, who understood said intent and acted with their own intent to create such LLC and enter into an operating agreement.

67.    At no time did Cross-Defendants conclusively manifest an unambiguous intent to Counterclaimants that they did not intend to remain in the partnership, until their exclusion of Counterclaimants from Hyper Engine as alleged above.

68.     At all times, Counterclaimants performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms of the operating agreement.

69.     Cross-Defendants breached this operating agreement by, among other things, failing to treat Counterclaimants as a formal partner of Hyper Engine, excluding Counterclaimants from Hyper Engine's management and profits, and claiming ownership of Counterclaimants' proprietary information and intellectual property developed for Hyper Engine and HEFG.

70.     As a direct and proximate result of Cross-Defendant's wrongful conduct, Counterclaimants have sustained damages in an amount according to proof within the jurisdiction of this Court.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
**(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

71.     Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

72.     As alleged above, Counterclaimants and Cross-Defendants entered into a partnership to promote and use Counterclaimants' digital marketing services to benefit Cross-Defendants, HEFG, Hyper Engine, and/or their clients. As a partner of the company, Cross-Defendants at all times owed Counterclaimants the fiduciary duties of disclosure, loyalty, and care. Pursuant to such fiduciary duties, Cross-Defendants were required to act in the utmost good faith towards Counterclaimants, and to avoid acts and

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

omissions adverse to Counterclaimants. By virtue of this fiduciary relationship,

Counterclaimants reposed trust and confidence in the integrity of Cross-Defendants.

Counterclaimants provided no cause for Cross-Defendants to act in any manner

inconsistent with this fiduciary relationship.

73.    Cross-Defendants have breached their fiduciary duties, including the duties

of disclosure, loyalty, and care to Counterclaimants by engaging in the acts and

omissions alleged herein.

74.    Counterclaimants are informed and believe, and on that basis allege, that

Cross-Defendants were diverting funds from the Hyper Engine bank account for their

own personal use and to finance debts for various HEFG projects, in a deliberate

violation of their fiduciary duties of care and loyalty.

75.    Cross-Defendants intended to induce Counterclaimants to rely on their

fiduciary relationship, and in reasonable reliance thereon, Counterclaimants were

induced to and did continue their fidelity.

76.    As a proximate result of Cross-Defendants' breach of fiduciary duties,

Counterclaimants have sustained damages in an amount according to proof within the

jurisdiction of this Court.

## FOURTH CAUSE OF ACTION
## CONSTRUCTIVE FRAUD

**(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

77.    Counterclaimants repeat and incorporate herein by reference each and every

allegation set forth above as though fully set forth herein.

78.    By virtue of the operating agreement, the relationship between Counterclaimants and Cross-Defendants was fiduciary in nature. Cross-Defendants therefore owed Counterclaimants the fiduciary duties of disclosure, loyalty, and care, and the obligation to conduct the company's business in good faith. Because Counterclaimants' confidence in Cross-Defendants' integrity caused Counterclaimants to entrust Cross-Defendants with the authority to act for the company, a confidential relationship existed at all times herein mentioned between Counterclaimants and Cross-Defendants.

79.    Defendants breached their fiduciary duties to Counterclaimants and violated the relationship of trust and confidence by excluding Counterclaimants from their interest and assets in Hyper Engine, by securing an advantage over Counterclaimants, and by misleading Counterclaimants to their prejudice.

80.    Defendants misled and deceived Counterclaimants by: (i) failing to inform Counterclaimants that Cross-Defendants would organize and operate Hyper Engine to the exclusion of Counterclaimants; (ii) repeatedly promising Counterclaimants an ownership stake in Hyper Engine; (iii) failing to treat Counterclaimants as a partner of Hyper Engine; (iv) excluding Counterclaimants from Hyper Engine's management and profits as agreed; and (v) claiming ownership of Counterclaimants' proprietary information and intellectual property developed for Hyper Engine and HEFG.

