LAWRENCE HINKLE (SBN 180551)
lhinkle@sandersroberts.com
STEPHANIE JONES NOJIMA (SBN 178453)
sjonesnojima@sandersroberts.com
MATTHEW BARZMAN (SBN 309063)
mbarzman@sandersroberts.com
SANDERS ROBERTS LLP
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile:  (213) 234-4581

Attorneys for Plaintiffs
**HIDDEN EMPIRE HOLDINGS, LLC;**
**HYPER ENGINE, LLC; DEON TAYLOR;**
**AND FOR THIRD-PARTY DEFENDANT**
**ROXANNE TAYLOR**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE, LLC formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS, LLC, a Florida limited liability company, <br><br> Defendants. | CASE NO.  2:22-cv-06515-MWF-AGR <br><br> **PLAINTIFFS HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE, LLC AND DEON TAYLOR AND THIRD PARTY DEFENDANT ROXANNE TAYLOR'S MOTION TO DISMISS DEFENDANTS' THIRD AMENDED COUNTERCLAIMS AND THIRD PARTY COMPLAINT** <br><br> **Date:     April 24, 2023** <br> **Time:    10:00 a.m.** <br> **Courtroom: 5A** |

TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE, LLC, and DEON TAYLOR (collectively "Plaintiffs") and third party defendant ROXANNE TAYLOR ("R. Taylor") (Plaintiffs and R. Taylor are collectively referred to herein as "HEFG") will, and hereby do, move the Court for orders dismissing Defendants DARRICK ANGELONE, AONE CREATIVE, LLC, and ON CHAIN INNOVATIONS LLC'S counterclaims and third party claims against them as set forth in the Third Amended Counterclaim and the Third Party Complaint.   The motions are brought on the following grounds:

1.    The 2nd, 3rd, 4th, 5th, 6th, 7th and 11th claims fail to state a claim upon which relief can be granted because they are time barred.

2.    The 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 9th and 11th claims fail to state a claim upon which relief can be granted because they rely on implausible and materially inconsistent predicate allegations as to the existence of an operating agreement for Plaintiff Hyper Engine LLC.

3.    The 5th, 6th, 7th and 11th claims fail to state a claim upon which relief can be granted because they sound in fraud but fail to meet FRCP Rule 9(b)'s strict pleading requirements.

4.    The 4th, 5th and 11th claims fail to state a claim upon which relief can be granted because Defendants/Counterclaimants cannot establish that a duty exists.

5.    The 8th claim fails to state a claim upon which relief can be granted because California law does not recognize a stand-alone claim for unjust enrichment and because an alleged contract covers the same subject matter.

6.    The 10th claim fails to state a claim upon which relief can be granted because Defendants have an adequate legal remedy and because it is an equitable claim that relies on the same factual predicate as their alleged legal claims.

1    This motion will be based on this Notice of Motion and Motion to Dismiss, the

2    accompanying Memorandum of Points and Authorities, and any argument offered at

3    the hearing on this motion and the filed and records of this case.

4    This motion is made following the conference of counsel, pursuant to Local

5    Rule 7-3, which took place on March 10, 2023.

6

7    Dated:  March 21, 2023          **SANDERS ROBERTS LLP**

8

9                                    By:

10                                   */s/ Lawrence Hinkle*
                                     Lawrence Hinkle, Esq.

11                                   Stephanie Jones Nojima, Esq.
                                     Matthew Barzman, Esq.

12                                   Attorneys for Plaintiffs
                                     HIDDEN EMPIRE HOLDINGS, LLC; HYPER

13                                   ENGINE, LLC; DEON TAYLOR; AND FOR
                                     THIRD-PARTY DEFENDANT ROXANNE

14                                   TAYLOR

15

16

17

18

19

20

21

22

23

24

25

26

27

28


SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS IN THE TACC ..................................................... 2

      A.    The HEFG Contract ........................................................... 2

      B.    Alleged Hyper Engine Operating Agreements ........................... 2

            1.    3/1/18 Operating Agreement for Hyper Engine ...................... 2

            2.    12/1/19 Operating Agreement for Hyper Engine ..................... 3

            3.    Undated Implied Operating Agreement for Hyper Engine ........ 3

      C.    Alleged Attempt to Restructure ............................................. 3

      D.    Alleged Wrongdoing Of Plaintiffs Regarding Hyper Engine And
            Defendants' Alleged Damages ............................................ 4

      E.    The Fear Game And Defendants' Alleged Damages ................... 4

      F.    Outstanding Invoices ......................................................... 5

III.  DEFENDANTS' ADMISSIONS THAT NO OPERATING
      AGREEMENT FOR HYPER ENGINE EXISTS ARE FATAL TO
      THEIR CLAIMS ............................................................................... 5

IV.   LEGAL STANDARD FOR A MOTION TO DISMISS ............................... 9

V.    THE FIRST CLAIM FOR BREACH OF EXPRESS OPERATING
      AGREEMENT FAILS ....................................................................... 10

      A.    Angelone's Admission That No Contract Exists Is Fatal ............ 10

      B.    This Claim Is Internally Inconsistent and Lacks Plausibility ......... 10

VI.   THE SECOND CLAIM FOR BREACH OF ORAL OPERATING
      AGREEMENT FAILS ....................................................................... 12

      A.    This Claim is Time Barred ................................................ 12

      B.    This Claim Is Internally Inconsistent and Lacks Plausibility ......... 13

VII.  THE THIRD CLAIM FOR BREACH OF IMPLIED  OPERATING
      AGREEMENT FAILS ....................................................................... 14

      A.    This Claim is Time Barred ................................................ 14

      B.    This Claim Is Internally Inconsistent and Lacks Plausibility ......... 14

VIII. THE FOURTH CLAIM FOR BREACH OF FIDUCIARY DUTY



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

FAILS ............................................................................................... 14

    A.    The Claim is Time Barred .................................................... 14

    B.    A Duty Cannot Be Established ............................................. 15

IX.   THE FIFTH CLAIM FOR CONSTRUCTIVE FRAUD FAILS ................. 15

    A.    The Claim is Time Barred .................................................... 15

    B.    Angelone Has Not Plausibly Alleged a Duty ...................... 16

    C.    Angelone Failed To Meet FRCP Rule 9(b)'s Strict Pleading
        Requirements ........................................................................ 16

X.    THE SIXTH CLAIM FOR PROMISSORY FRAUD FAILS ..................... 17

    A.    The Claim Is Time Barred .................................................. 17

    B.    Angelone Failed To Plead This Claim With Particularity ................. 18

XI.   THE SEVENTH CLAIM FOR NEGLIGENT MISREPRESENTATION
    FAILS ............................................................................................... 19

    A.    The Claim is Time Barred .................................................... 19

    B.    Defendants Have Not Plausibly Alleged a Duty or Met FRCP Rule
        9(b)'s Strict Pleading Requirements ...................................... 19

XII.  THE EIGHTH CLAIM FOR UNJUST ENRICHMENT FAILS ............... 20

    A.    California Law Does Not Recognize a Cause Of Action For Unjust
        Enrichment ............................................................................ 20

    B.    The Unjust Enrichment Claim  is the Subject of an Alleged
        Contract Between the Parties ................................................ 21

XIII. THE NINTH CLAIM FOR DECLARATORY RELIEF FAILS ................. 21

XIV. THE TENTH CLAIM FOR QUANTUM MERUIT FAILS ........................ 21

    A.    Defendants Have Adequate Legal Remedies ........................ 21

    B.    Defendants' Quantum Meruit Claim is Time Barred ......................... 23

XV.  THE ELEVENTH CLAIM FOR NEGLIGENCE FAILS ............................ 23

    A.    The Claim is Time Barred .................................................... 23

    B.    The Negligence Claim Sounds in Fraud and Lacks the Requisite
        Specificity Required by FRCP Rule 9 ................................... 24

