J.T. Fox, Esq. (SBN 195063)
LAW OFFICES OF JT FOX & ASSOCIATES, APC
556 S. Fair Oaks Ave., No. 444
Pasadena, California 91105
Telephone: (888) 750-5530
Fax: (888) 750-5530
Email: jt@jtfoxlaw.com

Attorney for Defendants,
DARRICK ANGELONE;
AONE CREATIVE, LLC; and
ON CHAIN INNOVATIONS, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>               Plaintiffs,<br><br>     v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS LLC, a Florida limited liability company,<br><br>               Defendants. | CASE NO. 2:22-cv-06515-RSWL-AGR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' THIRD AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**<br><br>Hearing Date:   April 24, 2023<br>Hearing Time:  10:00 AM<br>Dept:                  5A<br><br>Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald |

- I -

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................1

I.     INTRODUCTION....................................................................1

II.    STATEMENT OF FACTS.........................................................2

       A. The HEFG Contract...........................................................2

       B. Hyper Engine Operating Agreement ......................................2

       C. Darrick Is Excluded From Hyper Engine.................................3

       D. The Fear Game And Defendants' Damages...............................4

       E. Outstanding Invoices..........................................................5

III.   ANY ALLEGED ADMISSIONS BY DEFENDANTS
       ARE ILLUSORY AND NOT BASED IN REALITY....................5

IV.    LEGAL STANDARDS APPLICABLE TO A MOTION TO
       DISMISS...............................................................................9

V.     DEFENDANTS' FIRST CLAIM FOR BREACH OF
       EXPRESS OPERATING AGREEMENT IS SUFFICIENTLY PLED..........10

       A. Plaintiffs Have Created The False Impression That
          Defendants Admitted To The Non-Existence of The Subject
          Operating Agreement........................................................10

       B. Plaintiffs Have Created The Illusion of Inconsistent Pleadings.................11

VI.    DEFENDANTS' SECOND CLAIM FOR BREACH OF
       ORAL OPERATING AGREEMENT IS TIMELY AND
       SUFFICIENTLY PLED............................................................12

       A. This Claim is Timely on its Face...........................................12

       B. Plaintiffs Have Created An Illusion of Inconsistent Pleadings...................14

VII.   DEFENDANTS' THIRD CLAIM FOR BREACH OF
       IMPLIED OPERATING AGREEMENT IS TIMELY AND

- i -

SUFFICIENTLY PLED................................................................14

    A. This Claim is Timely on its Face........................................14

    B. Plaintiffs Have Created The Illusion of Inconsistent Pleadings.................15

VIII. DEFENDANTS' FOURTH CLAIM FOR BREACH

    OF FIDUCIARY DUTY IS TIMELY AND SUFFICIENTLY PLED...........15

    A. This Claim is Timely on its Face........................................15

    B. Plaintiffs' Inherent Fiduciary Duty Has Been Adequately

       and Plausibly Stated..................................................16

IX. DEFENDANTS' FIFTH CLAIM FOR CONSTRUCTIVE

    FRAUD IS TIMELY AND SUFFICIENTLY PLED....................................16

    A. This Claim is Timely on its Face........................................16

    B. A Duty Has Been Adequately and Plausibly Stated...................17

    C. This Claim Has Been Pled With Overwhelming Specificity.....................17

X. DEFENDANTS' SIXTH CLAIM FOR PROMISSORY

    FRAUD IS TIMELY AND SUFFICIENTLY PLED....................................17

    A. This Claim is Timely on its Face........................................17

    B. This Claim Has Been Pled With Overwhelming Specificity.....................18

XI. DEFENDANTS' SEVENTH CLAIM FOR NEGLIGENT

    MISREPRESENTATION IS TIMELY AND SUFFICIENTLY PLED..........19

    A. This Claim is Timely on its Face........................................19

    B. Defendants Have Plausibly Alleged a Duty and

       Have Pled This Claim With Overwhelming Specificity............................19

XII. DEFENDANTS' EIGHTH CLAIM FOR UNJUST

    ENRICHMENT IS LEGALLY SUFFICIENT....................................20

    A. Defendants' Unjust Enrichment Claim Is Recognized

       As A Quasi-Contract Claim Seeking Restitution.......................20

    B. Defendants' Unjust Enrichment Claim Arises Out of

       Services Provided Without a Defined Agreement....................20

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS

XIII.  DEFENDANTS' NINTH CLAIM FOR DECLARATORY
        RELIEF IS LEGALLY SUFFICIENT..............................................................21
XIV.  DEFENDANTS' TENTH CLAIM FOR QUANTUM
        MERUIT IS TIMELY AND SUFFICIENTLY PLED....................................21
        A. This District Recognizes Pleading Equitable and Legal
            Claims in The Alternative................................................................21
        B. Defendants' Quantum Meruit Claim is Timely............................22
XV.   DEFENDANTS' ELEVENTH CLAIM FOR NEGLIGENCE
        IS TIMELY AND SUFFICIENTLY PLED.....................................................22
        A. This Claim is Timely on its Face.................................................23
        B. This Claim Has Been Pled With Overwhelming Specificity......................23
XVI.  LEAVE TO AMEND SHOULD BE GRANTED..........................................23
XVII. CONCLUSION...............................................................................................24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abrams v. Planet Home Lending, LLC*,
    No. CV 22-8052-MWF (E),
    2023 U.S. Dist. LEXIS 44007 (C.D. Cal. Mar. 15, 2023) ................................20

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937) ........................................................................................21

*Alexander v. Holland*,
    No. 2:13-cv-09302-DDP (GJS),
    2022 U.S. Dist. LEXIS 240119 (C.D. Cal. Dec. 16, 2022) .............................9

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
    225 Cal. App. 4th 1451 (Ct. App. 2014) ...........................................................16

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ...........................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................10

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ......................................................................20, 22

*Benton v. Baker Hughes*,
    No. CV 12-07735 MMM MRWX,
    2013 WL 3353636(C.D. Cal. June 30, 2013) ...................................................15

*Bowman v. Iddon*,
    848 F.3d 1034 (D.C. Cir. 2017) .......................................................................10

*Cahill v. Liberty Mutual Insurance Co.*,
    80 F.3d 336 (9th Cir. 1996) .............................................................................10

*City of Vista v. Robert Thomas Sec., Inc.*,
    84 Cal. App. 4th 882 (Ct. App. 2000) ..............................................................16

*Daniels-Hall v. National Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) ...............................................................9

*Ebeid v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) .....................................................17, 23

*Fain v. Am. Honda Motor Co.*,
    No. CV 19-2945-MWF (PJWx),
    2019 U.S. Dist. LEXIS 230731 (C.D. Cal. Dec. 19, 2019) ..............22

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) .......................................9, 10, 11

*Magpali v. Farmers Group, Inc.,*
    48 Cal.App.4th 471 (1996) .................................................................18

