Lawrence Hinkle (SBN 180551)
lhinkle@sandersroberts.com
Stephanie Jones Nojima (SBN 178453)
sjonesnojima@sandersroberts.com
Matthew Barzman (SBN 309063)
mbarzman@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for Plaintiffs
**HIDDEN EMPIRE HOLDINGS, LLC;
HYPER ENGINE, LLC; AND DEON
TAYLOR**

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE, LLC formerly known as AONE ENTERTAINMENT LLC, a Florida limited company; ON CHAIN INNOVATIONS, LLC, a Florida limited liability company, <br><br> Defendants. | CASE NO. 2:22-cv-06515-MWF-AGR <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br><br> **Hearing Date: April 24, 2023** <br> **Hearing Time: 10:00 AM** <br> **Dept:           5A** <br><br> Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald |

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ................................................................................................. 1

II.     THE COURT SHOULD DISREGARD THE INCONSISTENT AND IMPLAUSIBLE ALLEGATIONS IN THE TACC ................................................ 1

III.    THE TACC IS REPLETE WITH INTERNAL INCONSISTENCIES ................... 3

IV.     DEFENDANTS' ADMISSIONS ARE CONCLUSIVELY BINDING ................. 7

V.      MOST OF DEFENDANTS' COUNTERCLAIMS ARE TIME BARRED .......... 11

        A.  The Statue of Limitations on Defendants' Oral, Implied and Quasi Contract Claims Ran Over a Year Before This Action Was Filed................. 11

        B.  Defendants' Continuing Violations Theory Does Not Save Their Stale Contract Claims ........................................................................................ 13

        C.  The Longest Statute of Limitations Applicable to Defendants' Tort Claims Expired Over a Month Before They Filed the State Court Action ..... 14

        D.  Defendants Cannot Plausibly Allege Fraudulent Concealment to Save Their Time Barred Claims........................................................................ 17

VI.     DEFENDANTS EQUITABLE CLAIMS ARE DEFECTIVE ............................. 18

        A.  Defendants' Unjust Enrichment Claim Also Fails Because Defendants Do Not Plausibly Alleged Any Misconduct by Plaintiffs ........................... 19

VII.    DEFENDANTS' BREACH OF EXPRESS AND ORAL OPERATING AGREEMENT CLAIMS ARE NOT PLAUSIBLE ............................................. 19

VIII.   DEFENDANTS' CLAIMS FOR BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD, NEGLIGENT MISREPRESENTATION AND NEGLIGENCE ARE NOT PLAUSIBLE................................................................ 20

        A.  Defendants Do Not Plausibly Plead a Duty Owed by Plaintiffs................. 20

        B.  Defendants Have Not Met Rule 9(b)'s Specificity Requirements .............. 21

IX.     DEFENDANTS' CLAIM FOR PROMISSORY FRAUD IS NOT PLAUSIBLE............................................................................................................ 22

X.      DEFENDANTS' PUNITIVE DAMAGE ALLEGATIONS FAIL....................... 23

XI.     DEFENDANTS' DECLARATORY RELIEF CLAIM IS DEFECTIVE.............. 24

XII.    CONCLUSION ................................................................................................... 24

- 2 -

Case No.: 2:22-cv-06515-MWF-AGR

**TABLE OF AUTHORITIES**

**Pages**

**Cases**

Abrams v. Planet Home Lending, LLC., CV228052MWFE, U.S. Dist. LEXIS
44007 (C.D. Cal. Mar. 15, 2023) ...................................................................... 21

Anderson v. Ghaly, No. 15-CV-05120-HSG, 2020 WL 3184494, at *10 (N.D.
Cal. June 15, 2020) ......................................................................................... 21

Barber v. Remington Arms Co., No. CV 12-43-BU-DLC, 2013 WL 496202,
at *2 (D. Mont. Feb. 11, 2013) ....................................................................... 14

Czajkowski v. Haskell & White, LLP, 208 Cal. App. 4th 166, 174, 144 Cal.
Rptr. 3d 522, 528 (2012) ................................................................................. 19

Ebeid v. Lungwitz, 616 F.3d 993, 998 (9th Cir.2010) ........................................... 24

Fox v. Ethicon Endo-Surgery, Inc., 35 Cal 4th 737, 807 (2005) ........................... 17

Gustafson v. BAC Home Loans Servicing, LP, No. SACV 11-915-JST ANX,
2012 WL 7071488, at *11 (C.D. Cal. Dec. 26, 2012) ................................... 12

Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206–07 (9th
Cir. 2007) ........................................................................................................ 17

Hamilton v. Aubrey, No. 2:07CV01413HDMRJJ, 2008 WL 1774469, at *1
(D. Nev. Apr. 15, 2008) .................................................................................... 2

Hip Hop Beverage Corp. v. Michaux, No. CV 16-03275-MWF-AGR, 2016
WL 8578912, at *5 (C.D. Cal. Nov. 30, 2016) ................................... 14, 22, 24

Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No.
SACV141645DOCRNBX 2015 WL 13310465, at *3 (C.D. Cal., Jan. 22,
2015) ..................................................................................................... 9, 11, 14

Case No.: 2:22-cv-06515-MWF-AGR

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
**(CONTINUED)**

<u>Pages</u>

Kline v. Turner, 87 Cal. App. 4th 1369, 1374 (2001) ........................................................ 18

Lackner v. North (2006) 135 Cal.App.4th 1188, 1211–1212, 37 Cal.Rptr.3d
    863 ...................................................................................................................... 26

Lee v. Bank of Am., N.A., No. 21-CV-07231-JSC, 2022 WL 595877, at *5
    (N.D. Cal. Feb. 28, 2022) .......................................................................................... 18

McCool v. Wilson, No. EDCV192499PSGKKX, 2020 WL 7223252, at *7
    (C.D. Cal. Oct. 28, 2020) ....................................................................................... 9, 24

Miss Global Organization LLC v. Mak, CV17223DOCKES, 2018 WL
    6118616, *4 (C.D. Cal. June 27, 2018) ............................................................ 12, 15, 20

Mohsen v. Morgan Stanley & Co., No. CV1307358MWFASX, 2015 WL
    13914801, at *5–6 (C.D. Cal. Oct. 2, 2015) ........................................................ passim

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117–18, 122 S. Ct. 2061,
    2075, 153 L. Ed. 2d 106 (2002) .......................................................................... 14, 15

Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1141 (C.D.
    Cal. 2003) ...................................................................................................................... 23

Net-Com Servs., Inc. v. Eupen Cable USA, Inc., No. CV1102553JGBSSX,
    2013 WL 12131179, at *7 (C.D. Cal. July 12, 2013) ........................................... 18

Resnick v. Hyundai Motor Am., Inc., No. CV 16-00593-BRO (PJWx), 2017
    WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ................................................. 18

Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 817, 29 P.3d 175 (2001) .................... 14, 15

Robuck v. Dean Witter & Co., Inc., 649 F.2d 641, 644 (9th Cir. 1980) ............................ 17

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

Scott v. Phoenix Sch., Inc., 175 Cal. App. 4th 702, 715, 96 Cal. Rptr. 3d 159,
   170 (2009) ........................................................................................ 27

Silva v. U.S. Bancorp, No. 5:10–cv–01854–JHN–PJWx, 2011 WL 7096576,
   at *4 (C.D. Cal. Oct. 6, 2011) ........................................................ 18

Traverso v. Dept. of Transportation, 87 Cal. App. 4th 1142, 1151 (2001) ......................... 16

U.S. Med. Instruments, Inc. v. CFS N. Am., Inc., No. 13-CV-349-BEN DHB,
   2013 WL 6055387, at *9 (S.D. Cal. Nov. 13, 2013) ...................................... 21

Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987) ................................. 19

Yumul v. Smart Balance, Inc., 733 F.Supp.2d 1117, 1131 (C.D. Cal. 2010) ...................... 19

Zecos v. Nicholas-Applegate Cap. Mgmt., 42 F. App'x 31, 32 (9th Cir. 2002) ................. 12

**Statutes**

Cal Civ. Code § 338(d) ......................................................................................... 19

Civil Code section 3294(c) ................................................................................... 27

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................... 5, 21

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs identified at least five different reasons why the entire TACC should be dismissed in their moving papers; (1) binding, prior admissions by Defendants that the statutes of limitations applicable to all claims was triggered on August 20, 2019 and expired before Defendants filed their counterclaims; (2) binding, prior admissions that no operating agreement giving Defendants an interest in Hyper Engine ever existed; (3) threadbare and implausible allegations in the TACC that cannot overcome these prior admissions; (4) inconsistent, contradictory and implausible allegations within the body of the TACC itself that further undermine the plausibility of Defendants' allegations; and (5) Defendants' failure to plead its fraud claims with the requisite level of specificity required by Fed. R. Civ. P. 9(b).

