UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 22-6515-MWF (AGRx)**          **Date:  May 10, 2023**
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

Deputy Clerk:                              Court Reporter:
Rita Sanchez                               Not Reported

Attorneys Present for Plaintiff:           Attorneys Present for Defendant:
None Present                               None Present

**Proceedings (In Chambers):**   ORDER GRANTING IN PART AND DENYING IN
PART MOTIONS TO DISMISS COUNTERCLAIMS
AND THIRD PARTY CLAIMS

Before the Court is Cross Defendants Hidden Empire Holdings, LLC, Hyper Engine, LLC, and Deon Taylor's Motion to Dismiss Counterclaims, and Third Party Defendant Roxanne Taylor's Motion to Dismiss Third Party Claims, both filed on March 21, 2023.  (Docket Nos. 65 and 67).  Counterclaimants Darrick Angelone, AONE Creative, LLC, AONE Entertainment, and On Chain Innovations, LLC, filed an Opposition on April 3, 2023.  (Docket No. 74).  Replies were filed on April 10, 2023. (Docket Nos. 78 and 79).

Because the Motions advance the same arguments and the Counterclaims and Third Party Claims are the same, the Court refers collectively to the motions as the "Motion" and exclusively cites to the Third Amended Counterclaims ("TACC") as the operative pleading, but the rulings herein are applicable to both motions.  Also, because it appears to the Court that this dispute is primarily personal and the parties are using the corporate names interchangeably with the names of the individuals, the Court refers to the moving parties collectively as "the Taylors" and to Counterclaimants as "Angelone."

The Court read and considered the papers filed in connection with the Motion and held a hearing on May 1, 2023.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 22-6515-MWF (AGRx)**            **Date:  May 10, 2023**
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

The Motion is **DENIED** *in part* and **GRANTED** *in part*.  In sum, the contract and quasi-contract claims (other than the express written contract claim) survive, while the fraud/tort claims do not.  Specifically, the Court rules as follows:

- The Motion is **GRANTED** *without leave to amend* as to the claim for Breach of Express Written Contract (Claim 1) because Angelone has not and cannot plausibly allege that the unsigned, draft written operating agreement standing on its own is a binding enforceable contract.  The agreement contains numerous unaddressed fill-in-the-blanks and Angelone himself has repeatedly referred to it in court filings as a "draft" agreement.  Further, despite filing *six* versions of the same complaint between this action and the state court action, Angelone never once has filed a signed version of the agreement, rendering his allegation (made on information and belief) that the agreement was signed implausible.

- The Motion is **DENIED** as to the claims for Breach of Express Oral Contract (Claim 2), Breach of Implied Contract (Claim 3), Unjust Enrichment (Claim 8), and Quantum Meruit (Claim 10).  Despite inconsistencies in Angelone's version of events (which certainly undermine his credibility), Angelone has nonetheless consistently alleged facts that make it plausible that an oral and/or implied partnership agreement may have been reached between the parties despite the absence of a formal written agreement.  At this stage, the Court cannot conclude that there was no partnership agreement as a matter of law.  As for the quasi-contract claims, the Court determines that those claims are sufficiently pled in the alternative.  Further, while the statute of limitations of two years will limit recovery to damages accruing after September 2020, since partnership agreements create continuing obligations, under the continuous accrual rule each breach of those obligations triggers a new statute of limitations, and therefore, the statute of limitations does not serve as a complete bar to the contract or quasi-contract claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

- The Motion is **GRANTED** *without leave to amend* to the extent it seeks dismissal of the claims for Constructive Fraud (Claim 5), Negligent Misrepresentation (Claim 7), and Negligence (Claim 11) because those claims are premised on irreconcilable theories of duty and breach, given they allege a duty based on the partnership agreement, but accuse the Taylors of breach for failure to form a partnership.  To the extent the alleged breach of duty is premised on the Taylors' failure to perform under the partnership agreement, such breaches sound in contract, and are not actionable tort claims.

- The Motion is **GRANTED** *with leave to amend* to the extent it seeks dismissal of the claims for Breach of Fiduciary Duty (Claim 4) and Promissory Fraud (Claim 6), because those claims do not satisfy Rule 9(b)'s specificity requirement.  The three-year statute of limitations for fraud does not bar recovery on these claims to the extent they are premised on the alleged December 2019 agreement.

- The Motion is **DENIED** *without prejudice* to the extent it seeks to dismiss Angelone's requests for declaratory relief and punitive damages because dismissal of those requested remedies is premature.

## I.  REQUESTS FOR JUDICIAL NOTICE

The Taylors filed Requests for Judicial Notice (collectively the "RJN") in support of the Motion.  (Docket Nos. 66 and 68).  The Taylors request that this Court take judicial notice of the following court records reflecting the proceedings in the case commenced by Angelone against the Taylors in the Los Angeles Superior Court, for the county of Los Angeles, under Case No. 22-SM-CV-01633 (the "State Court Action"), as well as certain pleadings previously filed in this action:

- The Original Complaint ("State Original Compl."), First Amended Complaint ("State FAC"), and Second Amended Complaint ("State SAC), filed in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

State Court Action.  (RJN, Ex. 1 (State Original Compl.), Ex. 2 (State FAC), Ex. 3 (State SAC)).

- The Declarations of Darrick Angelone ("Angelone Decl.") and J.T. Fox ("Fox Decl."), filed in this action on September 23, 2022, in response to the Court's Order to Show Cause as to Why Preliminary Injunction Should Not Be Granted ("PI OSC Response" (Docket No. 18-2)).  (RJN, Ex. 4 (Angelone Decl.), Ex. 5 (Fox Decl.));

- The Original Counterclaims ("Counterclaims" (Docket No. 33)), the First Amended Counterclaims ("FACC" (Docket No. 37)), and the Second Amended Counterclaims ("SACC" (Docket No. 43)), filed in this action. (RJN, Ex. 6 (Counterclaims), Ex. 7 (FACC), Ex. 8 (SACC))

The Court may take notice of each of the state court filings and the filings filed in connection with the PI OSC Response in this action because they are court filings and therefore matters of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that the Court may take judicial notice of court filings and other matters of public record).  The Court notes, however, it takes notice of the fact that the documents (and the contents thereof) were filed, but it does not accept the truth of the facts contained in those filings.

The Court does not take judicial notice of the prior Counterclaims that have been amended, and thereby superseded by, the TACC in this action (RJN, Exs. 6-8).  *See CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1274 (9th Cir. 2021) ("An amended complaint supersedes the original complaint[.]") (internal quotation marks and citation omitted); *Channell Com. Corp. v. Wilmington Mach., Inc.*, No. ED CV 14-2240-DMG (DTBx), 2016 WL 7638181, at *3 (C.D. Cal. Mar. 25, 2016) (concluding that taking judicial notice of a superseded pleading in the context of a motion to dismiss an amended complaint is "inappropriate").

Accordingly, the RJN is **GRANTED** *in part* and **DENIED** *in part*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-6515-MWF (AGRx)**         **Date:  May 10, 2023**

Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

## II.    **BACKGROUND**

On September 12, 2022, the Taylors commenced this action against Angelone
and his corporations, alleging the following claims: Violation of CFAA (18 U.S.C. §§
1030(a)(2)(c) and (a)(5)) (Claim 1); Copyright Infringement (17 U.S.C. § 501) (Claim
2); Violation of the CDAFA (Cal. Pen. Code § 502) (Claim 3); Breach of Contract
(Claim 4), and Conversion (Claim 5).  (*See generally* Complaint (Docket No. 1)).  On
September 15, 2022, Plaintiffs moved for a TRO and an OSC regarding a preliminary
injunction.  The Court denied the TRO but granted the latter request, ordering
Defendants to show cause, in writing, why a preliminary injunction should not issue.
(Docket No. 14).  After considering the papers and arguments at the hearing, the Court
granted in part the preliminary injunction, ordering Defendants to turnover access, and
to some extent ownership, of certain online accounts and domain names.  (PI Order
(Docket No. 25).

