J.T. Fox, Esq., SBN 195063
LAW OFFICES OF JT FOX & ASSOCIATES, APC
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Work
(888) 750-5530 Fax
E-Mail: jt@jtfoxlaw.com

Attorney for Defendants and Counterclaimants,
DARRICK ANGELONE, AONE CREATIVE, LLC, and ON CHAIN INNOVATIONS, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE, LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS, LLC, a Florida limited liability company,<br><br>        Defendants. | **CASE NO.** 2:22-cv-06515-MFW-AGR<br><br>**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS FOR DAMAGES BASED ON:**<br>  **(1) BREACH OF EXPRESS ORAL CONTRACT**<br>  **(2) BREACH OF IMPLIED CONTRACT**<br>  **(3) BREACH OF FIDUCIARY DUTY**<br>  **(4) PROMISSORY FRAUD**<br>  **(5) UNJUST ENRICHMENT**<br>  **(6) DECLARATORY RELIEF**<br>  **(7) QUANTUM MERUIT**<br><br>Complaint Filed: Sept. 12, 2022<br><br>Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald |

DARRICK ANGELONE, an individual;
AONE CREATIVE, LLC, formerly
known as AONE ENTERTAINMENT
LLC, a Florida limited liability company;
and ON CHAIN INNOVATIONS, LLC,
a Florida limited liability company,

       Counterclaimants,

    v.

HIDDEN EMPIRE HOLDINGS, LLC; a
Delaware limited liability company;
HYPER ENGINE, LLC; a California
limited liability company; and DEON
TAYLOR, an individual,

       Counterclaim Defendants.

DARRICK ANGELONE, an individual;
AONE CREATIVE, LLC, formerly
known as AONE ENTERTAINMENT
LLC, a Florida limited liability company;
and ON CHAIN INNOVATIONS, LLC,
a Florida limited liability company,

       Third-Party Plaintiffs,

    v.

ROXANNE TAYLOR, an individual,

       Third-Party Defendant.

Counterclaimants DARRICK ANGELONE; AONE CREATIVE, LLC; and ON CHAIN INNOVATIONS, LLC (collectively "Counterclaimants") allege against HIDDEN EMPIRE HOLDINGS, LLC; HYPER ENGINE, LLC; and DEON TAYLOR (collectively "Counter-Defendants") as follows:

## **THE PARTIES**

1.     At all times mentioned herein, Defendant and Counterclaimant DARRICK ANGELONE (hereinafter referred to as "Darrick"), is now, and at all times mentioned

herein, an individual residing in the County of Los Angeles, California. Darrick is the founder, CEO, and managing-member of Defendants and Counterclaimants AONE Creative, LLC and ON CHAIN INNOVATIONS, LLC.

2.     Defendant and Counterclaimant AONE CREATIVE, LLC, a Florida Limited Liability Company, (hereinafter referred to as "AONE") is now, and at all times mentioned herein, an entity doing business in the City of Fort Lauderdale, County of Broward, Florida.

3.     Defendant and Counterclaimant ON CHAIN INNOVATIONS, LLC, a Florida Limited Liability Company, (hereinafter referred to as "On Chain") is now, and at all times mentioned herein, an entity doing business in the City of Fort Lauderdale, County of Broward, Florida.

4.     Plaintiff and Counterclaim Defendant DEON TAYLOR (hereinafter referred to as "Deon") is now, and at all times mentioned herein, an individual residing in the County of Placer, California.

5.     Plaintiff and Counterclaim Defendant HIDDEN EMPIRE HOLDINGS, LLC, a Delaware Limited Liability Company, is now, and at all times mentioned herein, an entity doing business in the City of Santa Monica, County of Los Angeles, California, and qualified to do business in the State of California.

6.     Plaintiff and Counterclaim Defendant HYPER ENGINE, LLC (hereinafter referred to as "Hyper Engine"), a California Limited Liability Company, is now, and at all times mentioned herein, an entity doing business in the City of Granite Bay, County of

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

Placer, California. Hyper Engine operates as the marketing subsidiary of its parent company, Hidden Empire Holdings, LLC.

7.      Third-Party Defendant Roxanne Taylor is now, and at all times mentioned herein, an individual residing in the County of Placer, California.

## JURISDICTION AND VENUE

8.      As stated in Plaintiffs' Complaint, Plaintiffs alleged as follows: This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 17 U.S.C. § 501 because Plaintiffs allege that Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and infringed on their valid copyrights associated with the Fear Movie. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

9.      As stated in Plaintiffs' Complaint, Plaintiffs alleged as follows: The Court has personal jurisdiction over all Defendants because they conduct business in California and have contacts with the state that are continuous, systematic, and purposeful such that they are each subject to the personal jurisdiction of this Court.

10.     As stated in Plaintiffs' Complaint, Plaintiffs alleged as follows: Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## INTRODUCTION

11.     On September 12, 2022, Plaintiffs Hidden Empire Holdings, LLC; Hyper Engine, LLC; and Deon Taylor filed their Complaint in this action against Defendants

DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS

Darrick Angelone; AONE Creative, LLC; and On Chain Innovations, LLC, alleging

claims for (1) Breach of Contract; (2) Violation of Federal Computer Fraud And Abuse

Act (18 U.S.C. §§1030(A)(2)(C) & (A)(5); (3) Violation of Computer Data Access And

Fraud Act (Cal. Penal Code § 502); (4) Conversion; and (5) Copyright Infringement.

12.     Counterclaimants deny that they have any liability to Counter-Defendants,

but to the extent of Plaintiffs' asserted claims in their Complaint, Counterclaimants allege

that Counter-Defendants should be held responsible for defending and indemnifying

Counterclaimants.

## FACTUAL ALLEGATIONS

13.     Counterclaimants bring their counterclaims to obtain relief from the betrayal

and fraudulent conduct committed by Deon and Roxanne involving a marketing company

founded for the general purpose of using Counterclaimants' digital and creative services

to benefit Deon and Roxanne, their companies, and/or their clients.

14.     Counterclaimants agreed to engage in business with and offer their services

to Deon, Roxanne, and HEFG for the purpose of forming a mutually beneficial business

relationship through the formation of a marketing subsidiary to service Counter-

Defendants' companies and other clients. Darrick Angelone, Deon Taylor, and Roxanne

Taylor did in fact enter into an operating agreement for this purpose, agreeing to divide

any profits equally and equally sharing in any losses.

15.     On or about June 24, 2021, Hidden Empire Film Group was reincorporated

in Delaware under the name Hidden Empire Holdings, LLC. Hidden Empire is

hereinafter referred to as "HEFG" for the purposes of this Complaint.

16.     On or about April 26, 2012, AONE and HEFG entered into contract to develop websites at the domains of www.lmaocomedyseries.com and www.hiddenempirefilmgroup.com for $22,500 (the "2012 agreement"). This contract term was completed in October 2013, as evidenced by an email dated October 22, 2013 between Deon, Darrick, and Roxanne where Deon sought to "close out the online work" contemplated by the 2012 agreement. HEFG subsequently lost ownership of the hiddenempirefilmgroup.com domain in 2014. The hiddenempirefilmgroup.com domain was not returned for use by HEFG until 2015, when AONE recovered it from a third party who had registered it away from HEFG in 2014. During that time, HEFG had no access to the domain, while AONE secured the hiddenempirefilms.com domain on behalf of Deon, Roxanne, and HEFG. AONE thereafter continued to renew the HEFG domain name every year as necessary.

17.     Beginning in 2015, Deon, Roxanne, and Darrick agreed that Darrick and AONE would provide marketing and other digital services to Deon, Roxanne, and HEFG, which included digital and social media marketing, developing website domains, and creating digital content such as video, graphics, and applications. At no time did the parties agree or otherwise discuss that the 2012 agreement would govern the work provided by Darrick and AONE subsequent to completion of work contemplated by the 2012 agreement.

**The Parties Form an LLC Called Hyper Engine**

18.    When reference is made to "partners" or a "partnership" throughout this Counter-Complaint, this refers to the existence of partners and a partnership in the general, informal sense and not the legal sense. Darrick Angelone maintains that he is one of the managing members of Hyper Engine, LLC, who is entitled to a split in the company's profits and losses with the other members.

19.    Darrick, AONE, Deon, and Roxanne have been discussing the formation of a digital marketing company between the parties since as early as August 21, 2016.

20.    On or about October 3, 2016, Darrick sent an email to Deon Taylor in which he suggested incorporating the services Darrick had been providing to HEFG into a marketing company that the parties would both have an interest in.

21.    On or about January 10, 2017, Roxanne sent a follow up email to Darrick regarding an outline Darrick prepared with the proposed terms for a digital marketing company, which would handle the marketing of HEFG theatrical releases, among other things. Darrick then sent this outline to Roxanne Taylor and Deon Taylor for them to consider. This outline included, among other things, a breakdown of initial investment/capitalization, a breakdown of each partner's shares, the scope of the marketing company's duties, comparable businesses, monthly costs, and first year expenses and revenues.

22.    On or about November 29, 2017, Roxanne sent an email to Darrick concerning the need to "connect" regarding the creation and structure of a digital marketing company between Darrick Angelone and/or AONE, Roxanne Taylor, and

Deon Taylor.

23.     On or about December 12, 2017, Darrick was asked by Deon Taylor to join a meeting between Deon and Kevin Wiess at the Ramada Inn in Burbank, to discuss a potential partnership between HEFG and Optimad Media, LLC to create a digital marketing company for HEFG motion pictures. Later, on or about December 18, 2017, Deon sent an email to Darrick imploring him to meet with Optimad again and investigate their business operations to evaluate whether it was a good idea to partner with them to create a joint marketing company. Thereafter, Deon and Roxanne decided that the parties should move forward with no other partners at that time and to instead create an in-house marketing company.

24.     On or about January 29, 2018, Darrick, Roxanne, and Deon engaged in verbal discussions regarding the creation of Hyper Engine, LLC ("Hyper Engine"), a digital marketing company in which AONE and HEFG would be partners.

25.     On or about January 30, 2018, Velma Skyes, Head of Business of Affairs for HEFG, reached out to Darrick by email regarding a budget proposal for HEFG, which Darrick had sent to HEFG on January 16, 2018. Darrick replied that same day and sent a revised budget proposal, stating that the terms are open for discussion. Velma Skyes then replied in acknowledgment.

26.     On or about February 24, 2018, AONE submitted to Deon, Roxanne, and Velma Skyes by email a revised budget created by AONE for HEFG digital infrastructure, which discussed equity in Hyper Engine. Roxanne confirmed receipt of

this email on February 25, 2018.

