1  LAWRENCE HINKLE (SBN 180551)
   lhinkle@sandersroberts.com
2  STEPHANIE JONES NOJIMA (SBN 178453)
   sjonesnojima@sandersroberts.com
3  MATTHEW BARZMAN (SBN 309063)
   mbarzman@sandersroberts.com
4  SANDERS ROBERTS LLP
   1055 West 7th Street, Suite 3200
5  Los Angeles, CA 90017
   Telephone: (213) 426-5000
6  Facsimile: (213) 234-4581

7  Attorneys for Plaintiffs
   **HIDDEN EMPIRE HOLDINGS, LLC;**
8  **HYPER ENGINE, LLC; AND DEON**
   **TAYLOR**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE, LLC formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS, LLC, a Florida limited liability company,<br><br>Defendants. | **CASE NO.  2:22-cv-06515-MWF-AGR**<br><br>**PLAINTIFFS HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE, LLC AND DEON TAYLOR AND THIRD PARTY DEFENDANT ROXANNE TAYLOR'S MOTION TO DISMISS FOURTH CAUSE OF ACTION FOR PROMISSORY FRAUD**<br><br>**Hearing Date:** July 31, 2023<br>**Time:** 10:00 a.m.<br>**Room:** 5A |

TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE, LLC, and DEON TAYLOR (collectively "Plaintiffs") and third party defendant ROXANNE TAYLOR ("R. Taylor") (Plaintiffs and R. Taylor are collectively referred to herein as "the Taylors") will, and hereby do, move the Court for orders dismissing Defendants DARRICK ANGELONE, AONE CREATIVE, LLC, and ON CHAIN INNOVATIONS LLC'S counterclaims and third party claims against them as set forth in the Fourth Amended Counterclaim and the First Amended Third Party Complaint. The motions are brought on the following grounds:

1. The fourth claim for Promissory Fraud fails to state a claim upon which relief can be granted because it sounds in fraud but fails to meet FRCP Rule 9(b)'s strict pleading requirements.

This motion will be based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, and any argument offered at the hearing on this motion and the files and records of this case.

This motion is made following the conference of counsel, pursuant to Local Rule 7-3, which took place on June 21, 2023.

Dated: June 30, 2023              **SANDERS ROBERTS LLP**

By:

*/s/ Lawrence Hinkle*
Lawrence Hinkle, Esq.
Stephanie Jones Nojima, Esq.
Matthew Barzman, Esq.
Attorneys for Plaintiffs
HIDDEN EMPIRE HOLDINGS, LLC;
HYPER ENGINE, LLC; AND DEON TAYLOR

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants have failed to allege their Promissory Fraud claim with the requisite specificity as instructed by this Court. When the Court issued its Order on Plaintiffs' prior motion to dismiss, it provided Defendants with clear guidance on the specificity and content of allegations necessary under Rule 9(b) to state a viable claim for Promissory Fraud. For the intent and falsity elements of the claim, the Court explained that Defendants' conclusory allegations that the Taylors did not intend to enter into a Hyper Engine agreement with Angelone were inconsistent with their extensive allegations of the Taylors treating Angelone as a partner of Hyper Engine. Even though the Court ruled that additional facts were needed to satisfy these elements of the claim, in their Fourth Amended Counterclaims ("FACC") and First Amended Third Party Complaint ("FATCP"), Defendants entirely ignore this guidance. Instead, they merely allege a hodgepodge of facts that predominantly support the conclusion that the Taylors were initially open to exploring the possibility of a Hyper Engine partnership but changed their minds at a later date. The Promissory Fraud claim is, therefore, still implausible and fails for this reason alone.



For the reliance element of the claim, the Court told Defendants they needed to: (1) specify the services Angelone allegedly performed in reliance on the promise of a Hyper Engine partnership, as distinguished from those performed as an independent contractor to the Taylors; (2) identify the precise actions Angelone took or refrained from taking based on the promise of partnership; and (3) explain why any actions he took were justifiable in the absence of a formal written agreement and in light of the parties' conversations about his alleged interest in Hyper Engine. Defendants again ignore the Court's clear guidance and merely allege a second hodgepodge of facts that in no way meet the specificity requirements outlined by the Court, or even render Angelone's claimed reliance plausible.

