J.T. Fox, Esq. (SBN 195063)
LAW OFFICES OF JT FOX & ASSOCIATES, APC
556 S. Fair Oaks Ave., No. 444
Pasadena, California 91105
Telephone: (888) 750-5530
Fax: (888) 750-5530
Email: jt@jtfoxlaw.com

Attorney for Defendants,
DARRICK ANGELONE;
AONE CREATIVE, LLC; and
ON CHAIN INNOVATIONS, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS LLC, a Florida limited liability company,<br><br>Defendants. | CASE NO. 2:22-cv-06515-RSWL-AGR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS FOURTH CAUSE OF ACTION FOR PROMISSORY FRAUD**<br><br>Hearing Date: July 31, 2023<br>Hearing Time: 10:00 AM<br>Dept: 5A<br><br>Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald |

TO THIS HONORABLE COURT AND TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:

COME NOW Defendants DARRICK ANGELONE ("Angelone") AONE CREATIVE LLC ("AONE"); and ON CHAIN INNOVATIONS LLC, a Florida limited liability company (hereinafter collectively referred to as "Defendants") and file their Opposition to Plaintiffs HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE, LLC, and DEON TAYLOR (collectively "Plaintiffs") and third-party defendant ROXANNE TAYLOR'S ("R. Taylor") (Plaintiffs and R. Taylor are collectively referred to herein as "the Taylors") Motion To Dismiss Fourth Cause Of Action For Promissory Fraud

This Opposition will be based upon the attached Memorandum of Points and Authorities, together with the records, papers, and files of the within matter and such other evidence both oral and documentary as may be presented at the time of the hearing of the Motion.

**DATED: July 6, 2023**            **LAW OFFICES OF JT FOX & ASSOCIATES**
                                 **A PROFESSIONAL CORPORATION**

**By:** *JT Fox*

**J.T. Fox, Esq.**
**Attorney for Defendants and**
**Counterclaimants, DARRICK**
**ANGELONE, AONE CREATIVE, LLC,**
**and ON CHAIN INNOVATIONS, LLC**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1
    I.    INTRODUCTION........................................................................................1
    II.   SPECIFIC ALLEGATIONS SUPPORTING A CAUSE OF ACTION FOR FRAUD........................................................................................................2
    III.  LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS...........5
    IV.  THE FOURTH CLAIM FOR PROMISSORY FRAUD IS CATEGORICALLY SUFFICIENT..............................................................5
    V.   LEAVE TO AMEND SHOULD BE GRANTED.............................................10
    VI.  CONCLUSION..........................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................5

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007) ................................................................................5

*Bowman v. Iddon*,
    848 F.3d 1034 (D.C. Cir. 2017) ..................................................................5

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ....................................................................6

*Cahill v. Liberty Mutual Insurance Co.*,
    80 F.3d 336 (9th Cir. 1996) ........................................................................5

*Daniels-Hall v. National Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) ......................................................................5

*Engalla v. Permanente Medical Group, Inc.*,
    15 Cal. 4th 951 (1997) ................................................................................6

*Grant v. Aurora Loan Servs., Inc.*,
    736 F. Supp. 2d 1257 (C.D. Cal. 2010) ......................................................6

*Hsu v. OZ Optics Ltd.,*
    211 F.R.D. 615 (N.D. Cal. 2002) ................................................................8

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ......................................................................7

*Magpali v. Farmers Group, Inc.,*
    48 Cal.App.4th 471 (1996) .........................................................................8

*Mier v. Owens*,
    57 F.3d 747 (9th Cir. 1995) ........................................................................5

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ..........................................................................6

*Smith v. Allstate Ins. Co.,*
    160 F.Supp.2d 1150 (S.D.Cal.2001) ..........................................................7

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ....................................................................5

*Universal Studios Int'l B.V. v. Entm't Television Network FZE*,
    No. 09-cv-01348-GAF-FFMX, 2009 U.S. Dist. LEXIS 134943,
    2009 WL 10675950 (C.D. Cal. Aug. 25, 2009) ................................................8

*Vess v. Ciba-Geigy Corp.
    USA*, 317 F.3d 1097 (9th Cir. 2003) .................................................................5

*W. Radio Servs. Co. v. Qwest Corp.*,
    678 F.3d 970 (9th Cir. 2012) ............................................................................7

**Rules**

Federal Rule of Civil Procedure 9(b)..........................................................................1, 6

Federal Rule of Civil Procedure 12(b)..........................................................................5, 7

Federal Rule of Civil Procedure 15 ...............................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In support of their Motion to Dismiss Fourth Cause of Action for Promissory Fraud ("Motion"), the moving parties have adopted the "bury my head in the sand" approach. That is, Plaintiffs ignore the addition of specific, detailed facts to the pleadings which directly support a claim for fraud, and at the same time attempt to shift the Court's focus on other parts of the pleading that, taken out of context, purportedly do not meet the requisite standard under Federal Rule of Civil Procedure 9(b).

