UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

---

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**    ORDER DENYING MOTIONS TO DISMISS CLAIM FOR PROMISSORY FRAUD [93][94]

    Before the Court is Cross Defendants Hidden Empire Holdings, LLC, Hyper Engine, LLC, and Deon Taylor's Motion to Dismiss the Fourth Amended Counterclaim for Promissory Fraud, and Third-Party Defendant Roxanne Taylor's Motion to Dismiss the First Amended Third Party Claim for Promissory Fraud, both filed on June 30, 2023. (Docket Nos. 93 and 94). Counterclaimants Darrick Angelone, AONE Creative, LLC, AONE Entertainment, and On Chain Innovations, LLC, filed Oppositions on July 6, 2023. (Docket Nos. 95 and 96). Replies were filed on July 17, 2023. (Docket Nos. 97 and 98).

    The Motion was noticed to be heard on July 31, 2023. The Court read and considered the papers submitted in connection with the Motions and deems the matter appropriate for decision without oral argument. Therefore, the hearing is hereby **VACATED** and removed from this Court's calendar. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.

    Because the Motions advance the same arguments, the Court refers collectively to the motions as the "Motion" and exclusively cites to the Fourth Amended Counterclaims ("4ACC") as the operative pleading, but the rulings herein are applicable to both motions. Also, the Court refers to the moving parties collectively as "the Taylors" and to Counterclaimants as "Angelone."

---

**CIVIL MINUTES—GENERAL**                               1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)			Date:  July 26, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

The Motion is **DENIED.**  Angelone has cured the previously identified deficiencies and has now pled a promissory fraud claim with sufficient specificity and plausibility to survive dismissal at the pleading stage.

I.      BACKGROUND

   A.      Prior Order

The Court previously summarized the facts of this action in its Order Granting in Part and Denying in Part the Taylors' Motion to Dismiss All Counterclaims and Third Party Claims.  ("Prior Order" (Docket No. 87)).  The Court incorporates by reference the Background section of the Prior Order as if fully set forth herein.

In the Prior Order, the Taylors moved to dismiss all eleven claims asserted against them, which the Court partially granted and partially denied.  In relevant part, the Court denied the prior motion as to the breach of implied and/or oral contract premised on an alleged oral agreement entered on December 19, 2019, pursuant to which the parties agreed that Angelone would receive 33.33% and the Taylors each received 33.33% ownership of a digital marketing company, Hyper Engine, and that "all other material terms" would be in accordance with the terms of an unsigned Operating Agreement.

For reasons discussed in the Prior Order, the Court explained that the alleged facts led to two plausible explanations: either the parties entered an enforceable partnership agreement, or they agreed to enter a partnership agreement in the future. While only the former agreement constitutes an enforceable contract, and the Court acknowledged that "it may be case that the evidence establishes at best an agreement to agree was formed," certain of the alleged facts "nudge[d] [Angelone's] theory over the line of plausibility and suggest[ed] an agreement to form a partnership concerning Hyper Engine materialized despite the failure to formalize a written agreement."  (*Id.* at 17–18).  For example, Angelone alleged that the Taylors created a Hyper Engine bank account, on which Angelone is listed as signatory; the parties created Hyper Engine executive business cards for the Taylors and Angelone; in pitch decks for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Hyper Engine, Angelone was listed as the Chief Technology Officer; and Angelone sent invoices and communications to third-party clients on Hyper Engine's behalf. (*Id.*) (citing Third Amended Counterclaims ("TACC") ¶ 29). The Court concluded that those facts gave rise to a plausible inference of an agreement to carry on the Hyper Engine business as partners.

In other relevant part, the Court dismissed Angelone's promissory fraud claim with leave to amend. The Court explained that the heart of Angelone's claim was that the Taylors promised to enter into a written profit-sharing, partnership agreement but never had any intention of following through with that promise. The Court concluded, however, that the elements of intent, falsity, and reliance were insufficiently pled.

As for intent and falsity, the Court noted that the most specific fact Angelone pointed to as demonstrating the Taylors' intent not to perform at the time they made the promise was a voice memo sent to Angelone by Deon Taylor in April 2022, stating that the Hyper Engine agreement is "not real." (Prior Order at 30) (citing Prior Opposition at 18). But the Court concluded that fact alone was insufficient to demonstrate that the Taylors had no intention of performing at the time the promise was made (nearly three years earlier).

