LAWRENCE HINKLE (SBN 180551)
lhinkle@sandersroberts.com
STEPHANIE JONES NOJIMA (SBN 178453)
sjonesnojima@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for Plaintiffs and Counterclaim Defendants
**HIDDEN EMPIRE HOLDINGS, LLC; HYPER ENGINE, LLC; DEON TAYLOR; AND THIRD-PARTY DEFENDANT ROXANNE TAYLOR**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company, <br><br> Defendants. | **CASE NO.  2:22-cv-06515-MWF-AGR** <br><br> Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald <br><br> **DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS FOR (1) VIOLATING COURT ORDER [CONTEMPT] AND (2) SPOLIATION OF EVIDENCE** <br><br> [Submitted concurrently with Notice of Motion and Motion; Compendium of Evidence; Request for Judicial Notice; Declarations of Alex Izen, Roxanne Avent Taylor, and Lawrence C. Hinkle, II; and [Proposed] Order] <br><br> Date:  March 4, 2024 <br> Time:  10:00 a.m. <br> Courtroom:  5A |
| DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company <br><br> Counterclaimants, | |

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIDDEN EMPIRE HOLDINGS, LLC;
a Delaware limited lability company;
HYPER ENGINE, LLC; a California
limited liability company; DEON
TAYLOR, an individual,

Counterclaim
Defendants,

DARRICK ANGELONE, an individual;
AONE CREATIVE LLC, formerly
known as AONE ENTERTAINMENT
LLC, a Florida limited liability
company; ON CHAIN INNOVATIONS
LLC, a Florida limited liability
company,

Third-Party Plaintiffs,

v.

ROXANNE TAYLOR, an individual,

Third-Party Defendant

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

**DECLARATION OF ERIN BURKE**

I, Erin Burke, declare as follows:

1.    I am over the age of 18 years and am employed as a Director in cybersecurity practice at FTI Consulting, Inc. ("FTI"), a business consultancy firm that specializes in corporate finance and restructuring, economic consulting, forensic and litigation consulting, strategic communications and technology. I have been employed by FTI since July 2022. I have personal knowledge of the following facts and could, and would, competently testify thereto if called as a witness. I make this Declaration in support of Plaintiffs' Motion to Hold Defendants in Contempt and Order to Show Cause Re: (1) Violation of Preliminary Injunction, and (2) Spoliation of Evidence ("Motion").

## I.    BACKGROUND

### A.    Professional Experience and Qualifications



2.    I have 14 years of professional experience in law and program management, including five years of cybersecurity experience in confidential and complex criminal and regulatory cyber security investigations, specifically in insider threats and digital assets and currency, and maturing enterprise security programs. Prior to joining FTI, I led enterprise-level criminal and national security cyber investigations at the Federal Bureau of Investigations ("FBI") in Los Angeles, including investigations of malicious-cyber actors, for approximately four- and one-half years from January 2018 to May 2022. Prior to joining the FBI, I was Assistant Dean at Fordham University from 2010 through mid-2016. At different points during that time, I was also Adjunct Faculty in the Computer Sciences Department at Fordham University. I clerked and practiced law in New York and New Jersey in securities and arbitration matters for approximately two years from 2008 to 2010.

3.    Global Information Assurance Certification ("GIAC") is an information security certification entity that specializes in technical and practical certification, and I have held GIAC certifications in Linux hardening, incident handling, and

3

Case No.: 2:22-cv-06515-MWF-AGR

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

penetration testing. I hold a CISSP (Certified Information Systems Security Professional) certification, granted by the International Information System Security Certification Consortium ("ISC2"). I hold undergraduate and graduate degrees in law (Juris Doctor) and computer science (Master of Science) both from Fordham University.

4.      Collectively, the FTI cybersecurity team I work with has a law enforcement background and experience in national and international security, fraud detection, incident response, crisis management and disaster recovery, and digital and online forensic investigations.

5.      My experience includes work and investigations involving Google applications and services, and the Instagram and Twitter platforms. Specifically, in my investigative capacity while I was at the FBI, I regularly prepared and served subpoenas upon Google and social media platforms, including Instagram and Twitter, and analyzed returns received in response to the subpoenas. Additionally, I have experience investigating and working within Google's Workspace infrastructure of enterprise tools and services based on advisory work I provide to clients in the corporate environment.

**B.      Investigations and Forensic Work Performed in the Present Action**

6.      In approximately September 2022, FTI was retained by counsel for Plaintiff Hidden Empire Holdings, LLC ("HEFG"). On or about October 3, 2022, FTI was informed of the Preliminary Injunction entered in this action, signed by the Honorable Michael W. Fitzgerald, dated September 30, 2022 ("Preliminary Injunction"), and was asked by HEFG and its counsel to coordinate and assist in the transfer of the assets described in and required by the Preliminary Injunction to HEFG from Defendants Darrick Angelone ("Angelone") and AOne Creative LLC, formerly known as Aone Entertainment, LLC.

7.      Among other things, I learned through my communications with HEFG representatives and its counsel that Angelone had provided services to HEFG for

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

approximately a decade that included development and maintenance of digital content, social media marketing, and acquisition and maintenance of HEFG's website domains. Counsel requested FTI to assist with expeditiously and accurately transferring online assets identified in the Preliminary Injunction to HEFG and to act as a knowledgeable intermediary between HEFG and Angelone to facilitate the process. I was the primary person from FTI responsible for communicating with Angelone about this endeavor.

