LAWRENCE HINKLE (SBN 180551)
lhinkle@sandersroberts.com
STEPHANIE JONES NOJIMA (SBN 178453)
sjonesnojima@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for Plaintiffs and Counterclaim Defendants
**HIDDEN EMPIRE HOLDINGS, LLC; HYPER ENGINE, LLC; DEON TAYLOR; AND THIRD-PARTY DEFENDANT ROXANNE TAYLOR**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company,<br><br>Defendants.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company | **CASE NO. 2:22-cv-06515-MWF-AGR**<br><br>Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald<br><br>**DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS FOR (1) VIOLATING THE PRELIMINARY INJUNCTION [CONTEMPT] AND (2) SPOLIATION OF EVIDENCE**<br><br>[Submitted concurrently with Notice of Motion and Motion; Compendium of Evidence; Request for Judicial Notice; Declarations of Erin Burke, Alex Izen, and Roxanne Avent Taylor; and [Proposed] Order]<br><br>Date:        March 4, 2024<br>Time:       10:00 a.m.<br>Courtroom: 5A |

1  Case No.: 2:22-cv-06515-MWF-AGR

DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED

|   |   |
|---|---|
| | Counterclaimants, |
| | HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, |
| | Counterclaim Defendants, |
| | DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company, |
| | Third-Party Plaintiffs, |
| | v. |
| | ROXANNE TAYLOR, an individual, |
| | Third-Party Defendant |

# DECLARATION OF LAWRENCE C. HINKLE, II

I, Lawrence C. Hinkle, II, declare as follows:

1. I am an attorney admitted to practice in all the Courts in the state of California, and am an attorney at Sanders Roberts LLP, counsel of record for Plaintiffs Hidden Empire Holdings, LLC. ("HEFG"), Hyper Engine, LLC ("Hyper Engine") and Deon Taylor. I offer this Declaration in support of Plaintiffs' Motion for Order to Show Cause Why Sanctions Should Not Be Imposed Against Defendants For: (1) Violating The Preliminary Injunction [Contempt]; and (2) Spoliation of Evidence ("Motion"). The facts set forth in this declaration are based on my personal knowledge, except where otherwise noted, and, if called to testify, I could and would competently testify thereto.

2. On September 29, 2022, the Court conducted a hearing on Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue. (Dkt. 10) A true and correct copy of the transcript of the hearing is attached hereto as **Exhibit 62**. On September 30, 2022, the Court entered the Preliminary Injunction. (Dkt. 30)

3. In September 2022, my firm engaged FTI Consulting, Inc. ("FTI") on behalf of Plaintiffs. My firm worked with FTI and our clients regarding efforts to obtain Defendants' compliance with the Preliminary Injunction.

4. When it became apparent that Defendants had failed to comply with various aspects of the Preliminary Injunction, we conducted an investigation regarding their non-compliance, including by serving subpoenas for documents on various third parties such as internet service providers, internet hosting providers, and social media companies.

5. On or about October 18, 2022, I caused to be served on Google, LLC ("Google") a Subpoena to Produce Documents, Information, or Objects. A true and correct copy of said subpoena is attached hereto as **Exhibit 51**. On or about February 8, 2023, I caused to be served on Google a second Subpoena to Produce Documents,



Information, or Objects. A true and correct copy of the second subpoena we caused to be served is attached hereto as **Exhibit 52**.

6. In response to the October 24th and February 8th subpoenas, Google produced responses and documents. A true and correct copy of the relevant excerpts of responses and documents produced by Google is attached hereto as **Exhibit 53.**

7. On or about February 1, 2023, I caused to be served on Twitter, Inc. (now known as "X") ("Twitter") a Subpoena to Produce Documents, Information, or Objects. A true and correct copy of said subpoena is attached hereto as **Exhibit 54**. On or about April 18, 2023, I caused to be served on Twitter, Inc. ("Twitter") a Subpoena to Produce Documents, Information, or Objects. A true and correct copy of said subpoena is attached hereto as **Exhibit 55**.

8. In response to the February 1st and April 18th subpoenas, Twitter produced responses and documents. A true and correct copy of the responses and documents produced by Twitter is attached hereto as **Exhibit 56**.

