LAWRENCE HINKLE (SBN 180551)
lhinkle@sandersroberts.com
STEPHANIE JONES NOJIMA (SBN 178453)
sjonesnojima@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for Plaintiffs and Counterclaim
Defendants
**HIDDEN EMPIRE HOLDINGS, LLC;
HYPER ENGINE, LLC; DEON
TAYLOR; AND THIRD-PARTY
DEFENDANT ROXANNE TAYLOR**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company,<br><br>Defendants. | **CASE NO.  2:22-cv-06515-MWF-AGR**<br><br>Assigned for all purposes to the Honorable Judge Michael W. Fitzgerald<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS FOR (1) VIOLATING THE PRELIMINARY INJUNCTION [CONTEMPT] AND (2) SPOLIATION OF EVIDENCE**<br><br>*[Filed concurrently with Plaintiffs' Supplemental Compendium of Evidence; Objections and Request to Strike Defendants' Expert Witness Disclosures and Corresponding Reports of Rick Watts; Response to Plaintiffs' Objections to Request for Judicial Notice; and Notice of Manual Filing or Lodging]*<br><br>Date:          March 4, 2024<br>Time:          10:00 a.m.<br>Courtroom:  5A |
| DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company | |

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

1

2
|                    | Counterclaimants,

HIDDEN EMPIRE HOLDINGS, LLC;
a Delaware limited lability company;
HYPER ENGINE, LLC; a California
limited liability company; DEON
TAYLOR, an individual,

|                    | Counterclaim
|                    | Defendants,

DARRICK ANGELONE, an individual;
AONE CREATIVE LLC, formerly
known as AONE ENTERTAINMENT
LLC, a Florida limited liability
company; ON CHAIN INNOVATIONS
LLC, a Florida limited liability
company,

|                    | Third-Party Plaintiffs,

|    | v.

ROXANNE TAYLOR, an individual,

|                    | Third-Party Defendant

///

///

///

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION…………………………………………………………………1

II.  LEGAL ARGUMENT………………………………………………………………4

    A.  Standard of Proof ...................................................................................4

    B.  Most of Defendants' Expert's Report is Irrelevant Because it Discusses Material that is Not at Issue in the Present Motion..............5

    C.  Plaintiffs Met Their Burden of Proof for Sanctions – Including Terminating Sanctions – Under Both Standards..................................6

        1.  Google Workspace Account…………………………………….. 6

        2.  Nine Icelandic Domains…………………………………….…11

        3.  Social Media Accounts……………………………………………14

    D.  Terminating Sanctions are Warranted for Defendants' Destruction of Evidence in Violation of the Preliminary Injunction ....................15

    E.  Coercive and Compensatory Fines Should be Imposed for Defendants' Violations of the Preliminary Injunction and Destruction of Evidence....................................................................19

III.  CONCLUSION ....................................................................................20

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Case No.: 2:22-cv-06515-RSWK-AGR

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015). ....................................................................................................4

*Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc*., 101 F. Supp. 3d 856 (C.D. Cal. 2013) ..............................................................................................................15

*Doe v. Bridges to Recovery*, No. 20-cv-348, 2021 WL 4690830, at *14 (C.D. Cal. May 19, 2021) ..................................................................................................15

*Garcia v. City of Los Angeles,* No. 19-cv-6182, 2020 WL 6586305, at *2 (C.D. Cal. Sept. 23, 2020) ....................................................................................................5

*Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ...........................................15

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ............................................................................................................5

*Kelly v. FashionNova, Inc.*, No. 23-cv-02360, 2023 WL 8006877, at *4 (C.D. Cal. Oct. 30, 2023)..................................................................................................4

*Leon v. IDXSys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)...........................................15

*RG Abrams Insurance v. Law Offices of C.R. Abrams* (C.D. Cal. 2022) 342 F.R.D. 461 ...............................................................................................................16

*Stone v. City & Cty. of S.F.*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) ........................5

*The Sunrider Corp. v. Bountiful Biotech Corp.* (C.D. Cal., Oct. 8, 2010, No. SACV 08-1339) 2010 WL 4590766 .......................................................................16

*United States v. DAS Corp.*, 18 F.4th 1032, 1039 (9th Cir. 2021).............................5

**Rules**

FRCP Rule 37(e)(2) ..................................................................................................15

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants' threadbare Opposition to Plaintiffs' Motion contains no credible evidence. What little "evidence" Defendants did submit should be stricken because Defendants did not timely submit it.[1]  Even if the Court decides to consider it, this "evidence" is still conclusory and fails to rebut Plaintiffs' overwhelming proof that Defendants intentionally destroyed and deleted records and material evidence and flagrantly violated this Court's September 30, 2022, Preliminary Injunction.

Having been caught red-handed, Defendants are attempting to misguide the Court by improperly characterizing Plaintiffs' evidence as information that "comes from the Internet, the World Wide Web, where something is found today and gone tomorrow." It is incredible that Defendants would use the phrase "found today and gone tomorrow" because that phrase perfectly describes what happened to Plaintiffs' historical emails, business records, and online properties after the Court entered the Preliminary Injunction. Angelone retaliated and, in less than two weeks, HEFG's

---

[1] Defendants' submission of an unsigned expert report and failure to submit responsive evidence to Plaintiffs' Motion is typical of their delay tactics and gamesmanship even after they were fully aware that they were facing the present Motion. As explained more fully in Plaintiffs' Response to Defendants' Expert Witness Disclosure filed concurrently herewith, Defendants served their initial Expert Witness Disclosure on January 22, 2024, designating George Edwards as their computer science expert without including a report by Edwards. On January 23, 2024, Defendants served a "Supplemental" Expert Witness Disclosure that purported to add a new damages expert, David Sack ("Sack"), but again it did not contain reports for either Edwards or Sack. On February 8, 2024, the Court granted Defendants *ex parte* application to continue the hearing date of the present Motion and continued their deadline to file their Opposition to February 26, 2024. On February 19, 2024, Plaintiffs agreed that Defendants could have until February 26, 2024, to make their rebuttal expert witness disclosure. The next day Defendants served Notice of Withdrawal of Expert David Sack and on February 22, 2024, advised that they were switching experts from Edwards to a new person, Rick Watts, the expert whose unsigned report Defendants filed in Opposition to the present Motion. It was not until February 27, 2024, that Defendants belatedly served an untimely signed report from Watts. (Ex. 65 [Supplemental Declaration of Lawrence C. Hinkle, II ("Reply Decl. of Hinkle")] to Plaintiffs' Supplemental Compendium of Exhibits filed March 4, 2024, ¶¶ 4-5 & Exs. 69 & 70 thereto.) Clearly, Defendants have no more regard for their disclosure obligations and deadlines than they have for the Court's Preliminary Injunction.

Google Workspace was deleted, the Icelandic domains were supposedly under the control of a third party, and HEFG's Twitter account no longer existed. Angelone's brazen destruction of evidence and properties raised "found today and gone tomorrow" to a new level.

Contrary to Defendants' contentions, Plaintiffs' evidence of Angelone's malicious contempt comes directly from forensic investigations conducted by an enterprise-level criminal and national security cyber security expert whose prior experience includes leading FBI investigations of pernicious cyber-actors like Angelone. Erin Burke of FTI directly observed evidence of Angelone using administrator credentials in the HEFG Google Workspace account on October 10, 2022, to suspend R.A. Taylor's account, which clearly proves that Angelone is the person who deleted the account on that same day. Over the course of nearly a year, Plaintiffs coordinated with their experts and subpoenaed and obtained systems logs and metadata from Google, X (formerly Twitter), domain name registration platform Namecheap, and Angelone's Internet Service Provider ("ISP") Charter Communications. Additionally, Plaintiffs uncovered court records – including deposition testimony of Angelone – and a judgment documenting Angelone's use of the name "Jacky Jasper" as an alias. Plaintiffs also worked directly with Google Workspace Support who confirmed *in writing* contemporaneously in its business records that Plaintiffs' Google Workspace account was deleted by the administrator – and Angelone was the only administrator of that account. The evidence before the Court is concrete and conclusive.

In response, Defendants submitted nothing but an unsigned and speculative draft report from an expert, relied on the October 13, 2022, Declaration from Angelone that has demonstrably false statements, and proffered a new perfunctory Declaration of Angelone dated February 26, 2024, in which he doubled down on his prior false testimony, and made the new false claim that he gave R.A. Taylor administrator rights to the Workspace account on October 6, 2022, a time his own

expert concedes Angelone had no such rights to assign to R.A. Taylor. In addition to being unsigned, the expert's report is flawed because it is conclusory and predominantly based on what the expert says he has "not seen" and "not found." Moreover, either because Angelone withheld important information or the expert ignored critical evidence that undermined his opinions, the expert's opinions are based upon cherry-picked parts of the substantial documentary evidence Plaintiffs filed with their Motion and are, therefore, wholly unreliable. Angelone's October 13, 2022, Declaration must be disregarded because it is filled with claims that have been proven to be untrue by irrefutable metadata and records from platform providers and ISPs. Angelone's new Declaration is untrustworthy because it simply contains discredited denials and reattaches his prior false Declaration.

Plaintiffs proved by a preponderance of the evidence that Angelone deleted HEFG's Google Workspace account and permanently erased over ten years of historical emails, business records, and data. By doing so, Angelone destroyed evidence that is critical to the prosecution of Plaintiffs' case and defense of Defendants' Cross-Complaint. In addition to destroying evidence, Angelone's actions caused devastating loss to Plaintiffs' business and operations. Among other important records, Plaintiffs lost contracts, scripts, financial information, production and budget information, correspondence, plans associated with actual and potential projects being developed by HEFG, and personnel records. Defendants' Opposition made no effort to refute the fact that evidence has been destroyed or that Plaintiffs have suffered irreparable loss as a result. Angelone's misconduct falls squarely within the definition of spoliation of evidence.

Further, Plaintiffs proved by clear and convincing evidence that Angelone disobeyed this Court's Preliminary Injunction and should be found in contempt for failing to transfer the Google Workspace account to HEFG, deleting the Workspace account, relabeling and erasing  HEFG's Twitter account, refusing to transfer the Icelandic domains and lying about supposedly not having control over them, and

stonewalling on transferring HEFG's Instagram account. Defendants' Opposition fell woefully short of meeting their burden of providing admissible and believable evidence showing why they should not be held in contempt. Moreover, their misconduct and destruction of evidence displayed an outright disregard for the authority of the Court and Angelone continues to flout the Court's authority by refusing to transfer the Icelandic domains to HEFG and by submitting multiple false declarations to the Court.

As Plaintiffs met their burdens of proof, the Court should grant Plaintiffs' Motion and enter terminating sanctions striking Defendants' Answer to the Complaint and their Cross-Complaint for Defendants' spoliation of evidence and contempt of court. Moreover, Defendants' flagrant violations of the Preliminary Injunction forced Plaintiffs to incur costs exceeding $650,820 to attempt to recover accounts, conduct extensive investigations, review and prepare evidence, and bring the present motion for relief.[2] Therefore, in addition to terminating sanctions, the Court should impose compensatory fines for violations of the Preliminary Injunction and spoliation of evidence and coercive fines of $2,500.00 per day to force Defendants to transfer the Icelandic domains to HEFG.

## II.   LEGAL ARGUMENT

### A.   <u>Standard of Proof</u>

The standard of proof for spoliation in the Ninth Circuit is proof by a preponderance of the evidence. *See Kelly v. FashionNova, Inc.*, No. 23-cv-02360, 2023 WL 8006877, at *4 (C.D. Cal. Oct. 30, 2023); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015).

For contempt, the Court must determine: "(1) that [the party] violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable

---

[2] This amount does not include the fees Plaintiffs incurred to review Defendants' Opposition to the present Motion, prepare Plaintiffs' Reply, and appear at the hearing of this Motion. Plaintiffs request the opportunity to add those additional fees.

interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *see also*, *United States v. DAS Corp.*, 18 F.4th 1032, 1039 (9th Cir. 2021). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order. *In re Dual-Deck*, *supra*, 10 F.3d at 695. Once the moving party shows disobedience by clear and convincing evidence, the burden then *shifts to the contemnors* to demonstrate why they were unable to comply." *Stone v. City & Cty. of S.F.*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (internal citation omitted). The contemnors "'. . .must show they took every reasonable step to comply.'" *Garcia v. City of Los Angeles,* No. 19-cv-6182, 2020 WL 6586305, at *2 (C.D. Cal. Sept. 23, 2020) (internal citation omitted).

As demonstrated in their Motion and demonstrated below, Plaintiffs met both burdens of proof.

## B.   Most of Defendants' Expert's Report is Irrelevant Because it Discusses Material that is Not at Issue in the Present Motion

Defendants are attempting to divert the Court's attention from the issues at hand by submitting an expert report that purports to address numerous facts and issues Plaintiffs did not raise or rely upon in their Motion. For example, Defendants' expert devotes a significant number of pages attempting to dispute evidence showing that Angelone intentionally interfered with R.A. Taylor's and HEFG's employees' access to HEFG's Google Workspace and emails in August and September 2022. (Dkt. 122, pp. 17-22, ¶¶ 53-64.) However, none of the experts' observations on this topic is relevant because Plaintiffs' Motion did not seek sanctions for Angelone's misconduct prior to the date the Court entered the Preliminary Injunction.

Similarly, Defendants' expert engages in conclusory arguments against the Declaration of Alex Izen regarding Angelone's malicious activity publishing false information about HEFG, Deon Taylor, and R.A. Taylor on his tabloid website, hollywoodstreetking.com. (Dkt. 122, pp. 33-41, ¶¶ 96-130.) While it is true that

Angelone's postings of misleading, untrue articles about Plaintiffs using the Jacky Jasper moniker were included in Mr. Izen's Declaration, Plaintiffs did not ask the Court to impose terminating sanctions or contempt sanctions against Defendants for this misconduct. Moreover, they did not rely upon this evidence in support of the Motion, other than to highlight the close association between Angelone and the name "Jacky Jasper." Accordingly, the experts' discussions regarding Angelone's interference with HEFG's access to its accounts before the Preliminary Injunction was issued and Angelone's defamatory, false postings on hollywoodstreetking.com are simply a red herring and should be disregarded by the Court.

### C.  **Plaintiffs Met Their Burden of Proof for Sanctions – Including Terminating Sanctions – Under Both Standards**

#### 1.  *Google Workspace Account*

Plaintiffs filed extensive Declarations from two experts at FTI Consulting, a detailed Declaration of Roxanne A. Taylor ("R.A. Taylor") of HEFG, and nearly 60 exhibits including authenticated business records received in response to subpoenas, that proved by a preponderance of evidence that Angelone intentionally deleted HEFG's Google Workspace account. (Burke Decl. [Dkt. 111-2], ¶¶ 22-50 & Exs. 5-6, 10-11, 14-16, 18-19, 53 & 60; R.A. Taylor, Decl. [Dkt. 111-1], ¶¶ 16-23.) Moreover, the evidence showed that Angelone's actions resulted in the permanent destruction of a decade of business records and emails, including *evidence that is critical to the prosecution of Plaintiff's case and defense of Defendants' Cross-Complaint*. (Burke Decl., ¶¶ 40-41 & 51; R.A. Taylor Decl., ¶¶ 30 & 32.) Further, R.A. Taylor explained in her Declaration how Angelone's deletion of the Workspace account caused *devastating loss to Plaintiffs' business*. (R.A. Taylor Decl., ¶¶ 27-30 & 32.)

Plaintiffs provided uncontroverted evidence that HEFG's Google Workspace account was deleted after the Court entered the Preliminary Injunction and that Angelone did it. On October 10, 2022, R.A. Taylor discovered that all of the

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

information on HEFG's account had been deleted. (R.A. Taylor Decl., ¶ 17.) In conjunction with Plaintiffs' expert, Ms. Burke, R.A. Taylor immediately began communicating with Google Workspace Administrative Support and Google's Recovery Team to recover HEFG's emails, records, and files. (*Id*., ¶¶ 17-22.)

Written documentation from Google established that the prior administrator (Angelone) deleted HEFG's Google Workspace account and historical records and that they could not be recovered. On approximately October 10, 2022, Google Workspace Administrative Support communicated that: "All the changes have been reverted back to earlier in the Google workspace account with the domain. As I have checked my inventory, I see *the account has already been deleted by the administrator* and the domain is ready to sign up." (Ex. 53, p. 53.20, emphasis added.) R.A. Taylor and Plaintiffs' experts continued their efforts to recover the contents of the Workspace account but received, instead, confirmation that everything had been deleted by the prior administrator. Specifically, Google advised on October 27, 2022, that the "*previous account has been completely deleted thus there is no possibility to restore these emails/user data*." (Ex. 14, emphasis added.) Further, Googe stated that "the deletion had been performed by the *existing admin in workspace* . . ." (*Ibid*., emphasis added.)

Google's Account Recovery Team explained again in writing on November 1, 2022, that "the deletion of *old account* was performed by the *existing super administrator* and *only administrator can delete the account* because administrator has control over the Google workspace . . . I would suggest you be in touch with the *existing/old admin of the previously deleted workspace account* with the domain hiddenempirefilmgroup.com." (Ex. 15, emphases added.) Finally, on November 8, 2022, Google sent R.A. Taylor another email confirming that historical emails and user accounts could not be recovered because the "previous iteration of the domain was deleted along with contents by the *previous existing admin* on 10/OCT/2022. . . *Once this account was reverted the admin deleted domain and domain was released*

7

. . . *Unfortunately the emails and the data that you are requiring to recover were part of the previous iteration of the domain and unfortunately those can't be recovered*." (Ex. 16, emphases added.)

Plaintiffs' evidence established that only an administrator can delete an account. (Burke Decl., ¶¶ 23 & 42.) Defendants' expert agrees that a user without administrator privileges cannot perform administrator functions such as assigning administrator privileges to another user. (Dkt. 122, ¶¶ 35-46.) This comports with the statements in emails from Google's Workspace Account Recovery Team. (Ex. 15.) Angelone acknowledged in his Declaration filed on September 28, 2022, that he was the only administrator on the account.[3] R.A. Taylor did not acquire any administrator privileges until she received a link to set up a Workspace account on the same domain (hiddenempirefilmgroup.com) as the previously existing account on October 10, 2022. (R.A. Taylor Decl., ¶ 16.) Therefore, the only person who could have deleted HEFG's Google Workspace account, including its historical business records and emails, was Angelone.

In response to Plaintiffs' evidence, Defendants proffered a summary denial but provided no evidence refuting Plaintiffs' facts or explaining how HEFG's Google Workspace account could have been deleted by anyone *except by Angelone*. Defendants' expert purports to dispute Plaintiffs' evidence that Angelone deleted the account by saying that the Google audit logs he reviewed "stop after October 7" and

---

[3]Specifically, Angelone stated that "Roxanne has never had administrator privileges and needed to contact me or someone at Aone in order to create, delete or update email accounts." (Dkt. 23-1, ¶ 12) Records indicate that beginning September 7, 2022, when R.A. Taylor unsuccessfully attempted to have Google change the administrator from Angelone to herself, until October 7, 2022, Google temporarily disabled Angelone's administrator privileges. (Burke Decl., ¶¶ 26-33.) However, administrator privileges "reverted" to Angelone on October 7, 2022. (Burke Decl., ¶ 38 & Ex. 10.) According to his report, *Defendants' expert agrees* that on October 7, 2022, "Google reinstated Angelone's admin privileges." (Dkt. 122, ¶ 35.) Therefore, there is no dispute that by October 7, 2022, Angelone had administrator privileges and could have complied with the Preliminary Injunction and transferred the account and administrator privileges to R.A. Taylor. Instead, he disobeyed the Preliminary Injunction by abusing his privileges and *deleting* the account and erasing Plaintiffs' historical records.

that he has "not found any other documentation that indicates when the Workspace was removed." (Dkt. 122, ¶ 42.) The date of deletion – whether it was October 7 or October 10 – is immaterial because it is undisputed that by October 7 Angelone's administrator privileged had been restored. (Burke Decl., ¶ 38 & Ex. 10; Dkt. 122, ¶ 35.) The point is that the previous administrator deleted the account and its contents, and no one other than Angelone had ever been the administrator. (Dkt. 23-1, ¶ 12; R.A. Taylor Decl., ¶¶ 10, 15 & 23.)  Angelone's statement in his September 26, 2024 Declaration, that he gave R.A. Taylor administrator privileges on October 6, 2022 and did not access the HEFG Google Workspace account after that date is both demonstrably false and contradicted by his own expert's opinions.  As Defendants' expert concedes, Angelone's previously suspended administrator privileges did not revert back to him until October 7, 2022, so it would have been impossible for him to transfer any such privileges to R.A. Taylor on October 6, 2022. (Dkt. 122, pp. 16-15, ¶ 35 & p. 15, ¶ 45; Ex. 64[4] [Reply Supplemental Declaration of Erin Burke ("Reply Decl. of Burke")], ¶¶ 3 & 4.) This is yet another of the litany of lies that Angelone has presented to this Court throughout these proceedings.

Further, the experts' opinion and statement of what he has "not found" is striking for its *omission* of important evidence that he obviously *ignored*. Plaintiffs submitted written correspondence from Google's Workspace Account Recovery Team that confirmed the account was deleted by the previous existing administrator, which is evidence neither Defendants nor their expert addresses. (Reply Decl. of Erin Burke, ¶ 7.) Defendants' expert either overlooked critical evidence or, just as Angelone conceals information from the Court, he kept evidence from his expert. Either way, the conclusions in the report are based on an incomplete reading of the

---

[4] Plaintiffs are filing concurrently herewith their Supplemental Compendium of Evidence in Support of Reply to Opposition to Plaintiffs' Motion for Order to Show Cause to include the Reply Supplemental Declaration of Erin Burke as Exhibit 64 and the Reply Supplemental Declaration of Lawrence C. Hinkle, II ("Reply Decl. of Hinkle"), as Exhibit 65, followed by Exhibits 66-70.

record and are not reliable evidence.

Plaintiffs also demonstrated that Angelone improperly accessed HEFG's Google Workspace account from his Los Angeles residential IP address as late as October 10, 2022, again in violation of the Preliminary Injunction. (Burke Decl., ¶¶ 44-47.) In response, Defendants' expert dubiously opines that, based on the facts "presented to [him]," it is unlikely that Angelone had access to the "new environment" on October 10. (Dkt. 122, ¶ 52.) Again, however, Defendants' expert glosses over important documentary evidence.

In particular, Ms. Burke reviewed the audit logs for HEFG's Google Workspace account and discovered that on October 10, 2022, before R.A. Taylor ever attempted to login, the IP address 2603:8000:df00:988f:90b8:f0ce:ab97:3f8d logged into HEFG's Google Workspace account and suspended  R.A. Taylor's account. According to records received from Charter Communications ("Charter") in response to a subpoena, that IP addressed is registered to *Angelone's mother*, Evonne Zummo, with the subscriber location being 2529 Griffth Park Blvd., Los Angeles, CA 90039, which is *Angelone's residence*. (Burke Decl., ¶ 47; Ex. 60, p.60.2; R.A. Taylor Decl., ¶ 31; Hinkle Decl., ¶ 14, Ex. 63, 14:11-20.) Defendants' expert made *no effort* to address the fact that the IP address associated with the October 10, 2022, entries on the subject audit logs correspond to a Charter internet service account that is registered to Angelone's mother and associated with Angelone's Los Angeles home, and he misconstrued the timeline of Angelone's access on October 10, 2022 to incorrectly opine that R.A. Taylor accessed the HEFG Google Workspace account before Angelone on that day, when the documentary evidence confirms that Angelone suspended R.A. Taylor's account over an hour *before* she first attempted to login. (Reply Decl. of Erin Burke, ¶¶ 10-11.) And again, this is an action Angelone could only perform with administrator privileges. (Dkt. 122, pp. 12-15, ¶¶ 35-46; Burke Decl., ¶ 23; Reply Decl. of Erin Burke, ¶ 5.) In response to Defendants' opposition, Ms. Burke recorded a video of herself accessing security events within the admin

console of the HEFG Google Workspace Account, which video again clearly documents Angelone's suspension of R.A. Taylor's account on October 10, 2022. (Reply Decl. of Erin Burke, ¶ 12; Ex. 64.)

Additionally, Defendants do not refute the fact that deletion of HEFG's Google Workspace account resulted in the permanent erasure of all of HEFG's historical emails, business records and data. Indeed, Angelone's new declaration and the report of Defendants' expert are both silent on this point. Therefore, it is undisputed that over ten years of Plaintiffs' records were permanently destroyed. Similarly, neither Angelone nor his expert denies the fact that the deletion caused the destruction of evidence that is necessary for Plaintiffs to prosecute their Complaint and defend against the Cross-Complaint. (R.A. Taylor Decl., ¶¶ 27 & 30.) Because Plaintiffs provided overwhelming evidence that Angelone deleted the Workspace account, and Defendants failed to dispute Plaintiffs' evidence establishing that the deletion irreparably harmed Plaintiffs' business and destroyed evidence, the only appropriate remedy is terminating sanctions for spoliation of evidence and contempt of court.

### 2.   *Nine Icelandic Domains*

Defendants Opposition scarcely addresses Plaintiffs' evidence that clearly established that Angelone failed and refused to transfer the Icelandic domains and still has control over them. (Opposition, p. 6:6-13 [Dkt. 118-6].) Their Opposition contains no citations to the record or evidence and simply repeats the false statement in Angelone's Declaration that he has not "every (sic) used the name "Jacky Jasper."

All the evidence demonstrates Angelone lied when he told Plaintiffs in early October 2022 that he could not comply with the Preliminary Injunction and transfer the Icelandic domains because they had expired and were now controlled by a third party. (Burke Decl., ¶¶ 52-56; Ex. 17, p. 17.2; Ex. 22, p. 22.1-2.) The truth is that the domains were set to auto-renew through at least August 6, 2023, and had not expired on August 6, 2022, as Angelone claimed in his October 13, 2022 declaration. (Ex. 13 [Angelone writing that "domains . . . expired on August 6th, 2022."]; Burke Decl., ¶

59 & Ex. 58, p. 58.13-15 [Namecheap records showing domains were set to auto-renew].) Indeed, Defendants' own expert refuted Angelone's false statements that the Icelandic domains had expired. (Dkt. 122, ¶¶ 66-67 ["I did my own research using the WHOIS database, likewise, confirming that the domains had recently been renewed and there had not been any recent transfers of the domains. The domains had been in the account since 2021."]; Reply Decl. of Erin Burke, ¶¶ 15-16; Exs. 23.)

Further, Plaintiffs' evidence established that the domains had not been transferred to a third party outside of Angelone's control. Rather, they were held in held in the name "Jacky Jasper" – a pseudonym that Angelone has long used. (Izen Decl., ¶¶ 7-10; Hinkle Decl., ¶ 14, Ex. 63, 58:1-59:11; Request for Judicial Notice, Exs. A-F.) Indeed, the Namecheap records show that Angelone originally registered all of the domains on behalf of HEFG using the name "Jacky Jasper." (Burke Decl, ¶ 59, Ex. 58, pp. 58.3-11.) Specifically, the records state that the user ID for each of the nine domains is "jackyjasper," the email address connected to that user is "jackyjasper@gmail.com," and the organization connected to that user is "Jacky Jasper Media." (*Ibid.*) Additionally, Plaintiffs' evidence showed when Angelone deactivated HEFG's Twitter account, he transferred it to "Jacky Jasper." (R.A Taylor Decl., ¶ 32; Burke Decl., ¶¶ 66-78; & Izen Decl. [Dkt. 111-3], ¶¶ 15-19; Exs. 24-29 & 53, p. 53.40, 56 & 58.)

In response, Defendants simply proffered their expert's opinion that concedes the documentary evidence inferentially *connects* Angelone to the "Jacky Jasper" alias but speciously claims the correlation is "coincidental." (Dkt. 122, p 27, section heading VIII(C)(iii).) The notion that all of the IP addresses, logins, and registrations linking Angelone to Jacky Jasper is coincidental is absurd and shows why Defendants' expert's report is patently unreliable. And, that expert ignores the fact that Angelone also transferred shared access of the aventviii.com domain held in the "jacky jasper" Namecheap account back to R.A. Taylor upon her request during the asset recovery process. (Burke Decl., ¶¶ 61-62; Reply Decl. of Erin Burke, ¶ 22; Exs.

24 & 58, pp. 58.13-15.) Angelone could not have transferred shared access to aventviii.com unless he had control over *all* the domains in the "jacky jasper" Namecheap account, *including the nine Icelandic domains*. Defendants' report and Opposition made no effort to address this evidence.

Likewise, Defendants' expert did not dispute the documents and Declaration of Ms. Burke proving that logins to Namecheap and Angelone's HEFG's Google Workspace account occurred from matching Los Angeles Charter IP addresses and within days of each other. Further, Angelone owns a home in Palm Springs and a matching Palm Springs based Charter IP address was also used to login to both Angelone's HEFG Google Workspace account and on August 17, 2022 to the "jacky jasper" Namecheap account, a day on which Angelone's family was confirmed to be in Palm Springs. (Reply Decl. of Erin Burke, ¶¶ 18-22; Exs. 24, 58 & 67; Reply Decl. of Hinkle, ¶ 2, Ex. 68.) The bottom line is that all of Plaintiffs' evidence establishes that Angelone falsely represented, under oath, that: (1) the domains expired on August 6, 2022; (2) a disinterested third-party owner of the domains existed that he was communicating with; and (3) he could not transfer the registrations to HEFG. (Dkt. 28-1, ¶ 4.) The only reason Angelone lied to Plaintiffs' forensic expert and the Court is because he wanted to keep the Icelandic domains while feigning an inability to comply with the Preliminary Injunction. Defendants blatantly defied the Court's Preliminary Injunction by refusing to transfer the Icelandic domains and Defendants should be sanctioned for their disobedience and contempt.

### 3.    *Social Media Accounts*

Angelone failed to transfer the two most important social media accounts HEFG had: Twitter: @hiddenempirefg and Instagram: @hiddenempirefilmgroup. (R. Taylor Decl., ¶ 32; Burke Decl., ¶¶ 66-78; Izen Decl., ¶¶ 15-19; Exs, 24-29.) Defendants' meager Opposition contains only one line addressing Plaintiffs' Motion and extensive evidence. Specifically, Defendants' simply say, "Again, the Declaration of Darrick Angelone filed with the Court on October 13, 2022, clearly

addresses this issue, as does the report of Rick Watts." (Opposition, p. 6:15-18 [Dkt. 118-6.) There are no citations to evidence, and Plaintiffs have already established that Angelone's declarations contained numerous falsehoods.

Defendants' expert's report chronicles events but does not rebut the Declarations of Erin Burke and Alex Izen or the documentary evidence showing that Angelone failed to transfer HEFG's Twitter account and Instagram account. As for the Twitter account, Defendants' expert quibbles over the exact date it was deleted but is unable to address the fact that, regardless of when it was deleted, Angelone was the only person who had ever had control over the original Twitter account and who could have deleted it on November 4, 2022, after he relabeled it @darrickdidit the day the Injunction issued. (Burke Decl., ¶¶ 67-72; Exs. 26-27; Ex. 53, p. 53.40; Ex. 56, pp. 56.4, 56.6, and 56.9; Ex. 58, p. 58.12; R.A. Taylor Decl., ¶¶ 11 & 32; Izen Decl., ¶¶ 15-19 & Ex. 55.) Moreover, the expert fails to dispute the fact that the Twitter return to Plaintiffs' subpoena proved that the "new" account was misappropriated on January 12, 2023, by the "Jacky Jasper" alias used by Angelone. (Burke Decl., ¶ 72; Ex. 56, p. 56.4.) Instead of transferring the original account Angelone relabeled it and then deleted it, all of which was a clear violation of the Preliminary Injunction.

Regarding the Instagram account, although Plaintiffs eventually obtained control through separate channels, Plaintiffs' evidence showed that Angelone disobeyed the Preliminary Injunction by engaging in obstructive behavior and gamesmanship. In particular, Angelone refused to identify the email address to which Meta sent a two-factor authentication request. Additionally, Angelone acknowledged that he had also received an alert sent to one of his accessible emails but still claimed he was unable to access the Instagram account to transfer it to HEFG as required by the Preliminary Injunction. (Burke Decl., ¶¶ 74-78; Exs. 28, pp. 28.2 & 28.4; Ex. 29.) As with the Twitter account, Defendants do not deny the accuracy of the exhibits or the fact that HEFG did not acquire access to the Instagram account from Angelone .

**D.** **Terminating Sanctions are Warranted for Defendants' Destruction of Evidence in Violation of the Preliminary Injunction**

Defendants base their argument against terminating sanctions chiefly upon an assertion that terminating sanctions should only be available after a party violates an order to produce evidence in response to discovery requests. That is an incorrect statement of the law. Terminating sanctions for spoliation are an appropriate remedy where a party destroys evidence *before discovery* is served – and even *before litigation commences* – where the party had "some notice" that the evidence was potentially relevant to litigation before it was destroyed. *Leon v. IDXSys. Corp*., 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed."); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) "Surely a finding of bad faith will suffice, but *so will simple notice of potential relevance to the litigation*." [emphasis added]); *Doe v. Bridges to Recovery*, No. 20-cv-348, 2021 WL 4690830, at *14 (C.D. Cal. May 19, 2021) ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve evidence, in pending or reasonably foreseeable litigation.") Additionally, Rule 37(e) authorizes the court to impose sanctions for contempt regardless of the stage of litigation or whether discovery has been served. Under FRCP Rule 37(e)(2), ESI spoliation remedies available to the Court include an order to dismiss the action or enter a default judgment. *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc*., 101 F. Supp. 3d 856, 868-69 (C.D. Cal. 2013).

Here, it is beyond dispute that Defendants had notice that HEFG's Google Workspace account and historical emails and records are  relevant to the litigation *because they were the subject of Plaintiffs' Complaint, their Motion for a Preliminary Injunction, and the Court's own Preliminary Injunction*. (Dkt. 26, pp. 5-6.) In addition to having an affirmative duty to preserve the evidence when the Complaint was filed (and even before then), this Court's Preliminary Injunction ordering Defendants to

15

Case No.: 2:22-cv-06515-MWF-AGR

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

transfer the Workspace account and all emails, data, and information to Plaintiffs clearly obligated Defendants to preserve Plaintiffs' records and property and to *not destroy the evidence*. Defendants' destruction of the evidence violated the law and further constituted contempt for willful disobedience of this Court's Order. It is nonsensical for Defendants to argue that terminating sanctions for spoliation of evidence cannot be awarded because discovery had yet to be served in this action when Angelone clearly destroyed evidence.

The cases cited by Defendants are inapposite because they do not address instances where a party flagrantly destroyed a decade of records and evidence in violation of a court's preliminary injunction. For example, *RG Abrams Insurance v. Law Offices of C.R. Abrams* (C.D. Cal. 2022) 342 F.R.D. 461, primarily involved ongoing discovery disputes regarding privilege logs, depositions, and questions of whether responding parties had fully complied with orders granting motions to compel. While there was a request for terminating sanctions over the loss of text messages when certain parties traded in their cell phones after litigation commenced, there was no allegation that the parties had violated a preliminary injunction by doing so. Further, the court found that terminating sanctions were not specifically related to the harm caused by the defendants and, unlike here, *there was not a finding of bad faith conduct*. (*Id*. at 519.) Even so, the court ordered adverse inference sanctions and jury instructions that information in text messages contained information that was unfavorable to the parties whose cell phones were no longer available (*Id*. at 521.) Similarly, in *The Sunrider Corp. v. Bountiful Biotech Corp*. (C.D. Cal., Oct. 8, 2010, No. SACV 08-1339) 2010 WL 4590766, there was no allegation or proof that a party intentionally destroyed the other party's entire database containing all of that party's historical records, emails, and data, thereby crippling the party's business and ability to prosecute the main action and defend against a cross-complaint.

In contrast to the facts in the cases cited by Defendants, the undisputed evidence here clearly shows *bad faith conduct* and the *irreparable harm and prejudice*

*Plaintiffs suffered as a result of Angelone's destruction of evidence.* Angelone's deletion of HEFG's Workspace account caused devastating loss to Plaintiffs. The account included every email that every HEFG employee and contractor sent or received from the HEFG account about HEFG's business. (R.A. Taylor Decl., ¶ 27.) Due to Angelone's actions, HEFG no longer has the following information:

- Contracts, scripts, budgets, financial information, production and development information, marketing efforts, correspondence with partners and distribution companies, revenue data and a host of other information pertaining to HEFG's motion pictures;

- contracts, budgets, financial information, production and development information, marketing efforts, correspondence with partners and supporters, revenue data and a host of other information pertaining to HEFG's initiatives associated with its philanthropic endeavors;

- All of the correspondence, documents, records, proposals, offers and plans associated with actual and potential projects being developed by HEFG and projects presented by third parties to HEFG for consideration;

- All day-to-day business records of HEFG concerning its business operations such as personnel records, insurance policies, lease agreements, and communications and contracts with vendors and contractors; and

- All of HEFG's financial and banking information including bank statements and records, data pertinent to tax filings and records, and income and expense data. (*Ibid.*)

Angelone's deletion of the HEFG's Google Workspace account in violation of the Preliminary Injunction has also substantially frustrated HEFG's ability to exploit its films and generate revenue. (*Id.* at ¶ 28.) Most of HEFG's documents that are necessary to provide "Deliverables" to licensors and buyers of HEFG's films were stored on HEFG's Workspace G-Drive that was deleted by Angelone. Recovery of

such information of such information has been extremely difficult, time consuming and sometimes impossible. (*Ibid*.) Additionally, while Angelone was HEFG's IT administrator, HEFG conducted much of its business by email. As a result of Angelone's deletion of all emails, Plaintiffs regularly have difficulty with ongoing operations because they are unable to find or retrieve information they need pertaining to their films. The damage is irreparable and it is extremely difficult to place a monetary figure on the substantial damages Plaintiffs have suffered and will continue to suffer. (*Id*. at ¶ 29.)

Of critical importance to Plaintiffs' Motion is the fact that the emails and data in the Workspace account that Angelone deleted *go to the heart of the claims and defenses asserted by the parties in this litigation*. The great majority of HEFG's communications with Angelone were by email and contained in that account. The records evidencing the business relationship between HEFG and Angelone were also in that account, including any contracts, invoices, records pertaining to the performance of services, and payment for services. In addition, information that would show Angelone unlawfully accessed HEFG's Google Workspace account and social media accounts and breached his contract with HEFG has been deleted by him. (*Id* at ¶ 30.)

Further, Angelone's deletion destroyed vital forensic evidence. For example, once the account was deleted and could no longer accessed *by anyone*, Plaintiffs' forensic expert lost the ability to investigate the extent to which Angelone had accessed and stolen information from HEFG's individual user accounts. Also, the information deleted is pertinent to all of the claims Angelone asserted against the Plaintiffs and against R.A. Taylor personally in his counterclaims, but now that information cannot be recovered. Therefore, Angelone *intentionally* made it so that Plaintiffs cannot adequately defend against those claims. (*Ibid*.)

Defendants made absolutely no attempt to refute Plaintiffs' evidence showing they suffered irreparable harm. Their Opposition is silent on this point as is the report

provided by their expert. Thus, the Court should find that Plaintiffs' evidence of harm and substantial prejudice is undisputed and impose terminating sanctions accordingly.

### E. Coercive and Compensatory Fines Should be Imposed for Defendants' Violations of the Preliminary Injunction and Destruction of Evidence

Just as Defendants failed to show why terminating sanctions should not be imposed, they failed to adequately address Plaintiffs' cases and evidence in favor of compensatory and coercive fines. Their only basis for arguing against compensatory fines for contempt of court is that discovery has only recently begun and that sanctions should be evaluated on a case-by-case basis. Both of these arguments are misplaced and provide no basis for denying Plaintiffs' Motion.

It is ironic that one of Defendants' arguments against ordering sanctions is the present stage of discovery and the fact that discovery responses are not yet due. In addition to debilitating Plaintiffs' ability to prosecute their action and defend the Cross-Complaint and Third-Party Complaint, Angelone's destruction of Plaintiffs' evidence made it impossible for Plaintiffs to produce documents and provide meaningful answers to discovery. Having lost over ten years of records, emails, and data, Plaintiffs' hands have been tied behind their back as a result of Angelone's deletion of the Google Workspace account in violation of the Court's Preliminary Injunction. Defendants' reference to discovery provides another clear reason why the Court should impose terminating sanctions as well as compensatory and coercive fines.

As for sanctions being case-specific, if there ever was a case for imposing contempt sanctions for violating a preliminary injunction, *this is that case*. From the outset of the action, Angelone has engaged in willful bad faith misappropriation of Plaintiffs' assets and destruction of evidence. These were intentional retaliatory acts meant to harm Plaintiffs because Angelone realized that Plaintiffs were not willing to succumb to his previous efforts to extort them.

Angelone's response to the Preliminary Injunction was to take whatever measures were available to him to create as much harm to Plaintiffs as possible while using subterfuge to cover his tracks. Angelone impeded Plaintiffs' efforts to effectuate the transfer of assets by lying to Plaintiffs' expert and misleading the parties and the Court regarding his "Jacky Jasper" alias. Worse, he filed two false Declarations with the Court claiming to have complied with the Preliminary Injunction when the uncontroverted facts show that he not only disobeyed the Order but intentionally destroyed records and evidence in the process. Defendants utterly failed to provide any credible evidence in opposition to Plaintiffs' Motion, and the Court should issue compensatory and coercive fines in addition to striking Defendants' Answer and Cross-Complaint.

## III.  CONCLUSION

Plaintiffs met their burden of proving spoliation of evidence by a preponderance of the evidence and Defendants' contempt of court by clear and convincing evidence. In response to Plaintiffs' evidence, Defendants simply offered a speculative unsigned report from an expert that was based upon an incomplete review of the record and another false Declaration from Angelone. Accordingly, it is undisputed that Angelone is in contempt of court and guilty of spoliation of evidence. In addition to issuing the terminating, compensatory and coercive sanctions requested, Plaintiffs request that the Court use its discretion to impose any additional sanctions and relief it determines are appropriate for Defendants' egregious disobedience of the Preliminary Injunction and spoliation of evidence.

Dated:  March 4, 2024

**SANDERS ROBERTS LLP**

By: _Lawrence E. Hinkle_

Lawrence Hinkle, Esq.
Attorneys for Plaintiffs
**HIDDEN EMPIRE HOLDINGS, LLC;
HYPER ENGINE, LLC; DEON TAYLOR;
AND THIRD-PARTY DEFENDANT
ROXANNE TAYLOR**

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

1  **"I hereby attest that I have on file all holographic signatures corresponding to**

2  **any signatures (/s/) within this e-filed document."**

3

4                              Lawrence Hinkle

5

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS

1

**PROOF OF SERVICE**

2

(CODE CIV. PROC. § 1013A(3))

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 1055 West 7th Street, Los Angeles, CA 90017. My electronic service address is XXX@sandersroberts.com.

5

6

On March 4, 2024, I served the following document(s) described as **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANTS** on the interested parties in this action as follows:

7

8

9

*Attorneys for Defendants, Darrick Angelone, AOne Creative, LLC, On Chain Innovations, LLC*

*Co-Counsel for Defendants, Darrick Angelone, AOne Creative, LLC, On Chain Innovations, LLC*

10

11

**JEFFREY S. KRAMER, ESQ.**
**SANDRA CALIN, ESQ.**
**KRAMER, DEBOER & KEANE**
A Limited Liability Partnership
Including Professional Corporations
21860 Burbank Boulevard, Suite 370
Woodland Hills, California 91367
Tel: (818) 657-0255
Fax: (818) 657-0256
jkramer@kdeklaw.com
scalin@kdeklaw.com

**J. T. FOX, ESQ.**
**JUSTIN KIAN, ESQ.**
**LAW OFFICES OF JT FOX, APC**
556 S. Fair Oaks Avenue, Suite 444
Pasadena, California 91105
Telephone: (888) 750-5530
Fax: (888) 750-5530
jt@jtfoxlaw.com

12

13

14

15

16

17

18

☒ **VIA ELECTRONIC MAIL** I caused the documents to be transmitted electronically through the approved vendor for e-filing by electronic service on the party(s) identified on the attached service list using the e-mail address(es) shown I did not receive, within a reasonable time after transmission, any email or other indication that the transmission(s) were unsuccessful.

19

20

21

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

Executed on March 4, 2024, at Los Angeles, California.

23

24

Rhonda Bruton

*Rhonda Bruton*

25

(Type or print name)

(Signature)

26

27

28

Case No.: