Lawrence Hinkle (SBN 180551)
lhinkle@sandersroberts.com
Stephanie Jones Nojima (SBN 178453)
sjonesnojima@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

Attorneys for Plaintiffs and Cross-
Defendants
**HIDDEN EMPIRE HOLDINGS, LLC;
HYPER ENGINE, LLC, AND DEON
TAYLOR AND THIRD-PARY
DEFENDANT ROXANNE TAYLOR**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE, LLC formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS, LLC, a Florida limited liability company,<br><br>Defendants. | **CASE NO.  2:22-cv-06515-MWF-AGR**<br><br>Assigned for all purposes to the Honorable Michael W. Fitzgerald<br><br>**DECLARATION OF LAWRENCE C. HINKLE, II IN SUPPORT OF REQUEST FOR ZOOM STATUS CONFERENCE**<br><br>[Filed Concurrently with Request for Zoom Status Conference]<br><br>Complaint Filed:   September 12, 2022<br>Trial Date: December 10, 2024 |

DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF REQUEST FOR ZOOM STATUS
CONFERENCE

DARRICK ANGELONE, an individual;
AONE CREATIVE LLC, formerly
known as AONE ENTERTAINMENT
LLC, a Florida limited liability
company; ON CHAIN INNOVATIONS
LLC, a Florida limited liability
company

     Counterclaimants,


HIDDEN EMPIRE HOLDINGS, LLC;
a Delaware limited lability company;
HYPER ENGINE, LLC; a California
limited liability company; DEON
TAYLOR, an individual,

     Counterclaim
     Defendants,

DARRICK ANGELONE, an individual;
AONE CREATIVE LLC, formerly
known as AONE ENTERTAINMENT
LLC, a Florida limited liability
company; ON CHAIN INNOVATIONS
LLC, a Florida limited liability
company,

     Third-Party Plaintiffs,


  v.

ROXANNE TAYLOR, an individual,

Third-Party Defendant

2          Case No.: 2:22-cv-06515-MWF-AGR

DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF REQUEST FOR ZOOM STATUS
CONFERENCE

## **DECLARATION OF LAWRENCE C. HINKLE, II**

I, Lawrence C. Hinkle, II, declare as follows:

1.      I am an attorney admitted to practice in all the Courts in the state of California, and am an attorney at Sanders Roberts LLP, counsel of record for Plaintiffs Hidden Empire Holdings, LLC. ("HEFG"), Hyper Engine, LLC ("Hyper Engine") and Deon Taylor. I offer this Declaration in support of Plaintiffs' Request for Zoom Status Conference. The facts set forth in this declaration are based on my personal knowledge, except where otherwise noted, and, if called to testify, I could and would competently testify thereto.

2.      A true and correct copy of the transcript of the March 18, 2024 hearing is attached hereto as Exhibit 1.

3.      Following the March 18, 2024 hearing, and the Court's March 20, 2024 Order directing Sean Merrick to appear at the evidentiary hearing concerning HEFG's Motion for Terminating Sanctions, my law partner Stephanie Jones Nojima and I communicated with counsel for Defendants by email about Mr. Merrick and whether he will testify at the evidentiary hearing. A true and correct copy of said emails that were exchanged during the period March 21, 2024 through March 28, 2024 are attached hereto as Exhibit 2.

Executed this 28th day of March, 2024, at Los Angeles, California.

_Lawrence C. Hinkle_

_____

Lawrence C. Hinkle, II

DECLARATION OF LAWRENCE C. HINKLE, II, IN SUPPORT OF REQUEST FOR A ZOOM STATUS CONFERENCE

# Exhibit 1

```
108:57:59              UNITED STATES DISTRICT COURT

  2              CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

  3              HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

  4

  5

         HIDDEN EMPIRE HOLDINGS, LLC,     )
  6      et al.,                          )
                                          )
  7              Plaintiffs,              )
                                          )
  8                   vs.                 )   2:22-CV-6515-MWF
                                          )
  9      DARRICK ANGELONE, et al.,        )
                                          )
 10              Defendants.              )
         _____

 11

 12

 13              REPORTER'S TRANSCRIPT OF HEARING

 14                   Los Angeles, California

 15                   Monday, March 18, 2024

 16

 17

 18          _____

 19

 20

 21

 22

 23              AMY DIAZ, RPR, CRR, FCRR
                 Federal Official Reporter
                 350 West 1st Street, #4455
 24              Los Angeles, CA 90012

 25
             Please order court transcripts here:  www.amydiazfedreporter.com
```

1        APPEARANCES OF COUNSEL:

2

         For the Plaintiffs:
3

4                        SANDERS ROBERTS LLP
                         By:   Lawrence Hinkle, Attorney at Law
5                              Stephanie Nojima, Attorney at Law
                         1055 West 7th Street, Suite 3200
6                        Los Angeles, California 90017

7

8

9        For the Defendants:

10                       KRAMER DEBOER & KEANE
                         By:  Sandra Calin, Attorney at Law
11                       21860 Burbank Boulevard, Suite 370
                         Woodland Hills, California 91367

12
                         LAW OFFICES OF JT FOX APC
13                       By:  Justin Kian, Attorney at Law
                         556 South Fair Oaks Avenue, Suite 444
14                       Pasadena, California 91105

15

16

17

18

19

20

21

22

23

24

25

                    AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

| | |
|---|---|
| 1 09:10:38 | THE CLERK:  Calling item number one, case number |
| 2 09:10:41 | CV-22-6515-MWF, Hidden Empire Holdings, LLC vs. Darrick |
| 3 09:10:48 | Angelone, et al. |
| 4 09:10:50 | Counsel, please rise and state your appearance for |
| 5 09:10:53 | the record. |
| 6 09:10:53 | MR. HINKLE:  Good morning, Your Honor.  Lawrence |
| 7 09:10:55 | Hinkle appearing on behalf of the plaintiffs. |
| 8 09:10:56 | MS. NOJIMA:  Good morning, Your Honor.  Stephanie |
| 9 09:10:58 | Nojima, also appearing on behalf of the plaintiffs. |
| 10 09:11:00 | THE COURT:  Good morning. |
| 11 09:11:05 | MS. CALIN:  Good morning, Your Honor.  Sandra Calin |
| 12 09:11:09 | for the defendants. |
| 13 09:11:10 | MR. KIAN:  Good morning, Your Honor.  Justin Kian |
| 14 09:11:14 | for the defendants. |
| 15 09:11:14 | MS. CALIN:  Mr. Angelone is also here. |
| 16 09:11:16 | THE COURT:  Good morning, Mr. Angelone, and good |
| 17 09:11:16 | morning, counsel. |
| 18 09:11:17 | We are here on the motion for sanctions arising for |
| 19 09:11:23 | two reasons, the first, the alleged violation of the |
| 20 09:11:28 | preliminary injunction; and second, the discovery violation |
| 21 09:11:36 | by way of spoliation. |
| 22 09:11:38 | So I've given you a tentative.  It does seem to me |
| 23 09:11:42 | that sanctions would be available for either of those |
| 24 09:11:50 | reasons, and I've indicated what I think the attorney's fees |
| 25 09:11:55 | should be. |

09:11:56  So let me hear first for counsel for the defendants.

09:12:02  MS. CALIN:  Thank you, Your Honor.

09:12:03  There are a couple of issues, and I think as I

09:12:08  mentioned in my brief, there are factual issues.  I think

09:12:12  that Mr. Angelone can address some of the factual issues.

09:12:16  And I believe Your Honor asked him to be here, I assume for

09:12:20  that reason.

09:12:20  So there are a number of issues.  First, with

09:12:25  respect to the Google Workspace account, we submitted the

09:12:27  report of our expert, Rick Watts, who has indicated that he

09:12:33  looked at the Google activity logs.  This is attached to the

09:12:38  supplemental declaration as an exhibit, and it's Mr. Watts's

09:12:43  final report at page 14, paragraph 39.  And he states that

09:12:50  the Google Workspace activity log does not show that

09:12:56  Mr. Angelone accessed the site, and did any deletion of any

09:13:00  of the workspace; and in fact, he could not find any evidence

09:13:03  that the workspace had been deleted.

09:13:06  THE COURT:  I mean, then where is the information

09:13:08  then?

09:13:09  MS. CALIN:  I'm sorry?

09:13:10  THE COURT:  Where is it?

09:13:11  MS. CALIN:  I don't know.

09:13:14  THE COURT:  But Google says the only way it could

09:13:16  have been deleted would have been for the administrator, or

09:13:18  the one phrase, the super administrator.  There was no

1  09:13:21  administrator except for Mr. Angelone.

2  09:13:23      MS. CALIN:  Well, at that time, I don't believe

3  09:13:25  Mr. Angelone was the administrator on October 10th when this

4  09:13:28  was supposedly deleted.  He was not the administrator.

5  09:13:31      THE COURT:  But what I'm saying is that no one else

6  09:13:34  was the administrator because there was either a lapse or it

7  09:13:38  reverted back to him.

8  09:13:40      MS. CALIN:  Roxanne Taylor was the administrator at

9  09:13:44  that point, but she had been named the administrator, I

10 09:13:47  believe on October 6th.

11 09:13:47      Is that correct?

12 09:13:47      MR. ANGELONE:  October 6th.

13 09:13:48      MS. CALIN:  October 6th she was named the

14 09:13:50  administrator.

15 09:13:51      THE COURT:  Yeah, but was never able to exercise

16 09:13:52  that on evidence that is largely undisputed.

17 09:13:57      But anyway, go ahead with your argument, please.

18 09:13:59      MS. CALIN:  So the other issues, Your Honor has

19 09:14:03  imposed a course of sanctions for each day that Mr. Angelone

20 09:14:07  does not do certain things, and it's his contention that he

21 09:14:10  could not do those things.

22 09:14:12      The supposed nine Icelandic domains that need to be

23 09:14:18  returned to the plaintiffs, he has no access to those.  They

24 09:14:21  are owned by Sean Merrick, and he has -- he has the documents

25 09:14:26  to show that Mr. Merrick is now the owner of those domains.

1  09:14:30    Mr. Angelone cannot transfer them.

2  09:14:33            THE COURT:  All right.  Let me -- and I'll --

3  09:14:37    certainly, you will have much more opportunity to argue, but

4  09:14:41    let me just briefly hear from the plaintiffs in regard to two

5  09:14:45    things:  One is Mr. Watts's report, and why you feel it

6  09:14:51    doesn't, at a minimum, raise factual issues; and then second,

7  09:14:54    this assertion that we just heard about the owner of the

8  09:14:58    domains.

9  09:14:59            MR. HINKLE:  Thank you, Your Honor.

10 09:15:01            First, with respect to Mr. Watts's report, we

11 09:15:06    consider the entire report to be unreliable for numerous

12 09:15:10    respects:  Mr. Watts's report does not address most of the

13 09:15:16    evidence that was presented showing that the Google Workspace

14 09:15:20    account was deleted.

15 09:15:22            For example, there isn't a single reference in his

16 09:15:25    report to all of the notes that Your Honor referenced from

17 09:15:28    Google, stating that only the administrator of the account

18 09:15:33    can delete the account; and also, that it was the prior

19 09:15:38    administrator, who was only Mr. Angelone, that could delete

20 09:15:42    the account.

21 09:15:43            There are numerous more examples of that, and

22 09:15:46    Mr. Watts seemingly focuses on one issue, which is the

23 09:15:50    administrator logs, which he claimed was the only evidence

24 09:15:57    that shows that Mr. Angelone did not delete the account.

25 09:16:02            But even that, Your Honor, was refuted by the

1 09:16:05   evidence, including all of the ISP logs.

2 09:16:10         One of the things that jumps out at you when you

3 09:16:13   read Mr. Watts's report, is his own statement that

4 09:16:18   Mr. Angelone received his administrative privileges back on

5 09:16:26   October 7th.  That is in Mr. Watts's report.  However,

6 09:16:30   Mr. Angelone in his declaration states that he gave Ms.

7 09:16:34   Taylor the administrator rights back on the 6th.  Obviously,

8 09:16:39   that is in conflict, and obviously, it's another indication

9 09:16:42   that Mr. Angelone is not telling the truth.  And then there

10 09:16:46   is no explanation from Mr. Watts as to what happened after

11 09:16:52   that.

12 09:16:53         Mr. Watts also does not even address the notion that

13 09:17:00   Google returned the -- or the new account that Mr. Angelone

14 09:17:05   is saying that Ms. Taylor received was the account that was

15 09:17:10   the new account that was only available because Mr. Angelone

16 09:17:16   had deleted the account.

17 09:17:17         I mean, so we could go on and on and on with

18 09:17:20   different examples as to why Mr. Watts's report is entirely

19 09:17:26   unreliable, and in essence, to the extent he does say things,

20 09:17:32   they are consistent with the plaintiffs' position in this

21 09:17:34   case.

22 09:17:35         THE COURT:  All right.  Let me -- let's go back to

23 09:17:38   the defense.

24 09:17:39         What further arguments on the defense, and why there

25 09:17:42   is not clear and convincing evidence of the violations of

109:17:46   both the preliminary injunction and then the spoliation.

209:17:50          MS. CALIN:  Your Honor, it's our position that a lot

309:17:55   of the information that Ms. Burke, plaintiffs' expert, is

409:18:00   relying on is not based on actual facts, but on speculation.

509:18:05          As Mr. Watts -- and I disagree with Mr. Hinkle

609:18:09   regarding Mr. Watts's report.  I believe that he did address

709:18:13   all of the points in Ms. Burke's report, and he found that

809:18:19   there was absolutely no actual hard evidence to show that

909:18:25   Mr. Angelone accessed the Google Workspace account and

1009:18:30   deleted it.

1109:18:31          And I think for a full inquiry we need to at least

1209:18:35   have a hearing with all the parties -- we haven't even taken

1309:18:39   depositions yet, so we don't know what Ms. Taylor did with

1409:18:42   respect to her use of the Workspace.  Her declaration

1509:18:46   contains a number of allegations which my client disputes.

1609:18:51   And I think we need to be able to depose the experts, both

1709:18:56   experts, both Ms. Burke and Mr. Watts, to explain the reasons

1809:18:59   for their findings.  And this is just simply too early a

1909:19:05   stage to grant this kind of very severe sanction to

2009:19:08   Mr. Angelone.

2109:19:09          This is an area that is highly complex, and frankly,

2209:19:15   I'm not sure I completely understand how these domains work.

2309:19:19   But the fact is, you have to look at what is available in

2409:19:24   terms of the forensic evidence.

2509:19:27          And what Mr. Watts has said is looking at the

1 09:19:31  documents produced by Google, there is simply no evidence

2 09:19:34  that Mr. Angelone actually did have the kinds of privileges,

3 09:19:37  or that he did delete the Workspace.  And I think that it's

4 09:19:43  conjecture to say that he did.

5 09:19:45          If Your Honor would like, you can certainly ask

6 09:19:49  Mr. Angelone questions regarding that issue.

7 09:19:52          THE COURT:  Look, if he -- if we are going to go

8 09:19:55  down that route, then he'll be put under oath.  He will

9 09:19:59  testify.  He will be subject to the penalties for perjury.

10 09:20:02  He will be cross-examined.  He will face the risk of my

11 09:20:05  sending the transcript to the U.S. Attorney's Office for

12 09:20:08  their examination.  I'm just not going to ask him questions

13 09:20:10  while he's sitting there.

14 09:20:12          The -- look, Mr. Angelone may face sanctions, either

15 09:20:25  because of the attorney's fees, or because of what the jury

16 09:20:28  is instructed in regard to the spoliation.

17 09:20:31          The greater risk to him is obviously the violation

18 09:20:35  of the preliminary injunction, because that was not an order

19 09:20:39  from the plaintiffs, it was an order of the Court.

20 09:20:42          And I'll impose the money.  If he says, which might

21 09:20:47  be plausible, especially if he's going to owe a huge amount

22 09:20:50  in attorney's fees, that he simply can't afford that amount,

23 09:20:53  then the default would be to imprison him, the same way

24 09:20:57  someone who doesn't testify.  I can certainly do that on

25 09:21:01  civil.  And I will give a pen and the documents he needs to

transfer everything, and he'll either cooperate with that, or

he won't, and he'll sit in jail until he's willing to do

that.  I won't do that without obviously hearing -- letting

him be examined and cross-examined, but that is the risk that

he's facing.  It's a much greater risk than the spoliation.

Even if I were to credit what Mr. Watts is saying

about the spoliation, and it seems to me the plaintiffs have

done a good job of indicating why it was deleted, and the

only possible person was Mr. Angelone, like I said, that is

simply not enough, because there is still all the other

issues which have been raised, including the links to his

house and to the alias, which he has admitted under oath that

he used.

So I haven't heard you address that at all.

MS. CALIN:  Your Honor, so again, this use of the

Jacky Jasper name, Mr. Angelone testified in the prior case

not that he was Jacky Jasper, but that I believe that he was

associated with that name through another individual.

THE COURT:  And in this case, he testified by

signing a declaration under oath that he had nothing to do

with that name.  Those two things seem flatly inconsistent.

And I remind you that it is possible, for a perjury

violation, to convict solely on the basis of two flatly

inconsistent statements under oath.  The jury is free to

convict for perjury if on one occasion the defendant said the

09:22:30  1  light is red -- was red, and on the second occasion said the

09:22:34  2  light was green, without having to find beyond a reasonable

09:22:37  3  doubt whether the light was red or green.  The jury doesn't

09:22:39  4  find that the light was red or green, the jury determines

09:22:42  5  that the defendant is lying.

09:22:45  6       MS. CALIN:  I understand, Your Honor.

09:22:46  7       Again, it's Mr. Angelone's position that the name

09:22:50  8  Jacky Jasper is used by this individual Sean Merrick, who

09:22:54  9  also owns the so-called nine Icelandic domains.

09:22:59  10      And, again, Mr. Angelone has no control over those.

09:23:02  11  We have documents to show that those domains are registered

09:23:05  12  to an individual named Sean Merrick.

09:23:07  13      THE COURT:  And have those been provided to the

09:23:09  14  defense?  I mean, to the plaintiffs?

09:23:16  15      MR. ANGELONE:  It's their discovery.

09:23:16  16      MS. CALIN:  Apparently, this is the plaintiffs'

09:23:18  17  discovery.  It was sent to counsel.  Precise Subpoena Service

09:23:28  18  subpoenaed these records, and they were sent to plaintiffs'

09:23:30  19  counsel.

09:23:30  20      THE COURT:  All right.  Again, what is the

09:23:33  21  plaintiffs' response to Sean Merrick?

09:23:40  22      MR. HINKLE:  Thank you, Your Honor.

09:23:44  23      Jacky Jasper is a, at least a moniker pseudonym used

09:23:51  24  by Angelone in numerous ways over the course of many, many

09:23:55  25  years.  The subpoena return that counsel for the defendant is

109:24:00   referring to provides a lot of information about who the
209:24:05   owner of the Icelandic domain is.
309:24:09        On that subpoena return, there are numerous
409:24:11   references to Jacky Jasper.  There is an e-mail address for
509:24:17   Jacky Jasper.  There is the owner, the owner, the
609:24:20   organization that is referred to as the owner of the -- all
709:24:25   of the domains is Jacky Jasper.
809:24:28        THE COURT:  Counsel, my question was about Sean
909:24:30   Merrick.
1009:24:31        MR. HINKLE:  I believe that there is a name Sean
1109:24:35   Merrick on the return, and all that name -- we don't know who
1209:24:40   Sean Merrick is, but the point, Your Honor, is simply that,
1309:24:46   again, we have a connection between Mr. Angelone, and the
1409:24:51   name Jacky Jasper, and the Icelandic domains.
1509:24:57        Whether Sean Merrick is an actual real person or
1609:25:00   not, we don't know.  We certainly looked for a person named
1709:25:04   Sean Merrick; haven't found a person named Sean Merrick.  But
1809:25:08   even if Sean Merrick is an actual person, we know that Sean
1909:25:12   Merrick is related to Jacky Jasper based on the returns.  And
2009:25:16   we also know that Your Honor -- in Your Honor's order, that
2109:25:20   the conduct of Mr. Angelone would violate the preliminary
2209:25:28   injunction if, in fact, there is another person aiding and
2309:25:31   abetting him in the course of his violations.
2409:25:34        THE COURT:  All right.  And what is the -- thank
2509:25:37   you, counsel.  What is the plaintiffs' position as to who

09:25:40  Sean Merrick is, why he would have an interest in these

09:25:44  domain names, what prompted him to get involved in this?

09:25:47  What is -- or is the plaintiff -- I mean, is the defense

09:25:51  position here that Sean Merrick is just as great a mystery to

09:25:58  the defense as he is to the plaintiffs?

09:26:01      MS. CALIN:  He's a real person, Your Honor, and

09:26:03  Mr. Angelone knows him.

09:26:04      At the very least, what we would like to do is allow

09:26:08  time to submit this information to Your Honor to take a look

09:26:12  at.

09:26:12      In fact, the name Jacky Jasper has been used by

09:26:16  other individuals, as well.  It's not something that is --

09:26:19  that is only used in this instance.  But Sean Merrick, who is

09:26:25  a real person that we can try to get a declaration from

09:26:28  Mr. Merrick -- is that possible?

09:26:28      MR. ANGELONE:  We can.

09:26:30      MS. CALIN:  We can get a declaration from

09:26:32  Mr. Merrick indicating that he is, in fact, or he uses the

09:26:35  name Jacky Jasper.

09:26:37      But I can provide information to Your Honor showing

09:26:39  that other individuals also use that name.  So we cannot say

09:26:44  that Jacky Jasper, although mentioned in this document, is

09:26:49  Mr. Angelone, because it's used by other people, as well.

09:26:52      THE COURT:  All right.  By noon tomorrow, you

09:26:54  will -- you may submit those documents, but you will also put

09:26:58   in a submission to the Court, and obviously then serve and

09:27:02   provide to the plaintiffs, who Sean Merrick is, every means

09:27:08   you have of what his address is, what his telephone number

09:27:12   is, what his e-mail is, any other means that you have of

09:27:17   contacting him, and he'll be subpoenaed, and we'll have an

09:27:20   evidentiary hearing.  And Mr. Angelone will be able to

09:27:22   testify, Mr. Merrick will testify, the two experts will

09:27:25   testify.  And I will then make findings of fact and

09:27:28   conclusions of law.

09:27:29        And if I find that there is clear and convincing

09:27:31   evidence that the preliminary injunction was violated, I will

09:27:34   then hold Mr. Angelone in contempt and start, as the law

09:27:42   requires, with monetary sanctions to coerce his compliance.

09:27:46        If he is unable to pay those sanctions, or refuses

09:27:49   to do so, then I'll imprison him until he hands over the

09:27:53   domains.

09:27:54        MS. CALIN:  Your Honor, if there is an evidentiary

09:27:56   hearing, will we be given sufficient time to arrange for the

09:28:00   experts to be here?

09:28:00        THE COURT:  Yes.  I'll let you work it out with

09:28:04   them, but it's going to be quickly.  I'll issue an order and

09:28:10   then -- and since you are claiming that the expert testimony

09:28:14   will relate to the spoliation, I'll hold off on that, as

09:28:18   well, and on the attorney's fees.  But I'll definitely --

09:28:25   I'll issue -- I'll definitely want this sometime in the near

future.  I'm going to look at my schedule.  So I'll say that
it has to be arranged on certain dates, and then you will
have to talk to the experts and find out when they are
available, but this isn't going to drag out.

MS. CALIN:  I understand.  I understand, Your Honor.

So we will have a declaration submitted by noon
tomorrow regarding this information regarding Jacky Jasper,
and then we'll wait for Your Honor.

THE COURT:  Including who Sean Merrick is.  Anything
you know about, you know, where does he live?  What is his
telephone number?  What are his e-mails?  Who is he?  I mean,
what line of work is he in?  Anything which is known to the
defense to establish that he is, in fact, a real person.
And, again, with an aim sufficient that the plaintiffs will
be able to subpoena him to the hearing.

MS. CALIN:  Yes.  Of course.

THE COURT:  All right.  Yes, counsel?

MR. HINKLE:  Just one point that I would like to
respond to with respect to the Sean Merrick subpoena issue I
neglected to mention.  It will just be a couple of seconds.

THE COURT:  Yes.

MR. HINKLE:  First, I want to make sure that it's
clear that the entirety of the return, which includes the
Sean Merrick name, is already part of the record at
Exhibit 58.

1 09:29:43         Secondly, one of the domain names that are part of

2 09:29:48    the record, and part of the subpoena, is connected to the

3 09:29:52    Sean Merrick name, is the "aventviii" domain, and that domain

4 09:30:00    is connected to Sean Merrick, connected to all of the Jacky

5 09:30:04    Jasper e-mails and companies that we referred to earlier.

6 09:30:08    That is also a domain that Mr. Angelone, as we noted in our

7 09:30:12    papers --

8 09:30:14         THE COURT:  Yes.

9 09:30:14         MR. HINKLE:  -- transferred to Ms. Roxanne Taylor,

10 09:30:18   evidencing his control over the domains.

11 09:30:22        THE COURT:  All right.  Yes, I saw that in your

12 09:30:24   papers.

13 09:30:25        All right.  So I'll get out on order indicating when

14 09:30:29   I'm available for the hearing.  You will arrange for the

15 09:30:32   experts then on that, and we will go forward.

16 09:30:38        All right.  Thank you, counsel.

17                     *****    *****    *****

18

19

20

21

22

23

24

25

1    I certify that the foregoing is a correct transcript from the

2    record of proceedings in the above-titled matter.

3

4

5

6    ---------------------------

7

8    Amy C. Diaz, RPR, CRR                 March 19, 2024

9    S/  Amy Diaz

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 2

## Lawrence Hinkle

| | |
|---|---|
| **From:** | Sandy Calin <scalin@kdeklaw.com> |
| **Sent:** | Thursday, March 28, 2024 12:12 PM |
| **To:** | Lawrence Hinkle |
| **Cc:** | jt@jtfoxlaw.com; 'Justin Kian'; Yolanda Nelson; Stephanie Jones Nojima |
| **Subject:** | RE: Hidden Empire v. AOne |

Lawrence,

I agree that we disagree with what is required.  Nowhere did Judge Fitzerald indicate that he needs to examine Sean Merrick on the issues you raised in your email below.  The focus should be on compliance with the Preliminary Injunction, and one of those issues of compliance is the transfer of the nine "Icelandic domains."   As has been indicated before, and as I am certain FTI can confirm, five of the domains are no longer registered to anyone and your clients are free to register them.

With respect to the other four domains, Sean Merrick is prepared to transfer them to Roxanne Taylor today.  There is no need for FTI to be involved.  The transfer can be made by Sean Merrick directly to Ms. Taylor.  Please confirm that her Namecheap username is "roxanneavent" and the transfer will be made.  As I said before, Sean Merrick is not available to appear at the hearing, however once the domains are transferred, there is no need for his appearance.

Thanks,
Sandy

**From:** Lawrence Hinkle <lhinkle@sandersroberts.com>
**Sent:** Wednesday, March 27, 2024 2:42 PM
**To:** Sandy Calin <scalin@kdeklaw.com>
**Cc:** jt@jtfoxlaw.com; 'Justin Kian' <justin@jtfoxlaw.com>; Yolanda Nelson <ynelson@kdeklaw.com>; Stephanie Jones Nojima <sjonesnojima@sandersroberts.com>
**Subject:** RE: Hidden Empire v. AOne

[EXTERNAL SENDER]

Sandy –

Thanks for your patience with me getting back to you. We disagree with your assessment of what is required.

First, because Judge Fitzgerald ordered Sean Merrick to appear at the evidentiary hearing, Defendants cannot unilaterally determine that his appearance is not necessary. Also, because Judge Fitzgerald stated the parties can seek to reschedule the hearing, Defendants cannot avoid having Mr. Merrick testify by claiming he is unavailable.

You state that there is no need for Mr. Merrick's testimony because of his representations regarding the 9 HEFG domains. That is not an accurate representation of why Judge Fitzgerald stated Mr. Merrick must appear to testify. During the hearing, Judge Fitzgerald raised a number of concerns about Mr. Merrick such as the following:

1) Who is Mr. Merrick and what is his relationship to Defendant Darrick Angelone?
2) What does Mr. Merrick do for a living?
3) Why does Mr. Merrick have an interest in the domains at issue?
4) What prompted Mr. Merrick to get involved with the HEFG dispute?

We expect these and other issues to be addressed through Mr. Merrick's live testimony at the hearing – through both direct and cross-examination. A declaration alone is not sufficient.

Therefore, we again ask that you provide dates Mr. Merrick is available to testify. If we do not receive dates from you by 10:00 am tomorrow morning, we will immediately seek the Court's assistance to resolve this issue.

We are still waiting for you to provide Mr. Merrick's availability for a call with FTI to discuss the transfer of the HEFG domains in his possession to HEFG. Please provide those dates to us by 10:00 am tomorrow morning as well.

Also, whether Mr. Merrick knows our clients or has worked with them in the past is irrelevant. Nonetheless, we can confirm that our clients do not believe they know Mr. Merrick or have ever worked with him. What information are you relying on to state they worked together?

Sincerely,



**Lawrence C. Hinkle II,** MANAGING PARTNER
lhinkle@sandersroberts.com

Sanders Roberts LLP
1055 West 7th Street, Suite 3200 | Los Angeles, CA 90017
p 213 426 5000 x 2210 | f 213 234 4581 | sandersroberts.com

---

**From:** Sandy Calin <scalin@kdeklaw.com>
**Sent:** Monday, March 25, 2024 2:30 PM
**To:** Lawrence Hinkle <lhinkle@sandersroberts.com>
**Cc:** jt@jtfoxlaw.com; 'Justin Kian' <justin@jtfoxlaw.com>; Yolanda Nelson <ynelson@kdeklaw.com>; Stephanie Jones Nojima <sjonesnojima@sandersroberts.com>
**Subject:** RE: Hidden Empire v. AOne

Lawrence,

As I said in my earlier email, Mr. Merrick is not available to testify. I will find out his availability to speak with FTI to turn over the four domains he currently owns. I am sure FTI can verify that the other five domains are available and not registered to anyone. I can certainly advise the court that Mr. Merrick is not available to testify, and if FTI can confirm that the five domains are unregistered and available, and that Mr. Merrick can communicate with FTI to turn over the four domains that he does own, there is no need for his testimony.

Mr. Merrick knows your clients and has worked with them in the past. If the issue with these nine domains can be resolved now, we will so advise the Court.

Thanks,
Sandy

---

**From:** Lawrence Hinkle <lhinkle@sandersroberts.com>
**Sent:** Monday, March 25, 2024 2:22 PM
**To:** Sandy Calin <scalin@kdeklaw.com>
**Cc:** jt@jtfoxlaw.com; 'Justin Kian' <justin@jtfoxlaw.com>; Yolanda Nelson <ynelson@kdeklaw.com>; Stephanie Jones Nojima <sjonesnojima@sandersroberts.com>
**Subject:** RE: Hidden Empire v. AOne

[EXTERNAL SENDER]

Hi Sandy –

Good afternoon. We were actually still waiting to hear back from you regarding when all three of your witnesses are available for the evidentiary hearing, including Sean Merrick, Darrick Angelone and Rick Watts. To date, you have not advised when Mr. Merrick is available. As you know, the Court ordered all of them to testify.

Have you communicated with Mr. Merrick about his availability for the evidentiary hearing? If so, what is he saying about his availability?

We do not believe it wise for the parties to appear at the evidentiary hearing without having confirmed that all of the witnesses, including Mr. Merrick, will appear to testify. If you are unable to confirm a date Mr. Merrick will appear, then we should advise the Court of that as soon as possible so the Court can weigh in on the matter.

With respect to the four domains Mr. Merrick is willing to turn over to HEFG, that is something FTI will handle. Please let us know Mr. Merrick's availability for a call with FTI.

We look forward to hearing from you.

Sincerely,



**Lawrence C. Hinkle II,**  MANAGING PARTNER
lhinkle@sandersroberts.com

**SANDERS ROBERTS** Sanders Roberts LLP
1055 West 7th Street, Suite 3200 | Los Angeles, CA 90017
p 213 426 5000 x 2210 | f 213 234 4581 | sandersroberts.com

**From:** Sandy Calin <scalin@kdeklaw.com>
**Sent:** Monday, March 25, 2024 12:51 PM
**To:** Stephanie Jones Nojima <sjonesnojima@sandersroberts.com>; Lawrence Hinkle <lhinkle@sandersroberts.com>
**Cc:** jt@jtfoxlaw.com; 'Justin Kian' <justin@jtfoxlaw.com>; Yolanda Nelson <ynelson@kdeklaw.com>
**Subject:** RE: Hidden Empire v. AOne

Stephanie and Lawrence,

Where do we stand with changing the date?  Mr. Angelone and Mr. Watts are available on April 9 or 11.  Unfortunately Sean Merrick is not available on either date.  However,  below is the current status of the nine domains in question:

    a.  Hiddenempiremediagroup.com
         -  Updated 7/7/22
         -  Cannot see an ownership transfer
         -  May have been an Email account change
         -  Registration expired 8/6/23
         -  is available (not registered) since 9/19/23
    b.  Hiddenempiremedia.com
         -  Updated 9/29/2023 hosting moved to new server, company in Germany (SEDO GMBH)
         -  remains registered with Name Cheap
         -  Is currently registered with Name Cheap
    c.  Hiddenempirereleasing.com

- 4/26/23 possible account email change
- 2/26/24 registration renewed
- Updated 9/29/2023 hosting moved to new server, company in Germany (SEDO GMBH)
- remains registered with Name Cheap
- Is currently registered with Name Cheap

d. Hiddenempireproductions.com
- 4/26/23 possible account email change
- 9/29/2023 hosting moved to new server, company in Germany (SEDO GMBH)
- 1/22/24 registration renewed
- remains registered with Name Cheap
- Is currently registered with Name Cheap

e. Hiddenempire.productions
- Cannot see an ownership transfer
- 8/8/23 auto renewed
- <mark>Is available (not registered)</mark>

f. Hiddenempire.media
- Cannot see an ownership transfer
- 8/8/23 auto renewed
- <mark>Is available (not registered)</mark>

g. Hiddenempiremedia.group
- Cannot see an ownership transfer
- 8/8/23 auto renewed
- <mark>Is available (not registered)</mark>

h. Hiddenempire.studio
- Cannot see an ownership transfer
- 8/8/23 auto renewed
- <mark>Is available (not registered)</mark>

i. Hiddenempire.org
- 9/29/2023 hosting moved to new server, company in Germany (SEDO GMBH)
- 1/18/24 registration renewed
- remains registered with Name Cheap
- Is currently registered with Name Cheap

As indicated in Mr. Merrick's Declaration, five of the domains are available and may be registered by your clients.  With respect to the other four, he is prepared to hand them over to your clients.  Please let me know how best to accomplish this.

Thanks,
Sandy

**From:** Stephanie Jones Nojima <sjonesnojima@sandersroberts.com>
**Sent:** Thursday, March 21, 2024 2:49 PM
**To:** Sandy Calin <scalin@kdeklaw.com>; Lawrence Hinkle <lhinkle@sandersroberts.com>
**Cc:** jt@jtfoxlaw.com; 'Justin Kian' <justin@jtfoxlaw.com>; Yolanda Nelson <ynelson@kdeklaw.com>
**Subject:** RE: Hidden Empire v. AOne

[EXTERNAL SENDER]

Hi Sandy-

We will check with Erin Burke to see if she is available on the alternate dates you propose.  Are Sean Merrick, Mr. Angelone, and Rick Watts all available on April 9, 11 or 12?   Also, you previously sent us a meet and confer letter

requesting further discovery responses by today, March 21, 2024.  As we've previously discussed, we believe the parties should focus on the pending motion first and then address your discovery.  We remain willing to meet and confer with you over our objections but think those discussions should be tabled until after we have a final ruling on the pending motion.

Best,
Stephanie



**Stephanie Jones Nojima,** PARTNER
sjonesnojima@sandersroberts.com

**SANDERS** Sanders Roberts LLP
**ROBERTS** 1055 West 7th Street, Suite 3200 | Los Angeles, CA 90017
p 213 426 5000 x 9052 | f 213 234 4581 | sandersroberts.com

In response to recent events concerning COVID-19, Sanders Roberts LLP is moving to Electronic Mail Service for all documents. Please e-serve all legal correspondence, motions, discovery and pleadings in place of service via U.S. mail or other methods that involve delivery of materials to our offices.  Please include in your electronic service all attorneys on the applicable proof of service.  Please also cc all e-served documents to the following address: mail@sandersroberts.com.

NOTICE:  CONFIDENTIAL AND PRIVILEGED INFORMATION - This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, distribution or disclosure by others is strictly prohibited.  If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

**From:** Sandy Calin <scalin@kdeklaw.com>
**Sent:** Thursday, March 21, 2024 2:27 PM
**To:** Lawrence Hinkle <lhinkle@sandersroberts.com>; Stephanie Jones Nojima <sjonesnojima@sandersroberts.com>
**Cc:** jt@jtfoxlaw.com; 'Justin Kian' <justin@jtfoxlaw.com>; Yolanda Nelson <ynelson@kdeklaw.com>
**Subject:** Hidden Empire v. AOne

Lawrence and Stephanie,

In Judge Fitzgerald's recent order setting the evidentiary hearing for April 10, neither JT nor I are available that day.  He did say he would entertain changing the date.  We would be available on April 9, 11 or 12.  Are you available on those dates?

Thanks,
Sandy

*Sandra Calin*
*Partner*



**Kramer, deBoer & Keane, LLP**

21860 Burbank Boulevard, Suite 370, Woodland Hills, CA 91367
Tel: (818) 657-0255 | Fax: (818) 657-0256

50 California Street, Suite 1500, San Francisco, CA 94111

Tel: (415) 933-7855 | Fax: (415) 933-7850

Cell:  (818) 469-6255 | scalin@kdeklaw.com

**Los Angeles | Riverside-San Bernardino | Orange-San Diego | Northern California | Nevada**

*Visit our website at www.kdeklaw.com  for additional information on Kramer deBoer & Keane.*

This email, together with any attachments, is confidential and intended solely for the use of the individual to whom it is addressed. If you are not the intended recipient, you have received this email in error and any use, dissemination, forwarding, printing, or copying of this email is strictly prohibited. If you have received this email in error, please destroy it and contact the sender by email or by telephone as listed above.

**PROOF OF SERVICE**

(CODE CIV. PROC. § 1013A(3))

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 1055 West 7th Street, Los Angeles, CA 90017. My electronic service address is rbruton@sandersroberts.com.

On March 28, 2024, I served the following document(s) described as **DECLARATION OF LAWRENCE C. HINKLE, II IN SUPPORT OF REQUEST FOR ZOOM STATUS CONFERENCE** on the interested parties in this action as follows:

| | |
|---|---|
| **JEFFREY S. KRAMER, ESQ.**<br>**SANDRA CALIN, ESQ.**<br>**KRAMER, DEBOER & KEANE**<br>A Limited Liability Partnership<br>Including Professional Corporations<br>21860 Burbank Boulevard, Suite 370<br>Woodland Hills, California 91367<br>Tel: (818) 657-0255<br>Fax: (818) 657-0256<br>jkramer@kdeklaw.com<br>scalin@kdeklaw.com | ***Attorneys for Defendants, Darrick Angelone, AOne Creative, LLC, On Chain Innovations, LLC*** |
| **J. T. FOX, ESQ.**<br>**JUSTIN KIAN, ESQ.**<br>**LAW OFFICES OF JT FOX, APC**<br>556 S. Fair Oaks Avenue, Suite 444<br>Pasadena, California 91105<br>Telephone: (888) 750-5530<br>Fax: (888) 750-5530<br>jt@jtfoxlaw.com | ***Co-Counsel for Defendants, Darrick Angelone, AOne Creative, LLC, On Chain Innovations, LLC*** |

☒ **VIA ELECTRONIC MAIL** I caused the documents to be transmitted electronically through the approved vendor for e-filing by electronic service on the party(s) identified on the attached service list using the e-mail address(es) shown I did not receive, within a reasonable time after transmission, any email or other indication that the transmission(s) were unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 28, 2024, at Los Angeles, California.

| | |
|---|---|
| Rhonda Bruton | *Rhonda Bruton* |
| (Type or print name) | (Signature) |