**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company,<br><br>Defendants. | Case No. 2:22-cv-06515-MWF(AGRx)<br><br>The Honorable Michael W. Fitzgerald, United States District Judge<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW DENYING TERMINATING SANCTIONS** |

On February 5, 2024, Plaintiffs Hidden Empire Holdings, LLC, Hyper Engine, LLC, and Deon Taylor (collectively "Plaintiffs") filed a Motion for Order to Show Cause as to Why Sanctions Should Not Be Imposed Against Defendants Darrick Angelone, AOne Creative, LLC, and On Chain Innovations, LLC (collectively, "Defendants") for Violating the Preliminary Injunction and Spoliation of Evidence (the "Motion"). Defendants filed an Opposition on February 26, 2024. (Docket No. 118). Plaintiffs filed a Reply on March 4, 2024. (Docket No. 126). Plaintiffs also filed a Supplement to the Reply on March 6, 2024. (Docket No. 131). Defendants also filed a Sur-Reply on March 6, 2024. (Docket No. 133).

The Motion came on for hearing on March 4, 2024. The Court subsequently held an evidentiary hearing on April 9, 2024.

Having carefully reviewed the record and the arguments of counsel, as presented at the hearing and in the parties' written submissions, the Court makes the following Findings of Fact and reaches the following Conclusions of Law under Rule 52 of the Federal Rules of Civil Procedure. Any Finding of Fact that constitutes a Conclusion of Law is also hereby adopted as a Conclusion of Law, and any Conclusion of Law that constitutes a Finding of Fact is also hereby adopted as a Finding of Fact.

As noted in Paragraphs 33 and 34, this Motion is no longer a request for coercive sanctions to achieve compliance, *i.e.*, "pay $10,000 a day until you do something." The Motion now is a request for terminating sanctions as punishment for prior alleged violations of the Preliminary Injunction. Through its Findings of Fact and Conclusions of Law, the Court **DENIES** the Motion and declines to impose terminating sanctions.

## I.    FINDINGS OF FACT

### A.    The Parties

1. Plaintiff Hidden Empire Holdings, LLC ("HEFG") is an independent film studio operated by Plaintiffs Deon Taylor and Roxanne Taylor (the "Taylors"). (Complaint (Docket No. 1) ¶ 3). Plaintiff Hyper Engine LLC is the branding and marketing agency for HEFG and was founded and operated by the Taylors. (*Id.* ¶ 4).

2. Plaintiffs allege that Angelone is an individual residing in Los Angeles, California, and is a managing member of AOne Creative, LLC ("AOne") and On Chain Innovations, LLC ("On Chain"). (*Id.* ¶ 8). Plaintiffs allege that they retained Defendants as an independent contractor to design, develop, and manage their websites and related media properties. (*Id.* ¶ 16).

3. Based on allegations arising out of a breakdown in the parties' relationship, Plaintiffs commenced this action on September 12, 2022, alleging five claims against Defendants: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c), (a)(5); (2) copyright infringement, 17 U.S.C. § 501; (3) violation of California's Comprehensive Computer Data Access and Fraud Act, California Penal Code section 502; (4) breach of contract; and (5) conversion. (*See generally id.*).

### B.    The Preliminary Injunction

4. On September 30, 2022, shortly after the Complaint was filed, the Court issued an Order (the "PI Order" (Docket No. 25)) granting Plaintiffs' request for a preliminary injunction after finding that Defendants "hijacked control over Plaintiffs' email accounts, social media, and website domains in an attempt to force Plaintiffs to formalize a partnership agreement with Defendants." (PI Order at 2). The Court also found that Defendants had control over ten domain names (the "Domains") that Angelone had acquired on Plaintiffs' behalf. (*Id.* at 15).

5. The Court subsequently issued a Preliminary Injunction (Docket No. 26) ordering Defendants to comply with the following conditions: (1) to refrain from accessing, using, or transferring (other than to Plaintiffs) the Domains and social media, email, and website accounts at issue; (2) to provide to Plaintiffs login credentials (*e.g.*, usernames and passwords) and administrator rights credentials (*e.g.*, usernames and passwords) associated with the Domains and social media, email, and website accounts at issue; (3) to transfer to Plaintiffs, on or before October 6, 2022, at 5:00 p.m. PST, access, control, ownership, and/or registration of the Domains and all social media, email, and website accounts at issue that include the name "Hidden Empire"; and (4) to refrain from publicly utilizing, promoting, advertising, marketing, or selling a video game or NFTs based on or associated with the movie titled "Fear" produced by Plaintiffs.  (Preliminary Injunction at 2–6).

### C. **The Motion**

6. On February 5, 2024, Plaintiffs filed the Motion contending that Angelone failed to comply with the Preliminary Injunction and deleted electronically stored information in violation of his discovery obligations. Specifically, the Motion argued that Angelone violated the Preliminary Injunction by (a) accessing, deleting, and failing to provide access to Plaintiffs' Google Workspace account; (b) failing to transfer the Domains; (c) transferring the @hiddenempirefg Twitter account (now known as X) to an individual named "Jacky Jasper" instead of to Plaintiffs; (d) failing to refrain from or provide access to the @hiddenempirefg Twitter account; and (e) failing to refrain from or provide access to the @hiddenempirefilmgroup Instagram account.  (Motion at 17).  In support of the Motion, Plaintiffs attached declarations from two experts from FTI Consulting, Inc. ("FTI"), Erin Burke and Alex Izen.  (*See* Declaration of Erin Burke ("Burke Decl.") (Docket No. 111-4); Declaration of Alex Izen ("Izen Decl.")

(Docket No. 111-3); Supplemental Declaration of Erin Burke ("Supp. Burke Decl.") (Docket No. 126-2)).

7.  In response, Defendants argued that Plaintiffs did not have sufficient evidence that Angelone deleted the Google Workspace account and that Angelone substantially complied with the Preliminary Injunction. (Opp. at 4–6). Defendants primarily relied on two declarations filed by Angelone on October 10, 2022 (the "Angelone PI Decl.") (Docket No. 28)), and February 26, 2024 (the "Angelone Sanctions Decl.") (Docket No. 121)), and a rebuttal expert report by Rick Watts (the "Watts Report") (Docket No. 123)). In his report, Mr. Watts did not offer an alternative explanation for the deletion of the Google Workspace account.

8.  Defendants' counsel subsequently filed a declaration stating that all the Domains were now in the Taylors' possession. (*See* Declaration of Sandra Calin Regarding Transfer of the Domains (the "Calin Decl.") (Docket No. 147) ¶¶ 4–5). Based on this representation, only the Google Workspace account, the Twitter account, and the Instagram account remain at issue.

9.  Because there were factual issues in dispute, the Court issued an Order scheduling an evidentiary hearing for April 9, 2024. (*See* Amended Order Re: Evidentiary Hearing (Docket No. 146)). At the evidentiary hearing, the Court heard testimony from Ms. Burke and Mr. Watts.

### D. The Google Workspace Account

10. Google Workspace is a "collection of productivity tools offered by Google," which includes email, file storage, and word processing. (Burke Decl. ¶ 12). When signing up for a business account, the registrant enters the domain name to be used with the Google Workspace account. (*Id.* ¶ 13). The registrant can then add individual user accounts (*i.e.*, for employees) to access the Google Workspace account. (*Id.*).

11. In this instance, Angelone was the creator of Plaintiffs' Google Workspace account and therefore was the administrator of the account. (*Id.* ¶ 24;

*see also* Preliminary Injunction Order at 3). Angelone used the "hiddenempirefilmgroup.com" domain when creating the Google Workspace account at issue. (Burke Decl. ¶ 13).

12. On September 6, 2022, Angelone's administrator privileges were revoked due to a dispute between the parties regarding ownership of the Google Workspace account and the underlying domain. (*Id.* ¶¶ 26–33).

13. After the Court issued the Preliminary Injunction, Ms. Burke and Angelone discussed transferring the Google Workspace account to Roxanne Taylor. (*Id.* ¶¶ 34–36). To complete the transfer, Plaintiffs needed information from Angelone in order to respond to the Google Workspace account's security questions. (*Id.* ¶¶ 29–36). When asked to provide answers to the security questions, Angelone wrote that he did not feel "comfortable" providing the information. (*Id.* ¶ 37, Ex. 18).

14. Because Roxanne Taylor could not provide responses to the security questions, Google reverted the account back to its original settings. (*Id.* ¶¶ 38, 41, Ex. 16; *see also* Declaration of Roxanne A. Taylor ("Taylor Decl.") (Docket No. 111-1) ¶ 15). Angelone's administrator privileges were therefore reinstated on October 7, 2022. (Burke Decl. ¶ 38, Ex. 53; *see also* Watts Report ¶ 35).

15. On October 10, 2022, at approximately 7:33 p.m. PST, Roxanne Taylor received an email advertising a "free trial" of a Google Workspace account for the "hiddenempirefilmgroup.com" domain. (Taylor Decl. ¶ 16, Ex. 11). Believing that the email provided an alternate means of gaining access to the Google Workspace account, Roxanne Taylor attempted to login by using a link provided in the email. (*Id.* ¶ 16). Upon logging in, however, Roxanne Taylor discovered that the link took her to a ***new*** Google Workspace account, which did not contain Plaintiffs' business emails, records, and files from the ***old*** account. (Taylor Decl. ¶¶ 16–17; *see also* Burke Decl. ¶ 40).

16. Roxanne Taylor attempted to recover the files from the old account by communicating with Google's support team. In a correspondence dated October 27, 2022, a Google employee informed her that the "deletion [was] performed by the existing admin" of the Google Workspace account and that there was "no possibility" to restore the deleted data. (Burke Decl. ¶ 41, Ex. 14).

17. In another correspondence, dated November 1, 2022, a Google employee informed Roxanne Taylor that "[t]he deletion of [the] old account was performed by the existing super administrator and only [the] administrator can delete the account because [the] administrator has the all [*sic*] control over the Google workspace but not any user." (*Id.*, Ex. 15).

18. In the course of her investigations, Ms. Burke discovered that the activity history (the "Audit Logs") for the new Google Workspace account showed "historical snippets" from the old account. (*Id.* ¶ 44),

19. The oldest entry in the Audit Logs is timestamped for October 10, 2022, at 7:32 p.m. PST—just prior to Roxanne Taylor receiving the "free trial" email. That entry shows that Roxanne Taylor's individual user account was disabled by a user at the following IP address: 2603:8000:df00:988f:90b8:f0ce: ab97:3f8d. (*Id.*). Based on evidence in the record, including documents produced by Charter (a third-party internet service provider), that IP address is tied to Angelone's residence. (*See id.* ¶ 47, Ex. 60; Watts Report ¶ 44).

20. At the evidentiary hearing, Ms. Burke testified that it was her opinion that Angelone deleted the Google Workspace account. Ms. Burke testified that her opinion was based on: (1) the fact that Angelone was the sole administrator and that Google's stated that the Google Workspace account had been "deleted by the prior administrator"; and (2) the Audit Logs indicating that someone using the IP address associated with Angelone accessed the Google Workplace account shortly before it was deleted. However, Ms. Burke conceded that the mere fact that this IP address

appears on the Audit Logs does not mean that Angelone himself logged into the Google Workspace account.

21. When asked how Angelone could have deleted the Google Workspace account if there is no evidence that he ever logged into the account, Ms. Burke explained that there could be a scenario where the Audit Logs did not accurately reflect all login information. However, Ms. Burke noted that she could not speculate on how this could occur and noted that it was a question better suited for Google.

22. Ms. Burke also conceded that it was possible that someone else, such as Google, deleted the Google Workspace account, but testified that there was no evidence supporting this theory.

23. At the evidentiary hearing, Mr. Watts testified that Google was the administrator for the Google Workplace account from September 6, 2022, through October 7, 2022.

### E. The Twitter Account

24. On September 30, 2022, an FTI employee monitoring the @hiddenempirefg Twitter account on behalf of Plaintiffs noticed that the account had disappeared. (Izen Decl. ¶ 16). When searching for "Hidden Empire" on Twitter's website, the results brought up an account for AOne under the handle @darrickdidit. (*Id.* ¶ 17).

25. On October 5, 2022, Ms. Burke sent Angelone an email asking him to transfer the @hiddenempirefg Twitter account. Angelone responded that same day, writing that the Twitter account had been suspended for copyright issues. (Burke Decl. ¶ 68, Ex. 26). When asked to share the suspension notification from Twitter, Angelone stated that he had not received one. (*Id.* ¶ 69, Ex. 27). When subsequently asked to share the password for the account, Angelone sent an invalid password. (*Id.*).

26. On February 1 and April 18, 2023, Plaintiffs' counsel served two subpoenas on Twitter, seeking account information pertaining to the @darrickdidit and @hiddenempirefg Twitter accounts. (Hinkle Decl. ¶ 7, Exs. 54–55). Twitter produced documents showing that the @darrickdidit account was deleted on November 4, 2022. (*Id.* ¶ 8, Ex. 56 at 9). Twitter's records also showed that, on January 12, 2023, someone using the email "jacky.jasper@gmail.com" created a new Twitter account using the @hiddenempirefg handle. (*Id.* at 4). That account was accessed with an IP address that matched the one Angelone had previously used to log into his Google Workspace account. (*Id.* at 6; Burke Decl. ¶ 73).

### F. The Instagram Account

27. On October 5, 2022, Angelone provided Ms. Burke with the username and password for the @hiddenempirefilmgroup Instagram account. (*Id.* ¶ 74).

28. Ms. Burke discovered that the Instagram account was protected by two-factor authentication. (*Id.*). Instagram's two-factor authentication is a mechanism that is used to protect an account in the event of credential set compromise. (*Id.* ¶ 75). The two-factor authentication process requires a user to input not only the username and password but also a confirmation code to gain access to the account. (*Id.*). Typically, in order to get the confirmation code, the two-factor authentication process requires input of an email address, a cell phone number, or use of an authenticator application. (*Id.*).

29. When attempting to log into the Instagram account, Ms. Burke was met with the two-factor authentication process and told that the confirmation code was sent to the following email address: s*****@h*****.com. (*Id.* ¶ 76).

30. On October 11, 2022, Ms. Burke asked Angelone to identify the partial email address used for two-factor authentication. (*Id.* ¶ 77, Ex. 28). In response, Angelone stated that he was unable to identify this email address. (*Id.*).

31. On October 13, 2022, Angelone sent an email to Ms. Burke claiming that he was unable to access or change the verification email address receiving the confirmation code in order to permit access. (*Id.* ¶ 78).

32. Plaintiffs were ultimately able to gain access to the Instagram account. (*Id.* ¶ 79).

## II. CONCLUSIONS OF LAW

### A. Civil Contempt

33. Plaintiffs request the Court to hold Defendants in civil contempt for violating the Preliminary Injunction with respect to the Google Workspace account, the Domains, the Twitter account, and the Instagram account. Specifically, Plaintiffs seek an order holding Defendants in civil contempt and issuing terminating sanctions, a coercive daily fine of $2,500 to ensure the transfer of the Domains, and a compensatory fine consisting of attorneys' fees and costs. (*See* Proposed Order (Docket No. 110-2) at 3).

34. The issue of coercive sanctions is no longer at issue because Defendants have transferred the Domains to Plaintiffs' possession. (*See* Calin Decl. ¶¶ 4–5). As such, the Court only addresses Defendants' alleged violation of the Preliminary Injunction with respect to the Google Workspace account, the Twitter account, and the Instagram account.

35. Federal courts have both inherent and statutory authority to punish contempt and to coerce compliance with their orders. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831–32 (1994); 18 U.S.C. § 401(3) (authorizing a court to punish contempt of its authority for disobedience with or resistance to a lawful order).

36. For issuance of a contempt order, the movant must establish "(1) that [the contemnor] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp.*

*Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

37. "Clear and convincing evidence requires greater proof than preponderance of the evidence." *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004). "To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are . . . highly probable.'" *Id.* (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see also* 9th Cir. Civ. Jury Instr. 1.7 ("When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.").

38. Based on the evidence presented in the parties' written submissions and at the evidentiary hearing, the Court concludes that Plaintiffs have not met their burden of showing, by clear and convincing evidence, that Angelone deleted the Google Workspace account. Significantly, nothing in the record indicates that Angelone accessed the Google Workspace account when it was deleted. (*See* Watts Report ¶¶ 44–46). Even Ms. Burke conceded that nothing in the Audit Reports showed that Angelone himself logged into the Google Workspace account when it was deleted.

39. The only remaining evidence on which Plaintiffs rely is Google's correspondence with Roxanne Taylor stating that a prior administrator deleted the Google Workspace account. (*See* Burke Decl. ¶ 41, Exs. 14, 15). But a few pieces of vague correspondence from an unknown Google employee, on their own, fall short of the "clear and convincing" standard required to show contempt. Something more is required. Plaintiffs, for example, failed to present any testimony from

Google regarding the correspondence, nor did they sufficiently rule out the possibility that Google (or someone else) accidentally deleted the account. This is especially true given that Google served as a temporary administrator for the account.

40. While the Court recognizes that Plaintiffs have presented *some* circumstantial evidence that Angelone deleted the Google Workspace account, "mere suspicions do not add up to clear and convincing evidence." *In re Moore*, 739 F.3d 724, 731 (5th Cir. 2014); *see also Sunburst Prods., Inc. v. Derrick Law Co., Ltd.*, 1991 WL 1523, at *8 (9th Cir. Jan. 9, 1991) (unpublished) (affirming the district court's finding that the plaintiff failed to establish infringement in violation of the preliminary injunction due to the plaintiff's "total reliance on a consumer survey" that the defendant argued was flawed); *TriPharma, LLC v. First Fruits Bus. Ministry*, No. SACV 12-404-JVS (ANx), 2013 WL 12131288, at *3 (C.D. Cal. Jan. 4, 2013) (finding that ambiguous evidence of infringement failed to meet the clear and convincing standard).

41. With respect to the @hiddenempirefg Twitter account, the Court concludes that the evidence presented by Plaintiffs fails to show that Angelone deactivated or transferred the Twitter account. Again, the evidence is merely suggestive and highly ambiguous at best.

42. As to the @hiddenempirefilmgroup Instagram account, Plaintiffs contend that Angelone failed to authorize the two-factor authentication to allow Plaintiffs to access the account. (Motion at 14–15). However, because there is no dispute that Angelone provided Plaintiffs with the login credentials and that Plaintiffs were ultimately able to access the Instagram account, the Court concludes that Angelone substantially complied with the Preliminary Injunction.

43. Accordingly, the Court concludes that Plaintiffs have not met their burden of demonstrating that Angelone violated the Preliminary Injunction. The Court declines to take the drastic measure of essentially adjudicating this action on

the merits by striking the Answer (Docket No. 29) and Counterclaims (Docket No. 30), as requested by Plaintiffs, based on such thin evidence of contempt.

**B.     Spoliation of Evidence**

44.     Plaintiffs also request that the Court find that the deletion of the Google Workspace account constitutes spoliation of evidence. Again, Plaintiffs request terminating and compensatory sanctions.

45.     Federal Rule of Civil Procedure 37(e) authorizes broad sanctions, including terminating sanctions, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

46.     "[T]he bare fact that evidence has been altered or destroyed does not necessarily amount to spoliation of evidence. Instead, courts require three elements before imposing spoliation sanctions: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense." *Odeh-Lara v. Synchrony Bank*, No. CV 19-2446 PSG (AGRx), 2021 WL 8086854, at *2 (C.D. Cal. Oct. 12, 2021) (citing *Reinsdorf v. Sketchers U.S.A., Inc.*, 296 F.R.D. 604, 625 (C.D. Cal. 2013) (internal quotation marks omitted)). Courts in the Ninth Circuit have required the movant to show spoliation by a preponderance of the evidence. *See, e.g.*, *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 502 (C.D. Cal. Nov. 2, 2022) (citing cases); *MGA Ent., Inc. v. Harris*, No. CV 20-11548-JVS (AGRx), 2023 WL 2628225, at *2 (C.D. Cal. Jan. 5, 2023).

47.     Although the Motion presents a closer question under the preponderance standard, the Court concludes that Plaintiffs have not shown that Angelone deleted the Google Workspace account, let alone whether he did it intentionally. Both the Audit Reports and Google's correspondence are insufficient

for the reasons already discussed.  The only remaining evidence offered by Plaintiffs is Angelone's status as a prior administrator of the Google Workplace account.  The Court concludes that this fact is insufficient to show that it was more likely than not that Angelone engaged in spoliation and to provide grounds for terminating or compensatory sanctions.

48. Accordingly, the Court concludes that Plaintiffs have not met their burden of showing spoliation of evidence.

### III.  CONCLUSION

49. The Court finds that Plaintiffs have not met their burden of showing that Defendants' conduct violated the terms of the Preliminary Injunction or that Defendants deleted the Google Workspace Account in violation of their discovery obligations.  Accordingly, the Motion is **DENIED** *without prejudice*.  Of course, any future violations of the Preliminary Injunction could lead to imposition of sanctions either to coerce compliance or as punishment.

**IT IS SO ORDERED.**

Dated:  July 17, 2024

_____
MICHAEL W. FITZGERALD
United States District Judge