NEWELL LAW GROUP PC
FELTON T. NEWELL (State Bar #201078)
felton@newellpc.com
CHRISTINE SAID (State Bar #344348)
christine@newellpc.com
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (310) 556-9663

Attorneys for Plaintiffs and Counterclaim
Defendants
**HIDDEN EMPIRE HOLDINGS, LLC,
HYPER ENGINE, LLC, AND DEON
TAYLOR;**
And Third-Party Defendant
**ROXANNE TAYLOR**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, <br><br> Plaintiffs, <br> vs. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONEE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS LLC, a Florida limited liability company, | Case No. 2:22-cv-06515-MWF-AGR <br><br> The Hon. Michael W. Fitzgerald <br><br> **DECLARATION OF ERIN BURKE IN SUPPORT OF PLAINTIFFS' REPLY BRIEF** <br><br> **HEARING:** <br> **DATE:**      **August 18, 2025** <br> **TIME:**      **10:00 a.m.** <br> **LOCATION: Courtroom 5A** |

-1-
ERIN BURKE DEC. ISO PLAINTIFFS' REPLY BRIEF

NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663

Defendants.

DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company

Counterclaimants,

HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPERENGINE, LLC; a California limited liability company, DEON TAYLOR, an individual,

Counterclaim Defendants,

DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company,

Third-Party Plaintiffs

v.

NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663

-2-
ERIN BURKE DEC. ISO PLAINTIFFS' REPLY BRIEF

1  ROXANNE TAYLOR, an
2  individual, Third-Party Defendant

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663

NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663

# DECLARATION OF ERIN BURKE

I, Erin Burke, declare as follows:

1. I am over the age of 18 years and am an Owner-Member of Silent Stack Cybersecurity, LLC since April 2024. As an owner-member, I conduct forensic investigations and advise clients on cybersecurity best practices.

2. I have reviewed the Declaration of Rick Watts ("Watts Decl.") and Mr. Watts' Rebuttal Report.

3. In his Rebuttal Report, he states that he has reviewed all the files provided by Google and there is not an administrator log that indicates that Plaintiffs' Google Workspace was deleted. Ex A to Watts Decl. at 15. While Mr. Watts is correct that the administrator log is the document I would expect to provide information about how the Workspace was deleted, Google has not produced the administrator log for HEFG's Google Workspace account. Google only produced the login logs.

4. As an expert in this field, and with Mr. Watts' purported familiarity with Google, he is well aware of, and able to distinguish among, the various log types that Google produces. The absence of reference to a *deletion* log event is not evidence that there was no deletion. Instead, the *user* account logs, which Google did produce, do not capture workspace account deletions or other administrator actions on the domain. If I had the administrator logs in my possession, I would not need to render an opinion on what happened, as the logs would be self-evident.

5. Mr. Watts also states that the user logs were only for the new HEFG Google Workspace created in October 2022.

-4-
ERIN BURKE DEC. ISO PLAINTIFFS' REPLY BRIEF

NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663

6.    I agree with Mr. Watts that the audit logs were only from the new workspace (not snippets from the old), as that is the most likely scenario consistent with Google's "clean separation" operations.  The reason for my exploring whether these could be snippets from the prior account arose because Darrick's mother's house IP was observed in those logs, and Darrick would have no reason, and as I understand it from counsel, was prohibited by this court, from any involvement in any new Google account creation for Hidden Empire.

7.    However, considering Mr. Watts' opinion that the logs were solely the new workspace account, and again which I agree as the most likely scenario, means that some computing device at Darrick's mother's house was logged into the *new* Hidden Empire account on October 10, 2022 at 19:32:32, approximately one minute before Roxanne Taylor received notification that a new account had been set up (received 19:33:35).  This remarkable coincidence in timing of a computer-inside-Darrick's-mothers-house being in the new Hidden Empire Google Workspace account simultaneously to that new account's creation (the logs show the IP was also seen in the account at 19:33:36, one second after the creation notification email to Roxanne) suggests *Darrick* created a new account for Hidden Empire, not Google.  Notably, this would be advantageous, because account recovery becomes impossible when a new workspace account is created using the same domain, as is explained in Google help documentation. https://support.google.com/a/answer/1397578?hl=en (Google specifically notes that recovery is **not possible** when: the user was deleted more than 20 days ago or the domain is no longer available—or has been *moved to another Workspace*

*account*).

8.    Simply put, a computing device at Darrick's mom's residence should have had no interaction with the new Hidden Empire Google Workspace account.

9.    Further, Mr. Watts' statement that "Mr Angelone was never in the environment on October 10" is incorrect because the IP from his mother's house (so if not Darrick, then someone with access to a computer inside his mother's house) was in the new Hidden Empire account on that day according to the admin audit logs, and the only way he could have been able to create the new workspace account is if the prior workspace account was deleted—yet, *no one* knew it had been deleted at that time, except apparently him.

10.    If there was an email from Google to Darrick explaining Google deleted the account, he did not produce it (it would seem helpful to him), and if he did get that notification from Google and not produce it, it is unclear why then he would take it upon himself to create a new account for Plaintiff, unless to ensure impossibility of prior account recovery.

11.    One can create a new Google workspace account using any gmail address to receive ownership notification, and Darrick had knowledge of Roxanne's personal gmail, which received the notification.

12.    In Mr. Watts' paragraph 10, when referencing logs that show Darrick did not log in again after getting privileges reinstated, again, it is technically possible for a Google Workspace user—especially an administrator—to perform actions after their last recorded login date in the audit logs, for several reasons. The login audit log only records interactive login events—typically via browser or app.

-6-
ERIN BURKE DEC. ISO PLAINTIFFS' REPLY BRIEF

It does not log all background token-based access, such as script-based access, API calls, or Admin SDK automation.

13.     As a result, the absence of a recent login event does not necessarily mean the user did not perform a recent action. The Admin audit logs remain the authoritative source for verifying whether the user account was used to perform the action in question.

14.     As a specific example, tools such as GAM (Google Apps Manager) authenticate once via OAuth 2.0 and store access tokens locally. These tokens can remain valid for extended periods, allowing administrative actions to be performed via command line or scripts without requiring a fresh login.  In such cases, no new login event is triggered. However, actions (e.g., deletions) are still logged in the Admin audit logs, which have not been produced.

15.     Finally, Mr. Watts' opinion that the Google employee transcripts are "unreliable" is contrary to both 1) the explicit statements that the deletion was performed by the prior administrator, and which show no confusion by a language barrier as he suggests, and 2) Google's own terms and conditions, which state that Google will delete an account only under specific circumstances, such as breaching terms of agreement, to comply with a legal order, or if the account is causing harm or liability, none of which occurred here and would precipitate Google to perform a deletion of customer information.  *See* https://policies.google.com/terms?hl=en-US.

16.     Google would not be a successful business platform if it took unilateral action to delete customers' business operational accounts without good

ERIN BURKE DEC. ISO PLAINTIFFS' REPLY BRIEF

NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663

cause.    Google's ability to delete is a technical possibility, *not* a reasonable explanation.

      I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed on August 11, 2025 at Los Angeles, California

      */s/ Erin Burke*
      Erin Burke

ERIN BURKE DEC. ISO PLAINTIFFS' REPLY BRIEF

NEWELL LAW GROUP
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
(310) 556-9663