1  J.T. Fox, Esq., SBN 195063
2  **LAW OFFICES OF J.T. FOX & ASSOCIATES,**
   **A Professional Corporation**
3  556 S. Fair Oaks Ave., No. 444
4  Pasadena, CA 91105
   (888) 750-5530 Work
5  (888) 750-5530 Fax
6
7  Attorney for Defendants/Counterclaimants,
   Darrick Angelone, AONE Creative LLC, and On Chain Innovations, LLC
8
9              **UNITED STATES DISTRICT COURT**
10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11
12  HIDDEN EMPIRE HOLDINGS, LLC; a      Case No. 2:22-cv-06515-MWF-AGR
13  Delaware limited lability company; HYPER
    ENGINE, LLC; a California limited         *Assigned to the Hon. Judge Michael W.*
14  liability company; DEON TAYLOR, an       *Fitzgerald*
    individual,
15                                            **DEFENDANTS' MOTION IN LIMINE**
16          Plaintiffs,                       **#2 TO PRECLUDE REFERENCE TO**
                                              **IRRELEVANT AND PREJUDICIAL**
17  v.                                        **ALLEGATIONS**
18  DARRICK ANGELONE, an individual;
    AONE CREATIVE LLC, formerly known
19  as AONE ENTERTAINMENT LLC, a
    Florida limited liability company; and ON   Pretrial Conference: December 22, 2025
20  CHAIN INNOVATIONS LLC, a Florida
    limited liability company,
21                                            Trial Date:   January 13, 2026
          Defendants.                         Time:         8:30 AM
22                                            Dept.:        5A
23
24
25
26
27
28

COMES NOW Defendants and Counterclaimants DARRICK ANGELONE, AONE CREATIVE, LLC, and ON CHAIN INNOVATIONS, LLC (collectively, "AONE"), by and through their attorneys of record, and submit this Motion in Limine No. 2 to preclude Plaintiffs, their counsel, and all witnesses from introducing evidence of, arguing, or making any reference to: (1) The so-called "Icelandic Domains" or any claim that Defendants "hijacked" those domains; (2) Any alleged alter-ego, alias or online persona of Mr. Angelone such as "Jacky Jasper" or "Hollywood Street King"; (3) Alleged "deletion," "erasure," "wiping," "spoliation" or "destruction" of Plaintiffs' Google Workspace or other electronically stored information ("ESI") by Defendants, including characterizing this case to the jury as a "spoliation" case; and (4) Any prior lawsuits or default judgments against Mr. Angelone, including the 2015 default judgment in Los Angeles Superior Court Case No. BC509496.

This Motion is made pursuant to Federal Rules of Evidence 401, 402, 403, 404(b), 608, and 611, Federal Rules of Civil Procedure 26 and 37, the Court's February 14, 2023 Order re Jury Trial, and the Court's prior orders in this case, including its July 17, 2024 Order denying Plaintiffs' motion for terminating sanctions regarding the Google Workspace and its August 19, 2025 Order denying Plaintiffs' motion for partial summary judgment.

## I.    INTRODUCTION

Plaintiffs' First Amended Complaint, motion practice, and discovery responses confirm they intend to inject several inflammatory "bad character" themes into this trial that have, at most, marginal probative value but pose a substantial risk of unfair prejudice, jury confusion, and mini-trials on collateral issues. These include: (i) allegations that AONE "hijacked" nine so-called "Icelandic Domains"; (ii) allegations that Mr. Angelone is, or was, an anonymous blogger / online persona known as "Jacky Jasper" associated with "Hollywood Street King"; (iii) accusations that Defendants "erased," "wiped," or otherwise destroyed Plaintiffs' Google Workspace environment and "all" of Plaintiffs' data—often framed as "spoliation"—despite this Court's prior sanctions ruling and the

absence of any proof that Defendants deleted anything; and (iv) references to an unrelated Los Angeles Superior Court defamation action and default judgment entered in 2015 against Mr. Angelone.

The issues for the jury concern the parties' business relationship, the terms and performance of their agreements, ownership and control of certain domains and accounts, and whether Plaintiffs failed to pay for years of executive-level services that AONE actually delivered. None of the above topics makes it more or less likely that any party complied with or breached any duty in this case. They are classic irrelevant "bad acts" themes that serve primarily to invite the jury to decide this dispute based on supposed character and unadjudicated accusations rather than the actual contracts, work performed, payments and non-payments at issue.

The risk of unfair prejudice and confusion is particularly acute as to Plaintiffs' spoliation narrative and their repeated sound-bites that Defendants "erased everything," "wiped" Google Workspace, and "destroyed evidence." The actual record (including AONE's October 13, 2022 compliance declaration, Google correspondence, and the Court-ordered evidentiary hearing) shows: (1) a brief, undisputed billing suspension of Workspace services from August 9–16, 2022; (2) a subsequent transfer of the hiddenempirefilmgroup.com domain and full Workspace control to Plaintiffs by October 11, 2022 through FTI Consulting; and (3) competing, unresolved expert opinions about what happened later at Google's end—not any proof that Defendants deleted a single email, document, or Workspace.

Allowing Plaintiffs to keep using the rhetoric of "deletion," "erasure," "spoliation," "hacking," and "destroyed evidence," and to wave around Google-generated "account deleted" notices as if they were findings of intentional misconduct, would simply invite a re-litigation of their failed sanctions motion and a distracting mini-trial over technical issues the Court has already cabined to ordinary fact disputes. Under Rules 401, 403, 404(b), 608, and 611, and Rules 26 and 37, the Court should preclude Plaintiffs from using these four categories of "bad acts" themes at trial.

## II.    RELEVANT GOOGLE WORKSPACE AND DOMAIN TRANSFER TIMELINE

Because Plaintiffs' spoliation narrative is central to this Motion, the Court should be guided by the undisputed, documented timeline already in the record:

**May–July 2022 – Ongoing Services and Non-Payment.** AONE continued providing executive-level Workspace and digital infrastructure services despite substantial past-due balances.

**August 2, 2022 – Notice of Transfer and Outstanding Balance.** On August 2, 2022, Angelone emailed HEFG's Sean Miller that "accounts are being closed out and where necessary set up for transfer" and expressly referenced the "current balance," notifying Plaintiffs that AONE services were being discontinued and that HEFG would need to stand up its own email infrastructure going forward. Sean responded "copy," acknowledging the notice.

**August 9–16, 2022 – Temporary Billing Suspension, Then Restoration.** In written discovery, Defendants admitted that AONE disabled services for Plaintiffs' Google Workspace on **August 9, 2022** due to non-payment, with access suspended until **August 16, 2022**, when services were restored. (emp. added.) They further explained that this was an administrative billing suspension; no evidence exists that any data was deleted as part of this routine billing process.

**September 6–28, 2022 – Google Admin Privileges Dispute; Plaintiffs Using New Email.** Google revoked Angelone's admin privileges on September 6, 2022 after a "dispute raised by another party," which Angelone reasonably understood to be HEFG. He immediately responded to Google's Account Recovery Team, again on September 7 and September 13, seeking restoration. Google eventually replied on September 26, 2022 that a CNAME record had been removed and needed to be re-added to resolve the issue. During that period, Angelone twice sent test emails to sean@hiddenempirefilmgroup.com (September 14 and 29) and received an autoreply from Sean stating that the HEFG Google address was "no longer active" and directing all inquiries to

3

**DEFENDANTS' MOTION IN LIMINE #2**

hiddenempirefilm@gmail.com. If Plaintiffs truly had "no access" to email, Sean could not have configured this autoreply or redirected correspondence to a new Gmail account.

**September 30, 2022 – Preliminary Injunction and Compliance Order.** The Court issued its preliminary injunction and compliance directions regarding Workspace, domains, and social media.

**October 3–5, 2022 – FTI Coordination; Domain Transfers; FTI Confirms AONE Never Owned Certain Domains.** On October 3, 2022, Angelone met with Plaintiffs' retained transfer firm, FTI Consulting, and agreed that the fastest way to comply was for FTI to create a new HEFG Namecheap account so ownership of the domains could be transferred. By October 4, the process was completed, and FTI confirmed the transfers.  On October 5, 2022, FTI confirmed that Plaintiffs agreed AONE "never owned or controlled" several domains Plaintiffs had previously accused Angelone of hijacking (e.g., hefg.com, climb.org, fearthemovie.com, factsnotpolitics.com, 2getherwewillsavelives.com, hiddenempireentertainment.com).

**October 4–11, 2022 – Transfer of Domains, Social Media, and Google Workspace Control to Plaintiffs.** As of October 4, 2022, Angelone had transferred ownership of the hiddenempirefilmgroup.com and hiddenempirefilms.com domains into the Namecheap account "roxanneavent" supplied by FTI, and provided passwords for HEFG's Twitter and Instagram accounts. By October 4, HEFG's Facebook page ownership had been transferred to the HEFG Business Manager account that FTI provided. Admin access to the remaining Facebook pages listed in the Order was also provided.

As of October 4, Plaintiffs had been granted full administrator access and control over a long list of film and project domains (Fatale, The Intruder, Traffik, Meet The Blacks, The House Next Door, Supremacy, Fear, Free Agents, Hoop2, CLIMB, Black History in Two Minutes, BeWoke.Vote, HyperEngine, etc.), all confirmed by FTI.

By October 11, 2022, FTI confirmed that HEFG had full, exclusive control of the Google Workspace account.

**DEFENDANTS' MOTION IN LIMINE #2**

**October 5–10, 2022 – Google's Own Billing / Account Notices.** In response to
Plaintiffs' interrogatories, Defendants identified Google support emails stating that on
October 5, 2022 the Google Workspace Business Plus subscription was "suspended due to
a billing issue," making services unavailable; that on October 9 Google would "revert
account changes within 72 hours"; and that on October 10 Google reported the account
changes had been reverted but "the account had been deleted." Defendants expressly
noted they remain unclear what, if anything, Google ultimately did with the Workspace
after that date.

**Technical Record – No Log of Any Admin "Delete Workspace" Action by
Angelone.** The Google audit logs produced in the course of discovery capture user and
admin activity from May 11, 2022 through October 7, 2022. As Defendants' expert Rick
Watts explained, any admin-driven deletion of the Workspace would appear in the admin
audit logs associated with the admin account used. Those logs contain no such deletion
event and simply end after October 7, consistent with Google shutting down the
environment. Against this timeline, Plaintiffs' continued insistence that "Defendants
deleted Workspace," "erased everything," or "spoliated evidence" is unsupported by any
log event, and certainly not by any finding of the Court. The Court already denied
terminating sanctions, expressly noting that the record is insufficient to attribute any
Workspace deletion to Defendants, and crediting Mr. Watts's conclusion that there is no
direct log proof tying Mr. Angelone to any Workspace deletion event.

## III.    LEGAL STANDARD

Evidence is admissible only if it is relevant, meaning it has any tendency to make a
fact of consequence more or less probable. Fed. R. Evid. 401–02. Even relevant evidence
may be excluded "if its probative value is substantially outweighed by a danger of …
unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting
time." Fed. R. Evid. 403.

Evidence of other acts "to prove a person's character in order to show that on a
particular occasion the person acted in accordance with the character" is inadmissible.

Fed. R. Evid. 404(b)(1). Impeachment by specific instances of alleged conduct is strictly limited under Rules 608(b) and 611(b).

Rule 26 requires timely disclosure of the documents and ESI a party intends to rely upon at trial, and Rule 37(c)(1) provides an automatic preclusion remedy for information not disclosed. The Court's February 14, 2023 Order re Jury Trial likewise directs that motions in limine address concrete evidentiary issues rather than re-litigating dispositive motions.

## IV.    ARGUMENT

### A.    References to "Icelandic Domains" and Non-HEFG Domains are Irrelevant and Highly Prejudicial

The Court has already addressed Plaintiffs' "Icelandic domains" theory in the sanctions and summary-judgment context, and the transfer record now makes clear that AONE either never owned those domains or transferred everything it did control. The FTI-supervised process culminated in October 5, 2022 with Plaintiffs' agreement that AONE "never owned or controlled" multiple domains they had previously accused Angelone of hijacking.

Whatever remains of the "Icelandic" narrative is, at best, a collateral dispute about overseas registrations that are not at issue in this case and have no bearing on whether AONE breached any duty to Plaintiffs. Allowing Plaintiffs to re-litigate those allegations in front of the jury would spawn a mini-trial over foreign DNS records and registrar practices, confuse the issues, and invite the jury to punish Defendants for supposed "hacking" that has already been rejected as a basis for terminating sanctions. Under Rules 401, 403, and 404(b), all evidence and argument about the "Icelandic domains" should be excluded.

### B.    "Jacky Jasper / Hollywood Street King" and Similar Online-Persona Allegations Are Classic 404(b) "Bad Acts" With No Probative Value

Plaintiffs' effort to paint Mr. Angelone as a shadowy online persona ("Jacky Jasper" / "Hollywood Street King") is pure character assassination. Even taken at face value, those

6

**DEFENDANTS' MOTION IN LIMINE #2**

accusations say nothing about the parties' contracts, payments, or domain/Workspace administration for Hidden Empire. They would require the parties to call additional witnesses and experts to litigate who did or did not run a gossip site years ago, and they invite jurors to infer that a supposed "internet troll" must also be a bad business partner here.

That is precisely what Rules 404(b), 608(b), and 403 prohibit. The Court should preclude any mention of "Jacky Jasper," "HSK," or similar online-persona theories at trial.

## C.   "Spoliation," "Erasure," and "Deletion" Rhetoric About Google Workspace and Documents Should Be Excluded or Strictly Cabined

This is the core integration point for the Workspace-and-documents issues.

### The Court has already found the record insufficient to attribute any Workspace deletion to Defendants.

After full briefing and an evidentiary hearing with live expert testimony, the Court denied Plaintiffs' motion for terminating sanctions premised on alleged Workspace deletion and spoliation. The Court credited Watts's analysis that there is no direct log evidence of a delete-Workspace action by Angelone and found the record insufficient to impose sanctions.

Plaintiffs now propose to use the same ambiguous technical evidence—and the same inflammatory vocabulary ("spoliation," "erased everything," "wiped Workspace")—to inflame the jury and relitigate a sanctions theory the Court has already rejected. That is the definition of unfair prejudice and confusion. Fed. R. Evid. 403.

### The evidence differentiates three distinct things that Plaintiffs repeatedly conflate

The record draws a clear line between:

**(1) AONE's temporary billing-related suspension of Workspace services from August 9–16, 2022.** AONE has admitted this limited suspension due to non-payment and made clear that it was an administrative billing action, not a deletion of any content.

7

**(2) Google's own automated account-status emails in early October 2022.**
Google support messages indicate a billing-related suspension on October 5, a plan to "revert account changes within 72 hours" on October 9, and a subsequent message on October 10 that changes had been reverted but "the account had been deleted." Defendants were not the ones sending these emails; they simply reported what Google said, while expressly acknowledging they "remain unclear" what Google ultimately did on its end.

**(3) Plaintiffs' rhetoric that Defendants "erased everything," "destroyed evidence," and "wiped" Workspace.** This rhetoric appears in depositions and discovery responses whenever Plaintiffs are asked to explain missing financial records or internal documents, even where third-party subpoenas later produced the very records they claimed had been "erased."

Conflating these three categories, then telling the jury "Defendants deleted Workspace and destroyed our evidence", adds nothing probative. It simply invites speculation about conduct the Court has refused to sanction and that the logs do not show.

<u>**Plaintiffs had repeated notice and ample opportunity to preserve their data, and the record shows that critical documents were never actually lost.**</u>

The compliance declaration and third-party productions confirm the following facts: (i) Plaintiffs were expressly notified on August 2, 2022 that accounts were being closed out "and where necessary set up for transfer," and that AONE's Workspace services were being discontinued due to a "current balance" ; (ii) Plaintiffs had their Workspace services restored on August 16, 2022 and, by October 11, 2022, had full, exclusive control of Workspace and associated domains and social accounts, as confirmed by their own vendor FTI; (iii) During the supposed "lockout," Plaintiffs were already forwarding emails to a new Gmail address (hiddenempirefilm@gmail.com) and had configured autoreplies telling senders to use that address, proving they had ongoing access to email and could preserve communications if they chose; (iv) The "everything was erased" refrain is belied by neutral third-party productions: banks produced complete statements and wire records

after Deon Taylor testified all bank records had been "erased," and ISPs produced logs showing continued access even after Plaintiffs claimed total lockout.

Even if Google removed the old Workspace tenant at some point after October 7, 2022, the record shows that (i) Plaintiffs had multiple months' notice and multiple avenues to preserve their documents; and (ii) critical categories of records they claim were "erased" in fact exist at their banks, ISPs, and other vendors—and were obtained by Defendants, not Plaintiffs. There is thus no basis to suggest to the jury that Defendants actually destroyed unique or irreplicable evidence. Allowing Plaintiffs to use spoliation rhetoric under these circumstances would be grossly misleading. See FRE 403, 611.

### The distinction between alleged "Workspace deletion" and alleged "document deletion" matters, and Plaintiffs have failed to prove either.

Technically, the alleged "Workspace deletion" is a platform-level event (removal of a tenant) controlled by Google; "document deletion" refers to specific emails or files being deleted by a user. The Google audit logs and Watts's analysis address the first; Plaintiffs have never identified, with specificity, any particular email, document, or file that was actually deleted by Defendants, and that cannot be reproduced from another source.

Yet, Plaintiffs repeatedly conflate the two, telling a story that "Angelone erased our entire Workspace and all of our data," and offering that story as an excuse for their inability to produce even basic corporate records (e.g., bank statements, vendor payments, Hyper Engine financials), which were ultimately produced in response to defense subpoenas.

This is not a legitimate evidentiary theory, but rather narrative that has already failed when this Court denied Plaintiff's sanctions motion. The Court should not allow it to be recycled as "background" for the jury.

### Under Rules 403, 404(b), and 37, the "spoliation" theme should be excluded or tightly limited.

Given the foregoing, AONE requests that the Court:

**DEFENDANTS' MOTION IN LIMINE #2**

(I)  Preclude Plaintiffs, their counsel, and witnesses from using the terms "spoliation," "erased everything," "wiped Workspace," "destroyed evidence," or similar phrasing suggesting that the Court has found, or that the evidence proves intentional destruction by Defendants;

(II)  Preclude Plaintiffs from arguing that any inability to produce records at trial is because "Defendants deleted Workspace" unless they can establish a proper foundation outside the presence of the jury, including identifying the specific record, its prior existence, and why it cannot be obtained from banks, vendors, or other third-party sources; and

(III)  Preclude Plaintiffs from introducing or relying on Google's generic billing/account-status emails as if they were evidence of deliberate misconduct by Defendants, rather than automated notices from Google.

Such a ruling would not prevent Plaintiffs from arguing about whatever records they can or cannot produce. It would simply prevent them from weaponizing the word "spoliation" and the Court's prior orders to suggest misconduct that has not been—and cannot be—proven.

## D.  Prior Default Judgments and Unrelated Litigation Are Inadmissible Character Evidence

Finally, Plaintiffs should be precluded from referencing the 2015 default judgment in Los Angeles Superior Court Case No. BC509496, or any other unrelated lawsuit or allegation against Mr. Angelone. Whatever occurred in an unrelated defamation case a decade ago has no bearing on the parties' contracts, payments, or technical administration in this case. It is classic 404(b) character evidence and would serve only to invite the jury to punish Mr. Angelone for unrelated conduct.

Any minimal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time. Fed. R. Evid. 403, 404(b), 608.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Motion in Limine No. 2 and order that Plaintiffs, their counsel, and all witnesses be precluded from:

1. Mentioning, referring to, or introducing evidence concerning the so-called "Icelandic domains" or any accusation that Defendants "hijacked" those domains;

2. Mentioning, referring to, or introducing evidence concerning any alleged online persona of Mr. Angelone such as "Jacky Jasper" or "Hollywood Street King";

3. Characterizing this case to the jury as involving "spoliation," "erasure," "wiping," or "destruction" of Google Workspace or other ESI by Defendants, or using similar rhetoric suggesting the Court has found intentional destruction, absent a specific, non-speculative evidentiary foundation vetted outside the jury's presence; and

4. Mentioning, referring to, or introducing evidence concerning prior lawsuits or default judgments against Mr. Angelone, including Los Angeles Superior Court Case No. BC509496.

Nothing in this Order should limit AONE's ability to cross-examine Plaintiffs' witnesses or experts using documents that were produced in discovery or obtained from third parties, or to rely on the Court's sanctions ruling and related technical record to rebut any suggestion that Defendants destroyed evidence.

Dated:  December 1, 2025          **LAW OFFICES OF J.T. FOX,**
                                  **A Professional Corporation**


                                  **By:** _J.T. Fox_
                                  _____
                                  J.T. Fox, Esq.
                                  Attorney for Defendants and
                                  Counterclaimants, DARRICK
                                  ANGELONE; AONE CREATIVE, LLC,
                                  AND ON CHAIN INNOVATIONS, LLC

## CERTIFICATE OF SERVICE

I am employed in Los Angeles County, California.  I am over the age of 18 and not a party to this action; my business address is 556 S. Fair Oaks Ave, No. 444, Pasadena, CA 91105.  My email address is justin@jtfoxlaw.com.

I certify that on December 1, 2025, I served:  **DEFENDANTS' MOTION IN LIMINE #2 TO PRECLUDE REFERENCE TO IRRELEVANT AND PREJUDICIAL ALLEGATIONS** on the following parties or counsel of record as follows:

| | |
|---|---|
| Felton T. Newell, Esq.<br>Newell Law Group PC<br>1801 Century Park East, 24th Floor<br>Phone (310) 556-9663<br>E-mail:  felton@newellpc.com;<br>christine@newellpc.com | *Counsel for Plaintiffs* |
| Jeffrey S. Kramer, State Bar No. 094049<br>Sandra Calin, State Bar No. 100444<br>KRAMER, DEBOER & KEANE<br>A Limited Liability Partnership<br>Including Professional Corporations<br>27001 Agoura Road, Suite 350<br>Calabasas, California 91301<br>Tel: (818) 657-0255 - Fax: (818) 657-0256<br>jkramer@kdeklaw.com;<br>scalin@kdeklaw.com | *Co-Counsel for Defendants* |

By ECF/CM: I electronically filed an accurate copy using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.

I declare under penalty of perjury under the laws of the Unites States of America and the State of California that the foregoing is true and correct.  Executed at Pasadena, California on December 1, 2025

_/s/Justin Kian_
Justin Kian