J.T. Fox, Esq., SBN 195063
**LAW OFFICES OF J.T. FOX & ASSOCIATES,**
A Professional Corporation
556 S. Fair Oaks Ave., No. 444
Pasadena, CA 91105
(888) 750-5530 Work
(888) 750-5530 Fax

Attorney for Defendants/Counterclaimants,
Darrick Angelone, AONE Creative LLC, and On Chain Innovations, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited lability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS LLC, a Florida limited liability company,<br><br>　　　　Defendants. | Case No. 2:22-cv-06515-MWF-AGR<br><br>*Assigned to the Hon. Judge Michael W. Fitzgerald*<br><br>**DEFENDANTS' MOTION IN LIMINE #3 TO PRECLUDE UNPRODUCED DIGITAL AUDIT LOGS, SCREENSHOTS, AND RELATED IP DATA**<br><br>Pretrial Conference: December 22, 2025<br><br>Trial Date:　January 13, 2026<br>Time:　　　8:30 AM<br>Dept.:　　　5A |

COMES NOW, Defendants and Counterclaimants DARRICK ANGELONE, AONE CREATIVE, LLC and ON CHAIN INNOVATIONS, LLC (collectively, "AONE"), by and through their attorneys of record, and submit this Motion in Limine No. 3 to preclude Plaintiffs, their counsel, and their witnesses from offering or referring at trial to unproduced or incomplete digital audit logs, screenshots, IP address attributions, and related communications, including the October 10, 2022 Google Workspace "admin audit log" screenshot and associated IP address relied upon by Plaintiffs' expert Erin Burke.

This Motion is made pursuant to Federal Rules of Civil Procedure 26 and 37(c)(1) and Federal Rules of Evidence 106, 401, 403, 702, 703, 901, and 1002, the Court's February 14, 2023 Order re Jury Trial, and all pleadings and papers on file, including the Court's July 17, 2024 Order denying Plaintiffs' motion for terminating sanctions regarding the Google Workspace and the August 19, 2025 Order denying Plaintiffs' motion for partial summary judgment. AONE respectfully requests that the Court grant this Motion for the reasons set forth below.

I.     INTRODUCTION

This Motion targets a discrete category of technical proof: digital logs, screenshots, and communications that Plaintiffs and their experts wish to use as affirmative evidence at trial but that were never produced in native or complete form in discovery. In particular, this Motion seeks to exclude:

(1)     **The October 10, 2022 Google Workspace admin console screenshot** that Ms. Burke labels "Figure 1 Angelone IP logged into HEFG Workspace and disabling R.A. Taylor's account," reproduced as Exhibit 19 to her February 5, 2024 sanctions declaration and again as Exhibit 19 to her June 9, 2025 summary-judgment declaration, and any similar screenshots or demonstratives. In that figure, the Google Admin "Audit and investigation" view lists events for user "roxanne@hiddenempirefilmgroup.com" on October 10–11, 2022 in **the new HEFG Workspace**, including entries such as "Roxanne Taylor logged in," "Roxanne Taylor has changed Account password," "Roxanne Taylor was presented with login verification," "Roxanne Taylor failed to login," and one entry

1
**DEFENDANTS' MOTION IN LIMINE #3**

truncated as "Account roxanne@hiddenempirefilmgroup.com dis[abled]." An "IP" column shows an IPv6 address ending in "…ab97:3f8d" for some entries. The screenshot does not show any "delete Workspace" event, does not identify any acting admin user, and does not state that the disable event was executed from that IPv6 address. Nonetheless, Ms. Burke captions it as proof that "Angelone's IP" logged in and disabled Ms. Taylor's account. As discussed below, the technical record distinguishes between (a) tenant-level actions controlled by Google (e.g., suspension or removal of a Workspace), and (b) user-level events such as a single mailbox being disabled. The October 10 screenshot, even if authentic, concerns only the latter in a new Workspace environment—not any deletion of the historical Workspace tenant or its historical documents. Treating this cropped image as proof that "Angelone deleted Workspace" is a conflation of distinct technical events.

      (2)    **The underlying Google Workspace "Admin audit logs" for the new HEFG Workspace** that Ms. Burke repeatedly describes as the "authoritative source" for her opinions but concedes "have not been produced." In responses to AONE's specific Requests for Production seeking "all documents or ESI which evidence, refer, or relate to the Google Workspace admin console and audit log showing login from Angelone's IP address on October 10, 2022, and the disabling of Roxanne Taylor's user account, attached as Exhibit '19' to the Declaration of Erin Burke dated June 9, 2025," Plaintiffs admitted they have "no responsive unproduced documents in [their] possession, custody or control."

      (3)    **Any Meta/Facebook/Instagram or X/Twitter admin or Business Suite logs, "log exports," or internal log screenshots** that were not produced in discovery but that appear on Ms. Burke's materials-considered lists or are described in her reports and declarations. Plaintiffs' RFP responses admit that they have no Facebook Business Suite logs, no Facebook Page logs for the HEFG-related pages, and no similar native social-media audit logs, despite alleging that AONE changed passwords and interfered with those accounts.

(4) **Unproduced emails, text messages, and messaging-app communications** that Plaintiffs and their experts rely upon in declarations and reports but did not produce as full threads or in native form—such as underlying message chains referenced in FTI/Burke exhibits and .msg files. For example, when AONE requested native versions and full threads for the October 11, 2022 Twitter suspension correspondence (Burke Ex. 26), Plaintiffs again responded that they had no responsive unproduced documents. Likewise, Roxanne Taylor refused to produce any native iMessage threads with Mr. Angelone from 2016 to present, objecting only and producing no native text data.

(5) **Any unproduced forensic work product used to correlate IP addresses to Mr. Angelone or alleged aliases**—including Cellebrite projects, spreadsheets, and analyst notes reflecting IP correlations (such as IPv4 address 76.167.147.254 or IPv6 address 2603:8000:df00:988f:90b8:f0ce:ab97:3f8d) that Plaintiffs' experts invoke in their attribution theories. In response to RFPs seeking "all Cellebrite project files" and "all analyst notes" tying IP addresses to Mr. Angelone or "Jacky Jasper," Plaintiffs again stated they had no responsive unproduced documents.

AONE does **not** seek to exclude the third-party subpoena returns from Google, X/Twitter, Instagram, Namecheap, Charter, or other vendors that were produced in discovery and are equally available to both sides. Nor does this Motion ask the Court to take Workspace deletion or social-media tampering issues away from the jury. It asks only that Plaintiffs be barred from proving serious accusations of "deletion," "hacking," or "lockouts" with unseen logs, partial screenshots, and undisclosed IP-correlation work product they did not produce in discovery.

This Motion is intended to be fully consistent with the Court's February 14, 2023 Order re Jury Trial, which directs that motions in limine "address specific issues (e.g., not 'to exclude all hearsay')" and not be disguised summary adjudication. AONE seeks a targeted evidentiary ruling enforcing basic discovery fairness, authentication, and reliability requirements.

## II. RELEVANT GOOGLE WORKSPACE AND DOMAIN TRANSFER CONTEXT

The limited probative value of the October 10, 2022 screenshot must be evaluated against the undisputed Workspace/domain timeline already in the record:

**August 2, 2022 – Notice of Transfer and Service Discontinuation.** Angelone emailed HEFG's Sean Miller that "accounts are being closed out and where necessary set up for transfer," expressly referencing a "current balance" and explaining that AONE's Workspace services were being discontinued and that HEFG would need to stand up its own email server going forward; Miller responded "copy."

**August 9–16, 2022 – Temporary Billing Suspension, Then Restoration.** AONE disabled Workspace services for nonpayment on August 9 and restored services on August 16. AONE has consistently described this as an administrative billing suspension; there is no evidence that any data was deleted as part of this process.

**September 6–28, 2022 – Google Admin Privileges Dispute; Plaintiffs Using New Email.** Google revoked Angelone's admin privileges on September 6, 2022 following a dispute Angelone understood to be initiated by HEFG. He repeatedly contacted Google's Account Recovery Team on September 7, 13, and 28 seeking restoration. During the same period, test emails to sean@hiddenempirefilmgroup.com generated an autoreply stating that the HEFG Google address was "no longer active" and directing senders to "hiddenempirefilm@gmail.com," showing Plaintiffs were already forwarding correspondence to a new Gmail account.

**September 30, 2022 – Preliminary Injunction and Compliance Order.** The Court issued its preliminary injunction and compliance directions regarding domains, Workspace, and social-media accounts.

**October 3–6, 2022 – FTI Coordination; Domain and Website Data Transfer.** Angelone met with Plaintiffs' transfer vendor, FTI Consulting, and agreed to transfer domains into a new HEFG Namecheap account created by FTI. By October 4, FTI confirmed that ownership of hiddenempirefilmgroup.com and hiddenempirefilms.com had

been transferred to the Namecheap account "roxanneavent," and that passwords for Twitter and Instagram accounts and admin access to Facebook pages had been provided. By October 6, all website data for hiddenempirefilmgroup.com had been transferred to FTI.

- **October 11, 2022 – FTI Confirms Plaintiffs' Full Workspace Control.**

  FTI confirmed that HEFG had "full, exclusive control" of the Google Workspace account as of October 11, 2022.

Separately, the Google Workspace audit logs produced in the sanctions process—covering activity from May 11 through October 7, 2022—contain no admin-driven "delete Workspace" event attributable to any account associated with Angelone; the logs simply stop after October 7, consistent with Google shutting down the old tenant, not with any user-executed deletion. The Court, after an evidentiary hearing, credited defense expert Rick Watts's conclusion that there is no direct log evidence tying Angelone to a delete-Workspace event and denied Plaintiffs' motion for terminating sanctions on that basis.

Against this backdrop, the only log data with any bearing on the alleged deletion of the historical Workspace tenant are the subpoenaed Google logs through October 7, which both sides possess; and the October 10 screenshot concerns later user-level events in a new HEFG Workspace environment at a time when domain ownership and Workspace control were being transferred to, and then confirmed in, Plaintiffs and their vendor FTI.

Using that screenshot—which shows, at most, that the roxanne@hiddenempirefilmgroup.com account was disabled in the new tenant—as proof that "Angelone deleted Workspace" or "erased all HEFG data" improperly conflates tenant-level actions (which only Google can execute) with user-level mailbox events. That conflation is central to why the screenshot is both misleading and unfairly prejudicial.

**III.    LEGAL ARGUMENT**

**A.    Rules 26 and 37(c)(1) Bar Plaintiffs from Using Unproduced Logs and Communications at Trial**

Rule 26(a)(1)(A)(ii) requires a party to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things" it may use to support its claims or defenses. For testifying experts, Rule 26(a)(2)(B) requires disclosure of all "facts or data considered" in forming opinions, and Rule 26(e) imposes a continuing duty to supplement.

Rule 37(c)(1) provides that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial," unless the failure was substantially justified or harmless. The Ninth Circuit has repeatedly held that this exclusion sanction is "self-executing" and "automatic." See, e.g., *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).

Here, Plaintiffs seek to use unproduced Google admin audit logs and social-media admin logs—and expert opinions expressly premised on those logs—without producing the underlying records to AONE or Mr. Watts despite targeted discovery requests:

**Google Workspace admin audit logs.**

Ms. Burke admits that the Google "login audit" file produced by Google in response to subpoena does not contain Workspace deletion events and that the "Admin audit logs remain the authoritative source" for the actions she attributes to Mr. Angelone. She further acknowledges that the admin audit logs for the Workspace "have not been produced" to AONE or to Watts. Plaintiffs' written responses to AONE's RFPs directed at the native admin log export underlying Burke Exhibit 19 state that Plaintiffs have "no responsive unproduced documents" in their possession, custody, or control.

Given the transfer timeline above and FTI's confirmation that Plaintiffs had full, exclusive control of the Workspace environment by October 11, 2022, Plaintiffs cannot credibly suggest they never had access to the very admin logs they now call "authoritative."

**Meta/Facebook/Instagram and X/Twitter admin logs.**

AONE served RFPs requesting native Facebook Business Suite logs, Facebook Page logs, Instagram logs, and similar social-media account logs that would show any alleged changes in admins, passwords, or access. Plaintiffs again responded that they have no responsive unproduced documents, even though Ms. Burke's opinions about password resets, lockouts, and alleged tampering presuppose the existence of such logs.

**IP-correlation work product.**

Plaintiffs repeatedly assert that IP addresses such as 76.167.147.254 and 2603:8000:df00:988f:90b8:f0ce:ab97:3f8d identify Mr. Angelone or his residence, yet in response to RFPs seeking Cellebrite projects, analyst notes, or other forensic work tying those IPs to Angelone or "Jacky Jasper," they stated they have no responsive unproduced documents.

**Emails, texts, and messaging-app communications.**

Plaintiffs rely on snippets of emails and messaging-app communications embedded as PDFs or screenshots in Burke's exhibits (e.g., Exhibits 26–28 to her sanctions and summary-judgment declarations). When AONE requested native versions and complete threads (including .msg/.pst files), Plaintiffs stated they had no additional responsive materials beyond the clipped PDFs already filed. With respect to native iMessage threads between Roxanne Taylor and Angelone, Plaintiffs objected but produced no native text content at all.

Although Plaintiffs have filed static screenshots of the October 10 admin console page and similar images as court exhibits, they have never produced the underlying native admin-audit-log export on which Ms. Burke's opinions purport to rely, nor any native Google admin audit export for the new HEFG Workspace or for the social-media accounts they accuse AONE of tampering with. Under Rule 37(c)(1), Plaintiffs should be precluded from using at trial any log data, IP attribution, or communications that were not produced during discovery in native or complete form, as well as any expert opinions that assume the accuracy of those unproduced materials.

For screenshots or snippets that were never produced at all outside of being attached to a court filing—rather than in response to discovery—Rule 26(e) and Rule 37(c)(1) provide a straightforward bar: Plaintiffs cannot withhold documents during discovery and then spring those images at trial.

**B.     The October 10, 2022 Admin Console Screenshot and IP Attribution Are Unreliable and Unduly Prejudicial (FRE 106, 401, 403, 702, 703, 901, 1002)**

Even apart from Rule 37, the October 10 admin console screenshot and associated IP-address attribution should be excluded because they are incomplete, ambiguous, and pose a serious risk of unfair prejudice and jury confusion.

**a.     The screenshot is incomplete, ambiguous, and cannot be independently verified.**

On its face, the screenshot shows: (i) A Google Admin "Audit and investigation" page for hiddenempirefilmgroup.com in the new HEFG Workspace; (ii) A series of user-level events for "roxanne@hiddenempirefilmgroup.com" on October 10–11, 2022, including "Roxanne Taylor logged in," "Roxanne Taylor has changed Account password," "Roxanne Taylor was presented with login verification," "Roxanne Taylor failed to login," and "Account roxanne@hiddenempirefilmgroup.com dis[abled]"; and (iii) An "IP" column in which some entries list an IPv6 address ending in "…ab97:3f8d."

The log does not identify any acting admin user, does not show a "delete Workspace" event, and does not make clear that the account-disable event was executed from that IPv6 address. Nonetheless, Ms. Burke captions the figure "Angelone IP logged into HEFG Workspace and disabling R.A. Taylor's account" and treats that caption as a key pillar of her attribution and spoliation theories.

Because Plaintiffs never produced the native admin-audit-log export for this Workspace, AONE cannot test (i) whether the screenshot was filtered or cropped; (ii) what other events occurred before and after the displayed entries; (iii) whether the IP column reflects the device initiating a login, a background system process, or some other context; or (iv) whether the screenshot truly comes from the same environment as the historical

8
**DEFENDANTS' MOTION IN LIMINE #3**

Workspace tenant whose logs end on October 7, 2022, as opposed to the new Workspace Google created and placed under Plaintiffs' control during the FTI transfer process.

Watts confirms that he was provided only the screenshot, and that "no documents or logs were provided in support of [Ms. Burke's] screenshot" for the new environment; he could not verify its provenance, completeness, or meaning. Under Rules 702 and 703, expert opinions must rest on "sufficient facts or data" and reliable methods. An opinion that extrapolates far-reaching conclusions from a single, unproduced screenshot—especially about who executed an admin-level action in a system Plaintiffs themselves controlled—is not reliably grounded.

Under Rule 106, Plaintiffs should not be allowed to present a cropped portion of a technical log as if it were the whole story while withholding the complete export that would show context. And under Rules 901, 1002, and 1003, because Plaintiffs never produced the underlying admin audit log and there is a genuine question whether the cropped screenshot fairly and completely reflects it, using the screenshot as a stand-in for the log raises serious authentication and best-evidence concerns.

### b.  Any marginal probative value is substantially outweighed by unfair prejudice and confusion.

This Court has already denied Plaintiffs' motion for terminating sanctions after a full evidentiary hearing, finding the record insufficient to attribute Workspace deletion to Defendants or to support a terminating sanction, and crediting Watts's opinion that there is no direct log proof tying Angelone to any delete-Workspace event.

Allowing Plaintiffs to show the jury a cropped screenshot—captioned as "Angelone IP … disabling R.A. Taylor's account"—when the underlying admin log has never been produced, and when the technical record distinguishes sharply between tenant-level deletion and user-level account actions, would (a) invite jurors to draw speculative and inflammatory inferences about "hacking," "deletion," and "spoliation" from ambiguous technical data no one can fully test or contextualize, (b) encourage Plaintiffs to relitigate their failed sanctions motion in front of the jury through a one-sided presentation of

unproduced logs, and (c) force the Court and jury into a collateral mini-trial over missing Google logs and unproduced forensic work product, contrary to Rule 403's directive to avoid undue delay and confusion.

Any marginal probative value of this static, incomplete screenshot is substantially outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury. It should be excluded under Rules 106 and 403, and any expert opinions that treat the screenshot as an accurate proxy for unproduced admin logs should be excluded under Rules 702 and 703.

### C. The Same Principles Apply to Unproduced Social-Media Logs, IP-Correlation Work, and Communications

For the same reasons, Plaintiffs should be precluded from offering or referring to the following:

**(1)  Meta/Facebook/Instagram and X/Twitter admin or Business Suite logs, or "log exports,"** that were never produced in discovery in native or complete form. Plaintiffs' own RFP responses admit they do not have any native Facebook Business Suite or Page logs for the HEFG-related pages, yet Ms. Burke's opinions about password resets, loss of access, and alleged tampering presuppose the existence of such logs.

**(2)  Unproduced forensic IP-correlation work product** (Cellebrite projects, spreadsheets, analyst notes) that would be needed to support any attribution of particular IP addresses to Angelone or any alleged "alter-ego" accounts. Plaintiffs again admit they have no such materials. Allowing experts to allude to unseen "projects" or "analyst notes" would be the definition of trial by ambush and would leave AONE unable to test methodology or chain of custody.

**(3)  Unproduced emails, texts, and messaging-app communications**, including partial screenshots or PDF excerpts that were never produced as complete, native threads with metadata, despite AONE's specific RFPs seeking those native versions and full threads. If Plaintiffs chose not to produce these communications in response to discovery—while relying on them in expert reports and declarations—they should not be

allowed to ambush AONE with them at trial. And even where a clipped screenshot itself was attached to a declaration or served as a PDF, Rules 106 and 403 bar Plaintiffs from cherry-picking selectively favorable fragments of a conversation while blocking production of the remainder.

**(4)** This Motion does not seek to exclude the actual third-party subpoena returns from Google, X/Twitter, Instagram, Namecheap, or Charter that were produced in discovery and are available to both sides. Rather, it asks the Court to enforce discovery fairness and evidentiary reliability by forbidding Plaintiffs from relying on unseen logs, partial screenshots, or undisclosed forensic work product as substitutes for the native records that would be required to properly substantiate their theories.

## IV. CONCLUSION

For the foregoing reasons, AONE respectfully requests that the Court grant this Motion in Limine No. 3 and order that:

1. Plaintiffs, their counsel, and their witnesses are precluded from introducing into evidence, eliciting testimony about, or making any reference to Google Workspace admin audit logs for HEFG's new Workspace, including any log entries corresponding to the October 10–11, 2022 events, to the extent those logs were not produced in discovery in native or complete form.

2. Plaintiffs, their counsel, and their witnesses are precluded from introducing, eliciting, or referring to the October 10, 2022 Google Admin console screenshot and associated IP-address attribution (including Exhibit 19 to Ms. Burke's February 5, 2024 sanctions declaration, Exhibit 19 to her June 9, 2025 summary-judgment declaration, any similar figures, and the caption "Angelone IP logged into HEFG Workspace and disabling R.A. Taylor's account") as substantive evidence that Mr. Angelone, or any device at his residence, deleted the HEFG Workspace tenant, destroyed historical HEFG data, or disabled Ms. Taylor's account.

3. Plaintiffs, their counsel, and their witnesses are precluded from introducing or referring to any Meta/Facebook/Instagram or X/Twitter admin logs, Business Suite

logs, or other log exports that were not produced in discovery in native or complete form, including any such materials that appear only as cropped screenshots, charts, or summaries in expert reports or declarations.

4. Plaintiffs, their counsel, and their witnesses are precluded from introducing or referring to any Cellebrite projects, spreadsheets, analyst notes, or other forensic work product purporting to correlate IP addresses to Mr. Angelone, "Jacky Jasper," or any "Icelandic Domains," to the extent those materials were not produced in discovery.

5. Plaintiffs, their counsel, and their witnesses are precluded from introducing or referring to any emails, text messages, or messaging-app communications that were not produced during discovery or disclosed under Rule 26 as complete threads or native ESI despite specific RFPs seeking those native versions and full threads, including any partial screenshots or excerpts of such communications that appear only as exhibits to declarations (expert or non-expert) and were not produced as complete threads or native ESI.

6. Nothing in this Order shall limit AONE's ability to cross-examine Plaintiffs' witnesses or experts using documents that were produced in discovery or admitted into evidence, including third-party subpoena returns and the Court's prior orders, nor shall it prevent AONE from using any Plaintiffs' unproduced materials if the Court permits such materials to be used for impeachment or another limited, non-substantive purpose.

Dated: December 1, 2025

LAW OFFICES OF J.T. FOX,
A Professional Corporation

By: /s/ J.T. Fox

J.T. Fox, Esq.
Attorney for Defendants and Counterclaimants, DARRICK ANGELONE; AONE CREATIVE, LLC, AND ON CHAIN INNOVATIONS, LLC

# CERTIFICATE OF SERVICE

I am employed in Los Angeles County, California. I am over the age of 18 and not a party to this action; my business address is 556 S. Fair Oaks Ave, No. 444, Pasadena, CA 91105. My email address is justin@jtfoxlaw.com.

I certify that on December 1, 2025, I served: **DEFENDANTS' MOTION IN LIMINE #3 TO PRECLUDE UNPRODUCED DIGITAL AUDIT LOGS, SCREENSHOTS, AND RELATED IP DATA** on the following parties or counsel of record as follows:

| | |
|---|---|
| Felton T. Newell, Esq.<br>Newell Law Group PC<br>1801 Century Park East, 24th Floor<br>Phone (310) 556-9663<br>E-mail: felton@newellpc.com;<br>christine@newellpc.com | *Counsel for Plaintiffs* |
| Jeffrey S. Kramer, State Bar No. 094049<br>Sandra Calin, State Bar No. 100444<br>KRAMER, DEBOER & KEANE<br>A Limited Liability Partnership<br>Including Professional Corporations<br>27001 Agoura Road, Suite 350<br>Calabasas, California 91301<br>Tel: (818) 657-0255 - Fax: (818) 657-0256<br>jkramer@kdeklaw.com;<br>scalin@kdeklaw.com | *Co-Counsel for Defendants* |

By ECF/CM: I electronically filed an accurate copy using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.

I declare under penalty of perjury under the laws of the Unites States of America and the State of California that the foregoing is true and correct. Executed at Pasadena, California on December 1, 2025.

                                           */s/Justin Kian*
                                           Justin Kian