J.T. Fox, Esq., SBN 195063
LAW OFFICES OF JT FOX, APC
556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105
(888) 750-5530 Work
(888) 750-5530 Fax
Email: jt@jtfoxlaw.com

Attorney for Defendants,
DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE
ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, | Case No. 2:22-cv-06515-MWF-AGR |
| Plaintiffs, | Assigned to the Honorable: Michael W. Fitzgerald |
| vs. | **DEFENDANTS' MOTION FOR LACK OF STANDING, CAPACITY AND VACATUR OF VERDICT** |
| DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONEE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS LLC, a Florida limited liability company, | **[Concurrently Filed with Defendants' Request for Judicial Notice]** |
| Defendants. | Date: April 13, 2026<br>Time: 10:00 a.m.<br>Ctrm: 5A |
| DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company | |

Counterclaimants,

HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPERENGINE, LLC; a California limited liability company, DEON TAYLOR, an individual,

Counterclaim Defendants,

DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company,

Third-Party Plaintiffs

v.

ROXANNE TAYLOR, an individual, Third-Party Defendant

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 13, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Michael W. Fitzgerald in Courtroom 5A of the United States District Court for the Central District of

California, First Street Courthouse, 350 West 1st Street, Los Angeles, California

90012, Defendants Darrick Angelone, AOne Creative, LLC, and On Chain

Innovations, LLC ("Defendants") will and hereby do move the Court for an order:

(1) holding that Plaintiff Hyper Engine, LLC lacked capacity to prosecute this

action at trial and verdict and that no judgment may be entered for a still-

suspended entity; (2) vacating the $3,700,000 unapportioned compensatory award

and any punitive-damages predicate tied to the computer-fraud verdict; (3) holding

that Plaintiffs lack Article III standing and/or are not the real parties in interest

under Federal Rule of Civil Procedure 17(a) for ownership-dependent claims

premised on an assignment from an FTB-suspended predecessor entity; (4) setting

aside the liability findings on conversion and computer access and fraud to the

extent any theory fails as a matter of law, including under the CFAA and CDAFA

statutory-plaintiff requirements; (5) ordering a limited new trial on damages or

remittitur to a legally supportable maximum if any liability theory survives for any

legally eligible plaintiff; and (6) entering judgment consistent with the Court's

threshold rulings on standing, capacity, and real-party-in-interest.

　　　This Motion is made pursuant to Federal Rules of Civil Procedure 12(h)(3),

9(a), 17, and 59, and California Revenue and Taxation Code §§ 23301 and

23301.5, on the grounds that Plaintiffs lack standing, capacity, and real-party-in-

interest status to obtain judgment on the ownership-dependent and statutory-plaintiff-limited theories submitted to the jury, and that the unapportioned lump-sum verdict cannot stand where at least one named Plaintiff was FTB-suspended throughout trial and verdict and Plaintiffs' chain of title depends on an assignment from a predecessor entity that has been continuously suspended since September 1, 2015.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Request for Judicial Notice and exhibits attached thereto; the pleadings, records, and files in this action; the trial record including admitted exhibits; and such further evidence and argument as may be presented at or before the hearing on this Motion

Date: March 16, 2026

Respectfully submitted,
**LAW OFFICES OF JT FOX, APC**

*s/J.T. Fox*

By: _____

J.T. Fox, Esq., Attorney for Defendants, DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC

-4-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................6

I.   INTRODUCTION .......................................................................9

II.  VERDICT POSTURE AND THE UNAPPORTIONED AWARD .................13

III. ENTITY AND ASSET TIMELINE.................................................15

IV.  HYPER ENGINE'S FTB SUSPENSION ELIMINATES ITS CAPACITY TO OBTAIN JUDGMENT .................................................................17

V.   THE PREDECESSOR'S INCAPACITY DEFEATS THE ENTIRE CHAIN OF TITLE...............................................................................19

    A. Plaintiffs Pleaded and Tried a Corporate Ownership Theory Dependent on the Predecessor...............................................................19

    B. An Assignee Inherits the Assignor's Incapacity .......................21

    C. The FAC's Film-Domain Overclaims Independently Undermine the Verdict...............................................................................22

    D. A Post-Verdict Pivot to "Personal Ownership" is Foreclosed .................25

VI.  THE COMPUTER-FRAUD VERDICT FAILS UNDER STATUTORY-PLAINTIFF LIMITS .................................................................26

    A. CFAA: Only the "Person Who Suffers Damage or Loss" May Sue........26

    B. CDAFA: Only the "Owner or Lessee" May Sue .......................28

    C. The Combined Verdict Cannot Be Salvaged ...........................28

VII. THE LUMP-SUM AWARD REQUIRES VACATUR.................................29

VIII. RESPONSE TO ANTICIPATED COUNTERARGUMENTS ....................31

    A. "We Can Revive the Predecessor Entity" .................................31

    B. "Rule 17(a)(3) Allows Post-Verdict Ratification" .....................32

    C. "Capacity Is Waivable and the Jury Found Ownership"..........................33

    D. "Deon Taylor Owned the Assets Personally" ...........................34

IX.  CONCLUSION AND REQUESTED RELIEF .............................................34

# TABLE OF AUTHORITIES

## <u>CASES</u>

*United States Supreme Court*

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986)..............................................30

*Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.,* 493 U.S. 331 (1990) .......26

*New Hampshire v. Maine,* 532 U.S. 742 (2001) ...........................................20, 26

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.,* 370 U.S. 19
(1962) ...........................................................................................15, 29

*Summers v. Earth Island Inst.,* 555 U.S. 488 (2009) .........................................31

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ...........................................30

*Yates v. United States,* 354 U.S. 298 (1957) .....................................................29

***Ninth Circuit Court of Appeals***

*Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224 (9th Cir. 1988)..................20

*Community Electric Serv. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n,
Inc.,* 869 F.2d 1235 (9th Cir. 1989) .......................................................11, 18

*Counts v. Burlington N. R.R. Co.,* 952 F.2d 1136 (9th Cir. 1991) ....................15

*Dunmore v. United States,* 358 F.3d 1107 (9th Cir. 2004) ...............................33

*Facebook, Inc. v. Power Ventures, Inc.,* 844 F.3d 1058 (9th Cir. 2016) ...........27

*Goodman v. United States,* 298 F.3d 1048 (9th Cir. 2002).................................32

*Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001)...........25

*Kern v. Levolor Lorentzen, Inc.,* 899 F.2d 772 (9th Cir. 1990) ........................15

*Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018 (9th Cir. 2003).......31

*LVRC Holdings LLC v. Brekka,* 581 F.3d 1127 (9th Cir. 2009) .......................27

*Molski v. M.J. Cable, Inc.,* 481 F.3d 724 (9th Cir. 2007) ...........................13, 30

*Traver v. Meshriy,* 627 F.2d 934 (9th Cir. 1980)...............................................29

*U-Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034 (9th Cir. 1986)....................33

*U.S. for Use & Benefit of Wulff v. CMA, Inc.,* 890 F.2d 1070 (9th Cir. 1989) ..33

# TABLE OF AUTHORITIES (continued)

*Webb v. Sloan,* 330 F.3d 1158 (9th Cir. 2003)....................................................29

**District Courts**

*Christian v. Betak,* No. 3:24-cv-01867-TSH (N.D. Cal. Dec. 20, 2024) .....27, 28

*Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.,* 387 F. Supp. 2d 378 (S.D.N.Y. 2005) ............................................................................30

*In re iPhone Application Litig.,* 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........27

*NovelPoster v. Javitch Canfield Grp.,* 140 F. Supp. 3d 954 (N.D. Cal. 2014)..27

**California Supreme Court**

*Bourhis v. Lord,* 56 Cal. 4th 320 (2013) ...........................................................31

*Essex Ins. Co. v. Five Star Dye House, Inc.,* 38 Cal. 4th 1252 (2006) ..............22

*Reed v. Norman,* 48 Cal. 2d 338 (1957)..................................................9, 11, 18

**California Courts of Appeal**

*Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.,* 155 Cal. App. 2d 46 (1957) ...................................................................................18

*Cal-Western Bus. Servs., Inc. v. Corning Capital Grp.,* 221 Cal. App. 4th 304 (2013) ...........................................................................10, 12, 21

*Casiopea Bovet, LLC v. Chiang,* 12 Cal. App. 5th 656 (2017).............10, 12, 22

*City of San Diego v. San Diegans for Open Gov't,* 3 Cal. App. 5th 568 (2016)18

*Cleveland v. Gore Bros., Inc.,* 14 Cal. App. 2d 681 (1936)...............................22

*Johnson v. County of Fresno,* 111 Cal. App. 4th 1087 (2003) ..........................22

*PacLink Commc'ns Int'l, Inc. v. Superior Court,* 90 Cal. App. 4th 958 (2001) ................................................................................................23, 26

*People v. Childs,* 220 Cal. App. 4th 1079 (2013) .............................................28

*Schwartz v. Magyar House, Inc.,* 168 Cal. App. 2d 182 (1959) ........................18

*Timberline, Inc. v. Jaisinghani,* 54 Cal. App. 4th 1361 (1997) ........................32

1

## TABLE OF AUTHORITIES (continued)

2

3   <u>**STATUTES AND RULES**</u>

4

5   18 U.S.C. § 1030(c)(4)(A)(i) ...................................................................27

6   18 U.S.C. § 1030(e)(11) ...............................................................27, 30

    18 U.S.C. § 1030(g) ...................................................................12, 27

7   Cal. Penal Code § 502(e)(1) ...................................................12, 16, 28

8   Cal. Rev. & Tax. Code §§ 23301, 23301.5 ...................................3, 9, 11, 15, 17

9   Cal. Rev. & Tax. Code §§ 23305, 23305b ...................................31, 32

10  Fed. R. Civ. P. 9(a) ...................................................................3, 13

11  Fed. R. Civ. P. 12(h)(3) ...............................................................3, 13

12  Fed. R. Civ. P. 17(a), (a)(3), (b) ...................................3, 10, 11, 12, 21, 32, 33

13  Fed. R. Civ. P. 17 advisory committee's note (1966 amendment) ...................33

    Fed. R. Civ. P. 59 ...................................................................3, 13, 30

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR LACK OF STANDING, CAPACITY AND VACATUR OF VERDICT

# I. INTRODUCTION

This case was built on a known defect. The entity that originally owned the disputed assets and contracted with Defendants—Hidden Empire Film Group, LLC—has been suspended by the California Franchise Tax Board since September 1, 2015. A suspended entity's "powers, rights and privileges" are forfeited, including the capacity to prosecute or defend an action and the power to assign enforceable rights. Cal. Rev. & Tax. Code §§ 23301, 23301.5; *Reed v. Norman*, 48 Cal. 2d 338, 343–44 (1957). Plaintiffs knew this when they filed suit. Three days after the complaint was filed, Roxanne Avent Taylor (on behalf of Plaintiffs) submitted a sworn declaration that openly identified "HEFG's predecessor, Hidden Empire Film Group, LLC" as the original contracting party and disclosed that, "[p]rior to the filing of this action, Hidden Empire Film Group, LLC, assigned all of its rights and obligations in the 2012 Agreement to HEFG." (R. Taylor Decl., Doc. 10-2, ¶ 9 (filed Sept. 15, 2022) (emphasis added).) That was not an innocent filing choice. It was a deliberate pre-suit transfer/assignment of assets engineered to route around the predecessor's (i.e., Hidden Empire Film Group, LLC) decade-long suspension—which was an attempt to give a newly formed entity the appearance of standing that the actual rights-holder could not provide.

The maneuver fails as a matter of law. Under California's corporate suspension statutes, an entity whose powers are suspended cannot exercise any

corporate power—including the power to assign its rights to another entity. An assignee "stands in the shoes" of the assignor and acquires no greater capacity to sue than the suspended assignor possessed. *Cal-Western Bus. Servs., Inc. v. Corning Capital Grp.*, 221 Cal. App. 4th 304, 311–13 (2013); *Casiopea Bovet, LLC v. Chiang*, 12 Cal. App. 5th 656, 665 (2017). You cannot pour good water into a poisoned well and call it clean. The assignment from a suspended entity transferred nothing—and the named Plaintiffs inherited the predecessor's incapacity, not its rights. Hidden Empire Film Group, LLC remains suspended to this day. No revivor has ever been obtained.

That foundational defect infects the entire verdict. The Court reserved three threshold legal questions for post-verdict determination: (1) whether Plaintiffs have jurisdictional Article III standing, (2) whether each Plaintiff had capacity to sue under Rule 17(b) and California law, and (3) whether Plaintiffs are the Rule 17(a) real parties in interest. Those questions are now dispositive because the jury returned a collective verdict for "Plaintiffs" with a single, unapportioned $3,700,000 compensatory award—and at least one named Plaintiff, Hyper Engine, LLC, was independently FTB-suspended and lacked legal capacity throughout trial and verdict.

This brief demonstrates that the verdict cannot stand as entered. The analysis proceeds in three lanes, each independently sufficient to require vacatur of the lump-sum award:

**Lane 1 — Capacity (Rule 17(b) / state law):** Capacity to sue is determined by the law of the state of organization; under California Revenue & Taxation Code §§ 23301 and 23301.5, an FTB-suspended entity's "powers, rights and privileges" are suspended, including the capacity to prosecute or defend an action. (Timing: capacity must exist at least through trial and entry of judgment. Remedy: judgment may not be entered for a still-suspended entity; the proper consequence is dismissal or abatement until a legally effective revivor.) Here, Hyper Engine, LLC was FTB-suspended from May 1, 2025, through trial and verdict. *Reed v. Norman*, 48 Cal. 2d 338, 343–44 (1957); *Community Electric Serv. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235, 1238–40 (9th Cir. 1989). Because the verdict was returned for "Plaintiffs" collectively and the compensatory award was not apportioned by plaintiff, this single defect compels vacatur of the entire award.

**Lane 2 — Real Party in Interest / Ownership (Rule 17(a)):** Rule 17(a) requires the action be prosecuted in the name of the real party in interest—the legally authorized rightsholder or statutory plaintiff. (Timing: the identity of the proper claimant is measured against the plaintiff's pleaded and tried chain of title and the ownership timeline. Remedy: the Court may allow ratification/joinder/substitution

under Rule 17(a)(3) within a reasonable time, but Rule 17 cannot create Article III standing or cure a transfer that was legally impossible due to the assignor's incapacity.) Here, Plaintiffs pleaded and tried a corporate-ownership chain of title running through a predecessor entity—Hidden Empire Film Group, LLC—that has been FTB-suspended since September 1, 2015. An assignee stands in the shoes of the assignor and acquires no greater capacity to sue than the suspended assignor possessed. *Cal-Western Bus. Servs., Inc. v. Corning Capital Grp.*, 221 Cal. App. 4th 304, 311–13 (2013); *Casiopea Bovet, LLC v. Chiang*, 12 Cal. App. 5th 656, 665 (2017). The jury's factual "assignment" finding does not cure a legal defect in the assignor's capacity to transfer enforceable rights. Based upon the aforementioned, there could not have been a legal transfer/assignment of Hidden Empire Film Group, LLC's assets to any party for that matter.

**Lane 3 — Statutory-Plaintiff Limits (CFAA/CDAFA):** The computer-fraud verdict rests on combined federal and state claims that limit civil standing to specified plaintiffs: the CFAA to the "person who suffers damage or loss," 18 U.S.C. § 1030(g), and the CDAFA to the "owner or lessee" of the computer system, Cal. Penal Code § 502(e)(1). (Timing: the statutory-plaintiff identity is measured on the same ownership timeline as Lanes 1 and 2. Remedy: if Plaintiffs are not the statutorily authorized plaintiff, the computer-fraud verdict and its punitive predicate

must be set aside.) On the ownership timeline the Court must now resolve, Plaintiffs cannot satisfy either statutory-plaintiff requirement.

**Relief requested.** Defendants respectfully request that the Court: (1) hold that Hyper Engine, LLC lacked capacity at trial and verdict and that no judgment may be entered for a still-suspended entity; (2) vacate the $3,700,000 unapportioned compensatory award and any punitive predicate tied to computer fraud; (3) to the extent any liability theory survives for any legally eligible plaintiff, order a limited new trial on damages or remittitur to a legally supportable maximum; and (4) enter judgment consistent with the Court's threshold rulings on standing, capacity, and real-party-in-interest.

**Procedural vehicle.** Because the Court reserved these issues for post-verdict determination—and no Rule 50(a) motion was made—Defendants invoke: (i) Fed. R. Civ. P. 12(h)(3) (subject-matter jurisdiction cannot be waived); (ii) Fed. R. Civ. P. 9(a) and 17 (capacity and real-party-in-interest); and (iii) Fed. R. Civ. P. 59 (new trial to prevent a miscarriage of justice where a lump-sum award may rest on an invalid plaintiff or theory). See *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

## II. VERDICT POSTURE AND THE UNAPPORTIONED AWARD

The jury's verdict defines the problem. Plaintiffs prevailed on two theories: conversion (Instruction No. 18) and computer access and data fraud (Instruction No.

-13-

17). The jury rejected breach of contract and copyright infringement. (Verdict Form (Plaintiffs), Doc. 274, PageID 7656–57.) The jury awarded a single compensatory amount of $3,700,000 under a damages question that asked for damages for "breach of contract, computer fraud, and/or conversion" without segregating by claim or plaintiff. (Doc. 274, PageID 7658 (Question 6).) The jury also found Plaintiffs met the threshold for punitive damages tied to the computer-fraud claim. (Doc. 274, PageID 7658 (Question 7).)

Both surviving theories depend on Plaintiffs having a legally cognizable ownership or entitlement interest in the claimed digital property. Conversion required as element one that "Plaintiffs owned the Google Workspace Account, domain names, or social media accounts." (Doc. 259, PageID 7526 (Instruction No. 18).) The computer-fraud claims require proof that Plaintiffs were the statutorily authorized plaintiff—the "person who suffers damage or loss" under the CFAA or the "owner or lessee" under the CDAFA. Because those ownership and statutory-plaintiff questions overlap with the Court's reserved standing, capacity, and real-party determinations, those rulings are now outcome-determinative.

Critically, the verdict form defined "Plaintiffs" collectively as Deon Taylor, Hidden Empire Holdings, LLC, and Hyper Engine, LLC. (Doc. 274, PageID 7656.) No apportionment by plaintiff was requested or made. That structure means a threshold defect affecting any named plaintiff—or any submitted theory—cannot be

surgically excised. The Court cannot determine what portion of $3,700,000 the jury attributed to any individual plaintiff or any particular theory, and any judicial allocation would be impermissible speculation. See *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 25–26 (1962); *Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 777–78 (9th Cir. 1990); *Counts v. Burlington N. R.R. Co.*, 952 F.2d 1136, 1141–42 (9th Cir. 1991).

## III. ENTITY AND ASSET TIMELINE

The following timeline synthesizes Plaintiffs' pleaded ownership narrative, admitted trial evidence, and judicially noticeable status records. It establishes the factual predicates for each threshold ruling.

| Date | Event / Asset Action | Entity / Capacity Status | Legal Significance |
|------|---------------------|--------------------------|--------------------|
| June 11, 2011 | Flagship domain secured (FAC ¶23, Doc. 174, PageID 5792) | Predecessor HEFG LLC alleged owner | Capacity of original owner controls chain of title |
| Apr. 26, 2012 | 2012 Agreement executed (HEFG LLC and AOne) (Doc. 187-2 at 31) | | Contract claimant status requires legally capable assignor |
| Sep. 1, 2015 | | Predecessor HEFG LLC suspended by FTB (RJN Ex. B) | "Powers, rights and privileges" suspended (§§ 23301, 23301.5), including capacity to assign or enforce |

| Oct. 2017 | Google Workspace set up; billed through AOne (Trial Exs. 150–152) | Predecessor still suspended | AOne is the Workspace customer/lessee; identifies § 502(e)(1) "owner/lessee" |
|---|---|---|---|
| Mar. 1, 2018 | Hyper Engine, LLC formed (Trial Exs. 172, 174) | Hyper Engine comes into existence | Did not exist when Workspace created; ownership requires later transfer |
| Sep. 14, 2018 | Hidden Empire Film Group, LP formed (RJN Ex. C) | Another later entity formed | Underscores multi-entity complexity; not a misnomer case |
| June 21, 2021 | Hidden Empire Holdings, LLC formed in Delaware; registered in California (RJN Ex. D) | Another later entity formed; predecessor still suspended | Underscores multi-entity complexity; assignee entity postdates asset creation |
| Before Sep. 12, 2022 | Alleged assignment to Hidden Empire Holdings, LLC (R. Taylor Decl., Doc. 10-2 ¶9) | Predecessor still suspended | Assignee stands in assignor's shoes; takes subject to incapacity |
| Sep. 12, 2022 | Complaint filed | Plaintiffs: HE Holdings, Hyper Engine, Deon Taylor | Standing measured at filing |
| May 1, 2025 | | Hyper Engine suspended by FTB (RJN Ex. A) | Hyper Engine's capacity suspended; cannot prosecute or defend |
| Jan. 14, 2026 | Trial commenced | Hyper Engine still suspended | No capacity to be plaintiff at trial |

| Feb. 3, 2026 | Jury verdict returned | Hyper Engine still suspended | Verdict for "Plaintiffs" collectively while named plaintiff lacked capacity |
|---|---|---|---|

The predecessor entity, Hidden Empire Film Group, LLC, has remained in continuous FTB suspension since September 1, 2015—nearly eleven years—during which it purportedly managed assets and attempted to assign rights it had no legal capacity to exercise.

## IV. HYPER ENGINE'S FTB SUSPENSION ELIMINATES ITS CAPACITY TO OBTAIN JUDGMENT

Hyper Engine, LLC is a California limited liability company formed March 1, 2018. (Trial Exs. 172, 174; Doc. 239, PageID 7380.) Judicially noticeable Secretary of

State/Franchise Tax Board records reflect that Hyper Engine's status is "Suspended – FTB," with an inactive date of May 1, 2025, and no revivor through trial and verdict. (RJN Ex. A at 1.) Hyper Engine was suspended when trial commenced on January 14, 2026, and remained suspended when the jury returned its verdict on February 3, 2026.

This is a threshold capacity defect, not a merits issue. Under California's suspension statutes, a domestic taxpayer's "powers, rights and privileges" are suspended upon FTB suspension. Rev. & Tax. Code §§ 23301, 23301.5. During

suspension, the entity "may not prosecute or defend an action, nor appeal from an adverse judgment." *Reed v. Norman*, 48 Cal. 2d 338, 343–44 (1957). In federal court, capacity is governed by Rule 17(b), and the Ninth Circuit applies California's suspension statutes to hold that a suspended California entity lacks capacity to sue in federal court—even on federal claims. *Community Electric Serv. of Los Angeles, Inc. v. Nat'l Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235, 1238–40 (9th Cir. 1989).

The disability is enforced in both directions and is not discretionary. Courts strike pleadings and reverse judgments entered for entities that were not revived before judgment. See *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.*, 155 Cal. App. 2d 46, 50–51 (1957) (trial court should have granted motion to strike the pleadings of a forfeited corporation; judgment reversed); *Schwartz v. Magyar House, Inc.*, 168 Cal. App. 2d 182, 189–190 (1959) (judgment entered for a corporation while its powers remained suspended is reversible where the corporation was not revived prior to entry of judgment); *City of San Diego v. San Diegans for Open Gov't*, 3 Cal. App. 5th 568, 577 (2016) (suspended corporation lacked legal capacity to prosecute action).

Because Hyper Engine remained suspended through trial and verdict, it lacked capacity to be a plaintiff litigant and to obtain a civil judgment. That defect is independently dispositive as to any recovery by Hyper Engine—and it infects the

-18-

verdict posture because the verdict form defined "Plaintiffs" collectively and the $3.7 million compensatory award was not apportioned among the three named plaintiffs. (Doc. 274, PageID 7656–58.) Plaintiffs cannot salvage the verdict by proposing to "strike Hyper Engine" while leaving the lump-sum award intact: the Court has no lawful basis to determine what portion (if any) the jury attributed to or was influenced by Hyper Engine as a named plaintiff, and any judicial allocation would be speculation and an impermissible rewrite of the verdict.

Absent proof of revivor before judgment, the Court must at minimum withhold any judgment for Hyper Engine and vacate the unapportioned award.

## V. THE PREDECESSOR'S INCAPACITY DEFEATS THE ENTIRE CHAIN OF TITLE

### A. Plaintiffs Pleaded and Tried a Corporate Ownership Theory Dependent on the Predecessor.

Plaintiffs' pleading posture and trial theory frame the disputed property as corporate assets of Hidden Empire Film Group, LLC ("predecessor HEFG"). The FAC alleges that predecessor HEFG secured the flagship domain in 2011 (FAC ¶¶23–24, Doc. 174, PageID 5792), that AOne managed "all of the HEFG domains" beginning in late 2014 (FAC ¶¶29–30, Doc. 174, PageID 5793–94), that "HEFG's corporate email system" was set up using Google Workspace tied to the HEFG

domain (FAC ¶47, Doc. 174, PageID 5798), and that HEFG "currently owns" specific HEFG social-media accounts (FAC ¶¶55, 59, Doc. 174, PageID 5800–01).

In sworn declarations, Roxanne Advent Taylor repeatedly identified predecessor HEFG as the contracting party to the 2012 Agreement and stated that "[p]rior to the filing of this action, Hidden Empire Film Group, LLC, assigned all of its rights and obligations in the 2012 Agreement to HEFG." (R. Taylor Decl., Doc. 10-2, ¶ 9; R. Taylor Decl. ISO MSJ, Doc. 187-2, ¶¶ 1, 9.) Exhibits submitted by Plaintiffs contain repeated confidentiality statements asserting that materials "are the property of Hidden Empire Film Group, LLC." (See, e.g., Doc. 10-2 at 148; Doc. 187-2 at 43, 57–58, 155 as well as admitted trial exhibits 2, 3, 4, 12, 29, 122, and 132) These statements are judicial admissions that lock Plaintiffs into a corporate chain of title dependent on the predecessor's legal capacity. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

The timing and structure of the pre-suit assignment confirm that the incapacity problem was not inadvertent. Ms. Taylor's first sworn declaration in this case—filed September 15, 2022, just three days after the filing of the complaint—carefully distinguished between Hidden Empire Holdings, LLC ("HEFG") and "HEFG's predecessor, Hidden Empire Film Group, LLC." (R. Taylor Decl., Doc. 10-2, ¶¶ 1, 9 (emphasis added).) Ms. Taylor disclosed that the predecessor's rights were

-20-

assigned to the Holdings entity "[p]rior to the filing of this action." (Id. ¶ 9.) This was not an innocent mistake about which corporate entity to list in the caption—it was a premeditated litigation structure designed to route around an entity whose "powers, rights and privileges" had been suspended since 2015. That the need for this workaround was apparent to Plaintiffs at the outset underscores that the predecessor's incapacity is not some technicality raised for the first time post-verdict; it is a defect Plaintiffs recognized, attempted to circumvent through assignment, and hoped would escape judicial scrutiny. Rule 17(a)(3)'s safety valve for "understandable mistakes" does not protect deliberate workarounds.

### B. An Assignee Inherits the Assignor's Incapacity.

The jury's factual "assignment" finding (Instruction No. 16) addressed whether Hidden Empire Holdings could sue on the 2012 contract by proving that predecessor HEFG "transferred its rights." That finding was not a judicial determination that the assignor had legal power or capacity to transfer. It was a factual finding about what the parties did, not a legal ruling on what those acts could accomplish when entity-capacity statutes constrain the power to assign.

California law is clear: an assignee "stands in the shoes" of the assignor and acquires no greater capacity to sue than the assignor possessed. *Cal-Western Bus. Servs., Inc. v. Corning Capital Grp.*, 221 Cal. App. 4th 304, 311–13 (2013) (trial court may raise incapacity defense sua sponte; assignee of suspended corporation

cannot enforce assigned claim); *Casiopea Bovet, LLC v. Chiang*, 12 Cal. App. 5th 656, 665 (2017) (assignee takes the same lack of capacity as suspended assignor); *Cleveland v. Gore Bros., Inc.*, 14 Cal. App. 2d 681, 683–84 (1936) (assignment does not avoid suspension-related incapacity). This is the baseline law of assignment: the transferee takes subject to all defenses that could have been asserted against the transferor. See *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1258–59 (2006); *Johnson v. County of Fresno*, 111 Cal. App. 4th 1087, 1096 (2003).

Because predecessor HEFG has been suspended since September 1, 2015, any purported assignment of its rights to the named Plaintiffs was an act by an entity whose "powers, rights and privileges" were suspended. Whether the Court characterizes the resulting defect as jurisdictional standing (no legally protected interest to transfer), capacity (the assignor could not exercise the power to assign), or Rule 17 real-party-in-interest (the assignee is not the legally authorized claimant), the consequence is the same: the named Plaintiffs cannot be the real party in interest for ownership-dependent claims, and the verdict cannot stand.

## C. The FAC's Film-Domain Overclaims Independently Undermine the Verdict.

The ownership problem extends beyond the predecessor's incapacity. Ms. Taylor testified that individual films are owned through separate, film-specific LLCs—e.g., "Fatale" by Fatale, LLC; "Intruder" by Motivated Seller, LLC;

"Traffik" by Stranded, LLC; "Meet the Blacks" by Meet The Blacks, LLC; "Supremacy" by Supremacy (LLC); and "Fear" by Social Distance, LLC. Ms. Taylor explained that "[e]very entity has their own, LLC." (Roxanne Advent Taylor's Deposition Transcript lodged with the Court during trial, Pages 247–250, Lines 247:17–250:4 Dated Sept. 10, 2025).) Yet the FAC lists these film-title domains and social-media accounts as "HEFG assets." (FAC ¶¶31, 57, Doc. 174, PageID 5794, 5801.)

An LLC is a separate legal person, and its property belongs to the LLC—not to its members or to an affiliated holding company absent a valid transfer. See *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964–66 (2001). If film-title domains and social-media accounts are tied to film-specific LLCs, then the named Plaintiffs had to prove a chain of title from each film LLC to each named Plaintiff for each such asset to satisfy conversion element one. They did not plead such a theory, and the jury's generalized "ownership" finding did not resolve these distinct chain-of-title issues. At minimum, any valuation of film-title assets owned by non-party LLCs is not recoverable by these Plaintiffs, independently confirming that the lump-sum award cannot be preserved.

***Table 1.*** *Film titles, film-LLC ownership testimony (R. Taylor Deposition Transcript, Pages 247–250, Lines 247:17–250:20, Dated Sept. 10, 2025, and film-domain/social accounts alleged in the FAC.*

| Film Title (FAC) | Film LLC Owner (R. Taylor Dep.) | Domains / Social Accounts Alleged in FAC |
|---|---|---|
| Fatale | Fatale, LLC Page 247:20 | **Domains:** fatale.movie <br> **Socials:** Fatalemovie (Facebook / Instagram / YouTube / Twitter) |
| Intruder | Motivated Seller, LLC Page 248:5–6 | **Domains:** theintruder.movie <br> **Socials:** Theintrudermovie (Facebook / Instagram / YouTube / Twitter) |
| Traffik | Stranded, LLC Page 248:7 | **Domains:** traffik.movie; traffikmovie.com <br> **Socials:** Traffikmovie (Facebook / Instagram / YouTube / Twitter) |
| Meet the Blacks | Meet The Blacks, LLC Page 248:19–20 | **Domains:** meettheblacksmovie.com; meettheblacksthemovie.com <br> **Socials:** Meet_the_blacks (Facebook / Instagram / YouTube / Twitter) |
| The House Next Door: Meet the Blacks 2 | The House Next Door (LLC) Page 249:2, 9–10 | **Domains:** thehousenextdoor.movie <br> **Socials:** (not listed in FAC) |
| Supremacy | Supremacy (LLC) Page 249:12–13 | **Domains:** supremacyfilm.com; supremacymovie.com <br> **Socials:** Supremacy.movie (Facebook / Instagram / YouTube / Twitter) |
| Fear | Social Distance, LLC Page 250:1 | **Domains:** fear.movie; fearthemovie.com <br> **Socials:** Fear.movie (Facebook / Instagram / YouTube / Twitter) |
| Free Agents | Not identified (in development) | **Domains:** freeagantsmovie.com; freeagents.movie <br> **Socials:** (not listed in FAC) |

| | Page 250:9–11 | |
|---|---|---|
| Hoop 2 | N/A ("Hoop 2 Film" described as Deon Taylor loan-out) Page 250:14–20 | **Domains:** hoop2film.com; hooptofilm.com<br>**Socials:** (not listed in FAC) |

Each film-title entry in the table above represents digital property that Ms. Taylor's own testimony attributes to a separate, non-party LLC. The FAC, however, bundles all of these assets together as "HEFG" property. The named Plaintiffs did not plead or prove a chain of title from any of these film LLCs. To the extent the $3.7 million award includes fair-market-value damages for any of these assets, it encompasses property not owned by any named Plaintiff.

### D. A Post-Verdict Pivot to "Personal Ownership" is Foreclosed.

If Plaintiffs now assert that Deon Taylor personally owned the disputed assets, that theory is inconsistent with the FAC's corporate-ownership narrative, the way the case was tried, and the verdict form's framing of "Plaintiffs" collectively. Judicial estoppel bars such a pivot. See *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782–85 (9th Cir. 2001); *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).

Even setting aside judicial admissions, the shareholder standing rule independently defeats a personal-ownership theory. Under *Franchise Tax Bd. of Cal.*

*v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990), a shareholder may not sue in his own right to redress an injury to the corporation. California applies the same principle to LLCs: members have no interest in specific LLC property, and when the gravamen is injury to company assets, the action must be derivative. *PacLink*, 90 Cal. App. 4th at 964–66. Plaintiffs cannot preserve this verdict by recharacterizing corporate digital assets as "Deon Taylor's personal property."

## VI. THE COMPUTER-FRAUD VERDICT FAILS UNDER STATUTORY-PLAINTIFF LIMITS

The jury was asked a single combined question on "computer access and fraud" under Instruction No. 17, which set out a combined CFAA/CDAFA theory. Neither the instruction nor the verdict form asked the jury to decide the threshold statutory-plaintiff identity questions that control who may sue under each statute. Those questions, like the ownership/capacity issues for conversion, are legal prerequisites reserved for the Court.

### A. CFAA: Only the "Person Who Suffers Damage or Loss" May Sue.

The CFAA's civil remedy is limited to the "person who suffers damage or loss," and only where the conduct involves loss aggregating at least $5,000 during a one-year period. 18 U.S.C. § 1030(g); § 1030(c)(4)(A)(i)(I). See *Christian v. Betak*, No. 3:24-cv-01867-TSH, ECF No. 30 at 6 (N.D. Cal. Dec. 20, 2024) (analyzing §

-26-

1030(g) by asking whether the plaintiff adequately alleged CFAA-qualifying "damage or loss").

This statutory-plaintiff inquiry collides with Ninth Circuit CFAA doctrine tying "authorization" to the decisions of the entity with authority to grant or revoke access. See *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135–36 (9th Cir. 2009); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067–68 (9th Cir. 2016). If Plaintiffs (or their alleged assignor) were not the entity with authority over the Google Workspace at the relevant time, their "without authorization" theory is legally unsupported and they cannot satisfy § 1030(g)'s requirement that the civil plaintiff be the person who suffered CFAA-qualifying loss.

"Loss" under the CFAA is narrowly defined: it covers reasonable costs to respond to the offense, conduct a damage assessment, and restore the system and data—not generalized business harms or asset valuations. 18 U.S.C. § 1030(e)(11); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064–67 (N.D. Cal. 2012); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960–61 (N.D. Cal. 2014). This matters for the damages analysis below: even if the CFAA claim survived, it could not support a $3.7 million fair-market-value award.

## B. CDAFA: Only the "Owner or Lessee" May Sue.

California's CDAFA is stricter. Section 502(e)(1) limits civil standing to "the owner or lessee of the computer, computer system, computer network, computer

-27-

program, or data who suffers damage or loss." In *Christian v. Betak*, the court dismissed the plaintiff's CDAFA claim for failure to satisfy this owner-or-lessee requirement, even though the plaintiff was an "authorized user" of the disrupted services. No. 3:24-cv-01867-TSH, ECF No. 30 at 7–8 (N.D. Cal. Dec. 20, 2024). See also *People v. Childs*, 220 Cal. App. 4th 1079, 1099–1101 (2013) (focusing on interference with computer services to the party with the legally cognizable possessory/control interest).

Here, admitted evidence shows the Google Workspace for hiddenempirefilmgroup.com was set up and billed through AOne in 2017. (Trial Exs. 150–152, 29; Doc. 239, PageID 7377.) Hyper Engine did not exist until March 1, 2018. On this record, absent evidence that any named Plaintiff was the contracting/billing account holder for the Workspace during the relevant period, Plaintiffs cannot satisfy § 502(e)(1)'s owner-or-lessee requirement. If the rightful "owner or lessee" was the suspended predecessor HEFG or a non-party, then Plaintiffs lack a civil cause of action under the CDAFA and the computer-fraud verdict component fails as a matter of law.

## C. The Combined Verdict Cannot Be Salvaged.

Because the case was tried and submitted as a single combined "computer access and fraud" theory, the Court cannot salvage the verdict by post hoc selecting a statute that might fit. If Plaintiffs are not the statutorily authorized plaintiff under

either the CFAA or CDAFA on the ownership timeline the Court must now resolve, the computer-fraud verdict findings—including the punitive-damages predicate— must be set aside.

## VII. THE LUMP-SUM AWARD REQUIRES VACATUR

The damages problem is structural, not discretionary. When multiple legal theories are submitted and the jury returns an undifferentiated award, the award cannot stand if any theory is legally invalid and the Court cannot determine the basis for the verdict. See *Sunkist Growers*, 370 U.S. at 25–26; *Webb v. Sloan*, 330 F.3d 1158, 1168–69 (9th Cir. 2003); *Traver v. Meshriy*, 627 F.2d 934, 938–39 (9th Cir. 1980); *Yates v. United States*, 354 U.S. 298, 312 (1957).

Here, the jury returned one compensatory number for "breach of contract, computer fraud, and/or conversion," even though the jury rejected breach of contract. The $3.7 million necessarily rests on computer fraud and conversion, but the internal allocation is unknown.

The conversion damages instruction expressly authorized a fair-market-value measure: "the fair market value of the Google Workspace Account, domain names, or social media accounts at the time [Defendants] wrongfully exercised control over them." (Doc. 259, PageID 7550 (Instruction No. 36).) That is a materially different damages theory than CFAA "loss," which is limited to response/restoration costs. 18 U.S.C. § 1030(e)(11); *Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387

-29-

F. Supp. 2d 378, 381–82 (S.D.N.Y. 2005). If conversion fails because Plaintiffs lacked legal ownership, the Court cannot simply "retain" $3.7 million as computer-fraud damages—the fair-market-value approach likely dominates the sum, and CFAA loss cannot include it.

A federal court cannot award damages unless the plaintiff has Article III standing with a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Where damages are tethered to a legally invalid predicate, they cannot survive independently. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Rule 59 empowers the Court to set aside verdicts that are unsupported or work a miscarriage of justice. *Molski*, 481 F.3d at 729.

**Remedy pathway.** If the Court holds Plaintiffs lacked standing, capacity, or real-party status for conversion, the conversion verdict cannot stand and the lump-sum award must be vacated. If the Court further holds Plaintiffs do not satisfy the CFAA/CDAFA statutory-plaintiff requirements, the computer-fraud verdict and its punitive predicate must also be set aside. If one theory survives for one eligible plaintiff, the award must still be vacated because the record does not permit a lawful allocation, and a limited new trial on damages (or remittitur to a legally supportable maximum) is required.

## VIII. RESPONSE TO ANTICIPATED COUNTERARGUMENTS
### A. "We Can Revive the Predecessor Entity."

Even assuming a post-verdict revivor, the Court must still decide: (1) whether revivor would cure jurisdictional Article III standing defects, which are ordinarily assessed at commencement and not retroactively created by swapping plaintiffs, see *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003); and (2) whether revivor could retroactively validate an assignment that—because of suspension—could not lawfully confer enforceable rights on the present Plaintiffs.

The revival statute itself confirms this limitation. Section 23305 provides that upon issuance of a certificate of revivor, reinstatement is "without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture." Cal. Rev. & Tax. Code § 23305. Defendants' standing, capacity, and real-party-in-interest defenses accrued during the predecessor's decade-long suspension — they are precisely the type of "right which has accrued" that the statute preserves. Moreover, revivor requires filing all delinquent tax returns and paying all outstanding taxes, penalties, and interest before the FTB will issue a certificate. *Id.* Even a conditional revivor under Section 23305b — which permits reinstatement without full payment where the FTB determines it will "improve the prospects for collection" — may be limited in time and scope. Cal. Rev. & Tax. Code § 23305b. No revivor application has been filed, no certificate has issued, and no basis exists to stay post-verdict proceedings on the speculation that one might.

California's revival cases recognize that revival can, in some contexts, validate certain procedural acts taken while suspended (e.g., a notice of appeal). See *Bourhis v. Lord*, 56 Cal. 4th 320, 324–25 (2013). But those cases concern revival of the same entity and relation-back for that entity's own prosecution. They do not authorize using revival to retroactively validate an assignment that purports to make different plaintiffs the real parties in interest after the case has been tried to verdict. Moreover, relation back is not boundless: revival does not erase accrued substantive defenses or intervening third-party rights. See *Timberline, Inc. v. Jaisinghani*, 54 Cal. App. 4th 1361, 1365 (1997).

More fundamentally, the verdict is in favor of the present Plaintiffs, not the predecessor. Even if the predecessor were revived, revival would at most restore that predecessor's own capacity; it would not transform the verdict and lumped-damages findings returned for "Plaintiffs" into a verdict for a different claimant.

### B. "Rule 17(a)(3) Allows Post-Verdict Ratification."

Rule 17's cure provision exists to prevent forfeiture when "determination of the proper party to sue is difficult" or "an understandable mistake has been made"—not to allow a party to litigate to verdict on one ownership theory and then restructure the identity of the claimant when a threshold defect becomes dispositive. Fed. R. Civ. P. 17 advisory committee's note (1966 amendment).

Ninth Circuit authority confirms these limits. Rule 17(a) relief is a narrow safety valve for honest mistakes, not strategic post hoc restructuring. See *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1039–40 (9th Cir. 1986); *Goodman v. United States*, 298 F.3d 1048, 1054 (9th Cir. 2002); *Dunmore v. United States*, 358 F.3d 1107, 1112–13 (9th Cir. 2004) (Rule 17(a) relief requires an "understandable mistake" and is not available to cure a deliberate choice about who owns the claim); *U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074–75 (9th Cir. 1989).

This is not a misnomer case. Plaintiffs' own Entity/Asset Timeline and sworn chain-of-title show multiple distinct entities, later-formed entities, and a suspended predecessor. Plaintiffs litigated that multi-entity ownership theory through the complaint, the FAC, discovery, summary judgment, and a full jury trial without timely ratification, joinder, or substitution.

### C. "Capacity Is Waivable and the Jury Found Ownership."

The Court reserved these issues for post-verdict decision. The jury instructions confirm that "ownership" was treated as a factual element for conversion and authorization-related theories—not as a judicial determination of legal capacity. A jury finding that "Plaintiffs owned the property" does not decide whether, as a matter of law, an incapacitated predecessor could hold, enforce, or assign those rights or confer them on these Plaintiffs.

### D. "Deon Taylor Owned the Assets Personally."

As detailed in Section V.D above, this theory is foreclosed by judicial admissions and estoppel, and independently defeated by the shareholder standing rule. Plaintiffs cannot preserve the verdict by recharacterizing HEFG's corporate assets as personal property unless they prove actual personal title or a valid assignment from a legally capable owner—a showing that would collide with the predecessor's continuous FTB suspension and Plaintiffs' pleaded chain of title.

## IX. CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, Defendants respectfully request that the Court:

1. **Capacity:** Take judicial notice of the Secretary of State/FTB status records establishing (i) the predecessor entity's suspension/incapacity (RJN Ex. B), (ii) the formation timing of later entities (RJN Exs. C, D), (iii) Hyper Engine, LLC's FTB suspension effective May 1, 2025, continuing through trial and verdict (RJN Ex. A), and (iv) the formation of Hidden Empire Holdings, LLC in Delaware on June 21, 2021—postdating the creation of the digital assets at issue (RJN Ex. D); hold that no judgment may be entered for any plaintiff that remained suspended through verdict (including Hyper Engine) absent proof of revivor before judgment; and deny any request to stay post-verdict proceedings to permit a speculative revivor.

**2. Unapportioned Award:** Vacate the $3,700,000 compensatory award and any punitive predicate tied to computer fraud, because the verdict is a single lump sum returned for "Plaintiffs" collectively and cannot be preserved without impermissible speculation if any plaintiff lacked standing or capacity or any submitted theory is legally invalid.

**3. Damages Remedy:** If any liability theory survives for any legally eligible plaintiff, vacate and order a limited new trial on damages only (or remittitur to a legally supportable maximum tied solely to the surviving plaintiff/theory), because the compensatory award is not allocated by claim or plaintiff.

**4. Standing / Real Party / Statutory Plaintiff:** Hold that Plaintiffs lack jurisdictional Article III standing and/or are not the Rule 17 real party in interest and/or lacked capacity for the ownership-dependent and statutory-plaintiff-limited theories tried to the jury, and deny entry of judgment on those theories.

**5. Liability Findings:** Set aside the liability findings on conversion (Instruction No. 18) and/or computer access and fraud (Instruction No. 17) to the extent any theory fails as a matter of law, including the CFAA/CDAFA statutory-plaintiff limits, and set aside any punitive predicate tied to an invalid theory.

**6. Judgment:** Enter judgment consistent with the Court's standing, capacity, and real-party rulings, including denial of judgment for any still-suspended entity and any further relief the Court deems proper.

Dated: March 16, 2026                LAW OFFICES OF JT FOX, APC

*s/J.T. Fox*

By: _____
                                 J.T. Fox, Esq., Attorney for
                                 Defendants, DARRICK
                                 ANGELONE, AONE CREATIVE
                                 LLC, formerly known as AONE
                                 ENTERTAINMENT LLC and ON
                                 CHAIN INNOVATIONS LLC

## PROOF OF SERVICE

I, the undersigned, declare:

I am a citizen of the United States of America, am over the age of eighteen (18) years, and not a party to the within action. I am an employee of the Law Offices of J.T. Fox, APC, and my business address is 556 S. Fair Oaks, No. 444, Pasadena, CA 91105.

On March 16, 2026, I served a true and correct copy of **DEFENDANTS' MOTION FOR LACK OF STANDING, CAPACITY AND VACATUR OF VERDICT** on the parties involved as stated below and addressed as follows:

FELTON T. NEWELL (State Bar #201078)
felton@newellpc.com
NEWELL LAW GROUP PC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (310) 556-9663

SABRINA NARAIN (State Bar #299471)
sabrina.narain@nm-llp.com
NARAIN MACLEAR LLP
300 S. Grand Street, Suite 3950
Los Angeles, CA 90071
Telephone (213) 612-3773

Attorneys for Plaintiffs and Counterclaim Defendants **HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE, LLC,** and **DEON TAYLOR;** and Third-Party Defendant **ROXANNE TAYLOR**

(X) BY E-MAIL transmission: I caused the aforementioned listed document to be emailed to the above parties on the date set forth above from the following email address: jt@jtfoxlaw.com.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2026 at Pasadena, California.


*s/J.T. Fox*

---------------------------------
J.T. FOX, DECLARANT

-37-