81.    Because they reposed trust and confidence in Cross-Defendants' integrity, Counterclaimants reasonably relied upon Cross-Defendants' statements that they would

be an equal partner in Hyper Engine, and further reasonably relied upon Cross-Defendants' omission(s) to inform Counterclaimants that Cross-Defendants intended to organize Hyper Engine to the exclusion of Counterclaimants.

82.    By virtue of this conduct, Cross-Defendants secured an advantage to the detriment of Counterclaimants in that they gained ownership and/or a financial interest in Hyper Engine and any of its subsidiaries to the exclusion of Counterclaimants.

83.    As a proximate result of Cross-Defendants' conduct, Counterclaimants have sustained damages in an amount according to proof within the jurisdiction of this Court.

**FIFTH CAUSE OF ACTION**
**PROMISSORY FRAUD**

**(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

84.    Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

85.    "'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." (*Engalla v. Permanente Medical Group, Inc*. (1997)15 Cal.4th 951, 973-974.) "[I]n a promissory fraud action, to sufficiently allege defendant made a misrepresentation, the complaint must allege (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)

86.    As stated above, Cross-Defendants represented on multiple occasions that Counterclaimants were a partner and one third member of Hyper Engine, LLC, and thus entitled to a share in the company's profits and losses, as well as a share in the control and management of the company. However, Cross-Defendants ultimately deceived Counterclaimants and never recognized them as a partner/member of either Hyper Engine despite their repeated assurances. Further, Cross-Defendants intentionally and with knowledge disregarded Counterclaimants' requests to formalize an operating agreement for Hyper Engine, and further refused to memorialize in writing most of the work Counterclaimants performed for Cross-Defendants.

87.    At the time Cross-Defendants agreed to designate Counterclaimants as a member of Hyper Engine and proceed as partners, Cross-Defendants had no intention to include or recognize Counterclaimants as a partner or member and share in the company's losses, profits, and management functions.

88.    As a direct and proximate result of Cross-Defendants' fraud, Counterclaimants have been harmed in an amount to be determined according to proof at trial, in excess of this Court's jurisdiction, plus prejudgment interest, costs, and reasonable attorney's fees, if allowable by statute.  Furthermore, Cross-Defendants' purposeful and deliberate conduct in defrauding Counterclaimants into entering into an operating agreement which Cross-Defendants had no intention to fully perform at the time of agreement evidence malice and despicable conduct towards Counterclaimants which entitles Counterclaimants to an award of punitive and exemplary damages as

provided for by Civil Code section 3294, which are requested herein.

## SIXTH CAUSE OF ACTION

## COMMON LAW NEGLIGENT MISREPRESENTATION

### (Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)

89.    Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

90.    The business relationship and operating agreements between Counterclaimants and Cross-Defendants constituted a relationship in which Counterclaimants reposed in Cross-Defendants deep trust, dependence, confidence, counsel, and reliance such that a fiduciary relationship was established.

91.    Cross-Defendants, with no reasonable grounds for believing them to be true, made material misrepresentations and concealed material facts in order to induce Counterclaimants' agreement to create and execute digital marketing or IP services for Hyper Engine and HEFG (and their clients), for the pecuniary benefit of Cross-Defendants. Cross-Defendants knew that Counterclaimants would and did rely and depend on Cross-Defendants' misrepresentations and judgments with regard to Counterclaimants providing their valuable time and services, and in so doing, Cross-Defendants undertook Counterclaimants' trust and confidence, and Cross-Defendants by their words and action, undertook and assumed a duty to advise, counsel and protect Counterclaimants.

92.    Counterclaimants at all times relied upon Cross-Defendants' representations,

financial judgment, and decision-making with regard to Hyper Engine in respect to Counterclaimants' decision to partner with Cross-Defendants in forming Hyper Engine.

93. Cross-Defendants were aware of Counterclaimants' reliance, dependence upon, and trust of them as principals of HEFG and Hyper Engine.

94. The Cross-Defendants made materially false representations to Counterclaimants as mentioned above. The Cross-Defendants were members and controlling persons of Hyper Engine and had direct involvement in its day-to-day operations. The material omissions from Cross-Defendants' written and verbal solicitations that were made to Counterclaimants in connection with inducing them to enter into a business relationship with Cross-Defendants was the collective and concerted action of the Cross-Defendants. The Cross-Defendants were each involved in drafting, producing, reviewing, and/or disseminating the information at issue in this action and made material verbal misrepresentations to Counterclaimants as well.

95. In detrimental reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts by Cross-Defendants, as set forth above, Counterclaimants agreed to create and execute digital marketing or IP services for Hyper Engine and HEFG (and their clients), for the pecuniary benefit of Cross-Defendants. Counterclaimants' detrimental reliance upon Cross-Defendants' misstatements was reasonable. Counterclaimants would not have done so and suffered the economic loss associated with providing services and allowing Cross-Defendants and Hyper Engine to benefit from Counterclaimants' good name and

reputation had the true information been disclosed to Counterclaimants by the Cross-Defendants.

96.     As a direct and proximate result of the wrongful conduct of the Cross-Defendants, Counterclaimants suffered damages in connection with being fraudulently induced to enter into the abovementioned business relationship with Cross-Defendants.

## SEVENTH CAUSE OF ACTION
## CONSPIRACY TO COMMIT FRAUD
**(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

97.     Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

98.     Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, Cross-Defendants knew and failed to disclose to Counterclaimants that, at the time Counterclaimants agreed to become a member in Hyper Engine, Cross-Defendants had no intention of recognizing Counterclaimants as a member of Hyper Engine nor granting Counterclaimants a rightful share in the company's profits and losses, all of which is specifically set forth above.

99.     Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, that Cross-Defendants, and each of them, agreed to and did act in concert or concur in the tortious scheme (which is specifically set forth in all 12 causes of action in this Complaint) with knowledge of the common and unlawful purpose of committing fraud against Counterclaimants.

100.   Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, that Cross-Defendants agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy to commit fraud against Counterclaimants.

101.   Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, that Cross-Defendants knew that the representations being made to Counterclaimants were false, misleading, incomplete, inaccurate, and contained material misrepresentations and made omissions of material facts, and that their actions in furtherance of the conspiracy were intended to defraud and deceive Counterclaimants.

102.   Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, Counterclaimants actually and justifiably relied on the foregoing misrepresentations to their detriment.  This reliance by Counterclaimants on said misrepresentations was and is reasonable, in part, because Cross-Defendants led Counterclaimants to believe that Counterclaimants would be treated as a member of Hyper Engine, allowed a share in the control and management of Hyper Engine, and allowed a 33.33% share in the company's profits and losses as agreed upon. However, in actuality, Cross-Defendants had no such intention and are simply continuing to line their pockets at the expense of Counterclaimants.

103.   Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, that in furtherance of the conspiracy to defraud Counterclaimants, Cross-Defendants, and each of them, overtly acted or tacitly consented to the wrongful acts done in furtherance of committing fraud against Counterclaimants.

104.   Counterclaimants are informed and believe, and on that basis allege, that at all times relevant herein, that Cross-Defendants, and each of them, engaged in the acts alleged above maliciously, willfully, and oppressively, and with the intent to harm Counterclaimants.  Counterclaimants are informed and believe, and on that basis alleges, that Cross-Defendants, and each of them, engaged in despicable conduct and acted with a conscious disregard of Counterclaimants' rights and with an intent to vex, injure, and annoy Counterclaimants such as to constitute oppression, fraud, or malice under Civil Code Section 3294.

105.   Counterclaimants are therefore entitled to punitive damages in an amount sufficient to punish and make an example of Cross-Defendants. WHEREFORE, Counterclaimants pray for judgment against the Cross-Defendants as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against All Counterclaim Defendants)

106.   Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

107.   As set forth above, Counterclaimants provided $35,818.41 in digital marketing services to Cross-Defendant without any reimbursement or payment received in return, as evidenced by 7 different invoices set forth above.

108.   As set forth above, Counterclaimants further provided value to Cross-Defendants in the form of cash advancements, services, and other labor provided by AONE and its staff for marketing films and other projects for Cross-Defendants without

reimbursement. Specifically, Counterclaimants provided value in marketing research, strategy development, social media management, paid media strategy, social media platform ad buying, native advertising buying, website design, website development, analytics reporting, creative delivery to ad networks, ad scheduling, and all other services related to marketing except securing clientele. Furthermore, Counterclaimants were responsible for the staffing and associated costs to execute all the aforementioned services.

109.    Counterclaimants conferred a benefit on Cross-Defendants. Cross-Defendants have refused to reimburse Counterclaimants or return property belonging to Counterclaimants as set forth above. Thus, Cross-Defendants is unjustly retaining said benefit at the expense of Counterclaimants.

110.    Thus, Cross-Defendants have been unjustly enriched in an amount according to proof, which exceeds the jurisdictional limitations of this Court.

## NINTH CAUSE OF ACTION
## UNLAWFUL BUSINESS PRACTICES (VIOLATION OF BUS. & PROF. CODE §17200)

**(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

111.    Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

112.    Section 17200 et seq. of the California Business and Professions Code prohibits any "unlawful, unfair, of fraudulent business act or practice."

113.    Unlawful practices are (1) any practices forbidden by law, be it civil, or

criminal, federal, state, or municipal, statutory, regulatory or court-made; (2) unfair practices are any practice whose harm to the victim outweighs its benefits; and (3) fraudulent practices are those that deceive the public. (*Saunders v. Superior Ct.* (2d Dist. 1994) 27 Cal.App.4th 832, 839.)

114.   As fully described above, Cross-Defendants' breach of operating agreement, fraudulent misrepresentations, and deceptive business practices amounted to unlawful, unfair, and/or fraudulent business acts or practices that are prohibited by Section 17200 et seq.

115.   As fully described above, Cross-Defendants have unlawfully and fraudulently misrepresented Counterclaimants' ownership interest in Hyper Engine, failed to treat Counterclaimants as a formal partner of Hyper Engine, excluded Counterclaimants from Hyper Engine's management and profits as agreed, and have claimed ownership of Counterclaimants' proprietary information and intellectual property developed for Hyper Engine and HEFG and owned by Counterclaimants.

116.   Cross-Defendants have profited economically, at Counterclaimants' expense, by excluding Counterclaimants as a member of Hyper Engine, failing to pay Counterclaimants for services rendered to HEFG and Hyper Engine, and claiming ownership of Counterclaimants' proprietary information and intellectual property developed for Hyper Engine/HEFG. The harm that this causes Counterclaimants greatly outweighs any unjustly received benefit that Cross-Defendants have gained.

117.   As described above, Cross-Defendants have engaged in unfair and

fraudulent business practices by committing the abovementioned unauthorized fraudulent, unfair, and unlawful acts.

118.   As a direct and proximate result of Cross-Defendants' unlawful, unfair, and fraudulent practices, Counterclaimants have suffered damages due to lost profits, reputational harm, damage to Counterclaimants' brand, and other damages in an amount to be determined according to proof at trial, in excess of this Court's jurisdiction, plus prejudgment interest at the maximum legal rate, costs, and reasonable attorney's fees if allowable by statute.

**TENTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(Against All Counterclaim Defendants)**

119.   Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

120.   An actual controversy has arisen and now exists between Counterclaimants and Cross-Defendants concerning their respective rights and duties in that Counterclaimants contends that the parties entered into a valid and binding LLC operating Agreement in connection with Hyper Engine, whereas Cross-Defendants dispute these contentions and contends that the parties did not enter into such binding operating agreement(s).

121.   Counterclaimants desire a judicial determination of the parties' rights and duties to one another as partners or members of Hyper Engine and HEFG. Counterclaimants seek a declaration that: (i) Counterclaimants are in an exclusive

partnership with Roxanne and Deon as members of Hyper Engine; (ii) Counterclaimants and Cross-Defendants are entitled to share in the control and management of Hyper Engine; (iii) Counterclaimants and Cross-Defendants are entitled to each share one-third (33.33%) of all profits Cross-Defendants received from Hyper Engine in connection with the ownership, sale, or use of company property; and (iv) Counterclaimants and Cross-Defendants are entitled to each share one-third (33.33%) of all profits Cross-Defendants received in connection with management or other fees obtained in connection with Hyper Engine and any of its subsidiaries.

122.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Counterclaimants may ascertain their rights and duties with respect to Hyper Engine. Such a judicial declaration is necessary and proper to avoid a multiplicity of suits. Moreover, the requested judicial declaration will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve this controversy.

## ELEVENTH CAUSE OF ACTION
## SPECIFIC PERFORMANCE
### (Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)

123.    Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

124.    Counterclaimants and Cross-Defendants entered into the aforementioned written operating agreement(s) as stated above.

125.    Cross-Defendants have not performed all terms, covenants, and conditions on its part to be performed under the subject written operating agreement.

126.   The consideration given by Counterclaimants was adequate, and the
agreement is, as to Cross-Defendants is just and reasonable.

127.   Despite Counterclaimants' recent demands, Cross-Defendants have failed
and refused to perform their obligations under the subject contract, by failing to treat
Darrick or AONE as a formal partner of Hyper Engine, excluding Counterclaimants from
Hyper Engine's management and profits, and claiming ownership of Counterclaimants'
proprietary information and intellectual property developed for Hyper Engine or HEFG
and rightfully owned by Counterclaimants.

128.   Counterclaimants have no plain, speedy, or adequate remedy in the ordinary
course of law, nor can any other party other than Cross-Defendants perform under the
written operating agreement, and further, damages to Counterclaimants would be difficult
to ascertain and would not afford adequate relief to compensate Counterclaimants for the
detriment suffered by them.

129.   Counterclaimants are therefore entitled to an order requiring that Cross-
Defendants perform the operating agreement as written and (i) recognize
Counterclaimants as an exclusive partner with Roxanne and Deon as members of Hyper
Engine; (ii) allow Counterclaimants to share in the control and management of the
company; (iii) grant Counterclaimants one-third (33.33%) of all profits Cross-Defendants
received from the business in connection with the ownership, sale, or use of Hyper
Engine property; and (iv) grant Counterclaimants a one-third (33.33%) share of all profits
Cross-Defendants received in connection with management or other fees obtained in

connection with Hyper Engine and any of its subsidiaries.

## TWELFTH CAUSE OF ACTION
## QUANTUM MERUIT
### (Against All Counterclaim Defendants)

130.   Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

131.   By virtue of Counterclaimants' services having been provided to Cross-Defendants as set forth above, Counterclaimants are entitled to compensation under the equitable doctrine of quantum meruit.

132.   Specifically, Counterclaimants provided value in marketing research, strategy development, social media management, paid media strategy, social media platform ad buying, native advertising buying, website design, website development, analytics reporting, creative delivery to ad networks, ad scheduling, and all other services related to marketing except securing clientele. Furthermore, Counterclaimants were responsible for the staffing and associated costs to execute the aforementioned services.

133.   Cross-Defendants have failed to compensate Counterclaimants for these services. Further, Cross-Defendants accepted, used, and enjoyed the services provided by Counterclaimants.

134.   Therefore, Counterclaimants are entitled to reasonable compensation for the services provided to Cross-Defendants, according to proof.

## THIRTEENTH CAUSE OF ACTION
## NEGLIGENCE

**(Against All Counterclaim Defendants Except Hidden Empire Holdings, LLC)**

135.  Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

136.  As alleged above, Counterclaimants and Cross-Defendants entered into a partnership to promote and use Counterclaimants' digital marketing services to benefit Cross-Defendants, HEFG, Hyper Engine, and/or their clients. As a partner of the company, Cross-Defendants at all times owed Counterclaimants a duty of care in their capacity as partners and in using and relying on Counterclaimants for their digital marketing services.

137.  Cross-Defendants breached the duty of care owed to Counterclaimants by shutting Counterclaimants out of their rightful share in Hyper Engine, excluding Counterclaimants from Hyper Engine's management and profits, and failing to compensate Counterclaimants for services provided with expected receipt of a benefit, as set forth above.

138.  Based upon the aforementioned, there existed a reasonably close casual connection between the above breach by Cross-Defendants and Counterclaimants' resulting injuries.  (*See People v. Young* (1942) 20 Cal. 2d 832; *Ahern v. Dillenback* (1991) 1 Cal. App. 4th 36; and California Civil Code Section 1714(a).)

139.  As a direct and proximate result of Cross-Defendants' aforementioned breach of the duty of care that they owed to Counterclaimants, Counterclaimants have sustained general, special, and consequential damages in an amount according to proof

at trial.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Counterclaimants hereby demand trial by jury on all issues so triable that are raised by Counterclaimants' Cross-Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray for judgment against Cross-Defendants as follows:

(a)    An award of monetary general, special, and consequential damages against Defendants, jointly and severally, plus the expenses incurred by Counterclaimants in their investigation and defense of the Complaint, together with interest on said sum from and after the date on which said sum first became due and owing, in an amount according to proof at trial;

(b)    For the recovery of Counterclaimants' one-third (33.33%) interest in Hyper Engine, and all profits and benefits arising therefrom;

(c)    For restitution from Cross-Defendants for unpaid balances for services, costs and other amounts provided by Counterclaimants to Cross-Defendants, according to proof at trial. The damages for Counterclaimants' unjust enrichment claim is limited to the damages set forth in paragraphs: (a), (c), (d), and (f);

(d)    Punitive damages in an amount sufficient to punish and make an example of Cross-Defendants;

**DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT**

(e)    Costs of suit, including but not limited to Counterclaimants' attorneys' fees and pre-judgment interest if allowable by statute or other law;

(f)    For a declaration of the respective rights and duties of the parties under the parties' operating agreement;

(g)    For a decree of specific performance directing Cross-Defendants to perform the parties' operating agreement as written; and

(h)    For such other and further relief as the Court deems just and proper.

DATED: November 28, 2022                LAW OFFICES OF JT FOX, APC


By:_____
J.T. Fox, Esq.
Attorneys for Defendants and Cross-Complainants, DARRICK ANGELONE, AONE CREATIVE, LLC, AND ON CHAIN INNOVATIONS, LLC.

## **PROOF OF SERVICE**

I, the undersigned, declare:

I am a citizen of the United States of America, am over the age of eighteen (18) years, and not a party to the within action.  I am an employee of Law Offices of JT Fox, APC, and my business address is 556 S. Fair Oaks Ave., Suite 444, Pasadena, CA 91105. My email address is: jt@jtfoxlaw.com.

On November 28, 2022, I served DEFENDANTS' FIRST AMENDED COUNTER-COMPLAINT FOR DAMAGES BASED ON (1) BREACH OF EXPRESS PARTNERSHIP AGREEMENT, (2) BREACH OF IMPLIED PARTNERSHIP AGREEMENT, (3) BREACH OF FIDUCIARY DUTY, (4) CONSTRUCTIVE FRAUD, (5) PROMISSORY FRAUD, (6) NEGLIGENT MISREPRESENTATION, (7) CONSPIRACY TO COMMIT FRAUD, (8) UNJUST ENRICHMENT, (9) UNLAWFUL BUSINESS PRACTICES (VIOLATION OF BUS. & PROF. CODE §17200), (10) DECLARATORY RELIEF, (11) SPECIFIC PERFORMANCE, (12) QUANTUM MERUIT, AND (13) CONVERSION on the parties involved by:

☒ BY ELECTRONIC TRANSFER] I caused all of the above-entitled document(s) to be served through my personal email address (jt@jtfoxlaw.com) addressed to all of the parties' below email addresses. Said document(s) were served on the interested party or parties in this action addressed as noted below.

Lawrence Hinkle (SBN 180551)
lhinkle@sandersroberts.com
Stephanie Jones Nojima (SBN178453)
sjonesnojima@sandersroberts.com
Matthew Barzman (SBN 309063)
mbarzman@sandersroberts.com
SANDERS ROBERTS LLP
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017

[   ]  **STATE:**  I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ]  **FEDERAL:**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on November 28, 2022 at Pasadena, California.

_____
DECLARANT – J.T. FOX