XVI. THE COURT SHOULD NOT PERMIT LEAVE TO AMEND ................. 25

XVII. CONCLUSION ............................................................................... 25



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**TABLE OF AUTHORITIES**



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**Cases**

*Aguilar v. Ocwen Fin. Corp.*, No. CV 14-7675-MWF(SSX), 2015 WL 12659913, at *5–6 (C.D. Cal. Jan. 27, 2015)................................................20, 21

*Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (Ct. App. 2014)................................................................14

*American Title Ins. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988) ...............10

*Angeles Chem. Co. v. Spencer & Jones* (1996) 44 Cal.App.4th 112, 119 (1996).............................................................................23

*Ashcroft v. Iqubal*, 556 U.S. 662, 679 (2009).....................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), ........................................2, 10

*Bird v. First Alert, Inc.*, No. 14-cv-03585-PJH, 2014 WL 7248734 at *7 (N.D. Cal. Dec. 19, 2014)................................................................22

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal.*, Inc., 94 Cal. App. 4th 151, (2001) ....................................................................21

*Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) ....................................................18

*City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (Ct. App. 2000).............................................................................14

*Condor Ins. Co. v. Williamsburg Nat. Ins. Co.,* 49 Cal.App.4th 554, 565 (1996).............................................................................21

*Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F. 2d 242, 247 (9th Cir. 1990) ....................................................................25

*Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) .......................24

*Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir.2011).......................................16

*Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989) ........................20

*Doe v. Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1430 (Cal. Ct. App. 2010) .........................................................17

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)..........................20

*Ebeid v. Lungwitz,* 616 F.3d 993, 998 (9th Cir.2010) ........................................17

*Egelhoff v. Pac. Lightwave*, No. CV1204745RGKDTBX, 2013 WL 12132025, at *2 (C.D. Cal. June 14, 2013)......................................12

*F.E. Trotter, Inc. v. Watkins*, 869 F. 2d 1312, 1318 (9th Cir. 1989).......................25

*Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992)..........................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION TO DISMISS

**TABLE OF AUTHORITIES**



SANDERS
ROBERTS

1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

*Goelz et al.*, Rutter Group Practice Guide, Federal Ninth Circuit Civil Appellate Practice (2021),........................................................................................25

*Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV1701856CJCJDEX, 2018 WL 4940825, at *6 (C.D. Cal. May 3, 2018)...........................................................................................................22

*Hazel Green Ranch, LLC v.* U.S. Dep't of Interior, No. 1:07-CV- 00414 OWW SMS, 2010 WL 1342914, at *8 (E.D. Cal. Apr. 5, 2001) .......................11

*In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992)................21

*In re Glenfed, Inc. Secur. Litig.*, 42 F.3d 1541, 1547, fn.7 (9th Cir. 1994) ........................................................................................................................20

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009.)............................24

*Maglica v. Maglica*, 66 Cal.App.4th 442, 452 (1998) ...............................................23

*Magpali v. Farmers Group, Inc.*, 48 Cal.App.4th 471, 481, (1996) .......................18

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003)...........................................................................................22

*Michel v. Moore & Associates, Inc.*, 156 Cal.App.4th 756, 763 (2007) ..................16

*Mueller v. San Diego Ent. Partners, LLC*, 260 F. Supp. 3d 1283, 1297 (S.D. Cal. 2017)......................................................................................................20

*Nagy v. Nagy*, 210 Cal.App.3d 1262, 1268 (1989) ....................................................24

*Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ........................................................................................................19

*Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 820-21 (2011) ....................15

*Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415–16 (C.D. Cal. 2012)...................................................................................................................18

*Reed v. Labbe*, No. CV 10–8315–SVW (OP), 2012 WL 5267726, *6 (C.D. Cal. Oct.22, 2012)....................................................................................6

*Rhynes v. Stryker Corp.*, No. 10-cv-05619-SC, 2011 WL 2149095 at *4 (N.D. Cal. May 31, 2011).................................................................................23

*Robuck v. Dean Witter & Co., Inc.*, 649 F.2d 641, 644 (9th Cir. 1980) ..................15

*Sheppard v. David Evans and Assocs.*, 694 F. 3d 1045, 1051 (9th Cir. 2012 .........................................................................................................................10

*Siaperas v. Montana State Comp. Ins. Fund*, 480 F. 3d 1001, 1003 (9th Cir. 2007).............................................................................................................10

*Smith v. Allstate Ins. Co.*, 160 F.Supp.2d 1150, 1152 (S.D.Cal.2001) ...................18

**TABLE OF AUTHORITIES**



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)....................22

*Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001)......................6

*Stansfield v. Starkey*, 220 Cal.App.3d 59, 74 (1990) ................................................24

*Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 159
   (1991)..................................................................................................18, 20

*Tenzer v. Superscope, Inc.,* 39 Cal.3d 18, 30–31 (1985)...........................................18

*Thomson v. Canyon,* 198 Cal.App.4th 594, 607 (2011) ............................................15

*Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.,* 537
   F.Supp.2d 1126, 1135 (D. Idaho 2008)...........................................10, 12

*Tyler v. Children's Home Society,* 29 Cal.App.4th 511, 548 (1994).......................16

*Unpingco v. Hong Kong Macau Corp.*, 935 F.2d 1043, 1045 (9th
   Cir.1991)............................................................................................19

*Younan v. Equifax Inc.,* 111 Cal.App.3d 498, 516, fn. 14 (1980) ...........................16

*Zecos v. Nicholas-Applegate Cap. Mgmt.*, 42 F. App'x 31, 32 (9th Cir.
   2002).............................................................................................12, 23

**Statutes**

Cal Civ. Code § 338(d).................................................................14, 15, 17, 19

Cal. Civ.Code § 1550........................................................................................13

Cal. Code Civ. Proc. § 339.1 ....................................................................12, 14

**Other Authorities**

55 Cal. Jur.3d Restitution 360–61 (1980) ................................................22

*Summary of California Law: Contracts* § 91 (1987) ...............................22

**Rules**

FRCP Rule 9(b) ..................................................................................1, 16

FRCP Rule 12(b) ...........................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

All eleven (11) of the claims alleged in the Third Amended Counterclaim ("TACC") and Third Party Complaint ("TPC") against Roxanne Taylor fail as a matter of law and Defendants/Counterclaimants Darrick Angelone ("Angelone") and AOne Creative, LLC's ("AOne") (collectively, "Defendants'") prior inconsistent pleadings and admissions establish that these pleadings are shams containing claims made up out of whole cloth in retaliation for Plaintiffs' filing the instant action to recover their valuable intellectual property assets hijacked by Defendants.[1] They all should be dismissed without leave to amend for many reasons.

The 2nd, 3rd, 4th, 5th, 6th, 7th and 11th claims are time barred on their face and should be dismissed on that basis alone. The 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 9th and 11th claims rely on an implausible predicate allegation that an operating agreement for Plaintiff Hyper Engine LLC ("Hyper Engine") exists, when Defendants have admitted unequivocally in a multitude of different pleadings that no such agreement ever existed. The 4th, 5th and 11th claims fail because Defendants have not and cannot establish that a duty exists. The 5th, 6th, 7th and 11th claims sound in fraud and fail to meet FRCP Rule 9(b)'s strict pleading requirements. The 8th claim fails because California law does not recognize a stand-alone claim for unjust enrichment and separately because an alleged contract covers the same subject matter. The 10th claim fails because it is an equitable claim asserted where Defendants have an adequate legal remedy and because it relies on the same factual predicate as their alleged legal claims.

After three prior bites at the apple attempting to allege sustainable claims against Plaintiffs/Counterdefendants Hidden Empire Holdings, LLC ("HEFG"), Hyper Engine, Deon Taylor and Roxanne Taylor (collectively, "Plaintiffs"),

---

[1] The allegations and claims in the TACC and the Third Party Compaint against Roxanne Taylor are exactly the same and this motion is directed toward both pleadings.

Defendants have only demonstrated repeatedly the sham nature of all their claims, changing theories and facts at will with no regard to what they have previously admitted in prior pleadings. Their pleadings are replete with inconsistencies, implausible allegations and fatal admissions, all of which mandate the dismissal of the entire TACC and TPC with prejudice. Allowing amendment of the TACC or TPC would be futile.

## II.   STATEMENT OF FACTS IN THE TACC[2]

### A. The HEFG Contract

On or about April 26, 2012, HEFG entered into a written agreement with AOne ("2012 Agreement") pursuant to which AOne was hired to develop certain websites. Complaint, ¶ 16. Thereafter, Angelone, D. Taylor and R. Taylor agreed that Angelone and AOne "would continue to provide marketing services and other digital services" to "Deon, Roxanne, and HEFG, which included digital and social media marketing, developing website domains, and creating digital content such as video and applications." Id. at ¶ 17.

### B. Alleged Hyper Engine Operating Agreements

On March 1, 2018, Hyper Engine was formed. Id. at ¶ 29. Hyper Engine was contemplated as a marketing company and subsidiary of HEFG. Id. at ¶ 38.

#### 1.  3/1/18 Operating Agreement for Hyper Engine

On or about March 1, 2018, Angelone, the Taylors and third-party Robert F. Smith entered into a long-form operating agreement for Hyper Engine, a copy of which is attached to the TACC as Exhibit A ("3/18/18 Agreement"). Id. at ¶ 28, Exhibit A. Based "on information and belief," D. Taylor and R. Taylor "signed and

---

[2] Because a 12(b)(6) motion proceeds on the assumption that well-pleaded factual allegations are accepted arguendo, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the "facts" below are taken from the TACC. To the extent the TACC survives this motion, Plaintiffs will contest many of these allegations.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

executed" the 3/18/18 Agreement.[3] Id. As part of their "partnership" within Hyper Engine, Angelone and AOne were solely responsible for marketing, web domain and all other digital, creative or IP services (although the 3/18/18 Agreement itself does not state they would have those responsibilities). Id. at ¶ 29. Pursuant to the 3/18/18 Agreement, Angelone received 16.6%, the Taylors each received 16.6%, and Mr. Smith received 50% ownership of Hyper Engine. Id. at ¶ ¶ 28, 31, Exhibit A.

## 2. 12/1/19 Operating Agreement for Hyper Engine

On or about December 1, 2019 (and at various other times throughout the parties' relationship), AOne and the Taylors verbally entered into an oral operating agreement for Hyper Engine ("12/1/19 Agreement"). Id. at ¶¶ 30, 75. Pursuant to that agreement, AOne received 33.33% and the Taylors each received 33.33% ownership of Hyper Engine. Id. at ¶¶ 30, 31. Angelone and the Taylors agreed that "all other material terms of this alleged oral operating agreement would be in accordance with the terms of the 3/1/18 Agreement. Id. at ¶ 75.

## 3. Undated Implied Operating Agreement for Hyper Engine

Angelone and the Taylors "manifested an intention to enter into an LLC operating agreement to do those things and to equally share in the profits and losses therefrom." Id. at ¶ 81. They "further manifested an intention that all other material terms of this implied operating agreement would be in accordance with the terms of the parties' March 1, 2018 operating agreement." Id. Defendants do not allege when the parties manifested those intentions.

## C. Alleged Attempt to Restructure

Beginning in or around April 2021, HEFG hired Quincy Newell as Chief Operating Officer to help restructure HEFG which included adding Hyper Engine as a subsidiary or wing of HEFG. Id. at ¶ 40. Around that time, Angelone sought to re-

---

[3] The 3/18/18 Agreement (Exhibit A to the TACC) is not signed by any party. Even though Defendants allege "on information and belief" that the Taylors signed the agreement, Defendants do not allege that either Angelone or Mr. Smith signed that agreement.

negotiate his membership interest in Hyper Engine to a share above 50% to achieve majority ownership of the company. Id. at ¶ 41. The Taylors disregarded Angelone's attempt to re-negotiate and formalize a new operating agreement for Hyper Engine upon restructuring. Id. On or about February 22, 2022, Angelone introduced his attorney Darrell Thompson, Esq. to the Taylors and Mr. Newell to re-negotiate and finalize the terms of a revised Hyper Engine operating agreement. Id. at ¶ 42.

### D. Alleged Wrongdoing Of Plaintiffs Regarding Hyper Engine And Defendants' Alleged Damages

Prior to and during the formation of Hyper Engine, the Taylors sought to exclude Angelone as a member of Hyper Engine while benefitting from the marketing, web domain, and all other digital, creative, or IP services provided by Angelone and AOne. Id. at ¶ 34. Beginning in or around April 2021, the Taylors began to carry out their plan to breach "the company operating agreement, exclude [Angelone] from [Hyper Engine], and take Hyper Engine's assets, proprietary information, and intellectual property and claim it as their own." Id. at ¶ 38. For each operating agreement, the Taylors failed to recognize Angelone as a member of Hyper Engine despite numerous promises and reassurances that such membership was created. Id. at ¶¶ 39, 71. In addition, they breached the operating agreements by excluding Angelone from Hyper Engine's management and profits, and by claiming ownership of Angelone and AOne's proprietary information and intellectual property developed for Hyper Engine and HEFG. Id. at ¶¶ 71, 77, 86.

Based on "information and belief," the Taylors diverted funds from the Hyper Engine bank account and committed them to personal use and to finance debts for various HEFG projects. Id. at ¶ 36. Angelone is entitled to no less than $4,000,000 in lost profits and other damages by virtue of the Taylors' exclusion of Angelone as a member of Hyper Engine. Id. at ¶ 66.

### E. The Fear Game And Defendants' Alleged Damages

In or around August 2021, Angelone and AOne were engaged to handle the

digital marketing for the theatrical release of the HEFG film titled "Fear," ultimately set for release on January 27, 2023. Id. at ¶ 48. AOne spent in excess of $250,000 for development of the marketing strategy and to be present at meetings and other events during the development. Id. Angelone and AOne spent countless hours in their engagement for marketing "Fear." Id. at ¶ 49. Plaintiffs used AOne's marketing strategy for "Fear" without permission or paying for it. Id. at ¶ 48.

On or around November 29, 2021, Angelone proposed a video game and NFT activation based on "Fear" as part of a larger marketing plan. Id. at ¶¶ 51,52. On or about December 15, 2021, Angelone sent draft artwork for characters as they would look in the Fear game to HEFG personnel. From December 2021 through February 2022, Angelone communicated with HEFG about the development of the Fear game. Id. at ¶ 52. During the foregoing communications, HEFG did not tell Angelone that he should cease work on the projects related to Fear. Id. Angelone is "entitled to a 15% fee of the $2.7M marketing strategy for Fear (i.e., $405,000.00)…." Id. at ¶ 67. Angelone and AOne also seek $250,000 for the development of the Fear game, and $10,000 for the development of a Fear Instagram filter. Id.

### F. **Outstanding Invoices**

Beginning in May 2022, Angelone and AOne incurred expenses in providing their time and services to HEFG, Hyper Engine, and the Taylors. Id. at ¶ 60. There are 7 outstanding invoices totaling $35,818.41. Id.

## III. **DEFENDANTS' ADMISSIONS THAT NO OPERATING AGREEMENT FOR HYPER ENGINE EXISTS ARE FATAL TO THEIR CLAIMS**

Angelone admitted in a declaration submitted under penalty of perjury to the Court that the parties never entered into any of the three alleged operating agreements where he stated:

"On or about *February 21, 2022* I introduced AOne's retained counsel Darrell Thompson, Esq. to Deon, Roxanne and Quincy Newell (COO of

HEFG) via, email, ***for the expressed purposes of finalizing the terms of our partnership that had been left languishing since 2018."***

[Emphasis added.] Dkt. 18-2, Angelone Decl., ¶ 39.[4] The "partnership" Angelone is referring to is Hyper Engine and his alleged ownership in that company as contemplated by the proposed 3/1/18 Agreement. Angelone's statement that Mr. Thompson was hired in February 2022 to finalize the terms that had been left languishing since 2018 means that no operating agreement had been entered into. In the same declaration, Angelone also made the following statement purportedly on August 20, 2019 confirming his understanding that no operating agreement has been entered into:

> "In lieu of the continued burden of carried costs and ***lack of formalizing our hyper engine partnership***, this is notice that ***until a formal partnership agreement*** between aone and hefg is formalized, moving forward aone will retain ownership of [all HEFG intellectual property]…Happy to discuss in more detail or better yet ***formalize Hyper Engine*** and get to work."[5]

(Emphasis added.) Dkt. 18-2, Angelone Decl., ¶¶ 39, 69, Ex. 44.

Angelone also admitted that the 3/1/18 Agreement was just a draft and that he did not receive it until <u>August 1, 2019</u> where he stated:

> "On or about March 1, 2018, Cross-Defendants created a ***draft*** operating

---

[4] Defendants submitted the Angelone Decl. to this Court in support of their opposition to HEFG's motion for preliminary injunction. It is attached to HEFG's Request for Judicial Notice ("RJN") as Exhibit 4.

[5] Exhibt 44 to the Angelone Decl. (Dkt. 18-2) is explicitly referenced at ¶ 37 in the TACC so the Court may consider its contents in ruling on the instant motion to dismiss. *Reed v. Labbe,* No. CV 10–8315–SVW (OP), 2012 WL 5267726, *6 (C.D. Cal. Oct.22, 2012) ("Exhibits that contradict the allegations of a complaint may fatally undermine [its] allegations," citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001), as amended, 275 F.3d 1187 (a plaintiff can "plead himself out of a claim by including ... details contrary to his claims")); see also *Sprewell,* 266 F.3d at 988 ("a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

agreement for Hyper Engine, created by Deon Taylor, Roxanne Taylor, and Velma Sykes. ***It was sent to Counterclaimants for review on August 1, 2019.***"

[Emphasis added.] Dkt. 33 (CC) ¶ 16, RJN, Ex. 6; Dkt. 37 (FACC), ¶ 25, RJN, Ex. 7. Defendants' acknowledgement that the 3/1/18 Agreement was just a draft that Angelone did not receive until August 1, 2019 is in conflict with his demonstrably false assertion that the 3/1/18 Agreement was entered into over a year earlier—on March 1, 2018.

Noticeably absent from the TACC is either a copy of the 3/1/18 Agreement signed by all of the parties thereto (it is not signed by anyone) or even an allegation that all of the parties to that agreement signed it. Instead, Defendants attached to the TACC an unsigned draft of the agreement and alleged "on information and belief" that it was signed only by the Taylors. TACC, ¶ 28. There is no allegation that Angelone and Mr. Smith signed it, and no allegation that Mr. Smith agreed to it.

Without explanation, Angelone then claims that on January 10, 2020 he received another ***draft*** operating agreement that was supposedly dated December 1, 2019 – the 12/1/19 Agreement. Dkt. 18-2, Angelone Decl., ¶ 5. He does not allege that this second draft was signed. Instead, he claims that an oral agreement was entered into on December 1, 2019. TACC, ¶ 75. Angelone's allegations get even more bizarre and contradictory because he then claims that the terms of the parties' alleged oral operating agreement dated December 1, 2019 are the terms set forth in the draft 3/1/18 Agreement, and <u>not</u> the draft 12/1/19 Agreement. Id. There is no logic to why that would be the case.

Further evidencing the fatal conflicts in Defendants' allegations, Angelone admits that the parties to the 3/1/18 Agreement and the 12/1/19 Agreement are different. The 3/1/18 Agreement, attached to the TACC as Exhibit A, states that the parties are <u>Angelone, D. Taylor, R. Taylor and third-party Robert F. Smith</u>. TACC, Ex. A. He alleges that the parties to the 12/1/19 Agreement are <u>AOne, D. Taylor and</u>

<u>R. Taylor</u>. Dkt. 18-2 Angelone Decl., ¶ 5;  TACC, ¶ 31.[6] What happened to Robert F. Smith's 50% ownership and Angelone's 16.6% ownership in Hyper Engine that were supposedly part of the 3/1/18 Agreement? How does AOne own 33% under one operating agreement and Angelone own 16.6% at the same time? Defendants provide no explanation as to how there could be different operating agreements involving different parties with different terms for the same company, Hyper Engine, supposedly in existence at the same time. Even if Defendants try to explain away all of the contradictions, they cannot overcome Angelone's fatal admission noted above that *as of February 2022 there was no finalized agreement between the parties*.

Defendants made a number of other admissions consistent with the fact that none of the parties entered into an operating agreement. For example, Defendants allege:

> "Had Darrick known the actual facts as set forth herein concerning Deon
> and Roxanne's ***failure to consummate a binding partnership or***
> ***operating agreement for Hyper Engine***, Darrick and AONE would not
> have performed services for Counter-Defendants and Roxanne…."

[Emphasis added.] TACC,  ¶ 39. Defendants further allege:

> "Following the hiring of Quincy Newell, ***[Plaintiffs] knowingly ignored***
> ***or disregarded any attempts by [Defendants] to formalize a partnership***
> ***or operating agreement for Hyper Engine upon restructuring***…."

[Emphasis added.] RJN, Ex. 3 (State SAC,  ¶ 31).

Defendants also allege that around February 22, 2022, Angelone sent an email to the Taylors and Mr. Newell stating:

> "I want to make sure that the loose ends of our partnership surrounding
> Hyper Engine are nailed down. ***My hope is that Darrell can work with***

---

[6] Not able to keep track of his allegations, in some places in the TACC Defendants also allege that Angelone, not AOne, received 33% ownership of Hyper Engine pursuant to the 12/1/19 Agreement. TACC, ¶ 75.

> *Quincy to formalize the terms and that an agreement can be made without any further delay*."

[Emphasis added.] Id., at ¶ 32; RJN, Ex. 7 (FACC, ¶ 35); RJN, Ex. 8 (SACC, ¶ 41); TACC, ¶ 42. Defendants also admit that on April 8, 2022, Angelone:

> "…*expressed his concern that formalization was long overdue and should be addressed with urgency*."

[Emphasis added.] Id. at  ¶ ¶ 32 (State SAC) 35 (FACC); 41 (SACC);42 (TACC). They further allege that on April 21, 2022, Mr. Newell:

> "…responded with a demand for a master services agreement to cover all services then provided by [Angelone] and AOne to HEFG and Hyper Engine, *which was seemingly to detract from [Angelone's] demand to formalize an operating agreement*."

[Emphasis added.] FACC, ¶ 35; TACC, ¶ 42. Defendants also allege that on or about April 26, 2022, Angelone expressed to R. Taylor by email:

> "…his personal dissatisfaction with the approach [Mr. Newell] was taking in *avoiding formalization of a Hyper Engine operating agreement*…."

[Emphasis added.] FACC, ¶ 36; SACC, ¶ 42; TACC, ¶ 43. They also allege that on or about August 9, 2022, Angelone told D. Taylor:

> "that the mutual understanding was that *a Hyper Engine partnership be formalized*…."

[Emphasis added.] Id. at ¶ 40 (FACC); ¶ 46 (SACC); ¶ 47 (TACC).

## IV.   LEGAL STANDARD FOR A MOTION TO DISMISS

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts grant motions to dismiss under Rule 8 and Rule 12(b)(6) where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Siaperas v. Montana State Comp. Ins. Fund*, 480 F. 3d 1001, 1003 (9th Cir.

- 9 -

2007). Dismissal is appropriate where a plaintiff fails "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "[A]nalyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Sheppard v. David Evans and Assocs.*, 694 F. 3d 1045, 1051 (9th Cir. 2012 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## V. THE 1ST CLAIM FOR BREACH OF EXPRESS OPERATING AGREEMENT FAILS

### A. Angelone's Admission That No Contract Exists Is Fatal

Under federal law, admissions in the pleadings are generally binding on the parties and the Court. *American Title Ins. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988). **"Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."** *Id.* **"Judicial admissions ... have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."** *Id.* (quotations omitted) (emphasis added). To qualify as a judicial admission, the admission must be deliberate, clear, and unequivocal. *Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.,* 537 F.Supp.2d 1126, 1135 (D. Idaho 2008).

As noted above, Angelone admitted at least two separate times in his September 23, 2022 declaration filed with this Court that the parties never entered into any binding operating agreement for Hyper Engine. Dkt. 23-1 Angelone Decl., ¶¶ 39, 69, Ex. 44.) Angelone's admissions are deliberate, clear, and unequivocal statements of fact that conclusively establish that his breach of express written operating agreement claim is a sham, because no such operating agreement was ever finalized. Those admissions, along with the several other admissions identified in Section III, above, support the dismissal of this claim with prejudice.

### B. This Claim Is Internally Inconsistent and Lacks Plausibility

A claim is not plausible unless the plaintiff pleads factual content that allows

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, supra*, 556 U.S. at 663. In determining whether allegations are plausible or merely possible, courts may disregard allegations that are, among other things, *"conclusory allegations of law,* mere legal conclusions, unwarranted deductions of fact, or unreasonable inferences" as well as allegations that are *"internally inconsistent." Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000) (emphasis added). Where allegations in support of a claim are contradicted by other allegations in the complaint, this undermines the claim, and is grounds to dismiss it. *Hazel Green Ranch, LLC v.* U.S. *Dep't of Interior,* No. 1:07-CV- 00414 OWW SMS, 2010 WL 1342914, at *8 (E.D. Cal. Apr. 5, 2001).

Here, this claim is premised on a bizarre and factually bereft, conclusory allegation, on information and belief, that "…a long form version of the operating agreement [attached as Ex. A to the TACC] was signed and executed by [the Taylors] on behalf of Hyper Engine, LLC." Notwithstanding this allegation, Defendants acknowledge in at least four (4) other places in the TACC that the unsigned agreement attached to the TACC was merely a draft and that no agreement (written or otherwise) for Hyper Engine was ever finalized. TACC, ¶¶ 39, 42, 43, 47. These internally inconsistent allegations establish that Defendants' conclusory allegation that a long form version of the alleged written agreement was signed by the Taylors is not only implausible, but demonstrably false.

Moreover, to allege adequately that parties consented to a contract, a plaintiff must plausibly plead that the contracting parties mutually assented to enter into an agreement by accepting the terms of a definite and binding offer. *Benton v. Baker Hughes*, No. CV 12-07735 MMM MRWX, 2013 WL 3353636, at *5 (C.D. Cal. June 30, 2013. Defendants' own admissions and inconsistent allegations in the TACC establish the parties never agreed to the terms of any agreement relating to Hyper Engine. Defendants' contrary, conclusory allegations must be disregarded.



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

## VI.   THE 2ND CLAIM FOR BREACH OF ORAL OPERATING AGREEMENT FAILS

### A. This Claim is Time Barred

The statute of limitations for breach of an oral contract is two years. Cal. Code Civ. Proc. § 339.1. Where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim is appropriate. *Egelhoff v. Pac. Lightwave*, No. CV1204745RGKDTBX, 2013 WL 12132025, at *2 (C.D. Cal. June 14, 2013). A cause of action for a breach of contract accrues at the time of the breach, *i.e.,* when the party charged with the duty to perform under the contract fails to perform. *Zecos v. Nicholas-Applegate Cap. Mgmt.*, 42 F. App'x 31, 32 (9th Cir. 2002).

Here, Counterclaimants allege (1) "[o]n or about December 1, 2019…Darrick, Deon and Roxanne verbally entered into an agreement to form Hyper Engine for the general purpose of using Darrick and AONE's digital marketing services to benefit Deon, Roxanne, HEFG and Hyper Engine" (TACC, ¶75) ; and (2) "Darrick notified Deon and Roxanne by email that AOne maintains ownership of all works created by AOne, including domains and social accounts created in collaboration between AOne and HEFG." TACC, ¶ 37.  Angelone admitted that on August 20, 2019, as a result of "[his] frustration at the lack of inclusion in the Hyper Engine decision making process," (*i.e.* his claimed ouster from Hyper Engine) he began to hijack Plaintiffs' intellectual property assets on behalf of himself and his company AOne.  Dkt. 23-1, Angelone Decl., ¶ 69, Ex. 44.[7]

In light of the numerous admissions in the TACC that no written agreement was ever finalized, and in light of Angelone's further admission in his Declaration that he took self-help measures in response to the Taylor's claimed breach of a Hyper

---

[7] This deliberate, clear, and unequivocal statement of fact is binding on Angelone as an admission. *Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.,* 537 F.Supp.2d 1126, 1135 (D. Idaho 2008).

Engine operating agreement on August 20, 2019, to the extent any oral agreement ever was made (which Plaintiffs dispute) the agreement had to have arisen before August 20, 2019, because an agreement has to exist before it can be breached.[8] Angelone's admission that he declared the Taylors in breach of a claimed operating agreement on August 20, 2019 therefore triggered the two year statute of limitations for any such agreement. Dkt. 23-1, Angelone Decl.,¶ 69., Ex. 44. Defendants admit that they did not file any claims related to HEFG's alleged breaches until September 16, 2022. Declaration of J.T. Fox ("Fox Decl.") in Response to Plaintiffs' Motion for Preliminary Injunction, Dkt. 18-3 , ¶ 8.; RJN, Ex. 5. Based on these admissions, the statute of limitations expired on August 20, 2021, over a year before they brought the instant claim; it should be dismissed without leave to amend.

## B. **This Claim Is Internally Inconsistent and Lacks Plausibility**

The essential elements of a contract are: (1) the parties' capacity to contract; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ.Code § 1550. A plaintiff must plausibly plead that the contracting parties mutually assented to enter into an agreement by accepting the terms of a definite and binding offer. *Benton v. Baker Hughes*, *supra,* 2013 WL 3353636, at *5.

As discussed in Section III, Angelone has made several binding judicial admissions in his prior Declaration and acknowledged in several other pleadings that the parties never mutually agreed to any definite terms at all for a Hyper Engine partnership agreement. Moreover, Defendants' own wildly inconsistent and implausible pleading of this claim – the different alleged contracts with different parties and different terms existing all at the same time and being breached before they became effective– illustrates that there was never a definite agreement for Hyper Engine. The entire claim is a made up sham that should be dismissed with prejudice.

---

[8] In light of Defendants' conclusory and inconsistent allegations as to the timing of the various agreements, the alleged December 1, 2019 date of a claimed oral agreement should be disregarded as implausible. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

## VII.   THE 3RD CLAIM FOR BREACH OF IMPLIED   OPERATING AGREEMENT FAILS

### A. This Claim is Time Barred

Under California law, a claim of breach of implied contract is also governed by a two-year statute of limitations and accrues at the time of breach. *Benton , supra* at *7 (citing Cal.Code Civ. Proc. § 339(1). As set forth above in Section III, Angelone's binding admissions establish any claim for breach of an agreement for Hyper Engine accrued no later than August 20, 2019, and was filed over a year too late. This claim is also time barred and should be dismissed without leave to amend.

### B. This Claim Is Internally Inconsistent and Lacks Plausibility

Defendants' claim for breach of implied operating agreement alleges a third, undated implied agreement for the same company, Hyper Engine, that allegedly includes all the same terms as the March 1, 2018 draft written agreement, but again makes no mention of what happened to Robert Smith's 50% interest or provides any *facts,* plausible or otherwise, indicating that Plaintiffs ever agreed to these claimed terms. TACC, ¶¶ 81-87. Further, it is expressly contradicted by Defendants' other admissions and allegations, discussed in Section III, that conclusively establish that the parties never agreed to binding terms for any Hyper Engine agreement. This claim is also made up out of whole cloth and should be dismissed.

## VIII.   THE 4TH CLAIM FOR BREACH OF FIDUCIARY DUTY FAILS

### A. The Claim is Time Barred

A breach of fiduciary duty claim that sounds in fraud is governed by a three-year statute of limitations period. Cal. Code Civ. Proc. § 338(d); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (Ct. App. 2014), as modified (May 27, 2014); *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (Ct. App. 2000) (where gravamen of complaint is fraud, claims are subject to a three-year statute of limitations). Here, as discussed above, Defendants knew they had potential claims against Plaintiffs no later than August 20, 2019. Angelone

Decl., Dkt. 23-1, ¶ 69, 21:25-22:11, Ex. 44. The statute of limitations therefore expired for this claim on or before August 20, 2022, which was almost a month before Counterclaimants filed their State Court complaint. RJN, ¶ 1. This claim is time barred and should be dismissed.

### B. A Duty Cannot Be Established

The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and damages proximately caused by the breach. *Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 820-21* (2011). Here, Angelone fails to establish the existence of a fiduciary duty. In an attempt to do so, he alleges that the Taylors owe him a fiduciary duty as members of Hyper Engine pursuant to the 3/1/18 Agreement. TACC, at ¶ 89. However, Angelone cannot establish a duty exists because he has failed to establish that the parties entered into the 3/1/18 Agreement. *See*, Section V, above. Because Angelone cannot, through his admissions, establish that the 3/1/18 Agreement exists, this claim also fails as a matter of law.

## IX.   THE 5TH CLAIM FOR CONSTRUCTIVE FRAUD FAILS

### A. The Claim is Time Barred

"Where the gravamen of the complaint is that defendant's acts constituted actual or constructive fraud, the applicable statute of limitations is the [California] Code of Civil Procedure section 338, subdivision (d) three-year limitations period." *Thomson v. Canyon,* 198 Cal.App.4th 594, 607 (2011). The three-year period "does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud. Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Robuck v. Dean Witter & Co., Inc.*, 649 F.2d 641, 644 (9th Cir. 1980) (internal quotations omitted).

Here, as discussed above, Counterclaimants knew they had potential claims against Plaintiffs no later than August 20, 2019. Angelone Decl., Dkt. 23-1, ¶ 69, Ex.

44. The statute of limitations therefore expired for this claim on or before August 20, 2022 but Defendants filed their state Court complaint on September 16, 2022, about a month after the statute had already expired. RJN, Ex. 1. This claim is also time barred.

## B. Angelone Has Not Plausibly Alleged a Duty

Constructive fraud "is a unique species of fraud applicable only to a fiduciary or confidential relationship." *Michel v. Moore & Associates, Inc.,* 156 Cal.App.4th 756, 763 (2007). "Constructive fraud 'arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.'" *Tyler v. Children's Home Society,* 29 Cal.App.4th 511, 548 (1994). "The elements of the cause of action for constructive fraud are: (1) fiduciary relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting (causation)." *Younan v. Equifax Inc.,* 111 Cal.App.3d 498, 516, fn. 14 (1980).

Here, Angelone seeks to establish a duty solely by alleging that the parties were members of Hyper Engine because they entered into the 3/1/18 Agreement. TACC, at ¶ 95. However, because Angelone failed to properly plead that the 3/1/18 Agreement exists, he has also failed to establish that a duty exists.[9]

## C. Angelone Failed To Meet FRCP Rule 9(b)'s Strict Pleading Requirements

Claims of fraud must be pled with particularity. Fed.R.Civ.P. 9(b); *Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir.2011). To satisfy Rule 9(b), a complaint must identify "the who, what, when, where, and how" of the fraudulent conduct, as well as what is false or misleading about the allegedly fraudulent statement including why

---

[9] Angelone also pleads an entitlement to punitive damages for this claim and for the Promissory Fraud claim. TACC, ¶¶ 106, 117. A party requesting punitive damages must allege and plead with particularly that the defendant has been guilty of oppression, fraud, or malice." *Littlefield*, 2017 WL 11510154, at *2 (quoting Cal. Civ. Code § 3294(a)). Defendants' boilerplate allegation that the Taylor's failure to perform under the alleged Hyper Engine agreement does not meet this standard and the punitive damages claims should also be dismissed.

the statement is false. *Ebeid v. Lungwitz,* 616 F.3d 993, 998 (9th Cir.2010).

Angelone's constructive fraud claim fails to meet the requisite pleading standard under Rule 9(b). He merely incorporates by reference Counterclaimants' prior legally insufficient, conclusory and implausible allegations, and adds in the claim itself non-specific conclusions that "Deon and Roxanne misled and deceived Darrick" by doing certain alleged things that do not actually constitute constructive fraud in the first place. TACC, ¶¶ 94, 97. Indeed, all of the alleged fraudulent conduct concerns either: (a) the lack of the existence of a fiduciary duty ("failing to inform Darrick that Deon and Roxanne would organize and operate Hyper Engine to the exclusion of Darrick," and "repeatedly promising Darrick, both orally and in writing, an ownership stake in Hyper Engine,"); (b) a breach of the 3/1/18 Agreement ("failing to treat Darrick as a partner and equal member of Hyper Engine" and "excluding Darrick from Hyper Engine's management and profits as agreed); or (c) acts that have nothing to do with fraud ("claiming ownership of Counterclaimants' proprietary information and intellectual property developed by Counterclaimants for Hyper Engine and HEFG"). TACC, ¶ 97. None of those allegations are sufficient for a constructive fraud claim.

## X.   THE 6TH CLAIM FOR PROMISSORY FRAUD FAILS

### A. The Claim Is Time Barred

In California, the statute of limitations for commencing an action sounding in fraud is three years. Cal Civ. Code § 338(d); *see also*, *Doe v. Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1430 (Cal. Ct. App. 2010). Here, as discussed above, Counterclaimants knew they had potential claims against Plaintiffs no later than August 20, 2019. Angelone Decl., Dkt. 23-1, ¶ 69, Ex. 44. The statute of limitations therefore expired for this claim on or before August 20, 2022, which was almost a month before Counterclaimants filed their State Court complaint. RJN, Ex. 1. This claim is time barred and should be dismissed.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

### B. Angelone Failed To Plead This Claim With Particularity

Promissory fraud is a "subspecies" of fraud and "will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise." *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing *Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991)). Angelone's promissory fraud claim derives from the notion that the parties entered into the 3/1/18 Agreement.[10] As noted above, because Angelone has failed to allege that said agreement ever existed, this claim fails as a matter of law.

In addition, Angelone has failed to plead this claim with particularity. *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 415–16 (C.D. Cal. 2012) (a promissory fraud claim must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b)). Even if his allegations were sufficient to show the existence of the 3/1/18 Agreement, he has merely alleged nonperformance of a promise and fails to allege why the Taylors' alleged promise was false when made. *Smith v. Allstate Ins. Co.,* 160 F.Supp.2d 1150, 1152 (S.D.Cal.2001) ("the plaintiff must plead facts explaining why the statement was false when it was made" (citation omitted)); *see also*, *Rosado,* 53 F.Supp.3d at 1262. Alleging why the promise was false when made requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made. Mere nonperformance of a promise does not suffice to show the falsity of the promise. See *Tenzer v. Superscope, Inc.,* 39 Cal.3d 18, 30–31 (1985); *Magpali v. Farmers Group, Inc.,* 48 Cal.App.4th 471, 481, (1996) ("something more than nonperformance is required to prove the defendant's intent not to perform his promise ... [I]f plaintiff produces no further evidence of fraudulent intent than proof of nonperformance of an oral promise,

---

[10] Because this claim is being brought by Angelone, it follows that he is alleging promissory fraud in connection with the 3/1/18 Agreement. Angelone was not a party to the 12/1/19 Agreement which allegedly was entered into by AOne.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

he will never reach a jury"). Angelone has merely alleged, in conclusory fashion, that the Taylors agreed to designate him as a member of Hyper Engine and that they had no intention to recognize him as a member or allow him to share in the company's losses, profits and management functions. TACC, at ¶ 110. This allegation is also inconsistent with Defendants' numerous allegations that the Taylors had ongoing discussions with him from 2019 through 2022 about entering into an operating agreement for Hyper Engine but no such agreement came to fruition. TACC, ¶¶ 30, 38-47.

## XI.   THE 7TH CLAIM FOR NEGLIGENT MISREPRESENTATION FAILS

### A. The Claim is Time Barred

Because negligent misrepresentation is a form of fraud, Cal.Code Civ.Proc. § 338(d) is applicable and provides a three-year limitations period. *Unpingco v. Hong Kong Macau Corp.*, 935 F.2d 1043, 1045 (9th Cir.1991). The statutory period begins to run when the "plaintiff discovers he has a cause of action or, through the use of reasonable diligence, should have discovered it." Id. Here, as discussed above, Defendants knew they had potential claims against Plaintiffs no later than August 20, 2019. Angelone Decl., Dkt. 23-1, ¶ 69,  Ex. 44. The statute of limitations therefore expired for this claim on or before August 20, 2022, which was almost a month before Counterclaimants filed their State Court complaint. RJN, Ex.1. This claim is also time barred.

### B. Defendants Have Not Plausibly Alleged a Duty or Met FRCP Rule 9(b)'s Strict Pleading Requirements

"As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person. The determination of whether a duty exists is primarily a question of law." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

Here, Defendants' allegations of duty are entirely premised on the existence

and validity of fiduciary duties allegedly arising out of the purported March 1, 2018 written operating agreement for Hyper Engine. TACC, ¶ 119-121. Yet, as set forth in Section V., Defendants have not plausibly alleged that such agreement ever became operative and/or that any claim arising thereunder is not time barred, which is a necessary predicate for this claim because Plaintiffs' only alleged duties arise from that alleged agreement. The claim therefore fails for this independent reason.

Further, it is well-established in the Ninth Circuit that claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements. *Mueller v. San Diego Ent. Partners, LLC*, 260 F. Supp. 3d 1283, 1297 (S.D. Cal. 2017) citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 158, 2 Cal.Rptr.2d 861 (1991). Defendants merely incorporate by reference their prior legally insufficient, conclusory and implausible allegations, supplemented by non-specific conclusions that "Deon and Roxanne…made material representations and concealed material facts" and "undertook Darrick's trust and confidence" (TACC, ¶¶ 120, 123) but do not identify with the requisite specificity the who, what, when, and where required by Rule 9(b). *See*, *In re Glenfed, Inc. Secur. Litig.*, 42 F.3d 1541, 1547, fn.7 (9th Cir. 1994). As this claim fails for multiple reasons, it should also be dismissed without leave to amend.

## XII.   THE 8TH CLAIM FOR UNJUST ENRICHMENT FAILS

### A.   California Law Does Not Recognize a Cause Of Action For Unjust Enrichment

California law recognizes no separate claim for relief for "unjust enrichment." *Aguilar v. Ocwen Fin. Corp.*, No. CV 14-7675-MWF(SSX), 2015 WL 12659913, at *5–6 (C.D. Cal. Jan. 27, 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (holding no separate claim for relief for unjust enrichment exists). Instead, unjust enrichment is a general principle underlying various legal doctrines and remedies. *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989) (holding that a cause of action for unjust enrichment does not exist as a separate claim

for relief).

**B. <u>The Unjust Enrichment Claim is the Subject of an Alleged Contract</u>**

This claim fails for a second reason; there cannot be a claim for unjust enrichment where a contract covers the same subject matter. *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal.*, Inc., 94 Cal. App. 4th 151, (2001) ("[A] quasi-contract action for unjust enrichment does not lie where ... agreements exist and define the parties' rights.") Here, as in *Aguilar, supra,* Defendants' allegations of Plaintiffs' unjust enrichment emerge solely out of the services Defendants claim they performed for Plaintiffs in reliance upon the alleged agreement to make Angelone a member of Hyper Engine. TACC, ¶¶ 34, 128, 130. Thus, even if a standalone claim for unjust enrichment was proper (it is not), this claim still fails because the alleged operating agreements for Hyper Engine cover the same subject—the services Defendants allegedly performed for Plaintiffs in reliance on their claimed respective interests in Hyper Engine. This claim should be dismissed without leave to amend.

## XIII. <u>THE 9TH CLAIM FOR DECLARATORY RELIEF FAILS</u>

A claim for declaratory relief must set forth facts showing the existence of an *actual controversy* relating to the legal rights and duties of the respective parties to a contract. *Condor Ins. Co. v. Williamsburg Nat. Ins. Co.,* 49 Cal.App.4th 554, 565 (1996). Here, the declaratory relief claim fails because Defendants cannot plausibly plead the existence of a binding contract. *See* Section V, above.

## XIV. <u>THE 10TH CLAIM FOR QUANTUM MERUIT FAILS</u>

### A. <u>Defendants Have Adequate Legal Remedies</u>

Quantum meruit (or quasi-contract) is an *equitable* remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant. *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) (emphasis added) (citing B. Witkin, *Summary of California Law: Contracts* § 91 (1987); 55 Cal. Jur.3d Restitution 360–61 (1980). The alleged factual



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

predicates for this claim are exactly the same as for all of Defendants' legal claims, *i.e.* that Defendants allegedly agreed to perform services on Plaintiffs' behalf in reliance on Plaintiffs' alleged representations that Angelone was a member of Hyper Engine and entered into contractual agreements for Hyper Engine but the Taylors later allegedly reneged on those promises and contracts to Defendants' detriment and failed to pay Defendants for services rendered. TACC ¶¶ 34, 39, 57, 58, 59, 66, 71, 77, 86, 89,104, 109, 120, 124, 137, 140.

Defendants' quantum meruit claim is therefore duplicative of their legal claims and fails because they have an adequate legal remedy. "It is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *accord Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (internal quotation omitted) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law"); *Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV1701856CJCJDEX, 2018 WL 4940825, at *6 (C.D. Cal. May 3, 2018) (equitable claim dismissed without leave to amend where it arose out of a common factual predicate as plaintiff's other causes of action); *Madrigal v. Hint, Inc.,* No. CV1702095VAPJCX, 2017 WL 6940534, at *4–5 (C.D. Cal. Dec. 14, 2017) (equitable claims dismissed without leave to amend where they relied on the same factual predicate as legal claims).

Further, the fact that Defendants' legal claims all lack merit and are subject to dismissal does not constitute an inadequate legal remedy. In the Ninth Circuit, the relevant test is whether an adequate damages remedy is available, not whether the plaintiff elects to pursue it, or whether **he will be successful in that pursuit.** *See McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003) (explaining that whether a plaintiff chose to pursue potential legal remedies did not alter the availability of the remedies at law); *Bird v. First Alert, Inc.*, No. 14-cv-03585-PJH, 2014 WL 7248734 at *7 (N.D. Cal. Dec. 19, 2014) (dismissing

- 22 -

equitable claims for existence of an adequate legal remedy while also dismissing legal claims); *Rhynes v. Stryker Corp.*, No. 10-cv-05619-SC, 2011 WL 2149095 at *4 (N.D. Cal. May 31, 2011) ("Plaintiffs' argument that they will have no adequate remedy at law if their other claims fail is unavailing. Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable… [i]t matters not that a plaintiff may have no remedy if her other claims fail.")

The above cited authorities clearly demonstrate that Defendants' alleged entitlement to money damages in connection with their legal claims arises out of the same factual predicates as their quantum meruit claim. Defendants therefore have an adequate legal remedy, whether or not those legal claims succeed. As a result, the unjust enrichment claim should be dismissed without leave to amend.

### B. Defendants' Quantum Meruit Claim is Time Barred

"The statute of limitations for quantum meruit claims is two years. Cal. Code Civ. Proc. § 339 [action upon an "obligation" . . . not founded upon an instrument of writing], *Maglica v. Maglica*, 66 Cal.App.4th 442, 452 (1998). A claim for breach of a contract or quasi-contract accrues "when the plaintiff discovers, or could have discovered through reasonable diligence, the injury and its cause." *Zecos v. Nicholas-Applegate Cap. Mgmt.*, *supra,* 42 F. App'x at 32; *Angeles Chem. Co. v. Spencer & Jones* (1996) 44 Cal.App.4th 112, 119 (1996). As discussed in section III Counterclaimants made binding admissions that all of their claims related to an alleged Hyper Engine partnership between Plaintiffs and Angelone and AOne accrued by August 20, 2019, making this claim also over a year too late. Angelone Decl., Dkt. 23-1, ¶ 69, Ex. 44; Fox. Decl., Dkt18-3, ¶ 8. Counterclaimants' claim for Quantum Meruit should be dismissed without leave to amend for this independent reason.

## XV.   THE 11TH CLAIM FOR NEGLIGENCE FAILS

### A. The Claim is Time Barred

The statute of limitations for a negligence claim is two years.  Cal. Code Civ. Proc. § 335.1. This claim too is predicated on allegations that Plaintiffs breached a

- 23 -

duty to Angelone to refrain from shutting him out of the parties' alleged Hyper Engine operating agreement. TACC, ¶¶ 142, 143. Defendants' admissions, in the Angelone Declaration, again prove fatal to this claim, because Defendants filed this claim over a year too late.  Angelone Decl., Dkt. 23-1, ¶ 69, Ex. 44; RJN, Ex. 4.[11]

**B.** **The Negligence Claim Sounds in Fraud and Lacks the Requisite Specificity Required by FRCP Rule 9**

Where a complaint alleges a unified course of fraudulent conduct, all the claims alleged therein are grounded in fraud and the entire complaint must therefore be pleaded with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009.) That includes the instant negligence claim, which is predicated on Defendants' allegations that Plaintiffs' committed fraud by shutting Angelone out of his claimed share of Hyper Engine. TACC, ¶¶ 141-143.

Both federal and California law require a claimant to plead fraud with particularity.  F.R.C.P. 9(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (fraud must be pled "with a high degree of meticulousness"); *Stansfield v. Starkey*, 220 Cal.App.3d 59, 74 (1990); *Nagy v. Nagy*, 210 Cal.App.3d 1262, 1268 (1989). Thus "'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.  This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" *Stansfield*, *supra*, 220 Cal.App.3d at p. 73 (emphasis added).

Here, the negligence claim merely incorporates the prior allegations by reference and then alleges in a conclusory manner that Plaintiffs owed Darrick (not AOne even though it is also named a plaintiff in this claim) a duty of care in their capacity of business partners which Plaintiffs allegedly breached by "shutting Darrick

---

[11] This claim also fails because Defendants only allege a duty arising out of an operating agreement for Hyper Engine (TACC, ¶¶ 142-143), but any such agreements are time barred and/or were never consummated.  *See* Sections IV-VI.

out of his rightful share in Hyper Engine, excluding Darrick from Hyper Engine's management and profits, and failing to compensate Darrick and AOne for services provided with expected receipt of a benefit, as set forth above."[12] TACC, ¶¶ 142, 143. As set forth in Section III, Defendants have not plead this claim with the requisite level of specificity required for claims sounding in fraud. The Court should dismiss it for this independent reason.

## XVI.  THE COURT SHOULD NOT PERMIT LEAVE TO AMEND

The district court is not required to grant leave to amend where it determines that the pleading cannot possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F. 2d 242, 247 (9th Cir. 1990). Bad faith is a recognized reason to deny leave to amend. *Goelz et al.*, *Rutter Group Practice Guide, Federal Ninth Circuit Civil Appellate Practice* (2021), at ¶ 7:278; *F.E. Trotter, Inc. v. Watkins*, 869 F. 2d 1312, 1318 (9th Cir. 1989) (no abuse of discretion where order on prior motion to dismiss identified specific defects which were not corrected).

## XVII. CONCLUSION

Based on the foregoing, Plaintiffs and Roxanne Taylor respectfully request that the Court grant these motions in their entirety, without leave to amend.

Dated:  March 21, 2023          **SANDERS ROBERTS LLP**


By: */s/ Lawrence Hinkle*
Lawrence Hinkle, Esq.
Stephanie Jones Nojima, Esq.
Attorneys for Plaintiffs
HIDDEN EMPIRE HOLDINGS, LLC; HYPER ENGINE, LLC; DEON TAYLOR; AND FOR THIRD-PARTY DEFENDANT ROXANNE TAYLOR

---

[12] AOne's purported claim for negligence fails for the independent reason that the TACC does not allege any duty owed to AOne, which is an essential element of a negligence claim. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1142 (C.D. Cal. 2003) citing *Whitfield v. Heckler & Koch, Inc.*, 82 Cal.App.4th 1200, 1217 (2000)