*Maryland Gas. Co. v. Pacific Coal & Oil Co.*,
    312 U.S. 270 (1941) ...........................................................................21

*McBride v. Boughton*,
    123 Cal. App. 4th 379, 388 (2004) ...................................................20

*Meyer v. State Bd. of Equalization*,
    42 Cal. 2d 376, 384 (1954) .................................................................9

*Mier v. Owens*,
    57 F.3d 747 (9th Cir. 1995) ...............................................................10

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) .............................................................24

*Multimedia Patent Trust v. Microsoft Corp.*,
    525 F.Supp.2d 1200 (S.D. Cal. 2007) ..............................................10

*National Railroad Passenger Corporation v. Morgan*,
    536 U.S. 101 (2002) ...........................................................................14

*Oasis West Realty, LLC v. Goldman,*
    51 Cal. 4th  811 (2011) .......................................................................16

*Richards v. CH2M Hill, Inc.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS

26 Cal.4th 798 (2001) ...................................................................................14

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014) ......................................................................20

*Sanders v. Brown*,
504 F.3d 903 (9th Cir. 2007) .........................................................................9

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) .......................................................................11

*Smith v. Allstate Ins. Co.,*
160 F.Supp.2d 1150 (S.D.Cal.2001) ...........................................................18

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .....................................................................10

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
137 F.2d 176 (5th Cir. 1943) .......................................................................21

*Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.,*
537 F.Supp.2d 1126 (D. Idaho 2008) ..........................................................11

**Statutes**

Cal. Code of Civil Procedure § 335.1 ...........................................................23

Cal. Code Civ. Proc. § 338(d) ..................................................................16-20

Cal. Code Civ. Proc. § 339(1) .......................................................................15

Cal. Corp. Code § 17704.09(a) ......................................................................16

**Rules**

Federal Rule of Civil Procedure 8(d)......................................................1, 12, 22

Federal Rule of Civil Procedure 15 ................................................................24

Federal Rule of Civil Procedure 12(b) ......................................................9, 10

- vi -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In support of their Motion to Dismiss all eleven (11) of the claims alleged in the Third Amended Counterclaim ("TACC") and Third-Party Complaint ("TPC")[1] against Roxanne Taylor in this matter, Plaintiffs have littered their pleadings with mischaracterizations of the facts and ignorance of the law. A cursory reading of the TACC and TPC will reveal a factual background which painstakingly sets forth detailed factual allegations as to all of the claims therein, particularly the ones sounding in fraud. This comes after the parties have met and conferred three times regarding "deficiencies" in the Defendants' pleadings.[2]

The "sham" pleading and inconsistencies asserted by Plaintiffs are nothing but a product of crafty pleading of statements taken primarily from documents outside of the operative pleadings to create confusion. In reality, the pleadings themselves are well within the general rules applicable to pleading. Fed. R. Civ. P. 8. Chiefly, Plaintiffs' contention that Defendants "admitted unequivocally" that no operating agreement exists between Plaintiff Hyper Engine LLC ("Hyper Engine") and Defendant Darrick Angelone ("Angelone") is astounding. Notwithstanding the commonsense notion that a litigant would never openly admit to something that runs completely contrary to their assertions, this contention is merely a product Plaintiffs' use of artful pleading to create the false impression that such admission was made. It is frivolous in and of itself for Plaintiffs to take statements from Defendants' past declarations and past iterations of their claims, which have no relevance to the sufficiency of the operative pleadings, and use them to push the notion that Angelone would essentially self-destruct his own claims.

---

[1] The allegations and claims in the TACC and the Third-Party Complaint against Roxanne Taylor are exactly the same, and citations to the "TACC" herein are also made in reference to the "TPC".

[2] The spirit of the parties' meet and confer discussions was to add more specific allegations and address deficiencies raised by Plaintiffs, in order to avoid court intervention and unnecessary expense. Plaintiffs' Motion is cost-driven and designed to drive up fees and cause delay insofar as it raises issues that were either never discussed, or have already been addressed. In fact, each meet and confer discussion resulted in the narrowing of the issues with respect to Defendants' pleadings. Yet, Plaintiffs have included in their Motion sweeping issues with each claim that were never discussed, including that Defendants made "fatal admissions" and that their claims are "time-barred". *See Declaration of Justin Kian, Esq.*, ¶ 3.

- 1 -

As will be demonstrated herein, each and every claim in Defendants' TACC and TPC are timely, sufficiently pled, and are otherwise not subject to dismissal. In the alternative, there is no just reason to deny Defendants leave to amend.

## II.    STATEMENT OF FACTS

### A.    The HEFG Contract

On or about April 26, 2012, HEFG entered into a written agreement with AOne ("2012 Agreement") pursuant to which AOne was hired to develop certain websites. TACC ¶ 16. Thereafter, Angelone, D. Taylor and R. Taylor agreed that Angelone and AOne "would continue to provide marketing services and other digital services" to "Deon, Roxanne, and HEFG, which included digital and social media marketing, developing website domains, and creating digital content such as video and applications." *Id*. at ¶ 17. At no time did the parties agree or otherwise discuss that the 2012 agreement would govern the work provided by Darrick and AONE subsequent to completion of work contemplated by the 2012 agreement. *Id*.

### B.    Hyper Engine Operating Agreement

On March 1, 2018, Hyper Engine was formed. *Id*. at ¶ 29. Hyper Engine was contemplated as a marketing company and subsidiary of HEFG. *Id*. at ¶ 38.

On or about March 1, 2018, Angelone, the Taylors and third-party Robert F. Smith entered into a long-form operating agreement for Hyper Engine, a copy of which is attached to the TACC as Exhibit A ("3/18/18 Agreement"). *Id*. at ¶ 28, Exhibit A. D. Taylor and R. Taylor both "signed and executed" this agreement. *Id.* As part of their executive management role within Hyper Engine, Angelone and AOne were solely responsible for marketing, web domain and all other digital, creative or IP services. *Id*. at ¶ 29. Pursuant to the 3/18/18 Agreement, Angelone received 16.6%, the Taylors each received 16.6%, and Mr. Smith received 50% ownership of Hyper Engine. *Id*. at ¶¶ 28, 31, Exhibit A.

On or about December 1, 2019 (and at various other times throughout the parties' relationship), Darrick and the Taylors verbally entered into an oral operating agreement

for Hyper Engine ("12/1/19 Agreement"). *Id.* at ¶ 75. Pursuant to that agreement, Darrick received 33.33% and the Taylors each received 33.33% ownership of Hyper Engine. *Id.* Angelone and the Taylors agreed that "all other material terms of this alleged oral operating agreement would be in accordance with the terms of the 3/1/18 Agreement. *Id.*

In performing the acts and engaging in the conduct of creating pitch decks, executing marketing campaigns, creating digital branding, registering domain names, and executing other digital or IP services conducted through AONE, Darrick, Deon, and Roxanne manifested an intention to enter into an LLC operating agreement to do those things and to equally share in the profits and losses therefrom. *Id.* at ¶ 81. Throughout 2018 to 2022, Darrick, Deon, and Roxanne held themselves out to the public as equal members and partners for the development and execution of the described digital marketing and IP services. *Id.* at ¶¶ 31-33, 82. Deon and Roxanne, individually and on behalf of Hyper Engine, performed these acts and conduct with the intent to form the described LLC and operating agreement with Darrick. *Id.* at 83.

### C.     Darrick is Excluded From Hyper Engine

Beginning in or around April 2021, HEFG hired Quincy Newell as Chief Operating Officer to help restructure HEFG which included adding Hyper Engine as a subsidiary or wing of HEFG. *Id.* at ¶ 40. Around that time, Angelone sought to re- negotiate his membership interest in Hyper Engine to a share above 50% to achieve majority ownership of the company. *Id.* at ¶ 41. The Taylors disregarded Angelone's attempt to re-negotiate and formalize a new operating agreement for Hyper Engine upon restructuring. *Id.* On or about February 22, 2022, Angelone introduced his attorney Darrell Thompson, Esq. to the Taylors and Mr. Newell to re-negotiate and finalize the terms of a revised Hyper Engine operating agreement in light of the "loose ends" surrounding Darrick's membership in Hyper Engine. *Id.* at ¶ 42.

Prior to and during the formation of Hyper Engine, the Taylors sought to exclude Angelone as a member of Hyper Engine while benefitting from the marketing, web domain, and all other digital, creative, or IP services provided by Angelone and AOne. *Id.*

- 3 -

at ¶ 34. Beginning in or around April 2021, the Taylors began to carry out their plan to breach "the company operating agreement, exclude [Angelone] from [Hyper Engine], and take Hyper Engine's assets, proprietary information, and intellectual property and claim it as their own." *Id*. at ¶ 38. For each operating agreement, the Taylors failed to recognize Angelone as a member of Hyper Engine despite numerous promises and reassurances that such membership was created. *Id*. at ¶¶ 39, 71. In addition, they breached the operating agreements by excluding Angelone from Hyper Engine's management and profits, and by claiming ownership of Angelone and AOne's proprietary information and intellectual property developed for Hyper Engine and HEFG. *Id*. at ¶¶ 71, 77, 86.

Deon and Roxanne's knowing intent to deceive is evidenced in large part by Deon and Roxanne's exclusion and refusal to treat Darrick as a partner against past promises, Deon and Roxanne's current position that Hyper Engine was never intended to include Darrick as a partner, and Deon's statement in a voice memo dated April 8, 2022 that Hyper Engine was "not real", all of which directly contradicts the Parties' operating agreement, communications, and other conduct demonstrates that Hyper Engine did in fact include Darrick as a member of the company. *Id.* at ¶ 34.

Notably, neither Deon, Roxanne, nor HEFG ever disputed Darrick's understanding and representations that he was a member of Hyper Engine, as clearly evidenced by his above actions. *Id.* at ¶ 35. In fact, after Hyper Engine was formed, Darrick and AONE were not once advised that Darrick was not a member of Hyper Engine until years later when Deon and Roxanne ultimately carried out their plan to exclude Darrick as a member. *Id.*

### D.     The Fear Game and Defendants' Damages

In or around August 2021, Defendants were engaged to handle the digital marketing for the theatrical release of the HEFG film titled "Fear," ultimately set for release on January 27, 2023. *Id*. at ¶ 48. AOne spent in excess of $250,000 for development of the marketing strategy and to be present at meetings and other events during the development. *Id*. Angelone and AOne spent countless hours in their engagement for marketing "Fear."

- 4 -

*Id.* at ¶ 49. Plaintiffs used AOne's marketing strategy for "Fear" without permission or paying for it. *Id.* at ¶ 48.

On or around November 29, 2021, Angelone proposed a video game and NFT activation based on "Fear" as part of a larger marketing plan. *Id.* at ¶¶ 51,52. On or about December 15, 2021, Angelone sent draft artwork for characters as they would look in the Fear game to HEFG personnel. From December 2021 through February 2022, Angelone communicated with HEFG about the development of the Fear game. *Id.* at ¶ 52. During the foregoing communications, HEFG never told Angelone that he should cease work on the projects related to Fear. *Id.* Angelone is "entitled to a 15% fee of the $2.7M marketing strategy for Fear (i.e., $405,000.00)…." *Id.* at ¶ 67. Angelone and AOne also seek $250,000 for the development of the Fear game, and $10,000 for the development of a Fear Instagram filter. *Id.*

### E.    Outstanding Invoices

Beginning in May 2022, Angelone and AOne incurred expenses in providing their time and services to HEFG, Hyper Engine, and the Taylors. *Id.* at ¶ 60. There are 7 outstanding invoices totaling $35,818.41. *Id.*

## III.   ANY ALLEGED ADMISSIONS BY DEFENDANTS ARE ILLUSORY AND NOT BASED IN REALITY

At no point in this litigation have Defendants "admitted" that the parties have never entered into any operating agreement. To the contrary, Defendants' pleadings have thus far alleged meticulous facts which confirm that (1) there is significant support for Defendants' breach and fraud claims, under multiple alternative theories, with respect to Plaintiffs' complete exclusion of Darrick as a member of Hyper Engine, and (2) any "admission" by Defendants are a product of Plaintiffs taking statements out of context to create such an impression.

In support of their position that Defendants made such an admission, Plaintiffs hinge their argument on Angelone's February 21, 2022 statement that he hired counsel "for the expressed purposes of finalizing the terms of our partnership that had been left

languishing since 2018." Dkt. 18-2, Angelone Decl., ¶ 39. This statement on its face does not evidence any unequivocal nor deliberate admission. Rather, it shows that Angelone sought to finalize unaddressed terms "that had been left languishing since 2018." This statement can easily be taken to confirm, rather than disaffirm, the 3/1/18 Hyper Engine operating agreement, in that there were some terms from that agreement that had been "languishing" (i.e., disregarded by Plaintiffs), and that Angelone felt it necessary to address said terms. This is perfectly consistent with the fact that Plaintiffs began carrying out their scheme to exclude Angelone from Hyper Engine "in or around April 2021". TACC ¶ 40.

Further, this one event cited by Plaintiffs is consistent with the pleadings because it merely illustrates a factual scenario where Angelone, who was disgruntled because he was not being treated as a member of Hyper Engine despite repeated assurances, hired a lawyer to both request that Plaintiffs perform their obligations and to amend the current operating agreement. *See Id.* at ¶¶ 34, 38-42. This is especially true in light of the fact that Angelone and his company AOne were shouldering much of the work and costs associated with Hyper Engine's services at the time, and Angelone rightfully felt like he was being unfairly treated. *See Id.* at ¶¶ 57, 60, 128. In fact, the TACC even states how the existing Hyper Engine operating agreement was unaffected by this incident, which Plaintiffs have omitted: "On or about February 22, 2022, Darrick introduced Darrell Thompson, Esq. to Deon, Roxanne, and Quincy Newell via email to ***re-negotiate*** and finalize the terms of a ***revised*** Hyper Engine LLC operating agreement and member equity, to protect Darrick's interest in the company upon restructuring." *Id.* at ¶ 42 (emphasis added). Instead, Plaintiffs incessantly cite to instances of previous iterations of the pleadings in which Angelone sought to "formalize" an operating agreement, to try and create the impression that the parties never entered into an operating agreement. *See* Pl. Motion, p. 8-9. However, not only does this ignore that there is still overwhelming support for Defendants' claims under both an oral and an implied operating agreement theory, but it also demonstrates Plaintiffs' failure to realize that Angelone only resorted to hiring an

- 6 -

attorney to revise the existing operating agreement out of frustration, because Plaintiffs had consistently failed to honor their written and oral promises that Angelone was a member of Hyper Engine. *See* TACC at ¶¶ 40-42. That is precisely why Angelone sought to "make sure that the ***loose ends of our partnership*** surrounding Hyper Engine are nailed down". *Id.* at ¶ 42 (emphasis added). This can only be taken to mean that a partnership (i.e., Hyper Engine LLC) already existed.

Further, Plaintiffs' citation to Angelone's statement on August 20, 2019 where he sought to "formalize" the Hyper Engine business venture is also irrelevant and merely being used to create an illusion that Angelone admitted to there being no operating agreement. *See* Pl. Motion, p. 6, lines 7-17 (*citing* Dkt. 18-2, Angelone Decl., ¶¶ 39, 69, Ex. 44.) Angelone's declaration, which Plaintiffs rely on so heavily, even makes clear that he sent this email to Plaintiffs in response to his "lack of inclusion in the Hyper Engine decision making process and how, as the sole digital provider of Hyper Engine services, AOne was burdened to carry significant costs for great lengths of time." Dkt. 18-2, Angelone Decl., ¶¶ 39, 69, Ex. 44. This supports the factual timeline of the TACC, because what followed this statement in August of 2019 were discussions and actions on the part of Plaintiffs which culminated in a revised operating agreement dated December 1, 2019, and oral promises by Plaintiffs reassuring Darrick that he was an equal member of Hyper Engine. *See* TACC ¶¶ 31, 31(f), 75. Even assuming this August 20, 2019 event confirmed Angelone's "understanding that no operating agreement has been entered into", this does nothing to rebut the binding, subsequent promises by Plaintiffs that Angelone would receive a one-third share of Hyper Engine as a member of the company, and acts consistent with those promises until they ultimately turned out to be fraudulent statements. *See Id.* at ¶¶ 31-35, 38-42. If in fact there was no operating agreement, why (and how) would Plaintiffs proceed to create a company bank account for Hyper Engine one month after the supposed breach date on September 20, 2019? *See Id.* at ¶ 31(d). Why would they proceed to create business cards for the Hyper Engine executives (including Darrick) in December, 2019? *See Id.* at ¶ 31(h). Why would they, in telephone discussions on or about

February 23, 2020 with Roxanne regarding the formation of Hyper Engine, confirm the Hyper Engine split in ownership of 1/3 (33%) to each Deon, Roxanne, and Darrick? *See Id.* at ¶ 31(f).

Plaintiffs also wrongfully assert that "Angelone also admitted that the 3/1/18 Agreement was just a draft and that he did not receive it until August 1, 2019." *See* Pl. Motion, p. 6, lines 18-19. This is nowhere to be found in the operative pleadings, which are the true subject of this motion to dismiss. The TACC makes no mention of this being a "draft" agreement. In any event, Plaintiffs are manipulating this statement to create the impression that Darrick first became aware of the 3/1/18 operating agreement on August 1, 2019. In reality, Darrick was well aware of the existence of this operating agreement, considering the fact that Hyper Engine was registered with the California Secretary of State on March 1, 2018, and that the parties thereafter proceeded to operate Hyper Engine as executives, as part of their role as members of the LLC. TACC at ¶¶ 29, 31-33.

Plaintiffs indeed must be aware that the 3/1/18 operating agreement is not just a "draft", because a Hyper Engine bank account was created by Plaintiffs, and on which Darrick was listed as a signatory. *Id.* at ¶ 31. If the operating agreement was not signed, as Plaintiffs claim, then surely the bank would not have allowed Plaintiffs to open an account in the name of the LLC.

These purported "admissions" by Defendants are nothing other than statements taken out of context to create the impression that there was an admission. It is obvious that Defendants have not made any such admission, because they have maintained from the inception of this litigation that multiple iterations of the Hyper Engine operating agreement were created, each with Darrick or AONE named as a member, and each supporting a separate, alternative theory of relief. Here, Defendants' Third Amended Counterclaims, the current operative pleading, seeks to enforce the binding, March 1, 2018 written operating agreement which was signed by Plaintiffs. *See Id.* at ¶¶ 28, 69. In the alternative, Defendants seek to enforce an oral operating agreement consistent with Plaintiffs' numerous promises and representations that Darrick was a one-third member of

Hyper Engine. *See Id.* at ¶ 75. The December 1, 2019 date of formation for the oral contract is just one of many dates on which the terms of the oral operating agreement were discussed. The Defendants' pleadings makes this clear: "On or about December 1, 2019, (*and at various other times throughout the parties' relationship, as set forth above*) Darrick, Deon, and Roxanne verbally entered into an operating agreement to form Hyper Engine for the general purpose of using Darrick and AONE's digital marketing services to benefit Deon, Roxanne, HEFG, Hyper Engine, and/or their clients. . ." *Id.* (emphasis added). Lastly, Defendants seek to enforce, in the alternative, an *implied* operating agreement based on the overwhelming evidence that Deon, Roxanne, and Angelone formed a business venture together for the purpose of creating a marketing wing of HEFG to service HEFG and HEFG clients, and performed acts consistent with such purpose. *Id.* at ¶ 81. A simple reading of the Defendants' counterclaims will reveal this. Yet, Plaintiffs insist on creating smoke by taking these alternatively pled causes of action out of context, and using them to create the impression that Defendants are attempting to enforce three agreements simultaneously.

## IV.   LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS

In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). "An amended pleading supersedes the original." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989). In California, an amended pleading entirely supersedes the prior version of that pleading and renders the prior version a nullity. *Alexander v. Holland*, No. 2:13-cv-09302-DDP (GJS), 2022 U.S. Dist. LEXIS 240119, at *161 (C.D. Cal. Dec. 16, 2022), *Citing Meyer v. State Bd. of Equalization*, 42 Cal. 2d 376, 384, 267 P.2d 257 (1954) ("It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading.")

In support of their argument that Defendants admitted to the non-existence of the Hyper Engine operating agreement, Plaintiffs rely almost exclusively on past iterations of

the complaint and other documents that ignore the explicit allegations of the TACC. *See, e.g.,* Pl. Motion, pp. 5-9. Relying on these previous pleadings ignores the very purpose of amending the complaint to refine the factual background and Defendants' claims. Plaintiffs' Motion seems to deflect and ignore the confines of the operative complaint, in trying to create a veil of confusion over the Defendants' claims therein. In any event, the TACC and the TPC are the operative pleadings to which the Motion to Dismiss must be directed to. All previous iterations of the Defendants' claims have been superseded and have no relevance here. *See Hal Roach Studios,* 896 F.2d at 1546.

To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). Moreover, a complaint survives a motion to dismiss even "[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (Even if the defendant believes that its version will "prove to be the true one . . that does not relieve defendant[ ] of [its] obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery.") A complaint may proceed even though proof seems improbable, or recovery is very remote and unlikely. *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1212 (S.D. Cal. 2007).

## V.   DEFENDANTS' FIRST CLAIM FOR BREACH OF EXPRESS OPERATING AGREEMENT IS SUFFICIENTLY PLED

### A.   Plaintiffs Have Created The False Impression That Defendants Admitted To The Non-Existence of The Subject Operating Agreement

Factual assertions in pleadings and pretrial orders, **_unless amended_**, are considered judicial admissions conclusively binding on the party who made them. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (emphasis added). To qualify as a judicial admission, the admission must be deliberate, clear, **and** unequivocal. *Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.,* 537 F.Supp.2d 1126, 1135 (D. Idaho 2008) (emphasis added).

Here, Plaintiffs' proffered support for the contention that Defendants made a fatal admission falls flat on its face, because it does not actually show any deliberate, clear, and unequivocal admission. Even assuming that Defendants' alleged "admissions" are unequivocal, there is no reasonable interpretation that would allow one to conclude that such admission was "deliberate", as set forth in Section III above. *See Truckstop.Net,* 537 F.Supp.2d at 1135. It is entirely frivolous for Plaintiffs to even assert that Defendants would intentionally admit to the non-existence of the subject operating agreement. Regardless, the purported "admissions" that Plaintiffs cite to have since been amended and thus, have no conclusive effect. *See Am. Title. Ins. Co.*, 861 F.2d at 226; *Hal Roach Studios, Inc.*, 896 F.2d at 1546. Primarily, the TACC removes any reference to the Hyper Engine operating agreement as a "draft", yet Plaintiffs rely so heavily on previous statements to that effect in past pleadings, which have since been amended and superseded. *See* Pl. Motion, p. 7, lines 4-8.

Further, as fully set forth in Section III above, there is no support for the notion that Defendants have made deliberate admissions in *any* pleading. Rather, what Plaintiffs have managed to do is merely take statements from Defendants out of various pleadings existing outside of the four corners of the operative complaint, and use them to create the false notion that there has been a deliberate admission.

### B.    Plaintiffs Have Created The Illusion of Inconsistent Pleadings

Unlike what Plaintiffs have asserted, *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000) does not stand for the proposition that courts may disregard allegations that are *"internally inconsistent.''* In fact, this opinion does not even contain the words

"internally inconsistent". *Id.* What Plaintiffs have ignored is that Fed. R. Civ. P. 8(d)(2) allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  further, Fed. R. Civ. P. 8(d)(3) allows a party to "state as many separate claims or defenses as it has, regardless of consistency."

Here, Plaintiffs have deflected from the fact that Defendants have alleged, in the alternative, three distinct claims for breach based on Plaintiffs' repeated failures to honor their written and oral promises that Angelone is a member of Hyper Engine, as fully set forth in Section III above. There is absolutely no part of the operative TACC where Defendants "acknowledge" that the parties' written operating agreement was just an incomplete draft. The TACC further does not mention any "draft" operating agreement. Also, and as set forth above, Angelone's later attempts to "formalize" an operating agreement have been taken completely out of context. *See* Section III, above. In reality, the TACC demonstrates how, in acknowledgment that Plaintiffs were reneging on their operating agreement, Angelone sought to address the "loose ends" of the operating agreement, those "loose ends" being Plaintiffs failure to honor their promises. TACC ¶ 42.

In line with the legal principles outlined above, Defendants' TACC also clearly alleges that a written operating agreement was entered into by the Plaintiffs which "was signed and executed by Deon Taylor and Roxanne Taylor on behalf of Hyper Engine" on or about March 1, 2018. *Id.* at ¶ 28). Taking this contention as true, and in light of the foregoing, there is no merit to any counter argument that the existence of the parties' written operating agreement was not sufficiently pled.

## VI.    DEFENDANTS' SECOND CLAIM FOR BREACH OF ORAL OPERATING AGREEMENT IS TIMELY AND SUFFICIENTLY PLED

### A.    This Claim is Timely on its Face

Plaintiffs claim that Darrick Angelone made an "admission that he declared the Taylors in breach of a claimed operating agreement on August 20, 2019. . ." (Motion, p. 13, lines 4-5). Yet, there is zero mention of "breach" in the August 20, 2019 email which this refers to. *See Dkt. 23-1*, Angelone Decl., ¶ 69, Ex. 44. Neither does Angelone ever admit to "hi-jacking" any of Plaintiffs' assets, as Plaintiffs claim. *See* Pl. Motion, p. 12, lines 8-12. Plaintiffs apparently believe that withholding goods or property from a client due to nonpayment equates to "hijacking". This nonsensical proposition would essentially mean that one could engage an IT company to create intellectual property ("IP"), then, instead of paying for the IP, they can sue the IT company and accuse them of hijacking.

The factual background makes clear that, even assuming a breach date of August 20, 2019, this breach was wholly independent of the Defendants' instant claims, because the TACC plainly indicates a factual timeline in which the parties proceeded in operating Hyper Engine as a joint venture, consistent with the Plaintiffs' fraudulent promises. *See* TACC at ¶¶ 31-33, 35. In other words, this supposed "breach" was cured by the Plaintiffs' subsequent promises that Darrick would receive a one-third share of Hyper Engine as a member of the company, and acts consistent with what turned out to be fraudulent statements. *See Id.* at ¶ 31.

If there was an uncured breach, as Plaintiffs claim, why (and how) would Plaintiffs proceed to create a company bank account for Hyper Engine one month after the supposed breach date on September 20, 2019? *See Id.* at ¶ 31(d). Why would they proceed to create business cards for the Hyper Engine executives (including Darrick) in December, 2019? *See Id.* at ¶ 31(h). Why would they, in telephone discussion on or about February 23, 2020 with Roxanne regarding the formation of Hyper Engine, confirm the Hyper Engine split in ownership of 1/3 (33%) to each Deon, Roxanne, and Darrick? *See Id.* at ¶ 31(f). If this operating agreement was actually breached, why would Plaintiffs proceed to allow Darrick to interface with Hyper Engine clients in his capacity as a member, even executing contracts and invoices on Hyper Engine's behalf? *See Id.* at ¶ 31(l)-(m)? It simply does not track.

In any event, Plaintiffs are apparently not informed that a breach can be continuing in nature. In California, the continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them. *Richards v. CH2M Hill, Inc.* 26 Cal.4th 798, 811–818 (2001); *see National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 118 (2002).

Here, the earliest possible breach date for an agreement for Hyper Engine accrued on or after April 22, 2022, when it became evident to Defendants that "Deon and Roxanne, individually and on behalf of Hyper Engine, knowingly sought to exclude Darrick as a member and avoid continuing a partnership in the operation of Hyper Engine with Darrick and AONE, ***all in breach of past promises and mutual understanding between the parties***." (emphasis added.) TACC ¶ 42. Considering the Defendants' initial filing date of September 16, 2022, this claim is demonstrably within the applicable two-year statute of limitations.

### B.    Plaintiffs Have Created An Illusion of Inconsistent Pleadings

As set forth in detail above, Defendants' TACC clearly alleges that an oral operating agreement was entered into by the Plaintiffs based on the countless promises by Plaintiffs that Darrick was a member of Hyper Engine. Plaintiffs' crafty use of statements from outside declarations and pleadings that have since been amended have no effect on the allegations of the TACC. Namely, and contrary to Plaintiffs' allegations, the TACC specifically outlines Plaintiffs' mutual assent to an oral operating agreement for Hyper Engine: "On or about December 1, 2019, (and at various other times throughout the parties' relationship, as set forth above) Darrick, Deon, and Roxanne verbally entered into an operating agreement to form Hyper Engine for the general purpose of using Darrick and AONE's digital marketing services to benefit Deon, Roxanne, HEFG, Hyper Engine, and/or their clients. . ." TACC at ¶ 75; *see also* TACC at ¶31(f). Taking this contention as true, and in light of the foregoing, there is no merit to any counter argument that the existence of the parties' oral operating agreement was not sufficiently pled.

## VII.   DEFENDANTS' THIRD CLAIM FOR BREACH OF IMPLIED OPERATING AGREEMENT IS TIMELY AND SUFFICIENTLY PLED

### A.   This Claim is Timely on its Face

Under California law, a claim of breach of implied contract is also governed by a two-year statute of limitations and accrues at the time of breach. *Benton v. Baker Hughes*, No. CV 12-07735 MMM MRWX, 2013 WL 3353636, at *5 (C.D. Cal. June 30, 2013) (citing Cal.Code Civ. Proc. § 339(1)).

As set forth in Sections III and V(a) above, and following the explicit language of the TACC, the earliest possible breach date for an agreement for Hyper Engine accrued on or after April 22, 2022. Applying the abovementioned two-year statute of limitations, this claim was brought well within the applicable statute of limitation and is thus timely.

### B.   Plaintiffs Have Created The Illusion of Inconsistent Pleadings

As set forth in Sections III and V(b) above, there is no reasonable interpretation under the operative TACC which would result in the contradiction of the implied Hyper Engine operating agreement. Rather, this alternatively pled claim of an implied operating agreement is a result of the actions of Plaintiffs in forming a joint business venture with Darrick for the purpose of creating a marketing wing of HEFG to service HEFG and HEFG clients. TACC ¶ 14. The TACC contains overwhelming facts to support the existence and subsequent breach of an implied Hyper Engine operating agreement, including the creation of written Hyper Engine operating agreements, the creation of a Hyper Engine bank account and debit card on which Angelone's name is listed, and countless other actions which are fully detailed in the TACC. *See Id.*  at ¶¶ 18-36. Regardless of whether Plaintiffs explicitly agreed to this operating agreement (as they clearly have), there is tremendous support for their implied agreement.

## VIII.   DEFENDANTS' FOURTH CLAIM FOR BREACH OF FIDUCIARY DUTY IS TIMELY AND SUFFICIENTLY PLED

### A.   This Claim is Timely on its Face

A breach of fiduciary duty claim that sounds in fraud is governed by a three-year statute of limitations period. Cal. Code Civ. Proc. § 338(d); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (Ct. App. 2014), as modified (May 27, 2014); *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (Ct. App. 2000) (where gravamen of complaint is fraud, claims are subject to a three-year statute of limitations).

Here, as discussed above, the earliest possible breach date for an agreement for Hyper Engine accrued on or after April 22, 2022. See TACC ¶ 42. Therefore, the statute of limitations has not expired for this claim yet, and the claim is timely because Defendants filed their State Court complaint only months later on September 16, 2022. RJN, ¶ 1. This claim is timely and should stand.

**B.    Plaintiffs' Inherent Fiduciary Duty Has Been Adequately and Plausibly Stated**

The elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and damages proximately caused by the breach. *Oasis West Realty, LLC v. Goldman,* 51 Cal. 4th 811, 820-21 (2011).

Here, the existence of a fiduciary duty is plain. As set forth fully in Sections III and V, above, the TACC clearly alleges that a written Hyper Engine operating agreement was entered into and executed by Plaintiffs Deon Taylor and Roxanne Taylor. TACC ¶ 28. Taking this contention as true, it is plain that as members of the LLC, the Taylors owed a fiduciary duty to their business partner and fellow LLC member, Darrick Angelone. *See* Cal. Corp. Code § 17704.09(a) ("The fiduciary duties that a member owes to a member-managed limited liability company and the other members of the limited liability company are the duties of loyalty and care. . ."). Based on the foregoing, this claim is not subject to dismissal.

**IX.   DEFENDANTS' FIFTH CLAIM FOR CONSTRUCTIVE FRAUD IS TIMELY AND SUFFICIENTLY PLED**

**A.    This Claim is Timely on its Face**

Here, as discussed above, the earliest possible date for when Defendants were on notice of Plaintiffs' fraudulent conduct was on or after April 22, 2022. *See* TACC ¶ 42. Applying the three-year statute of limitations provided in Cal. Code of Civil Procedure § 338(d), this claim is timely because Defendants filed their State Court complaint on September 16, 2022, only months after the earliest possible discovery date. RJN, ¶ 1.

**B.    A Duty Has Been Adequately and Plausibly Stated**

As fully set forth above, a fiduciary relationship exists between Darrick Angelone and the Taylors by virtue of the Hyper Engine operating agreement, which has sufficiently been alleged. *See* TACC at ¶ 28; *See also* Section V, above. As such, a fiduciary duty has been sufficiently pled with respect to this claim.

**C.    This Claim Has Been Pled With Overwhelming Specificity**

Defendants' constructive fraud claim, as with all other claims in the TACC, have been pled with painstaking specificity. One cursory review of ¶¶ 18-37 of the TACC will reveal countless details of the Plaintiffs' fraudulent conduct with respect to the formation of Hyper Engine, including but not limited to emails, telephone discussions, meetings, events, agreements, and other actions by Plaintiffs which plainly indicate the "the who, what, when, where, and how" of their fraudulent conduct. *Ebeid v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010). Specifically, ¶¶ 31-33 of the TACC outline, using detailed lists, the extent of Plaintiffs' promises and actions consistent with their repeated assurances that Angelone was an equal member of Hyper Engine. Thereafter, ¶¶ 34-35 of the TACC synopsize Plaintiffs' knowing failures to make good on their promises, which are evidenced in part by Plaintiffs' deliberate failures to correct or advise anyone of their belief that Darrick was not actually a member of Hyper Engine, and Deon Taylor's astonishing statement, in a voice memo dated April 8, 2022, that Hyper Engine was "not real". Furthermore, ¶¶ 38-47 of the TACC provide thoroughly specific details of the circumstances in which Plaintiffs' carried out their fraudulent scheme to oust Darrick from his membership position in Hyper Engine and ultimately defraud him out of his time and substantial investment in the LLC.

# X.   DEFENDANTS' SIXTH CLAIM FOR PROMISSORY FRAUD IS TIMELY AND SUFFICIENTLY PLED

### A.   This Claim is Timely on its Face

Here, as discussed above, the earliest possible date for when Defendants were on notice of Plaintiffs' fraudulent conduct was on or after April 22, 2022. *See* TACC ¶ 42. Applying the three-year statute of limitations provided in Cal. Code of Civil Procedure § 338(d), this claim is timely because Defendants filed their State Court complaint on September 16, 2022, only months after the earliest possible discovery date. RJN, ¶ 1.

### B.   This Claim Has Been Pled With Overwhelming Specificity

Angelone's Promissory Fraud claim derives from the notion that Plaintiffs devised and carried out a fraudulent scheme to induce into Darrick starting a joint venture with Plaintiffs as a member of Hyper Engine, only to subsequently oust and ultimately defraud him out of his valuable time and substantial investment in the LLC. *See* TACC ¶¶ 31-47.

As to the basis for the Promissory Fraud claim, Defendants have alleged with overwhelming specificity "facts explaining why the statement was false when it was made". *See Smith v. Allstate Ins. Co.,* 160 F.Supp.2d 1150, 1152 (S.D.Cal.2001). Specifically, and as fully set forth above in Section IX(c), ¶¶ 33-34 of the TACC summarize Plaintiffs' knowing failures to make good on their promises, which are evidenced in part by Plaintiffs' deliberate failures to correct or advise anyone of their belief that Darrick was not actually a member of Hyper Engine, and Deon Taylor's statement, in a voice memo dated April 8, 2022, that Hyper Engine was "not real". Based on Deon's statement alone, it can reasonably be inferred that Plaintiffs ultimately had no intention of performing, because for Deon to claim that Hyper Engine is "not real" (in light of the substantial evidence of the company's formation and acts such as holding Darrick out to the public as a member) demonstrates the Plaintiffs' fraudulent scheme and "intent not to perform" their promise at the time it was made. *See Magpali v. Farmers Group, Inc.,* 48 Cal.App.4th 471, 481, (1996). Furthermore, Plaintiffs' knowing intent to deceive can be inferred from the very fact that Darrick functioned as a member and

executive of Hyper Engine and was routinely held out as such by Plaintiffs to Hyper Engine and HEFG clients, yet at the same time Plaintiffs would exclude Darrick from important company discussions as a way to hide their deceitful intent. *See* TACC ¶¶ 31-33, 40. Plaintiffs' actions are far beyond mere nonperformance of a promise, as the TACC details Plaintiffs' fraudulent scheme from inception until the start of this litigation. Thus, this claim is not subject to dismissal.

## XI. DEFENDANTS' SEVENTH CLAIM FOR NEGLIGENT MISREPRESENTATION IS TIMELY AND SUFFICIENTLY PLED

### A. This Claim is Timely on its Face

Here, as discussed above, the earliest possible date for when Defendants were on notice of Plaintiffs' negligent conduct was on or after April 22, 2022. *See* TACC ¶ 42. Applying the three-year statute of limitations provided in Cal. Code of Civil Procedure § 338(d), this claim is timely because Defendants filed their State Court complaint on September 16, 2022, only months after the earliest possible discovery date. RJN, ¶ 1.

### B. Defendants Have Plausibly Alleged a Duty and Have Pled This Claim With Overwhelming Specificity

Here, as set forth in detail in Sections III and V, above, the TACC unmistakably alleges that a written Hyper Engine operating agreement was entered into and executed by Plaintiffs Deon Taylor and Roxanne Taylor, and further that any claim arising thereunder is timely. TACC ¶ 28. Taking these contentions as true, it is evident that, as members of the LLC, the Taylors owed a fiduciary duty to their business partner and fellow member, Darrick Angelone.

Moreover, this claim is pled with the requisite specificity, as the TACC contains more than enough facts to conclude that Plaintiffs made countless misrepresentations and material omissions during the course of their relationship with Darrick Angelone. ¶¶ 31-33 alone contain a wealth of specific instances which unequivocally demonstrate that Darrick provided services and operated as a member of Hyper Engine, and was recognized and held out as such by Plaintiffs. But perhaps the most significant omission is stated in ¶¶ 34-

35 of the TACC, which illustrates that, from the inception of Hyper Engine in 2018, Deon and Roxanne did absolutely nothing to advise Darrick or any third party that Darrick was in fact not a member of Hyper Engine, until Deon's statement in a voice memo dated April 8, 2022 that Hyper Engine was "not real". The TACC is fraught with similar allegations. As such, this claim is sufficiently pled and thus not subject to dismissal.

## XII.    DEFENDANTS' EIGHTH CLAIM FOR UNJUST ENRICHMENT IS LEGALLY SUFFICIENT

### A.    Defendants' Unjust Enrichment Claim Is Recognized As A Quasi-Contract Claim Seeking Restitution

Just weeks ago, this Court encountered Plaintiffs' very same contention that unjust enrichment does not support a separate claim for relief, in *Abrams v. Planet Home Lending, LLC*, No. CV 22-8052-MWF (E), 2023 U.S. Dist. LEXIS 44007 (C.D. Cal. Mar. 15, 2023). There, your Honor explained that *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) stands for the proposition that, "[a]lthough unjust enrichment is not a standalone cause of action under California law, 'unjust enrichment and restitution are not irrelevant." *Id.*; *Astiana*, 783 F.3d at 762. In *Astiana*, the Ninth Circuit explicitly held that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.' " 783 F.3d at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Additionally, "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004) (citations omitted). Restitution is also proper "where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Id.*

Based on the unambiguous and self-explanatory legal authority above, Defendants' unjust enrichment claim is proper and not subject to dismissal.

### B.    Defendants' Unjust Enrichment Claim Arises Out of Services Provided Without a Defined Agreement

The TACC makes clear that "Roxanne and Deon, individually and on behalf of Hyper Engine, have repeatedly refused to create written services agreements or contracts to define much of the work performed by Counterclaimants for Counter-Defendants and Roxanne." TACC ¶ 39. Further, "[b]eginning in May of 2022, Darrick and AONE have additionally incurred expenses in providing their time and services to Counter-Defendants and Roxanne, for which there are still outstanding balances and expenses still presently accruing." TACC ¶ 60. So, while it is true that "the alleged operating agreements for Hyper Engine cover . . . the services Defendants allegedly performed for Plaintiffs in reliance on their claimed respective interests in Hyper Engine" (Pl. Motion, p. 21, lines 11-4), it is also true that some of these services were provided to HEFG and the Taylors outside the scope of the Hyper Engine agreement. Therefore, unjust enrichment is a valid mechanism for Defendants to recoup any benefit outside of Darrick's capacity as a member of Hyper Engine that Plaintiffs have unjustly retained.

## XIII.  DEFENDANTS' NINTH CLAIM FOR DECLARATORY RELIEF IS LEGALLY SUFFICIENT

To establish an entitlement to declaratory relief for pleading purposes, Defendants need only describe the existence of a genuine legal dispute over a matter within the jurisdiction of the Court. Defendants must allege a "justiciable controversy" in order to state a claim for declaratory relief. … *Maryland Gas. Co. v. Pacific Coal & Oil Co*., 312 U.S. 270(1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937). The Declaratory Judgment Act is a procedural statute providing an additional remedy in which the federal courts already have jurisdiction, and should be given a liberal interpretation. *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 137 F.2d 176, 179 (5th Cir. 1943). Here, declaratory relief is warranted where the 62-page TACC contains sweeping allegations establishing an actual controversy regarding Plaintiffs' breach of contract and fraud in connection with Hyper Engine, among other things. *See* Section V, above.

## XIV.  DEFENDANTS' TENTH CLAIM FOR QUANTUM MERUIT IS TIMELY AND SUFFICIENTLY PLED

### A. This District Recognizes Pleading Equitable and Legal Claims in The Alternative

In *Fain v. Am. Honda Motor Co.*, this Court encountered the nearly identical argument asserted by Plaintiffs that dismissal is warranted where Defendants' claims seek equitable relief and are duplicative of Defendants' legal claims. No. CV 19-2945-MWF (PJWx), 2019 U.S. Dist. LEXIS 230731 (C.D. Cal. Dec. 19, 2019). Needless to say, your Honor has already held that this contention lacks merit: "the Ninth Circuit has explicitly held that these *equitable claims can be plead even though they are duplicative*, and district courts interpreting that opinion have held that *plaintiffs can plead equitable relief in the alternative to legal remedies.*" (emphasis added). *Id*; *See Astiana*, 783 F.3d at 762 (reversing district court's order dismissing quasi-contract claim because '[t]o the extent the district court concluded that the cause of action was nonsensical because it was duplicative or superfluous . . . this is not grounds for dismissal'). Fed. R. Civ. P. 8(d)(2) further holds that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."

The above cited authorities clearly demonstrate that Defendants are entitled to maintain their Quantum Meruit claim as an alternative to any potential or "duplicative" legal remedy arising out of contract. The existence of an adequate legal remedy is therefore irrelevant at this stage in the pleading. As a result, Defendants' quantum meruit claim should not be dismissed.

### B. Defendants' Quantum Meruit Claim is Timely

As fully set forth in Section VI above, the earliest possible date on which Defendants discovered their claims related to an alleged Hyper Engine partnership between Plaintiffs and Angelone and AOne accrued on or after April 22, 2022. TACC ¶ 42. Considering the Defendants' initial filing date of September 16, 2022, this claim is squarely within the applicable two-year statute of limitations.

## XV. DEFENDANTS' ELEVENTH CLAIM FOR NEGLIGENCE IS TIMELY AND SUFFICIENTLY PLED

- 22 -

### A.   This Claim is Timely on its Face

Here, as with Defendants' negligent misrepresentation claim, the earliest possible date for when Defendants were on notice of Plaintiffs' negligent conduct was on or after April 22, 2022. *See* TACC ¶ 42. Applying the two-year statute of limitations provided in Cal. Code of Civil Procedure § 335.1, this claim is timely because Defendants filed their State Court complaint on September 16, 2022, only months after the earliest possible discovery date. RJN, ¶ 1.

### B.   This Claim Has Been Pled With Overwhelming Specificity

Defendants' negligence claim, as with all other claims in the TACC, have been pled with painstaking specificity. As set forth full in Sections IX and X above, the TACC fraught with details of the Plaintiffs' fraudulent and grossly negligent conduct with respect to the formation of Hyper Engine, including but not limited to emails, telephone discussions, meetings, events, and other actions by Plaintiffs which plainly indicate the "the who, what, when, where, and how" of their fraudulent conduct. *See Ebeid*, 616 F.3d at 998; TACC ¶¶ 31-33.  Specifically as to this negligence claim, ¶142 of the TACC sets forth that Plaintiffs owed a duty to Defendants "as business partners and equal members and in using and relying on Darrick and AONE for their digital marketing services." This is in addition to the duty owed to Darrick pursuant to the Hyper Engine Operating agreement. *See* Sections III and V, above. ¶¶ 34-35 of the TACC summarize Plaintiffs' various breaches of their duty, which are evidenced in part by Plaintiffs' deliberate failures to correct or advise anyone of their belief that Darrick was not actually a member of Hyper Engine, and Deon Taylor's astonishing statement, in a voice memo dated April 8, 2022, that Hyper Engine was "not real". Furthermore, ¶¶ 38-47 of the TACC provide thoroughly specific details of the circumstances in which Plaintiffs' carried out their scheme to oust Darrick from his membership position in Hyper Engine and ultimately defraud him out of his time and substantial investment in the LLC. This claim has been pled with great specificity and is therefore not subject to dismissal on this ground.

## XVI.  LEAVE TO AMEND SHOULD BE GRANTED

Generally, district courts should liberally grant motions to amend the pleadings under Fed. Rule Civ. Proc. 15. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) (stating that leave to amend should be granted with "extreme liberality").

Here, in the event that Plaintiffs' Motion is granted, this Court should grant Defendants leave to amend because any alleged defect can easily be cured by allegation of other facts, and because there has been no bad faith on Defendants' part. Leave to amend is especially warranted here in light of the fact that this is the first time that this Court will consider the sufficiency of Defendants' pleadings.

## XVII. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court deny Plaintiffs' Motion to Dismiss Defendants' Third Amended Counterclaims and Third-Party Complaint in its entirety. In the alternative, Defendants respectfully request that this Court grant Defendants' leave to file a Fourth Amended Counterclaims and First Amended Third-Party Complaint against Roxanne Taylor.

Dated:  April 3, 2023                           LAW OFFICES OF J.T. FOX &
                                                ASSOCIATES, APC

                                                By:   */s/ J.T. Fox*
                                                        J.T. Fox, Esq.
                                                        Attorney for Defendants,
                                                        Darrick Angelone; AONE Creative,
                                                        LLC, and On Chain Innovations, LLC