Defendants' opposition asks the Court to ignore all these fatal defects because they claim defendants "would not intentionally self-destruct their own claims." Yet that is exactly what happened here. Each time Plaintiffs identified a problem with Defendants' counterclaims they created new facts in an amended pleading to try to address that problem, apparently failing to recognize they are conclusively bound by their prior admissions made in Darrick Angelone's declaration and their state court pleadings that establish they have no claims at all. Further, Plaintiffs have demonstrated how amending any of these claims would be futile. The entire TACC should be dismissed without leave to amend.

## II.    THE COURT SHOULD DISREGARD THE INCONSISTENT AND IMPLAUSIBLE ALLEGATIONS IN THE TACC

In their moving papers, Plaintiffs identified numerous allegations made by Defendants that are inconsistent, contradicted by documents referred to in the TACC, require unreasonable inferences to be made, and are clearly implausible. Defendants failed to even address most of those allegations let alone refute Plaintiffs' position

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

regarding them. Also, Defendants do not dispute the legal authority cited authorizing the Court to refuse to accept their allegations as true under these circumstances. Instead, they seem to hope the Court will ignore all the implausible facts and law and just accept as true all of the allegations in the TACC regardless of the existence of the many inconsistences and contradictions identified and despite the fact that their allegations just do not make any logical sense and are therefore implausible.

The law that permits a court to reject as true Defendants' conclusory, inconsistent and implausible allegations is clear. The court need not accept as true those allegations that (1) contradict matters properly subject to judicial notice; (2) are conclusory allegations of law, mere legal conclusions, unwarranted deductions of fact, or unreasonable inferences; (3) are contradicted by documents referred to in the complaint; or (4) are internally inconsistent. *Hamilton v. Aubrey*, No. 2:07CV01413HDMRJJ, 2008 WL 1774469, at *1 (D. Nev. Apr. 15, 2008) (internal citations omitted).[1] Defendants did not cite any law to the contrary.

Unable to do so, Defendants resorted to misrepresenting the law by arguing that the Court should disregard all of the inconsistencies and contradictions in prior pleadings because the TACC supposedly supersedes them. Opp., 9:19-10:8. That is not the law. This Court's ruling in *Mohsen v. Morgan Stanley & Co.*, No. CV1307358MWFASX, 2015 WL 13914801, at *5–6 (C.D. Cal. Oct. 2, 2015) is instructive. In *Mohsen*, this Court confirmed that (1) prior pleadings in separate, related actions are not superseded by later pleadings in a different case; and (2) may be considered as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the later pleading plausibly suggests an



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

---

[1] The only case dealing with plausibility and inconsistent allegations Defendants mention in the opposition is *Shwarz v. United States*, 234 F. 3d 428 (9th Cir. 2000). They argue that *Shwarz* "does not stand for the proposition that courts may disregard allegations that are 'internally inconsistent.'" Opp., 11:26-28. However, they do not disagree that said legal principal exists. Rather, they only take issue that the notion that *Shwarz* itself does stand for that legal principal. Without question, that legal principal is well supported by the case law cited herein. *Hamilton v. Aubrey*, *supra* cites to *Shwarz* and other authorities for the stated proposition but was inadvertently omitted form the string citation in Plaintiffs' moving papers.

entitlement to relief.

As noted in Section III below, the Court may consider the TACC itself, Defendants' allegations in the various counterclaims filed in this action, the complaints filed by Defendants in the related state court action, and Defendant Angelone's declaration filed with the Court. *See* Request for Judicial Notice ("RJN"), Exhs. 1-4; Exhs. to Angelone Decl., (Dkt. 18-2). In doing so, the Court should conclude that the TACC contains numerous inconsistent and implausible allegations, just as it did in *Mohsen*.

## III.   THE TACC IS REPLETE WITH INTERNAL INCONSISTENCIES

The TACC contains numerous allegations that are internally inconsistent and thus implausible. Despite the many efforts by Defendants to make their allegations plausible, they fail at every turn. Below are examples of why the Court, exercising its judicial experience and common sense, should find that Defendants' allegations are both inconsistent and implausible.

¶ 28 – Nowhere do Defendants allege that every party to the alleged 3/1/18 operating agreement actually agreed to its terms. Defendants allege that there are four parties to that alleged written agreement including: Angelone, Mr. Taylor, Ms. Taylor and Robert F. Smith. TACC, ¶ 28, Exhibit A. However, Defendants allege that said agreement was only "signed and executed by Deon Taylor and Roxanne Taylor on behalf of Hyper Engine." The operating agreement Defendants attached to the TACC is, however, not signed by anyone. TACC, Exh. A. Also, there is no representation that either Angelone or Mr. Smith either signed the agreement or agreed to its terms. The draft operating agreement itself contemplates signatures by the parties. *Id.* at ¶¶ 10.1, 10.3, 13.2, 13.4, 13.6. The lack of an agreement signed by all of the parties is telling.

¶¶ 30, 31, 39, 58, 66, 75 and 79 – Defendants allege that both AOne and Darrick received 33.3% ownership of Hyper Engine pursuant the 12/1/19 operating

agreement. At Paragraphs 30 and 31, Defendants allege that AOne is the member of Hyper Engine with 33.3% ownership. At Paragraphs 39, 58, 66, 75, 79, Defendants allege that Angelone is the member of Hyper Engine with 33.3% ownership.

¶¶ 28, 75, 81 – Defendants allege that different parties entered into different operating agreements for Hyper Engine with different terms at different times, all with no explanation as how that could legally happen. Defendants allege that Angelone, the Taylors and Mr. Smith entered into the 3/1/18 operating agreement and that Mr. Smith owned 50% and the remaining members each owned 16.6%. TACC, ¶ 28. Defendants do not allege that said operating agreement was amended, superseded or terminated. Nonetheless, while claiming that agreement still exists and is enforceable, Defendants claim that different parties – AOne or Angelone (see above), Mr. Taylor and Ms. Taylor – entered into a different operating agreement for Hyper Engine on 12/1/19 and that they each owned 33.3.% of Hyper Engine. They do not explain how this could be legally possible. When the 12/1/19 operating agreement was entered into, what happened to Mr. Smith's 50% interest and Angelone's 16.6% interest?

¶ 31 (subparagraph k) – Defendants allege that HEFG is owned and/or controlled by Hyper Engine where it states: "…HEFG members would discuss, among other things, Hyper Engine's structure as a subsidiary of HEFG…." To the extent Defendants are alleging that HEFG is an owner of Hyper Engine, that is inconsistent with its allegations that 100% of Hyper Engine was owned by a combination of Angelone, AOne, the Taylors and/or Mr. Smith. To the extent Defendants are alleging that HEFG controls Hyper Engine, that is inconsistent with all of the other allegations of the TACC, including for example, the terms of the alleged operating agreement attached as Exhibit A which does not mention anything about HEFG having any control of Hyper Engine.

¶ 34 – Defendants allege that before Hyper Engine was formed, the Taylors agreed that they would not include Angleone as a member. That allegation is

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

inconsistent with Defendants allegations that Plaintiffs sent him a draft of an operating agreement dated 3/1/18, sent him a draft of an operating agreement dated 12/1/19 and discussed the possibility of including him as a member of Hyper Engine over the years. Defendants provide no explanation as to why Plaintiffs would go through the trouble of doing those things if their intention was that they never would consider including him as a member of Hyper Engine.[2]

¶ 39 – Defendants admit there was no binding operating agreement where they state: "Had Darrick known the actual facts as set forth herein concerning *Deon and Roxanne's failure to consummate a binding partnership or operating agreement for Hyper Engine*…." This is inconsistent with Defendants' allegation that the parties entered into any operating agreement. TACC, ¶¶ 28, 75, 81.

¶ 42 – Defendants allege: "Darrick's email states 'I want to make sure that *the loose ends of our partnership surrounding Hyper Engine are nailed down*. My hope is that *Darrell can work with Quincy to formalize the terms and that an agreement can be made without any further delay*.'" [Emphasis added.] This admission is Defendants' unequivocal acknowledgement that the parties had not finalized an operating agreement as of at least February 21, 2022. How could the parties have already entered into three (3) prior operating agreements by then? TACC, ¶¶ 28, 75, 81.

¶ 42 – Defendants allege: "…Quincy responded on April 8, 2022 stating that HEFG is not ready to 'engage in any discussion' regarding plans for Hyper Engine, to which *[Angelone] expressed [his] concern that formalization was long overdue and should be addressed with urgency*." This allegation is again inconsistent with Defendants' allegations that the parties had already entered into three (3) different operating agreements for Hyper Engine. TACC, ¶¶ 28, 75, 81. Why would there need

---

[2] Defendants entirely disregard the fact that Angelone's own behavior in hijacking Plaintiffs' intellectual property in an effort force the Taylors to add him as a member of Hyper Engine is likely what killed the contemplated partnership.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

to be "formalization" if three (3) operating agreements had already been formalized? Why would formalization be "long overdue" if formalization had already occurred three (3) times? Why would there be "urgency" if three (3) operating agreements already existed?

¶ 42: Defendants allege: "…on or about April 21, 2022, Quincy responded with a demand for a master services agreement to cover all services then provided by Darrick and AONE to HEFG or Hyper Engine, *which was seemingly to detract from Darrick's demand to formalize an operating agreement*." TACC, ¶ 42. This allegation is inconsistent with Defendants' allegations that the parties had already entered into three (3) different operating agreements for Hyper Engine. TACC, ¶¶ 28, 75, 81.

¶ 43 – Defendants allege: "…Darrick replied and stated AONE's position about outstanding balances for past services provided by Darrick and AONE and his personal dissatisfaction with *the approach Quincy was taking in avoiding formalization of a Hyper Engine agreement*…." This allegation is inconsistent with Defendants' allegations that the parties had already entered into three (3) different operating agreements for Hyper Engine. TACC, ¶¶ 28, 75, 81.

¶ 47 – Defendants allege: "In response, *Darrick once again reiterated that the mutual understanding was that a 'Hyper Engine partnership be formalized* [omitted]'…." This allegation is inconsistent with Defendants' allegations that the parties had already entered into three (3) different operating agreements for Hyper Engine. TACC, ¶¶ 28, 75, 81.

¶¶ 75 and 81 – Defendants allege that the parties agreed that the terms of the 12/1/19 operating agreement and the terms of the implied agreement "would be in accordance with the terms of the parties' March 1, 2018 operating agreement." This is a new fabricated and conclusory allegation first appearing in the TACC. During the meet and confer discussions about the defects in the prior pleadings, Plaintiffs'

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

counsel told Defendants' counsel many times that they were required to state the material terms of the oral agreement and implied agreement in the complaint. Because in truth the parties never entered into any operating agreement, let alone discussed and agreed upon the terms of an oral or implied agreement, Defendants resorted to making up this false allegation to try to defeat a motion to dismiss. Moreover, Defendants' claim that the parties to the 12/1/19 operating agreement agreed that the terms of the 3/1/18 operating agreement would govern makes even less sense because Defendants claim that the terms of the 12/1/19 operating agreement were in writing. TACC, ¶ 29 ("On or about December 1, 2019, HEFG, Deon, and Roxanne created a second operating agreement for Hyper Engine….")

## IV.   **DEFENDANTS' ADMISSIONS ARE CONCLUSIVELY BINDING**

### A. The TACC Does Not Supersede Defendants' State Court Pleadings

In responding to Plaintiffs' argument that Defendants are bound by their prior admissions in other pleadings and in the Angelone Declaration that no Hyper Engine agreement ever existed, Defendants cherry pick two of the multiple inconsistencies Plaintiffs raised in their moving papers (the Angelone Declaration and his admission that on February 21, 2022 he hired counsel for the purpose of forcing Plaintiffs to agree to finalize a Hyper Engine Agreement) and misstate the law governing admissions and superseded pleadings. *See* Mot. 5:24-9:22; Opp. 5:19-9:15. While superseded complaints in the instant action are not considered binding admissions, they still may be considered by the Court in assessing the plausibility of Defendants' claims. *Mohsen, supra*. Moreover, the same is not true of pleadings from ***other, related proceedings***. *Id.*

Each of Defendants' three state court complaints are related to this action and replete with admissions confirming that (1) Defendants are intentionally misrepresenting to this Court that the March 1, 2018 draft written agreement alleged in the TACC to be binding was ever finalized or signed by the Taylors; and (2)

advance the meritless superseding argument to avoid the effect of the multitude of other binding admissions made in the state court complaints that conclusively establish there was never any final Hyper Engine operating agreement to which Defendants were parties.

Most damning, in all three iterations of the state court complaint, Defendants *admit* that the March 1, 2018 agreement Defendants frivolously claim in the TACC (¶¶ 28, 68) and their opposition (2:18-21) to be the operative express agreement between the parties was only a draft and never finalized or executed by the Taylors. *See* SCC, RJN Exh. 1, ¶ 21, 24(a); FAC, RJN Exh. 2, ¶¶ 21, 24(a); SAC, RJN Exh. 3, ¶¶ 21, 24(a).[3] Instead, in those pleadings, Defendants claim that a second written operating agreement dated December 1, 2019 was allegedly signed by Deon Taylor and was the express agreement that governed the parties relationship for Hyper Engine. *Id.* at ¶ 23 (SCC); ¶ 23 (FAC); ¶ 23 (SAC).

This is just further evidence that Defendants are not operating in good faith and making implausible facts up to suit their whims. The three state court complaints are also replete with multiple admissions that no agreement was ever reached between the parties giving Defendants *any* interest in Hyper Engine. RJN, Exhs. 1-3, ¶¶ 31, 32, 33, 37. Since all of Defendants' claims are predicated on made up and implausible claims of an agreement between the parties supposedly giving Angelone or AOne an interest in Hyper Engine, the Court should hold Defendants to these binding admissions and dismiss the entire TACC without leave to amend.

**B. Angelone's Declaration is Conclusively Binding on the Issue of no Hyper Engine Operating Agreement Including Defendants**

Defendants are again wrong when they claim Angelone's sworn declaration

---

[3] For the Court's convenience, attached as Exhibit A is a chart identifying the inconsistences and admissions in the prior pleadings and Angelone Declaration. They are as follows: State Court Complaints (¶¶ 21, 23, 31-33, 37, 40-42, 56 (Complaint and FAC); ¶¶ 21, 23, 31-33, 37, 40-42, 57(SAC)); Angelone Decl., ¶¶39, 40-42, 45-46, 69, 85, 86, Exhs. 20-22, 44, 58, 59 (Dkt. 18-2); ¶¶ 16, 25 (Cross-complaint, Dkt. 33); ¶¶ 25, 27, 35 (FACC, Dkt. 37).

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

and the exhibits attached to it are "irrelevant" and therefore not binding on Defendants. Opp. 7:7-15. They cite to no authority in support of this ridiculous proposition, presumably because the case law is to the contrary. *See Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. SACV141645DOCRNBX 2015 WL 13310465, at *3 (C.D. Cal., Jan. 22, 2015) (prior declaration and attached exhibits filed by plaintiff in same case: "As judicial admissions these facts are conclusively binding upon the Plaintiff and may be considered in a motion to dismiss.") *aff'd*, 677 F. App'x 336 (9th Cir. 2017); *McCool v. Wilson*, No. EDCV192499PSGKKX, 2020 WL 7223252, at *7 (C.D. Cal. Oct. 28, 2020) (granting motion to dismiss based on conclusive judicial admissions made by plaintiff in prior declaration that contradicted complaint because he "cannot simply ignore the previously filed documents in this case to rewrite the transaction…").

Here, Angelone admitted in at least three different places in his Declaration that as late February, March and April of 2022 there was no Hyper Engine partnership between AOne and/or Angelone and Plaintiffs because the parties were still negotiating "proposed terms." RJN, Exh. 4, ¶¶ 39, 45, 46. These admissions are binding and all the claims in the TACC should be dismissed without leave to amend.

**C. Angelone's Declaration Conclusively Establishes Defendants' Claims Are Time-Barred**

In the Opposition Defendants confirm that all their tort claims emanate from Angelone's claimed exclusion from Hyper Engine, stating "Deon and Roxanne's knowing intent to deceive is evidenced in large part by Deon and Roxanne's ***exclusion and refusal to treat Darrick as a partner*** against past promises." Opp., 4:10-11 (emphasis added). Angeone, however admits in his Declaration that no later than August 20, 2019 he knew he had claims against Plaintiffs because he sent the Taylors an email (1) "***detailing his frustration at the lack of inclusion in the Hyper Engine decision making process***"; (2) expressing his frustration with "lack of formalizing

- 9 -

our hyper engine partnership"; and (3) claiming Defendants Angelone and Aone had been damaged by "the continued burden of carried costs" and the lack of a Hyper Engine agreement between the parties. RJN, Ex. 4, ¶ 69, Ex. 44. This is the exact same harm Defendants claim is the genesis of all their claims, ***"Darrick's exclusion"*** from Hyper Engine. Opp., 4:10-11 [emphasis added]. As discussed in Section V below, the statute of limitations began to run on all his contract and tort claims at that moment, and they are now time barred. The Court should hold Defendants to this admission, which necessarily results in the dismissal of the TACC with prejudice.[4]

**D. Defendants' Argument That Angelone's Binding Admissions Are Not Unequivocal and Deliberate Strains Credulity**

Despite first claiming that Angelone's binding admissions in his declaration are "irrelevant" (Opp.  7:7-15) later they concede that prior pleadings ***are considered judicial admissions, and unless amended, are conclusively binding on the party who made them.*** Opp. 11:1-3. They next try to discount this principle by cherry picking two (2) of the many admissions cited in Plaintiffs' moving papers and claiming those admissions were not "deliberate" because "Defendants would [not] intentionally admit to the non-existence of the subject operating agreement." Opp., 11:9-13. Like their other baseless arguments, Defendants cite no authority for the preposterous proposition that factual statements made in a sworn declaration ***voluntarily submitted to the Court*** in opposition to a motion are not "deliberate." The fact that Angelone has told so many lies he cannot now keep his stories straight and therefore wants to disavow these earlier admissions does not make them any less deliberate or binding. *Hornberger,* 2015 WL 13310465, at *3 (C.D. Cal., Jan. 22, 2015).

Defendants' second argument, that the "purported 'admissions' that Plaintiffs cite to have since been amended and thus, have no conclusive effect" (Opp., 14:14-15) is both factually wrong and an incorrect statement of law.  First, as a factual matter



1   Defendants have not at any time amended the September 23, 2022 Angelone

2   Declaration. And second, the admissions contained in the state court pleadings ***are***

3   ***not superseded*** by the TACC. *Mohsen*, 2015 WL 13914801, at *5–6. The prior

4   admissions in the Angelone Declaration and in the state court pleadings are binding

5   admissions that conclusively establish that Defendants' contrary, made-up allegations

6   are not merely implausible, but false representations intentionally submitted to the

7   Court in an attempt to further harass Plaintiffs and avoid dismissal of their claims.

8   The Court should dismiss the entire TACC without leave to amend.

9   **V.  MOST OF DEFENDANTS' COUNTERCLAIMS ARE TIME BARRED**

10   **A. The Statue of Limitations on Defendants' Oral, Implied and Quasi Contract Claims Ran Over a Year Before This Action Was Filed**

11   Oral contract, implied contract and quasi contract (unjust enrichment and

12   quantum meruit) claims are governed by a two (2) year limitations period. Cal. Civ.

13   Civ. Code § 339(1).[5] A cause of action for a breach of contract accrues at the time of

14   the breach, *i.e.,* when the party charged with the duty to perform under the contract

15   fails to perform. *Zecos v. Nicholas-Applegate Cap. Mgmt.*, 42 F. App'x 31, 32 (9th

16   Cir. 2002). Where the facts and dates alleged in matters properly the subject of judicial

17   notice indicate the claim is barred by the statute of limitations, a motion to dismiss

18   for failure to state a claim is appropriate. *Miss Global Organization LLC v. Mak,*

19   CV17223DOCKES, 2018 WL 6118616, *4 (C.D. Cal. June 27, 2018).

20   Defendants do not dispute that Angelone in his September 23, 2022 sworn

21   declaration (RJN, Exh. 4, Dkt. 18-2) filed with this Court attested that "[o]n or about

22   August 20, 2019 I sent an email to Roxanne and Deon ***detailing my frustration at the***

---

[5] In their Opposition Defendants state that their unjust enrichment claim is really a quasi-contract claim seeking restitution for services provided outside of the Operating Agreement, so it is also subject a two year limitations period. *Gustafson v. BAC Home Loans Servicing, LP,* No. SACV 11-915-JST ANX, 2012 WL 7071488, at *11 (C.D. Cal. Dec. 26, 2012) (two year statute of limitations applies to restitution claims not founded upon an instrument of writing).

*lack of inclusion* in the Hyper Engine decision making process…" nor do they deny that Angelone submitted the underlying August 20, 2019 email to the Court as part of his declaration and argued to the Court that the email gave him an ownership in Plaintiffs' intellectual property. That email provides as follows:

> "In lieu of the ***continued burden of carried costs*** and ***lack of formalizing our hyper engine partnership***, this is notice that until a formal partnership agreement between aone and hefg is formalized, moving forward aone will retain ownership of [all HEFG intellectual property]…Happy to discuss in more detail or better yet formalize Hyper Engine and get to work."

(RJN, Exh. 4, Dkt. 18-2, Exh. 44) Angelone therefore acknowledged that, as of August 20, 2019 he was aware he had been allegedly injured by incurring carried costs as a result of Deon and Roxanne's alleged failure to recognize his claimed interest in Hyper Engine. In trying to escape the reality that Defendants are bound by these admissions, Defendants argue, without citation to authority (because none exists for these absurd propositions) that (1) the email has no effect because Angelone did not use the word "breach"; and (2) the alleged breach was "wholly independent" of Defendants' instant claims." Opp., 13:1-4; 13:10-17. The TACC however, alleges otherwise. Paragraphs 77 (breach of oral contract) and 86 (breach of implied contract) of the TACC state as follows:

> "Deon and Roxanne, individually and on behalf of Hyper Engine, breached the operating agreement by, among other things, ***failing to treat Darrick as a formal member of Hyper Engine, excluding Darrick from Hyper Engine's management***…"

In other words, Angelone knew he was being excluded from his claimed interest in Hyper Engine at that time, but sat on his rights until he filed the state court action

over three years later, on September 16, 2022. RJN at 1.[6] Further, the TACC incorporates the allegations at ¶¶ 77 and 86 by reference into Defendants' claims for unjust enrichment and quantum meruit (*see* TACC, ¶¶ 126, 135), so those claims are also time barred. And Defendants' threadbare allegations to the contrary in the TACC as to alleged later breaches of the claimed operating agreement are simply not plausible and should be disregarded. *Sprewell,* 266 F.3d at 989 ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.").

## B.   Defendants' Continuing Violations Theory Does Not Save Their Stale Contract Claims

Defendants cite two inapposite cases, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117–18, 122 S. Ct. 2061, 2075, 153 L. Ed. 2d 106 (2002), and *Richards v. CH2M Hill, Inc.,* 26 Cal. 4th 798, 817, 29 P.3d 175 (2001), in support of the proposition that Defendants have alleged a continuing breach, based on threadbare allegations that Plaintiffs "knowingly sought to exclude Darrick as a member and avoid continuing a partnership in the operation of Hyper Engine with Darrick and AOne…all in breach of past promises and mutual understanding between the parties" on or after April 22, 2022. Opp., 14:1-14. These cases do nothing to salvage Defendants' claims because they both discuss a rule specific to Fair Employment Housing Act employment claims. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117–18 ("in short, courts applying the continuing violation doctrine have tended toward a

---

[6] Plaintiffs are not asking the court to take judicial notice of the truth of the matters asserted in the Angelone Decl., but are offering it for the purpose of establishing that Angelone was on notice that he had potential claims as of August 20, 2019. *Barber v. Remington Arms Co*., No. CV 12-43-BU-DLC, 2013 WL 496202, at *2 (D. Mont. Feb. 11, 2013), aff'd, 604 F. App'x 630 (9th Cir. 2015) (exhibits offered via a request for judicial notice to establish expiration of statute of limitations). However, the Court may consider the contents therein as a judicial admission. *See Hornberger,* 2015 WL 13310465, at *3 (C.D. Cal., Jan. 22, 2015). In addition, the Court can consider the contents of the 8/20/2019 email under the incorporation by reference doctrine, since it is explicitly referenced at ¶ 37 of the TACC. *Hip Hop Beverage Corp. v. Michaux*, No. CV 16-03275-MWF-AGR, 2016 WL 8578912, at *5 (C.D. Cal. Nov. 30, 2016), aff'd, 729 F. App'x 599 (9th Cir. 2018) (internal citations omitted).

- 13 -

Case No.: 2:22-cv-06515-MWF-AGR

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

broader view of that doctrine when the cause of action involves ***ongoing harassment or ongoing failure to accommodate disability***") [emphasis added]; *Richards v. CH2M Hill, Inc.,* 26 Cal. 4th at 817 ("Essentially, the continuing violation doctrine comes into play when ***an employee raises a claim*** based on conduct that occurred in part outside the limitations period.") [emphasis added].

Further even if Defendants were able to state a claim for continuing breach (they cannot) the claim is still barred because they have not alleged ***specific facts*** indicating why they were unable to discover the existence of their claims earlier— or explain why they conducted no investigation into those claims after declaring Plaintiffs in breach of the parties' alleged agreement on August 20, 2019. *See Miss Global Org.,* 2018 WL6118616 at *7 (rejecting continuing violations theory and holding claims barred by statute of limitations where Plaintiff failed to plausibly explain how the claims were not time barred because "[a party] cannot evade the bar of the statute [of limitations] by skipping lightly over the first breach of duty and claiming to found their action on some subsequent conduct in line with it. If this could be done ... the operation of the statute of limitations could be entirely defeated.") citing *Traverso v. Dept. of Transportation,* 87 Cal. App. 4th 1142, 1151 (2001).

Yet that is exactly what Defendants seek to do here with their implausible, threadbare allegations of later breaches. Defendants' own exhibits referenced in the TACC and their prior admissions establish that the two (2) year statute of limitations for their oral, implied and quasi contract claims was triggered no later than August 20, 2019. The limitations period therefore expired no later than August 20, 2021. Defendants did not file their lawsuit until September 16, 2022, so these claims should be dismissed without leave to amend.  RJN, Exh. 1.

**C.   The Longest Statute of Limitations Applicable to Defendants' Tort Claims Expired Over a Month Before They Filed the State Court Action**

The longest statute of limitations applicable to Defendants' tort claims is three (3) years. That limitations period is applicable to Defendants' claims that sound in

fraud (breach of fiduciary duty, constructive fraud, promissory fraud, and negligent misrepresentation). Cal Civ. Code § 338(d). The statute of limitations applicable to Defendants' negligence claim is two (2) years. Cal Civ. Code § 335.1. It is undisputed that Defendants did not file their state court action until September 16, 2022, over a month after that statute of limitations for these claims expired. RJN, Ex. 1.

Each of Defendants' tort claims is predicated on allegations that, by virtue of the existence of an allegedly enforceable March 1, 2018 written operating agreement for Hyper Engine, Plaintiffs were in a fiduciary relationship with corresponding fiduciary duties to Angelone but breached those duties by, among other things, "failing to treat Darrick as a partner and equal member of Hyper Engine," "excluding Darrick from Hyper Engine's management and profits as agreed" "inducing Darrick to rely on their fiduciary relationship," and "disregard[ing] Darrick's requests to re-negotiate and formalize a new operating agreement for Hyper Engine." TACC ¶¶ 89, 92, 95, 97, 109, 119, 120. As such, the gravamen of all of Defendants' tort claims is the same as for their breach of contract claims—that Plaintiffs breached an operating agreement for Hyper Engine by failing to recognize Angelone's alleged membership interest in the company, to Angelone's claimed detriment. *Id.*

The three (3) year period applicable to claims sounding in fraud begins to run when plaintiff has actual or constructive notice of the facts constituting the fraud. Constructive notice is knowledge of facts sufficient to make a ***reasonably prudent person*** suspicious of fraud, thus putting him on inquiry." *Robuck v. Dean Witter & Co., Inc.*, 649 F.2d 641, 644 (9th Cir. 1980) (internal quotations omitted). *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206–07 (9th Cir. 2007) citing *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal 4th 737, 807 (2005) [emphasis added]. It is not necessary that a party had notice of ***the specific intention to deceive*** before a fraud action accrues. And again, subjective beliefs are irrelevant; all that is relevant is that a ***reasonable person*** would have been on notice of a potential



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

misrepresentation.

The limitations period begins to run on the date that the complaining party learns, or at least is put on notice, that a representation is false. *Id.* To determine when the cause of action accrued, courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.*"* Discovery of a cause of action occurs "not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff ***suspected or should have suspected*** that an injury was caused by wrongdoing." *Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, No. CV1102553JGBSSX, 2013 WL 12131179, at *7 (C.D. Cal. July 12, 2013) [emphasis added] citing *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001); *see also Lee v. Bank of Am.,* N.A., No. 21-CV-07231-JSC, 2022 WL 595877, at *5 (N.D. Cal. Feb. 28, 2022)

Here, the opposition cites no authority in response to Plaintiffs' argument that Defendants had, at a minimum, constructive knowledge of their claims on August 20, 2019.  Nor do they cite any authority in support of Defendants' argument that the statute of limitations has not run on Defendants' tort claims. Opp., 16:7-11 (breach of fiduciary duty); 17:1-5 (constructive fraud); 18:4-8 (promissory fraud); 19:10-14 (negligent misrepresentation); 23:2-7 (Negligence).[7] Instead, Defendants make the unsupported and illogical argument that Defendants were not on notice of their potential claims until April 22, 2022, when Roxanne Taylor allegedly rebuffed Angleone's demands for a formal Hyper Engine agreement. *Id.*

Defendants, however, conveniently ignore the fact that Angelone has admitted, in sworn testimony and in an email referenced in his complaint, that he had not just inquiry, but ***actual notice*** of his claims <u>no later than August 20, 2019,</u> when he

---

[7]  Defendants' "failure to address Plaintiffs' constructive notice argument in its opposition constitutes waiver of that argument and justifies dismissing these causes of action. *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) (citing *Silva v. U.S. Bancorp*, No. 5:10–cv–01854–JHN–PJWx, 2011 WL 7096576, at *4 (C.D. Cal. Oct. 6, 2011) (dismissing claims where the plaintiff "failed to address Defendants' arguments in his Opposition")).

decided to take self-help measures to address Plaintiffs' claimed failures to recognize his interests in Hyper Engine. RJN., Exh. 4; Dkt. 18-2, Ex. 44. Because Angelone had not just inquiry but actual knowledge of Defendants' claims as of that date, it was not objectively reasonable for him to rely on later alleged reassuring comments from Roxanne and Deon as to his claimed interest in Hyper Engine to justify sitting on his rights. *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987).

### D. Defendants Cannot Plausibly Allege Fraudulent Concealment to Save Their Time Barred Claims

Defendants do not argue in their Opposition that they may avail themselves of the fraudulent concealment doctrine to postpone accrual of their claims, but even if they had, the claims are still barred because they have not—and cannot—meet the requirements of that doctrine. "[W]hen a plaintiff relies on the allegations of fraudulent concealment, as excuses for an apparently belated filing of a complaint, the burden of pleading and proving belated discovery of a cause of action falls on the plaintiff." *Czajkowski v. Haskell & White, LLP,* 208 Cal. App. 4th 166, 174, 144 Cal. Rptr. 3d 522, 528 (2012).

For the doctrine of fraudulent concealment to apply, it must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1131 (C.D. Cal. 2010). To establish fraudulent concealment Defendants must show, with the requisite level of particularity: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or ***had no actual or presumptive knowledge of facts sufficient to put him on inquiry***." *Id.; see also Miss Global. Org.,* 2018 WL 6118616, at *7; (internal citations omitted) [emphasis added].

Here, as noted in Plaintiffs' moving papers Defendants have not even met the "who, what, where, and how" standard, and certainly have not alleged any specific facts excusing Angelone's <u>actual knowledge</u> that Defendants claims accrued no later than August 20, 2019. Mot. 16:21-19:8; 19:23-20:18; 24:7-25:6. Nor can they offer

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

any such plausible explanation given Angleone's admissions that he learned he was being excluded from Hyper Engine ***over three years before he filed any claims against Plaintiffs***. RJN, Exh. 4; Dkt. 18-2, Exh. 44. Additionally, Defendants' allegations that Angleone "was in a close business relationship with Deon and Roxanne as fellow executives of Hyper Engine, and thus was privy to management-level information…" further forecloses Defendants' ability to argue Angleone was not in a position to discover Plaintiffs' alleged intent to exclude him from Hyper Engine, after he decided to take self-help measures on August 20, 2019. TACC, ¶ 36. Defendants' second, third, fourth, fifth, sixth, seventh, eighth, tenth, and eleventh claims for relief are all time barred and should be dismissed without leave to amend.

## VI.   **<u>DEFENDANTS EQUITABLE CLAIMS ARE DEFECTIVE</u>**

Defendants argue they have adequately pled their claims under "multiple alternative theories," (Opp., 5:22) but that is not true at all because ***none*** of their claims are pled in the alternative, magnifying the multiple additional other defects with each claim identified in Plaintiffs' motion. TACC, ¶¶ 74, 80, 94, 107, 118, 126, 131, 135, 141. Instead, each claim in the TACC expressly incorporates by reference all preceding allegations. *Id.* Overlapping legal and equitable claims over contractual relationships are internally inconsistent and subject to dismissal when the equitable claims incorporate by reference prior allegations alleging the existence of an enforceable agreement. *U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*, No. 13-CV-349-BEN DHB, 2013 WL 6055387, at *9 (S.D. Cal. Nov. 13, 2013) (internal citations omitted); *see also Anderson v. Ghaly*, No. 15-CV-05120-HSG, 2020 WL 3184494, at *10 (N.D. Cal. June 15, 2020) (noting a party must be precise in pleading alternative

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

claims). [8] This additional deficiency is fatal to Defendants' breach of implied operating agreement, unjust enrichment, and quantum merit claims, and they should be dismissed for this reason alone.

### A. Defendants' Unjust Enrichment Claim Also Fails Because Defendants Do Not Plausibly Alleged Any Misconduct by Plaintiffs

While this Court has acknowledged that a claim for unjust enrichment may be considered a quasi contract claim seeking restitution, in the absence of an express contract the plaintiff must allege facts indicating the "defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Abrams v. Planet Home Lending, LLC., CV228052MWFE,* U.S. Dist. LEXIS 44007 (C.D. Cal. Mar. 15, 2023). In that case, this Court dismissed Plaintiff's unjust enrichment claim as a result of "limited and conclusory allegations of wrongdoing." *Id.* The same result should occur here because Defendants have not plausibly alleged any wrongdoing sufficient to support their tort claims.

## VII. DEFENDANTS' BREACH OF EXPRESS AND ORAL OPERATING AGREEMENT CLAIMS ARE NOT PLAUSIBLE

As discussed above and as set forth in Exhibit A, Defendants' prior admissions in their state court pleadings, the Angelone Declaration, and their internally inconsistent allegations within the TACC itself render Defendants' threadbare allegations that the parties ever entered into a binding written or oral operating agreement for Hyper Engine not just implausible, but demonstrably false. *Hip Hop Beverage Co., supra* (the court may disregard allegations that directly contradicted

---

[8] Plaintiffs' conclusory allegations of no adequate remedy at law pled under the quantum meruit claim are also implausible in light of the fact that both that claim and Defendants' negligent misrepresentation and negligence claims seek to recover substantially the same damages, reimbursement for services allegedly performed without resulting payment. TACC, ¶¶ 120, 124, 137, 143. Defendants therefore have an adequate legal remedy. *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020); *Rhynes v. Stryker Corp., No. 10-cv-05619-SC, 2011 WL 2149095 at *4 (N.D. Cal. May 31, 2011)*

- 19 -                    Case No.: 2:22-cv-06515-MWF-AGR

allegations in a prior related state court action or exhibits referenced in a complaint when ruling on a motion to dismiss) (internal citations omitted). Defendants' prior admissions foreclose their ability to plausibly allege ***any*** claim for breach of a written or oral operating agreement, rendering the possibility of amendment futile. The breach of oral operating agreement claim fails for the additional reason that it incorporates by reference the allegations of the breach of express contract claim (TACC ¶ 74) and it defies common sense that there could be simultaneously enforceable written and oral contracts covering the exact same events but with inconsistent parties and timelines as to formation. *See* Section IV.C, above; Exh. A.

Moreover, Defendants' breach of oral agreement claim is subject to dismissal for the additional reason that it is time barred because it was filed over a year after the relevant statute of limitations expired. *See* Section V.A., above. Both claims should be dismissed without leave to amend because amendment would be futile. *See Mohsen,* supra (2015 WL 13914801, at *8 (C.D. Cal. Oct. 2, 2015) (dismissing claims without leave to amend where amendment would be futile and contradictory in view of Plaintiff's prior pleadings)

## VIII. <u>DEFENDANTS' CLAIMS FOR BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD, NEGLIGENT MISREPRESENTATION AND NEGLIGENCE ARE NOT PLAUSIBLE</u>

These claims are not only time barred (*see* section V.C., above), but are also fatally flawed for a multitude of other reasons, including failure to plausibly allege an enforceable duty or plead the claims with the required level of specificity.

### A.   **Defendants Do Not Plausibly Plead a Duty Owed by Plaintiffs**

The duty alleged for each of these claims is predicated on conclusory, implausible allegations that Angelone became a member of Hyper Engine by virtue of the March 1, 2018 operating agreement (the breach of fiduciary duty, constructive fraud, negligent representation and negligence claims brought by Angelone) or that

AOne became a member of Hyper Engine by virtue of the alleged 12/1/19 oral agreement (the negligence claim brought by AOne).[9] TACC, ¶¶ 89, 95, 119. "The determination of whether a duty exists is primarily a question of law." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003)

Defendants' threadbare allegations of an existing duty should be disregarded as they conflict with prior admissions made by Defendants and other internally inconsistent factual allegations within the TACC that establish the parties never consummated any operating agreement for Hyper Engine. *See* Section IV.C, above; Exh. A; *see also McCool, supra,* 2020 WL 7223252, at *7. Since Defendants cannot plausibly allege any agreement, there can as a matter of law be no corresponding duty. These claims should all be dismissed without leave to amend for this reason alone.

## B.    Defendants Have Not Met Rule 9(b)'s Specificity Requirements

Defendants acknowledge in the opposition that under Federal Rule of Civil Procedure 9(b) they must plead their fraud claims by stating with particularity the "who, what, when, where, and how" of the fraudulent activity, but do not acknowledge the second part of the standard for pleading fraud claims, that the complaint "must set forth what is false or misleading about a statement, and why it is false." *Ebeid v. Lungwitz,* 616 F.3d 993, 998 (9th Cir.2010).[10] As set forth in Plaintiffs' moving papers, Defendants fraud allegations as to even the "who, what, when, where, and how" prong are both implausible and fail to meet Rule 9's specificity requirements. *See* Mot., 16:21-17:17; 20:11-18; 24:22-25:3.

Moreover, Defendants' breach of fiduciary duty claim is insufficiently pled for the additional reason that Angelone alleges to be privy to "management level" Hyper

---

[9] Angelone is the alleged contracting party to the March 1, 2018 written agreement while AOne is the alleged party to the 12/1/2019 oral contract. TACC, ¶¶ 30, 31(a)(b).

[10] Because Defendants' breach of fiduciary duty claim also sounds in fraud Rule 9(b)'s requirements apply equally to that claim. *United Energy Trading, LLC v. Pacific Gas & Electric Co.*, 146 F. Supp. 3d 1122, 1142 (N.D. Cal. 2015) ("Sounding in fraud, [California's breach of fiduciary duty claim] is subject to the heightened pleading standards.")

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Engine financial information but then claims, based on information and belief, that "Deon and Roxanne were diverting funds from the Hyper Engine bank account" TACC ¶ 91. As this Court noted in *Hip Hop Beverage Co., supra,* where relevant facts are within the plaintiff's possession, pleading on "information and belief" fails to meet even the less stringent *Twombly/Iqbal* plausibility requirement appliable to non-fraud claims. *Hip Hop Beverage Co.,* 2016 WL 8578912, at *5 (internal citations omitted).

Finally, Defendants' insurmountable problem here is that they have not and cannot plausibly allege that Defendants misled Angelone about his status as an alleged member of Hyper Engine because he conclusively admitted in his Declaration and prior state court pleadings that he knew all the way through at least April 2022 that he had no such interest in Hyper Engine. *See* Section IV.C, Exh. A. This is yet another reason to dismiss these claims with prejudice, as Defendants cannot plead around those admissions to save their implausible claims. They should all be dismissed without leave to amend. *See Mohsen,* 2015 WL 13914801, at *8 (dismissing claims without leave to amend where amendment would be futile and contradictory in view of Plaintiff's prior pleadings)



## IX.  DEFENDANTS' CLAIM FOR PROMISSORY FRAUD IS NOT PLAUSIBLE

Like Defendants' other claims, this claim is also time barred. *See* Section V.C, above. It fails for the additional reason that Defendants cannot plausibly allege, in accordance with Rule 9(b)'s strict pleading requirements or otherwise, facts indicating Plaintiffs engaged in a "fraudulent scheme" to induce Angelone to join Hyper Engine but then "oust[ed] and ultimately defraud[ed] him of his time and substantial investment," which is their theory of liability. Opp., 18:10-13. First, the claim fails because Plaintiffs do not plausibly allege the existence of a valid agreement for a Hyper Engine partnership. Second, the only plausible conclusion that may be

drawn from what has been or can be sufficiently pled is that Plaintiffs decided not to consummate the Hyper Engine transaction, and that is not promissory fraud. *See* Mot. 18:10-19:8. Defendants' claim in the opposition—that the allegation that Deon Taylor left Angelone a voicemail on April 8, 2022 stating that Hyper Engine was "not real" is "in and of itself sufficient to state a claim for promissory fraud" (Opp., 18:21-26) is simply incorrect both as a matter of fact and law. Under this Court's guidance in *Mohsen,* the claim should be dismissed without leave to amend.

## X.    DEFENDANTS' PUNITIVE DAMAGE ALLEGATIONS FAIL

Plaintiffs also moved to dismiss the punitive damage allegations alleged for the Constructive and Promissory Fraud Claims. Mot. 16:25-28. Defendants do not address this argument in their opposition. The alleged entitlement to punitive damages is based on boilerplate allegations of "purposeful and deliberate conduct" and "malice and despicable conduct" by "defrauding Darrick into entering into an operating agreement" Roxanne and Deon "had no intention to fully perform at the time of the agreement." TACC ¶¶ 106, 117. Cal. Civ. C. § 3294 provides that punitive damages may be awarded in an action for breach of an obligation not arising from contract, if the plaintiff proves by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. The clear and convincing standard "'requires a finding of high probability .... "'so clear as to leave no substantial doubt'; 'sufficiently strong to command the unhesitating assent of every reasonable mind.' *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1211–1212, 37 Cal.Rptr.3d 863 (internal citations omitted).

Malice is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Civil Code section 3294(c)(1). Oppression is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Civil Code section 3294(c)(2).



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

Despicable conduct is conduct that is "'... so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people."' [Citation.] 'Such conduct has been described as "[having] the character of outrage frequently associated with crime." [Citation.] *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715, 96 Cal. Rptr. 3d 159, 170 (2009). The TACC does not meet these standards so the punitive damage claims should also be dismissed.

## XI.    <u>DEFENDANTS' DECLARATORY RELIEF CLAIM IS DEFECTIVE</u>

Defendants' Declaratory Relief claim only seeks a judicial determination of Plaintiffs' and Angelone's respective "rights and duties" as parties to "a valid and binding LLC Operating Agreement in connection with Hyper Engine." TACC, ¶¶ 132-133. Defendants are wrong when they argue the TACC "contains sweeping allegations establishing an actual controversy regarding Plaintiffs' breach of contract and fraud in connection with Hyper Engine (Opp., 21:23-26) because (1) they have not plausibly alleged and enforceable contract; and (2) this claim makes no mention of fraud. TACC, ¶¶ 132-134. This claim should also be dismissed without leave to amend, as amendment would be futile because Defendants cannot plausibly allege the existence of a valid operating agreement.

## XII.    <u>CONCLUSION</u>

Defendants have already amended the TACC three times and make no showing in their opposition they can plausibly allege any additional facts that would save any claim asserted in the TACC.  The entire TACC should be dismissed without leave to amend.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS

Dated:  April 3, 2023                    **SANDERS ROBERTS LLP**

                                 By:

                                       */s/ Lawrence Hinkle*
                                       Lawrence Hinkle, Esq.
                                       Stephanie Jones Nojima, Esq.
                                       Matthew Barzman, Esq.
                                       Attorneys for Plaintiffs
                                       HIDDEN EMPIRE HOLDINGS, LLC;
                                       HYPER ENGINE, LLC; AND DEON TAYLOR

EXHIBIT A

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

| Issue | Factual Assertions in Angelone Declaration (RJN, Exh. 4) | Allegations in State Court Complaints (RJN, Exh. 1(complaint); Exh. 2(FAC); Exh. 3 (SAC). | Allegations in Counterclaims ("CC") and First Amended Counterclaims ("FACC"); RJN, Exh. 6 (CC), Exh. 7(FACC) | Allegations in Third Amended Counterclaims ("TACC" (Dkt. 51) – the Operating Pleading |
|---|---|---|---|---|
| A | | Para. 21 - Defendants characterize the 3/1/18 operating agreement as a *draft* ("On or about March 1, 2018, Defendants created and circulated to Plaintiffs a draft operating agreement for Hyper Engine…."). | Para. 16 of CC and Para. 25 of FACC – Defendants characterize the 3/1/18 operating agreement as a *draft* ("On or about March 1, 2018, Cross-Defendants created a draft operating agreement for Hyper Engine…."). | Paras.  28 and 69 - Defendants removed the word "*draft*" and claimed that the parties entered into an operating agreement on March 1, 2018. |
| B | | Para. 23 – Defendants allege that the 12/1/19 operating agreement was *created* on or about that date and *signed* by Deon Taylor ("On or about December 1, 2019, Deon and Roxanne created a second operating agreement for Hyper Engine…. Plaintiffs are informed and believe that a long-form version of this operating agreement was signed and executed by Deon Taylor.") | Para. 27 of FACC – Defendants allege that the 12/1/19 operating agreement was *created* on or about that date and *signed* by Deon Taylor ("On or about December 1, 2019, Cross-Defendants created a second operating agreement for Hyper Engine…. Plaintiffs are informed and believe that a long-form version of this operating agreement was signed and executed by Deon Taylor.") | Para. 75 -  Defendants removed the prior allegations that the 12/1/19 operating agreement was a written agreement *signed* by Deon Taylor and instead alleged that it is a verbal agreement. Defendants also omit the allegation that the 12/1/19 operating was *created* on 12/1/19 but instead allege in the TACC that it was *entered into* that date. |
| C | | Para. 31 – Defendants allege that "[f]ollowing the hiring of Quincy Newell, Defendants knowingly ignored or disregarded *any attempts by Plaintiffs to formalize a partnership or operating agreement for Hyper Engine*…." [Emphasis added.] | | Paras. 40 and 41 - Defendants allege that around April 2021 when HEFG hired Quincy Newell, "Darrick sought to *renegotiate* his membership interest in Hyper Engine…" suggesting that the parties had already entered into an operating agreement as of April 2021. |

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

| | | | | |
|---|---|---|---|---|
| | | This allegation evidences that there was no agreement between the parties as of April 2012. | | Paras. 28, 75, 81 – Defendants allege that the parties had entered into three different operating agreements before April 2021. |
| D | Para. 39 – Angelone states: "On or about February 21, 2022, I introduced Aone's retained counsel, Darrell Thompson, Esq. to Deon, Roxanne, and Quincy Newell (COO of HEFG) via email, *for the expressed purposes of finalizing the terms of our partnership that had been left languishing since 2018*," evidencing his unequivocal acknowledgement that the parties had not finalized an operating agreement as of that date. | Para. 32 - Defendants allege: "On or about February 22, 2022, Darrick introduced Darrell Thompson, Esq. to Deon, Roxanne and Quincy Newell via email *to negotiate the terms of a binding Hyper Engine LLC operating agreement*…. On or about March 15, 2022 Darrell followed up with Quincy by providing proposed nonbinding terms for the Hyper Engine partnership. On or about March 15, 2022, Quincy acknowledged the proposed terms and asked some questions about them, but otherwise did not agree to any terms." This evidences acknowledgement of the nonexistence of any agreement between the parties as of that date. | Para. 35 of FACC – Defendants allege: "On or about February 22, 2022, Darrick introduced Darrell Thompson, Esq. to Deon, Roxanne, and Quincy Newell via email *to negotiate the terms of a binding Hyper Engine LLC operating agreement*…." | Para. 42 - Defendants omit the prior allegations of negotiating an initial agreement and allege: "On or about February 22, 2022, Darrick introduced Darrell Thompson, Esq. to Deon, Roxanne, and Quincy Newell via email to *re-negotiate* and finalize the terms of a *revised* Hyper Engine LLC operating agreement…." [Emphasis added.] The TACC does not identify which of the three (3) alleged operating agreements they were supposedly seeking to "renegotiate" and "revise." <br><br> Paras. 28, 75 and 81 – Defendants allege that the parties entered into three (3) operating agreements by February 2022. |
| E | Para 45 -Angelone states: On or about April 8, 2022 AOne's attorney Darrell Thompson followed up with Quincy regarding the *proposed terms* regarding the AOne/Hidden Empire partnership of Hyper Engine sent previously," further | Para. 33 – Defendants admitted there was no operating agreement between the parties by alleging: "On or about April 26, 2022…Darrick replied and stated AONE's position about outstanding balances for past services…and his personal dissatisfaction with *the approach* | | Para. 43 – The same admission as in the state court pleadings is included in the TACC. |

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

| | | | | |
|---|---|---|---|---|
| | evidencing his a unequivocal acknowledgement that the parties had not finalized an operating agreement as of that date.<br><br>Para 46 – Angelone states: "Quincy responded on April 8, 2022, stating that HEFG 'is not ready to engage in any discussion' regarding plans for Hyper Engine, to which I expressed my concern **that formalization was long overdue and should be addressed with urgency."** [emphasis added]. | ***Quincy was taking in avoiding formalization of a Hyper Engine partnership*.…" [Emphasis added.]** | | |
| F | | Para. 37 – Defendants admitted there was no operating agreement between the parties by alleging: "On or about August 9, 2022 … Darrick once again reiterated the ***mutual understanding was that a Hyper Engine partnership be formalized*.…" [Emphasis added.]** | | Paras. 28, 75 and 81 – Defendants claim that the parties entered into three (3) separate operating agreements. |
| G | | Para. 56 (Para. 57 of the SAC) – Defendants admitted that no March 1. 2018 operating | | Para. 28 – Defendants allege that the parties entered into the ***3/1/18*** operating agreement. |

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

| | | | |
|---|---|---|---|
| | | agreement was ever entered into by alleging under their breach of express agreement claim: "On or about **December 1, 2019** Plaintiffs and Defendants entered into an operating agreement to form Hyper Engine…." There is no allegation that an operating agreement dated March 1, 2018 was ever finalized or signed. , Defendants did not allege a breach of the alleged 3/1/18 operating agreement in any iteration of their state court complaints. | | |
| H | | Para. 23 – Defendants allege that the alleged 12/1/19 operating agreement was **written** (and "signed and executed by Deon Taylor") | | Para. 75 – Defendants claim that the 12/1/19 operating agreement was **oral**. |
| I | Para. 4 – Angelone attested that he was not sent the alleged **draft** 3/1/18 operating agreement until August 1, 2019, by email cover stating "Please see attached **for your review and comment.**") on This evidences the 3/1/18 Agreement was never finalized or signed by the Taylors. | | Para. 16 of CC and Para. 25 of FACC – Defendants state that the **draft** 3/1/18 operating agreement "**was sent to Counterclaimants for review on August 1, 2019**." | Para. 28 - The TACC omits the prior allegations and admissions that Angelone did not receive the draft of the 3/1/18 operating agreement until August 1, 2019. Instead, Defendants allege that the parties entered into the 3/1/18 operating agreement on that date. |
| J | Paras. 40, 41, 42, 85, 86 – Angelone characterizes the | | Para. 25 – Defendants disavow the admissions in the Angelone | Paras. 51 and 52 – Defendants characterize various alleged |

4

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

| | | | |
|---|---|---|---|
| parties' discussions about the Fear game concept and suggests that Plaintiffs approved his development of the game., Attached to his declaration as Exhibits 20, 21, 22, 58 and 59 are emails and text messages which he alleges support these assertions but they are contradictory. Exhibits 20 and 21 show that there were discussions about the Fear game concept but lack any representations that Plaintiffs approved the Fear game or promises to pay Defendants for developing the game. Exhibit 22 contains the following statements "When is the next call ?? Have some dope ideas !!" Id. Exhibit 58 is a text message Angelone sent to Mr. Taylor on or about May 24, 2022 acknowledging  no agreement over the Fear game: "Hefg owing a balance can not be *an obstacle to coming to terms on the game*. The compromise for pushing off hyper engine convo was | | Declaration by alleging: "In or around November 2021, Darrick proposed a Fear video game and NFT activation as part of a larger marketing plan to Deon to which Deon relied, "Let's go" and engaged the rest of the HEFG executives to start the project. AONE continued planning and development for the game/app, including design and beta testing *at Cross-Defendants' behest.*" | communications between the parties about the Fear game during the period November 2021 through February 19, 2022 suggesting that Plaintiffs at some point approved his development of the game.<br><br>Para. 67 – Defendants allege that they are entitled to "losses of $250,000.00 for the development of the Fear game…." |

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

|   |   |   |   |   |
|---|---|---|---|---|
| | *solidifying partnership for game* and marketing if hefg took fear out." [Emphasis added.]   Exhibit 59 are text messages from  Mr. Taylor stating: "***Might*** have some marketing money for the game – I'll walk you through it – got some movement –." [Emphasis added.] This evidences  as of July 8, 2022 Defendants had not authorized development of or agreed to pay for the Fear game. | | | |
| K | Para 69 – Angelone states "On or about August 20, 2019 I sent an email to Roxanne and Deon ***detailing my frustration and lack of inclusion*** in the Hyper Engine decision making process and how, as the sole digital provider of Hyper Engine services, ***AOne was burdened to carry significant costs for great lengths of time.*** Further, I stated that AOne would henceforth, ***despite no other agreements governing AOnes work for Hyper Engine and HEFG,*** retain ownership of any | | | Para 37 – Defendants allege "On or about August 20, 2019, Darrick notified Deon and Roxanne by email that AOne maintains ownership of all works created by AOne, including domains and social accounts created in collaboration between AOne and HEFG." |

| | | | |
|---|---|---|---|
| assets created for HEFG in the course of our business together."<br><br>Attached to his Declaration is Exhibit 44, which is an August 20, 2019 email to Roxanne and Deon Taylor from Darrick Angelone stating: "In lieu of the **continued burden of carried costs and lack of formalizing our hyper engine partnership,** this is notice that **until a formal partnership agreement between AOne and HEFG is formalized,** moving forward aone will retain ownership of all domains registered (including renewals) and social accounts created in the ongoing collaborations between aone and HEFG…Happy to discuss in more detail or **better yet formalize Hyper Engine and get to work."** This evidences as of August 20, 2019 no Hyper Engine agreement had been entered into and Defendants were on notice of any potential claims they | | | |

EXHIBIT A: SUMMARY OF DEFENDANTS' KEY INCONSISTENT ALLEGATIONS AND PRIOR ADMISSIONS

| | | | |
|---|---|---|---|
| | may have over Plaintiffs' decision not to formalize any such arrangement as of that date. | | |