Thereafter, Angelone filed counterclaims and third party claims against the
Taylors, focusing on the events allegedly giving rise to the conduct warranting an
injunction.  The Court summarizes the facts in the TACC, assuming the truth of the
plausible allegations, and in the light most favorable to Angelone as follows:

On or about April 26, 2012, the Taylors, through Hidden Empire, entered into a
written agreement with AOne, through Angelone ("2012 Agreement"), under which
AOne was hired to develop certain websites.  (TACC ¶ 16).  The contract term expired
in October 2013, and thereafter, Angelone and the Taylors agreed that Angelone
"would continue to provide marketing services and other digital services" to the
Taylors for Hidden Empire, "which included digital and social media marketing,
developing website domains, and creating digital content such as video and
applications."  (*Id*. ¶ 17).

Then, starting in 2016, the parties began to have several discussions regarding
the formation of an in-house digital marketing company, to be called Hyper Engine,
which would handle the marketing of Hidden Empire theatrical releases, among other
things.  (*Id*. ¶¶ 19-27).  On March 1, 2018, an entity entitled Hyper Engine LLC

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)            Date:  May 10, 2023

Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

("Hyper Engine") was formed and registered with the California Secretary of State and remains active as an LLC.  (*Id*. ¶ 29).   On or about March 1, 2018, an operating agreement for Hyper Engine was also created, within which Angelone was designated as a member of Hyper Engine along with the Taylors and a non-party, Robert Smith. The agreement further provided that Robert Smith would receive/incur 50% in net profits and losses, while the Taylors and Angelone would evenly split the remaining 50% in profits and losses.  Angelone alleges, on information and belief, that a version of this operating agreement was signed and executed by the Taylors on behalf of Hyper Engine.  On that basis, Angelone contends that the agreement constitutes a binding written agreement.  (*Id*. ¶ 28).   Angelone attaches the operating agreement as Exhibit A to the TACC.  The version of the operating agreement attached to the TACC is unsigned.  (*Id.*, Ex. A ("Unsigned OA").

Angelone then alleges that on or about December 1, 2019, the parties orally agreed to a second (or modified) operating agreement for Hyper Engine, altering the profit-sharing terms initially designated in the Unsigned OA, such that Angelone (as AONE) would share in 33.33% of the losses and profits and the Taylors (as Hidden Empire) would share in 66.67% of the losses and profits.  (*Id*. ¶ 30).

Angelone alleges additional facts to demonstrate that the parties acted as, and held themselves out as, partners from 2018-2022.  For instance, the parties created a bank account for Hyper Engine, on which Angelone is listed as a signatory; they created pitch decks to be shown to third parties, designating Angelone as the "Chief Technology Officer" of Hyper Engine; the parties, including Angelone, had executive business cards for Hyper Engine; and with the Taylors knowledge, Hyper Engine interacted with third parties through Angelone.  (*See id*. ¶ 31(a)-(m)).

But then, the relationship began to take a turn, beginning in or around April 2021, when the Taylors hired Quincy Newell as Chief Operating Officer to help restructure Hidden Empire, including a plan to add Hyper Engine as a subsidiary or wing of Hidden Empire.  (*Id*. ¶ 40).   Around that time, Angelone sought to re-negotiate his membership interest in Hyper Engine to a share above 50% to achieve majority ownership of the company.  (*Id*. ¶ 41).   The Taylors disregarded Angelone's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

attempt to re-negotiate and formalize a new operating agreement for Hyper Engine
upon restructuring.  (*Id.*).  On or about February 22, 2022, Angelone introduced his
attorney to the Taylors and Mr. Newell to re-negotiate and finalize the terms of a
revised Hyper Engine operating agreement in light of the "loose ends" surrounding
Angelone's membership in Hyper Engine.  (*Id.* ¶ 42).

Angelone alleges that the Taylors breached the operating agreements by
excluding Angelone from Hyper Engine's management and profits, and by claiming
ownership of Angelone and AOne's proprietary information and intellectual property
developed for Hyper Engine and Hidden Empire.  (*Id.* ¶¶ 71, 77, 86).  Additionally,
Angelone alleges, on information and belief, that the Taylors improperly diverted
funds from the Hyper Engine bank account for personal use on Hidden Empire
projects, in violation of their fiduciary duties to Hyper Engine.  (*Id.* ¶ 91).

Eventually, tensions reached a boiling point and Deon Taylor sent Angelone a
voice memo on April 8, 2022, indicating that Hyper Engine was "not real."  (*Id.* ¶ 34).
Realizing he had officially been ousted from the alleged partnership, Angelone filed an
action in State Court seeking, among other things, a declaration of his rights.  The
Taylors filed this action in federal court around the same time, prompting Angelone to
file counter- and third-party claims that mirror his claims pending in state court.
Specifically, Angelone brings 11 claims for relief as follows:  Breach of Express
Written Contract (Claim 1); Breach of Express Oral Contract (Claim 2), Breach of
Implied Contract (Claim 3); Breach of Fiduciary Duty (Claim 4); Constructive Fraud
(Claim 5); Promissory Fraud (Claim 6); Negligent Misrepresentation (Claim 7); Unjust
Enrichment (Claim 8); Declaratory Relief (Claim 9); Quantum Meruit (Claim 10); and
Negligence (Claim 11).  The Taylors move to dismiss all 11 claims on various
grounds.

## III.  **LEGAL STANDARD**

In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court
follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*,
556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)              Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"
*Iqbal*, 556 U.S. at 678 (citation omitted).  "All allegations of material fact in the
complaint are taken as true and construed in the light most favorable to the plaintiff."
*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (holding that a
plaintiff had plausibly stated that a label referring to a product containing no fruit juice
as "fruit juice snacks" may be misleading to a reasonable consumer).  The Court need
not accept as true, however, "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  The Court, based
on judicial experience and common-sense, must determine whether a complaint
plausibly states a claim for relief.  *Id.* at 679.

## IV.   DISCUSSION

The Court addresses the contract and quasi-contract claims first, followed by the
claims sounding in fraud, and concludes with the arguments addressing certain types of
remedies sought (i.e., declaratory relief and punitive damages).

### A.     Contract and Quasi-Contract Claims

### 1.  Existence of a Contract  (Claims 1-3)

Angelone contends that he has alleged, in the alternative, three distinct claims
for breach of contract based on Hidden Empire's repeated failure to honor their written
and oral promises that the parties formed a partnership to share in the profits of Hyper
Engine.  (Opposition at 12).  The three theories of contract formation are as follows:
(1) a written express agreement entered into on March 1, 2018, based on an unsigned
operating agreement for Hyper Engine ( the "Unsigned OA"); (2) an express oral
agreement entered on December 19, 2019, pursuant to which the parties agreed that
Angelone would receive 33.33% and the Taylors each received 33.33% ownership of
Hyper Engine, and that "all other material terms" would be in accordance with the
terms of the Unsigned OA; and (3) an implied agreement to equally share in the profits
and losses of Hyper Engine.  (*Id.*).  Angelone brings three claims for breach of
contract, one premised on each theory of contract formation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 22-6515-MWF (AGRx)          Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

A claim for breach of contract requires a plaintiff to plead the following elements: (1) a contract, (2) the plaintiff's performance or excused non-performance, (3) defendant's breach of the contract, and (4) resulting damage.  *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489, 49 Cal. Rptr. 3d 227 (2006).  Here, the Taylors dispute the first element — whether a contract exits.

Essential to the existence of a contract are the following elements: (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and, (4) sufficient cause or consideration."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023) (citing Cal. Civ. Code § 1550).

Under California law, "a contract may be written, oral or inferred from the parties' conduct (the last being called an "implied-in-fact" contract)."  *Westside Est. Agency, Inc. v. Randall*, 6 Cal. App. 5th 317, 328, 211 Cal. Rptr. 3d 119 (2016).  "The terms of an express contract are stated in words" while "[t]he existence and terms of an implied contract are manifested by conduct."  *Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178, , 134 Cal. Rptr. 3d 779 (2011) (internal citation omitted); *see also* Cal. Civ. Code § 1621 ("An implied contract is one, the existence and terms of which are manifested by conduct.").  "Like an express contract, an implied-in-fact contract requires an ascertained agreement of the parties."  *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 636, 198 Cal. Rptr. 3d 211 (2016), *as modified* (Feb. 1, 2016) (internal citations omitted).

The Taylors argue that Angelone's own inconsistent statements within the TACC, in previous declarations submitted to this Court, and in the complaints filed in the State Court Action render implausible Angelone's argument that there was ever a meeting of the minds.  The Court agrees with respect to Angelone's claim based on an express ***written*** agreement (Claim 1) but not as to Angelone's claims based on an oral or implied agreement (Claims 2 and 3).

Angelone attaches as an exhibit to the TACC an unsigned version of the alleged express written agreement that was allegedly "entered" on or about March 1, 2018. Though the Unsigned OA has a signature line for Deon Taylor, as "Class A Managing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 22-6515-MWF (AGRx)                    Date:  May 10, 2023

Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Member" of Hyper Engine LLC, the version attached to the Complaint is not signed by anyone.  Nonetheless, Angelone alleges that he is "informed and believe[s]" that it was "signed and executed by" the Taylors.  (TACC ¶ 67).  This allegation is both insufficient and implausible.  As an initial matter, Angelone does not explain the basis for this belief.  Further, it is not plausible that the Taylors would sign the agreement with intent to bind the partners and yet never circulate the executed agreement to the other partners.  Further rendering this claim implausible is the fact that Angelone has now filed six versions of a complaint alleging breach of contract by the Taylors based on the same set of facts, and not once has Angelone filed a signed written contract.

Further, several "fill in the blanks" throughout the agreement are left blank, demonstrating that the Unsigned OA is a draft, not a finalized agreement.  And in the State Court Action Angelone has repeatedly referred to the Unsigned OA as merely a "draft," which directly undermines his contention that the Unsigned OA itself shows a meeting of the minds.  (RJN, Exs. 1, 2, 3 (State Action Complaints), ¶ 21).  Therefore, the Court concludes that Angelone has not and cannot plausibly allege breach of an express written contract.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (noting that a district court is not obligated "to accept as true allegations raised in the complaint that are contradicted by prior proceedings of which judicial notice is properly taken").

At the hearing, Angelone's counsel argued that it is plausible that a signed version of the Agreement exists given the fact that the Taylors opened a bank account in Hyper Engine's name and presumably the bank would require a copy of the agreement.  However, even if some signed version does exist, there is no suggestion that there is a version of the Agreement ***that all parties have signed***.  Therefore, Angelone's claim is still, at best, one of an oral agreement.  In other words, if the parties agreed orally to be bound by the terms of the written agreement, that is still a claim based on an oral agreement absent signatures by all parties to the written agreement.

The Court also asked counsel at the hearing whether there were facts that could be added to the TACC to make the claim more plausible.  In response, Angelone's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)            Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

counsel suggested that discovery would be needed to add additional facts.  However, the Court agrees with the Taylors' counsel who argued that it is inappropriate to open the gates to discovery when a plausible claim has not been pled.  Therefore, the Court determines that leave to amend would be futile.  With that said, if in the course of discovery on the other claims, new evidence surfaces, Angelone is of course free to move the Court to amend his Complaint.

Accordingly, the Motion is **GRANTED *without leave to amend*** to the extent it seeks dismissal of the claim for Breach of Express Written Contract (Claim 1).

However, the landscape is not as manicured when it comes to the alleged oral and/or implied agreement between the parties.  While the parties discuss the agreement in terms of a "contract" it seems to the Court that what is actually at issue is whether a partnership agreement was ever formed, which raises complicated legal issues regarding business associations that the parties have not even begin to adequately address.  Given the clear nature of any alleged agreement here is that of partnership, the Court has approached the issue from that perspective.

The Court notes that the issue of partnership is complicated by the fact that Hyper Engine is registered as an LLC.  But given the lack of briefing on this clear, central issue of business formation, the Court declines to conclude, at this stage, that the fact that Hyper Engine was registered as an LLC precludes a finding of general partnership.  *See Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 244 (D.D.C. 2016) ("Partnerships 'may carry out their business objectives through LLCs.'") (citing *Leon v. Kelly*, No. CV 07–0467-JB-WDS), 2008 WL 6011935, at *2–4 (D.N.M. Dec. 3, 2008)) (denying summary judgment in a quite analogous action, where there was a dispute as to whether the parties formed an oral partnership that involved creating an LLC to carry out the business objective of the partnership); *Mroz v. Hoaloha Na Eha, Inc.*, 410 F. Supp. 2d 919, 932 (D. Haw. 2005) (concluding that a partnership claim existed where it was alleged that there "exist[ed] . . . a partnership which operated through various [corporate] entities"); *see also* Donn, Hillman, & Weidner, *Formation of Partnership, Rev. Uniform Partnership Act*, §202 (2022-2023 ed.) ("[W]hen persons associate in business and form a corporation or other entity  . . . . they may be found to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 22-6515-MWF (AGRx)                Date: May 10, 2023
Title: Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

have formed a partnership that continues past the formation of the entity.  For example, the entity may be found to be simply an instrumentality of the continuing partnership").  However, the Court's holding herein does not preclude the parties from more directly addressing the issue of partnership at summary judgment (and indeed the Court expects the parties to address it at that time).

In response to arguments made at the hearing, the Court reiterates the point that the Court expects counsel to further address the issue of partnership in subsequent stages of this action.  Specifically, at the hearing, the Taylors' counsel suggested that Angelone abandoned the issue of partnership because, in previous versions of the Complaint, the contract was pled as a partnership but, in the latest iteration of the TACC, Angelone alleged that the parties merely entered an "operating agreement."  In the Court's view, the facts alleged in the TACC give rise to a claim of partnership regardless of how the claim is labeled.  By virtue of what the parties are alleged to have agreed upon (i.e., to carry on a business and share in profits of that business), the relationship (if one exists) is one of de facto partnership.

Nonetheless, the Court is not ***insisting*** that Angelone pursue the contract claim as one of partnership.  If both parties agree that the issue is not one of partnership, that will need to be fleshed out in later briefing.  But at least for purposes of this Motion, the Court has looked to the case law to determine if enough has been pled to demonstrate a meeting of the minds.  The most analogous cases the Court has identified discuss the issue as one of partnership, therefore, the Court has discussed the issue in those terms.  But again, nothing in this Order precludes the parties later from arguing that a different type of agreement was reached.  The Court simply notes that, as pled, the agreement appears to be a partnership agreement, and therefore, the Court has relied on case law discussing what is sufficient to demonstrate a meeting of the minds in the context of partnership.

"Oral agreements to jointly engage in a business and share the resulting profits are enforceable as partnership agreements."  *Stull v. Fox*, No. CV 09-6081-R, 2010 WL 3895538, at *6 (C.D. Cal. Oct. 4, 2010), *aff'd*, 487 F. App'x 336 (9th Cir. 2012) (citing *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457, 88 Cal. Rptr. 2d 130 (1999))

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

("[P]arties who expressly agree to associate as co-owners with the intent to carry on a business for profit, have established a partnership.  Once the elements of that definition are established, other provisions of the UPA [Uniform Partnership Act] and the conduct of the parties supply the details of the agreement"); (Cal. Corp. Code § 16101(a)(10)) ("'Partnership agreement' means the agreement, whether written, oral, or implied, among the partners concerning the partnership, including amendments to the partnership agreement[.]").

"The ultimate test of the existence of a partnership is the intention of the parties to carry on a definite business as co-owners.  Such intention may be determined from the terms of the parties' agreement or from the surrounding circumstances." *Jones v. Goodman*, 57 Cal. App. 5th 521, 538, 271 Cal. Rptr. 3d 487 (2020) (internal citation omitted).  A partnership or joint venture can be created with little formality, so long as there is a basis for determining the existence of a breach and a rational basis for the assessment of damages.  *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209, 215, 45 Cal. Rptr. 3d 692 (2006).  Unless the material facts are undisputed, [w]hether or not a partnership agreement was formed is a question of fact.  *Stull*, 2010 WL 3895538, at *6 (internal citation omitted).

Angelone alleges that throughout 2018 to 2022, the parties "held themselves out to the public as equal members and partners for the development and execution of" a business engaged in "digital marketing and IP services" under the Hyper Engine name. (Opposition at 3) (citing TACC ¶¶ 31-33, 82).  Angelone also alleges that in December 2019, the parties orally agreed to the terms of the partnership, such that Angelone would receive 33.33% and the Taylors each received 33.33% ownership of Hyper Engine.  (*Id.*).  Further, Angelone contends that they agreed that "all other material terms of this alleged oral operating agreement would be in accordance with the terms of the [Unsigned OA][.]"  (*Id.*).

The Taylors argue that given the differing and contradictory theories as to when the agreement was formed and the nature of the relevant terms of the agreement, Angelone's argument that an agreement was ever formed is inconsistent and implausible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

However, that there may have been terms of the agreement that were agreed to orally, implied, and otherwise taken from the written draft, does not necessarily render the claim implausible.  A "contract need not be either solely express or solely implied." *Moon v. Rush*, No. CV 11-03102-GEB, 2013 WL 4012828, at *7 (E.D. Cal. Aug. 6, 2013) (citing *Retired Emps.*, 52 Cal. 4th 1171 at 1178).  Implied terms "may be incorporated into an express contract based on the conduct of the parties."  *Id.*

The Taylors emphasize two additional facts to demonstrate that there was no meeting of the minds.  First, they point out that, in several of the judicially noticed emails, which were filed in this Court in support of the PI OSC Response, Angelone repeatedly pressured the Taylors to "formalize" and/or "finaliz[e] the terms" of the partnership agreement regarding Hyper Engine.  (Motion at 5-6) (citing Angelone Decl. ¶¶ 39, 69).  Second, the Taylors reiterate that because the Unsigned OA contemplated the parties signatures but was never signed, the fact of a lack of a signed writing demonstrates that there was never a meeting of the minds.

The Court generally agrees that those two facts make the Taylors' contention that there was never a meeting of the minds plausible – but they do not make Angelone's theory of the facts implausible, as a matter of law.  The fact that Angelone repeatedly emailed the Taylors about "formalizing" the agreement could be plausibly construed (and therefore must be) as expressions of Angelone's frustration that the agreement had not been reduced to writing, not that no agreement had ever been formed.  (*See*, *e.g.*, ¶ TACC 47) (Angelone noting in an email that "there was a mutual understanding was that a Hyper Engine partnership be formalized . . .").  Additionally, in the Opposition, Angelone argues that his attempts to "formalize" the agreement evinces his desire to renegotiate the terms of the already existing agreement and to formalize a new operating agreement.  (Opposition at 3).  This argument is not wholly implausible — whether it is credible is a different question and one that this Court cannot answer on a motion to dismiss.  *Hebberd-Kulow Enterprises, Inc. v. Kelomar, Inc.*, 218 Cal. App. 4th 272, 159 Cal. Rptr. 3d 869 (2013) ("[W]hether parties have reached a contractual agreement and on what terms are questions for the fact finder

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-6515-MWF (AGRx)** **Date:  May 10, 2023**
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

when conflicting versions of the parties' negotiations require a determination of credibility.").

That there was a draft written agreement that went unsigned also can cut both ways.  "When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created." *Banner Ent., Inc. v. Alchemy Filmworks, Inc.*, 62 Cal. App. 4th 348, 358, 72 Cal. Rptr. 2d 598 (1998), *as modified* (Mar. 30, 1998) (emphasis in original).  "On the other hand, if the respective parties orally agreed upon all of the terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement." *Id.* (citations omitted).

The Taylors argue that the "draft operating agreement itself contemplates signatures by the parties."  (Reply at 3) (citing TACC, Ex. A (Unsigned OA) ¶¶ 10.1, 10.3, 13.2, 13.4, 13.6).  However, the provisions cited are not so explicit.  The closest the cited provisions come to mandating a signature is the final provision of the Unsigned OA, which states "[t]his Agreement may be executed in counterparts by facsimile, scan (i.e., pdf), or email signatures, each part of which when executed shall be deemed an original for all purposes and all of which when taken together shall constitute one and the same document fully binding and with full legal force and effect." (TACC, Ex. A (Unsigned OA) ¶ 13.6).  While suggestive of the fact that the agreement was intended to be signed, the agreement does not explicitly state that it would be operative *only* if signed.  *See Simmons v. Hankey*, No. 16-06125-ODW (JEMx), 2017 WL 424850, at *3 (C.D. Cal. Jan. 30, 2017) ("The agreement here does not specifically state that it would be operative *only* if signed, and thus Defendants could assent to the agreement in other ways.") (emphasis in original).  The argument is further undermined by the fact that the Unsigned OA only provides a signature line for Deon Taylor but does not include a signature line for the other named partners,

---

**CIVIL MINUTES—GENERAL** 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

suggesting the parties did not necessarily understand that a final version would be
signed by all parties.

The briefs mostly focus on case law about tangential issues and neither party
provides precedent illuminating the main issue here – whether the facts alleged are
sufficient to demonstrate a meeting of the minds.  Based on the case law identified by
the Court, however, it is apparent that the alleged facts can lead to two plausible
explanations; either the parties entered an enforceable partnership agreement, or they
agreed to enter a partnership agreement in the future.  Only the former agreement
constitutes an enforceable contract.  Two cases are particularly instructive on how the
Court should construe the alleged facts at this stage.

The version of the facts advanced by Angelone resembles that of the facts in
*Holmes*.  There, the defendant and the plaintiff were personal friends and during a trip
together, the plaintiff created a nail polish color that the defendant admired.  After they
returned from their trip, they sat at the defendant's kitchen table, experimenting with
nail polish colors, and at that time, agreed to form a company, which became the
popular Urban Decay brand.  They began to work together on their concept doing
market research and meeting frequently to discuss the development of their business.
*Id.* at 445–447.  The plaintiff participated in "board meetings" and worked in their
warehouse without pay but was increasingly marginalized.  *Id.* at 448–449.  When the
plaintiff eventually asked to memorialize her partnership arrangement with the
defendant, which she understood to be 50-50 coownership, she was told she had at
most a 5% interest in the company.  *Id.*  She sued, and a jury found the two women had
formed a partnership and that the defendant had breached their agreement and violated
her fiduciary duties.  *Id.* at 451–452.

The Court of Appeal held that the agreement was not too indefinite because the
plaintiff was "not seeking specific enforcement of a single vague term of the
agreement" but instead, "was frozen out of the business altogether, and her agreement
with [the defendant] was completely renounced."  *Id.* at 459.  The court concluded that
["t]he agreement that was made and the subsequent acts of the parties suppl[ied]
sufficient certainty to determine the existence of a breach and a remedy."  *Id.* at 459;

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 22-6515-MWF (AGRx)          Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

*see also Miller v. Fleming*, No. A150554, 2018 WL 3689429, at *9-*10 (Cal. Ct. App. Aug. 3, 2018), *as modified on denial of reh'g* (Aug. 30, 2018) (relying on *Holmes* to conclude that there was sufficient evidence for the jury to conclude that a partnership had formed despite emails between the parties where the plaintiff admitted the parties had "never discussed how [they] would structure deals" and where the plaintiff asked: "if there [was] any upside for [her]" on certain aspects of the business); *Jogani v. Jogani*, No. BC-290553, 2022 WL 16861803, at *1 (Cal. Super. Apr. 20, 2022) (relying on *Holmes* to conclude that different recollections of what happened "do not establish a lack of mutual consent" but rather established "a factual dispute over what the parties said and did" with respect to an alleged family real estate partnership).

On the other hand, in *Bustamante*, the Court of Appeal affirmed the trial court's grant of summary judgment, concluding that the evidenced at best showed the parties had an "'agreement to agree'" in the future.  141 Cal. App. 4th at 213.  There, the plaintiff sought a partnership with Intuit to develop a market for Intuit's QuickBooks product in Mexico.  *Id.* at 201–202.  The plaintiff met with a senior vice-president and members of his business development team, who told him they would need to secure third-party financing before proceeding.  *Id.* at 202.  Subsequently, the parties developed a "phased approach" for their "evaluation" of the project, but eventually decided not to pursue it because they were unable to obtain the necessary third party funding.  *Id.* at 203, 206.  The Court of Appeal observed that "the parties always understood that it would not be possible to 'form and launch' Intuit Mexico without significant third[-]party involvement in the enterprise," and so, "there was no expression of mutual consent to create a company without investor financing."  *Id.* at 213.  Because essential terms were only sketched out, with their final form to be agreed upon in the future (and contingent upon third party approval), "the parties had at best an 'agreement to agree,' which is "unenforceable under California law."  *Id.*

Here it may be the case that the evidence establishes at best an agreement to agree was formed, but unlike in *Bustamante*, there are no allegations in the TACC that suggest the partnership agreement was contingent on some future event that never transpired.  Rather, Angelone points to sufficient facts, taken as true, that like *Holmes*,

<hr>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

nudge his theory over the line of plausibility and suggest an agreement to form a
partnership concerning Hyper Engine materialized despite the failure to formalize a
written agreement.  For example, Angelone alleges that the Taylors created a Hyper
Engine bank account, on which Angelone is listed as signatory; the parties created
Hyper Engine executive business cards for the Taylors and Angelone; in pitch decks
for Hyper Engine, Angelone was listed as the Chief Technology Officer; and Angelone
sent invoices and communications to third-party clients on Hyper Engine's behalf.
(TACC ¶ 29).  These facts give rise to a plausible inference of an agreement to carry
on the Hyper Engine business as partners.

At the hearing, counsel for the Taylors reiterated that the inconsistency in
Angelone's many complaints belies any plausible claim of partnership.  However, even
if the Court disregards all inconsistent allegations, there are still consistently alleged
facts that tend to make it plausible that there was at some point a meeting of the minds.

At this stage, construing all inferences in favor of Angelone, the Court cannot
conclude that there was no oral and/or implied partnership agreement as a matter of
law.

### 2.  Quasi-Contract Claims (Claims 8 and 10)

At the outset, the Court notes that the Taylors argue in the Reply that the
equitable claims must be dismissed because the TACC does not specifically allege that
the claims are pled in the alternative.  (Reply at 18).  However, the equitable claims
include allegations indicating that Angelone does not have an adequate legal remedy.
(*See*, *e.g*., TACC ¶¶ 130, 134, 139).  Those allegations implicitly amount to a
contention that the equitable claims are alleged under the assumption that legal
remedies are not available (i.e., because no official contract was formed).  While the
Court agrees with the Taylors that the TACC could certainly be clearer, the Court sees
little value in dismissing the equitable claims merely to have Angelone add an
allegation that the equitable claims are pled "in the alternative" when the current
allegations already give rise to that inference.  The Taylors and this Court will have
plenty of opportunities to ensure that Angelone is not entitled to double recovery on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

inconsistent theories of liability.  But the failure to use the magic words "in the
alternative" in the TACC does not warrant dismissal.

   ***Unjust Enrichment (Claim 8):***  In the Motion, the Taylors argue that the unjust
enrichment claim fails because it is not an independent cause of action under California
law and because the factual predicates of the claim are the subject matter of an express
contract.  (Motion at 21).  In response, Angelone argues that the Court should construe
the claim as a quasi-contract claim for restitution and contends that the claim does not
cover the same subject matter as the contract claims because it seeks to recoup unpaid
invoices for services rendered outside of the scope of the partnership agreement.
(Opposition at 20-21).  In the Reply, the Taylors argue for the first time, that the unjust
enrichment claim fails because Angelone does not adequately allege any underlying
wrongdoing.

   In California there is no independent claim for unjust enrichment because unjust
enrichment "describe[s] the theory underlying a claim that a defendant has been
unjustly conferred a benefit through mistake, fraud, coercion, or request."  *Astiana v.
Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  Although unjust
enrichment is not a standalone cause of action under California law, "unjust
enrichment and restitution are not irrelevant."  *Id.*  "When a plaintiff alleges unjust
enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking
restitution.'"  *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App.
4th 221, 231 (2014)).  "[R]estitution may be awarded in lieu of breach of contract
damages when the parties had an express contract, but it was procured by fraud or is
unenforceable or ineffective for some reason."  *McBride v. Boughton*, 123 Cal. App.
4th 379, 388 (2004) (citations omitted).  It may also be awarded "where the defendant
obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct."
*Id.*

   Here to the extent the unjust enrichment claim is premised on the Taylors'
receipt of Angelone's services for which they failed to pay for, it clearly states a claim
for unjust enrichment.  To the extent the claim overlaps with the contract claims, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Court construes the claim as pled in the alternative.  *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Defendants contend that the Court should dismiss Plaintiffs' unjust enrichment claims because they have adequate remedies at law.  The Court finds no basis for doing so.  The Ninth Circuit has instructed district courts to construe claims for unjust enrichment under California law as quasi-contract claims.") (internal citation omitted).

*Quantum Meruit:*  The Taylors argue that the Quantum Meruit claim should be dismissed because it is duplicative of Angelone's legal claims.  However, as Angelone correctly points out alternative equitable claims are not subject to dismissal at the pleading stage based on duplication.

The Ninth Circuit has explicitly held that these equitable claims can be plead even though they are duplicative (especially where the reason legal remedies might not be available is obvious, such as here, where there is a dispute that an enforceable contract exists).  *See Astiana*, 783 F.3d at 762 (reversing district court's order dismissing quasi-contract claim because "[t]o the extent the district court concluded that the cause of action was nonsensical because it was duplicative or superfluous . . . this is not grounds for dismissal" as a "party may set out 2 or more statements of a claim or defense alternatively") (citing Fed. R. Civ. P. 8(d)(2)).  If parties could not allege equitable claims in the alternative to contract claims where the existence of a contract is in dispute, it would essentially force the Court to make a factual determination at the pleading stage as to whether the contract exists.  The Court does not read the Ninth Circuit case law as requiring such a result.

Accordingly, the Court rejects the Taylors' substantive arguments for dismissal of the equitable claims.

### 3.  Statute of Limitations (Claims 1-3, 8, and 10)

The Taylors argue that even if there was a contract (or a quasi-contract) any claim premised on breach of such a contract is barred by the statute of limitations.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                    Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

The statute of limitations is an affirmative defense, Fed. R .Civ. P. 8(c), and complaints do not ordinarily need to allege the non-availability of affirmative defenses. *United States v. Northern Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004).  Nonetheless, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (*quoting Huynli v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  "A cause of action for breach of contract accrues at the time of the breach, which then starts the limitations period running."  *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120, 66 Cal. Rptr. 2d 337 (1997); *see also IV Sols., Inc. v. Empire Healthchoice Assur., Inc.*, No. 20-56132, 2021 WL 5492974, at *1 (9th Cir. 2021) (quoting same).  The statute of limitations for breach of a non-written contract is two years.  Cal. Code Civ. Proc. § 339.1.

Angelone argues that the Taylors breached the partnership agreement by, among other things, "failing to treat [Angelone] as a formal member" of Hyper Engine, excluding him "from Hyper Engine's management and profits," and "claiming ownership" of  proprietary information and intellectual property developed for Hyper Engine.  (Opposition at 4) (citing TACC ¶¶ 71, 77, 86).  The only one of those allegations that is finite enough to give notice to the Taylors is the breach of an alleged agreement to share in the profits of the Hyper Engine partnership.

It is not clear on the face of the TACC when performance became due for distribution(s) of profits, therefore it is impossible to say when each (or any breach) of the alleged agreement precisely occurred.  The TACC only makes clear that the breach(es) occurred after March 2018 and prior to the filing of the State Court Action in September 2022.

The Taylors argue that based on the allegations in the TACC, if there was a contract, the breach occurred prior to August 20, 2019, because Angelone sent an email to the Taylors on that date stating that until a formal agreement was reached "AOne maintain[ed] ownership of all works created by AONE, including domains and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                    Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

social accounts created in collaboration between AONE and [Hidden Empire]" (the
"August 2019 Email").  (TACC ¶ 37; *see also* Angelone  Decl. ¶ 69, Ex. 44 (providing
context of the email)).  The best the Court can understand this argument is not one of
breach but of repudiation.

      The Taylors seems to be suggesting that if an agreement was reached in 2018,
the August 2019 Email demonstrates that the Taylors repudiated the agreement.   But
Angelone effectively argues that even if the August 2019 Email did signify that the
Taylors had repudiated any agreement allegedly entered in 2018, the parties proceeded
to make a subsequent agreement to operate Hyper Engine in December 2019 and the
breach of ***that*** promise is what forms the basis of his claims.  (Opposition at 13).  It
appears to the Court that the Taylors' only response to this argument is that the Court
should disregard the allegation that an oral agreement was entered in 2019 as
implausible.  But, as already noted, the Court will not disregard at this stage the
allegations concerning the oral and/or implied agreement.

      Even viewing the email as a breach rather than a repudiation, Angelone argues
that "a breach can be continuing in nature" and accordingly, the statute of limitations
did not accrue until the last breach which occurred on April 22, 2022, when the Taylors
made it clear that they had no intention of continuing a partnership with Angelone.  (*Id.*
at 14) (citing *Richards v. CH2M Hill, Inc*. 26 Cal. 4th 798, 811–818, 111 Cal. Rptr. 2d
87 (2001); *see National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101,
118 (2002)).

      In the Reply, the Taylors argue that the continuing violation doctrine is a rule
specific to Fair Employment Housing Act ("FEHA") employment claims.  While the
two cases Angelone has cited deal with FEHA claims, the Taylors cite no authority for
the proposition that the continuing violation doctrine is so limited.  And the case law is
to the contrary.  The continuing violation doctrine is a common law accrual rule and
such rules apply to state law claims unless a statute expressly provides otherwise.  *See
Aryeh v. Canon Bus. Sols., Inc*., 55 Cal. 4th 1185, 151 Cal. Rptr. 3d 827 (2013) (noting
the "silence" in the Unfair Competition Law disallowing the application of common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)          Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

law accrual rules "triggers a presumption in favor of permitting settled common law accrual rules to apply" to the statute of limitations).  And California courts have applied at least a species of the continuing violation doctrine in the context of contract disputes.

Specifically, the species of the doctrine applied to contracts is more often referred to as the "continuous accrual doctrine."  *See Aryeh*, 55 Cal. 4th at 1192, n. 3 (noting that "the continuing violation doctrine and the theory of continuous accrual, are branches of the principles that apply to continuing wrongs[.]").  A party to a contract need not "treat the contract as abandoned on the first breach of it, or on any particular breach, but [has the] election to still rely on it[.]"  *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 59 Cal. Rptr. 2d 20 (1996).  However, modern cases acknowledge that the continuous accrual rule "effectively limits the amount of retroactive relief a plaintiff or petitioner can obtain to the benefits or obligations which came due within the limitations period."  *Aryeh*, 55 Cal. 4th at 1199.  In other words, where a contract has continuing obligations, "each alleged breach must be treated as triggering a new statute of limitations."  *Id.* at 1200.

The Taylors also argue that the continuous accrual rule does not apply here because there are no alleged facts indicating why Angelone was not able to discover his claims earlier. (Reply at 14).  However, this argument conflates the delayed discovery rule (often used in tort cases for latent injuries) with the continuous accrual rule.  The rules have different rationales and different prerequisites.  The premise for applying the continuous accrual rule is that it would be inequitable to allow "the expiration of the limitations period following a first breach of duty or instance of misconduct" to be "sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance."  *Aryeh*, 55 Cal. 4th at 1198.  And because the continuing violation doctrine limits recovery to those breaches within the limitations period it does not, as the Taylors argue, "entirely defeat[]" the operation of the statute.  (Reply at 14).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)          Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Therefore, whatever the August 2019 Email may ultimately prove, the Court does not agree that it forecloses all possibility of recovery.  Given a partnership continues until its dissolution (rather than the performance of a specific act), a partner's obligations are clearly continuing in nature.  To the extent a partnership agreement exists, the obligation to treat Angelone as a partner and to share in profits of the Hyper Engine enterprise are clearly continuing obligations, and each breach of those obligations retriggers the statute of limitations.  Therefore, if successful in proving the existence of a partnership agreement, Angelone would at least be entitled to the profits that came due within the statute of limitations (i.e., those accruing after September 2020) for the breach of the implied and/or oral contract and quasi-contract claims.

Accordingly, the Motion is **GRANTED** *without leave to amend* as to the claim for Breach of Express Written Contract claim (Claim 1) and **DENIED** as to the claims for Breach of Express Oral Contract (Claim 2), Breach of Implied Contract (Claim 3), Unjust Enrichment (Claim 8), and Quantum Meruit (Claim 10).

## B.    Claims Sounding in Fraud

Angelone brings five claims that ultimately sound in fraud as follows: Breach of Fiduciary Duty (Claim 4); Constructive Fraud (Claim 5); Promissory Fraud (Claim 6); Negligent Misrepresentation (Claim 7); and Negligence (Claim 11).  The statute of limitations and pleading standard for these claims differs from that of the contract claims.

### 1.  Statute of Limitations (Claims 4-7, and 11)

Where the gravamen of the complaint is that defendant's acts constituted actual or constructive fraud, the applicable statute of limitations is the Code of Civil Procedure section 338(d) three-year limitations period.  *McFall v. Stacy & Witbeck, Inc.*, No. CV 14-04150-JSC, 2016 WL 6248882, at *2 (N.D. Cal. Oct. 26, 2016) (citing *Thomson v. Canyon,* 198 Cal. App. 4th 594, 607, 129 Cal. Rptr. 3d 525 (2011)).  A fraud claim is "not deemed to have accrued until the discovery, by the aggrieved party,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

of the facts constituting the fraud or mistake." *Id.* (citing Cal. Code Civ. Proc. § 338(d)).  "[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof — when, simply put, he at least suspects [ ] that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding." *Id.* (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98, 87 Cal. Rptr. 2d 453 (1999)).

The Taylors again argue that the statute of limitations began to run by August 20, 2019, given the August 2019 Email from Angelone expressing his frustration over the lack of formalization of the partnership agreement.  However, as noted, the Court deems the December 2019 agreement as the operative alleged agreement.  Therefore, any fraud associated with that alleged agreement is inherently within the three-year statute of limitations since Angelone filed the State Court Action in September 2022, less than three years from the time of the December 2019 agreement.  And, therefore, the claims are not entirely barred to the extent they stem from the December 2019 agreement.

Accordingly, the Motion is **DENIED** to the extent it seeks dismissal of Claims 4, 5, 6, 7, and 11, based on the statute of limitations at least as far as those claims are premised on the December 2019 agreement.

### 2.  Existence of a Duty (Claims 4, 5, 7, and 11)

The Taylors argue that Claims 4 (Breach of Fiduciary Duty), 5 (Constructive Trust), 7 (Negligent Misrepresentation), and 11 (Negligence) all fail because they require the plaintiff to plead the existence of a duty and the only duty alleged here arises from the alleged partnership agreement (which they contend is insufficiently pled).

As noted, the Court has concluded that the alleged partnership agreement is sufficiently pled.  However, that does not end the inquiry as the Court must determine if the alleged breach plausibly coincides with the duty allegedly arising from the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)              Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

partnership agreement.  While Angelone claims throughout his Opposition that his allegations are pled with "overwhelming" and "painstaking[]" specificity, in fact, the TACC is a hodgepodge of facts that are often repetitive and incomplete, which makes deciphering the difference between his eleven claims quite difficult.  This results in both a Rule 8 and Rule 9(b) problem for several of his claims.

As for the claims for constructive fraud, negligent misrepresentation, and negligence, the alleged existence of a duty (as co-partners) appears to be irreconcilable with the alleged breach, which essentially boils down to the alleged failure ever to enter a partnership agreement.  (*See* Opposition at 17) (with respect to the constructive fraud claim noting that the TACC "reveal[s] countless details of the Plaintiffs' fraudulent conduct with respect to the formation of Hyper Engine"); *see id*. at 20, 23 (with respect to the negligence and negligent misrepresentation claims that the heart of the claims is that the Taylors failed to tell Angelone that the Hyper Engine partnership was "not real")).  While the Court is willing to allow *separate* claims to be pled in the alternative, the facts supporting the elements of a *single* claim must be internally consistent such that, if true, the facts would support an entitlement to relief.  Here, it obviously cannot both be true that a duty between the parties arose when the parties entered a partnership agreement but also that the Taylors breached that duty by failing ever to enter a partnership agreement.  Therefore, the constructive fraud, negligent misrepresentation, and negligence claims are premised on implausible and irreconcilable theories of duty and breach.

And to the extent the alleged breach is not the failure to enter a partnership agreement but the failure to perform the obligations imposed by the partnership agreement – those claims are not properly cast as fraud or negligence claims but rather amount to breaches of the agreement itself.  *Aas v. Superior Court*, 24 Cal. 4th 627, 643, 101 Cal. Rptr. 2d 718 (2004), *superseded by statute on other grounds by* Cal. Civ. Code §§ 895–945.5 ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.").  Therefore, because Claims 5, 7, and 11 are premised on implausible theories and/or amount to nothing more than contractual claims, they fail as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)            Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

The negligent misrepresentation claim is additionally deficient because such a claim may not be based on making a promise with no intent to perform that promise in the future.  *See Sanchez v. Aurora Loan Servs., LLC*, No. CV 13-08846-MMM (RZx), 2014 WL 12589660, at \*13 (C.D. Cal. June 10, 2014) ("[N]egligent misrepresentation claims are only cognizable under California law when they plead a false representation regarding past or current events."); *see also Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1201 n. 2 (9th Cir. 2001) (stating that the subject of a negligent misrepresentation must be a past or existing material fact); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001) (same); *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834, 64 Cal. Rptr. 2d 335 (1997) (same)).

At the hearing, Angelone's counsel did not advance any additional arguments to suggest that these claims could be saved by amendment.  Rather, he suggested that Angelone would pursue his claims grounded in fraud by amending his breach of fiduciary duty and promissory fraud claims (as discussed below).

Accordingly, the Motion is **GRANTED** *without leave to amend* to the extent it seeks dismissal of the claims for Constructive Fraud (Claim 5), Negligent Misrepresentation (Claim 7), and Negligence (Claim 11).

Although the breach of fiduciary duty claim is also premised on a duty arising by virtue of the partnership agreement, the claim is distinct from Claims 5, 7, and 11 in that the alleged breach is not merely a failure to enter the agreement or perform under the agreement.  Rather, the breach of fiduciary duty claim is premised on the Taylors alleged conduct in "diverting funds from the Hyper Engine bank account for their own personal use and to finance debts for various [Hidden Empire] projects, in a deliberate violation of their fiduciary duties of care and loyalty."  (TACC ¶ 91).  It is well-settled that partners owe each other fiduciary duties and diverting partnership funds for personal reasons is a breach of the fiduciary duty of loyalty.  *See, e.g.*, *Bardis v. Oates*, 119 Cal. App. 4th 1, 12, 14 Cal. Rptr. 3d 89 (2004) (noting that a "[p]artnership is a fiduciary relationship, and partners are held to the standards and duties of a trustee in their dealings with each other," and "diverting partnership funds" violates those duties).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)               Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Because Angelone's theory of duty and breach is not irreconcilable with respect to the breach of fiduciary duty claim, that claim will not be dismissed for implausibility — though the claim is problematic for Rule 9(b) reasons, as explained below.

### 3.  Specificity of Fraud Allegations

"Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)."  *Glen Holly Entertainment, Inc. v. Tektronix, Inc*., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed R. Civ. P. 9(b).  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted). This includes "the who, what, when, where, and how of the misconduct charged."  *Id.* (internal quotation marks and citation omitted).  In fraud cases, plaintiffs "must set forth what is false or misleading about a statement, and why it is false."  *Decker v. GlenFed, Inc*., 42 F.3d 1541, 1548 (9th Cir. 1994).

***Breach of Fiduciary Duty (Claim 4)***: The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages.  *Sheley v. Harrop*, 9 Cal. App. 5th 1147, 1171, 215 Cal. Rptr. 3d 606 (2017) (internal citation omitted).

Here the breach of fiduciary duty claim is based on the allegation, made on information and belief, that the Taylors diverted partnership funds.  Angelone alleges that "[t]his belief is based on, in part, the fact that [Angelone] was in an intimate business relationship with [the Taylors], as fellow executives of Hyper Engine, and thus was privy to management-level information such as Hyper Engine spending and budgets" and Angelone prepared "spending and budget proposals for Hyper Engine[.]" (TACC ¶ 91).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                    Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

This claim fails for lack of specificity.  "Allegations of fraud based on information and belief do not satisfy FRCP 9(b) requirements . . . . unless accompanied by a statement of the specific facts on which the belief is founded."  *County of Santa Clara v. Astra U.S., Inc*., 428 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2006) (internal citation omitted); *see also Shroyer v. New Cingular Wireless Services, Inc*., 622 F.3d 1035, 1042 (9th Cir. 2010) (same).  Although Angelone provides that he had a close relationship with the Taylors and had access to certain budgeting information, this is insufficient to serve as a statement of specific facts forming the basis of his belief, especially in the absence of any of the details of the "spending and budget proposals" he references.  Indeed, Angelone fails to trace in any concrete terms the actual money trail he is referring to, and therefore does not give the Taylors sufficient notice of the particular transaction(s) at issue.  For instance, there are no facts detailing what projects or investors the alleged Hyper Engine funds derived from, when those funds were diverted, and to what purpose those diverted funds were actually put.  Angelone also does not allege facts suggesting that the Taylors could not afford to fund Hidden Empire projects from sources other than Hyper Engine funds.  The allegation essentially amounts to a contention that the Taylors stole some unspecified amount of funds at unspecified times for unspecified reasons.

Therefore, the "what," "where," "when," and "how" of the breach of fiduciary duty claim are insufficiently pled to satisfy rule 9(b).

***Promissory Fraud (Claim 6)*:** "Promissory fraud is a subspecies of fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377 (1996).  To plead promissory fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim.  *Grant v. Aurora Loan Servs., Inc*., 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (citing *Engalla v. Permanente Medical Group, Inc*., 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843 (1997)) (stating that the elements of promissory fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter');

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                    Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

(c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage”).

To the extent any fraud claim exists in this action, it likely sounds in promissory fraud because the heart of Angelone's tort claims is that the Taylors promised to enter into a formal profit-sharing, partnership agreement but never had any intention of following through with that promise.  The problem, however, is the lack of specificity with which Angelone pleads intent, falsity, and reliance.

"[A] plaintiff claiming promissory fraud must meet a deliberately high burden, and, to survive a motion to dismiss, must be able to point to specific, objective manifestations of fraudulent intent by showing a fraudulent scheme or device.  *Universal Studios Int'l B.V. v. Ent. Television Network FZE*, No. CV 09-01348G-AFF (FMx), 2009 WL 10675950, at *3 (C.D. Cal. Aug. 25, 2009) (internal citations omitted).  It is "well-settled that failure to perform a promise does not standing alone amount to fraud."  *Id.* (collecting cases).  "Nor does such failure to perform a promise constitute conclusive or complete evidence of fraud or fraudulent intent, or even raise a presumption that the promisor did not intend to perform when he or she made the promise."  *Id.*.  "[P]romissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to plead facts from which the Court can infer that the allegedly fraudulent statements were actually false when made."  *Id.* (citing *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002)).  "Although intent can be averred generally under Rule 9(b), a plaintiff must ***point to facts*** which show that defendant harbored an intention not to be bound by terms of the contract at formation."  *Id.* (emphasis in original).

Here, the most specific fact Angelone points to as demonstrating the Taylors' intent not to perform at the time they made the promise is that, in April 2022, Deon Taylor left Angelone a voice memo stating that the Hyper Engine agreement is "not real."  (Opposition at 18).  However, the Court fails to see how this evinces that the Taylors had no intention of performing ***at the time the promise was made*** – which is the very essence of this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)          Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Given the other alleged facts, such as the existence of a Hyper Engine bank account with Angelone as a signatory and the Unsigned OA that included Angelone as a partner, the allegations much more plausibly suggest that the Taylors *did* intend to form a partnership with Angelone at the time the promise was allegedly made (which is precisely why the Court is willing to find the claim for implied contract plausible). Where the facts as pled indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *See Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996-97 (9th Cir. 2014); *see also Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013).

Because the facts alleged much more plausibly suggest that at some point the Taylors did intend to enter a partnership with Angelone, without additional supporting facts, the Court cannot conclude that the elements of intent and falsity are pled with sufficient specificity under Rule 9(b).

Further, a necessary element of a promissory fraud claim is justifiable reliance. *Grant*, 736 F. Supp. 2d at 1271 (citing *Downey Venture v. LMI Ins. Co*., 66 Cal. App. 4th 478, 510, 78 Cal. Rptr. 2d 142 (1998)) ("[B]oth estoppel and promissory fraud require proof that the party asserting the fraud or the estoppel *justifiably relied* on a promise or conduct by the party against whom the fraud or estoppel is asserted.") (emphasis in original)).  Reliance means that the promise was made for the purpose of inducing the plaintiff to act or refrain from acting as a result of the promise.  *Id.*

Although Angelone makes the conclusory assertion that he relied on the Taylors' promises of partnership, he never specifies the precise actions he took or refrained from taking based on the promise of partnership – nor does he explain why any actions he took were justifiable in the absence of a formal written agreement and in light of the parties' conversations.  While Angelone clearly alleges that he provided services to the Taylors, he specifically alleges that his services for Hidden Empire were to be paid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)               Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

independent of the partnership profits from Hyper Engine.  (*See* TACC ¶ 66) (alleging that Angelone is entitled to "no less than $4M in lost profits and other damages by virtue of [the Taylors'] exclusion of [Angelone] as a member [of Hyper Engine] . . . . [and] [t]heses damages are in addition to the $35.818.41 losses sustained by [Angelone] for unpaid invoices").  In the Opposition, Angelone contends that "while it is true that the alleged operating agreements for Hyper Engine cover the services Defendants allegedly performed for Plaintiffs in reliance on their claimed respective interests in Hyper Engine [citation omitted], it is also true that some of these services were provided to [Hidden Empire] and the Taylors outside the scope of the Hyper Engine agreement."  (Opposition at 21).  However, nowhere in the Opposition or TACC does Angelone ever make clear which services were undertaken in reliance on the promise to form a partnership as opposed to a fee (as an independent contractor).  Therefore, justifiable reliance is also pled with insufficient specificity.

Accordingly, the Motion is **GRANTED** *with leave to amend* to the extent it seeks dismissal of the claims for Breach of Fiduciary Duty (Claim 4) and Promissory Fraud (Claim 6), based on failure to satisfy Rule 9(b)'s specificity requirement.

## C.    <u>Declaratory Relief and Punitive Damages</u>

Angelone seeks declaratory relief and punitive damages (in addition to other remedies).  The request for declaratory relief is set out as an independent claim (Claim 9), while the request for punitive damages is listed in the prayer for relief.  The Taylors argue that both remedies are unavailable and should be dismissed.

The only reason the Taylors advance for dismissing the claim for declaratory relief is that Angelone fails to allege the existence of a contract.  (Motion at 21).  But the Court concludes otherwise at this stage.  Therefore, the declaratory relief claim is not subject to dismissal.

As for punitive damages, the Taylors first make their argument within a footnote of the Motion, arguing that punitive damages are inappropriate because Angelone has insufficiently pled fraud.  (Motion at 16 n. 9).  Angelone does not address this

_____
**CIVIL MINUTES—GENERAL**                                            **32**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)                Date:  May 10, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

contention in the Opposition and the Taylors' seize on that failure, dedicating a whole section of the Reply to the argument that the punitive damages should be dismissed. (*See* Reply at 23-24).  Given the obscure way the issue was raised in the Motion, the Court will not simply deem the issue as conceded by Angelone.  The Court also views the request as premature given a request for punitive damages would be proper in the event Angelone sufficiently pleads fraud in the future.  If the fraud claims remain dismissed after amendment of the TACC, or if no amended complaint is filed, at summary judgment, the Taylors may reraise the punitive damages argument.

Accordingly, the Motion is **DENIED** *without prejudice* to the extent it seeks to dismiss Angelone's requests for declaratory relief and punitive damages because dismissal of those remedies would be premature at this stage.

## V.    <u>CONCLUSION</u>

The Court rules as follows:

- The Motion is **GRANTED** *without leave to amend* as to Claims 1, 5, 7, and 11;

- The Motion is **GRANTED** *with leave to amend* as to Claims 4 and 6;

- The Motion is **DENIED** as to Claims 2, 3, 8, 9, and 10, and as to the request to dismiss the prayer for punitive damages.  The denial as to Claim 9 and punitive damages is *without prejudice*.

Angelone may file a Fourth Amended Complaint ("4ACC") and an amended Third Party Complaint ("FTPC") by no later than **June 12, 2023**.  Failure to file the 4ACC and/or FTPC by that date will be construed as a decision to stand on the current pleadings and proceed only with the non-dismissed claims.  The Taylors shall respond to the amended pleadings, or if not filed, answer the current pleadings as to the remaining claims, by no later than **July 3, 2023**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-6515-MWF (AGRx)**          **Date:  May 10, 2023**
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

IT IS SO ORDERED.