27.     On or about February 28, 2018, Darrick emailed Roxanne, with Deon and Velma Skyes cc'd, stating that he would create a website for Hyper Engine and that an LLC should be set up in a "more tax friendly State." Roxanne then replied on that same date, stating "Got it" in acknowledgement.

28.     On or about March 1, 2018, an operating agreement for Hyper Engine was created by Deon Taylor, Roxanne Taylor, and Velma Sykes. Within this agreement, Darrick was designated as a member of Hyper Engine, LLC along with Deon Taylor, Roxanne Taylor, and Robert Smith. The agreement further provided that Robert Smith would split 50% in net profits and losses, while Deon, Roxanne, and Darrick would evenly split the remaining 50% in profits and losses. Counterclaimants are informed and believe that a long-form version of this operating agreement was signed and executed by Deon Taylor and Roxanne Taylor on behalf of Hyper Engine.

29.     Hyper Engine, LLC was officially formed on March 1, 2018 (CA Secretary of State No. 201807410500) and remains active as of the date of this Second Amended Counter-Complaint. Following the formation of Hyper Engine, Counterclaimants Darrick and AONE began efforts to provide marketing services for HEFG and other various clients through Hyper Engine. As part of their partnership (and executive management role within the partnership) within Hyper Engine, Counterclaimants Darrick and AONE were solely responsible for marketing, web development, and all other digital creative, or IP services which includes but is not limited to:

a.     Creating and presenting decks to pitch Hyper Engine services to entertainment companies such as Sony Pictures Entertainment, Lionsgate Films, and Warner Brothers;

b.     Creating and executing digital marketing and political outreach campaigns wherein AONE created a significant amount digital graphics and branding across social media, television, print, and other online digital media;

c.     Creating digital marketing campaigns to promote films created or directed by HEFG and other independent entertainment clients;

d.     Creating digital branding, web development, pitch decks, and other digital marketing for various endeavors and projects pitched and/or undertaken by Deon, Roxanne, HEFG, and clients referred to Darrick or AONE by Counter-Defendants and Roxanne; and

e.     Developing a COVID-19 vaccine campaign to be executed by Hyper Engine with CDC grant money given to the Coalition of National Black Churches ("CNBC"), whereby AONE was engaged to advertise for the vaccine campaign, create pitch decks, perform copywriting, register domain name(s), develop websites, and conduct political advertising research, while creating and executing the digital strategies.

30.     On or about December 1, 2019, HEFG, Deon, and Roxanne created a second operating agreement for Hyper Engine, in which HEFG was named 66.67% owner, and AONE was named 33.33% owner. This agreement further provided that company profits

and losses shall be split 66.67% to HEFG and 33.33% to AONE.

31.     Since the inception of Hyper Engine, Deon and Roxanne, individually and on behalf of Hyper Engine, repeatedly assured Darrick that he was a partner in Hyper Engine (as an equal member of the LLC) as reflected in written operating agreements, verbal communications, and Deon and Roxanne's manifestations or actions consistent with the operation of an LLC with multiple managing partners. Namely, Deon and Roxanne, individually and on behalf of Hyper Engine, repeatedly represented and reassured Darrick that he was an equal member of Hyper Engine and would share equally in the profits of the company. Specific facts supporting Darrick's status as a member of Hyper Engine include, but are not limited to:

a.     Darrick Angelone was named as a member and 16.66% owner of Hyper Engine, LLC in an operating agreement for Hyper Engine dated March 1, 2018;

b.     On or about March 6, 2018, AONE circulated a Hyper Engine pitch deck created by AONE in collaboration with an HEFG designer, in which Darrick is listed as "Chief Technology Officer" of the executive team consisting of Darrick, Deon, and Roxanne. All words and data included in the deck were provided by AONE, and all subsequent changes to the decks each list Darrick as an executive of Hyper Engine;

c.     On March 6, 2018, Darrick emailed an invoice to Roxanne, with Deon and Velma Skyes cc'd, stating that "as consideration toward our joint venture

'Hyper Engine'" Darrick and AONE would drop the balance for costs carried by AONE for past work. Roxanne then replied "Got it. We discussed yesterday".

     d.    AONE was named as a member and 33% owner of Hyper Engine, LLC in an operating agreement dated December 1, 2019;

     e.    Darrick and AONE are informed and believe that, during September 2019, Deon, Roxanne, and HEFG confirmed with Darrick and AONE the details of Hyper Engine, LLC, which also reflected a mutual understanding and confirmation of the creation of Hyper Engine, LLC, with the California Secretary of State, which was brought to Darrick and AONE's attention by Roxanne and Deon verbally;

     f.    On or about September 20, 2019, Roxanne created a Hyper Engine bank account in which Darrick is listed as signatory, of which Roxanne and HEFG advised Darrick and AONE by email and verbally;

     g.    On or about September 20, 2019, Roxanne created a debit card in Darrick's name for the abovementioned Hyper Engine bank account, of which Roxanne and HEFG advised Darrick and AONE by email and verbally;

     h.    On November 4, 2019, Darrick was included on an email chain with a third-party firm engaged to create the second Hyper Engine operating agreement, wherein it was discussed that said operating agreement would include the ownership percentage share as 66.67% for HEFG and 33.33% for AONE with HEFG advancing overhead costs;

i.   In a telephone discussion on or about February 23, 2020 with Roxanne regarding the formation of Hyper Engine, Roxanne verbally confirmed the split in ownership of 1/3 (33%) to each Deon, Roxanne, and Darrick;

j.   The aforementioned marketing, web domain, and other digital or IP services provided to Counter-Defendants and Roxanne, and conducted through Darrick's company, AONE, are consistent with a membership role in Hyper Engine and within the scope of Darrick's expected membership duties as a digital marketing/social media partner;

k.   In or around December 2019, AONE created and printed executive Hyper Engine business cards for Deon, Roxanne, and Darrick;

l.   Darrick was present at the annual Hyper Engine meetings for which written records were kept. For example, Hyper Engine meetings were held on May 21, 2018; February 4, 2019; and January 30, 2020. Within such meetings, Deon, Roxanne, Darrick, and HEFG members would discuss, among other things, Hyper Engine's structure as a subsidiary of HEFG, Hyper Engine and HEFG projects, and other action items as they related to Hyper Engine and/or HEFG;

m.   Darrick, acting in his capacity as a member of Hyper Engine, would send invoices to various third-party individuals and entities who retained Hyper Engine's services. For example, on October 10, 2019, Darrick sent via email a final invoice to Sony Pictures Entertainment for work performed by Hyper Engine (using Darrick and AONE's services); and

n.      Darrick, acting in his capacity as a member of Hyper Engine, fully executed contracts between Hyper Engine and various clients and/or partners. One such contract, dated August 5, 2020, between Work Vineyard and Hyper Engine was signed by Darrick acting on behalf of Hyper Engine in a social media management deal, and sent to Work Vineyard by Darrick on that same date via email (on which Roxanne was cc'd).

32.      In addition to the above acts supporting Darrick's status as a member of Hyper Engine, Darrick was consistently referred to as a partner, member, and/or executive of Hyper Engine, both orally and in written statements, emails, press releases, and other such documents throughout the parties' business relationship, which includes but is not limited to the following instances:

a.      On September 18, 2019, Deon stated in an email to Warner Brothers that he is "looping in the Hyper Engine team", which was referring to Deon, Roxanne, and Darrick;

b.      On September 20, 2020, Pauline Fischer, on behalf of HEFG, introduced Darrick by email to a representative of Bron Studios, a film company, and stated that he was a longtime partner of Deon and Roxanne in Hyper Engine.

c.      On December 16, 2020, Erin Hall Harris, a marketing consultant, introduced Darrick by email to Salama Warner of CIROC Vodka, stating that "Darrick is the head of digital and runs Hyper Engine the digital marketing arm of Hidden Empire." Roxanne and other HEFG staff were copied on this email;

-14-

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

d.      On February 22, 2021, an HEFG press release which lists Darrick as creative director of Hyper Engine was circulated via email to Darrick, Deon, Roxanne, and other HEFG staff;

e.      On April 4, 2021, Quincy asked Darrick via email who AONE has assigned to perform work for Darrick under Hyper Engine (and its members) and what they are responsible for, to which Darrick replied with an organizational chart listing Darrick and AONE's role and duties with respect to Hyper Engine; and

f.      On June 4, 2021, Shandra Dixon, project manager for HEFG, listed Hyper Engine Partners as Darrick, Deon, and Roxanne in an email to Roxanne (with Deon and Darrick cc'd) regarding the creation of an IMDb page for Hyper Engine. Neither Deon nor Roxanne responded that Darrick was not a partner.

33.     Further supporting Darrick's membership interest, Darrick, Deon, and Roxanne would routinely discuss Hyper Engine matters and business affairs which would only concern the higher-level managing members of Hyper Engine, such as billing, staffing, proposals, project management, and future operations. This includes, but is not limited to the following instances:

a.      On March 5, 2018, Darrick sent an email, with Roxanne and Deon cc'd, to a prospective client where Darrick attached a pitch deck created to advertise Hyper Engine's abilities in regard to marketing the client's film known as "Slender Man";

b.      On August 30, 2018, Darrick, Deon, and Roxanne discussed via email

the payment of invoices and final report for the "Gillum" campaign, which was a

political campaign executed by Hyper Engine for Andrew Gillum in the primary

race for Governor of Florida in 2018;

c.      On February 6, 2019, Darrick, Deon, and Roxanne discussed via

email the details and plans for executing the Be Woke Vote campaign (a political

campaign created by Hyper Engine to encourage voting, as further set forth

below);

d.      On September 10, 2019, Darrick held an email Discussion with Deon

and Roxanne regarding a proposal and discussion with Sony Pictures

Entertainment to partner with Hyper Engine and provide digital marketing

services;

e.      On October 25, 2019, in an email discussion with Roxanne and

Darrick (with Deon cc'd), Darrick discussed invoices for work performed by

Hyper Engine for the podcast/series "Black History in Two Minutes" (a project

which was entirely managed by Darrick and his company, AONE);

f.      On January 23, 2020, Darrick sent an email to Deon and Roxanne to

memorialize a previous conversation among the parties regarding the drafting of a

press release announcing a Hyper Engine partnership with HEFG;

g.      On June 23, 2020, Darrick consulted with Roxanne via email (with

Deon cc'd) to discuss project statuses and invoices for Hyper Engine, to which

Roxanne then replied in acknowledgment;

h.      On October 31, 2020, Darrick, Deon, and Roxanne discussed via email the terms and budgeting regarding Hyper Engine's services for Mike Bloomberg's company Hawkfish in conjunction with Bloomberg's political campaign; and

i.       On August 3, 2021, Darrick sent Roxanne, via email, a summary of Hyper Engine projects and their status, and a breakdown of the invoices for each project in which there was current and outstanding invoices.

34.     Prior to and during the formation of Hyper Engine (as set forth above), Deon and Roxanne, individually and on behalf of Hyper Engine, knowingly sought to exclude Darrick as a member of Hyper Engine while unduly benefitting from the marketing, web development, financing, and all other digital creative, or IP services provided by Darrick and AONE to Counter-Defendants and Roxanne (all while outwardly manifesting a willingness to partner with Darrick and AONE and treat Darrick as a member of Hyper Engine). To elaborate, Darrick was consistently promised and reassured that he had a membership role in Hyper Engine, and provided services and performed management functions for Counter-Defendants, Roxanne, and their respective clients under the guise that Darrick was a member of Hyper Engine. However, prior to when Hyper Engine was formed, Deon and Roxanne acting in concert agreed and/or concurred amongst each other that Hyper Engine would be their own company and investment and would not include Darrick as a member. Deon and Roxanne ultimately deceived Darrick by inducing him into doing business with them as members of Hyper Engine, making Darrick believe he

-17-
**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

was a member of the LLC by their aforementioned acts, then ultimately ousting Darrick and failing to recognize his interest in Hyper Engine. Deon and Roxanne's knowing intent to deceive is evidenced in large part by Deon and Roxanne's exclusion and refusal to treat Darrick as a partner against past promises, Deon and Roxanne's current position that Hyper Engine was never intended to include Darrick as a partner, and Deon's statement in a voice memo dated April 8, 2022 that Hyper Engine was "not real", all of which directly contradicts the Parties' operating agreement, communications, and other conduct mentioned herein which demonstrates that Hyper Engine did in fact include Darrick as a member of the company.

35.     Notably, neither Deon, Roxanne, nor HEFG ever disputed Darrick's understanding and representations that he was a member of Hyper Engine, as clearly evidenced by his above actions. In fact, after Hyper Engine was formed, Darrick and AONE were not once advised that Darrick was not a member of Hyper Engine until years later when Deon and Roxanne ultimately carried out their plan to exclude Darrick as a member, which is the crux of the parties' conflict and counterclaims herein. Instead, Darrick was consistently acting as though he was a member of Hyper Engine and was often encouraged by Deon and Roxanne in doing so. Specifically, Darrick acted on Hyper Engine's behalf, executed contracts on behalf of Hyper Engine, held himself out as an owning member of Hyper Engine, was listed on the Hyper Engine bank account(s), conducted his digital marketing services as part of his membership role in Hyper Engine, and performed many other acts (as fully set forth above) consistent with a membership

role in Hyper Engine and under the impression that he was a member in the company. Despite Deon and Roxanne being fully aware of Darrick's acts in his capacity as a member of Hyper Engine, Darrick was not once told to stop his actions nor advised that he was not a member of Hyper Engine. Likewise, neither Deon nor Roxanne notified the third parties that Darrick was dealing with that Darrick is not a partner and/or member of Hyper Engine.

36. In addition to their acts of defrauding Darrick, Deon and Roxanne breached their fiduciary duties owed to Darrick as fellow members and business partners in Hyper Engine. Namely, Deon and Roxanne acted against the interests of Darrick and Hyper Engine by repeatedly misappropriating company funds and diverting company funds from Hyper Engine and devoting them to non-company purposes, all without the knowledge and consent of Darrick. This includes, but is not limited to the following instances:

a. In or around November 2021, Deon, Roxanne, and other HEFG staff executed independent contractor agreements between themselves and Hyper Engine, and then billed Hyper Engine to pay themselves out of Hyper Engine funds, leaving only Darrick out;

b. In or around May 2021, Roxanne billed Hyper Engine to pay for expenses related to HEFG and self-promotion and public relations related to her collaboration with Bentley Motors. Hyper Engine was never engaged for this project;

c.      In or around May 2021, Hyper Engine was billed for and paid for HEFG merchandise. Hyper Engine was not engaged for work on this;

d.      On or about May 21, 2021 Hyper Engine was billed for and paid for artwork for the HEFG film "Fatale". Hyper Engine was not engaged for work on this project;

e.      During the first and second quarter of 2021, Shandra Dixon, an employee of HEFG, was moved to Hyper Engine's payroll expense. However, Shandra did not perform services for Hyper Engine. She worked exclusively for HEFG but was paid for with Hyper Engine funds;

f.      Counterclaimants are informed and believe that, since the inception of Hyper Engine, Roxanne and Deon were diverting funds from the Hyper Engine bank account and committing them to their personal use and to finance debts for various HEFG projects throughout the course of the parties' business relationship, all without Darrick or AONE's knowledge or approval. This belief is based on, in part, on the fact that Darrick was in a close business relationship with Deon and Roxanne as fellow executives of HEFG, and thus was privy to management-level information such as HEFG spending and budgets. Indeed, HEFG, Deon, and Roxanne relied on Darrick and AONE to prepare spending and budget proposals for Hyper Engine and HEFG, as mentioned above. Specifically, Darrick and his company AONE created the following strategies and spending budgets for HEFG projects: (1) in or around April, 2021, AONE created the strategy and budget for

the HEFG project CLIMB; (2) in or around April, 2021, AONE created the strategy and budget for the HEFG movie "The House Next Door: Meet the Blacks 2"; (3) from August 2021 through March 2022, AONE created the strategy and budget for the HEFG movie "Fear"; (4) in January 2018, Darrick and Counter-Defendants held a budgeting discussion surrounding a proposed marketing company partnership; (5) from November 2021 through March 2022, AONE created the strategy and budget for the CNBC Vaccine Campaign funded by a CDC grant to the CNBC (who then engaged Hyper Engine to execute a plan that was created and executed by AONE); (6) from May, 2019 through August, 2022, AONE created the strategy and budget, and further executed the distribution and marketing for the video series "Black History in Two Minutes"; (7) in August, 2018, AONE created the concept, strategy, and budget for the voting campaign titled "Be Woke Vote", and further executed the distribution and marketing for the campaign, and (8) in August, 2020, AONE was in charge of the strategy, budget, and execution of all digital efforts for the "Be Woke Vote" campaign. Through the preparation of these budgets and strategies, Darrick became aware that, since at least 2018, Deon and Roxanne were diverting funds from Hyper Engine and devoting said funds to non-company purposes such as paying for personal expenses and items, paying themselves and other HEFG employees, and funding projects unrelated to Hyper Engine;

      g.      In or around July, 2022, Deon and Roxanne took company funds that

were designated for use in the abovementioned CNBC vaccine campaign, and used said funds to finance the promotion of their new workspace and studio for HEFG in Santa Monica, CA;

      h.      From December, 2020 through January 2021, Deon and Roxanne took revenue paid to Hyper Engine for the promotion of the HEFG movie "Fatale", and used said funds in their in entirety to promote the film. In other words, any profit from the promotion of the film "Fatale" was wrongfully diverted from Hyper Engine and used for additional promotion for the film;

      i.      Since the inception of Hyper Engine, Roxanne often directed Sean Miller, the previous HEFG office manager and current executive assistant to Roxanne, to have third party vendors issue invoices to Hyper Engine for work unrelated to Hyper Engine projects. This would include creative work for HEFG films and HEFG merchandise, neither of which Hyper Engine had been engaged to perform nor which Hyper Engine would earn revenue from;

      j.      In or around 2019, Deon and Roxanne took funds that Sony Pictures Entertainment paid for Hyper Engine marketing of the film "The Intruder", and used said funds to purchase additional marketing services for the film beyond what Sony had actually paid for. Essentially, Deon and Roxanne embezzled the budget from Sony for their own and HEFG's benefit, leaving no profit for Hyper Engine;

      k.      Counter-Defendants never paid Hyper Engine for the marketing services that Hyper Engine provided for the HEFG films "The House Next Door"

(2021), "Fatale" (2020), and "The Intruder" (2019). So, by Deon and Roxanne diverting payment away from Hyper Engine, Hyper Engine would routinely be in a poor financial state by only having expenses and not income; and

l.      From April, 2020 to October, 2020, Deon and Roxanne took funding they received from Robert F. Smith intended for Be Woke Vote (the political marketing arm of Hyper Engine), and routed it through their non-profit, instead of through Hyper Engine.

37.    On or about August 20, 2019, Darrick notified Deon and Roxanne by email that AONE maintains ownership of all works created by AONE, including any domains registered and paid for by AONE and any social accounts created by AONE in collaboration between AONE and HEFG.

## Darrick Is Excluded From Hyper Engine

38.    Beginning in or around April 2021, Deon and Roxanne (individually and on behalf of Hyper Engine) began to carry out their plan to breach the company operating agreement, exclude Darrick from the LLC, and take Hyper Engine's assets, proprietary information, and intellectual property and claim it as their own. At this time, while outwardly manifesting a continuing intent to develop Hyper Engine as a partner with Darrick and his company AONE, Deon and Roxanne (individually and on behalf of Hyper Engine) secretly began to take steps to exclude Darrick from his rightful share in the company, as part of their ultimate plan and intent from when Hyper Engine was first contemplated as a marketing company/subsidiary for HEFG.

DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS

39.     After manifesting their intent to partner with Darrick as a member of Hyper Engine, Roxanne and Deon have recently failed to recognize Darrick as a member of Hyper Engine, despite numerous promises and reassurances that such membership was created. Further, Roxanne and Deon, individually and on behalf of Hyper Engine, have repeatedly refused to create written services agreements or contracts to define much of the work performed by Counterclaimants for Counter-Defendants and Roxanne. As such, Darrick has relied to his detriment on Deon and Roxanne's knowingly false representations that he was a member of Hyper Engine. Had Darrick known the actual facts as set forth herein concerning Deon and Roxanne's failure to consummate a binding partnership or operating agreement for Hyper Engine, Darrick and AONE would not have provided financing or performed services for Counter-Defendants and Roxanne, nor otherwise agreed to partner with Deon and Roxanne as an equal member of Hyper Engine and sustain resulting losses. Darrick is thus entitled to a share in the control and management of Hyper Engine, and a 33.33% share of the profits and losses of Hyper Engine.

40.     Beginning in or around April 2021, HEFG hired Quincy Newell, Esq. as Chief Operating Officer (COO) of HEFG. As part of his role, Quincy was employed to help restructure HEFG, which included adding Hyper Engine as a subsidiary or wing of HEFG. During this time, Darrick was continuing to rely on the aforementioned false promises and actions by Deon and Roxanne (individually and on behalf of Hyper Engine) which gave him the impression that he was a member of Hyper Engine and would retain

his membership interest upon restructuring. However, Darrick and AONE were notably excluded from discussions regarding the restructuring of HEFG to include Hyper Engine as the marketing subsidiary of HEFG, an act which raised Darrick's suspicions.

41.     Around the time Quincy Newell was hired by HEFG, Darrick sought to re-negotiate his membership interest in Hyper Engine to a share at 50% to achieve equal ownership of the company. Darrick believed having equal ownership was reasonable and warranted in light of the fact that Hyper Engine was a marketing company that relied entirely on Darrick and his company AONE's execution of digital marketing services for Hyper Engine's clients and partners. However, Deon and Roxanne, individually and on behalf of Hyper Engine, knowingly ignored or disregarded any attempts by Darrick to re-negotiate and formalize a new operating agreement for Hyper Engine upon restructuring, and further continued to refuse to create written contracts for the work and services provided by Counterclaimants to Counter-Defendants and Roxanne.

42.     On or about February 22, 2022, Darrick introduced Darrell Thompson, Esq. to Deon, Roxanne, and Quincy Newell via email to re-negotiate and finalize the terms of a revised Hyper Engine LLC operating agreement and member equity, to protect Darrick's interest in the company upon restructuring. Specifically, Darrick's email states "I want to make sure that the loose ends of our partnership surrounding Hyper Engine are nailed down. My hope is that Darrell can work with Quincy to formalize the terms and that an agreement can be made without any further delay." Following this email, Quincy and Darrell had a conversation about the matter sometime in March. On or about March

15, 2022, Darrell followed up with Quincy by providing proposed nonbinding terms for the Hyper Engine partnership. In an email dated March 16, 2022, Quincy acknowledged the proposed terms and asked some questions about them, but otherwise did not agree to any terms. Thereafter, Darrell followed up with Quincy by email on Mar 21 and Mar 24, 2022, each time without a response. Weeks later, Darrell again followed up with Quincy on April 8, 2022. This time, Quincy responded on April 8, 2022 stating that HEFG is not ready to "engage in any discussion" regarding plans for Hyper Engine, to which Darrick expressed his concern that formalization was long overdue and should be addressed with urgency. That same date, Darrick received a voice memo from Deon in which Deon stated that Hyper Engine "is not a real company." At this moment, Counterclaimants Darrick and AONE became aware of Deon and Roxanne's intent to continue operating Hyper Engine to the exclusion of Darrick as a partner and member. Later, on or about April 21, 2022, Quincy responded with a demand for a master services agreement to cover all services then provided by Darrick and AONE to HEFG or Hyper Engine, which was seemingly to detract from Darrick's demand to formalize an operating agreement. On or about Apr 22, 2022, Roxanne then responded and claimed that HEFG or Hyper Engine will engage AONE as they have been doing, but notably refused to put it in writing. Based on the foregoing, it is evident that Deon and Roxanne, individually and on behalf of Hyper Engine, knowingly sought to exclude Darrick as a member and avoid continuing a partnership in the operation of Hyper Engine with Darrick and AONE, all in breach of past promises and mutual understanding between the parties.

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

43.     On or about Apr 26, 2022, Roxanne asked Darrick in an email for social media account access, to which Darrick replied and stated AONE's position about outstanding balances for past services provided by Darrick and AONE and his personal dissatisfaction with the approach Quincy was taking in avoiding formalization of a Hyper Engine operating agreement, which was counter to the parties understanding and longstanding professional relationship.

44.     During 2022, through conversations with Deon and Roxanne, Darrick and AONE became aware that Hyper Engine was being restructured by Counter-Defendants and Roxanne without consultation from Darrick and AONE, and that Darrick was being formally excluded from ownership and the business decision-making process. This suggests that, from the inception of Hyper Engine, it was Deon and Roxanne's intent to operate Hyper Engine solely as their own company and to the exclusion of Darrick.

45.     On or about June 28, 2022, Darrick sent an email follow up to Deon, Roxanne, and Quincy checking on when payment of past due balances for Darrick and AONE's services would be made. On that same date, Roxanne replied to the above email and said payment will be made before the end of July 2022. On or about August 1, 2022, Deon emailed AONE and Darrell stating that he plans to pay any outstanding balance on that same date and suggested that, because they are paying past due balance for services long past provided, HEFG should get access to AONE property that was never contingent on payment of the invoices originally or in past due status. On that same date, Quincy added to the abovementioned email chain in an attempt to change terms by seeking to

DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS

confirm whether Darrick "will turn over all admin passwords and account access information e.g., email accounts, social media etc.. to Roxanne and Deon." Darrick responded by rejecting that assertion as contrary to his understanding.

46.    On or about August 3, 2022, payment for past due balances for services provided by Darrick and AONE to Counter-Defendants and Roxanne spanning from 2020 to April 2022 were received by AONE. Thereafter, from August 4 to 9, Quincy and Deon made email demands to Darrick and AONE to turn over account credentials and server logins created and owned by AONE, none of which have been under contract nor ever been the property of HEFG.

47.    On or about Aug 9, 2022, AONE emailed the HEFG team reiterating that since past due balances have then been paid, the parties may address all the outstanding issues at hand. That same day, Deon added to the above email discussion with more promises about how HEFG "are willing to keep building" and "have other business to do" with Darrick and AONE. In response, Darrick once again reiterated that the mutual understanding was that a "Hyper Engine partnership be formalized and to include a master agreement over all digital IP owned by AONE and or claimed by HEFG" before the transfer of any property rightfully belonging to AONE or Darrick. Darrick and AONE are informed and believe that, by their abovementioned acts, Deon and Roxanne (individually and on behalf of Hyper Engine) intended from the inception of Hyper Engine to exclude Darrick from membership in Hyper Engine, contrary to past understanding and agreement between the parties. Darrick has since been denied his

rightful share in the control and management of Hyper Engine, including its accounting, profits, and losses.

### Counterclaimants and HEFG

48.     In or around August 2021, Darrick and AONE were initially engaged to handle the digital marketing for the Theatrical release of the HEFG movie titled "Fear", which at the time was scheduled for release on February 12, 2022. Weekly Zoom meetings ensued for approximately 7 months regarding the film. The film release was later moved to May 10, then August 26, 2022. The film's release was on January 27, 2023. Upon information and belief, Counter-Defendants and Roxanne have used and are actively using the Fear marketing strategy, created by AONE, without permission or any compensation to Darrick and AONE. Meanwhile, AONE has spent in excess of $250,000.00 for development of the marketing strategy and for the time invested by AONE staff in development and to be present at meetings and other events during development, which remains unrecouped by Counterclaimants.

49.     Darrick and AONE have spent countless hours in their engagement for marketing the Fear film, all of which was done at Roxanne and Counter-Defendants' request and encouragement. The services Darrick and AONE have performed or developed for this project include, but are not limited to:

a.     On or about August 2, 2021, Darrick and AONE registered the necessary domains and social media handles for Fear;

b.     On or about August 6, 2021, Darrick submitted a demo website design

for the Fear movie teaser launch via an iMessage thread with Counter-Defendants;

        c.      From August 2021 through October 2022, Darrick and AONE have endeavored to develop a marketing strategy for Fear based on weekly meeting discussions and to develop special integrations such as NFT and mobile gaming elements; and

        d.      On or about January 13, 2022, Darrick introduced via email the Fear Instagram Filter concept to the HEFG team, created by AONE to be a part of the Fear movie marketing strategy. This concept was ultimately approved and used by Counter-Defendants and Roxanne, and cost Darrick and AONE $10,000.00 to develop.

50.     On or about April 1, 2022, Darrick Submitted a social concept and publishing strategy for HEFG via iMessage to Deon and Omar Joseph, VP of production at HEFG.

51.     In or around November 2021, Darrick proposed a Fear video game and NFT activation as part of a larger marketing plan to Deon, to which Deon replied, "Let's go" and engaged the rest of the HEFG executives to start the project. AONE continued planning and development for the game/app, including design and beta testing at Roxanne, Deon, and HEFG's behest. On or about January 21, 2022, AONE shared the Fear game plan via email with another Web3 company named Cube, along with their principals. Later, in April 2022, Roxanne set up a meeting with Cube and their principals, to the exclusion of Darrick and AONE, to discuss engaging them to execute a strategy

similar to the one created by and presented to them by AONE. Cube was a company that Darrick and AONE originally had a relationship with, in which Darrick introduced Cube to Roxanne, Deon, and HEFG.

52.     From the inception of Fear, Darrick consistently discussed with Deon and Roxanne elements of the marketing campaign for the Fear game and film, and routinely kept Deon and Roxanne abreast of any updates or changes in the marketing plan. This includes but is not limited to:

        a.      On or about October 18, 2021, Darrick sent to Roxanne, Deon, and other HEFG staff via email a "draft of the social/digital roadmap for the theatrical release of Fear";

        b.      On or about November 29, 2021, Darrick sent to Roxanne and Deon a concept proposal created by AONE for a game and non-fungible token (NFT) application that could be integrated into the marketing plan for the HEFG movie Fear;

        c.      On or about December 15, 2021, Darrick sent an iMessage to Deon Taylor and Omar Joseph (HEFG VP Of Production) with the draft artwork for characters as they would look in the Fear game app that AONE was developing for the Fear film;

        d.      On or about January 14, 2022, Roxanne continued the conversation about the game and NFT elements for the Fear movie in an email thread which included Deon, Darrick, Damon Wolf, and Omar Joseph;

e.      On or about January 16, 2022, Darrick confirmed with Damon, Deon, and Roxanne via email that AONE was engaged, and work was commencing for the Fear marketing campaign, which included the integration of a Fear "Instagram filter" and "game & NFT experience".

f.      On or about January 30, 2022, Darrick discussed with Deon and Omar via iMessage regarding Andrew Bachelor (AKA "King Bach"), an actor in the Fear film, as a partner they can use to engage in the NFT space. Deon confirmed this and said they (HEFG) were discussing the Aone project;

g.      On or about February 3, 2022, Darrick briefed the HEFG team via email regarding the marketing strategy and the game application being developed by AONE for the marketing of the HEFG produced Fear movie; and

h.      On or about February 19, 2022, Darrick sent to Deon and Omar via iMessage the second draft of the press release announcing the partnership and development of the Fear game.

Throughout the aforementioned communications and interactions regarding the Fear film, game, and NFT elements, it should be noted that neither Deon, Roxanne, nor any HEFG staff member told or advised Darrick that he should cease work on the projects related to Fear. It was not until after this conflict arose that Deon and Roxanne took the position that the Fear game and NFT elements were not authorized.

53.     On or about September 8, 2018, Darrick sent Deon via email a proposal for a campaign, presently named Be Woke Vote, to encourage voting across different political

campaigns and promote political outreach. Darrick and AONE have spent numerous hours in their performance and development of this project, which includes but is not limited to:

a.     From October 2018 to July 2020, AONE exclusively created all digital graphics for the Be Woke Vote campaign branding across social media, television, print, and other online digital media. The rights to these graphics and authorship of copywriting have never been transferred away from AONE;

b.     On or about September 19, 2018, AONE registered BE WOKE LLC. With the California Secretary of State (CA Secretary of State No. 201826710371);

c.     In or around October 2018, HEFG executed all Be Woke Vote talent contacts in the name of the AONE-owned BE WOKE LLC;

d.     In or around November 2020, AONE oversaw the partnership and creative development between Mike Bloomberg's Hawkfish digital targeting company, the P.A.C. BlackPAC, and Be Woke.Vote's final 72hr Get Out To Vote (GOTV) digital targeting campaigns; and

e.     From December 2020 through the filing of this Fourth Amended Counterclaims, AONE has financed the entire cost to maintain the digital infrastructure associated with Be Woke Vote.

54.     Further, in or around October 2018, Be Woke Vote production call sheets circulated to Darrick, AONE and HEFG list Darrick as creative director and social media director for the campaign. There was never a written contract or services agreement

presented to Darrick and AONE regarding the agreed upon work AONE and Darrick completed on this project. From August 2020 through January 2021, Darrick and AONE designed, developed, and executed the entire digital strategy for the Be Woke Vote 2020 Get Out The Vote Campaign (GOTV). All of the work and services provided by Darrick and AONE related to this project was done by Darrick acting as a principal on behalf of Hyper Engine. AONE has maintained the digital infrastructure for Be Woke Vote and paid the fees necessary for all times between campaigns, which consists of a 2-year hiatus and five months of activity.

55.    In May 2018, while discussing Hyper Engine business with Deon Taylor, it was suggested that Aone should create the branding and build out the entire digital infrastructure to distribute and market the educational series titled "Black History in Two Minutes (or so)", which was produced by McGee Media and is owned by a partnership with McGee Media, Dr. Henry Louis Gates, and Robert F. Smith. Following that discussion, AONE built out the entire system and was then tasked with distributing over 90 episodes and integrating learning curriculum which is utilized by millions of students, teachers and interested parties. AONE has exclusively managed this project from top to bottom with no direction and without second guessing the decisions made by AONE in the development or execution. The only direction AONE received was that the websites for blackhistoryintwominutes.com and bewoke.vote should include SEO terms and descriptions for the project's financial benefactor, Robert F. Smith. Discussions between AONE, Deon, Roxanne, and HEFG have Be Woke as the political marketing subsidiary

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

of Hyper Engine. In December 2017 and again in June 2018, prior to the creation of Be Woke, and during the creation of Hyper Engine, AONE was tasked exclusively with running support campaigns for Doug Jones for US Senate in Alabama, and the Andrew Gillum primary race for Governor in Florida. AONE understood these campaigns were financed by and undertaken at the behest of Robert F. Smith.

56.     On or about March 25, 2022, Darrick presented to Deon and Omar, via iMessage, merchandise and ecommerce that Darrick and AONE had been developing for HEFG for several years.

57.     Throughout the parties' relationship, AONE consistently advanced significant marketing campaign costs on behalf of HEFG or Hyper Engine. Specifically, AONE routinely advanced over $100,000 for digital marketing on each project performed for Counter-Defendants and Roxanne, which was done under the impression that Darrick was a member with ownership interest in Hyper Engine, and not merely an independent contractor, as per the representations of Deon, Roxanne, and HEFG. Additionally, upon information and belief, AONE advanced significant funds on behalf of HEFG and Hyper Engine for various marketing campaigns and other projects, specifically because Deon and Roxanne had been repeatedly rated as not credit worthy from vendors who were necessary for the parties to conduct business. This belief is based in part on the fact that Deon and Roxanne's home was foreclosed by a bank in 2017, that both Deon and Roxanne have multiple IRS tax liens, and that both Deon and Roxanne were limited to the use of secured credit cards that could not exceed a few thousand dollars, while AONE

was spending well above tens of thousands of dollars in the operation of HEFG and Hyper Engine. As such, most persons or institutions would and did refuse to extend Deon and Roxanne credit, and many persons or companies who did so were not reimbursed or needed to seek legal recourse for collection.

58.     Based on the aforementioned representations by Counter-Defendants and Roxanne, and services or contributions provided by Darrick and AONE throughout the parties' longstanding business relationship, it is Darrick and AONE's reasonable belief that an operating agreement arose between Darrick, Deon, and Roxanne with respect to Hyper Engine. Specifically, Counter-Defendants' and Roxanne's actions, and Darrick and AONE's performance of services throughout the parties' professional relationship, were consistent with an unambiguous intent to form a business partnership, such that Darrick is entitled to a 33.33% ownership stake in Hyper Engine, as well as the right to share in the management and profits of the business. Deon, Roxanne, and HEFG are now wrongfully retaining the interest and use of Darrick and AONE's services and proprietary information to derive profits and pecuniary gain to the exclusion of Darrick.

59.     Darrick and AONE additionally claim ownership rights over various works and intellectual property created by AONE for HEFG and/or Hyper Engine in reliance on Counter-Defendants' and Roxanne's misrepresentations or material omissions. Specifically, the ICANN registered domain owner of all domains is AONE Creative LLC, as has been the case since such domains were first registered. Further, the domains were all paid for entirely by AONE when registered and when renewed. Additionally,

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

AONE retained all ownership of creative and authored works. Further, Darrick was never paid for the many executive roles he covered for HEFG and Hyper Engine.

60.     Beginning in May of 2022, Darrick and AONE have additionally incurred expenses in providing their time and services to Counter-Defendants and Roxanne, for which there are still outstanding balances and expenses still presently accruing. Specifically, Darrick and AONE are owed by HEFG or Hyper Engine a total of $35,818.41 for the following 7 invoices:

a.      Invoice dated June 2, 2022 in the amount of $8,864.06, for Web & Email Server Management ($1,999.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($321.30); and carrying cost of 2.5%. balance fee for open HEFG invoices from February 2021 through April 2022 ($3,000.00.);

b.      Invoice dated July 1, 2022 in the amount of $2,245.82, for management and hosting of podcast archive ($999.00); management and use of social ($499.00); and carrying cost of 2.5%. courtesy fee for Jan, Feb, Mar, and Apr 2022 ($747.82.);

c.      Invoice dated July 2, 2022 in the amount of $7,764.06, for Web & Email Server Management ($1,999.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($321.30); and carrying cost of

2.5%. balance fee for open HEFG invoices from February 2021 through April 2022 ($1,900.00.);

      d.      Invoice dated August 1, 2022 in the amount of $2,398.68, for management and hosting of podcast archive ($999.00); management and use of social ($499.00); and carrying cost of 2.5%. courtesy fee for Jan, Feb, Mar, and Apr 2022 ($900.68.);

      e.      Invoice dated August 2, 2022 in the amount of $7,764.06, for Web & Email Server Management ($1,999.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($321.30); and carrying cost of 2.5%. balance fee for open HEFG invoices from February 2021 through April 2022 ($1,900.00.);

      f.      Invoice dated August 16, 2022 in the amount of $5,283.73, for Web & Email Server Management ($1,499.00); database backups, plugin updates, database optimization, and platform updates ($3,500.00); and HEFG Server costs ($43.76) 3rd Party Workspace Email server costs ($240.97); and

      g.      Invoice dated August 16, 2022 in the amount of $1,498.00, for management and hosting of podcast archive ($999.00); and management and use of social ($499.00)

61.     Deon and Roxanne, individually and on behalf of Hyper Engine, knew, or had reasonable grounds to believe, that their above misstatements and omissions were

false and misleading to Counterclaimants Darrick and AONE.

62.     Deon and Roxanne, individually and on behalf of Hyper Engine, with the willful intent to defraud, intended that that their misstatements and omissions had the unlawful purpose of inducing Darrick and AONE into dealing with Counter-Defendants and Roxanne, and providing them with marketing, web development, and all other digital or IP services on numerous projects under the false impression that Darrick had a shared membership interest with Deon and Roxanne. Deon and Roxanne, individually and on behalf of Hyper Engine, had actual knowledge that Darrick and AONE would not have entered into any business dealings with Counter-Defendants and Roxanne, nor provided any abovementioned services if they were told the truth of any of the above statements or omissions.

63.     Deon and Roxanne were owners and controlling persons of HEFG and Hyper Engine, and had direct involvement in their day-to-day operations.  The material misrepresentations or omissions from HEFG's verbal solicitations that were made to Darrick and AONE in connection with their services was the collective and concerted action of Deon and Roxanne.  Deon and Roxanne were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made verbal representations to Darrick and AONE as well.

64.     Darrick and AONE are informed and believe, and based thereon allege, that after Deon and Roxanne, individually and on behalf of Hyper Engine, breached the parties' operating agreement and excluded Darrick from Hyper Engine, Deon and

Roxanne have continued to operate the companies as their own businesses and investments without allowing Darrick to share in the management and profits of that business as agreed upon.

65.    Deon and Roxanne, individually and on behalf of Hyper Engine, had actual knowledge, or had reasonable grounds to know, of the misrepresentations and omissions of material facts set forth in this Counter-Complaint as all such facts were readily available to them. Deon and Roxanne, individually and on behalf of Hyper Engine, made material misrepresentations and omissions knowingly and recklessly and for the purpose and effect of concealing information from Darrick and AONE in order to further Deon and Roxanne's inappropriate and excessive gains from Darrick and AONEs' services and contributions in reliance on an ownership stake in Deon and Roxanne's company. As a result of Deon's and Roxanne's representations of materially false and misleading information and failure to disclose material facts (individually and on behalf of Hyper Engine), as set forth above, and in reliance on that information, Darrick and AONE continued to deal with Counter-Defendants and Roxanne in providing marketing, web development, and any other digital or IP services, which ultimately caused Darrick and AONE direct damages in the form of lost profits, reputational harm, and general, special, or consequential damages in an amount according to proof at trial.

66.    As a direct and proximate cause of Deon and Roxanne's exclusion of Darrick as a member of Hyper Engine, as set forth above, Darrick was harmed directly by being deprived of his share in Hyper Engine's profits. Specifically, Darrick was deprived

of (1) a 33.33% share in Hyper Engine revenues for services provided to Sony Pictures Entertainment, (2) a 33.33% share in Hyper Engine revenues in connection with the Be Woke Vote Campaign, (3) a 33.33% share in Hyper Engine revenues in connection with the CDC Covid-19 campaign, (4) executive distributions and salary due to the members of Hyper Engine, since its inception, and (5) a 33.33% share in any and all other profits recognized by Hyper Engine since its inception, according to proof at the time of trial. As a result of this harm, Darrick is entitled to an amount according to proof at trial, but no less than $4M in lost profits and other damages by virtue of Deon and Roxanne's exclusion of Darrick as a member. These damages are in addition to the $35,818.41 losses sustained by Counterclaimants for unpaid invoices, as set forth above. Alternatively, while there is overwhelming support for Darrick's one-third (33.33%) interest in Hyper Engine based on the parties' aforementioned conduct and verbal representations, Darrick is entitled to no less than a 16.66% ownership stake in Hyper Engine and all the profits and benefits arising therefrom, pursuant to the express March 1, 2018 operating agreement.

67.     As to Darrick and AONE's engagement for the Fear marketing campaign, game, and other content developed by Darrick and AONE for Fear (as set forth above), Darrick is additionally entitled to a 15% fee of the $2.7M marketing strategy for Fear (i.e., $405,000.00), which is both an industry standard for marketing services provided by companies like AONE, and Darrick and AONE's routine fee rate charged in performance of their obligations with Counter-Defendants and Roxanne, and third parties. This is in

addition to Darrick and AONE's direct and proximate losses of $250,000.00 for the

development of the Fear game, and $10,000.00 for the development of a Fear Instagram

filter, which remains unrecouped by Counterclaimants as set forth above.

## FIRST CAUSE OF ACTION
## BREACH OF EXPRESS ORAL CONTRACT

**(By Counterclaimant Darrick Angelone Against Counterclaim-Defendant Deon Taylor)**

68.     Counterclaimants repeat and incorporate herein by reference each and every

allegation set forth above as though fully set forth herein.

69.     On or about December 1, 2019, (and at various other times throughout the

parties' relationship, as set forth above) Darrick, Deon, and Roxanne verbally entered

into an operating agreement to form Hyper Engine for the general purpose of using

Darrick and AONE's digital marketing services to benefit Deon, Roxanne, HEFG, Hyper

Engine, and/or their clients, as fully set forth above. Pursuant to the oral agreement,

Darrick, Deon, and Roxanne were designated as equal members of Hyper Engine.

Specifically, Deon Taylor was named 33.34% owner, Roxanne Taylor was named

33.33% owner, and Darrick Angelone was named 33.33% owner. Upon information and

belief, Darrick, Deon, and Roxanne further agreed amongst each other that the remaining

express material terms of this oral operating agreement would be in accordance with the

terms of the parties' March 1, 2018 operating agreement.

70.     At all times, Darrick performed all conditions, covenants, and promises

required to be performed on his part in accordance with the terms of the oral operating

agreement.

71.     Deon and Roxanne, individually and on behalf of Hyper Engine, breached the agreement by, among other things, failing to treat Darrick as a formal member of the LLC, excluding Darrick from Hyper Engine's management and profits, and claiming ownership of Counterclaimants' proprietary information and intellectual property developed for Hyper Engine and HEFG, and owned by Counterclaimants.

72.     As a direct and proximate result of Deon and Roxanne's wrongful conduct, Darrick has sustained damages in an amount according to proof within the jurisdiction of this Court.

73.     As set forth above, the operating agreement between the parties is certain and definite in that it clearly provides Darrick with a membership interest in Hyper Engine. Darrick has no plain, speedy, or adequate remedy in the ordinary course of law, nor can any other party other than Deon and Roxanne perform under the oral operating agreement, and further, damages to Darrick would be difficult to ascertain and would not afford adequate relief to compensate Darrick for the detriment suffered by him. In the alternative, Darrick is therefore entitled to an order requiring that Deon and Roxanne perform the oral operating agreement and (i) recognize Darrick as an exclusive partner with Roxanne and Deon as members of Hyper Engine; (ii) allow Darrick to share in the control and management of the company; (iii) grant Darrick 33.33% of all profits Deon and Roxanne received from the business in connection with the ownership, sale, or use of Hyper Engine property; and (iv) grant Darrick a 33.33% share of all profits Deon and

Roxanne received in connection with management or other fees obtained in connection with Hyper Engine and any of its subsidiaries.

### SECOND CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
**(By Counterclaimant Darrick Angelone Against Counterclaim-Defendant Deon Taylor)**

74.     Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

75.     In performing the acts and engaging in the conduct of creating pitch decks, executing marketing campaigns, creating digital branding, registering domain names, and executing other digital or IP services conducted through AONE, Darrick, Deon, and Roxanne manifested an intention to enter into an LLC operating agreement to do those things and to equally share in the profits and losses therefrom. Upon information and belief, Darrick, Deon, and Roxanne further manifested an intention that all other material terms of this implied operating agreement would be in accordance with the terms of the parties' March 1, 2018 operating agreement.

76.     Darrick, Deon, and Roxanne held themselves out to the public as equal members and partners for the development and execution of the described digital marketing and IP services.

77.     Deon and Roxanne, individually and on behalf of Hyper Engine, performed these acts and conduct with the intent to form the described LLC and operating agreement with Darrick, who understood said intent and acted with their own intent to

create such LLC and enter into an operating agreement.

78.     At no time did Deon or Roxanne, either individually or on behalf of Hyper Engine, conclusively manifest an unambiguous intent to Darrick and/or AONE that they did not intend to remain equal members of Hyper Engine, until their exclusion of Darrick and AONE from Hyper Engine as alleged above.

79.     At all times, Darrick performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms of the operating agreement.

80.     Deon and Roxanne, individually and on behalf of Hyper Engine, breached this operating agreement by, among other things, failing to treat Darrick as a formal member of Hyper Engine, excluding Darrick from Hyper Engine's management and profits, and claiming ownership of Darrick and AONEs' proprietary information and intellectual property developed for Hyper Engine and HEFG.

81.     As a direct and proximate result of Deon and Roxanne's wrongful conduct, Darrick has sustained damages in an amount according to proof within the jurisdiction of this Court.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (By Counterclaimant Darrick Angelone Against Counterclaim-Defendant Deon Taylor)

82.     Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

83.     As alleged above, Darrick, Deon, and Roxanne agreed to jointly engage in a business as partners and share the resulting profits. Specifically, Darrick, Deon, and Roxanne created an LLC and entered into an operating agreement to promote and use Darrick and AONE's digital marketing services to benefit Deon, Roxanne, HEFG, Hyper Engine, and/or their clients. As a member of the company and as business partners, Deon and Roxanne at all times owed Darrick the fiduciary duties of disclosure, loyalty, and care. Pursuant to such fiduciary duties, Deon and Roxanne were required to act in the utmost good faith towards Darrick, and to avoid acts and omissions adverse to Darrick. By virtue of this fiduciary relationship, Darrick reposed trust and confidence in the integrity of Deon and Roxanne. Darrick provided no cause for Deon and Roxanne to act in any manner inconsistent with this fiduciary relationship.

84.     Deon and Roxanne have breached their fiduciary duties, including the duties of disclosure, loyalty, and care to Darrick by repeatedly misappropriating company funds and diverting company funds from Hyper Engine and devoting them to non-company purposes, all without the knowledge and consent of Darrick.

85.     Specifically, Deon and Roxannes' various breaches of fiduciary duties are evidenced by the following acts and events (as fully set forth in ¶ 36, *supra*):

        a.      Darrick is informed and believes, and on that basis alleges, that, throughout the parties' relationship, Deon and Roxanne were diverting funds from the Hyper Engine bank account for their own personal use and to finance debts for various HEFG projects, in a deliberate violation of their fiduciary duties of care

and loyalty. Since at least 2018, Deon and Roxanne were diverting funds from Hyper Engine and devoting said funds to non-company purposes such as paying for personal expenses and items, paying themselves and other HEFG employees, and funding projects unrelated to Hyper Engine;

b.      In or around November 2021, Deon, Roxanne, and other HEFG staff executed independent contractor agreements between themselves and Hyper Engine, and then billed Hyper Engine to pay themselves out of Hyper Engine funds, leaving only Darrick out;

c.      In or around May 2021, Roxanne billed Hyper Engine to pay for expenses related to HEFG and self-promotion and public relations related to her collaboration with Bentley Motors. Hyper Engine was never engaged for this project;

d.      In or around May 2021, Hyper Engine was billed for and paid for HEFG merchandise. Hyper Engine was not engaged for work on this project;

e.      On or about May 21, 2021 Hyper Engine was billed for and paid for artwork for the HEFG film "Fatale". Hyper Engine was not engaged for work on this project;

f.      During the first and second quarter of 2021, Shandra Dixon, an employee of HEFG, was moved to Hyper Engine's payroll expense. However, Shandra did not perform services for Hyper Engine. She worked exclusively for HEFG but was paid for her employment with Hyper Engine funds;

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

g.      In or around July, 2022, Deon and Roxanne took company funds that were designated for use in the aforementioned CNBC vaccine campaign, and used said funds to finance the promotion of their new workspace and studio for HEFG in Santa Monica, CA;

h.      From December, 2020 through January 2021, Deon and Roxanne took revenue paid to Hyper Engine for the promotion of the HEFG movie "Fatale", and used said funds in their in entirety to promote the film. In other words, any profit from the promotion of the film "Fatale" was wrongfully diverted from Hyper Engine and used for additional promotion for the film;

i.      Since the inception of Hyper Engine, Roxanne often directed Sean Miller, the previous HEFG office manager and current executive assistant to Roxanne, to have third party vendors issue invoices to Hyper Engine for work unrelated to Hyper Engine projects. This would include creative work for HEFG films and HEFG merchandise, neither of which Hyper Engine had been engaged to perform nor which Hyper Engine would earn revenue from;

j.      In or around 2019, Deon and Roxanne took funds that Sony Pictures Entertainment paid for Hyper Engine marketing of the film "The Intruder", and used said funds to purchase additional marketing services for the film beyond what Sony had actually paid for. Essentially, Deon and Roxanne embezzled the budget from Sony for their own and HEFG's benefit, leaving no profit for Hyper Engine;

k.      Counter-Defendants never paid Hyper Engine for the marketing

services that Hyper Engine provided for the HEFG films "The House Next Door" (2021), "Fatale" (2020), and "The Intruder" (2019). So, by Deon and Roxanne diverting payment away from Hyper Engine, Hyper Engine would routinely be in a poor financial state by only having expenses and not income; and

l.      From April, 2020 to October, 2020, Deon and Roxanne took funding they received from Robert Smith intended for Be Woke Vote (the political marketing arm of Hyper Engine), and routed it through their non-profit, instead of through Hyper Engine.

86.     Deon and Roxanne intended to induce Darrick to rely on their fiduciary relationship, and in reasonable reliance thereon, Darrick was induced to and did continue his fidelity.

87.     As a direct and proximate result of Deon and Roxanne's breach of fiduciary duties, Darrick has sustained damages in an amount according to proof within the jurisdiction of this Court.

## FOURTH CAUSE OF ACTION
## PROMISSORY FRAUD

**(By Counterclaimant Darrick Angelone Against Counterclaim-Defendant Deon Taylor)**

88.     Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

89.     "'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a

promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Engalla v. Permanente Medical Group, Inc*. 15 Cal.4th 951, 973-974, (1997). "[I]n a promissory fraud action, to sufficiently allege defendant made a misrepresentation, the complaint must allege (1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1060 (2012). To plead promissory fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim. *Grant v. Aurora Loan Servs., Inc*., 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843 (1997)) (stating that the elements of promissory fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage").

90.     As fully set forth above, Deon and Roxanne (individually and on behalf of Hyper Engine) represented to Darrick on multiple occasions that Darrick was a partner and equal member of Hyper Engine, LLC, and thus entitled to a share in the company's profits and losses, as well as a share in the control and management of the company. See ¶¶ 18-28, 30-34, *supra*. However, these statements were false when made because Deon and Roxanne ultimately deceived Darrick and never intended to recognize him as a member or partner of Hyper Engine or give him any interest in the company despite their

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

repeated assurances, as set forth below. See ¶ 91, *infra; see also* ¶¶ 38-47, *supra*. Further, Deon and Roxanne intentionally and with knowledge disregarded Darrick's requests to re-negotiate and formalize a new operating agreement for Hyper Engine, and further refused to memorialize in writing most of the work Counterclaimants performed for Deon and Roxanne, as part of their underlying intent to exclude Darrick from the company.

91.     Darrick is informed and believes, and on that basis alleges, that at all times relevant herein, that Deon and Roxanne knew that the representations being made to Darrick were false, misleading, incomplete, inaccurate, and contained material misrepresentations and made omissions of material facts, and that their actions in furtherance of the conspiracy (as set forth in the "Factual Allegations" and all causes of action in these Counterclaims) were intended to defraud and deceive Darrick. Specifically, Deon and Roxanne knew that they ultimately would not treat Darrick as an equal business partner or member in Hyper Engine, and would instead treat Hyper Engine as their own company and investment without allowing Darrick to share in the management and profits of the company. Specific facts supporting this allegation include, but are not limited to the following:

a.     Deon and Roxanne would repeatedly assure Darrick that he was a member in Hyper Engine and that Hyper Engine was a "joint venture", as set forth above. However, Darrick learned through conversations with third parties that, without Darrick's knowledge, Deon and Roxanne would tell HEFG staff that Hyper Engine was actually owned by Deon and Roxanne only, and that ownership

was split 50/50 between Deon and Roxanne. This alone demonstrates that Deon and Roxanne knowingly sought to induce Darrick's reliance and defraud him into a business relationship;

b.     Deon stated in a voice memo to Darrick, dated April 8, 2022, that Hyper Engine was "not real", despite facts such as the company having a bank account and being registered as an LLC with the CA Secretary of State. This goes to show that Deon and Roxanne never intended to operate a business with Darrick as a partner or member;

c.     Deon and Roxanne were very hesitant and ultimately failed to validate Darrick's partnership interest, even when Darrick hired an attorney, despite Deon and Roxanne's reassurances that Darrick was a member of Hyper Engine. See ¶¶ 41-47, *supra*. Significantly, Deon and Roxanne never equivocally stated to Darrick or his attorney that Darrick was not a partner or member in Hyper Engine, which indicates how Deon and Roxanne knew they would (and did) induce Darrick's reliance for years without ever recognizing his interest in Hyper Engine. Further, this is indicative of Deon and Roxannes' intent to defraud.

92.     At the time Deon and Roxanne agreed to designate Darrick as a member of Hyper Engine and proceed as partners, Deon and Roxanne had no intention to include or recognize Darrick as a partner or member and allow him a share in the company's profits, losses, and management functions, as fully set forth above. Ultimately, Deon and Roxanne promised Darrick a one-third share in Hyper Engine to induce Darrick to help

develop Hyper Engine by providing digital marketing services and other benefits to Deon and Roxanne, as set forth above. In addition to the foregoing, the following specific facts demonstrate Deon and Roxannes' intent to defraud:

a.      Deon and Roxanne intentionally failed to inform several third parties, at least where Darrick was privy to the conversation, that Darrick was not a partner or member in Hyper Engine despite having numerous opportunities to do so. See ¶¶ 31-32, 35 *supra*. By holding Darrick out as a partner or member of Hyper Engine, Deon and Roxanne intended to create the impression to Darrick that he really had an interest in the company;

b.      Deon and Roxanne would exclusively use Darrick's company, AONE, to conduct digital marketing services and help develop Hyper Engine, promising to pay for such services (and consistently failing to do so);

c.      Deon and Roxanne authorized AONE to create and print executive Hyper Engine business cards and a company email for Darrick, ostensibly to keep Darrick satisfied and trusting that Hyper Engine did include Darrick. See ¶ 31k, *supra*;

d.      Deon and Roxanne contracted for and yet refused to memorialize in writing all of the work Darrick and AONE performed for Deon and Roxanne following the creation of the Hyper Engine LLC. See ¶¶ 41, 42, 54, *supra*;

e.      Roxanne acknowledged in an email dated March 6, 2018 that Hyper Engine is a "joint venture" including Darrick, intending that Darrick continue his

**DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS**

reliance and fidelity to the company based on such promises. See ¶31c, *supra*;

f.      Roxanne verbally confirmed the split in ownership of 1/3 (33%) to each Deon, Roxanne, and Darrick in a telephone discussion on or about February 23, 2020 regarding the formation of Hyper Engine;

g.      Deon and Roxanne authorized Darrick to act in the capacity of a Hyper Engine executive and execute contracts between Hyper Engine and various clients and/or partners, without any objection from Deon or Roxanne. See ¶31 *supra*.

h.      Deon and Roxanne created a Hyper Engine debit card and bank account with Darrick listed as signatory, of which Darrick was first notified verbally, in order to further induce Darrick's reliance. See ¶ 31, *supra*;

The foregoing acts and events led Darrick to understand that Deon and Roxanne intended to induce Darrick's reliance and fidelity to continue developing and operating Hyper Engine as business partners. In reality, however, Deon and Roxanne never had the intention to give Darrick any interest in Hyper Engine.

93.     At all times relevant herein, Darrick actually and justifiably relied on the foregoing misrepresentations to their detriment. In justifiable reliance on Deon and Roxannes' aforementioned representations, Darrick and his company AONE spent years providing various services to Counter-Defendants and Roxanne, making himself available to Deon and Roxanne as a business partner and confidant throughout their tenure, and incurring extensive costs throughout the process. Specifically, the acts and

services that Darrick performed in reliance include but are not limited to:

     a.     Developing and executing a marketing plan for the HEFG film "Fear", including the creation of the Fear game. See ¶¶ 48-52, *supra*;

     b.     Developing and executing marketing for a campaign, presently named Be Woke Vote, to encourage voting across different political campaigns and promote political outreach. See ¶¶ 53-54, *supra*;

     c.     Creating the branding and building out the entire digital infrastructure to distribute and market the HEFG educational series titled "Black History in Two Minutes (or so)". See ¶ 55, *supra*;

     d.     Advancing as much as $225,000 for digital marketing on numerous projects performed for Counter-Defendants and Roxanne, which was done under the impression that Darrick was a member with ownership interest in Hyper Engine. See ¶ 57, *supra*;

     e.     Creating and presenting decks to pitch Hyper Engine services to entertainment companies such as Sony Pictures Entertainment, Lionsgate Films, and Warner Brothers;

     f.     Creating and executing digital marketing and political outreach campaigns wherein AONE created a significant amount digital graphics and branding across social media, television, print, and other online digital media;

     g.     Creating and executing digital marketing campaigns to promote films created or directed by HEFG and other independent entertainment clients;

h.      Creating and executing digital branding, web development, domain names, pitch decks, and other digital marketing for various endeavors and projects undertaken by Deon, Roxanne, HEFG, and clients referred to Darrick or AONE by Counter-Defendants and Roxanne; and

i.      Developing a COVID-19 vaccine campaign to be executed by Hyper Engine with CDC grant money given to the Coalition of National Black Churches ("CNBC"), whereby AONE was engaged to advertise for the vaccine campaign, create pitch decks, perform copywriting, perform web development, register domain name(s), and conduct political advertising research, while creating and executing the digital strategies.

94.      This reliance by Darrick on said misrepresentations was and is reasonable, in part, because Deon and Roxanne knowingly led Darrick to believe that Darrick would be treated as a member of Hyper Engine, allowed a share in the control and management of Hyper Engine, and allowed a 33.33% share in the company's profits and losses. In reliance thereon, Darrick was induced to and did continue his fidelity. However, in actuality, Deon and Roxanne had no such intention and are simply continuing to line their pockets at the expense of Counterclaimants.

95.      Darrick is further informed and believes, and on that basis alleges, that at all times relevant herein, Deon and Roxanne knew and failed to disclose to Darrick that, at the time Darrick agreed to become a member in Hyper Engine, Deon and Roxanne agreed to a conspiratorial plan or scheme in which they had no intention of recognizing

Darrick as a member of Hyper Engine nor granting Darrick a rightful share in the company's profits and losses, all of which is specifically set forth above.

96.     Darrick is informed and believes, and on that basis allege, that at all times relevant herein, that Deon and Roxanne, and each of them, agreed to and did act in concert or concur in the tortious scheme (which is specifically set forth in the "Factual Allegations" and all causes of action in this Complaint) with knowledge of the common and unlawful purpose of committing fraud against Darrick and excluding Darrick as a member of Hyper Engine.

97.     Darrick is informed and believes, and on that basis alleges, that at all times relevant herein, that Deon and Roxanne agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy to commit fraud against Darrick. Deon and Roxanne's overt acts in furtherance of the conspiracy are evidenced in large part by numerous instances in which Darrick was treated as if he were a member of Hyper Engine, including but not limited to the creation of a Hyper Engine operating agreement, creation of Hyper Engine business cards in Darrick's name, Hyper Engine bank accounts with Darrick listed as a signatory, documents and communications which affirmed Darrick's membership and/or partnership status in Hyper Engine, and the mere fact that neither Deon nor Roxanne ever corrected or advised Darrick's understanding and representations to others that he was a member of Hyper Engine.

98.     Darrick is informed and believes, and on that basis alleges, that at all times relevant herein, that in furtherance of the conspiracy to defraud Darrick, Deon and

Roxanne, and each of them, overtly acted or tacitly consented to the wrongful acts done in furtherance of committing fraud against Darrick.

99.    As a direct and proximate result of Deon and Roxanne's fraud and conspiracy to commit fraud, Darrick has been harmed in an amount to be determined according to proof at trial, in excess of this Court's jurisdiction, plus prejudgment interest. Furthermore, Deon and Roxanne's purposeful and deliberate conduct in defrauding Darrick into entering into an operating agreement which Deon and Roxanne had no intention to fully perform at the time of agreement evidence malice and despicable conduct towards Darrick which entitles Darrick to an award of punitive and exemplary damages as provided for by Civil Code section 3294, which are requested herein.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT
**(By Counterclaimants Darrick Angelone and AONE Against All Counterclaim-Defendants)**

100.   Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

101.   As fully set forth above, Darrick and AONE provided $35,818.41 in digital marketing services to Counter-Defendants and Roxanne without any reimbursement or payment received in return, as evidenced by seven different invoices outlined above.

102.   As set forth above, Darrick and AONE further provided value to Counter-Defendants and Roxanne in the form of cash advancements, services, and other labor provided by AONE and its staff for marketing films and other projects for Counter-

Defendants without reimbursement. Specifically, Darrick and AONE provided value in marketing research, strategy development, social media management, paid media strategy, social media platform ad buying, native advertising buying, website design, website development, user interface (UI), user experience (UX), analytics reporting, creative delivery to ad networks, ad scheduling, and all other services related to marketing except securing clientele. Furthermore, Darrick and AONE were responsible for the staffing and associated costs to execute all the aforementioned services.

103.   Darrick and AONE conferred a benefit on Counter-Defendants and Roxanne. Counter-Defendants and Roxanne have refused to reimburse Darrick and/or AONE or return property belonging to Darrick and AONE as set forth above. Thus, Counter-Defendants and Roxanne are unjustly retaining said benefit at the expense of Darrick and AONE.

104.   Darrick and AONE allege that money damages are not an adequate remedy for the harm suffered as a result of Counter-Defendants' and Roxanne's unjust enrichment. Counter-Defendants and Roxanne received valuable services from Darrick and AONE that were provided without compensation, causing Darrick and AONE to suffer significant financial and reputational harm. The services provided by Darrick and AONE were an essential part of Counter-Defendants' and Roxanne' business operations, and Darrick and AONE's provision of those services was integral to Counter-Defendants' and Roxanne's success. Darrick and AONE further allege that money damages are inadequate insofar as they are speculative and difficult to ascertain with precision.

Specifically, any damages suffered with respect to Darrick and AONE's aforementioned cash advancements, services, and other labor provided by AONE and its staff for marketing films and other projects, without reimbursement, are inherently speculative and difficult to quantify with specificity. Thus, Counter-Defendants and Roxanne have been unjustly enriched in an amount according to proof, which exceeds the jurisdictional limitations of this Court.

<u>SIXTH CAUSE OF ACTION</u>
<u>DECLARATORY RELIEF</u>
**(Against All Counterclaim-Defendants)**

105.   Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

106.   An actual controversy has arisen and now exists between Darrick and Deon and Roxanne concerning their respective rights and duties in that Darrick contends that the parties entered into a valid and binding LLC operating Agreement in connection with Hyper Engine, whereas Counter-Defendants and Roxanne dispute these contentions and contends that the parties did not enter into such binding operating agreement(s).

107.   Darrick desires a judicial determination of the parties' rights and duties to one another as partners and members of Hyper Engine. Counterclaimants seek a declaration that: (i) Darrick is in an exclusive partnership with Roxanne and Deon as members of Hyper Engine; (ii) Darrick, Deon, and Roxanne are entitled to share in the control and management of Hyper Engine; (iii) Darrick, Deon, and Roxanne are entitled to each share one-third (33.33%) of all profits Deon and Roxanne received from Hyper

Engine in connection with the ownership, sale, or use of company property; and (iv) Darrick and Deon and Roxanne are entitled to each share one-third (33.33%) of all profits Deon and Roxanne received in connection with management or other fees obtained in connection with Hyper Engine and any of its subsidiaries.

108.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that Darrick may ascertain his rights and duties with respect to Hyper Engine. Such a judicial declaration is necessary and proper to avoid a multiplicity of suits. Moreover, the requested judicial declaration will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve this controversy.

## SEVENTH CAUSE OF ACTION
## QUANTUM MERUIT
### (By Counterclaimants Darrick Angelone and AONE Against All Counterclaim-Defendants)

109.   Counterclaimants repeat and incorporate herein by reference each and every allegation set forth above as though fully set forth herein.

110.   By virtue of Darrick and AONE's services having been provided to Counter-Defendants and Roxanne, as set forth above, Darrick and AONE are entitled to compensation under the equitable doctrine of quantum meruit.

111.   Specifically, Darrick and AONE provided value in marketing research, strategy development, social media management, paid media strategy, social media platform ad buying, native advertising buying, website design, website development, user interface (UI), user experience (UX), analytics reporting, creative delivery to ad

networks, ad scheduling, and all other services related to marketing except securing clientele. Furthermore, Darrick and AONE were responsible for the staffing and associated costs to execute the aforementioned services. Upon information and belief, the aforementioned services and property developed for Counter-Defendants and Roxanne were valued at no less than $1.2M.

112.    Counter-Defendants and Roxanne have failed to compensate Darrick and AONE for these services. Further, Counter-Defendants and Roxanne accepted, used, and enjoyed the services provided by Darrick and AONE.

113.    Darrick and AONE allege that money damages are not an adequate remedy for the harm suffered as a result of Counter-Defendants' and Roxanne's wrongful actions. Counter-Defendants and Roxanne received valuable services from Darrick and AONE that were provided without compensation, causing Darrick and AONE to suffer significant financial and reputational harm. The services provided by Darrick and AONE were an essential part of Counter-Defendants' and Roxanne's business operations, and Darrick and AONE's provision of those services was integral to Counter-Defendants' and Roxanne's success. Darrick and AONE further allege that money damages are inadequate insofar as they are speculative and difficult to ascertain with precision. Specifically, any damages suffered with respect to Darrick and AONE's aforementioned cash advancements, services, and other labor provided by AONE and its staff for marketing films and other projects, without reimbursement, are inherently speculative and difficult to quantify with specificity.

DEFENDANTS' FOURTH AMENDED COUNTERCLAIMS

114.   Therefore, Darrick and AONE are entitled to reasonable compensation for the services provided to Counter-Defendants and Roxanne, in the amount of no less than $1.2M, according to proof at the time of trial.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Counterclaimants hereby demand trial by jury on all issues so triable that are raised by Counterclaimants' Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray for judgment against Counter-Defendants as follows:

(a)     An award of monetary general, special, and consequential damages against Counterclaim Defendants, jointly and severally, plus the expenses incurred by Counterclaimants in their investigation and defense of the Complaint, together with interest on said sum from and after the date on which said sum first became due and owing, in an amount according to proof at trial;

(b)     For the recovery of Darrick's one-third (33.33%) interest in Hyper Engine, and all profits and benefits arising therefrom;

(c)     For restitution from Counter-Defendants for unpaid balances for services, costs and other amounts provided by Counterclaimants to Counter-Defendants, in an amount no less than $1.2M, according to proof at trial.

(d)      Punitive damages in an amount sufficient to punish and make an example of Counterclaim-Defendant Deon Taylor;

(e)      Costs of suit, including but not limited to Counterclaimants' attorneys' fees and pre-judgment interest if allowable by contract, statute, or other law;

(f)      For a declaration of the respective rights and duties of the parties under the parties' operating agreement and obligations with respect to Hyper Engine;

(g)      For a decree of specific performance directing Deon and Roxanne to perform the parties' oral operating agreement; and

(h)      For such other and further relief as the Court deems just and proper.

DATED: June 12, 2023

LAW OFFICES OF JT FOX & ASSOCIATES, APC


By: _JT Fox_____

J.T. Fox, Esq.
Attorneys for Defendants and Counterclaimants, DARRICK ANGELONE, AONE CREATIVE, LLC, AND ON CHAIN INNOVATIONS, LLC.

**PROOF OF SERVICE**

I, the undersigned, declare:

I am a citizen of the United States of America, am over the age of eighteen (18) years, and not a party to the within action. I am an employee of Law Offices of JT Fox, APC, and my business address is 556 S. Fair Oaks Ave., Suite 444, Pasadena, CA 91105. My email address is: jt@jtfoxlaw.com.

On June 12, 2023, I served DEFENDANTS' FOURTH AMENDED COUNTER-COMPLAINT FOR DAMAGES BASED ON (1) BREACH OF EXPRESS ORAL CONTRACT, (2) BREACH OF IMPLIED CONTRACT, (3) BREACH OF FIDUCIARY DUTY, (4) PROMISSORY FRAUD, (5) UNJUST ENRICHMENT, (6) DECLARATORY RELIEF, AND (7) QUANTUM MERUIT on the parties involved by:

☒ BY ELECTRONIC TRANSFER I caused all of the above-entitled document(s) to be served through my personal email address (jt@jtfoxlaw.com) addressed to all of the parties' below email addresses. Said document(s) were served on the interested party or parties in this action addressed as noted below.

Lawrence Hinkle (SBN 180551)
lhinkle@sandersroberts.com
Stephanie Jones Nojima (SBN178453)
sjonesnojima@sandersroberts.com
Matthew Barzman (SBN 309063)
mbarzman@sandersroberts.com
SANDERS ROBERTS LLP
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017

[   ] **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on June 12, 2023 at Pasadena, California.

_JT Fox_
_____
DECLARANT – J.T. FOX