This is Defendants' fourth attempt to plead this claim and they willfully ignored

the Court's instruction as to what is necessary to sustain the claim, presumably because there are no facts that can be truthfully alleged to save the claim. Allowing further amendment of the Promissory Fraud claim would be futile and it should be dismissed without leave to amend.

## II. INSUFFICIENT ALLEGATIONS OF PROMISSORY FRAUD IN THE FACC/FATPC

The Taylors made representations to Angelone that he was a partner in Hyper Engine but knew they ultimately would not treat him as such because Angelone learned through conversations with unspecified third parties that the Taylors would tell HEFG staff that Hyper Engine was owned by the Taylors alone. FACC, ¶ 91(a); FATPC, ¶ 89(a). The Taylors were very hesitant and ultimately failed to validate Angelone's interest in Hyper Engine, even after he hired an attorney to negotiate his alleged membership interest in Hyper Engine. *Id.* at ¶ 91(c) (FACC); ¶ 89(c) (FATPC). The Taylors never equivocally stated to Angleone that he was not a partner in Hyper Engine, which is indicative of their intent to defraud and Angelone's induced reliance on a promise of a Hyper Engine partnership interest. *Id.* The Taylors promised Angelone a one-third share in Hyper Engine to induce him to help develop Hyper Engine by providing digital marketing services and other benefits to the Taylors. *Id.* The following facts are evidence of the Taylors intent to defraud:

- The Taylors held out Angelone as a partner or member of Hyper Engine
- The Taylors exclusively used AOne to conduct digital marketing services and help develop Hyper Engine
- The Taylors authorized AOne to create Hyper Engine business cards and a company email for Angelone
- The Taylors contracted for and yet refused to memorialize in writing all the work Angleone and AOne performed for the Taylors following the creation of Hyper Engine

- R. Taylor acknowledged in an email dated March 6, 2018 that Hyper Engine was a "joint venture" including Angelone
- R. Taylor verbally confirmed Angelone's 1/3 ownership interest in Hyper Engine in a February 23, 2020 telephone conversation
- The Taylors authorized Angelone to act in the capacity of a Hyper Engine executive and execute contacts with third parties
- The Taylors created a Hyper Engine debit card and bank account with Angelone listed as a signatory.

*Id.* at ¶ 92(a)-(h) (TACC); ¶ 90(a)-(h) (FATPC).[1]

In reliance on the above representations, Defendants spent years providing various services to the Taylors, making themselves available as business partner and confidant and incurring extensive costs through the process. *Id.* at ¶ 93 (TACC); ¶ 91 (FATPC). The services that Angelone performed in reliance of the Taylors' alleged promise include:

- Developing and executing a marketing campaign and game for the HEFG "Fear" film
- Developing and executing marketing for "Be Woke Vote" campaigns
- Creating branding and digital infrastructure for the HEFG series "Black History in Two Minutes"
- Advancing up to $225,000 for unspecified projects performed for the Taylors
- Creating and presenting decks to pitch Hyper Engine services
- Creating and executing unspecified digital marketing and political outreach campaigns

---

[1] Most of these allegations carry over from the TACC, they are merely reasserted under the Promissory Fraud claim instead of being generally alleged in the prefatory section of Defendants' counterclaims.

- Creating and executing digital marketing campaigns to promote films created or directed by HEFG and others
- Providing digital marketing services for unspecified HEFG projects
- Developing a COVID-19 vaccine campaign.

*Id.* at 93(a)-(i) (FACC); ¶ 91(a)-(i) (FATPC).

### III. LEGAL STANDARD FOR A MOTION TO DISMISS

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts grant motions to dismiss under Rule 8 and Rule 12(b)(6) where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Siaperas v. Montana State Comp. Ins. Fund*, 480 F. 3d 1001, 1003 (9th Cir. 2007). Dismissal is appropriate where a plaintiff fails "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) .

The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See Iqbal*, 556 U.S. at 681. The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the

alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014); *see also Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013).

## IV. THE FOURTH CLAIM FOR PROMISSORY FRAUD STILL FAILS

Promissory fraud is a "subspecies" of fraud and "will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise." *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing *Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991)). To plead promissory fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim. *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843 (1997)) (stating that the elements of promissory fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage").

"[A] plaintiff claiming promissory fraud must meet a deliberately high burden, and, to survive a motion to dismiss, must be able to point to specific, objective manifestations of fraudulent intent by showing a fraudulent scheme or device. *Universal Studios Int'l B.V. v. Ent. Television Network FZE*, No. CV 09-01348G-AFF (FMx), 2009 WL 10675950, at *3 (C.D. Cal. Aug. 25, 2009) (internal citations omitted). It is "well-settled that failure to perform a promise does not standing alone amount to fraud." *Id.* (collecting cases). "Nor does such failure to perform a promise constitute conclusive or complete evidence of fraud or fraudulent intent, or even raise a presumption that the promisor did not intend to perform when he or she made the promise." *Id*. "[P]romissory fraud is not exempted from the strictures of Rule 9(b), and a plaintiff is required to plead facts from which the Court can infer that the allegedly fraudulent statements were actually false when made." Id. (citing *Hsu v. OZ*

*Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002)). "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Id.* (emphasis in original).

### A. Defendants Do Not Adequately Allege Intent or Falsity

In granting Plaintiffs' Motion to Dismiss as to the Promissory Fraud claim, the Court noted that Defendants did not adequately plead the elements of intent or falsity, given the allegations of an unsigned Hyper Engine operating agreement listing Angelone as a partner and the creation of a Hyper Engine bank account with Angelone listed as a signatory. Instead, the Court correctly concluded that those allegations more plausibly suggested that the Taylors did intend to form a partnership with Angelone when the alleged promise was made:

> "Where the facts pled indicate that there are two alternative explanations, only one of which would result in lability, '[Defendants]' cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render [defendants'] allegations plausible."

Dkt. 87, May 10, 2023 Order Granting in Part and Denying in Part Motions to Dismiss Counterclaims and Third Party Claims ("MTD Order"), p. 31 (internal citations omitted).

The only additional fact alleged in the FACC/FATPC that actually speaks to the Taylors' alleged intent and falsity of the claimed promise is a conclusory, non-specific allegation that, despite alleged assurances to Angleone that Hyper Engine was a joint venture, Angelone "learned through conversations with [unspecified] third parties that, without Darrick's knowledge, Deon would tell HEFG staff that Hyper Engine was actually owned by Deon and Roxanne only, and that ownership was split

- 6 -  Case No.: 2:22-cv-06515-MWF-AGR
PLAINTIFFS' MOTION TO DISMISS

50/50 between Deon and Roxanne." FACC, ¶ 91(a); FATCP, ¶ 89(a). This allegation is not only inconsistent with Defendants' numerous other allegations that the Taylors represented to other third parties that Angelone was a member of Hyper Engine (TACC, ¶ 92 (f)-(h); FATPC ¶ 90 (f)-(h), but is also missing the "who, what, when, where and how of the misconduct charged" that Fed. R. Civ. P. 9(b) requires to give Plaintiffs sufficient notice to defend against these allegations. *Vess v. Ciba- Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).

As a result, this conclusory allegation is legally insufficient to exclude the possibility that the Taylors were initially open to entering into a partnership with Angelone, but later changed their minds, in no small part because Angelone decided to take self-help measures in hijacking Plaintiffs' valuable intellectual property assets in an attempt to force the Taylors to consummate a Hyper Engine agreement that included Angelone. *Eclectic Props., supra* at 996-97. Because Defendants fail to allege intent and falsity, this claim fails and should be dismissed without leave to amend.

### B. Defendants Do Not Adequately Allege Justifiable Reliance

Justifiable reliance is another necessary element of a valid promissory fraud claim. *Grant*, 736 F. Supp. 2d at 1271 (citing *Downey Venture v. LMI Ins. Co*., 66 Cal. App. 4th 478, 510, 78 Cal. Rptr. 2d 142 (1998)) ("[B]oth estoppel and promissory fraud require proof that the party asserting the fraud or the estoppel justifiably relied on a promise or conduct by the party against whom the fraud or estoppel is asserted.") (emphasis in original)). Reliance means that the promise was made for the purpose of inducing the plaintiff to act or refrain from acting as a result of the promise. *Id.* When it granted Plaintiffs' Motion to Dismiss the Promissory Fraud claim, the Court found that in order to satisfy the element of justifiable reliance with the requisite level of specificity Defendants further amended pleadings would need to: (1) specify the precise actions Angelone took or refrained from taking based on the promise of partnership; (2) explain why those actions he took were justifiable in the absence of a

formal written agreement and in light of the parties' conversations; and (3) identify which services were undertaken in reliance on the alleged promise to form a partnership as opposed to for a fee as an independent contractor to Plaintiffs (and for which Defendants have already received substantial payments). MTD Order, pp. 31-32.

The FACC/FATPC does not satisfy a single one of those three requirements. Instead, Defendants merely insert a hodgepodge of additional conclusory, legally insufficient allegations that still fail for a lack of specificity. For example, at ¶ 91(c) Defendants surmise that the Taylors' failure to directly state to Angelone that he was not a member of Hyper Engine after Angelone hired an attorney to negotiate an operating agreement "indicates how Deon and Roxanne knew they would (and did) induce Darrick's reliance for years without ever recognizing his interest in Hyper Engine." And at ¶ 93, Defendants put forth the conclusory allegation that Defendants justifiably relied on the alleged promise because "Darrick and his company AOne spent years providing various services to Counter-Defendants and Roxanne, making himself available to Deon and Roxanne as a business partner and confidant throughout their tenure, and incurring extensive costs throughout the process."

This allegation is followed by a laundry list of projects Defendants allegedly worked on for Plaintiffs. But that list makes no attempt to distinguish between services Defendants performed as a contractor to Plaintiffs (for which Angelone was paid) and those allegedly undertaken in reliance of the promise of a partnership interest in Hyper Engine. *See* TACC ¶ 93(a)-(i); FATPC ¶ 91(a)-(i). Nor does the FACC/FATCP attempt to "explain why any actions [Angelone] took were justifiable in the absence of a formal written agreement and in light of the parties' conversations." MTD Order, p. 31. The Court should dismiss the promissory fraud claim without leave to amend for this independent reason.

## V. THE COURT SHOULD NOT PERMIT LEAVE TO AMEND

The district court is not required to grant leave to amend where it determines

that the pleading cannot possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F. 2d 242, 247 (9th Cir. 1990). Failure to correct specific defects identified in an order on a prior motion to dismiss is a recognized ground to dismiss a claim without leave to amend. *F.E. Trotter, Inc. v. Watkins*, 869 F. 2d 1312, 1318 (9th Cir. 1989) (no abuse of discretion where order on prior motion to dismiss identified specific defects which were not corrected). Again, the Court should dismiss the Promissory Fraud claim without leave to amend.

## VI. CONCLUSION

Based on the foregoing, Plaintiffs and Roxanne Taylor respectfully request that the Court grant these motions in their entirety, without leave to amend.

Dated: June 30, 2023　　　　　　　　**SANDERS ROBERTS LLP**

By:

*/s/ Lawrence Hinkle*
Lawrence Hinkle, Esq.
Stephanie Jones Nojima, Esq.
Attorneys for Plaintiffs
HIDDEN EMPIRE HOLDINGS, LLC;
HYPER ENGINE, LLC; AND DEON TAYLOR