Regrettably, Plaintiff's Motion is rendered meritless by a simple reading of the Fourth Counterclaim for Promissory Fraud, wherein each element is now factually and specifically alleged with detailed lists of supporting events, acts, and omissions by the Plaintiffs. Plaintiffs frame this as a "hodgepodge of facts", yet fail to meaningfully explain why or how such facts do not meet heightened pleading standards. In reality, the operative pleadings indicate how the Taylors, while making consistent promises of a partnership interest in Hyper Engine, concealed their true intent to defraud Angelone into providing his digital marketing services and expertise to the Plaintiffs for years. When noting the fact that Hyper Engine is a marketing company which relied exclusively on Angelone and his company for marketing services, it is more than just plausible that the Taylors sought to induce Angelone's provision of such marketing services by using the false pretense of a lucrative business interest in Hyper Engine.

Further, as to the element of justifiable reliance, the Promissory Fraud claim logically details the specific actions that Angelone took in reliance on the promise of a business interest in Hyper Engine. Operating under such impression, Angelone provided digital marketing and related services to the Taylors and Hyper Engine, which so happens to be a marketing company. Irrespective of the existence of a written operating agreement, Angelone justifiably relied on the prospect of a business interest in Hyper Engine because the Taylors consistently promised Angelone such an interest, and consistently did things to reassure Angelone of his interest. It is all plainly laid out in the pleadings.

This is Plaintiffs second attempt to dismiss Defendants' fraud claim, and like their last attempt is meritless, dilatory, and not based in reality. As will be argued in this Opposition, all facts and circumstances should lead the Court to deny Plaintiff's Motion to Dismiss on the merits.

## II. SPECIFIC ALLEGATIONS SUPPORTING A CAUSE OF ACTION FOR PROMISSORY FRAUD IN THE FACC/FATPC

The Taylors represented to Angelone on multiple occasions that Angelone was a partner and equal member of Hyper Engine, LLC, and thus entitled to a share in the company's profits and losses, as well as a share in the control and management of the company. See FACC ¶¶ 18-28, 30-34; FATPC ¶¶ 16-26, 28-32. The Taylors made representations to Angelone that he was a partner in Hyper Engine but knew they ultimately would not treat him as such, as evidenced by the following unequivocal acts:

a. Angelone learned through conversations with third parties that, without Angelone's knowledge, the Taylors would tell HEFG staff that Hyper Engine was owned by the Taylors alone and that ownership was split 50/50 between the Taylors.

b. Deon Taylor stated in a voice memo to Angelone dated April 8, 2022, that Hyper Engine was "not real", despite facts such as the company having a bank account and being registered as an LLC with the CA Secretary of State.

c. The Taylors were very hesitant and ultimately failed to validate Angelone's interest in Hyper Engine, even after he hired an attorney to negotiate his alleged membership interest in Hyper Engine.

d. The Taylors never equivocally stated to Angelone or any third parties that Angelone was not a partner in Hyper Engine, which is indicative of their intent to defraud and Angelone's induced reliance on a promise of a Hyper Engine partnership interest. *Id.* at ¶¶ 35, 91(a)-(c) (FACC); ¶33, ¶89(a)-(c) (FATPC).

The Taylors promised Angelone a one-third share in Hyper Engine to induce him to help develop Hyper Engine by providing digital marketing services and other benefits to

the Taylors. *Id*. at ¶ 92 (FACC); ¶90 (FATPC). The following facts are evidence of the Taylors intent to defraud:

    a.    The Taylors held out Angelone as a partner or member of Hyper Engine, and in doing so intentionally failed to inform several third parties, at least where Darrick was privy to the conversation, that Darrick was not a partner or member in Hyper Engine despite having numerous opportunities to do so.

    b.    The Taylors exclusively used AONE to conduct digital marketing services and help develop Hyper Engine, yet consistently failed to pay for such services.

    c.    The Taylors authorized AONE to create executive Hyper Engine business cards and a company email for Angelone, ostensibly to keep Darrick satisfied and trusting that Hyper Engine did include Darrick.

    d.    The Taylors contracted for and yet refused to memorialize in writing all the work Angleone and AOne performed for the Taylors following the creation of Hyper Engine.

    e.    R. Taylor acknowledged in an email dated March 6, 2018 that Hyper Engine was a "joint venture" including Angelone.

    f.    R. Taylor verbally confirmed Angelone's 1/3 (33%) ownership interest in Hyper Engine in a February 23, 2020 telephone conversation regarding the formation of Hyper Engine.

    g.    The Taylors authorized Angelone to act in the capacity of a Hyper Engine executive and execute contacts with third parties on behalf of Hyper Engine, without any objection from the Taylors.

    h.    The Taylors created a Hyper Engine debit card and bank account with Angelone listed as a signatory.

*Id*. at ¶¶ 31, 32, 35, 92(a)-(h) (FACC); ¶¶ 29, 30, 33, 90(a)-(h) (FATPC).

In reliance on the above misrepresentations, Angelone and his company AONE spent years providing various services to the Taylors, making themselves available as business partner and confidant and incurring extensive costs through the process. *Id*. at ¶

93 (FACC); ¶ 91 (FATPC). The services that Angelone performed in reliance of the Taylors' promise that Angelone was a partner in Hyper Engine include:

    a.    Developing and executing a marketing campaign and game for the HEFG "Fear" film.

    b.    Developing and executing marketing for a campaign, presently named "Be Woke Vote", to encourage voting across different political campaigns and promote political outreach.

    c.    Creating branding and digital infrastructure to distribute and market the HEFG series "Black History in Two Minutes (or so)"

    d.    Advancing up to $225,000 for digital marketing for each campaign or other projects that Angelone performed for the Taylors.

    e.    Creating and presenting slide decks to pitch Hyper Engine services to entertainment companies such as Sony Pictures Entertainment, Lionsgate Films, and Warner Brothers.

    f.    Creating and executing digital marketing and political outreach campaigns for the Taylors wherein AONE created a significant amount digital graphics and branding across social media, television, print, and other online digital media.

    g.    Creating and executing digital branding, web development, domain names, pitch decks, and other digital marketing for various endeavors and projects undertaken by Deon, Roxanne, HEFG, and clients referred to Darrick or AONE by the Plaintiffs and R. Taylor.

    h.    Developing a COVID-19 vaccine campaign to be executed by Hyper Engine with CDC grant money given to the Coalition of National Black Churches ("CNBC"), whereby AONE was engaged to advertise for the vaccine campaign, create pitch decks, perform copywriting, perform web development, register domain name(s), and conduct political advertising research, while creating and executing the digital strategies

*Id.* at 93(a)-(i) (FACC); ¶ 91(a)-(i) (FATPC).

The aforementioned reliance by Angelone was and is reasonable, in large part because Angelone was induced to and did continue his fidelity to the Taylors due to them knowingly leading Angelone to believe that he would be treated as a member of Hyper Engine, allowed a share in the control and management of Hyper Engine, and allowed a 33.33% share in the company's profits and losses. *Id*. at ¶ 94 (FACC); ¶ 92 (FATPC).

## III. LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS

To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010)

Moreover, a complaint survives a motion to dismiss even "[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (Even if the defendant believes that its version will "prove to be the true one . . that does not relieve defendant[ ]of [its] obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery.") Plaintiffs need only allege sufficient facts to cross "the line between possibility and plausibility". *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). A complaint may proceed even though proof seems improbable, or recovery is very remote and unlikely. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 167 (2007).

## IV. DEFENDANTS' FOURTH CLAIM FOR PROMISSORY FRAUD IS CATEGORICALLY SUFFICIENT

To plead promissory fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim. *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (citing *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843 (1997)) (stating that the elements of promissory fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage").

Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). "

As the operative pleadings illustrate, Defendants' Fourth Counterclaim for Promissory Fraud is beyond specific enough to give Plaintiffs notice of the particular misconduct they are being charged with. Indeed, it is plainly laid out in several lists that are accessible to any basic reader. See FACC ¶¶ 91-94; FATPC ¶¶ 89-92.

### A.   Intent and Falsity Are Pled With Overwhelming Specificity

Plaintiff's only real argument against the intent and falsity elements as alleged by Defendants is that Defendants have only included one additional fact. *See* Pl. Motion, p. 6, lines 23 to 28. Yet, the addition of this fact alone is more than sufficient to put Plaintiffs on notice of the particular misconduct they are being charged with. *See Bly-Magee v. California*, 236 F.3d at 1019. This is notwithstanding the fact that the operative pleadings are now fraught with specific and detailed allegations which render the Promissory Fraud claim plausible.

Specifically, the fact that Plaintiffs were telling their own staff behind closed doors that Angelone had no interest in Hyper Engine renders it more than just plausible that the Taylors sought to defraud Angelone and induce his reliance by the false promise of a business interest in Hyper Engine. *See* FACC, ¶ 91(a); FATCP, ¶ 89(a). Such a fact

directly indicates that, coinciding with their promises to Angelone that Hyper Engine was a "joint venture", the Taylors were confiding in others their true intent to defraud. Also, the fact that the Taylors represented to other third parties that Angelone was a member of Hyper Engine tends to demonstrate, rather than undercut, how the Taylors "intended to create the impression to Darrick that he really had an interest in the company", when he evidently did not. *See* FACC, ¶ 92(a); FATCP, ¶ 90(a)

Another defect in Plaintiffs' argument is their failure to explain at all what specific detail (who, what, when etc.) is missing from this allegation or other allegations of fraud in the operative pleadings. The Court should not be forced to do Plaintiff's work for them *See W. Radio Servs. Co. v. Qwest Corp.,* 678 F.3d 970, 979 (9th Cir. 2012).

This pitiful argument by Plaintiff is followed by a plainly inappropriate and irrelevant statement that Defendant Darrick Angelone ". . . decided to take self-help measures in hijacking Plaintiffs' valuable intellectual property assets in an attempt to force the Taylors to consummate a Hyper Engine agreement that included Angelone." *See* Pl. Motion, p. 7, lines 10 to 13. Not only is there zero proof of this irrelevant allegation, but it also does not appear anywhere in the FACC/FATPC or the record before the Court, and should simply be ignored as a matter of law. As Plaintiff should be aware, this ignores the well-known and time-tested rule that review on a motion to dismiss under FRCP 12(b)(6) is generally limited to the four corners of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Indeed, this is merely an attempt by Plaintiffs to unduly prejudice the Defendants by reference to an untrue and unrelated matter. Yet, it could just as easily be argued that (and it is more logical that) Defendant withheld intellectual property from Plaintiff based on their failure to pay Defendant for his services, much like a graphic designer could refuse to turn over a print or design they made because the customer has refused to pay. *See* FACC ¶¶ 45, 92(b); FATPC ¶¶ 43, 90(b).

In reality, as to the elements of intent and falsity, Defendants have alleged with overwhelming specificity "facts explaining why the statement was false when it was made". *See Smith v. Allstate Ins. Co.,* 160 F.Supp.2d 1150, 1152 (S.D.Cal.2001).

Specifically, ¶¶ 91-92 of the FACC and ¶¶ 89-90 of the FATPC, using detailed lists of specific facts, outline how Plaintiffs' representations were not only false when made, but also made with the intent to induce Angelone's reliance and fidelity to the Taylors. *See* Section II, above. The operative pleadings emphasize that, contemporaneous with their promises to Angelone that he was a partner in Hyper Engine, the Taylors would tell others that Angelone was not a partner despite holding him out as such. *Id.* All the while, the Taylors would periodically do things like create a company bank account, email account, and executive business cards for Angelone, ostensibly to keep Darrick satisfied and trusting that Hyper Engine did or would include Darrick as a partner. *See* FACC ¶ 92; FATPC ¶ 90.

The foregoing demonstrates the Plaintiffs' fraudulent scheme and "intent not to perform" their promise at the time it was made. *See Magpali v. Farmers Group, Inc.,* 48 Cal.App.4th 471, 481, (1996). Likewise, Defendants have consistently pled facts from which the Court can infer that the allegedly fraudulent statements were false when made. *See Universal Studios Int'l B.V. v. Entm't Television Network FZE*, No. 09-cv-01348-GAF-FFMX, 2009 U.S. Dist. LEXIS 134943, 2009 WL 10675950, at *3 (C.D. Cal. Aug. 25, 2009) (citing *Hsu v. OZ Optics Ltd.,* 211 F.R.D. 615, 620 (N.D. Cal. 2002). Indeed, Plaintiffs' knowing intent to deceive can be inferred from the very fact that Angelone functioned as a member and executive of Hyper Engine and was routinely held out as such by Plaintiffs to Hyper Engine and HEFG clients, yet at the same time Plaintiffs would exclude Darrick from important company discussions as a way to hide their deceitful intent. *See* FACC ¶¶ 31-33, 40; FATPC ¶¶ 29-31, 38. Plaintiffs' actions are far beyond mere nonperformance of a promise, as the new operative pleadings detail Plaintiffs' fraudulent scheme from inception until the start of this litigation. Thus, the Fourth Claim for Promissory Fraud is not subject to dismissal.

**B.     Justifiable Reliance is Adequately and Specifically Pled**

As to Defendants' allegations of justifiable reliance on the aforementioned representations, Plaintiffs apparently have ignored the pleading or failed to make a

rudimentary inference. In reality, the Promissory Fraud claim clearly indicates that the actions Angelone undertook in response to Plaintiffs' promises were done so in reliance on the assurance of a business interest in Hyper Engine. Obviously, that is why they appear in the claim for Promissory Fraud and not elsewhere.

But to explain it better, the reader is directed to ¶ 93 of the FACC and ¶ 91 of the FATPC, where it clearly states: "*in justifiable reliance on Deon and Roxannes' aforementioned representations*, Darrick and his company AONE spent years providing various services to Counter-Defendants and Roxanne, making himself available to Deon and Roxanne as a business partner and confidant throughout their tenure, and incurring extensive costs throughout the process." (emphasis added.)

The paragraph goes on to provide a list of said actions that Darrick undertook in reliance of the misrepresentations by Plaintiffs regarding Darrick's interest in Hyper Engine, which are set forth in ¶¶ 90-92 of the FACC and the body of the complaint. In addition to the clear language stating how these actions were undertaken in reliance on a partnership interest, one could easily infer that providing digital marketing services **for a marketing company** was done in reliance on a partnership interest in said company. *See* FACC ¶ 93(a)-(i); FATPC ¶91(a)-(i).

Moreover, Angelone's actions were justifiable because he was operating under the impression that he was a member in Hyper Engine and would be given the benefits thereof accordingly. *See* FACC ¶ 35; FATPC ¶ 33. The existence or non-existence of a written partnership or operating agreement is a red herring which completely ignores the FACC's detailed allegations that would lead any reasonable person to conclude that there was promise of a partnership. *See* Section II, above. In other words, there need not be a written agreement for someone in Angelone's position to think that there was a business interest reserved for him in Hyper Engine, because he was undeniably promised a partner or member role in Hyper Engine and operated in justifiable reliance on that belief.

The revised ¶¶ 92-94 of the FACC plainly and by inference explain how the actions taken by Angelone were justifiable in light of the Plaintiff's consistent oral and implied

promises, irrespective of the existence of a written agreement. Indeed, it states how "Roxanne acknowledged in an email dated March 6, 2018 that Hyper Engine is a 'joint venture' including Darrick, intending that Darrick continue his reliance and fidelity to the company based on such promises." FACC ¶ 92(e); FATPC ¶ 90(e). Further, "Deon and Roxanne created a Hyper Engine debit card and bank account with Darrick listed as signatory, of which Darrick was first notified verbally, in order to further induce Darrick's reliance." FACC ¶ 92(h); FATPC ¶ 90(h).

These specific events are not happenstance. The pleadings explain in excruciating detail how Angelone, like any reasonable person, was led to the justifiable belief that his reliance in the form of providing services to Plaintiffs and Hyper Engine would one day pay off in the form of part business ownership.

Likewise, all of the actions undertaken by Angelone fall under the umbrella of digital marketing or related services, which is the express stated purpose of Hyper Engine. If Angelone wasn't performing such digital marketing services in reliance on a partnership interest in the company, then it begs the question – why was he doing it? Why engage in years of providing digital marketing services and incurring hundreds of thousands of dollars if Darrick did not believe he had an interest in a potentially lucrative business endeavor with a film studio? It all boils down to common sense.

## V. LEAVE TO AMEND SHOULD BE GRANTED

Generally, district courts should liberally grant motions to amend the pleadings under Fed. Rule Civ. Proc. 15. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) (stating that leave to amend should be granted with "extreme liberality").

Here, in the event that Plaintiffs' Motion is granted, this Court should grant Defendants leave to amend because any alleged defect can easily be cured by allegation of other facts, and because there has been no bad faith on Defendants' part. Leave to amend is especially warranted here in light of the fact that this is only the second time that this Court will consider the sufficiency of Defendants' pleadings and it is limited to only one counterclaim.

## VI. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court deny Plaintiffs' Motion to Dismiss Fourth Cause of Action For Promissory Fraud. In the alternative, Defendants respectfully request that this Court grant Defendants leave amend their Fourth Amended Counterclaims and First Amended Third-Party Complaint against Roxanne Taylor.

Dated: July 6, 2023          LAW OFFICES OF J.T. FOX & ASSOCIATES,
                             A Professional Corporation

By: _/s/ JT Fox_____

**J.T. Fox, Esq.**
**Attorney for Defendants and Counterclaimants, DARRICK ANGELONE; AONE CREATIVE, LLC, AND ON CHAIN INNOVATIONS, LLC**