The Court also questioned the plausibility of the allegations, given the other alleged facts (e.g., the existence of a Hyper Engine bank account with Angelone as a signatory) seemed to make it more plausible that the Taylors did intend to form a partnership with Angelone at the time the promise was allegedly made. The Court explained that where the facts as pled indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." (*Id.* at 31) (citing *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014)). Therefore, without additional supporting facts, the Court concluded that the elements of intent and falsity were insufficiently pled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Further, the Court concluded that the element of justifiable reliance was insufficiently pled because Angelone did not specify the precise actions he took or refrained from taking based on the promise of partnership (as opposed to those actions taken as an independent contractor) and he did not explain why any actions he took were justifiable in the absence of a formal written agreement and in light of the parties' conversations.

Accordingly, the Court dismissed the claim for promissory fraud with leave to amend.

**B.**     **New Allegations in the Amended Counterclaims**

In the Fourth Amended Counterclaims ("4ACC"), Angelone alleges the following facts as further support for the intent and falsity elements of a promissory fraud claim:

- The Taylors would "repeatedly assure" Angelone Darrick that he was a member in Hyper Engine and that Hyper Engine was a "joint venture" and/or "partnership;"

- Angelone "learned through conversations with third parties that, without [Angelone's] knowledge, [the Taylor's] would tell [Hidden Empire] staff that Hyper Engine was actually owned by [the Taylors] only, and that ownership was split 50/50 between Deon and Roxanne;"

- Deon Taylor stated in a voice memo to Angelone, dated April 8, 2022, that Hyper Engine was "not real", which "goes to show that Deon and Roxanne never intended to operate a business with [Angelone] as a partner or member"(as was previously alleged);

- The Taylors "were very hesitant and ultimately failed to validate Darrick's partnership interest, even when [Angelone] hired an attorney, despite [the Taylors] reassurances that [Angelone] was a member of Hyper Engine;"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 22-6515-MWF (AGRx)     **Date:**  July 26, 2023
**Title:**  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

- When Angelone "was privy to the conversation," the Taylors "intentionally failed to inform several third parties "that [Angelone] was not a partner or member in Hyper Engine despite having numerous opportunities to do so," which was allegedly done "to create the impression to [Angelone] that he really had an interest in the company;"

- Though utilizing Angelone's services for years, which he expressly told the Taylors he was doing "in consideration for" his partnership interest, the Taylors for years "refused to memorialize in writing all of the work [Angelone] performed . . . following the creation of the Hyper Engine LLC."

(4ACC ¶¶ 91–92).

Angelone also alleges that he took the following steps in reliance on the promise of a partnership interest in Hyper Engine:

- Developing and executing a marketing campaign and game for the Hidden Empire "Fear" film (which he allegedly spent around $260,000.00 developing);

- Developing and executing marketing for a campaign, presently named "Be Woke Vote", to encourage voting across different political campaigns and promote political outreach;

- Creating branding and digital infrastructure to distribute and market the Hidden Empire series "Black History in Two Minutes (or so);"

- Advancing up to $225,000 for digital marketing for each campaign or other projects that Angelone performed for the Taylors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

- Creating and presenting slide decks to pitch Hyper Engine services to entertainment companies such as Sony Pictures Entertainment, Lionsgate Films, and Warner Brothers;

- Creating and executing digital marketing and political outreach campaigns for the Taylors wherein Angelone created a significant amount digital graphics and branding across social media, television, print, and other online digital media;

- Creating and executing digital branding, web development, do pitch decks, and other digital marketing for various endeavors and projects undertaken by Deon, Roxanne, Hidden Empire, and clients referred to [Angelone] or AONE by the Taylors;

- Developing a COVID-19 vaccine campaign to be executed by Hyper Engine with CDC grant money given to the Coalition of National Black Churches ("CNBC"), whereby AONE was engaged to advertise for the vaccine campaign, create pitch decks, perform copywriting, perform web development, register domain name(s), and conduct political advertising research, while creating and executing the digital strategies.

(*Id.* ¶ 93(a)–(i)).

The listed provided above is also distinguished from seven invoices for administrative expenses like email server management, database backups, plugin updates, etc., that Angelone allegedly paid, for which he seeks reimbursement through his quantum meruit claim. (*See id.* ¶ 60(a)–(g)).

Angelone also adds a host of allegations regarding the Taylors' diversion of funds from Hyper Engine accounts to projects for which Hyper Engine was not engaged or paid for. (*Id.* ¶ 85(a)–(l)) (listing specific projects for which Hyper Engine funds were allegedly diverted). And finally, Angelone adds certain specificity to his previous allegations concerning the reason why he often would agree to "advance[]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 22-6515-MWF (AGRx)          Date: July 26, 2023
Title: Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

significant funds" on behalf of Hyper Engine. (*See id.* ¶ 57). Angelone alleges, on information and belief, that the Taylors "had been repeatedly rated as not credit worthy from vendors who were necessary for the parties to conduct business." (*Id*). Angelone explains that this belief "is based in part on the fact that Deon and Roxanne's home was foreclosed by a bank in 2017, that [the Taylors] have multiple IRS tax liens, and that [the Taylors] were limited to the use of secured credit cards that could not exceed a few thousand dollars, while [Angelone] was spending well above tens of thousands of dollars in the operation of [Hidden Empire] and Hyper Engine." (*Id.*).

The Taylors now move to again dismiss the promissory fraud claims, arguing that Angelone failed to cure the previously identified deficiencies.

## II.    LEGAL STANDARD

In ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008) (holding that a plaintiff had plausibly stated that a label referring to a product containing no fruit juice as "fruit juice snacks" may be misleading to a reasonable consumer). The Court need not accept as true, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court, based on judicial experience and common-sense, must determine whether a complaint plausibly states a claim for relief. *Id.* at 679.

"Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)." *Glen Holly Ent., Inc. v. Tektronix, Inc*., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that, when averments of fraud are made, the circumstances

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted). This includes "the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks and citation omitted). In fraud cases, plaintiffs "must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

## III. DISCUSSION

"Promissory fraud is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377 (1996). To plead promissory fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim. *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974, 64 Cal. Rptr. 2d 843 (1997)) (stating that the elements of promissory fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage").

***Justifiable Reliance***: The Court first deals with the element of justifiable reliance because the Court can readily conclude that Angelone has sufficiently cured the deficiencies with regard to that element. The Court previously instructed Angelone to differentiate between the services he allegedly provided as an independent contractor as opposed to those provided as alleged consideration for the promise of partnership in Hyper Engine. The Taylors argue that Angelone has failed to do so, but the Court disagrees. Angelone details seven specific invoices for services that were provided as an independent contractor and that form the basis of his quantum meruit claim. (*See* 4ACC ¶ 60(a)–(g)). Those invoices detail administrative expenses for routine technology maintenance. On the other hand, the actions and expenses

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)					Date:  July 26, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Angelone allegedly incurred based on the promise of partnership involve creative services, such as creating marketing materials for various of the Taylors' film projects, like a video game for the movie "Fear" and a campaign for the "Be Woke" project, among others.  (*See id.* ¶ 93(a)–(i)).  The list of actions taken and expenses incurred based on the alleged promise of partnership is sufficiently specific to demonstrate how Angelone acted in reliance on the promise.

Contrary to the Taylors' argument, the allegations alleged in support of the promissory fraud claims in the TACC did not detail the specific actions Angelone took in reliance of the partnership.  (*Compare* TACC ¶¶ 107–117 *with* 4ACC ¶ 93(a)–(i)).  While some of the same allegations may have appeared sporadically throughout the TACC and as support for other claims, Angelone has now made clear which allegations support which claims, and that was precisely what the Court instructed Angelone to do in an amended pleading.  (*See* Prior Order at 32); *see also Wagner v. First Horizon Pharma. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006) (explaining that a complaint was deficient because it "did not clearly link any of [the supporting] facts to its causes of action").  While the Eleventh Circuit suggested that ordering a more definitive pleading under Rule 12(e) may be more appropriate than dismissal as a remedy for such a deficiency, either way the result is the same in that the party is given an opportunity to articulate its theories more clearly, and the amended complaint must be judged on its own terms.

The Taylors also argue that Angelone has not sufficiently alleged how his reliance was justifiable.  The Court again disagrees.  Angelone has now more clearly demonstrated how the Taylors' actions directly led to his reliance.  Angelone explains that the Taylors' repeated assurances that a partnership agreement would be formalized and the various actions they took that seemed consistent with the formation of partnership (i.e., the creation of a Hyper Engine bank account with Angelone as a signatory) led Angelone to believe that the Taylors' were sincere in their promise.  The Court concludes that such allegations are sufficiently alleged and articulated at this stage.  *See Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239, 44 Cal. Rptr. 2d 352 (1995) ("Except in the rare case where the undisputed facts leave no room for a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

---

reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.") (internal citation omitted); *see also UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, No. CV 14-3466-MMM (JPRx), 2015 WL 12746208, at *16 (C.D. Cal. Oct. 30, 2015) ("The fact that a promise concerns the future formation of a contract does not make reliance on the promise unjustifiable as a matter of law if no contract is ever executed[.]") (collecting cases).

In the Reply, the Taylors argue that Angelone's justifiable reliance argument is circular because he alleges that the Taylors repeatedly assured Angelone yet also repeatedly refused to reduce the agreement to writing. (Reply at 4-5). However, the argument can cut both ways as the repeated assurances make the refusal to actually execute the agreement appear more questionable and could have been specifically intended to induce reliance.

*Intent and Falsity*: At the outset the Court notes that there is some ambiguity in the briefing and Prior Order about whether the previously identified deficiencies with the promissory fraud claim were premised on Rule 8's plausibility standard or Rule 9(b)'s specificity requirement. That ambiguity stems from the nature of a promissory fraud claim itself — for which the lack of specific allegations tends to make the claim less plausible.

In other words, Angelone's previous failure to allege facts tending to show that the Taylors harbored an intent not to perform at the time they promised to enter a partnership with Angelone necessarily implicated both the plausibility and specificity requirements. Under Rule 9(b), intent can be generally averred but the element of falsity must be specifically alleged. The difficulty in a promissory fraud claim, however, is that what makes the promise false is the intention not to perform. And so, as the Court explained in the Prior Order, pleading falsity with the requisite specificity under Rule 9(b), requires alleging sufficient facts tending to demonstrate that the Taylors never intended to perform (as opposed to a mere failure to perform). But of course, the more specific facts alleged that tend to demonstrate falsity, the more plausible the allegations regarding intent not to perform will be. Therefore, in a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)	Date:  July 26, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

promissory fraud claim, because the falsity and intent elements tend to converge, so too do the plausibility and specificity requirements.  Therefore, the Court continues to simultaneously assess whether Angelone has alleged enough facts to render the claim both sufficiently specific and plausible.

The California Supreme Court has explained that mere non-performance of a promise is insufficient to demonstrate intent not to perform at the time the promise is made.  *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30, 216 Cal. Rptr. 130 (1985) (rejecting notion that "proof that a promise was made and that it was not fulfilled is sufficient to prove fraud").  The *Tenzer* court stated, however, that fraudulent intent may be "inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform."  *Id.* (internal citations omitted).

Whether Angelone has now sufficiently alleged the elements of intent and falsity is a close call.  In the Prior Order, the Court explained that the only specific fact Angelone pointed to as demonstrating falsity (and thereby intent) was that Deon Taylor sent Angelone a voice memo, only after tensions had already reached a boiling point, claiming Hyper Engine was "not real."  (Prior Order at 30).  The Court was not convinced that that single fact was sufficient to demonstrate that the Taylors did not intend to enter a partnership at the time they agreed to form a partnership three years earlier in 2019.

But, in the 4ACC, Angelone alleges additional facts tending to demonstrate falsity and more clearly articulates the circumstances constituting fraud by connecting previously alleged facts to an overall scheme by the Taylors.

As for new allegations, both sides recognize that the most salient new allegation in the 4ACC is that the Taylors "were telling their own staff behind closed doors that Angelone had no interest in Hyper Engine," "coinciding with their promises" to Angelone that they were partners in Hyper Engine.  (Opposition at 6–7).  This fact does tend to corroborate Angelone's suggestion that Deon Taylor's 2022 voice memo

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

indicating that Hyper Engine is "not real," could actually reflect Deon Taylor's belief that the promise of partnership was *never* real.

     Indeed, when viewing the "not real" statement alongside the allegation that the Taylors have previously made statements to their staff that Angelone is not a partner in Hyper Engine, the former comment does tend to look like a statement along the lines of "I knew it all along," which the Ninth Circuit has suggested might suffice to specifically allege the circumstances of fraud under Rule 9(b). *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 n.9 (9th Cir. 1994) *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(1)). Therefore, the new allegation concerning statements made to others disconfirming Angelone's ownership is indeed a fact, taken as true, that tends to make the allegation of falsity more specific and the allegation of intent more plausible.

     The Taylors argue that the allegation that they told staff that Angelone is not a partner in Hyper Engine is missing the "who, what, when, where, and how of the misconduct charged." (Motion at 7; Reply at 3). It is true that the new allegation does not specify precisely "who" told Angelone this information and precisely "when." However, Angelone does specify that the "who" is Hidden Empire staff, and it is a reasonable inference based on the allegations that that the "when" is contemporaneous with the alleged reassurances of partnership. Moreover, Rule 9(b) does not require that each and every allegation detail the "who" and the "when;" rather, it is the overall fraudulent scheme that must be specifically detailed.

     Here, the particulars of the scheme are specified. The Taylors are the "who;" the "what" is the promise of partnership despite an intention not to perform; the "when" is the December 2019 promise; the "where" is through an oral conversation and telephone calls; and the allegation that the Taylors told others that Angelone was not a partner in Hyper Engine is an allegation tending to show "how" the statement is false. To require each allegation to individually meet the "who, what, when, where, and how" standard would compound Rule 9(b)'s specificity requirement, and at least in this action, seems unnecessary to put the Taylors on notice of the charged misconduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

In other words, that the Taylors allegedly told Hidden Empire staff that Angelone was not a partner is just one fact, that must be viewed in connection with other facts that also tend to make the allegations of intent and falsity sufficiently specific and plausible. Angelone also points out that the Taylors "repeatedly assur[ed]" him that they would formalize a partnership agreement and repeatedly failed to correct his understanding that he was in fact a partner. (4ACC ¶¶ 91(a), 97). Angelone argues that those reassurances and failures to correct his understanding of the situation, coupled with their hesitance and eventual refusal to formalize the partnership in writing, evinces a scheme in which the Taylors purposefully intended to make Angelone believe and act in reliance on the promise of partnership, despite a secretly harbored intent by the Taylors to never enter such a partnership. (Opposition at 8).

Other courts interpreting the California Supreme Court's opinion in *Tenzer* have viewed allegations of "repeated assurances" and failures to correct the promisee's understanding, in the face of non-performance, were sufficient to support a promissory fraud claim at the pleading stage. *See UMG*, 2015 WL 12746208, at *15 (citing cases). Indeed, in *UMG*, another district court concluded on similar facts that the counterclaimants had cured previously deficient pleadings regarding a promissory fraud claim with respect to the elements of intent and falsity in large part because of allegations that the plaintiffs offered "continued assurances in the face of non-performance." *Id*. There, providers of in-flight entertainment on airlines plausibly alleged a promissory fraud claim against certain record companies and music composers based on a promise to enter a license agreement because the record companies and composers allegedly offered "repeated inaccurate or misleading assurances over the years" and failed "ever to correct any of [the counterclaimant's] understandings about what it was expecting" in terms of an eventual written agreement. *Id*. at 15, n.132.

Here too, Angelone alleges "repeated assurances" from the Taylors. (*See* 4ACC ¶ 91(a); *see also id.* ¶ 31(i) (alleging that Roxanne Taylor verbally confirmed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

partnership and ownership split in Hyper Engine on a telephone discussion on February 23, 2023); *id.* ¶ 31(l) (alleging that Angelone was present at annual meetings for Hyper Engine, during which written meeting minutes were recorded, on May 21, 2018, February 4, 2019, and January 30, 2020, and during which the parties would discuss the Hyper Engine partnership); *id.* ¶ 32(a) (alleging Deon Taylor sent an email to Warner Brothers referring to himself, Roxanne, and Angelone as the "Hyper Engine team"); *id.* ¶ 32(d) (alleging that a press release listed Angelone as Creative Director of Hyper Engine).

Angelone further alleges numerous instances where the Taylors were aware or copied on communications in which he referred to himself or was referred to by others as an executive/partner of Hyper Engine and such representations were never corrected. (*See id.* ¶ 31(c) (referring to an email sent to Roxanne on March 6, 2018, explaining that he would drop the balance for costs of certain work "as consideration toward our joint venture Hyper Engine" to which Roxanne responded: "Got it"); *see id.* ¶ 31(n) (alleging instances in which Angelone executed contracts on behalf of Hyper Engine on emails where Roxanne Taylor was copied). These allegations specifically demonstrate how the Taylors offered repeated assurances despite the fact that no written agreement was ever signed over the course of several years. Like the court in *UMG*, the Court concludes such facts bolster the allegation of intent and falsity. *See* 2015 WL 12746208, at *15; *see also Jacobs v. Sustainability Partners LLC*, No. CV 20 -01981-PJH, 2020 WL 5593200, at *15 (N.D. Cal. Sept. 18, 2020) (concluding that the defendant's "repeated assurances" of an ownership stake in a company in exchange for the plaintiff's work for and provision of personal resources "coupled with the failure to actually reduce the agreement to writing plausibly [met] the intent element" of a promissory fraud claim).

Courts have also considered a party's failure to even attempt performance as circumstantial evidence of an intent not to perform at the time the promise was made. *See, e.g., Hamilton v. Willms*, No. CV F 02–6583, 2005 WL 3143712, at *9 (E.D. Cal. Nov. 22, 2005) ("The failure to even attempt performance is circumstantial evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-6515-MWF (AGRx)					Date:  July 26, 2023
Title:  Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

that Willms never intended to perform."). The allegations in the 4ACC again can cut both ways regarding whether the Taylors ever attempted to perform.

In the Prior Order, the Court viewed some of the actions the Taylors took, such as opening a Hyper Engine bank account and drafting a proposed operating agreement, as tending to more plausibly suggest that the Taylors did in fact enter a partnership with Angelone. The Court continues to view that version of the facts as quite plausible.

But, considering Angelone's allegation that the Taylors simultaneously told Hidden Empire staff that he was not a partner as they took such actions, the actions could alternatively be viewed as evincing a scheme to quell Angelone's suspicions, as Angelone suggests. Ultimately, whether the Taylors' actions show an attempt to perform (or performance itself) depends on the level of generality with which one defines what the Taylors promised. If the promise itself is framed as a promise to specifically reduce the partnership to writing, the unexplained refusal to actually reduce the agreement to writing despite repeated attempts and pressure from Angelone, all while accepting the benefits of his services, could itself be viewed as evidence that the Taylors never in good-faith attempted performance. *See, e.g., J2 Cloud Servs., Inc. v. Fax87*, No. 13-05353-DDP (AJWx), 2016 WL 6833904, at *3 (C.D. Cal. Nov. 18, 2016) ("While Fani and MJF's initial compliance [i.e. steps taken towards fulfilling contractual terms] may cut against an ultimate finding of fraudulent intent, that issue is not suitable for resolution at the motion to dismiss stage."); *see also Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 597–98 (N.D. Cal. 2022) (concluding that the plaintiff sufficiently alleged promissory fraud based on a promise to enter a formal contract where the plaintiff "drew up terms sheets and contracts" but the defendant "refused to approve the terms" while continuing "to insist that the promises he made during contract negotiations would be fulfilled").

And although not emphasized by the parties, another fact that tends to bolster the plausibility of such a scheme is the Taylors' alleged financial difficulties at the time of the alleged partnership formation. *See Tenzer*, 39 Cal. 3d at 30 (noting that a party's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)         **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

insolvency can evince intent not to perform a promise). This fact could help provide the "motive" – i.e., why the Taylors would act in ways consistent with the existence of a partnership while also harboring an intent not to perform (and therefore makes such a scheme more plausible). *See, e.g., Pac. Contours Corp. v. Fives Machining Sys., Inc.*, No. SA CV 18-00413-DOC (JDEx), 2018 WL 6204579, at *6 (C.D. Cal. Oct. 29, 2018), *R&R adopted*, 2018 WL 6198461 (C.D. Cal. Nov. 28, 2018) (concluding that allegations that "support a motive - a reason why [the defendant] would enter into [an agreement] [] with no intention of performing" made the plaintiff's allegations of intent and falsity sufficiently plausible).

Here, if the allegations concerning the Taylors' financial difficulties and difficulties in obtaining credit are true, it is plausible that the Taylors promised partnership to Angelone, not based on a genuine desire to collaborate (and a subsequent change of heart), but instead, as a necessary means of obtaining crucial financing and services without needing to provide Angelone or other vendors with upfront payment. And Angelone's allegations regarding the costs and financing that he advanced are more specifically alleged in the 4ACC. As noted, Angelone has now detailed specific and extensive actions he took based on a belief that he would share in the profits of the Hyper Engine partnership. (*See* 4ACC ¶ 93(a)–(i)). Such allegations tend to corroborate intent and falsity because they reveal that the Taylors were knowingly benefitting from Angelone's belief in the promise of partnership, and therefore, tend to make the Taylors' refusal to reduce the agreement to writing more dubious.

The Taylors argue that the facts, as alleged, still do not exclude the possibility that they were initially open to entering into a partnership with Angelone, "but later changed their minds, in no small part because Angelone decided to take self-help measures in hijacking Plaintiffs' valuable intellectual property assets in an attempt to force the Taylors to consummate a Hyper Engine agreement that included Angelone." (Motion at 7). In response, Angelone argues that such accusations are premised on facts outside of the 4ACC, and therefore, must be ignored for purposes of this Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

But the 4ACC does explain that starting around April 2022, Angelone refused to provide Hidden Empire with access to certain online accounts and intellectual property. (4ACC ¶ 42). Angelone justifies such actions based on allegations that the Taylors were never entitled to such property. (*Id.* ¶¶ 43–49). Regardless of what inferences could be drawn from the facts allegedly occurring after April 2022, the fact that the Taylors *now* may have a reasonable explanation for changing their minds as to a partnership with Angelone, does not render Angelone's promissory fraud claim implausible.

Angelone alleges facts that suggest the Taylors demonstrated their intent not to enter the partnership before Angelone cut off access to their accounts. For instance, Angelone alleges that he started to be excluded from management discussions as early as April 2021. (*Id.* ¶ 40). Also, in an email predating Angelone's refusal to provide the Taylors with account access, Angelone's attorney followed up with an executive of Hidden Empire as to the status of an agreement, and the executive responded stating that Hidden Empire was not ready to "engage in any discussion" regarding such formalization — despite the fact that as alleged, the Taylors had already promised such formalization. (*Id.* ¶ 42). Therefore, any events that transpired in April 2022 and thereafter do not explain the failure to formalize the agreement in writing at any point between the alleged December 2019 promise and April 2022.

In sum, the new allegations (and more clearly articulated arguments) set forth by Angelone are sufficient to establish a tie between the two versions of events. Perhaps the Taylors' actions were consistent with a mutual implied or oral agreement to carry on as partners (as the Court previously concluded). Or perhaps the Taylors' actions were intended to give Angelone false security and induce his reliance without ever intending to form an official partnership (as is now also plausibly alleged). If the parties only agreed to agree in the future, then no binding contract was ever formed, and if Angelone can prove intent, the claim will sound in promissory fraud. Indeed, promissory fraud is often used to obtain remedies for a bad-faith promise to enter a contract in the future that is unenforceable as a contract itself. *See, e.g., Gauba v. Florence Hosp., LLC*, No. CV 12-02439-PHX (DGCx), 2013 WL 614572, at *3 (D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-6515-MWF (AGRx)          **Date:** July 26, 2023
**Title:** Hidden Empire Holdings, LLC et al v. Darrick Angelone et al

Ariz. Feb. 19, 2013) (noting promissory fraud claim was appropriate where it was "not yet clear whether an enforceable contract exist[ed]" though it appeared that promises had been made to enter a contract); *Sons v. McManis*, No. CIV F 08–0840, 2009 WL 29870, at *3 (E.D. Cal. Jan. 5, 2009) (similar); *UMG*, 2015 WL 12746208, at *12 (similar).

    At this point, because both theories appear plausible, the tie must go to Angelone. *See Eclectic Props.*, 751 F.3d at 999 n. 8 (explaining that when an obvious alternative explanation for a series of events offered by the defendant renders the plaintiff's theory implausible, more facts that tend to exclude the defendant's theory will be needed to satisfy Rule 8, but "when there are multiple plausible theories" the "tie goes to [the] plaintiff" at the pleading stage).

    Accordingly, the Motion is **DENIED**. Angelone has adequately pled a promissory fraud claim in the alternative to his contract claims. The Court emphasizes, however, that the promissory fraud claim must be pursued in the alternative to the contract claims because the claims are mutually exclusive.

    The Taylors shall answer the 4ACC and Amended TPC by no later than **August 9, 2023.**

    IT IS SO ORDERED.