8.     During FTI's assistance with seeking to obtain Angelone's compliance with the Preliminary Injunction, I and other members of my team at FTI: (1) conducted interviews of HEFG co-founder and executive, Roxanne Avent Taylor ("R. Taylor"), and other HEFG personnel such as her husband, HEFG co-founder and executive Deon Taylor; (2) conducted interviews of Angelone to understand context about the various matters pertinent to the transfer of HEFG's assets and to obtain his compliance with the Preliminary Injunction; (3) exchanged emails with R. Taylor and Angelone regarding the status of Angelone's compliance with the Preliminary Injunction and his efforts to transfer HEFG's assets; (4) reviewed and observed HEFG account information and other documents related to the efforts to transfer the assets to HEFG; and (5) reviewed legal process returns provided by various service providers (e.g., Google, Namecheap, Charter Communications, Twitter) in response to subpoenas served by HEFG.

9.     More specifically, my work included the following activities since the issuance of the Preliminary Injunction:

> a.     I exchanged multiple emails with Angelone regarding the status and transfer of assets including: (1) tracking and inventorying information from Angelone concerning the assets; (2) identifying and creating Uniform Resource Locator ("URL") lists of social media handles maintained by Angelone; (3) investigating the status of HEFG's Google Workspace account and reviewing

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

correspondence with Google regarding same; (4) investigating the status of the transfer of HEFG's domains; (5) exchanging correspondence with Angelone regarding the transfer of HEFG's social media credentials; and (6) exchanging correspondence with Angelone regarding the transfer of HEFG's Google Workspace account.

b.  I had multiple communications (calls and emails) with Angelone regarding the above-described issues to follow-up on, and clarify, the status of the transfer of assets, and to try to facilitate and verify the transfer of all pertinent assets to HEFG.

c.  I engaged in multiple telephone calls and exchanged email correspondence with R. Taylor to investigate the challenges and apparent resistance HEFG faced from Angelone concerning transferring certain of the assets including: (i) inventorying and reconciling domains (including the Nine Icelandic Domains) Angelone claimed were either inactive or are not within his control; and (ii) addressing the receipt of failed or incomplete social media credentials provided by Angelone; (iii) addressing HEFG's inability to access its Google Workspace account, the deletion of said account on or about October 10, 2022, attempts by HEFG to recover the contents of said account (e.g., HEFG's historical emails) after it was deleted, and efforts to determine how the account was deleted.

d.  I reviewed correspondence between R. Taylor and Google concerning: (i) HEFG's attempts to access its Google Workspace account; (ii) Google's two-step verification process for changing the administrator of an account from one person to another; (iii) the deletion of HEFG's Google Workspace account; and (iv)

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

HEFG's unsuccessful attempts to recover that account and its contents.

e.   I also reviewed the returns produced by third parties in response to subpoenas served by HEFG seeking records related to Angelone's failure to comply with the Preliminary Injunction. Specifically, I have reviewed returns related to subpoenas served on Google, Twitter (rebranded as "X"), Instagram, Namecheap, and Charter Communications. These returns and the other Exhibits I reference in this Declaration are attached to the Compendium of Evidence filed by Plaintiffs as part of their moving papers.

f.   I reviewed various pleadings filed in this litigation and documents attached to them including, for example, the Complaint, Preliminary Injunction, and Declarations filed by the parties.

10.   The opinions and conclusions in this Declaration are based upon my experience as a cybersecurity and forensic investigator and the above-described work I and other members of my FTI team performed. In the course of my work, and consistent with my expertise and experience, I made several findings concerning the HEFG assets covered by the Preliminary Injunction. As explained in more detail below, I made the following conclusions: (1) the evidence indicates that instead of transferring HEFG's Google Workspace account to HEFG, Angelone apparently deleted the account which destroyed all of HEFG's emails, data, and records stored and maintained in that account, (2) the evidence indicates that instead of transferring the nine HEFG domains to HEFG (i.e., the Islandic Domains), Angelone registered, or caused to be registered, those domains for himself using what we understand to be an alias, "Jacky Jasper," he has used for several years, and (3) Angelone either failed to transfer and/or interfered with the transfer of HEFG's two most prolific and valuable social media accounts, specifically its Instagram and Twitter accounts.

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

## II.      DESCRIPTION OF ASSETS THAT ARE AT ISSUE

11.     The assets in the Preliminary Injunction we understand to be at issue in the Motion can be grouped into the following categories: (1) HEFG's Google Workspace account, (2) HEFG's nine domains, and (3) HEFG's Instagram and Twitter accounts.

### A.      <u>HEFG's Google Workspace Account</u>

12.     Google Workspace is a collection of productivity tools offered by Google. Many companies use Google Workspace as a solution for company email, file storage on Google Drive, calendaring, task management, word processing using Google Docs (similar to Microsoft Word), creating financial spreadsheets using Google Sheets (similar to Microsoft Excel), and other functions. Those are many of the most common functions a business desires when it creates and maintains a Google Workspace account.



13.     When signing up for a Google Workspace account, a business owner enters the business' domain name to use with the Google Workspace account. In the account creation process, Google does not take the applicant's word that the applicant owns the domain name sought to be used for the Google Workspace account. Rather, Google has an automated procedure for a Google Workspace registrant to demonstrate the registrant's ownership of the domain name it seeks to use for its Workspace account. Once the account is created, a registrant can then create various "user accounts" within the newly formed Google Workspace account for each of its users (e.g., employees and consultants) to send and receive email. For example, if HEFG created an account using the hiddenempirefilmgroup.com domain it owns, HEFG could then create a user account for one of its employees (e.g., John Doe) under that domain (e.g., JohnDoe@hiddenempirefilmgroup.com) that could then be used by that employee to send and receive email. In this case, HEFG's Google Workspace account was created and maintained using the domain *hiddenempirefilmgroup.com*. Domain names are described more fully below.

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

**B.**   **Domain Names**

14.     For a modern business to have a presence on the internet – that is, for example, to have a website or use a professional, custom email address – it must purchase a domain name that gets hosted. A domain name is the method by which something on the internet can be contacted in a human-friendly way. For example, by typing in the domain name *hiddenempirefilmgroup.com* in a web browser, one can view the website for HEFG. Additionally, one can correspond over the internet by sending an email to an email address such as *office@hiddenempirefilmgroup.com*.

15.     Domain names may be purchased from various companies who sell them, and they must be renewed periodically for continuous use. The purchase of a domain name alone does not instantly result in an internet-accessible website or email; the purchase simply means the domain name has been made unavailable for others to use. In fact, domain names are commonly purchased simply to be owned and protected from others' malicious or deceiving, or unintentionally confusing, use, and not necessarily to be functional.

16.     To be functional and accessible by the internet, a domain name must be hosted, meaning, in the case of a website, that the files of code and graphics are stored on an internet-connected computer, called a server. Because maintaining a server entails technical knowledge and attention, many businesses opt to use a hosting provider, who effectively rents its server space for companies to use to host their domain name and related content.

17.     The Internet Corporation for Assigned Names and Numbers (ICANN) is a not-for-profit public/private partnership that plays a significant role in the stable functioning of our global internet, specifically by coordinating the Internet's naming system. As an example, ICANN coordinates the Internet's domain name system, as discussed in this declaration, whereby human friendly domain names, purchased for use from registrars, map to IP addresses on the internet. ICANN specifically coordinates contracts with registries, and coordinates and deconflicts the allocation of



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

IP addresses, among ICANN's other responsibilities in this space.

18.   Among these additional responsibilities is maintenance of the WHOIS database.  WHOIS is a database that stores the registrant information, such as name, address, phone number, and email address, for a domain name, and IP address block. This transparency of registrant information allows for accountability and investigation of domain or IP ownership.

19.   All internet connected computers are reachable through IP addresses. Hosting providers will facilitate Domain Name System ("DNS") services, which map a domain name to an IP address, allowing the end user to visit websites and send email in a human friendly way.

20.   To put it all together, based on my investigation the domain *hiddenempirefilmgroup.com* is hosted by the hosting provider called Namecheap, who has assigned it the IP address 162.255.119.166.[1]  Hiddenempirefilmgroup.com is both a functional website and an email domain, and no one needs to know its IP address to see the website or send email.

### C.   Social Media Accounts

21.   As a media production company, HEFG had an important presence on Instagram, Twitter, YouTube, and Facebook, where it has shared information about upcoming films and promotional events. Specific social media account names, particularly for Instagram and Twitter, are typically referred to as "handles" that follow an "@" sign. In the case of Facebook and YouTube, content is accessible through a business page "URL" such as www.facebook.com/examplebusinessid.

## III.   ANGELONE APPARENTLY DELETED HEFG'S GOOGLE WORKSPACE ACCOUNT

### A.   Angelone was the Only Administrator for HEFG's Workspace

---

[1] IP addresses may change. This IP address was associated with the domain on October 12, 2023.

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

**Account**

22.     Based on my investigation, the evidence indicates that after the Preliminary Injunction was issued, Angelone apparently deleted HEFG's Google Workspace account when he was the administrator of the account.

23.     An administrator is a person on a Google Workspace account with "administrator privileges." A Google Workspace administrator manages the account and is able to take certain actions and make changes that a standard user of an account cannot. For example, an administrator can add and delete accounts, reset passwords, and change settings. The term "super administrator" refers to an administrator that has access to all possible administrator privileges. An administrator that is not a "super administrator" may have access to only certain subsets of the available administrator-related privileges.

24.     The original creator of a Google Workspace account becomes the account's first user, and the account's "super administrator." Based on my interviews of R. Taylor and Angelone, and correspondence from Angelone, he originally set up the HEFG Google Workspace account using the hiddenempirefilmgroup.com domain and was engaged by HEFG to be solely responsible for the maintenance of that account. As Angelone was the account's creator, his email address - darrick@hiddenempirefilmgroup.com - was the original "user" of the account that had the privileges of "super administrator."  Angelone's role as sole administrator is documented in the Google Return No. 25783578 dated January 25, 2023. (See **Exhibit** 53, p. 53.44 [Google Return]).

25.     In the case of HEFG's Google Workspace Account that Angelone was hired to maintain, based on all the information available to me, there was only ever one super administrator, Angelone. In this Declaration, I will simply refer to Angelone's role as "administrator" because Angelone was the only administrator and HEFG as a small company did not have a structure of multiple super administrators or administrators with varying privilege sets.



SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**B.**    **Angelone Failed to Provide to HEFG Critical Information That was Necessary for it to Complete the Transfer of Administrator Credentials for HEFG's Workspace Account**

26.    R. Taylor's efforts to transfer the administrator privileges from Angelone to her started prior to entry of the Preliminary Injunction. R. Taylor advised me that on or about September 6, 2022, she made an email request to Google to transfer administration of the Google Workspace account from its existing administrator, Angelone, to herself. The fact that R. Taylor's made the request on or about September 6, 2022, is corroborated by two emails Google Workspace Support sent in response to both R. Taylor and Angelone on September 6, 2022. I reviewed both of those emails.

27.    The first email is correspondence from Google Workspace Support to Angelone dated September 6, 2022, in which it advised Angelone that "another user is claiming ownership of 'hiddenempirefilmgroup.com. . . .'" In response, Google Workspace Support initiated the two-step process (described below) for verifying ownership of the account before it would proceed with the transfer of administrator privileges from Angelone to R. A. Taylor. A true and correct copy of Google's email to Angelone is attached as **Exhibit 5**.  In the course of my discussions with Angelone about the transfer of administrator privileges for HEFG's Workspace account Angelone forwarded me a copy of this email.

28.    Google Workspace Support sent a similar email on September 6, 2022, to R. Taylor advising that she must complete the ownership verification process before being granted administrator access to the Workspace account. A true and correct copy of Google's email to R. Taylor is attached as **Exhibit 6**.

29.    When Google receives a request to change administrators, it does not simply rely on narratives and emails from individuals or users claiming ownership. Instead, Google initiates a "challenge" process to verify ownership of the account. This challenge process entails a two-step ownership verification process where

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

Google requires the requester to prove that he/she: (1) owns the domain used by the Google Workspace account; and (2) has detailed knowledge of the account that only the individual or entity who set up the account would know.

30.     The first part of this process is satisfied by entering a single line in the domain's configuration, which in HEFG's case would have been entering a text record within the hiddenempirefilmgroup.com domain's DNS settings in Namecheap. The second part of the process requires providing information to Google that only the administrator would know.

31.     In this instance, Google Workspace Support requested R. Taylor to "try to answer" all of the following questions to satisfy the second part of the verification process, specifying a single answer to each one:

a.     What is the username (username@domain.com) of the Super Administrator account you are trying to access?

b.     When did you last sign in to this Super Administrator account (MM/DD/YYYY)?

c.     What is the original secondary/recovery email address?

d.     Why are you unable to access this secondary/recovery email address?

e.     How many users are on your Google Workspace account?

f.     If you paid with a credit/debit card, provide the following details: (1) When was the last charge for this Google Workspace account (MM/DD/YYYY); (2) How much was your credit/debit card charged?; (3) What type of credit/debit card was charged (e.g. MasterCard, Visa)?; (4) What are the last four digits of this card?; (5) What is the expiration date of this card?; (6) What is the billing address associated with the Google Workspace payment method?; and, (7) If you made the transaction through Google Wallet, what is the order number?

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

g.   Google Workspace requested R. Taylor to answer similar questions about whether HEFG paid for its Workspace subscription using bank transfer or PayPal services. (See **Exhibit 6**, pp. 6.2-3.)

32.   Google advised R. Taylor that once she replied with the answers to the knowledge questions, Google would review the answers and proceed if account ownership was confirmed. (*Id.* at p. 6.3.)

33.   According to the Google Return, it appears that on or about September 6, 2023, when R. Taylor sent her request to Google to remove Angelone as administrator and make her the administrator, Google sent Angelone an email advising that it had (1) temporarily "demoted" the existing administrator (Angelone) - darrick@hiddenempirefilmgroup.com - and; (b) sent its "challenge" (i.e., the two-step verification process) to both R. Taylor and Angelone. This is reflected in the Google Return as follows:

**Changed primary admin from darrick@hiddenempirefilmgroup.com to 40829326@hiddenempirefilmgroup.com 2. Demoted darrick@hiddenempirefilmgroup.com. 3. Disabled temp admin.>=== NEXT STEPS ====Send challenge to both parties**

(See **Exhibit 53**, p. 53.12, and Google Workspace Support's September 6, 2022, email to Angelone, *supra*, **Exhibit 5.**)

34.   To complete step one of the "challenge" process, it was necessary for Angelone to provide R. Taylor with the required access to manage the domain name hiddenempirefilmgroup.com on the hosting provider, Namecheap. On or about October 4, 2022, I sent an email to Angelone requesting that he transfer the hiddenempirefilmgroup.com domain in Namecheap to R. Taylor at "roxanneavent" so we could proceed with responding to Google's two-step process to transfer administrator privileges from Angelone to R. Taylor. I also requested in said email that Angelone provide the billing and account information that R. Taylor would need

to satisfy the second part of the process. A true and correct copy of my October 4, 2022 email to Angelone is attached as **Exhibit 18**.

35.    In a teleconference with R. Taylor on or about October 5, 2022, she advised me that she had gained access to the hiddenempirefilmgroup.com domain in Namecheap on October 4, 2022, and that she successfully performed step one of Google's verification process on October 5, 2022.

36.    With respect to step two of the verification process, because R. Taylor did not create or administer the Workspace account, she did not have the ability to answer the aforementioned questions related to the Workspace account's billing information and account recovery. As the creator and administrator of the account, Angelone was solely in possession of that information. Based on an email dated September 7, 2022, that Angelone forwarded to me on October 5, 2022, Angelone replied to Google with the required billing and account recovery information to verify his authority concerning the account. However, because the challenge was sent to both Angelone and R. Taylor, Google would not effect a change in administrators from Angelone to R. Taylor until Angelone provided R. Taylor with the billing information so she could separately respond to Google with the same information. A true and correct copy of Angelone's October 5, 2022, email to me and its attachment (the September 7, 2022, challenge request) is attached as **Exhibit 18**. In that email, Angelone confirmed that if he got administrator credentials to the HEFG Workspace account restored he would be able to transfer those administrator privileges to R. Taylor, stating, "if…the darrick@hiddenempiregroup.com admin privileges are reinstated I can quickly add administrator privileges to Roxanne's account."

37.    On October 4, 2022, I had asked Angelone to provide the answers to Google's questions for the second step of the two-step verification process related to billing and account recovery. (See **Exhibit 18**, *supra*). However, Angelone replied the next day that he was "*not so comfortable*" providing the information, and that he had already separately provided it to Google "with no success." (Emphasis added).

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

*See* **Exhibit 18**. R. Taylor never received from Angelone the information she needed to complete that step.

38.     On October 7, 2022, Google Workspace Support informed R. Taylor that, because she was "not able to prove the ownership of the domain 'hiddenempirefilmgroup.com' by answering the knowledge test and by adding CNAME," the process for changing the administrator had not been completed.   A true and correct copy of Workspace Support's October 7, 2022, email is attached as **Exhibit 10**. According to the Google Return, Angelone was apparently thereafter reinstated as administrator to the Workspace Account, as reflected in the Google Return:

**REVERTING THE DOMAIN TO THE ORIGINAL STATE ➡ Deleted Temp admin ➡ Successfully updated Primary Admin from 40829326@hiddenempirefilmgroup.com to darrick@hiddenempirefilmgroup.com**

(**Exhibit 53**, p. 53.19.)

39.     Based on my review of the correspondence between R. Taylor, Angelone and Google, and my review of the Google Return, it appears that from September 7, 2022, onward, Google was specifically waiting for R. Taylor to provide this information so it could continue its investigation and process her request to transfer administrator rights from Angelone to R. Taylor. Due to Angelone's refusal to provide R. Taylor or me with the information needed for the second step of the "challenge" process, R. Taylor could not submit the information to Google that it required to make R. Taylor the account administrator. This failure to prove ownership was communicated by Google to R. Taylor on October 7, 2022. As an apparent result, as noted above, the Google return indicates Google "reverted" the account to Angelone and he again was the super administrator of the account. Rather than transferring administrative privileges to R. Taylor as he indicated he would do in his October 5, 2022 email to me in the event his administrator privileges were restored, he apparently deleted the entirety of HEFG's Workspace account.

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**C.     Deletion of HEFG's Workspace Account on October 10, 2022**

40.     On October 10, 2022, R. Taylor advised me that all of the information in HEFG's Google Workspace account had been deleted. As explained below, the Google Return and correspondence from Google Workspace Support to R. Taylor show that Google reinstated Angelone's administrator privileges which were used to delete HEFG's Google Workspace account on October 10, 2022. (**Exhibits 14-16**, *post*.)

41.     In the weeks following October 10, 2022, R. Taylor communicated with Google Workspace Support account recovery team in an attempt to recover HEFG's deleted account and all its contents but was advised by Google that the account and its contents (including all of HEFG's historical emails and records) could not be recovered. Correspondence from Google Workspace Support confirms that the prior administrator (Angelone) deleted the account and that it could not be recovered:

- October 27, 2022: "Since the deletion has been performed by the existing admin in workspace…" A true and correct copy of this email to R. Taylor, which she forwarded to me, is attached as **Exhibit 14**.

- November 1, 2022: "Please be informed that the deletion of *old account* was performed by the *existing super administrator* and *only administrator can delete the account* because administrator has the all (sic) control over the Google workspace but not any user hence I would suggest you to be in touch with the *existing/old admin of the previously deleted Google workspace* account with the domain hiddenempirefilmgroup.com." (Emphases added).   A true and correct copy of the November 1, 2022, correspondence from Google Workspace, which R. Taylor forwarded to me, is attached as **Exhibit 15**.

- November 8, 2022: "According to your other opened case 40829326 you were informed that you were not able to prove the ownership of the domain 'hiddenempirefilmgroup.com' by answering the knowledge test

17

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

and by adding CNAME. *Therefore changes were reverted to the original state* prior to sending proof of ownership request to both parties (namely you as requester and the rogue admin). Once this account was reverted the admin deleted domain and domain was released and according to my tools can see that you signed up for new domain later on the same date 10/OCT/2022." (Emphasis added) A true and correct copy of the November 8, 2022, correspondence from Google Workspace, which R. Taylor forwarded to me, is attached as **Exhibit 16**.

42.    All the information available to me indicates Angelone was the person who deleted HEFG's historical Google Workspace account because no one except for Angelone had ever been an administrator on the account and only an administrator has the ability to delete an account. This is confirmed by Angelone himself in his declaration filed with this Court on or about September 28, 2022, in which he stated that:

"Roxanne has never had administrator privileges and needed to contact me or someone at Aone in order to create, delete or update email accounts."

(Dkt. 23-1, ¶ 12). No records I have seen even suggest R. Taylor ever obtained administrator access up through, and including, October 10, 2022, when the old account was deleted.

43.    In addition, in approximately April 2023, after HEFG's new Google Workspace account was created, I accessed audit logs within the admin console for the account. Audit logs provide a record of actions performed within a given Google admin console.[2] The audit logs within the Google admin console show a record of activity conducted by the administrator(s) of an account.

---

[2] In my experience conducting log review and analysis, log times should be considered as approximations due to considerations including but not limited to processing or lag times, as further detailed by Google at https://support.google.com/a/answer/7061566?hl=en.

44.    When I accessed the audit logs for HEFG's Google Workspace account, I saw the record of activity for that account as well as what appeared to be a few historical snippets from the prior account.[3] The audit logs show that the following IP address was logged onto HEFG's Google Workspace account when R. Taylor's account was disabled:    2603:8000:df00:988f:90b8:f0ce:ab97:3f8d,    2022-10-10T19:32:32-07:00. An IP address is the address identifying the source or destination of a computer sending or receiving traffic on the internet. The IP address can be tied to a specific individual. This can be done by contacting the IP address provider who maintains records identifying the individual subscriber that used a particular IP address at a given point in time.

45.    As the oldest two records from the audit logs originated from Angelone's IP address (including the record evidencing the disabling of R. Taylor's user account), it appears he used administrator credentials to disable R. Taylor's account on October 10, 2022, the same day the entire Workspace account was deleted and while Angelone was the sole administrator. A true and correct screenshot of the admin console and audit logs is below and attached as **Exhibit 19**.:



46.   The above screenshot of the audit logs, specifically the description on the last entry, states:  Roxanne[@]hiddenempirefilmgroup.com disabled. Next to that, it identifies the corresponding IP address (for Angelone) that executed that particular action.

47.   The fact that IP address  2603:8000:df00:988f:90b8:f0ce:ab97:3f8d belongs to Angelone was confirmed through a subpoena served by HEFG on Charter Communications ("Charter"), the Internet Service Provider assigning this particular IP address. The documents produced by Charter identified the subscriber as "Evonne Zummo," who is Angelone's mother, and the subscriber location as 2529 Griffth Park Blvd., Los Angeles, CA 90039, which is Angelone's residence. Additionally, the User Name for the subscriber identifies two email accounts associated with Angelone: aoneent@twc.com and  darrick.aone@gmail.com.  A  true  and  correct  copy  of  the Charter Return is attached as **Exhibit 60**.

48.   The information in the audit logs corroborates that Angelone had the administrator access and the ability to delete the Workspace Account as identified in Google's return. This deletion of the Workspace account resulted in the loss of all of the historical information contained within or connected to HEFG's Google Workspace account. As Angelone was the sole administrator of the HEFG Google Workspace account and used his administrator credentials to deny R. Taylor access to the account on October 10, 2022, based on the information available to me, he had to be the person that also deleted the entire HEFG Workspace account before R. Taylor was able to login to the new HEFG Google Workspace account.

**D.**     **After the Deletion of HEFG's Workspace Account, Google Initiated a New Account for HEFG**

49.   In our efforts to work with Angelone to facilitate the transfer of the hiddenempirefilmgroup.com  Google  Workspace  account  to  R.  Taylor,  our expectation was that Angelone would cooperate with completing Google's two-step verification process, and that R. Taylor would replace him as administrator *on the*

SR
SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

*existing account*. Our expectation is based on industry custom and practice in *preserving* (not destroying) a business's historical records, files, emails, and data when management of an account changes. Based on my experience, it is highly unusual – and indeed improper – for a person who has been entrusted with administrator privileges to wholesale destroy a business's records by deleting the account for which those privileges had been granted.

50.     Therefore, we were surprised on October 10, 2022, when R. Taylor received an email from Google with a link for a "free trial" for a *new* Google Workspace account for hiddenempirefilmgroup.com. A true and correct copy of the October 10, 2022, email from Google, which R. Taylor forwarded to me, is attached as **Exhibit 11**. When R. Taylor accessed the "free trial" link for hiddenempirefilmgroup.com, there were no historical HEFG records, files, or emails.

51.     Receiving a link for a "free trial" on October 10, 2022, is what led R. Taylor, in coordination with me and my team at FTI, to repeatedly seek assistance from Google Workspace Support to try to recover the old account and all the historical records maintained in the account. However, as set forth more fully above, R. Taylor was unable to recover "the previously deleted Google workspace." (See, e.g., paragraph 41 above, and emails from Google attached as **Exhibits 14-16**. Although HEFG could now use hiddenempirefilmgroup.com domain for Google Workspace service, it was for a completely new account that did not contain any of the historical records, files and emails stored and maintained in the old account prior to October 10, 2022.

## IV.   ANGELONE REGISTERED THE NINE HEFG "ICELANDIC" DOMAINS USING THE PSEUDONYM "JACKY JASPER" AND REFUSED TO TRANSFER THEM TO HEFG

52.     Among the domains identified in the Preliminary Injunction that Angelone was required to transfer to HEFG were the following "Icelandic Domains." (Dkt. No. 26, p. 2).

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW
CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

- Hiddenempiremediagroup.com
- Hiddenempiremedia.com
- Hiddenempirereleasing.com
- Hiddenempireproductions.com
- Hiddenempire.productions
- Hiddenempire.media
- Hiddenempiremedia.group
- Hiddenempire.studio
- Hiddenempire.org

53.     To date, Angelone has not transferred the domains to HEFG. Rather, he has claimed to be unable to transfer the domains on the grounds that he does not own or control them. For example, in an email to me dated October 4, 2022, Angelone wrote that the Icelandic domains were:

"registered in Aug 2021, not used by HEFG not billed to or paid for and allowed to expire last month. They are currently not held in our namecheap account preventing me from being able to transfer/provide access as ordered. We are still investigating this and would welcome any feedback or help if you have tracked anything in their regards."

A true and correct copy of Angelone's October 4, 2022, email is attached as **Exhibit 17**.

54.     On October 5, 2022, Angelone wrote in another email to me that: "these were registered by hefg to consider using as expressed when registration had been communicated. But there is no record of them wanting to use, them being billed for or them paying for these domains which we let expire in August. Again, not sure how to show that these are not held in our domain registry. We made the who.is info open on all the disputed domains we do have control over. Your expertise would be appreciated on this. Thank you."

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

A true and correct copy of Angelone's October 5, 2022, email is attached as **Exhibit 21**.

55.     On October 13, 2022, Angelone told me in another email that he found out more about the Icelandic domains:

> "After contacting the address shown on the privacy guard requesting details about the current registered owner, we have determined that a company who we are familiar with and who routinely registers domains recently expired from us and other vendors, registered these domains and a score of others that had expired recently and are not subject of this litigation. I nor AOne have any interest in this company and have no way to force them to transfer the domains to AOne or to HEFG. Please let me know if I can provide further assistance. Thank you."

A true and correct copy of Angelone's October 13, 2022, email is attached as **Exhibit 22**.

56.     When Angelone was asked by me on October 13, 2022 to provide his email outreach for my review, Angelone said in that same email:

> "Contact was made to privacy email via a 3rd party that handles some tech related things for me, and he is based in Croatia.  Otherwise, I am waiting to speak to them, and when I do I will request that an email be sent to me confirming/detailing their ownership. As much as I hope to achieve this, I have some worry they might not want to be dragged into litigation over a domain they properly registered. It is a priority for me though."

(*Id.*)

57.     All of the foregoing statements appeared designed to try to convince me that Angelone could not comply with the Preliminary Injunction because he had no interest in, or control over, the Icelandic Domains.

58.     Angelone repeated his statements to the Court when he wrote in his

23

Case No.: 2:22-cv-06515-MWF-AGR

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

Declaration filed on or about October 13, 2022, that:

> "After investigating who the new owners of the domains are, we discovered that they were registered by a 3rd party we are familiar with and who routinely registers domains that AOne and other resellers allow to expire on Namecheap. We have no interest in this 3rd party business . . . [and] Because we have no interest in the company who purchased them, we are not able to transfer ownership to HEFG."

(Dkt. 28-2, ¶ 40.)

59.     Based on evidence I have reviewed, Angelone's statements appear to be untrue. Counsel for HEFG subpoenaed records from Namecheap, the hosting provider for these domains. The Namecheap Return included information showing that those nine domains were registered by Angelone using one of his aliases, "Jacky Jasper," with the email address of "jackyjasper@gmail.com" on or about August 6, 2021, and contrary to Angelone's representations they did not expire in August 2022, because there are no entries indicating any account transfers and/or domain expirations in 2022. A true and correct copy of the Namecheap return is attached as **Exhibit 58**.; *see* pp. 58.13-15 to that Exhibit).

60.     Upon receiving the Namecheap Return, I consulted the WHOIS database for further details on account activity for the Icelandic Domains. True and correct copies of screenshots of the WHOIS histories for each of the Icelandic Domains are collectively attached as **Exhibit 23**. Each of those histories indicates that the corresponding domain was not allowed to expire but was instead renewed in early July, 2022. This is confirmed by the Namecheap Return, where the "Auto-Renew" box was checked for each of the Icelandic Domains.

61.     Part of Namecheap's production is a Domain List that appears to identify each of the domains registered in the "Jacky Jasper" Namecheap account. (**Exhibit 58**, pp. 58.13-15.) During my review of the Namecheap Return I noticed that "Jacky Jasper" also registered a domain named aventviii.com in this Namecheap

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

account on February 7, 2021. I recognized the name of that domain because during the asset recovery process R. Taylor told me that she had asked Angelone to secure that domain for her and wanted it back as part of the domain transfer process. As evidenced by an October 14, 2022, email, Angelone acknowledged that he had control over the aventviii.com domain, but he refused to share administrator control because he said it was not part of the Injunction Order. A true and correct copy of Angelone's October 14, 2022 email is attached as **Exhibit 24**.

62.    Ultimately, Angelone did agree to share administrative control of the aventviii.com domain with R. Taylor, as reflected in a November 22, 2022 email he sent me with the subject line "aventviii.com access control." A true and correct copy of Angelone's November 22, 2022 email is attached as **Exhibit 24**. Angelone would not have been able to provide shared administrator control over the aventviii.com domain unless he had the ability to both access and control the "Jacky Jasper" Namecheap account where the aventviii.com domain and the Nine Icelandic Domains were all held.

63.    In addition, the Namecheap and Google Returns indicate that someone using the IP address 76.93.225.102 (an IP address assigned by Charter in the Los Angeles area), logged into both the "Jacky Jasper" Namecheap account and Angelone's  darrick@hiddenempirefilmgroup.com  HEFG  Workspace  account. Specifically, that IP address was used to log into the "Jacky Jasper" Namecheap account on August 17, 2022 and to log into the darrick@hiddenempirefilmgroup.com HEFG Google Workspace account on August 13, 2022, August 5, 2022, August 2, 2022, and June 5, 2022. *See* **Exhibit 53**, pp. 53.40-43(Google Workspace); **Exhibit 58**, p.58.12 (Namecheap).

64.    According to the Declaration of Alex Izen, my colleague at FTI, Angelone has a well-documented history of using the name "Jacky Jasper" as an alias for himself. His connection with the name "Jacky Jasper" is set forth in detail in the Declaration of Alex Izen filed in support of this Motion.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

65.    Therefore, I have concluded that Angelone's representations that he could not comply with the Preliminary Injunction and transfer the Nine Icelandic Domains to HEFG because he does not have control over, or an interest in, those domains was untrue.

## V.    ANGELONE FAILED TO TRANSFER OR OTHERWISE INTERFERED WITH THE TRANSFER OF HEFG'S TWITTER AND INSTAGRAM ACCOUNTS

### A.    <u>Twitter Account</u>

66.    Angelone did not successfully transfer two social media accounts, which accordingly to R. Taylor were the two most important to HEFG's business and branding, specifically: Twitter @hiddenempirefg, and Instagram @hiddenempirefilmgroup.

67.    HEFG's counsel subpoenaed records from Twitter regarding HEFG's Twitter account. The Twitter Return included information showing that the historical account was deleted on November 4, 2022 and HEFG's Twitter handle was transferred to "Jacky Jasper," the same alias of Angelone that is associated with the Nine Icelandic Domains, on January 12, 2023.  *See* **Exhibit 56**, pp. 56,4, 56.9.  The Twitter return further revealed that IP address 76.167.147.254 was used to login to the Twitter account, the darrick@hiddenempirefilmgroup.com Workspace account and the "Jacky Jasper" Namecheap account containing the Icelandic Domains. *See* **Exhibit 56**, p. 56.6 (Twitter); **Exhibit 58**, p. 58.12 (Namecheap), **Exhibit 53,** p. 53.40 (Google Workspace). This IP address is a Los Angeles-based IP address provided by Spectrum. A true and correct copy of the Twitter Return is attached as **Exhibit 56**.

68.    On October 5, 2022, I sent an email to Angelone and requested, among other things, that he prioritize transferring the social media accounts, including HEFG's Twitter @hiddenempirefg account and HEFG's @hiddenempirefilmgroup Instagram account. Angelone replied on October 5, 2022, and specifically regarding the @hiddenempirefg Twitter account, stated that the account had been suspended for

copyright issues. A true and correct copy of the email thread with my request and Angelone's reply is attached as **Exhibit 26**.

69.    On October 7, 2022, and October 11, 2022, I emailed Angelone and asked him to produce the suspension notification from Twitter. A true and correct copy of the email thread between Angelone and me is attached as **Exhibit 27**. Exhibit 27 includes Angelone's October 11, 2022, email in which he stated he was not aware of any notification from Twitter and provided the following screenshot:



70.    When I asked Angelone for the password to the account on the same day, he sent a password that was invalid. Also on the same date, I sent a follow-up email to which Angelone answered: "Try a reset. It's been a long time (**Exhibit 27,** p. 27.2). A lot of these accounts were not active or had bots/automation posting." However, I could not conduct a password reset because Angelone would not provide a valid email or phone number connected with the account.

71.    Meanwhile, a separate team within FTI had been retained to monitor HEFG's social media accounts, parallel to my work trying to facilitate the account transfers. My colleague at FTI, Alex Izen, was a member of that team. The work by

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

that team revealed that Angelone apparently took over HEFG's twitter account and changed the handle to @darrickdidit before deleting the account.

72.     Based upon the Twitter Return, HEFG's Twitter account was misappropriated on January 12, 2023, by the "Jacky Jasper" alias used by Angelone. The account associated with the username and handle @hiddenempirefg showed a creation      date      2023-01-12T00:41:10.121Z      with      the      email      address jacky.jasper@gmail.com. (*See* Twitter return, **Exhibit 56**, p. 56.4.)

73.     A very similar email address, jackyjasper@gmail.com, was used to register the Nine Icelandic domains. And as stated in Paragraph 67, IP address 76.167.147.254 was used to login to Angelone's HEFG Workspace account, the "Jacky Jasper" Namecheap account with aventviii and the Icelandic Domains, and HEFG's twitter account. *See* **Exhibit 56**, p. 56.6 (Twitter); **Exhibit 58**, p. 58.12 (Namecheap), **Exhibit 53,** p. 53.40 (Google Workspace).This indicates that Angelone had access to, and continued to access the Twitter account, after the Preliminary Injunction Order issued, and did not turn it over.

### B.     Instagram Account

74.     On October 5, 2022, Angelone first provided me with the username and password credentials for the Instagram account. However, the account was protected by "two factor" or "multi factor" authentication ("2FA") as well. Instagram's 2FA is a mechanism that is used to protect an account in the event of credential set compromise. For example, when a new device, such as a new computer, logs into an account, the 2FA may be used to "verify" that this new device is permitted to access the account.

75.     The 2FA process requires that in addition to inputting a username and password, one must receive and input a confirmation code to gain access to the account. Typically, in order to get the confirmation code, the 2FA process requires input of an email address, a cell phone number, or use of an authenticator app.

76.     In the case of the HEFG Instagram account, when I attempted to test the

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

username and password provided by Angelone, it was met with the 2FA process. Specifically, Instagram sent a response to me stating that it sent an email to "s*****@h*****.com" that contained the confirmation code I needed to access the account.

77.     On October 11, 2022, I asked Angelone to identify this partial email address that was provided. A true and correct copy of the email thread between Angelone and me is attached hereto as **Exhibit 28**. In response, Angelone told me by email he was unable to identify this email address. (*Id*. at p. 28.4.) In an email dated October 11, 2022, Angelone claimed he had not logged into the Instagram account since providing account credentials on September 30, 2022, and further claimed that on October 11, 2022, he received a similar verification email sending a confirmation code to the same unknown email. (*Id*. at p. 28.2.)

78.     Angelone claimed in a conversation with me on October 13, 2022, memorialized via email, that he received alert emails to his office@aone.la email account that there had been logins to this Instagram account. A true and correct copy of this email is attached hereto as **Exhibit 29**. Though his accessible email was connected to this account, albeit apparently not the one used as the verification email for the confirmation code for this account, he claimed he was unable to access or change the verification email address receiving the confirmation code in order to permit access. In this manner, providing a valid username and password did not actually result in successful access to the account. Accordingly, Angelone never provided the transfer of this account as required by the Preliminary Injunction.

79.     Despite Angelone's lack of compliance, HEFG was ultimately able to work through separate channels at Instagram to recover this account.

## FTI'S FEES AND COSTS RELATED TO PRELIMINARY INJUNCTION AND INVESTIGATIONS

80.     As described more fully in paragraphs 1-79 above, beginning on or about October 3, 2022, I and FTI have worked with Plaintiffs and Plaintiffs' counsel to: (1)

29

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED

review the Preliminary Injunction; (2) communicate with R. Taylor, HEFG representatives, legal counsel, and Angelone to understand context and ascertain status; (3) facilitate the transfer of the assets described in the Preliminary Injunction; (4) follow-up on assets that Angelone did not timely transfer; (5) conduct follow-up investigations concerning registration and the status of the Nine Icelandic Domains and social media accounts; (6) attempt recovery of HEFG's Google Workspace account; (7) work with Plaintiffs' counsel in preparing subpoenas to internet service providers and hosts; (8) review the returns from the providers and hosts, in particular Google, Twitter, Instagram, Charter, and Namecheap; and (9) prepare a report of my findings for counsel and Plaintiffs.

81.     I was assisted by Tracy Wilson, Senior Managing Director of FTI, and Chris Pluhar, Senior Director of FTI. True and correct copies of the FTI profiles for Ms. Wilson and Mr. Pluhar are attached hereto as **Exhibits 30** and **31**, respectively. From October 3, 2022, through January 2024, FTI's cybersecurity team spent a total of 114.1 hours conducting its work and billed $84,034.35to Plaintiffs.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

Executed this 5th day of February 2024, at Newport Beach, California.

/s/ Erin Burke

Erin Burke



SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY TERMINATING SANCTIONS SHOULD NOT BE IMPOSED