9. On or about October 18, 2022, I caused to be served on Namecheap, Inc. ("Namecheap") a Subpoena to Produce Documents, Information, or Objects. A true and correct copy of said subpoena is attached hereto as **Exhibit 57**.

10. In response to the October 18th subpoena, Namecheap produced responses and documents. A true and correct copy of the responses and documents produced by Namecheap is attached hereto as **Exhibit 58.**

11. On or about February 1, 2023, I caused to be served on Charter Communications, Inc. ("Charter") a Subpoena to Produce Documents, Information, or Objects. A true and correct copy of said subpoena is attached hereto as **Exhibit 59**.

12. In response to the February 1st subpoena, Charter produced responses and documents. A true and correct copy of the responses and documents produced by Namecheap is attached hereto as **Exhibit 60.**

13. In December, 2023 I caused a paralegal in my firm to print out the register of actions from the Los Angles Superior Court website for the action titled

*Her Enterprises et. Al. v. Jacky Jasper et. al.*, Los Angeles Superior Court, Case No. SC112442, filed April 29, 2011. A true and correct copy of the register of actions for that matter is attached as **Exhibit 50**.

14. In December 2023, I instructed an associate in my firm to obtain a copy of the transcript of the deposition taken of Darrick Angelone in the matter titled *Angelone v. Midway Rent A Car*, Los Angeles Superior Court, Central District Case No. BC485275. A true and correct copy of relevant portions of that deposition transcript the associate obtained is attached hereto as **Exhibit 63**.

15. My firm has been required to provide extensive legal services to address Defendants' unlawful actions. The legal services have included, but are not limited to, services related to my firm's efforts to obtain the Preliminary Injunction (e.g., preparing the pleadings and appearing at the hearing), to try to obtain Defendants' compliance with the Preliminary Injunction, to investigate and conduct discovery regarding Defendants' non-compliance with the Preliminary Injunction, and to prepare the instant Motion.

16. Charts prepared by my firm summarizing the aforementioned categories of legal services performed by my firm related to the Preliminary Injunction and this Motion is attached hereto as **Exhibit 61**. These charts are accurate summaries of the legal services performed which includes, for each date services were performed, the name of the attorney who provided the services, a description of the services performed, the amount of time spent performing the services described, the billing rate for the attorney who provided the services and a calculation of the amount billed by my firm to Plaintiffs for the services performed. The information included in this chart is based on my review of the invoices prepared by my firm and sent to Plaintiffs on a monthly basis. I excluded from the chart the legal services performed by my firm unrelated to the aforementioned categories.

17. I am personally familiar with the billing procedures at Sanders Roberts, LLP. Time for each matter is contemporaneously recorded by the attorney performing

1  the services by entry into billing software called Clio. The invoices are generated from
2  the Clio software, reviewed by the billing and/or responsible attorney for accuracy,
3  and once approved are sent to the client. All of the invoices for this case followed that
4  process, were approved by me and sent to Plaintiffs for payment.

5      18.   My hourly rate and the hourly rate for my partner, Stephanie Jones
6  Nojima, for this matter is $700. The hourly rate for E. Todd Trumper, senior counsel
7  at my firm, is $650 for this matter. Mr. Trumper has been practicing law since 1992.
8  The hourly rate for Anand Singh, senior counsel at my firm, is $550 per hour for this
9  matter. Mr. Singh has been practicing law since 2007. The hourly rate for Navdeep
10 Singh, senior counsel at my firm, is $550 for this matter. Mr. Singh has been
11 practicing law since 2012. The hourly rate for Zach Remijas, an associate at my firm,
12 is $450 for this matter. Mr. Remijas has been practicing law since 2021. The hourly
13 rate for Oluwatobi Agbelemose, an associate at my firm, is $450 for this matter. Mr.
14 Agbelemose has been practicing law since 2021. The hourly rate for Elizabeth
15 Sanders and Xiomara Escamilla, paralegals at my firm, is $130 for this matter.

16     19.   I am currently the Managing Partner at Sanders Roberts, LLP. Among
17 other experience as a litigator, I previously was a Partner and served as Chair of the
18 Entertainment Litigation Practice at Fox Rothschild LLP, a Partner (and founder of
19 the Los Angeles Office) of Blank Rome, LLP, a Partner at Dreier Stein & Kahan, LLP
20 and its predecessor firm, Alschuler Grossman Stein & Kahan, LLP. I have been
21 licensed to practice law since 1995. Ms. Nojima, the other lead lawyer on this matter,
22 was previously a Partner at Alston & Bird, LLP, from 2005 to 2020, and has also been
23 licensed to practice law since 1995.

24     20.   To assist in preparing this Motion, I reviewed the report entitled: 2022
25 Real Rate Report (which is the year the subject services commenced).

26     21.   That report has been cited in the Central District as a reliable source of
27 hourly rates for litigation. *See*, *Gilliam v. Levine*, 2022 U.S. Dist. Lexis 25202 *11;
28 2022 WL 401462 (C.D. Cal. January 24, 2022): The Real Rate Report is a useful



guidepost to assess the reasonableness of hourly rates in the Central District of California. *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 U.S. Dist. LEXIS 189545, 2015 WL 12765585, at *4-5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 U.S. Dist. LEXIS 135596, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Case 8:20-cv-02114-HDV-ADS Document 247 Filed 05/17/23 Page 5 of 10 Page ID #:8862 SUPPLEMENTAL DECLARATION, ETC. CASE NO. 8:20-cv-02114-SSS-ADSx SMITHERS LAW FIRM 5 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

22.   A summary of the pertinent billing rates is as set forth in Ex. 3 are: Median Hourly Rate of Los Angeles Litigation Partner is $725 (p. 16); Mean Hourly Rate of Los Angeles Litigation Partner is $799; Median Hourly Rate for Los Angeles Partner With 21 Years or More of Experience is $765; Mean Hourly Rate for Los Angeles Partner With 21 Years or More of Experience is $863; Median Hourly Rate for Intellectual Property – Other Litigation Partner With 21 or More Years of Experience is $625; and Mean Hourly Rate for Intellectual Property – Other Litigation Partner With 21 or More Years of Experience is $672. The requested hourly rates are reasonable as evidenced by the rates reported in the 2022 Real Rate Report.

23.   In August 2022, I had several communications with counsel for Defendants, J.T. Fox, Esq., about the parties' dispute. Those communications included several phone calls and emails, and my law partner Stephanie Jones Nojima

DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF PLAINTIFFS' MOTION FOR
ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED

participated in most if not all of those communications. The focus of those communications initially concerned our effort to get Defendants to provide the login credentials for the HEFG accounts to HEFG. However, Mr. Fox injected into the communications Defendants' argument that Plaintiffs failed to consider Angelone a partner in Hyper Engine. On that subject, I asked Mr. Fox to provide proof that supports Angelone's position that he should be considered a partner in Hyper Engine. In response, Mr. Fox provided by email information he stated he received from Angelone which purported to be evidentiary support for Angelone's position. This information was included in the documents the parties filed with the Court as part of the PI Motion. As stated in the PI Motion, when my clients reviewed the information Angelone provided, they identified confidential and private information from their email accounts that were not sent to Angelone and that he was not supposed to be aware of. It was therefore clear that Angelone had been going through the Taylors' emails. I told Mr. Fox that Angelone had been going through HEFG's emails without authorization and that his doing so was unlawful. Thereafter, Mr. Fox told me he spoke with Angelone and that he denied going through the Taylors' emails. All of the aforementioned communications occurred prior to the filing of this lawsuit. Having been put on notice that HEFG was aware that he had been unlawfully rummaging through the Taylors' emails, and in light of HEFG's claims against Angelone in this lawsuit, it appears that one of the reasons Angelone deleted the account on October 10, 2022, may have been to try to cover up the fact that he unlawfully accessed the emails, and was using that information in this litigation. Indeed, Angelone was surely aware that once the account was deleted, HEFG would be unable to conduct certain forensic analysis of the account that would have identified additional evidence of Angelone's unlawful conduct.

24. On January 9, 2024, I held a Local Rule 7-3 telephonic conference with Defendants' counsel, Ms. Sandra Calin of the Kramer, Deboer & Keane law firm. We discussed the bases for this motion. We did not reach an agreement on anything that

would have resolved the issues raised in the instant motion.

Executed this 5th day of February 2024, at Los Angeles, California.

_____
Lawrence C. Hinkle, II

DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED