J.T. Fox, Esq., SBN 195063

LAW OFFICES OF JT FOX, APC

556 S. Fair Oaks Ave., Suite 444

Pasadena, CA 91105

(888) 750-5530 Work

(888) 750-5530 Fax

Email: jt@jtfoxlaw.com

Attorney for Defendants and Counterclaimants,
DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIDDEN EMPIRE HOLDINGS, LLC; a Delaware limited liability company; HYPER ENGINE, LLC; a California limited liability company; DEON TAYLOR, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONEE ENTERTAINMENT LLC, a Florida limited liability company; and ON CHAIN INNOVATIONS LLC, a Florida limited liability company, <br><br> Defendants. <br><br> DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company <br><br> Counterclaimants, <br><br> HIDDEN EMPIRE HOLDINGS, | Case No. 2:22-cv-06515-MWF-AGR <br><br> Assigned to the Honorable: Michael W. Fitzgerald <br><br> **DEFENDANTS AND COUNTERCLAIMANTS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO SECTION 17 U.S.C. SECTION 505, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND DECLARATION OF SANDY CALIN, ESQ., DECLARATION OF J.T. FOX, ESQ. AND ATTACHED EXHIBTS** <br><br> [Concurrently Filed with Defendants' Proposed Order Re: Motion for Attorneys' Fees and Costs Pursuant to Section 17 U.S.C. Section 505) <br><br> Date: April 13, 2026 <br> Time: 10:00 a.m. <br> Ctrm: 5A |

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

LLC; a Delaware limited liability company; HYPERENGINE, LLC; a California limited liability company, DEON TAYLOR, an individual,

Counterclaim Defendants,

DARRICK ANGELONE, an individual; AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC, a Florida limited liability company; ON CHAIN INNOVATIONS LLC, a Florida limited liability company,

Third-Party Plaintiffs

v.

ROXANNE TAYLOR, an individual, Third-Party Defendant

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD

**PLEASE TAKE NOTICE** that on April 13, 2026, at 10:00 a.m. in Courtroom 5A of the above-entitled courthouse, Defendants and Counterclaimants DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC ("Defendants"), by and through their undersigned counsels, will move the Court for an award of statutory attorneys' fees and costs in this matter, pursuant to 17 U.S.C. Section 505.

This Motion is made on the grounds that Defendants are the prevailing party as to Plaintiffs and Cross-Defendants' Ninth Cause of Action in their First Amended Complaint for Copyright Infringement (See Doc 174, Page ID# 5784) pursuant to 17

DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

U.S.C. Section 505, and thus, are entitled to a discretionary award of its actual attorneys' fees and costs under the fee provision in the Agreement.

This Motion is based upon 17 U.S.C. Section 505, this Notice of Motion and Motion for Award of Attorneys' Fees and Costs, the accompanying Memorandum of Points and Authorities, the Declaration of Sandy Calin, Esq., the Declaration of J.T. Fox, Esq., and the exhibits attached thereto, all other papers and pleadings on file in the action, and such other argument or evidence as may be presented at or before the time the Motion is taken under submission.

Date: March 16, 2026

Respectfully submitted,
**LAW OFFICES OF J.T. FOX, APC**

*s/J.T. Fox*

By: _____

J.T. Fox, Esq.
Attorney for Defendants,
DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      INTRODUCTION**

Following jury trial in this matter, Defendants and Counterclaimants DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC ("Defendants") prevailed in respect to Plaintiff and Counter-Defendants Ninth Cause of Action for Copyright Infringement under 17 U.S.C. Section 501.  Defendants now seek to obtain a discretionary award of their attorney's fees and costs pursuant to 17 U.S.C. Section 505 as a prevailing party.

**II.      PLAINTIFFS AND COUNTER-CLAIMANTS DID NOT HAVE LEGAL STANDING TO BRING THEIR NINTH CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT AND PROCEEDED TO LITIGATE THIS CAUSE OF ACTION THROUGH THE PENDENCY OF THIS ACTION UNREASONABLY, THUS SUBSTANTIATING A DISCRETIONARY AWARD OF ATTORNEY'S FEES AND COSTS IN FAVOR OF DEFENDANTS**

Plaintiffs and Counter-Defendants' ("Plaintiffs") claims in their Ninth Cause of Action in their First Amended Complaint (Doc 174, Page Id# 5784) is predicated on Plaintiffs' supposed copyright protection as afforded by the United States Copyright Office in conjunction with the project called Fear Movie.  That the Fear Movie is a motion picture within the meaning of 17 U.S.C. Section 101. That the Fear Movie was created and "fixed" by Plaintiffs in July 2020, automatically securing copyright protection for the expressions fixed in the film.  Plaintiffs also claimed that Defendants copied, displayed, and distributed the expressions fixed in the Fear Movie and made

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

derivates of those expressions without Plaintiffs' authorization in the Unauthorized Fear Game in violation of 17 U.S.C. Section 501.  And, as a result of Defendants' acts, Defendants were required to pay Plaintiffs their actual damages and Defendants' profits attributable to the infringement, or, at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. Section 504.

"The Copyright Act provides for an award of reasonable attorneys' fees "to the prevailing party as part of the costs." 17 U.S.C. § 505.

A successful defendant may be able to obtain its attorney's fees from the plaintiff. The standard set forth by the Supreme Court, in *Fogerty v. Fantasy, Inc*.  510 US 517 (1994) Docket No. 92-1750, gives a trial court discretion to award a Defendant its attorney's fees, applying four factors: (i) the frivolousness of the suit; (ii) the plaintiff's motivation for bringing the suit; (iii) the objective unreasonableness of the plaintiff; and (iv) the need to advance considerations of compensation and deterrence.  The Court concluded that such discretion is to be applied evenhandedly between victorious defendants and plaintiffs.  If the court finds that both the factual and legal arguments made by the non-prevailing party were unreasonable it may conclude that awarding attorney fees would satisfy the interests of justice.

Here, Plaintiffs' Nine Cause of Action for Copyright Infringement was frivolous. Plaintiffs proceeded with this legal claim, knowing that the proprietary rights to the Fear Movie did not belong to them.  And, as a result had no standing to bring this Copyright Infringement claim in the first place.  Simply put, the Copyright Registration for the Fear

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Film was owned by a company called Social Distance, LLC.  See Trial Exhibit No. 54.  See also a copy of a registration statement from the US Copyright Office in regard to the Fear Movie, attached hereto as Exhibit "A".  Further, Roxanne Taylor testified in her deposition that the Fear Movie was owned by Socal Distance, LLC.  See Roxanne Taylor's deposition transcript September 10, 2025, Page No. 284, Lines 17 to 20, 285, Lines 7 to 8, attached hereto as Exhibit "B".  There was also testimony at trial from Deon Taylor in which he confirmed that "Social Distance" was the working title for the Fear film and that Socal Distance LLC owned the Fear Movie.  Based upon the above, Plaintiffs clearly did not have any ownership interest in the Fear Movie and were well aware of this fact throughout the proceeding.  But yet, proceeded with this claim knowingly perfectly well that they did not have standing to do so.

In addition, even if Plaintiffs had standing for their copyright infringement claim, the evidence clearly showed, and the jury found, that Plaintiffs had given Defendants an implied license to develop the Fear Game, and therefore there was no infringement of the copyright of the Fear Movie.

It is plainly obvious, that Plaintiffs' motivation for improperly making this Copyright Infringement claim was for them to be able to obtain federal jurisdiction for their claims, as well as mounting undue litigation pressure against the Defendants.

The Copyright Registration for the Fear Movie was certified by Social Distance, LLC on July 24, 2020, which pre-dated this litigation.  Social Distance, LLC was the

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

proper party to bring the Copyright Infringement Claim (i.e., Plaintiffs' Ninth Cause of Action) and not the Plaintiffs.  There was no reasonableness in the Plaintiffs' pleading conduct, in that they had no legal standing or ownership of the subject intellectual property which was the basis of the Copyright Infringement claims.

By way of Plaintiff's litigation conduct as set forth above, Defendants were forced to defend the Copyright Infringement Claim unnecessarily, since Plaintiffs were not real parties in interest and had no right to make the claim.  The need for the Court to promote deterrence is warranted here.  The Court should not condone the conduct of parties who bring Copyright Infringement claims without a possessory interest in the copyright or legal standing to bring such a claim.  To do so, allows parties to bring unwarranted litigation pressure to an opposing party.  See Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996).

Upon registration of the copyright, however, a copyright owner can recover for infringement that occurred both before and after registration.  Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. ___ (2019).

## III.   DEFENDANTS' SPECIFIC REQUEST FOR ATTORNEY'S FEES AND COSTS

Undoubtedly, Defendants are the prevailing party in this litigation as to Plaintiffs' Ninth Cause of Action for Copyright Infringement and is entitled discretionary attorneys' fees and costs.  Further, Defendants request that this Court strongly consider the factors set forth above and award Defendants their attorneys' fees and costs in

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

defending Plaintiffs' First Amended Complaint.  Specifically, Defendants request the following fees and costs: (i) Kramer, deBoer & Keane - $228,900.10; (ii) Quandary Peak Research Inc. - $90,369.50; (iii) Integrity Legal Corp. - $7,324.41; (iv) Veritext LLC - $6,117.55 (A true and correct copy of Kramer, deBoer & Keane's attorney fees and cost bills, are attached hereto as Exhibit "C"); and (v) Law Offices of JT Fox, APC - $60,759.22 (A true and correct copy of Law Offices of JT Fox, APC's attorney fees and cost bills, are attached hereto as Exhibit "E".). For a total fees and costs award in the amount of $393,470.78 for Defendants.

## IV. THE ATTORNEYS' FEES INCURRED BY DEFENDANTS IN DEFENSE OF PLAINTIFFS' COPYRIGHT INFRINGEMNET CLAIM SOUGHT BY DEFENDANTS ARE REASONABLE

### A. Defendants' Counsels' Hourly Rates are Reasonable

As fully set forth in the Declaration of Sandra Calin, Defendants were charged a blended hourly rate of $125.00 per hour for paralegals, $230.00 per hour for associates and $250.00 per hour for partners for all work related to the defense of Plaintiffs' claims, which fully entwines the defense of Plaintiffs' claim for Copyright Infringement.  As set forth in the Declaration of J.T. Fox, Defendants were charged a blended hourly rate as well for partners as $375.00 per hour, $325.00 per hour for associates and $150.00 per hour for law clerks.  See Declarations of Sandra Calin and J.T. Fox, attached hereto.

The hourly rates claimed are reasonable in light of the skill, expertise, and reputation of Defendants' Counsels.

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Chiefly, the hourly rates charged by Defendants' Counsels are reasonable given the level of skill and expertise required for this matter, the stakes involved, and the qualifications of each attorney. Specifically, Sandra Calin has been litigating for 45 years with a focus on litigation, including extensive experience in commercial and personal lines, cyber risk and privacy breaches, toxic tort litigation, construction defect/construction site accidents, product liability and professional malpractice based claims. (See Calin Decl., ¶¶ 3.) J.T. Fox has been practicing law for approximately 28 years. He also has extensive experience in business litigation matters (and other legal areas of the law) and has tried over 60 cases to trial verdict in his career. (See Fox Decl., ¶¶ 3.). Such expertise was vital in defending Plaintiffs' claims in this matter.

The rates requested align with the prevailing market rates for attorneys handling similar matters. They reflect the standard hourly rates typically charged in the community for legal professionals of comparable skill and experience in these types of cases. The reasonableness of these rates is further substantiated by the accompanying Calin Decl. and Fox Decl., which detail the qualifications and successes of Defendants' Counsels.

Defendants' counsels' hourly rates are determined based on individual credentials, encompassing the attorney's education, professional experience, and the outcomes they have secured in similar cases. These rates are not arbitrary but are firmly anchored in professional achievements and expertise, ensuring that they are commensurate with the quality of representation provided in this matter.

**B.      The Number Of Hours Charged Is Reasonable**

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendants' counsels expended the time necessary to effectively ensure the defense of this matter. The hours charged are reflective of the effort required for a matter of this nature and are not excessive.

Throughout the litigation, Defendants' counsels focused on achieving the best outcome for the Defendants while keeping costs to a minimum. This included attending court hearings as required and engaging in discovery and motion practice to avoid unnecessary expenses. The primary time investment was in communication with Defendants, completing discovery, responding to various motions filed by the Plaintiffs, which included attending multiple court hearings and eventual trial.  Defendants' Counsel Calin also made attempts to settle this matter, short of trial to no avail.

Given that this matter ultimately proceeded to trial, the number of hours claimed is entirely reasonable and justified. The time spent was proportionate to the demands of the case and necessary to pursue the Defendants' interests effectively.

Furthermore, all of the work set out in the supporting declarations and exhibits are of the-type of work that would be billed to a client in a typical hourly-fee matter. (*MBNA Am. Bank v. Gorman* (2006) 147 Cal.App.4th Supp. 1. at *12 [affirming award where attorney time consisted "entirely of ordinary litigation activities. i.e.. correspondence and telephone conferences with opposing counsel, legal research, drafting legal documents, reviewing opposing counsel's filings, and preparation for and attending hearings.].) The billing statements attached to the Calin Decl. and Fox Decl. are entitled to a presumption of credibility, which extends to an attorney's professional judgment as to whether time spent was reasonably necessary to the litigation. (*Horsford v. Board of Trustees of Cal.*

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

*Stale Univ.* (2005) 132 Cal.App.4th 359, 396 ["We think the verified time statements of the attorneys as officers of the court are entitled to credence in the absence of a clear indication the records are erroneous."].)

Accordingly, Defendants respectfully request an award of its actual fees and costs in the amount of $393,470.78.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court award Defendants its actual attorneys' fees in the amount of $393,470.78.

DATED: March 16, 2026                    **LAW OFFICES OF JT FOX, A.P.C**

                                         *s/J.T. Fox*

                                         By:_____
                                              J.T. FOX
                                              Attorney for Defendants,
                                              DARRICK ANGELONE, AONE
                                              CREATIVE LLC, formerly known
                                              as AONE ENTERTAINMENT LLC
                                              and ON CHAIN INNOVATIONS
                                              LLC

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## **DECLARATION OF SANDRA CALIN, ESQ.**

I, Sandra Calin, Esq., declare as follows:

1.  I was one of the partners of Kramer, deBoer & Keane, counsel for Defendants DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC ("Defendants") in the above captioned action. I just recently retired following the jury verdict in this matter.  I submit this declaration in support of Defendants' Motion for an Award of Attorneys' Fees and Costs ("Fee Motion"), pursuant to 17 U.S.C. SECTION 505. Except as noted otherwise, I have personal knowledge of the facts herein and if called to testify, could and would testify competently thereto.

2.  I and my firm expended a reasonable number of hours on the proceedings before this Court, particularly given the length of the dispute, level of skill and expertise required for this matter, the stakes involved, and the qualifications of each paralegal and attorney in my firm.

3.  I graduated from the University of California - Santa Barbara with honors attended Southwestern School of Law and obtained a Juris Doctorate in Law. I became a member of the bar in 1981.  I practiced law for 45 years now.  I had extensive experience in commercial and personal lines, cyber risk and privacy breaches, toxic tort litigation, construction defect/construction site accidents, product liability and professional malpractice based claims.

4.  My hourly rate in this matter was $250.00 per hour, which was a partner rate. Associate attorneys were billed out at $230.00 per hour.  Paralegals were billed out at $125.00 per hour.

5.  A true and correct copy of my formal resume is attached hereto as Exhibit D. A true and correct copy of my firm's fees and costs bill is attached hereto as Exhibit "C".

6.  I was heavily involved in litigating this matter, which included legal research, drafting of documents, supervising of document drafting, directing research tasks,

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

preparing for and participating in meet and confer calls with opposing counsel, arguing Motions, appearing at case management conferences, depositions, trial, working with Defendants in investigating Plaintiffs' claims and Defendants' defenses, and analyzing legal issues and developing legal strategy.

7.     My firm incurred a total balance of $332,711.56 in fees and costs. Attached hereto as Exhibit "C" is our firm's account statement for fees and costs for Defendants, reflecting all amounts billed to Defendants in connection with work performed during the course of this litigation.

8.     In my judgment, the work undertaken by my firm in the proceedings before this Court was reasonably necessary to prevail on Plaintiffs' Ninth Cause of Action for Copyright Infringement which was intertwined with the rest of Plaintiffs' claims in their First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of March 2026 in Pasadena, California.

*s/Sandra Calin*

By: Sandra Calin

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

## DECLARATION OF J.T. FOX, ESQ.

I, J.T. Fox, Esq., declare as follows:

1.      I am a sole practioner of my firm of Law Offices of JT Fox, APC Kramer, counsel for Defendants DARRICK ANGELONE, AONE CREATIVE LLC, formerly known as AONE ENTERTAINMENT LLC and ON CHAIN INNOVATIONS LLC ("Defendants") in the above captioned action. I submit this declaration in support of Defendants' Motion for an Award of Attorneys' Fees and Costs ("Fee Motion"), pursuant to 17 U.S.C. SECTION 505. Except as noted otherwise, I have personal knowledge of the facts herein and if called to testify, could and would testify competently thereto.

2.      I and my firm expended a reasonable number of hours on the proceedings before this Court, particularly given the length of the dispute, level of skill and expertise required for this matter, the stakes involved, and the qualifications of each law clerk and attorney in my firm.

3.      I graduated from the University of La Verne School of Law and obtained a Juris Doctorate in Law. I was second in my class.  I became a member of the bar in 1998. I have practiced law for approximately 28 years.  I have extensive experience in business litigation matters (and other legal areas of the law) and have tried over 60 cases to trial verdict.

4.      My hourly rate in this matter is/was $375.00 per hour, which was a partner rate.  My firm's associate attorney (Justin Kian, Esq.) was billed out at $325.00 per hour. Before Mr. Kian became a licensed attorney, he was billed out as a law clerk at a rate of $150.00 per hour.

5.      A true and correct copy of my formal resume is attached hereto as Exhibit F. A true and correct copy of my firm's fees and costs bill is attached hereto as Exhibit "E".

6.      I have been heavily involved in litigating this matter, which included legal research, drafting of documents, supervising of document drafting, directing research tasks, preparing for and participating in meet and confer calls with opposing counsel,

- 11 -

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

arguing Motions, appearing at case management conferences, depositions, trial, working with Defendants in investigating Plaintiffs' claims and Defendants' defenses, and analyzing legal issues and developing legal strategy.

7. I have analyzed my firm's billing to the Defendants in this matter. I believe that my firm incurred a total balance of $60,759.22 in fees and costs related to the defense of Plaintiffs' claims in this matter. Attached hereto as Exhibit "E" is our firm's account statement for fees and costs for Defendants, reflecting amounts billed to Defendants in connection with work performed during the course of this litigation from my firm's defense work.

8. In my judgment, the work undertaken by my firm in the proceedings before this Court was reasonably necessary to assist the Defendants to prevail on Plaintiffs' Ninth Cause of Action for Copyright Infringement which was intertwined with the rest of Plaintiffs' claims in their First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of March 2026 in Pasadena, California.

*s/J.T. Fox*

By: J.T. Fox

- 12 -

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

# EXHIBIT "A"

# EXHIBIT 54

Case 2:22-cv-06515-MWF-AGR    Document 284    Filed 03/16/26    Page 18 of 591    Page ID #:8163



Home / Search / Detailed Record View

| Keyword | social distance llc | 🔍 |
| --- | --- | --- |

Advanced Search

# Detailed Record View
## Recordation record V9993D481

Copyright Catalog
Displaying 1 of 50,000 entries

◀ Previous    Next ▶

## Social Distance; motion picture.

Share ↗    Actions ⌄

| | |
| --- | --- |
| **Document Number** | V9993D481 |
| **Entire Copyright Document** | V9993 D481 P1-20 |
| **Type of Document** | Recorded Document |
| **Date of Recordation** | 2020-08-03 |
| **Date of Certification** | 07/24/2020 |
| **Date of Execution** | as of 9Jul20 |
| **Party 1** | Social Distance, LLC. |
| **Party 2** | Screen Actors Guild-American Federation of Television & Radio Artists. |
| **Notes** | Security agreement. |
| **List of Works** | 00001 Social Distance. |

DTProd001

**Title**   Social Distance; motion picture.

**Names**   [Social Distance, LLC](#)

[Screen Actors Guild-American](#)
[Federation of Television & Radio Artists](#)

◀ Previous       Next ▶

## Menu

Home
Recent Records
Recent Searches
Name Directory
Help

## Contact

Contact Us
Feedback

## Resources

Request a Copy Estimate
Request a Search Estimate
FAQs

# U.S. Copyright Office

101 Independence Ave. S.E.
Washington, D.C. 20559-6000
(202) 707-3000    or
1 (877) 476-0788 (toll-free)

**Disclaimer:** The Copyright Public Records System (CPRS) enables access to records maintained by the U.S. Copyright Office, including searchable indexing information provided by remitters and applicants who certify the information to be accurate. The Office does not verify the accuracy of this information. In addition, the information maintained in the CPRS has been indexed according to cataloging practices and classification systems that have changed over time. For these reasons, there may be gaps and inaccuracies in your search results.

For information on searching copyright records, see How to Investigate the Copyright Status of a Work (Circular 22). You can also request that the Copyright Office perform a search of its records. To request a Search Report, please contact the Records Research and Certification Division. For information on removing personal

DTProd002

Case 2:22-cv-06515-MWF-AGR    Document 284    Filed 03/16/26    Page 20 of 591    Page ID #:8165

information from Copyright Office public records, refer to Privacy: Public Copyright Registration Records (Circular 18).

U.S. Copyright Office  | Library of Congress  | Congress.gov  |
USA.gov  | FOIA  | Legal  | Privacy Policy

DTProd003

# EXHIBIT "B"

Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____

HIDDEN EMPIRE HOLDINGS, LLC; a)
Delaware limited liability    )
company; HYPER ENGINE, LLC; a )
California limited liability  )
company; DEON TAYLOR, an      )
individual,                   )
                              )
            Plaintiffs,       )
                              )
       vs                     ) No. 2:22-cv-06515-
                              )     MWF-AGR
DARRICK ANGELONE, an          )
individual; AONE CREATIVE LLC,)
formerly known as AONE        )
ENTERTAINMENT LLC, a Florida  )
limited liability company; and)
ON CHAIN INNOVATIONS LLC, a   )
Florida limited liability     )
company,                      )
                              )
            Defendants.       )
_____)

VIDEOTAPED DEPOSITION OF ROXANNE TAYLOR
Calabasas, California
Wednesday, September 10, 2025
Volume I

Reported by:
LYNN GEARHART, RPR
CSR No. 9466

Job No. CS7572255

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

_____

HIDDEN EMPIRE HOLDINGS, LLC; a )
Delaware limited liability    )
company; HYPER ENGINE, LLC; a )
California limited liability  )
company; DEON TAYLOR, an      )
individual,                   )
                              )
                Plaintiffs,   )
                              )
        vs                    ) No. 2:22-cv-06515-
                              )    MWF-AGR
DARRICK ANGELONE, an          )
individual; AONE CREATIVE LLC,)
formerly known as AONE        )
ENTERTAINMENT LLC, a Florida  )
limited liability company; and)
ON CHAIN INNOVATIONS LLC, a   )
Florida limited liability     )
company,                      )
                              )
                Defendants.   )
_____)

        Videotaped Deposition Transcript of ROXANNE
TAYLOR, Volume I, taken on behalf of Defendants, at
27001 Agoura Road, Suite 350, Calabasas, California,
beginning at 10:02 a.m. and ending at 6:42 p.m. on
Wednesday, September 10, 2025, before LYNN GEARHART,
Certified Shorthand Reporter No. 9466.

APPEARANCES:


For Plaintiffs:

    NEWELL LAW GROUP PC

    BY:  FELTON T. NEWELL

    Attorney at Law

    1801 Century Park East, 24th Floor

    Los Angeles, California 90067

    (310) 556-9663

    felton@newellpc.com

For Defendants:

    KRAMER, DEBOER & KEANE

    BY:  SANDRA CALIN

    Attorney at Law

    27001 Agoura Road, Suite 350

    Calabasas, California 91301

    (818) 657-0255

    scalin@kdeklaw.com

    LAW OFFICES OF JT FOX, APC

    BY:  J.T. FOX

    Attorney at Law

    556 South Fair Oaks Avenue, Suite 444

    Pasadena, California 91105

    (888) 750-5530

    jt@jtfoxlaw.com

Page 4

APPEARANCES (Continued):


    Also Present:

    DARRICK ANGELONE

Videographer:

    MEHRAN KHATCHADORIAN

Page 5

                              INDEX

WITNESS                                      EXAMINATION

ROXANNE TAYLOR

Volume I


                              BY MR. FOX              12




                            EXHIBITS

EXHIBIT                  DESCRIPTION              PAGES

Exhibit 1   Agreement dated 4/26/12 between      62

            Aone Entertainment, LLC and Hidden

            Empire Film Group, LLC


Exhibit 2   Email dated 10/22/13 from Deon       72

            to Darrick, re: Completion of

            Website


Exhibit 3   Two emails dated 11/29/17      74

            between Darrick and Roxanne,

            re: Marketing co.


Exhibit 4   Operating Agreement of Hyper         83

            Engine, LLC dated 3/1/2018

Page 6

INDEX (Continued):

                         EXHIBITS

EXHIBIT                DESCRIPTION              PAGES

Exhibit 5   Email chain dated 9/20/19    91
            between Roxanne and Monica
            Pagel of Bank of the West


Exhibit 6   Business Debit Card Enrollment     97
            for Darrick Angelone


Exhibit 7   Bank of the West statements        98


Exhibit 8   Emails dated 11/4/2019 between     104
            Roxanne and Christopher Fry


Exhibit 9   Operating agreement of Hyper       120
            Engine, LLC dated 12/1/2019


Exhibit 10  Emails dated 12/10/2014 re:        146
            HEFG website between Roxanne
            and Darrick, cc Deon


Exhibit 12  Email dated 1/27/2016 from   154
            Roxanne to Darrick re: Services
            Deal Memo, with attached letter

INDEX (Continued):

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| Exhibit 13 | Email chain, top one dated 12/19/2017 from Roxanne to Darrick re: Traffik promo | 161 |
| Exhibit 14 | Email chain, top one dated 1/30/2018 from Velma Sykes to Darrick, re: Budget Proposal | 178 |
| Exhibit 16 | Email dated 8/5/2020 from Darrick to Lamya Malhotra and invoices and check copies | 288 |
| Exhibit 17 | Email chain, top one dated 8/15/2019 from HE to info@ Hiddenempirefilmgroup.com | 268 |
| Exhibit 22 | Seven invoices billed from Aone Entertainment to Hidden Empire Film Group | 193 |
| Exhibit 23 | Email between Dorthea Silva and Roxanne Taylor, 3/2021 | 196 |

Page 8

INDEX (Continued):

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| Exhibit 24 | Email dated 11/25/2019 from Velma to S. Pottier | 200 |
| Exhibit 25 | Email chain, top one dated 6/21/21 from Velma to Roxanne, re: new Bank Accounts | 203 |
| Exhibit 26 | Document titled "Hidden Empire Job Responsibilities Draft" | 258 |
| Exhibit 28 | Contract between OP Innovate and Hidden Empire Film Group | 210 |
| Exhibit 31 | 2018 tax return for Hyper Engine, LLC | 217 |
| Exhibit 32 | Email dated 8/30/2022 from Barbara Campbell to Roxanne re: 2020 | 220 |
| Exhibit 38 | Quincy Newell's document production | 272 |

Page 9

INDEX (Continued):

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGES |
|---------|-------------|-------|
| Exhibit 40 | Copies of checks on behalf of Hyper Engine, LLC | 228 |
| Exhibit 41 | City National Bank statments and transactions | 235 |
| Exhibit 42 | Management report/financial Summary documentation for year ended 12/31/2020 | 128 |
| Exhibit 43 | Labor violation judgment and SOI issues | 206 |

INSTRUCTION NOT TO ANSWER

| PAGE | LINE |
|------|------|
| 226 | 21 |
| 227 | 24 |

Veritext Legal Solutions

800-567-8658                                973-410-4098

Page 10

Calabasas, California, Wednesday, September 10, 2025

10:02 a.m.

THE VIDEOGRAPHER:  Good morning.  We are going on the record at 10:02 a.m. on September 10th, 2025.  Please note that the microphones are sensitive and may pick up whispering, private conversations, and cellular interference.  Please turn off all cell phones or place them away from the microphones, as they can interfere with the deposition audio.  Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit one of the video-recorded deposition of Roxanne Taylor taken by counsel for defendant in the matter of Hidden Empire Holdings, LLC, et al. versus Darrick Angelone, et al. filed in the United States District Court for the Central District of California, Case No. 2:22-cv-06515-MWF-AGR.

This deposition is being held at Kramer DeBoer & Keane, LLC located at 27001 Agoura Road, Suite 350, Calabasas, California 91301.

My name is Mehran Khatchadorian from the firm Veritext Legal Solutions, and I'm the videographer.

Page 11

The court reporter is Lynn Gearhart from the firm Veritext Legal Solutions.  I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel and all present in the room and everyone attending remotely will now state their appearance and affiliations for the record.  If there are any objections to proceeding, please state them at the time of appearance, beginning with noticing attorney.

MS. CALIN:  Sandra Calin for defendants Darrick Angelone, Aone Creative, LLC and On Chain Innovations, LLC.

MR. FOX:  J.T. Fox for the same defendants just listed by Ms. Calin.

MR. NEWELL:  Felton Newell for the plaintiffs and also for the cross-defendant Roxanne Taylor.

THE VIDEOGRAPHER:  Thank you.

Counsel, will you introduce your client.

MR. FOX:  Yes.  Mr. Angelone is present.

THE VIDEOGRAPHER:  Thank you.

Will the court reporter please introduce yourself and administer the oath to the witness.

And, Counsel, you may proceed after that.

Thank you.

Page 12

THE REPORTER: Good morning. My name is Lynn Gearhart. I am a California Certified Shorthand Reporter with the No. 9466.

ROXANNE TAYLOR,

having been first administered an oath, was examined and testified as follows:

THE REPORTER: Thank you.

MR. FOX: Thank you.

EXAMINATION

BY MR. FOX:

Q   Good morning, Mrs. Taylor. How are you?

A   Good morning. Good.

Q   Good. And just so for clarification, my name's J.T. Fox. I'm an attorney for the underlying defendants just for clarity.

A   Okay.

Q   Just briefly, I thought maybe it would be better or easier to refer to you as Roxanne versus Mrs. Taylor. What do you prefer?

A   That's fine.

Q   We'll probably move quicker with Roxanne.

A   Okay.

Q   I think we're very organized today so we're

Page 13

going to try to make this quick for you. I'm sure you have things you have to do. I think most importantly, this is your deposition. So if you need to take a break, need to speak with your attorney, that's fine. Just let us know, and then we'll accommodate those breaks.

A    Okay.

Q    If you have to use the bathroom, if you want a -- if you need a snack, if you need to go to lunch, et cetera, take an important work call, just let us know. We will work with you.

A    Okay.

Q    In preparation for this deposition, did -- I don't want to know what your attorney told you. I'm not interested in anything that your attorney told you here this morning or any -- or what any attorney actually has ever told you regarding this matter or anything for that matter. But I just need to know if your attorney prepared you for the deposition and went over certain admonitions for today's deposition.

A    Yes.

Q    Okay. And have you ever had your deposition taken before?

A    No.

Page 14

Q    And can you hear me amply?

A    Uh-huh.

THE REPORTER:  It's a little low for me.

(Discussion off the record.)

MR. FOX:  I'll try to speak a little louder.

THE WITNESS:  Yeah.

MR. FOX:  And please let me know if it's an issue still.

THE REPORTER:  Yeah.

MR. FOX:  Thank you.

Q    Just briefly, in respect to the admonitions, I think the most important thing -- we already talked about the fact that it's your deposition. We're entitled to your best testimony today.  If you don't understand a question, you can ask me to rephrase it.  This isn't a race as an example.  You know, take your time answering these questions.

The reporter is going to prepare a booklet once the deposition is completed, and it's going to contain your testimony.  You'll have an opportunity to go back and make corrections or fill in blanks if there's missing information that you agreed to provide later.

A    Okay.

Q    Thank you.  What is your relationship to the

Page 15

Deon Taylor?

A   My husband and partner.

Q   And when --

A   Business partner.

Q   Okay.  What date did you marry?

A   October 14th.  I don't know the year.  11 years ago.

Q   And where do you -- excuse me, where do you currently live?

A   Like my address?

Q   Yeah, residential.

A   I'd prefer not to share that.

Q   Okay.  Well, you -- unfortunately, you have to.

A   Okay.

Q   Unless your attorney -- what I can briefly explain.  If your -- and I don't want to be rude so I'm trying to make this really polite.

A   Yeah.

Q   If -- you normally have to answer any question that I ask unless your attorney instructs you not to.

A   Right.

Q   You certainly can take the position that you're not going to answer even if your attorney

Page 16

instructs you that you're to answer.

A    Yeah.

Q    But the risk is is that we can go to court and we can get an order from the judge to order you to answer these questions.  Normally those types of questions are very relevant and --

A    I'm not comfortable providing my home address.  I live in Westwood.

Q    Okay.  You live in Westwood?

A    Yes.

Q    Okay.  But you don't want to --

A    No.

Q    -- provide your actual residence.  Okay.

So just keeping that in mind, we believe that we're entitled to your actual residential address.  So I just -- for the record, is that it would give, unless your attorney tells us different, we reserve the right to go into court and ask the court --

A    Sure you can do that.

THE REPORTER:  I'm sorry.  Could you wait for him to finish speaking.

THE WITNESS:  Oh.

BY MR. FOX:

Q    Yeah.  So we're just reserving the right to go to the judge and ask the judge that you provide

Page 17

an answer to that question.  Okay?

A    Okay.

Q    So Westwood, California.

A    Uh-huh.

Q    And do you live with your husband?

A    Yes.

Q    And when did you start doing business together?

A    Approximately -- let's see, how old am I? Maybe 30 or so years -- about 30 years ago.

Q    What's your educational background?

A    Meaning degrees?

Q    Yes.  Let's start with high school.  Did you obtain a high school degree?

A    Yes.

Q    And where did you go to high school?

A    Bella Vista.

Q    Where is that?

A    In Orangevale.

Q    And did you go to college?

A    Yes.

Q    Where did you go to college?

A    I went to several junior colleges.  Do you want me to list them all?

Q    No.  But did you obtain an AA degree?

Page 18

A   No.

Q   Did you ever continue with your college education?

A   I'm currently getting my master's.

Q   So you did end up getting a graduate -- a college degree.

A   No.

Q   Where are you going to graduate school?

A   Pepperdine University.

Q   What is that degree in?

A   Master's of business.

Q   So did you end up getting your AA degree prior to you attending this master's program --

A   No.

Q   And as far as work experience, tell me -- if you can tell me your work experience following your completion of junior college, if you can recall?

A   My work experience.  I worked for the state and the county.  Like specifically what I was doing or just where I worked?

Q   Yeah.  Let's say your first job when you finished junior college.

A   Well, I never completed junior college.  I just took classes.

(Discussion off the record.)

Page 19

BY MR. FOX:

Q   Okay.  Just -- okay.  The -- in respect to the admonitions, I just want to go back a little bit 'cause I'm not sure exactly what your lawyer told you, but we talked about breaks.  We talked to you about your best testimony.  What you say here today can be used against you in a court proceeding.

A   Okay.

Q   So it's important that you realize that we can comment at trial in respect to anything that you say here today.

A   Okay.

MS. CALIN:  You understand you're under oath; correct?

THE WITNESS:  yes.

MS. CALIN:  And that oath is the same oath you'd take in a court of law before a judge and a jury.

THE WITNESS:  Yes.

MS. CALIN:  If you don't understand a question, please tell us you don't understand it.

THE WITNESS:  Okay.

MS. CALIN:  If you don't know the answer to a question, it's fine to say you don't know.

THE WITNESS:  Okay.

Page 20

MS. CALIN:  But if you answer a question, we'll assume that you heard it and giving your best testimony.  Is that fair?

THE WITNESS:  Yes.

MS. CALIN:  Okay.  You'll have a chance to go over your testimony and make any changes you feel are necessary.  But if you do make any changes of a material nature, that could be commented on at the trial of this case.

THE WITNESS:  Okay.

MS. CALIN:  So, for example, we can say, you know, she was asked a question, she'd give an answer, but then she thought about it and changed her mind.  So the reason I tell you that is it's important we get down your best testimony today so when you review the deposition, you don't need to make any changes.  Okay?

THE WITNESS:  Yes, I understand.

MS. CALIN:  Okay.  It's so important you answer out loud in words.  Don't say uh-huh or uh-uh.

(Reporter comment.)

MS. CALIN:  Sure.  It's also important that you answer out loud in words.  Don't say uh-huh or uh-uh or any shrugs 'cause that doesn't come across

Page 21

in the record.

THE WITNESS:  Okay.  Sure.

MS. CALIN:  Also, please wait until the entire question is finished before you begin your answer, and we'll wait until you finish your answer to begin the next question.  We can't have people talking simultaneously.  Okay?

THE WITNESS:  Yes, I got it.

MS. CALIN:  Thank you.

MR. FOX:  Okay.  Great.  Thank you, Sandy.

Q   So moving forward, let's say, once you finished junior college, what was the -- maybe your first full-time position, if you can recall?

A   I don't remember what year that is.  Like I said, I didn't finish junior college.  I took classes at the junior college.  So I've worked my whole life.  So I've had several jobs.

Q   Okay.  Tell me --

A   So, you know, I've worked at the state, everything from executive assisting to installing hardware and software for the senate and assembly, troubleshooting and programming, working for live events doing concerts.  I mean I can go on and on. How far would you like me to go?

Q   So that's helpful.  So with respect to the

Page 22

State of California, what were you hired as?  What was your position?

    A    I had several positions.  I worked there for several years.

    Q    Okay.  What were those positions?

    A    I worked in the mailroom early on.  I worked in accounting.  I worked in -- I don't remember the section.  It was more facilities-based.  Let's see. I worked for the legislature.  I worked for the data center.

    Q    And you mentioned that you worked for -- or you worked in live events.  So did you work for the State of California when you were working for --

    A    No.

    Q    Who were you working for in respect to live events?

    A    I worked with Al Heymon Entertainment.

    Q    Was that your first introduction to the entertainment business?

    A    Yes.

    Q    And what did you do for this particular company?

    A    Booking -- the production of it.  So everything from booking the talent to organizing the show.

Page 23

Q    And then from there what was your next job, if you can recall?

A    Maybe a record label that we had from there. An independent record label.

Q    Do you remember the name of the label?

A    Taylor Made Music.

(Reporter clarification.)

BY MR. FOX:

Q    And then, if you can recall, when you first met Mr. Taylor, what were you doing for employment at that time?

A    I was working at Burger King.

Q    What was -- if you know, what was Mr. Taylor doing at that time employment wise when you first met him?

A    He was going to -- we were in high school.

Q    And at some point did you ever start your own business?

A    Yes.  I mean we started Taylor Made Music. We've started Hidden Empire.

Q    So you did that with Mr. Taylor.

A    Correct.

Q    Understood.  So after Taylor Made Music you then went into film production?

A    Yes.

Q   Is it safe to say -- and I don't want to put words in your mouth, but is it safe to say that Hidden Empire is a film production company?

A   Yes.

Q   And what is your opinion of what a film production company does?

A   I can speak to what we do.  Other companies do several facets depending on what their goal is.

Q   Okay.  What does Hidden Empire do?

A   We make feature films and documentaries and some live events.

Q   And then when did you start Hidden Empire?

A   Again, like, I don't have this exact.  It was about 17 years ago.

Q   And I think I asked you -- I think you said no when I asked you if you'd been deposed before; correct?

A   Been to where?

Q   Deposed.  You been deposed in a court matter before.

A   No.  Not that I recall.

Q   Have you ever had a judgment entered against you, like a court judgment?

A   Yes.

Q   What was -- can you please tell me what court

Page 25

cases.

A    "Stranded" I believe is the judgment which is a film that we did in the past.

Q    And when you said you had a judgment entered against you for Stranded films, did someone sue you in respect to that project?

A    No one sued us.  An attorney -- a class action -- I don't know his title, but an attorney rallied people to then sue.  No one individually came out, from my knowledge.

Q    Was this -- in respect to the class action, was this an employment type of case?

A    Yes, it was an employment type of case.

Q    Understood.  And this was against Hidden Empire and you and Mr. Taylor?

A    No.  It was against the film.

Q    I see.  I see.  But you --

A    Yeah.  I was named in it.

Q    I see.  And was Mr. Taylor also named?

A    Yes.

Q    Okay.  Understood.  Did that case end up --

A    And other parties -- I'm sorry to interrupt.  I'm sorry.

Q    That's okay.  Was that case dismissed, if you know, or settled?

Page 26

A    It was settled, yes.

Q    Okay.  Understood.  Aside that, have you had any other judgments entered against you personally?

A    Not that I recall.

Q    And are you aware of any court judgments being entered against Hidden Empire, if you know?  And when I say -- I think there's -- there's -- and correct me if I'm wrong.  I'm not a fan of putting words in deponent's mouths.  I don't do that.  So I just want to -- I do want to have just a clear record.  But I know there's various Hidden Empires.  But when we -- when we're talking about Hidden Empire right now, is this Hidden Empire Holdings, LLC?

A    Is what Hidden Empire Holdings, LLC?

Q    We were just talking about how you and Mr. Taylor started a company called Hidden Empire.  What I'm trying to figure out is is that Hidden Empire Holdings, LLC, or were you just a dba and then you incorporated later?

A    Hidden Empire Holdings was just recently created.  So there's been a few variations that were incorporated later like distributions, holdings, films.

Q    I see.  But those were all operating as

Page 27

Hidden Empire?

A    It's all --

Q    Okay.  Understood.  So you just --

A    Yes.

Q    The company evolved, and then you had new entities that were carrying on the business of Hidden Empire; correct?

A    Correct.  They were created because we were advised to create it that way.

Q    Okay.  Understood.  Now, the -- you had said that Hidden Empire made feature films.  We'll start with that.  What feature films has Hidden Empire produced if you can recall?

A    "Nite Tales," the movie, 75, "Chain Letter," "Hustle," "Supremacy," "Fatale," "Intruder," "Traffik," "Meet The Blacks," "The House Next Door," "Black and Blue," "Fear," and I believe that's it on the film side.

Q    Thank you for that.  Currently what film projects is Hidden Empire working on?

A    A lot.  You want me to list everything that I can think of?

Q    If you can.  Thank you.

A    "Blacula," "Don't Open The Door," "Freedom Ride," "IQ," "Pee Wee Kirkland," "Free Agents."  I

Page 28

think that's -- that's fine.

Q   Okay.  Thank you for that.  And then could you please list to me the documentaries that Hidden Empire's produced.

A   We're currently producing?

Q   Let's do past.

A   No, no documentaries past.

Q   Okay.  What is current?

A   Floyd Mayweather, Scottie Pippen, Drift, Pee Wee Kirkland, Oakland Soldiers.  I think that's -- UNLV.

Q   Okay.  Thank you.  Thank you for that.  And are those all being produced under Hidden Empire Holdings, LLC?

A   Hidden Empire Films and some Hidden Empire Sports.

Q   I see.  And that's -- the Hidden Empire Sports is a subsidiary of Hidden Empire Holdings or Film?

A   Yes.

Q   Okay.  Understood.  Okay.  Thank you.  And what live events has Hidden Empire produced?

A   Just our personal events.  We've done a Sundance partnership so we did an event with them.  Launches for different events.

Page 29

Q   Understood.  Thank you.  In respect to Mr. Taylor, are you aware of any court judgments having been entered against Mr. Taylor?

A   I don't know that.  Other than the "Stranded" one.

Q   Okay.  Which was the class action; correct?

A   Yeah.

Q   Okay.  Understood.  You're not aware -- besides this lawsuit, you're not aware of Mr. Taylor being a party to any other lawsuit?

A   I am aware of party of a lawsuit.  I thought you asked about a judgment.

Q   Oh, okay.  As far as being a party to another lawsuit, what are you aware of him being a party?

A   There's a -- like an open?

Q   Yeah, open or closed.

A   There's a current open one for "The House Next Door" that I'm aware of.

Q   Any other lawsuits you can remember him being a party to besides that?

A   No.  He's going to have to speak to that.

Q   In respect to preparing for this morning's deposition, did you review any documentation?

A   I was sent Darrick's -- what's the name? -- deposition, I think.

Page 30

Q    Okay.  His deposition transcript?

A    I believe that's --

Q    Okay.

A    I'm not sure of the proper --

Q    Was it a booklet that had questions and answers where --

A    It was an email.  In an email form.

Q    Okay.  So were you able to read his testimony in regard to questions that your attorney asked him in his deposition?

A    I had a chance to review it, but I didn't.

Q    Okay.  Any other documents that you reviewed for this morning?

A    No.

Q    Okay.  Did you ever have a chance to review your husband's deposition transcript from this case?

A    No.

Q    Did you and Mr. Taylor speak, let's say in the last several weeks, about your deposition testimony here this morning?

A    Yes.

Q    What types of things did you discuss?

A    Just what to expect when I came.

Q    Did he ask you or did he give you specific questions to answer?

Page 31

A   No.

Q   Okay.  And what did he tell you to expect, if you recall?

A   That everyone who's here will be in the room, and you'll be recorded, and he'll ask you questions and you answer them.

Q   Okay.  I don't want to -- I don't want to incorrectly state a prior record, but my recollection, 'cause I took your husband's deposition, was that -- just so we can move forward, you have an understanding where I'm coming from -- is that we asked your husband questions about the banking for Hidden Empire, Hyper Engine contracting negotiation, execution of contracts, vendor agreements, financial reporting, and he, I think on some occasion during his deposition, said that he didn't know a lot about that, that you were the person that would be the best person to talk to about those things.

A   Okay.

Q   So I just want you to know that as we move forward, and hopefully I cited the record correctly from his deposition, but at least that's what I took from it.  I think that's important as we move forward.

Page 32

A   Okay.

Q   What is your overall feeling about -- I'm sorry, strike that.

Have you had a chance to read Mr. Angelone's and Aone Entertainment's lawsuit against you and your husband and the Hidden Empire entity and Hyper Engine?

MR. NEWELL:  Just want to clarify, are you talking about the cross-complaint?

MR. FOX:  Yes.  Let's call it the cross-complaint.

Q   So did you have a chance to read Mr. -- we'll call it Mr. Angelone's cross-complaint that was filed against you and your husband and Hidden Empire and Hyper Engine?

A   I don't know what the cross-complaint is, actually.

Q   Okay.  Are you aware of claims being made by Darrick Angelone and his company against you, your husband, Hyper Engine and Hidden Empire?

A   Yes.

Q   And what do you know about those claims?

A   I just know that he's claiming to be an owner of Hyper Engine.

Q   Now, what are your -- what is your overall

Page 33

feeling about that claim?

MR. NEWELL:  Objection.  Vague as to feeling.

BY MR. FOX:

Q    You can answer.  Unless he instructs you not to answer.

A    Okay.

Q    Yeah.

A    So what is my overall feeling?

Q    Yeah, about that, about Mr. Angelone's claim, that he's an owner of Hyper Engine.

A    There's -- he's not an owner.

Q    Okay.  And why is that?

A    Because it was never agreed that he was going to be an owner.

Q    Is there any -- just knowing your relationship with Mr. Angelone and your husband's relationship with Mr. Angelone, can you think of anything that would have given Mr. Angelone some impression that he was an owner of Hyper Engine?

A    I don't have a relationship with Mr. Angelone.  And there was a few attempts to try to figure out a working relationship for him to be a part of Hyper Engine and was never formalized.

Q    And what was it that either you, your husband or Hidden Empire were wanting Mr. Angelone to do on

Page 34

behalf of Hyper Engine?

A   Well, he was already doing it.  He had been with us for several years working on the digital side, which was securing plat- -- social platforms, websites, sometimes doing marketing for some of the films, digital marketing.

And so just continuously -- we're very loyal to our vendors and our employees, and so we always try to figure out growth within those different people.  And so that's what that was about.

Q   I remember your husband during his deposition said that -- I think my -- I'm hoping I'm quoting him correctly.  Your counsel's here who was present.  But I believe he said that Mr. Angelone was a genius on the digital side, on the marketing side, if you will, and that he was very good at what he did or does, and what he did for your company.

Do you have any feeling as to -- in regards to what he provided Hyper Engine or Hidden Empire?  What's your feeling about his overall --

A   I don't have --

Q   -- work quality?

MR. NEWELL:  Objection.  Vague as to feeling.  You can answer.

THE WITNESS:  I don't have any feeling about

Page 35

it.

BY MR. FOX:

Q   But you were familiar with some of the work that he had done; correct?

A   Yes.

Q   How did you feel about that work?

MR. NEWELL:  Objection.  Vague as to feeling.

THE WITNESS:  Yeah.  I'm not -- I'm not quite sure how to answer how I felt about his work.  He was hired to perform a job, and he performed the job.

BY MR. FOX:

Q   Okay.  So the work was performed.  And did you think that his work was substandard, standard, exceptional?  Do you have a --

A   Standard.  It's not a -- it's not a unique ability.  There's several people that perform these functions.

Q   Now, at some point during the evolution of your business, do you feel that at some point digital marketing became crucial to film production?

A   Not crucial.  It's all part of -- if you're talking about marketing, there's several components to marketing.  It's one piece of it.  And without everything at the same time, it won't make or break

Page 36

the box office of a film.

Q    Okay.  Did -- as far as social media, is social -- and I -- my family was in the film business so I know a little bit about it.  Not an expert by any means, but I know -- at least I'm getting ready to frame my question.  Just give you a little background.

So what I'm trying to get at, as far as -- I realize that some things may be integral to film production, and some things may not be.  But are things like -- and this is the question, social media.  Is social media important to the marketing of a film these days?

A    Yes.

Q    And if you can recall, what types of -- what types of things did Mr. Angelone do for these various film projects, if you recall?

A    We had a playbook, so to speak, from the distributor of what we were doing, and he would work with the other vendors with the assets to post on the social media page for some of them.

Q    Any other things that you recall -- you can recall Darrick or his business providing to your various film projects?

A    Are you still talking about social media

or --

Q   Yeah.  Yeah, or social -- even outside social media.  Just all -- can you recollect all the different services that Mr. Angelone and/or his company provided to either Hyper Engine or Hidden Empire?

A   Yes.  It's the same services I spoke about earlier, which is -- and not for every project, just it varied.  Securing the domain and the social platforms, and then the posting, working sometimes with the other third-party vendors that were performing the same functions.

Q   And being named as a defendant in this lawsuit, how do you feel about that?  Does it make you sad?  Do you think it's unwarranted?  What is your -- what is your overall feeling?

MR. NEWELL:  Objection.  Vague as to feeling.

THE WITNESS:  It's ridiculous.

BY MR. FOX:

Q   Why is it ridiculous?

A   Because this all came from him stealing our emails because he was upset and angry.  And now it has totally shifted to Hyper Engine which was never a conversation or a conflict until this happened, which derived from a "Fear" game that he created

Page 38

without authorization and approval from any of the talent.

So this is just a trickle affect of him being angry. And we are, you know, independent filmmakers, started from nothing, no film school, no -- just people who had dreams and started this blood, sweat and tears, and it's all silly. It's all silly.

Q One question. Just I'm changing the subject matter just a little bit, but I remember when your husband was deposed that I asked him how the business, his business was doing currently, and he said things were fantastic. So my question to you is, in your opinion, how is Hidden Empire doing at this juncture?

MR. NEWELL: Objection. This is the second time you've done -- made reference to things that Mr. Taylor testified to at his deposition. I would say if you're going to continue to make references to Mr. Taylor's deposition, I would ask you to either read from it directly or not to address it at all.

Your characterization may be 100 percent right or it may be 50 percent right. But if you're going to ask her a question, let her answer the

Page 39

question for herself.  It doesn't matter what her husband said.  Unless you want to read what her husband said, and then that will be on the record.

MR. FOX:  Are you instructing her not to answer?

MR. NEWELL:  So just for clarification, I will in the future instruct her not to answer if you continue to ask questions that are characterizing testimony without actually reading that testimony.

MR. FOX:  Okay.  So we'll wait to see if you instruct her not to answer.

Q   How is your business doing today?

A   Great.

Q   And why is it doing great?

A   Because we're doing what we love.

Q   And are you successful, meaning are these projects that you're working on, is your company making money --

A   Yes.

Q   -- a profit?

Has your company -- have you always been profitable as far as Hidden Empire?

A   No.

Q   When did your company start being profitable, if you can recall?

Page 40

MR. NEWELL: Objection. Vague as to your company.

BY MR. FOX:

Q    When I say your company, Hidden Empire.

A    I can't recall.

Q    When Mr. Angelone was involved with Hidden Empire, was Hidden Empire profitable?

A    I can't recall.

Q    Was Hyper Engine ever profitable?

A    No.

Q    Going back to a few things that you said, you said that Hyper Engine was not a conversation; is that correct?

A    I did not say Hyper Engine wasn't a conversation.

Q    What did you -- I'm sorry --

A    What was the question you asked?

Q    Well, I think I was asking you about what -- you said Darrick was angry that Hyper -- when I think you said Hyper, I think you meant Hyper Engine -- was not a conversation. He wasn't an owner.

What I'm just trying to get at, unless I wrote this down incorrectly, and I think I'm writing what you're saying down verbatim, but I heard Hyper

Page 41

was not a conversation.

A    I did not say that.

Q    Okay.  Okay.  So was Hyper Engine a conversation with Mr. Angelone?

A    Yes.  And I said that earlier, that there was conversations with him.

Q    Okay.  And what do you recollect about the conversation with Darrick in respect to Hyper Engine?

A    The same thing I said earlier which was working to see if we could formalize a working agreement to transfer him from a vendor to the marketing side.

Q    And when you said working to see if he could be on the working side -- correct? -- for the business or working relationship -- correct? -- With Hyper Engine?

A    Yeah.

Q    Strike that.  Strike that.  Let me start over.

What was -- as far as Mr. Angelone -- I'm assuming you mean leaving as a service provider to Hyper Engine to now becoming more involved with Hyper Engine; correct?

A    So Hyper Engine maybe did two things.  It

Page 42

wasn't a functioning company in that nature.  The business of what he was doing was for the individual films and the individual companies.  So the answer will vary depending on what actually you're speaking about.

Q   Well, Darrick and his company were independent contractor for Hidden Empire and Hyper Engine; correct?

A   Yes.

Q   So at some point were there conversations about Mr. Angelone and/or his company actually becoming a partner of Hyper Engine?

A   Yes.

Q   And what was the extent of the conversation, if you recall?

A   I don't recall.  There were several variations at different times, and I don't remember each time what they were, but it was versions of him being a part of Hyper Engine.

Q   When you say part of, you mean an actual owner of the business?

A   A participant, a manager.  There -- I don't recall all of the various conversations.  There was different levels at different times of him participating in the company.

Page 43

Q   Was he ever -- was he ever asked to be an actual equity stakeholder in Hyper Engine?

A   I believe that was offered at some variation.

Q   What is it that, if you recall, Mr. Angelone wanted in respect to Hyper Engine as far as --

A   I don't --

Q   -- this new relationship?

A   I don't remember his specific asks.

Q   Back when Mr. Angelone started providing services to Hidden Empire, which I think is back in 2012 -- correct?

A   Maybe.

Q   -- do you recall when Mr. Angelone first started providing services to Hidden Empire?

A   I don't know the exact date, no.

Q   Do you remember what types of services that he was providing to Hidden Empire when he first began working with your company?

A   Most likely the digital marketing.

Q   And sitting here today, who are the current partners or equity owners of Hidden Empire Film Group?

A   Myself and Deon and Robert.

Q   And what is the current status of Hidden Empire Holdings, LLC?

Page 44

A   Status meaning --

Q   Meaning do you still use that entity?

A   It's active, yes.

Q   And who are the owners of that company?

A   Myself and Deon.

Q   And you mentioned another company called I think Hidden Empire Sports something.

A   Hidden Empire Sports.

Q   Okay.  And who are the owners of that?

A   Deon and I.

Q   And then who are the current owners of Hyper Engine, LLC?

A   I believe it's just Deon.

Q   And is that -- is Hyper Engine, LLC being used today?

A   No.

Q   When did you start using Hyper Engine, LLC, if you know?

A   I don't know.  It's been several years.  We never really used it.  We tried to make it something.

Q   Okay.  What was Hyper Engine supposed to be as far as its business purpose?

A   We were hoping it to be our marketing arm, that we could -- we -- we are active in promoting a

Page 45

lot of our movies on our own, but that's separately than what the studio and distributors do.  And so we were hoping that we could create this marketing company to get additional business from other studios and projects to work on.

Q   I see.  And at some point did you -- at least after this litigation, have you created a new marketing entity --

A   No.

Q   -- or a marketing wing?

Okay.  So you're not doing any of your own marketing at this point?  Is it all third party?

A   We do.  We do do our own marketing, but I thought the question was did we create another company, marketing company.

Q   Which you said no.

A   Which I said no.

Q   Okay.  Understood.  And when you say you do your own marketing, what entity do you do that under?

A   We don't do it under an entity.  We just market.

Q   And so you just -- you and Mr. Taylor just do it completely independently of Hidden Empire Holdings, LLC or Hidden Empire Film Group, LLC.

Page 46

A    What type of marketing are you referring to?

Q    Like the digital, the digital side.

A    We haven't done any digital marketing we -- as we have since "Fear."  We do -- we post different things to brand the company.  So again, there's so many variations to marketing.

Q    I'm getting to that.  So in respect to social media marketing, is that what you and Mr. Taylor are engaged in?

A    Currently.

Q    Yes.

A    Just building our brand.

Q    So when you're building your brand, are you doing it underneath Hidden Empire Film Group, LLC or another one of your entities?  Are you just doing it independently of those businesses?

A    I'm sorry, I don't understand the question.

Q    Well, your -- you -- I think you're stating that you and Mr. Taylor do your own social media marketing for your own projects; correct?  So my question is, are you doing that underneath your particular corporate entities like these -- for example, under Hidden Empire Holdings, LLC or under Hidden Empire Film Group, LLC, or are you doing it under this new sports entity, or are you doing this

Page 47

independently?  Like you have a separate business or is it --

A    There's no -- it doesn't.  There's no business.  We're just going onto our pages and posting things.  Yes.

Q    Okay.  To promote your films.

A    To -- to do any -- to build our brand.  So no one's paying us to do it.  It's -- we're just going onto your platform and posting.

Q    But do you draw a salary from Hidden Empire Holdings, LLC or Hidden Empire Film Group, LLC?

A    No.

Q    Does Mr. Taylor draw a salary from either of those two entities?

A    No.

Q    How do you -- how do you survive financially if you're not drawing salaries from these entities?

A    From the profits of the films.

Q    Okay.  So --

A    And then when we make projects, we're paid as directors, producers, write- -- I mean it varies.  But depending on what project we're doing, we get paid from the project, and then we get residuals and payments from those movies that have been produced.

Q    So I'm -- correct me if I'm wrong, I'm taking

Page 48

that to mean that you take profit distribution from your companies when a project's completed as an example.

A    We get producer profits from the individual film, if that's what you're asking, in success.

Q    But are the distributions or share of profit or share of residuals, is that paid by these various other film companies to your particular corporate entities, and then you and your husband are paid profit or distribution from those entities, if that makes sense.

A    Traditionally we are paid to our loan-outs directly from the CAMA accounts which is a collection account where all the money is held for these individual projects, and they disburse the money to the appropriate parties.

Q    Did you ever -- I don't know if I -- I may have asked you this.  I apologize if I'm asking the same question twice, but did you ever receive any share of profit from Hyper Engine, LLC?

A    Share of profit?

Q    Yeah.

A    No.  But we were paid from individual projects for our services, yes.

Q    Were you ever -- did you ever receive payroll

Page 49

from Hyper Engine, LLC, you or your husband?

A    No.   There was never a payroll set up.

Q    Did you ever receive distributions from Hyper Engine, LLC?

A    The distributions that I spoke about when a project -- when we brought in a project, we were paid for our services.

Q    Did Mr. Angelone ever bring in a project or help bring in a project on behalf of or for Hyper Engine, LLC?

A    No.

Q    Did you ever receive -- do you know what -- do you know the terminology perquisites or perks?

A    I know what a perk -- I've heard of perk.

Q    And in respect to the corporate world what a perk is.

A    You should define it.

Q    So, for example -- and I'm not an expert, but my understanding of perk would be if a company paid a corporate officer's car payment as an example. Did you ever receive any perks from Hyper Engine, LLC?

A    No.

Q    You mentioned a new entity, I think it was Hyper Engine Sports, something or other.  I'm sorry

Page 50

if I got the name wrong.  But that particular entity, what does that entity to?

A   You'll need to clarify which entity you're talking about so I can answer the question properly.

Q   I believe you mentioned Hidden Empire Holdings, LLC; Hidden Empire Film Group, LLC; and then there was some Hidden Empire Sports entity.

A   There is a Hidden Empire Sports.  Is that what you're asking about?

Q   Yes.  Yes.  And I'll try to remember for future questions.

A   They do sports projects.

Q   When you say sports projects, what does that mean?

A   It could be anything -- film, television, docs, podcasts, anything under entertainment.  It's not specific to one thing.

Q   What vehicle do you currently drive?

A   A Mercedes.

Q   What type of Mercedes?

A   I believe it's an S550.

Q   And you drive that for personal and business?

A   Yes.

Q   And do you recall how you acquired that vehicle?

Page 51

A    I leased it from Mercedes-Benz.

Q    How long ago?

A    A few years now.

Q    And do you remember who paid for the down payment for the vehicle lease?

A    I don't.  I mean we paid for it.

Q    You and Mr. Taylor personally, from what you remember?

A    I don't know who exactly paid for it.  So I don't -- I don't know.  It was too long ago.

Q    And what does Mr. Taylor drive for his personal vehicle?

A    He drives a Range Rover.

Q    Did he ever drive a Tesla?

A    Yes.

Q    When was that, if you remember?

A    Several years ago.

Q    And did he use that like you, did he use it for personal and business?

A    Yes.

Q    Do you remember who paid for that vehicle, if you know?

A    I don't.

Q    And do you remember -- I don't know if you're familiar with cars, but do you remember what kind of

Page 52

Tesla it was?

A   I don't.

Q   Was it a sedan or a utility vehicle type car?

A   It was a car.

Q   Do you remember if you treated any of the vehicle expense as -- for either your car or Mr. Taylor's car -- and I mean the Mercedes and the Tesla -- as a business against for the company?

A   Yes.

Q   Have you or Deon ever filed a tax return for Hyper Engine, LLC?

A   I don't file any of the tax returns.  So that would have went through the CPA.

Q   But did someone from Hyper Engine, LLC ever authorize the filing of the return, meaning did they sign the tax return?

A   If there was a return, then we would have had to sign it.

Q   And who would have been the, if you recall, the signatory for filing tax returns on behalf of Hyper Engine, LLC?

A   I don't remember who our CPA was at that time.

Q   But a CPA is not going to ultimately sign the return; right?  So a corporate officer needs to --

Page 53

A    Correct.

Q    -- sign the return.

A    Yeah.

Q    So do you remember for any of the previous Hyper Engine, LLC tax returns who -- what corporate officer from Hyper Engine would have signed the tax return?

A    I don't remember.

Q    Do you recall ever seeing a K-1 statement for Hyper Engine, LLC?

A    No.

Q    Why is that, if you know?

A    I just don't remember seeing it.

Q    Have you ever received a K-1 statement for Hyper Engine, LLC?

A    Probably.  I don't know.

Q    And you know -- you do know what a K-1 statement is.

A    I do know what a K-1 is.

Q    Can you tell me --

(Reporter clarification.)

BY MR. FOX:

Q    Can you tell me what a K-1 statement is, in your opinion?

A    Money that -- I believe it's money that would

Page 54

have been invested in the company or funds that were invested in the company.

Q   Do you have any idea as to whether it shows who owns the actual company?

A   Not offhand, no.

Q   In respect to the ownership of Hyper Engine, LLC, has it always been you, your husband and Robert Smith as the three owners of the company?

A   There was never an operating agreement executed.  So I don't remember who, like, with the Secretary of State was set up with.  But there was never formation docs that I recall ever formalized for Hyper Engine.

Q   But you testified earlier that you, your husband and Robert Smith were the owners of Hyper Engine, LLC; correct?

A   No, I didn't.  I said of Hidden Empire.

Q   Oh, I'm sorry.

A   Yes.

Q   Okay.  So as to Hyper Engine, LLC, who are the owners of Hyper Engine?

A   I believe it's just Deon, which I stated earlier.

Q   You did.  Thank you for that.  I remember now.

Page 55

So has Deon always been 100 percent membership holder or owner of Hyper Engine, LLC, if you know?

A    I think so, but I don't -- I don't remember. I believe that's how it was.

Q    Was Robert Smith ever made an owner of Hyper Engine, LLC, if you recall?

A    No.

Q    Were you ever made an owner of Hyper Engine, LLC at any time?

A    Not that I recall.  We were working to set that up.

Q    And in respect to -- in respect to -- where is your business office for all of the Hidden Empire entities?

A    In Santa Monica.

Q    Do you use your residential address for business purposes?

A    Yes, I have.

Q    And do the entities -- well, let's go to Hyper -- did Hyper Engine ever, if you recall, pay for any of the -- this residential expense for home office, if you recall?

A    I don't, but traditionally for -- because we worked from home and in an office, often you

Page 56

calculate the square foot of your office from my understanding, and then that's used to -- for your business.

Q   So you -- sitting here today, you believe that one of the Hidden Empire entities may have paid some of your residential expense as a business expense; correct?

A   My resident?  No.

Q   Your business.  Like a home office as an example.

A   Like what kind of expenses are you referring to?

Q   Did -- like either rent or mortgage expense. Do you recall if any of the Hidden Empire entities ever paid for any of your residential expense as part business office expense?  If you recall.

A   I don't recall rent, but I'm sure we've set up utilities for internet and phone services and those kinds of things, yes.

Q   Okay.  Appreciate that.

MR. NEWELL:  Could you -- if we could take a break when we get to a good place.

MR. FOX:  Yeah, yeah, that's fine.  Yeah, yeah, we're doing good.  We're off the record.

THE VIDEOGRAPHER:  I don't hear any

Page 57

objections.  We're going off the record.  This is the end of media unit No. 1.  Time is 10:58 a.m.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record.  This is the beginning of media unit No. 2.  Time is 11:14 a.m.

Counsel, you may proceed.

MR. FOX:  Thank you.  Back on the record.

Q   Roxanne, I just -- I'm asking you maybe six or seven more question, and then we're going to go into the deposition notice and -- we're making good progress.  So I just want to let you know that.

Okay.  Do you know where Hidden Empire -- whether it's Hidden Empire Holdings or Hidden Empire Film Group, LLC, where those entities have banked, both past and present?

A   Yes.  City National, maybe Comerica, Bank of the West I believe.  I think that's it.

Q   Okay.  And same question in respect to Hyper Engine, LLC.

A   It would be the same --

Q   Same banks.

A   -- three, yeah.

Q   In regards to the banking of these various Hidden Empire entities or Hyper entities, we'll call

Page 58

them, who's responsible for handling the banking for the entities?

A   For which entities?

Q   Well, let's start with Hyper Engine.  Who's responsible for handling the banking for --

A   No one's really responsible, but usually I set up the bank account.

Q   And what was -- what was your husband's role in respect to assisting with the banking for Hyper Engine, LLC?

A   Well, if you're issued a card or you're on the physical account, you have to sign a signature card.  So that would be --

Q   For example, did your husband sign checks on behalf of Hyper Engine, LLC?

A   I'm sure he did, but I don't remember.

Q   And do you know if your husband ever dealt with bankers for Hyper Engine, LLC?

A   I don't, but you can ask him directly what he's done and hasn't done.

Q   So your recollection is that you helped set up the various bank accounts; correct?

A   Correct.

Q   What is your understanding as to when you open up a bank account for a corporation or an

Page 59

LLC -- and this again -- this is based on personal experience -- what do you have to provide the bank to open the account?

A    The tax ID and the LLC.

Q    And when you say LLC, what do you mean by that?

A    It's a -- I don't know what the form is, but it's a form that you file with the Secretary of State.

Q    An LLC 12?  Does that ring a bell?

A    Perhaps.

Q    A statement of information?

A    Perhaps.

Q    Officer statement?  Does that ring a bell?

A    No, that doesn't ring a bell.

Q    And have you ever had to hand the bank an oper- -- a copy of the operating agreement for the entity in order to open the actual bank account?

A    No.  Not that I recall.

Q    Have you and your husband ever gone to any of these banks together in respect to Hidden Empire Holdings, LLC or Hidden Empire Film Group, LLC for business purpose?

A    I don't remember.

Q    And same thing as to Hyper Engine.  Do you

Page 60

ever recall you and your husband going into the bank in respect to a banking issue that you had to resolve in respect to Hyper Engine?

A   No.

Q   I'm not sure if you're familiar with this document.  This is a -- well, it's called a Defendant's Fourth Amended Notice of Taking Deposition of Third-Party Defendant Roxanne Taylor.  Have you seen this document?  Take a chance to look at it.

MR. NEWELL:  It's just the notice.

MR. FOX:  Yeah.

THE WITNESS:  It looks like a -- I'm not 100 percent sure.  It looks like what was emailed to me, maybe.

BY MR. FOX:

Q   Do you recall if there were certain requests in there for documentation?

A   I didn't read it.  I told you that when we first started.

Q   Were you -- were you aware that you were supposed to bring documents to the deposition here this morning?

A   No.

Q   Okay.  Did you bring any documents with you

Page 61

this morning in respect to the deposition?

A    No.

Q    That's fine.  If you want to hand that back to me, we'll get you a copy.  Actually we don't need to attach it to the record.  We'll stay away from that.  Okay.  Thank you.

Okay.  And before we jump into the exhibits, what is your definition of a feature film?

A    A movie.

Q    Okay.  And what makes a film a feature film versus just a film, if you have an opinion on that.

A    I don't understand what that means.

Q    Do you differentiate, let's see, a major film production versus something that's small like a documentary?  Do you classify those films as being different?

A    You mean is the documentary a film?

Q    Yeah.  What I'm saying is do you differentiate between what is -- a small movie would be versus a big move like that had big stars?  Would you consider that movie to be a feature film versus a small film or independent film?  Like is there differentiation between larger budget films and smaller budget films?

A    A movie's a movie.

Page 62

Q    Okay.

A    So I'm not -- I don't understand what you're saying.

Q    Okay.  That's fair.

We'll have Exhibit 1.  We have a copy, here's a copy for you.  If you can just take a minute to review that document.

(Exhibit 1 was marked for identification by the court reporter and is attached hereto.)

MR. FOX:  And just while Roxanne is reviewing this document, this is an agreement between Aone Entertainment, LLC and Hidden Empire Film Group, LLC dated April 26, 2012.  It's a five-page document.

Q    And, Roxanne, please let me know if you had a chance to finish.

A    Do you want me to read this or --

Q    No.  Just quick review.

A    So, yeah, I'm not sure what I'm reviewing, but if you want to just go ahead and ask me whatever, then I can use this as an a reference.

Q    Do you recollect being involved in the drafting or finalizing of this agreement with Aone Entertainment back in 2012?

A    Yes.

Q    And how did you become involved in drafting

Page 63

and finalizing this agreement with Aone

Entertainment and Hidden Empire Film Group?

    A    I didn't draft this.  I just signed it.  I'm

not an attorney.

    Q    Do you remember who drafted it?

    A    I don't.

    Q    Do you remember what this -- what the purpose

of this agreement was?

    A    Vaguely.  But this was a comedy event that we

did.  It was one of the live events that we did that

he worked on.

    Q    And do you see in paragraph 2 on the first

page where it says a description of work?

    A    Yes.

    Q    And then it says, "A separate proposal/

addendum will describe the work that is required of

developer for the client."  You see that?

    A    I see that.

    Q    Then if we go to the last page, we see -- if

you get a chance to turn there.  It's the very last

page.  It's --

    A    I'm just looking.  Sorry.

    Q    No worries.

    A    That's very odd that that would be like that

in the agreement, why there would be a separate

Page 64

proposal/addendum that's not attached within the agreement as an exhibit.  This is like a separate memo.  So that doesn't make any sense.  But anyway, what's your question?

Q   Yeah.  If you can look at that last page.

A   This page or the last page of this?

Q   The last page of Exhibit 1.

THE VIDEOGRAPHER:  Counsel, I need you to put the microphone a little higher because it's like hitting everything and -- I'm sorry.

THE WITNESS:  It's okay.

THE VIDEOGRAPHER:  Thank you.  Thank you, ma'am.  I appreciate it.

THE WITNESS:  No problem.

THE VIDEOGRAPHER:  Go ahead, Counsel.

BY MR. FOX:

Q   Have you had a chance to review the last page?  Okay.  Have you had a chance to review it?

A   Yeah.

Q   Does that refresh your recollection as to what the deliverables were going to be on behalf of Aone Entertainment for Hidden Empire Film Group, LLC?

A   I'm reading it.

Q   Okay.  Is it a yes?

Page 65

A    On what?  My recollection of it?

Q    Yes, does it --

A    Like I don't remember seeing this, and it's dated before the agreement.  So it's very odd, honestly.

Q    Does this refresh your recollection as to the deliverables required under the agreement?

A    It says on here.  It doesn't refresh or do anything for me.  I'm reading it on the paper of what the deliverables were.

Q    What were the deliverables on that page?

A    Under dynamic pages it lists what the deliverables were, which was -- do you want me to read what it says?

Q    No, we're fine.  That's fine.  At least you found the area.

Now, if you go to the page before that, do you see --

A    Page 4?

Q    Yeah, do you see the date of the agreement?

A    Yes.

Q    Is that your signature?

A    It's a digital signature, looks like, yes.

Q    Is that your digital signature, if you recall?

Page 66

A    It looks like it.

Q    And do you know if there were any -- if you remember, any revisions to this agreement at any time and/or modifications?

A    No.

Q    And looking at -- I'm not sure if you're familiar with Mr. Angelone's signature, but does that, in your opinion, appear to be Mr. Angelone's signature on the signature page?

A    Yeah, I guess.

Q    And do you recollect where the original of this agreement was kept on behalf of Hidden Empire Film Group, LLC?

A    No.

Q    Did you ever store a copy of this agreement physically or digitally?

A    I would assume I did, yes.

Q    And have you sent or received any subsequent addendums or amendments to this agreement, if you recollect?

A    This amend- --

Q    Yes, to that agreement.

A    No.

Q    And looking at your signature on the signature page that we just discussed, was this --

Page 67

in your opinion, was this agreement executed by Hidden Empire Film Group, LLC?

A   It was, yes, executed by me on behalf of, it looks like.

Q   Hidden Empire Film Group, LLC; correct?

A   Yeah.  I'm just reading the paper.

Q   Okay.

A   Yes.

Q   Okay.  Great, yeah.  Be careful with the uh-huhs and the -- 'cause the reporter, it's difficult for her to transcribe.

A   Sure.

Q   Okay.

A   As soon as she lets me know if I do it, I will --

Q   Okay.  Perfect.

A   -- do what's needed.

Q   Okay.  Was Hidden Empire Film Group, LLC ever suspended in 2016, if you recall?

A   It's been suspended.  I don't know what year it was suspended.

Q   Did you or Mr. Taylor ever revive this entity?

A   Yes.

Q   Do you remember when that was?

Page 68

A    No.

Q    Did you ever register an entity called Hidden Empire Film Group, LP?

A    It was registered.  I don't remember if I did it or who did it.

Q    What was the purpose of registering Hidden Empire Film Group, LP?

A    Because we -- someone else registered, I believe, Hidden Empire after it lapsed.  And so that was what we had temporarily while we were dealing with that.

Q    Do you relect -- sorry.  Do you recollect ever transferring the agreement, which is Exhibit 1 that we've just been looking at, to Hidden Empire Film Group, LP?

A    I don't recall.  I want to be clear, though. This is not part of this agreement.  This is something different that doesn't relate, in my opinion.

Q    Okay.

A    This is executed to who -- I don't know where this came from, and it's clearly not part of this original agreement.

Q    So in respect page -- to the last page of Exhibit 1.

Page 69

A   Okay.  Yeah.

Q   Just so the record's clear.

A   This is just a memo that looks like was done prior to this.

Q   Okay.  That's fair.

But going back to my last question now, do you ever recall transferring the rights of this agreement to Hidden Empire Film Group, LP?

A   I don't recall personally, but there's definitely been rights transferred within entities of ownership.

Q   And if you look at paragraph 7 on this document, please.  I believe it's page 2.  Do you see paragraph 7?

A   Yes.

Q   Can you just briefly read that paragraph?

A   "Developer reserves the right to assign other designers or subcontractors to the work to ensure quality and on time completion, but developer shall remain ultimately responsible for timely delivery of the work in accordance with the specific" -- "specifications provided by the client."

Q   Do you recollect that -- that clause being part of this agreement?

A   I don't.  I have a lot of issues with this

Page 70

agreement.

Q   Okay.

A   So I don't --

Q   If you could look at paragraph 14.  If you could just briefly read that paragraph to yourself.

A   "Modifications of the terms of this contract must be written and authorized by both parties involving the implimentation of a new version of the contract as a whole following standard procedures of documentation and approval."

Q   Do you recollect that language being part of the agreement?

A   No.

Q   And so just going back, now that you've had a chance to review some of this document, do you recollect that this agreement was assigned to Hidden Empire Film Group, LP in the past?

A   I don't remember.

Q   Based on -- and whether this is specifically the exact agreement from 2012, knowing -- you knowing or testifying that there was this -- some sort of agreement that was entered into between Aone and Hidden Empire Film Group back in April of 2012, was it your understanding that Mr. Angelone and/or Aone Entertainment, LLC completed its scope of

Page 71

services in connection with this agreement from 2012?

A    What are the scope of services?

So the design and the development of client's websites at domain names.  So, yes, I believe that those were -- there's really no scope of services outlined in this agreement.  So I'm just referring to the first paragraph.

Q    But you recollect that there was only one agreement between Aone Entertainment and Hidden Empire Film Group, LLC back in 2012.

A    I don't remember if there were other agreements outside of this.

Q    Okay.  So back in 2012 do you recollect that Mr. Angelone and/or -- we'll call it Aone Entertainment, LLC -- completed the services during that time frame on behalf of Hidden Empire Film Group, LLC?

MR. NEWELL:  Objection.  It's asked and answered.

You can answer.

THE WITNESS:  I would assume, yes, that it was completed, yes.

BY MR. FOX:

Q    And just looking briefly at Exhibit 2, if we

Page 72

can --

If you wouldn't mind, Darrick.  We have copies for both Felton and yourself.  There you go. There's No. 2.

(Exhibit 2 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   Do you see the date of this email?

A   Yes.

Q   And does it say August (sic) 22nd, 2013?

A   Yes.

Q   And this is from -- do you recollect this email after -- if you want to review it briefly.

A   I don't.

Q   Were you using the -- I think it's like an email moniker, Roxanne Supremacy at some point?

A   I don't -- I wouldn't have labeled Roxanne supremacy as my email.  So I don't know what email this is.

Q   Is that your husband's email, deontaylor@me.com?

A   Yes.

Q   Just briefly in respect to this email, and, again, I don't know if you recollect, but it appears to Mr. Taylor was or your husband was sending this

Page 73

email to both you and Darrick; correct?

A    I don't know what -- that says Roxanne Supremacy at.  I have no way of knowing that that's my email address.  So I can't speak to this at all.

Q    Did you -- do you recollect producing this email during the discovery process in this litigation case?

A    No.

Q    And in respect to the 2012 contractual relationship between Aone Entertainment and Hidden Empire Film Group, was it your -- do you have any understanding as to whether there was any leftover tasks?  I mean you just testified that you believe that you fulfilled all the obligations under the agreement.  But now you've had a few more minutes to maybe digest what happened back in 2012.  Do you remember if there were any open tasks that weren't completed?

A    From this agreement?

Q    Yes.

A    I don't know.

Q    Okay.  Do you believe that there's any amounts that are owed to Aone Entertainment by Hidden Empire Film Group relating back to this 2012 agreement?

Page 74

A    No.

Q    Did you, in respect to the 2012 agreement between Aone Entertainment, LLC and Hidden Empire Film Group, LLC, are you the one who authorized all the payments to Aone Entertainment, LLC on behalf of Hidden Empire Film Group, LLC?

A    I don't remember.

Q    Who would have been responsible for authorizing those payments?

A    Me or Deon, maybe.  Yeah, I don't --

Q    Do you --

A    -- years ago.

Q    Do you recollect ever negotiating the amounts that may have been owed by Hidden Empire Film Group to Aone Entertainment, LLC with Mr. Angelone back in 2012?

A    For this agreement?

Q    Yes.

A    No, I don't.

MR. FOX:  I'm going to move on to Exhibit 3, please.

(Exhibit 3 was marked for identification by the court reporter and is attached hereto.)

MR. FOX:  If you want to hand that to me. I'll just get it out of your way so you don't --

Page 75

(Discussion off the record.)

BY MR. FOX:

Q    Roxanne, here's Exhibit 3.  If you can please take a look at this.

I'm sorry, when I said email, it's an email chain.  So if you can review it, please.  Thank you.

A    Okay.

Q    Do you -- now having a chance to review this email chain, do you recollect having sent this message to Mr. Angelone and Mr. Angelone sending you this message back on November 29th, 2017?

A    Yeah, I'm reading it.  Yes.

Q    I'm assuming Roxanne Avent -- is Avent your maiden name?

A    Yeah, Avent is my maiden name.

Q    Okay.  Thank you.  Let me know when you've -- are you finished reading it?

A    Yeah, I read it.

Q    Okay.  Perfect.  And in the lower email on the page it says it's from you to Darrick dated November 29th, 2017 where you say, "Hey, D."  Did you refer to Mr. Angelone as D often?

A    Yes.

Q    Okay.  And it says here, "Just a remainder, we need to connect on the structure of the company."

Page 76

Are those -- are those your words?

A    That's what's written.

Q    And what did you mean by that, "just a reminder, we need to connect on the structure of the company"?

A    I don't know because this was in 2017.  I'm assuming it's regarding the marketing company because it says marketing Co. in the subject line.

Q    Okay.  And I notice in the subject matter of these emails it says re:  Marking company; correct?

A    It says what?

Q    It says marketing company -- correct? -- in the subject matter.

A    Yes.

Q    So was this your understanding that this was the early stage concept for creating Hyper Engine or a similar entity?

A    I don't know that it would be creating Hyper Engine.  It would be more to seeing how we could figure out if he could be a part of it.

Q    And when you say -- I just want to be clear, 'cause you say a part of.  Do you mean an owner of, a membership holder of?  What do you mean by that?

A    A participant of the company.

Q    Okay.  'Cause participant is very broad.  So

Page 77

do you mean owner of the company?

A    I don't mean owner, no.

Q    Do you mean partner?

A    Well, there was several variations of what it could look like, and we were trying to figure out what that would mean.  So I don't mean anything. I'm just saying that we were trying to figure out a world for him to be partners with us if we could get this thing off of the ground.

Q    Okay.

A    It's not the creation of the company.

Q    I get it.  You answered my question.  Thank you.

Do you remember producing this email during the discovery process in this court matter?

A    No.

Oops.  Sorry, one second.  Good?

Q    Okay.  And the email that says roxanneavent@gmail.com, was that your personal email address?

A    Yes.

Q    At this juncture did -- subsequent to this, did you file an LLC in order to establish this new marketing company?

A    I don't remember when I or if I was the one.

Page 78

I don't remember when this happened.

Q   Did you ever authorize someone to go ahead and create a new LLC to establish this marketing company?

A   Either I authorized it or I did it myself.  I don't remember what the actual action was.

Q   In respect to having people assist you with, we'll call it, corporation filings or LLC filings, who would you -- besides yourself, who would you rely on to assist you with those types of transactions?

A   Head of business affairs or my CPA firm.

Q   Who was head of business affairs?

A   Velma Sykes.

Q   Is she still the head of business affairs for you?

A   No.

Q   What is her role with your company today?

A   She's not with the company.

Q   When did she -- when did she leave your company?

A   A year ago maybe.

Q   And do you know what she's doing now?

A   I don't.

Q   Do you know where she lives?

Page 79

A    I don't.

Q    You said your CPA.  Do you remember who your CPA was back in November of 2017?

A    Maybe Avaunt.  I'm not exactly 100 percent sure.

Q    And after Avaunt -- actually, what other CPA firms have you used on behalf of the companies?

A    Jeez, what was their names?  One I'm drawing a blank on, and the another one is Aprio.

Q    Okay.  Aprio.

A    Yeah.  And there's one I'm drawing a blank on.

Q    Do you remember Barbara Campbell?

A    Yes.

Q    Who was she?

A    She was an independent contractor for accounts payable.

Q    Did she have a relationship with Aprio or Avaunt?

A    Yes.

Q    A professional relationship with them.

A    Correct.

Q    Did she provide services on behalf of those entities, one or both?

A    Yes.

Page 80

Q   Now, in respect to the creation of this new marketing company back in the end of 2017, did the 2012 agreement between Aone Entertainment, LLC and Hidden Empire Film Group, LLC have any sort of impetus in regard to this new marketing company? And I think meaning was this services agreement from 2012, did it play any role in the creation of this new marketing company in 2017?

A   I don't remember.

Q   And you had said that there were discussions about, I believe -- and again, correct me if I'm wrong -- something to the effect that you were exploring the possibility of Mr. Angelone being a partner in this new marketing company; correct?

A   Correct.

Q   Okay.  Great.  Okay.  And in respect to the creation of this marketing company, besides exploring whether Mr. Angelone would be a partner, were there any other parties or entities that would be partners in this new marketing company, if you recall?

A   Not that I recall, no.

Q   Was Robert Smith ever intended to be a participant or partner in this new marketing company?

Page 81

A    That was one variation.  Robert Smith has been very -- a blessing in our career, and so any opportunities that we're able to take care of him from any sort of -- any way that we could try to thank him, we would.  So there was an iteration of that at one point.

Q    And when you say iteration, was he supposed to be an equity holder in the new marketing company?

A    Yes.

Q    Do you remember what his percentage ownership would be in the new entity?

A    It probably would have been like a 50 percent maybe.

Q    Did that ownership position that was going to be provided to Mr. Smith, did that ever change at any time?

A    It was never solidified.

Q    So Mr. Smith never became on owner of Hyper Engine, LLC; correct?

A    No.

Q    Okay.  Understood.

And when -- at some point -- or strike that.

Is it your understanding that an LLC has to have an operating agreement?

A    I don't know that answer.

Page 82

Q   Okay.  Do all of your entities, the ones that you've referenced today, do all of those entities have operating agreements?

A   Which entities?

Q   I believe you listed Hidden Empire Holdings, LLC, Hidden Empire Film Group, LLC, Hyper Engine, LLC, and then there was a Hidden Empire Sports entity of some sort.

A   I know Holdings does.  I believe Films does. Hyper Engine, I don't think there was ever an operating agreement.  Sports, I can't remember if one was done.  It's a fairly new --

Q   Okay.  Did you ever ask an attorney to prepare a draft of an operating agreement for this new marketing company?

A   Hyper Engine?

Q   Yes.

A   Yes.  Either myself or Velma I believe did that.

Q   And do you know what -- did an attorney actually prepare an operating agreement for Hyper Engine, LLC?

A   Yes.

Q   Do you know what -- the name of the attorney?

A   I don't recall.

Page 83

Q    And do you know how many versions of the operating agreement exist, if you know?

A    I don't.  Probably a few.

Q    But was any of these operating agreements ever signed by anybody?

A    Not that I am aware of.

Q    And you never signed any of these operating agreements; correct?

A    Uh-uh.

THE REPORTER:  I need a --

THE WITNESS:  I'm sorry.  Yeah, no.  I caught myself, sorry.

MR. FOX:  It was so fast I missed it too.

Q    Let's move on -- why don't you hand me that exhibit back just so we keep it in order.

Felton, you can keep that copy.  It's for you.

Moving on to Exhibit 4.

(Exhibit 4 was marked for identification by the court reporter and is attached hereto.)

MR. FOX:  You guys are making me so thirsty with all the coffee mugs.  I'm hanging in there.

(Discussion off the record.)

BY MR. FOX:

Q    Okay.  Are you done reviewing the document?

Page 84

A    What am I reviewing?

Q    If you can, review the entire document.

A    Okay.

Q    Thank you.

A    Okay.  That's --

Q    Thank you.  Do you recollect ever seeing this document?

A    I think so.

Q    So if you want to turn back to the first page of the operating agreement.  Can you see at the top there where it says, "Operating Agreement of Hyper Engine, LLC"?

A    Yes.

Q    And now having looked at this document, do you recollect this as a version of the operating agreement for Hyper Engine, LLC?

A    Yeah.  That's what it looks like, yes.

Q    Then if you turn to the very next page where it says at the very top, underneath the header where it says operating agreement for Hyper Engine, LLC, "This operating agreement ('Agreement') is made as of March 1st, 2018."  Do you recollect this as being the operating agreement that you had an attorney first prepare for Hyper Engine LLC?

A    I don't.

Page 85

Q    And then it says, "By and among Robert F. Smith, Deon Taylor, Roxanne Taylor and Darrick Angelone."  Do you see that?

A    Yes.

Q    Do you recollect that being made part of the 2018 operating agreement?

A    It's on the paper.

Q    So do you recollect it having done back in 2018?

A    Well, nothing was done.  They were just conversations.  So this was most likely a version of one of those conversations.

Q    Do you recollect instructing the attorney as to the material terms of the 2018 operating agreement for Hyper Engine, LLC?

A    No.

Q    Do you know who would have?

A    No.

Q    Did Mr. Taylor?

A    Can't answer for him.

Q    What about Velma Sykes?

A    Can't answer for her either.

Q    Now, if we go back towards the back of this document, page 20, if you wouldn't mind.  You can just briefly look at that page,

Page 86

THE WITNESS:  I think it's because of the turning of the papers.  Sorry.

MR. FOX:  You know what?  This is -- is the right one, her copy?  Her copy's different.  Switch?

MR. ANGELONE:  Yeah.

MR. FOX:  Okay.

Q    Let me give you this 'cause this is a signed copy.  This is -- I'm sorry.

A    So this is -- so take this one instead of this one?

Q    Yeah.

A    Okay.

Q    'Cause what we did is we located the signed copy.

A    Oh.  Okay.

Q    We meant to swap that out.

A    I never signed anything.  So --

Q    We'll get to the questioning.  So --

MS. CALIN:  Felton, is your copy signed?

MR. NEWELL:  It is.

MR. FOX:  This is the wrong copy too.

MR. ANGELONE:  There's just one that's not, yours.  The other two are.

MR. FOX:  Why don't we do this --

Q    You've had a chance to look at the signature

Page 87

page there.

    A   Yes.

    Q   Do you recollect your signature on that page?

       MR. NEWELL:  Objection.  Vague as to "do you recollect"?

BY MR. FOX:

    Q   Is that your signature on the page?

    A   It looks like my signature.  It's a digital signature.

    Q   And if you could turn to the very next page. Can you tell me what the ownership structure was in that Schedule A to the operating agreement?

    A   For each person?

    Q   Yes.

    A   Class A was 50 percent to Robert Smith, 16.67 to Deon, 16.67 to myself and 16.66 to Darrick Angelone and 20 percent interest for Robert Smith.

    Q   Okay.  When you signed this operating agreement, did you confirm the ownership structure of Hyper Engine, LLC?

    A   I didn't sign --

       MR. NEWELL:  Objection.

       THE WITNESS:  -- this agreement.

       MR. NEWELL:  Objection.  Assumes facts not in evidence, lacks foundation.

Page 88

You can answer.

THE WITNESS:  I didn't sign the agreement.

BY MR. FOX:

Q   Okay.  But you recollect that as being your digital signature.

MR. NEWELL:  Objection.  Vague as to recollect.

BY MR. FOX:

Q   You testified that that appeared to be your digital signature; correct?

A   It does appear in a way.

Q   Do you remember applying your digital signature to this document?

A   I didn't apply it, and I didn't sign any variation of it.  So I'm assuming this is, you know, him stealing my signature out of my emails.

Q   Okay.  Did you --

A   Since it was just figured out or found.

Q   Did you -- did you have someone else digitally sign your name to this agreement, if you recall?

A   No.

Q   Okay.  Does Schedule A in any way confirm what you believe was going to be the ownership structure of Hyper Engine, LLC back in 2018?

Page 89

A    These were one of the conversations.

Q    And was that conversation with Mr. Angelone?

A    I'm assuming so.

Q    Was that -- were you private to that conversation with Mr. Angelone?

A    I'm assuming so, yes.

Q    And who -- if you remember, who came up with this ownership structure in respect to providing Mr. Angelone 16.66 percent of Hyper Engine, LLC?

MR. NEWELL:  Objection.  Vague as to "this ownership structure."

BY MR. FOX:

Q    Yeah.  Whose idea was it to -- because you're saying you had signed this, but whose idea was it to give or propose to Mr. Angelone 16.66 percent of Hyper Engine, LLC?

A    I don't remember whose idea, but I would assume it was part of our ongoing conversations.

Q    If you want to hand me that document.

And do you remember if you ever circulated the 2018 operating agreement draft to any of the -- any third party, if you remember?

A    Outside of that?  I don't remember circulating it.  I don't remember.

Q    So you don't recall sending a copy to Robert

Page 90

Smith?

A    I don't.

Q    Did you ever send a copy to Mr. Angelone?

A    I would -- I don't know.

Q    Do you remember if you've ever shared this agreement document with your husband?

A    I don't remember.  I don't have any emails to be able to reference that, or else I could probably answer in detail.

Q    Did you ever -- when you opened your Bank of the West account in September, 2019, did you furnish Bank of the West with the 2018 operating agreement?

A    I don't remember.  For Hyper Engine you're referring to?

Q    Yes.

A    I don't remember.

Q    Do you recall if Hyper Engine, LLC ever applied for an SBA loan or a PPP loan during covid?

A    I don't.

Q    Do you recall if Hyper Engine, LLC received SBA loan monies or PPP loan monies during covid?

A    I don't.

Q    So I just want to be clear.  As we sit here today, Hyper Engine, LLC, in your opinion, does not have a signed operating agreement.

Page 91

A    Correct.

MR. FOX:  Can we take a two-minute break?  I just need to clarify a question on an exhibit.

THE VIDEOGRAPHER:  Okay.  Hold on.  I don't hear any objections, we're going off the record. This is the end of media unit No. 2.  Time is 12:01?

(Recess.)

THE VIDEOGRAPHER:  We are back on the record. This is the beginning of media unit No. 3.  Time is 12:04 p.m.

Counsel, you may proceed.

MR. FOX:  Okay.

Q    Mrs. Taylor, if you could review this email chain, I'd appreciate it.

(Exhibit 5 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    Okay.  You've had a chance to review those emails, Exhibit No. 5?

A    Yes.

Q    And do you recall these emails between you and a banker named Monica Patel from Bank of the West?

A    Yes.

Q    And do you recall specifically this email

Page 92

communication with Mrs. Patel?

    A    Yes.

    Q    And in response to her confirming that she's opened the operating account for Hyper Engine, LLC, and the account for Darrick Angelone's debit card, the debit cards for you and Deon are linked to the operating account, each with limits of 10,000, Darrick Angelone's card will be delivered to your address, do you recall responding to her after she sent you that email that your exact response was "That would be great"?

    A    I guess this page?

        MR. NEWELL:  You don't see where he's asking about?

        THE WITNESS:  Yeah, I see this.  Is this the response to this?  What's 1630?  What militar- -- what time is that?

        MR. NEWELL:  4:30.

BY MR. FOX:

    Q    Let me -- you know, I can -- let me start, and then I'll get to this line of questioning 'cause I think it will flow better.

    A    Okay.

    Q    I don't want to confuse you.

        So you created a bank account with Bank of

Page 93

the West for Hyper Engine, LLC; correct?

A    Correct.

Q    And do you remember dealing with a banker by the name of Monica Patel at Bank of the West?

A    Yes.

Q    And why did you open the Hyper Engine bank account in September of 2019?

A    Why?

Q    Yeah.  Yes.

A    I would assume to use it.

Q    Okay.  And for business purposes for Hyper Engine; correct?

A    Correct.

Q    Was Mr. Angelone ever placed as a signatory on this bank account?

A    No.

Q    Did Mr. Angelone ever receive a debit card for this bank account?

A    No.

Q    Did you ask Ms. Patel to set up a debit card for Mr. Angelone?

A    Yes.  I asked her to set up more or less a P-card that would be funded after I had the conversation with Darrick, asking if this would be easier to use a card for paying for ads or different

Page 94

things and which I sent a signature card that never was signed and account never got activated.

Q   Did you ever provide Bank of the West the ownership structure for Hyper Engine, LLC?

A   There was no ownership structure finalized.

Q   Did Bank of the West ever ask you for the ownership structure for Hyper Engine, LLC?

A   I don't recall why they would.

Q   And you were the -- you were the one person who set up these accounts with Bank of the West from Hyper Engine, LLC; correct?

A   Yes, that's what's -- yeah.

Q   So your husband wasn't involved in this process?

A   In which process?

Q   Opening up the bank account with Bank of the West.

A   No.  Doesn't look like he's on the emails.

Q   Did you ever provide any sort of corporate resolutions to Bank of the West on behalf of Hyper Engine, LLC for the opening of the bank account?

A   No.

Q   Who had -- if you recall, who had signing authority over this bank account?

Bless you.

Page 95

A    Bless you.

I'm assuming myself and Deon because I'm opening it.

Q    And from this email exchange, does it appear that the banker is acknowledging that this debit card was set up for Mr. Angelone?

A    Yes.

Q    Do you know if Darrick Angelone ever used the debit card or the bank account for Hyper Engine, LLC?

A    No.  He never signed off on the debit card. He was never added to the account as a signatory.

Q    So if you go to the last page of this email exchange, and there's an email from -- looks like from Monica Patel to you, September 16, 2019, and she says, "I looked up the entity on the Secretary of State website, and it is still showing suspended. So I've not been able to open this account still.  I just wanted to update you on where I was with this."

Do you recollect receiving this email from her?

A    No.  I don't know what entity she's even talking about.

Q    Do you recall if Hyper Engine, LLC was suspended at this time?

Page 96

A    I don't.

Q    And --

A    I do know if it's suspended, you can't open it.

Q    Okay.  And going back to the first page, the last sentence from Ms. Patel, it says, "It will have a limit of $3,000."  I'm assuming she's meaning Mr. Angelone's debit card.  Then there's a last sentence, "To fund his debit card, you will need to transfer funds from operating AC as you prefer."  Do you know what she meant by that?

A    Basically what I just said, it's operated as a P-card.  So it wasn't a debit card attached to the account.  The request was for like a secured card that you would put funds on for him to be able to use when needed.

Q    Do you know if there were two separate accounts that Bank of the West set up, meaning there was an operating account for Hyper Engine, LLC, but was there also a separate account for Darrick Angelone for his use of the debit card?

A    Nothing was set up because he never signed. But it looks like to have this P-card, you had to set up an account for the card.  Is that what you're asking?

Page 97

Q   Yeah.  Yeah.  That's fine if that's your recollection.

Okay.  If you can look at Exhibit 6, please.

(Exhibit 6 was marked for identification by the court reporter and is attached hereto.)

THE WITNESS:  I have like a huge problem with this email.  This is back from --

MR. NEWELL:  We can discuss it during the break.

THE WITNESS:  Someone forward this to info, clearly, from my email.

MR. NEWELL:  We can discuss it during the break.

THE WITNESS:  It doesn't make any sense.

BY MR. FOX:

Q   So when you've had a chance to review Exhibit 6, let me know, please.

A   Yes.

Q   Is this your handwriting on this document?

A   No.

Q   Do you know whose handwriting this is?

A   Maybe Monica's.  I don't know.

Q   And who is --

A   It's from the Bank of the West.  So I would assume it's from Monica Patel.

Page 98

Q    Do you ever -- do you recall signing this business debit card enrollment document?

A    No.

Q    Do you see that Darrick Angelone is listed as an additional authorized card holder in the middle of the page?

A    I do.

Q    So it was your -- it's your testimony that Mr. Angelone was to be made a debit card holder on this account; correct?

A    Not debit card.  It was a P-card.  The debit card is linked directly to the account.  A P-card is a secured card that is funded.

Q    Okay.  Thank you.

Was Mr. Angelone's P-card account intended for business expense on behalf of Hyper Engine?

A    Yes, that's what it would be for.

Q    And not for personal use; correct?

A    Correct.

Q    And if we could look at Exhibit 7, we'll provide you with Exhibit 7.

(Exhibit 7 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    Exhibit 7, if you can please look at that,

and let me know when you're done.

A   Okay.  I have it.

Q   And looking at Exhibit 7, there's the --
there's page 1 of 2, and it says at the very top in
the address portion -- do you see where it says
Hyper Engine, LLC Operating AC?

A   Uh-huh.

Q   Okay.  And then if you go towards the middle
of the page it say Hyper Engine, LLC Operating AC.

A   Uh-huh.

Q   Is your recollection that this is a statement
for the operating bank account for Hyper Engine,
LLC?

A   Yes.

Q   And then turning to the next page, if you
wouldn't mind -- oh, by the way, on the first page
you see the account ending 370?

A   I do.

Q   Then turning to the next page, it says at the
very top, Hyper Engine, LLC, Darrick A/C; correct?

A   It does.

Q   Is there any reason why -- or do you know why
his name was on this statement?

A   I don't, but I would assume it was for the
P-card that she tried to set up.

Page 100

Q   And the account ends 396 on this particular statement; correct?

A   Yes.

Q   Did you have signatory rights as to both accounts?

A   This is a credit card.  This is a P-card. This isn't a bank account.  Listen, I don't know how it works on the banking side.  So I can't honestly speak to it, but this was set up for a P-card.  So I'm assuming they have to set up separate accounts for the individual people on these cards for it to be funded for them to use.

Q   And in respect to these two accounts, did you have or do you recall having online access to both of these particular accounts?

A   Not -- this, I don't recall having access but possibly.

Q   And how often, if you remember, did you review these statements for these accounts and/or online access?

A   Never, really, unless somebody asked me to. I didn't --

Q   Okay.  Was Mr. Taylor aware of this separate P-account being set up for Mr. Angelone?

A   Probably, but I don't know.  You'd have to

Page 101

ask him.

Q    Okay.  If you could refer back to Exhibit 5.
And on the first page of Exhibit 5 -- this is the
letter from Ms. Patel.  But do you remember, if you
look down towards the -- I think it's the third
paragraph, it says, "Would you please" -- I'm sorry,
"Would you and Deon please sign the signature card
documents and the debit card enrollment form in the
spaces I have marked X and return to me via email.
I will need these by Tuesday to be in compliance."

Do you recollect her asking you to do that?

A    It says it in the email.  So --

Q    So do you remember you and Mr. Taylor signing
the signature card for this account?

A    For Hyper Engine or --

Q    Yes, Hyper Engine, LLC.

A    We had debit cards.  So I'm sure we signed
it.

Q    Okay.  Understood.

A    Do you not have the image for the things that
we signed?  Did they not provide that with this?

Q    I -- it's -- these are my questions.

A    All right.  Sure.

Q    You can ask your lawyer anything you want on
break.

Page 102

Was the debit card for Mr. Angelone established as a direct result of opening this operating account with Hyper Engine, LLC?

A    I don't know what that means, but the card was never established.

Q    But it was done at the same time as you were opening the -- or, sorry.  The application for the P-card was done at the same time that you were opening the account for Hyper Engine, LLC; correct?

A    No, I don't know that, it was done at the same time.

Q    Okay.  And why did you decide that you wanted to secure a separate debit card for Mr. Angelone?

A    It wasn't a debit card.  We discussed, Darrick and I discussed, setting up a P-card for him to use to make ad buys or whatever it was at the time.

Q    And were there any spending limits that were intended to be placed on Mr. Angelone's P-card?

A    It looks like it was requested for $3,000 as a limit in your Exhibit 5, page 1.

Q    Okay.  And if you recall, was there a reason for a $3,000 limit?

A    No.

Q    And I think it's your position that this P-

account was never funded; correct?

A    No.  It was never opened.  I mean it's never -- he never signed the signature page.

Q    Do you know if there were any provisions in the various versions of the operating agreement for Hyper Engine, LLC that provided for Mr. Angelone having this P-card?

A    You mean like was it written in any variation for him to have a P-card?

Q    Yeah.

A    I don't know.

Q    And I know you said previously that you recollect Mr. Taylor signing off on the signature card and the debit card enrollment in respect to Bank of the West.  But did both of you have access to these accounts, if you know?

A    Well, I didn't say I recollect.  I said that it asked us to sign the signature card.  There's no document showing who signed it or if we both signed it.

Q    Okay.  But I think --

A    But the account was open.  So I'm not sure if he signed it for sure, but clearly I signed it.

Q    But both of you -- if you remember, both of you had access to this account?

Page 104

A    I believe so.

Q    Okay.  Understood.

Do you recollect, when you opened this account on behalf of Hyper Engine, LLC, did you obtain the consent from anyone other than Mr. Taylor?

A    Consent to open it?

Q    Yes.

A    No.

MR. FOX:  What time is it?

MR. NEWELL:  Is now a good time to stop?

MR. ANGELONE:  One more.

MR. FOX:  One more.  One more minute.

Q    If you can look at Exhibit 7.

MR. ANGELONE:  8.

MR. FOX:  Oh, 8.  We'll count 7?  Wait a minute.  I'm getting -- okay.  Okay.  Sorry, we're having -- 'cause the second page is different then.  Okay.  Exhibit No. 8.

(Discussion off the record.)

(Exhibit 8 was marked for identification by the court reporter and is attached hereto.)

MR. FOX:  We'll run through this exhibit.  Then we'll take a lunch break.

THE WITNESS:  Yeah, whatever.  I'm here for

Page 105

this.  So --

MR. FOX:  Thank you.

Q    If you could please review the email exchange, and then I'll ask you questions when you're finished reading it.

A    So what email exchange am I looking at? Because, again, this is forwarded from office ATFG to Darrick with no writing, and I don't know what I'm --

Q    I haven't started my questions.  I just -- if you can review it, and then I'll ask you questions.

A    I'm ready.

Q    Okay.  So if you look at the bottom of page 1, it appears to be an email from you.  Was your email address at this time roxanne@hiddenempirefilmgroup.com?

A    It appears to be.

Q    And this appears to be an email that you sent to Chris Fry on November 4, 2019 at 12:16 p.m., subject says Hyper Engine, LLC.  Who was Chris Fry?

A    He was an attorney.

Q    An attorney for Hyper Engine?

A    For Hidden, I believe.  He's an attorney.  So whatever we engaged him to be for is what we engaged him to be for.

Q    Okay.  So he did --

A    He wasn't in-house.

Q    So he was a -- I understand he was not in-house.  So he was a lawyer that Hidden Empire Film Group or Hidden Empire Holdings, LLC would hire to do contracts?

A    Whatever we decided.  There was no rule book.

Q    So did he ever prepare contracts for Hidden Empire Film Group, LLC or Hidden Empire Holdings, LLC?

A    Hidden Empire Holdings did not exist at that time, to my knowledge.  I don't remember if he ever did any contracts.

Q    Do you remember if he ever prepared any contracts for Hyper Engine, LLC?

A    I don't.

Q    And if you turn to the next page of the email.  I can read it to you.  It says, "Hey, Chris. I need an operating agreement put together for the above-referenced company.  Can you let me know what you need to do this?"  Do you remember sending this email to Mr. Fry?

A    Yes.

Q    And do you remember why you needed an operating agreement at this time for Hyper Engine?

Page 107

A    It looks like another iteration of trying to set this up.

Q    Okay.  And then if you go back to the first page, Mr. Fry, in response to your email, says, on November 4, 2019 at 1:53 p.m., "Definitely.  Who are the members and what's its purpose?  Another firm?  Anything you guys you want to specifically include or do you just want the basics?  I believe we did one "From Hoop 2 Film" along those lines.  Good?"

Do you remember him sending you that email?

A    Yeah.  I'm reading it.

Q    And we're going to go above to the very top of the page.  There is an email which I believe is from you to Mr. Fry, later in the day at p.m. --

A    Yes.

Q    -- again, subject re:  Hyper Engine, LLC, "Hey, Chris, Great.  Thanks.  It's a marketing company.  Members are HEFG, 66.67; Aone Entertainment, 33.33; HEFG is fronting all the overhead for staff, et cetera.  We will need to be paid back once revenue comes in.  Then profits will be allocated.  We will charge our clients 12 percent for services.  Not sure what else you need.  Thank you."

Do you remember sending this email to Mr. Fry?

A    Yes.

Q    Why did you send Mr. Fry that email?

A    Well, it says to create an operating agreement, and this is another iteration different from what was presented earlier.

Q    Is the word iteration anywhere in this email?

A    No.

Q    Is there anywhere in this email where it says you want to make revisions to an existing operating group for Hyper Engine, LLC?

A    No.

Q    And where did you come by 33.33 percent membership interest for Aone Entertainment in respect to Hyper Engine, LLC?

A    I don't know.  I'm assuming it's from conversations that we had.

Q    And then do you recollect if Mr. Fry actually prepared an operating agreement for Hyper Engine, LLC after him sending you this email on November 4, 2019?

A    Maybe.  I don't --

Q    Okay.  And is your understanding that if -- and this is based on your personal experience with

Case 2:22-cv-06515-MWF-AGR    Document 284    Filed 03/16/26    Page 130 of 591    Page ID #:8275

corporations and LLCs -- that if Aone Entertainment owned 33.33 percent of the membership interest in Hyper Engine, LLC, that if there was profit participation, that Aone Entertainment would receive 33.33 percent of the profit?

MR. NEWELL:  Objection.  Assumes facts not in evidence, lacks foundation, incomplete hypothetical, calls for speculation.

BY MR. FOX:

Q    If you know.

A    I don't know what -- I don't remember what the parameters were around what this represented.

Q    Okay.  So, for example, let's say -- I'm giving you a hypothetical.  Hyper Engine, LLC owns -- I'm sorry -- you own 50 percent of Hyper Engine, LLC, Mr. Taylor owns 50 percent of Hyper Engine, LLC, there is a thousand dollars of profit sitting in the company bank account, and you and Mr. Taylor agree to distribute those funds as profit to the owners of the company.  So if you were a 50 percent owner of Hyper Engine, LLC, would you receive $500 of those funds that are sitting in the Hyper Engine, LLC bank account?

MR. NEWELL:  Objection.  Calls for speculation, assumes facts not in evidence, lacks

Veritext Legal Solutions
800-567-8658                                                          973-410-4098

Page 110

foundation, incomplete hypothetical.

BY MR. FOX:

Q    If you can answer.

A    Yeah, I don't -- it would depend on the situation of the agreement that's formalized.  So I can't hypothetically answer a scenario.

Q    So if you owned half of a business, wouldn't you expect to receive half of the profit from a company?

MR. NEWELL:  Objection.

THE WITNESS:  Don't know.

MR. NEWELL:  Assumes facts not in evidence, lacks foundation, incomplete hypothetical, calls for speculation.

BY MR. FOX:

Q    Did Mr. Angelone ever receive any profit participation from Hyper Engine, LLC?

A    No.  There was no profit participation.

Q    For anyone; correct?

A    Correct.

Q    Did Mr. Angelone ever receive any distributions from Hyper Engine, LLC?

A    I'm sure he did.

Q    When I say distributions, I mean distributions in the form of profit of the company.

Page 111

A    All his services were work for hire.

Q    Okay.  So as an independent contractor; correct?

A    Correct.

Q    So that wasn't -- those were not distributions; correct?

A    If that's what you're labeling as distributions, then, no, they were work for hire.

Q    Okay.  Understood.  So knowing that, did Hyper Engine, LLC ever pay a distribution to Mr. Angelone at any time?

A    Well, distribution means money to somebody.  So, yes, we distributed money to him.

Q    So in the corporate records, if you will, or in the financials of Hyper Engine, LLC, do you know if Mr. Angelone was ever -- was it ever recorded that Mr. Angelone received a distribution on behalf of Hyper Engine, LLC?

MR. NEWELL:  Objection.  Vague as to distribution, assumes facts not in evidence.

THE WITNESS:  Yeah.  This is the same answer.  A distribution to me is getting paid from that entity, and he was paid from that entity.

BY MR. FOX:

Q    But you said as work for hire; correct?

Page 112

A   Correct.  But I'm distributing money to him. So the question was did he ever get anything distributed to him; correct?

Q   Understood.  So you're using the word literally, which is fine.

A   Okay.

Q   I think you answered my question because we talked about profit participation, which you said no, he had not received share of the profits of Hyper Engine, LLC; correct?

A   Right.  I said there was no profits.

Q   So you nor your husband ever received profit participation from Hyper Engine, LLC; correct?

A   Correct.

Q   Okay.  Understood.

We're almost done and we'll break for lunch. And just in respect to Exhibit 8, I just want to confirm that at this time this was your email that you were using, roxanne@hiddenempirefilmgroup.com?

A   Yes.

Q   And you recognize Mr. Fry's email cfry@frylawcorporation.com?

A   Yeah.  Yes.

Q   Was Mr. Taylor ever -- if you know, was Mr. Taylor ever aware that there were variations of

Page 113

an operating agreement for Hyper Engine, LLC?

A    I'm not sure if he was aware.  You would have to ask him that.

Q    And even after the bank account for Hyper Engine, LLC was opened, did Hyper Engine, LLC circulate another variation of the operating agreement?

A    I don't recall what was ever circulated and not.

Q    And I recall looking at one of the variations of the operating agreement that Aone, I believe, was listed as a 16.66 percent owner.  Do you recall when we looked at that earlier today?

A    Yes, I do.

Q    Was there any reason why 16.66 turned into 33.33 percent?

A    I'm assuming from a conversation that we had.

Q    Who had this conversation?

A    It would have been with Darrick.

Q    Okay.  So you and Mr. Taylor would have had this conversation with Mr. Angelone?

A    Either together or separately, yes.  It would -- it came from somewhere.

Q    Did you ever -- did you and Mr. Taylor ever agree that Mr. Angelone would receive 33.33 percent

Page 114

of Hyper Engine, LLC?

A    Nothing was ever agreed.

Q    The same question as to the operating agreement where he was to receive 16.66 percent of Hyper Engine, LLC.

A    Right.  Nothing was ever agreed.

Q    Okay.  Did -- and you're -- based on your personal knowledge, do you recall Mr. Angelone being -- having an understanding that he was a membership holder of Hyper Engine, LLC?

MR. NEWELL:  Objection.  Calls for speculation.

THE WITNESS:  Well, he was never a membership holder because we could never come to terms on what that would look like, but there were several conversations trying to figure out a world for that.

BY MR. FOX:

Q    Was he -- was Mr. Angelone ever -- actually, did you ever promise Mr. Angelone an equity interest in Hyper Engine, LLC if he performed certain services on behalf of Hyper Engine, LLC?

A    Nothing was promised and nothing was ever agreed to because we could not come to terms.

Q    Do you know if Mr. Taylor ever agreed to provide Mr. Angelone an ownership interest in Hyper

Page 115

Engine, LLC for services that Mr. Angelone was to provide to Hyper Engine?

A   I cannot answer for Mr. Taylor.  You need to ask him if he ever did that.

Q   So you don't recall.

MR. NEWELL:  Objection.

THE WITNESS:  I'm not --

MR. NEWELL:  Misstates testimony.

THE WITNESS:  -- Mr. Taylor.

BY MR. FOX:

Q   Well, you don't -- okay.  It's okay.  You don't know; correct?

A   I don't know, yeah.

Q   Perfect.  In respect to these conversations with Mr. Angelone in respect to equity consideration in Hyper Engine, LLC, do you recall what types of services Mr. Angelone was going to provide to Hyper Engine, LLC in exchange for this ownership interest?

A   It would be the same exact services that he was already performing as a vendor.

Q   And was the idea that he would no longer bill for those types of services and that he would be in essence working for equity?

A   I don't remember.  I'm sure it was discussed. I don't remember what -- if he would still be paid

or not.  Usually you're not, but I don't remember what it was in exchange for.  There were several conversations, and nothing was ever formalized.

Q   Okay.  And did he continue to provide those same services to Hyper Engine, LLC after the time in which you guys were discussing an equity position for Mr. Angelone at Hyper Engine, LLC?

A   At times.  There was limited work that went through Hyper Engine.  This was limited.

Q   And for the limited work that he did, did he bill Hyper Engine, LLC for that limited work that he provided?

A   If -- yes, he billed Hyper Engine along with every other entity that he was doing work for.

Q   Was there ever an occasion where he provided, like you said, limited services to Hyper Engine, LLC where he wasn't paid for those services?

A   Everything was paid.

Q   Okay.  And can you tell me why an agreement was never reached in respect to Hyper Engine, LLC's proposal, if you will, in regards to providing equity to Mr. Angelone in exchange for services?

A   No.

Q   Did you have any issues with Mr. Angelone at this time, professionally?

Page 117

MR. NEWELL:  Objection.  Vague as to issues.

THE WITNESS:  Which time?

BY MR. FOX:

Q   Did you -- around 2019, during the time that the bank account was opened, did you have any reason to believe that Mr. Angelone wasn't capable, maybe professionally, for being able to provide these continued services to Hyper Engine, LLC?

A   Not that I'm aware of.

Q   Did you have any personal issues with Mr. Angelone, maybe his character, like he wasn't honest or he wasn't hardworking, more personal issues as to Mr. Angelone as to why you guys did not finalize this agreement with -- I'm sorry, this proposal with Hyper Engine and Mr. Angelone?

A   No comment.

Q   So you can't recall why --

MR. NEWELL:  Objection.  Misstates testimony.

BY MR. FOX:

Q   Can you recall why -- any reason why the agreement wasn't formalized?

A   No.

Q   And based on -- I'm almost finished here. Based on the variations of the operating agreement for Hyper Engine, LLC, did you ever formulate an

Page 118

understanding of how profits would be allocated on behalf of Hidden Empire -- I'm sorry, Hyper Engine, LLC?

A    Say that again.

Q    How do you -- and maybe you and Mr. Taylor. How did you determine -- I'm sorry. Did you formulate any understanding as to how profits would be allocated on behalf of Hyper Engine, LLC, if there were profits?

MR. NEWELL:  Vague as to -- objection. Vague as to time.

BY MR. FOX:

Q    After the bank account was opened.

A    There was an operating agreement before Angelone. So I'm sure it was identified in there.

Q    And did -- was Hyper Engine, LLC ever capitalized by a third party? If you understand that question.

A    I don't.

Q    Did any investor or did either you or Mr. Taylor ever put in any of your own monies to help fund the company, the startup of the company?

A    Yes, probably, from Hidden Empire. But there's no third-party investor.

Q    Do you remember, sitting here today, how much

money Hidden Empire gave to Hyper Engine, LLC to help start the business?

A   I don't.  The business never really started.  It was -- it was really just a shell to try to create a marketing arm under our brand for our existing projects.

Q   I think -- I don't -- did Hyper Engine, LLC ever have any revenue, revenues at any time?

A   No.  It was -- it was all account based for the minimal projects that went through there.

Q   Do you know if there was ever a business plan for Hyper Engine, LLC?

A   I don't think so.

MR. FOX:  Okay.  Lunch break?  Lunch break?

THE WITNESS:  Whenever you're ready.

MR. NEWELL:  Yes.

THE VIDEOGRAPHER:  Okay.  We are going off the record.  This is the end of media unit No. 3.  Time is 12:45 p.m.

(Lunch recess.)

(Ms. Calin not present after lunch recess.)

THE VIDEOGRAPHER:  We are back on the record.  This is the beginning of media unit No. 4.  Time is 2:00 p.m.

Counsel, you may proceed.

Page 120

MR. FOX:  Thank you.

Q   Roxanne, thank you.  Hope you had a nice lunch.  We're going to have you look at what is labeled Exhibit 9.

(Exhibit 9 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   And I'll represent to you that this is another operating agreement of Hyper Engine, LLC. So if you could please just review this document before I ask you a question.

Okay.  You've had a chance to look at it?

A   Yeah.

Q   Do you remember this document?

A   It looks like it's regarding the Chris Fry email.  It's the same exact breakdown.

Q   Meaning the ownership breakdown between the parties?

A   Yeah.

Q   And do you know -- actually, looking at the very last page of the document, do you observe the signature above your husband's name?

A   Did I insert the signature?

Q   No.  I just said do you observe your husband's.

Page 121

A    Yes, I see it.

Q    Is that his signature on the document?

A    Yes.

Q    And going back or looking at that last page --

Bless you.

-- what is the date of this agreement?

A    December 1st, 2019.

Q    Have you ever seen this document before today?

A    I'm sure I have.

Q    With the signature?

A    No, not with the signature.  Nothing was ever executed.

Q    But you did signify that that was your husband's signature; correct?

A    I don't know that he signed this.  I signify that that's what his signature looks like, yes.

Q    Okay.  Okay.  So you never saw your husband sign this document.

A    No.

Q    Okay.  Now, looking at this agreement, besides the change in ownership breakdown, is there anything else that looks materially different to you than what was in the operating agreement that I

Page 122

showed you earlier today from 2018?

MR. NEWELL:  Can you give that back to her so she can compare them?

MR. FOX:  Yeah.  Yeah.  That was -- I think it was 8.

MR. ANGELONE:  5.

MR. FOX:  5.

MR. ANGELONE: 4.

MR. FOX:  4.

Q   Give you a copy.

A   Just so you know, it's going to take me a while to compare --

Q   That's okay.

A   -- two documents --

Q   That's okay.

A   -- to say -- I mean they're two totally different.

Q   Here we go.  Here's a copy.  Take your time.

A   So you want me to walk through and see what's different page by page.

Q   Yeah.  Just material -- material changes. Nothing -- I mean if there's like a change in the paragraph number, that doesn't matter.  Just if you see there's material differences.  Like you already said, there was a change in ownership percentage.

Page 123

To me that's material.

A   Yeah, I didn't say there was a change.  I just said this looks like it's in response to Chris Fry's email.

Q   Okay.

A   So --

Yeah, the documents are two totally different documents.  So where would you like to start because from paragraph to paragraph they're very different.

Q   Well, let's look at page 3 of the --

A   Which one?

Q   -- 2019 operating agreement.  If you look at the paragraph at the very bottom.

A   Which one?

Q   It's that one.

A   Okay.

Q   Yes.  It's --

A   Page 3?

Q   Yep, page 3, paragraph 2.07.  "No member shall receive a base salary for services rendered to or in the company business."

A   Okay.

Q   Do you recollect that being a term in the operating agreement that Mr. Fry prepared?

A   No.

Page 124

Q   Did you ever ask him to include that language in the operating agreement for 2019?

A   I believe it was in that email, but I'd have to reference it.

Q   And if you look at the page following that, there's a paragraph 2.08 that deals with draws.

A   Uh-huh.

Q   Do you remember that language being included in this operating agreement?

A   I don't remember any of the language included in the operating agreement.  It's clear that this was generated from the email.  It was never finalized.

Q   Do you remember -- do you remember ever instructing Mr. Fry as to conditions regarding salaries or draws in respect to the 2019 operating agreement?

A   I don't.  But if you want to give me that email back, then I can tell you what it says.  Or you could just reference that, and it says it in there.

Q   It was Exhibit 8.  Here, the very -- the second -- or the first page of the email.

A   Yeah.  So -- so to your answer, whatever's in here was the context of, I'm sure, where the base of

Page 125

it came from.  And then everything filling in the blank, I'm sure he's guessing until it was officially approved and signed off on.

Q    Okay.  But it's your position that this was never signed off; correct?

A    It wasn't, yeah.

Q    Was it ever approved?

A    Nope.

Q    Was there any reason, even after this time frame, that an operating agreement was never approved or finalized?

MR. NEWELL:  Objection.  Misstates testimony, assumes facts not in evidence.

You can answer.

THE WITNESS:  Yeah, there was an agreement before Darrick that was approved and signed off for Deon, but nothing for Darrick.

BY MR. FOX:

Q    Okay.  There was a -- when do you believe that the original operating agreement was prepared for --

A    When everything was set up.

Q    Do you have a copy of that operating agreement?

A    No.

Page 126

Q   And you haven't produced a copy of that operating agreement to date; correct?

A   I do not have any in my emails.  So --

Q   Did you ever call the bank to ask them if they had a copy?

A   The banker never asked for a copy, and they never ask for copies when you're setting up a bank account.

Q   But the question is did you -- yes or no, did you ever call the bank and ask them for a copy or if they had a copy of the operating agreement for Hyper Engine.

A   I never gave them a copy.  So, no, I would not call them and ask them for a copy of something that they never asked for and received.

Q   You could have -- you could have just said no.

A   And I could just say exactly what I'm saying too.

Q   We'll move on.

When you instructed Mr. Fry about the conditions that you wanted in this operating agreement, did you receive instruction from Mr. Taylor as to what to include in the instruction to Mr. Fry?

Page 127

A    I don't recall.  This would have been a conversation that we would have had, I'm assuming, on the starting framework of something.

Q    Besides Mr. Angelone and your husband, was there anyone else that was -- and besides Mr. Fry, was there anyone else that was party to the discussions about having Mr. Angelone involved in Hyper Engine from a partnership perspective?

A    Quincy Newell was in those conversations.

Q    Anyone else that you can recall?

A    Not directly with Darrick that I can recall, no.  But I don't --

(Mr. Calin rejoined the proceedings.)

BY MR. FOX:

Q    Was Mr. Taylor always a managing member of Hyper Engine, LLC from its onset?

A    Yes.

Q    Do you know if this operating agreement from Mr. Fry was ever sent to Darrick Angelone directly?

A    I don't know.  I don't think anything was circulated, but I don't remember.

Q    Do you know if Velma Sykes ever sent this operating agreement version to Darrick?

A    I don't, no.

Q    And even -- I know you mentioned the original

Page 128

operating agreement, and then we have these variations in 2018 and 2019.  Was there ever another operating agreement after all of this that was finalized by Hyper Engine, LLC?

A    There was never any operating agreement finalized with Darrick Angelone.  The only operating agreement was the original one from Deon.

Q    So was there ever -- let's put it this way. Was there ever -- after the 2019 operating agreement draft that we're looking at here today, was there ever another draft operating agreement created for Hyper Engine, LLC?

A    Not that I know of.

Q    Okay.  Perfect.

Was it your understanding that no salaries were to be paid to managing members of Hyper Engine, LLC at the time that you sent this email to Mr. Fry?

A    It doesn't say that.

MR. FOX:  I'll go to Exhibit No. 42.

(Exhibit 42 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    And I'll represent to you, Roxanne, that these are management report/financial summary documentation that we received from Barbara Campbell

Page 129

pursuant to a subpoena for documents that she received from us.

A    Okay.

Q    If you can just thumb through it to see if you -- or just for review.  Let me know when you're finished.

A    Yeah, I don't know what I'm reviewing.  So --

Q    So unfortunately, the pages aren't numbered, but if you -- you can thumb through it, it would be the third page, which at the top says, "Executive Summary, Hyper Engine, LLC, for the year ended December 31st, 2020.

A    My pages are numbered, but what does the top say?

Q    It would be the third -- the actual third page, third page following the Exhibit 20 -- I'm sorry, Exhibit 42 page.

A    Okay.

MR. NEWELL:  The page that says 3 of 10 on the bottom?

THE WITNESS:  3 or 10?

MR. FOX:  It says page 2 -- I'm sorry, it's actually 3 of 10, yes.

MR. NEWELL:  Yes.

THE WITNESS:  Yes.

Page 130

BY MR. FOX:

Q    Okay.  You're there.  Okay.  Great.

So do you recall receiving this document from Barbara Campbell?

A    No.

Q    Did you have Barbara Campbell or one of the CPAs prepare these executive summary and/or management reports on behalf of Hyper Engine?

A    Uh-uh.  No.

Q    Did anyone else, if you know, prepare profit and loss statements on behalf of Hyper Engine, LLC?

A    I would assume if they were filing taxes, but I don't know what documents are needed for the tax returns.

Q    Okay.  So if anyone would prepare -- did Hyper Engine ever prepare profit and loss statements at any time?

A    I would assume, but I don't know.  I don't prepare any of those.

Q    Okay.  And who was the CPA for Hyper Engine, LLC?

A    I believe it was Perry at the time.

Q    And I think --

A    Avaunt.  Sorry, Avaunt.

Q    If you look at the -- maybe a quarter down

Page 131

from the top of the page where it says profitability income.

A   Uh-huh.

Q   And if you look at 2019, it shows $1,075,000. Do you see that?

A   I do.

Q   Does that refresh your recollection as to whether Hyper Engine, LLC had revenue in 2019?

A   What are you considering revenue?  Money came into the account.

Q   Okay.

A   Yeah.

Q   And was the money from -- derived from services that Hyper Engine, LLC provided?

A   Everything was derived from service accounts that we created.

Q   Okay.  And for 2020 the revenue, or we'll call it income, is $402,106.  Do you see that?

A   I do.

Q   Does that refresh your recollection as to Hyper Engine, LLC receiving income in 2020?

A   Yeah.  I'm reading it off of what you've submitted.  So I don't know how much was come in and out other than just looking at this paper.  Yeah.

Q   So you don't remember what the revenue was --

Page 132

A    No.

Q    -- for 2020 or 2021 for Hyper Engine?

A    No.  Not at all.

Q    Okay.  Then if you could turn to page 5 of 10.

A    I'm there.

Q    I see towards the middle of the page where it says line item 6950, it says charitable giving.

A    Yes, I see it.

Q    And I see the amount of $25,411.  Do you recall Hyper Engine, LLC making any sort of charitable gift in 2019 for $25,411?

A    It's there.  I've never seen this.  I never approved this, but we do a lot of charitable work.  So it's highly possible it's accurate.

Q    And as far as charity work -- you used the word work -- do you, your husband or any of the entities that we've discussed today, do they actually give monies to any charities for charitable contribution?

A    Yes.

Q    What charities have you given money to?

A    I would have to find the list of it.

Q    Any names come to you?

A    No.  It's been many organi- -- it's been --

Page 133

we give money all the time to people.

Q   The Red Cross?

A   No.  I'll have to give -- I'll have to look it up and give it to you.  I'm not going to sit here and pretend to --

Q   Okay.

Felton, do you mind if we leave some blanks in the depo transcript?

MR. NEWELL:  No.

MR. FOX:  Okay.  Thank you.

MR. NEWELL:  I don't mind, but we're not going to provide information.  This is an opportunity to ask her questions.  If she can't recall, she can't recall.

MR. FOX:  Well, she said she can find the information.

MR. NEWELL:  She has the information someplace else.  She doesn't have it in her head. Deposition is her giving her testimony about what she is aware of at this moment.

MR. FOX:  All right.  You made the record.

Q   Below that is -- you'll see line item 7506 for automobile expenses, $400 for 2020.  Do you see that?

A   I see it.

Page 134

Q   And do you recollect Hyper Engine, LLC providing any sort of automotive expense or payment for any of -- your vehicle or Mr. Taylor's vehicle for Hyper Engine, LLC?

A   I don't know what any of this is for.  So I've never seen this.  It was never approved by me. I don't know where these numbers came from.  So I can't speak to the dollar figure within these accounts of what it represented.

Q   Do you recollect Hyper Engine, LLC paying for any of your vehicle's expenses?

A   Maybe gas.  I don't -- no.  I don't -- I don't know.

Q   Okay.  What about for Mr. Taylor?  Do you know --

A   I can't speak for Mr. Taylor.

Q   Who was responsible for Hyper Engine, LLC to manage the accounting for the business?

A   I believe it was Avaunt.

Q   What about managing the day-to-day finances of the company?

A   It looks like Barbara was part of this.  So between Barbara and Avaunt.

Q   Was there anyone from Hyper Engine, LLC who was participating in the daily management of the

Page 135

finances for the company?

A   No.

Q   Then if you could turn to the next page, please. It's page 6 of 10. If you look at line item 3100, it says owner's draw.

A   Uh-huh.

Q   Do you recall Hyper Engine, LLC paying out an owner's draw in 2019?

A   It says that. But, yes, we received fees for the accounts that we brought into the company.

Q   Okay.

A   Yeah.

Q   And then same question for 2020.

A   Same answer. We received fees for the services and accounts that we brought in.

Q   Okay. Thank you.

Then if you can turn to 8 of 10, please. It's the same question as far as owner draw for 2020. Do you recall Hyper Engine, LLC providing a draw to either you or your husband in 2020?

A   It's listed here. So, again, Barbara's not a CPA. So I don't know where this came from, how she pulled it. It was never approved or verified.

Q   Okay. But do you remember -- it sounds like you remembered that the company paid you and your

Page 136

husband for services for the previous years that we just discussed.  But I'm asking, for December, 2020 do you recall receiving draw for services?

    A    I don't remember the dates when we received it.  All I can do is look at this paper and confirm what I'm looking at.

    Q    Okay.  And then, do you recall the exact revenues of Hyper Engine, LLC from 2019 through 2021?

    A    No.

    Q    Did Hyper Engine, LLC have or did it pay out any payroll expense, if you recall?

    A    No.

    Q    Any labor that Hyper Engine, LLC utilized other than you and your husband would have all been -- I think you mentioned work for hire -- third party --

    A    Every -- yeah, there was no one working for Hyper Engine.  They were all vendors and subcontractors or people that were already working in Hidden Empire.  There was no official company structure or organization set up for it.

    Q    Okay.  Understood.  There's no page number for this document, but if you go -- working backwards it would be 1, 2, 3, 4, 5, 6, 7, 8, 9 --

Page 137

it's a -- working backwards, it's a document called balance sheet Hyper Engine, LLC as of December 31st, 2021.

A    Okay.

Q    If you can -- I don't know if that's --

A    Yeah.

Q    So looking down towards the -- about a quarter down from the top of the page, I see a line item, fixed assets.  Did Hyper Engine, LLC have any assets?

A    I'm not sure.

Q    Did Hyper Engine, LLC own any vehicles?

A    I believe the Tesla was purchased under Hyper Engine.

Q    What about the Mercedes, the down payment for the Mercedes lease?

A    I don't know why it would have come from Hyper Engine, but I don't remember.

Q    And do you recollect -- and I see this number $117,152.03, do you recollect Hyper Engine, LLC paying that amount for this Tesla vehicle in the past?

A    I don't.

Q    But you said a Tesla was purchased.  So was it -- I mean there obvi- -- what type of Tesla was

Page 138

it?

A    I don't know.  You'll have to ask Deon.

Q    Did it look like an egg?  Did the Tesla --

A    I told you earlier, it was a car.  I don't know what the model is.  I don't know what the make is.

Q    Was it a four-door?

A    Yes, I think so.

Q    Okay.  Now, was Hyper Engine, LLC paying money to Hidden Empire Films, LLC?

A    I don't remember if it paid.

Q    Would there be a reason why Hyper Engine, LLC would pay money to Hidden Empire Films, LLC?

A    Other than for staff, would be for staff if that was --

Q    For staffing?

A    Yeah.

Q    Okay.  Understood.

Now, in respect to Hyper Engine, LLC, do you recall receiving -- we talked about '19, 2019, 2020, 2021.  But do you recall Hyper Engine, LLC paying either you or your husband a draw for 2022 or 2023?

A    I don't, but could be.  I have no idea.

Q    Okay.  Now, as far as Hyper Engine, LLC, I understand you had -- I think you mentioned earlier

Page 139

that it really -- I don't -- actually, strike that.

As far as Hyper Engine, LLC, did it ever sign contracts with third parties to provide marketing services?

A    I believe so, yeah.

Q    Do you remember who those contracts were with?

A    I don't exactly, but I believe maybe one of the movies, but I don't remember exactly which -- which entities, like to be for certain.

Q    In respect to these third-party contracts for services from Hyper Engine, LLC, do you recall any -- any of these contracts with these third parties providing actual revenue to Hyper Engine, LLC?

A    Revenue meaning like an investment or --

Q    No.  Just sales, monies -- just say money, they paid for services.

A    No.  I don't understand the question.

Q    So did a third party ever hire Hyper Engine, LLC to do certain marketing services in exchange for compensation?

A    For them getting compensation or for us getting compensation?

Q    No.  For Hyper Engine to receive compensation

Page 140

for marketing services.

A    Yes.  Hyper Engine performed marketing services for third parties.  Is that what you're asking?

Q    Yes.  Thank you.

A    Okay.

Q    And how much money do you think Hyper Engine, LLC generated in total sales revenue, if you can give me an approximation?

A    It looks like it's here, if this is accurate. So which year are you looking at?  This is from an accounting clerk.  So I'm not sure how accurate it is.  But if you want to ask me, I can reference on here.

Q    Yeah.  What does it say on that document?

A    For which year?

Q    For 2022.  Is it there?  Or 20 --

A    There is no 2022.

Q    2021?

A    This is '20 and 2021.

Q    Okay.  How about for those two years?

A    What are you -- which -- what's the specific question?  How much came into the account?

Q    Yeah.

A    Okay.  I'm looking at the income statement.

Page 141

So -- which says the year ending 12/31/2021.  2020 says 402,106, and 2021 says 824,240.

Q   Okay.  So moving on, if you go again to the last page and count backward to the -- let's see 1, 2 3, 4, 5 -- the fifth to last page.  Sorry I don't have -- I don't have this organized better.  The document says income statement Hyper Engine, LLC for the year ending December 31st, 2023.  I believe you have it.

A   I see it, yeah.

Q   So I see for -- to the far right, sales $660,010 for 2022.  Does that refresh your recollection as to Hyper Engine's income that particular year?

A   It's on the paper.

Q   Then if you go down towards the middle of the page, you'll see line item 7800.

A   7800.

Q   And where it says accounting and consulting.

A   Yes.

Q   And I see the amount of $901,000.

A   Yes.

Q   Do you recall what that was for?

A   Unfortunately, like I said earlier, without some sort of general ledger, I don't know what any

Page 142

of these numbers represent 'cause this is pulling from somewhere.

Q   And when Barbara or any of these other CPAs assisted you with, I'm assuming, preparing these profit and loss statements in order to prepare your corporate tax returns, who from Hyper Engine, LLC communicated with the accountant or the bookkeeper to help finalize these documents?

A   I never asked her to do these documents. She's not a CPA.  I dealt with Avaunt.  So if they asked her to do this, then I wasn't a part of that conversation.

Q   So were you the person that communicated with Avaunt to finalize the records so they could file tax returns each year?

A   Like what?  What records?

Q   Well, I'm saying were you the person, were you the liaison between Hyper Engine, LLC and Avaunt to help the company get its tax returns complete or filed -- prepared, filed, completed?

A   They -- sorry.  They prepared all the tax returns, and then I would just sign off on what they presented to me.

Q   But would they ask you for financial documentation to back up certain information?

Page 143

A    Yeah.  They usually -- you usually have to provide, if they ask, whatever backup or housekeeping docs to back up the details.

Q    Understood.  And so -- and you'd give them bank statements; correct?

A    If they asked, yeah.

Q    And you were the only person who did that on behalf of Hyper Engine, LLC; correct?

A    Yes.

Q    Okay.  Got it.  Thank you.

Did -- at some point did you close the business account for Hyper Engine, LLC?

A    With who?

Q    With the Secretary of State.

A    I don't recall closing it.

Q    Did you ever close the business Hyper Engine, LLC?

A    The what?  The LLC?

Q    Yeah.  Did you ever just shut down the business?  I'm not talking about the LLC and like dissolving the LLC.  This is just did you close the business?  Did you stop doing business as Hyper Engine, LLC?

A    Yes.

Q    Okay.  Great.  Do you remember when that was?

Page 144

A   Several years ago.

Q   What was the reason for that?

A   Because there is no business and because of this situation of what's going on right now.

Q   Now, did -- after that point that you stopped using Hyper Engine, LLC, did either you or your husband provide services that were similar to the services of Hyper Engine, LLC to a third party?

A   Under Hyper Engine?

Q   Under Hidden Empire Film Group or Hidden Empire Sports, any other entity.

A   We provide services before and after and during, yeah.  We --

Q   And that would --

A   Yeah, that's our business, yeah.

Q   Okay.  And that would include social media, marketing, et cetera, as an example?

A   Of what?  Like performing those functions?

Q   Yeah, the services that you would provide to third parties.

A   Not to third parties.  You got to understand, all of these parties are our films and our projects. So we were providing services for our own company's success, yes.

Q   Okay.  So it was in-house at that point.

Page 145

A    It was in-house the whole entire time except a few projects that we brought in outside of our movies.

Q    Did you consider Hyper Engine, LLC to be in-house?

A    Yes.

Q    Now, on the very last page of this document, you'll see line No. 2850, loan to Forever Young Enterprises, LLC.  Do you see that?

A    I do.

Q    What is Forever Young Enterprises, LLC?

A    That's Omar Joseph's loan-out.

Q    Who is Omar Joseph?

A    He works for the company.

Q    Which company?

A    Hidden Empire.

Q    What does he do?

A    He's president of production and music.

Q    What was his position back in 2022?

A    Probably around -- along the same lines.

Q    And this loan came from Hyper Engine, LLC; correct?

A    That's what it says.

Q    Do you know if he ever repaid this loan to Hyper Engine, LLC?

Page 146

A    I don't.

Q    Do you know if the loan is still outstanding?

A    I -- I don't.

Q    And then below that I see 3100 owner's draw, $5.

A    3100.  Negative $5, is that what you're looking at?

Q    Yeah.  I'm assuming this is when you closed the business down.  I can --

A    I don't know.

Q    That's fine.

A    Yeah.

MR. FOX:  I think we're on Exhibit 10.

THE WITNESS:  Are we done with this?

MR. FOX:  Yeah.

Q    Besides -- I asked you about a PPP loan and an SBA loan.  Did Hyper Engine, LLC ever apply for a business loan separate from that?

A    No.  Not that I know of.

(Exhibit 10 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    If you can take a look at this email chain, and then I can ask you some questions about it.

A    Okay.  I think I'm ready.  It's very hard to

Page 147

follow 'cause the dates don't go in order.  So it's
not chronologically.  So as it's stapled, it jumps
around.

    Q   I think the -- I mean the question I have
just first off is very simple.  Do you recall this
email exchange between you and Mr. Angelone?

    A   Which one?

    Q   Well, we look at the first page.

    A   Okay.

    Q   We have -- there's an email from you to
Mr. Angelone dated December 10th, 2014 at 4:49 p.m.
where you say, "I know.  So weird.  I just stopped
receiving emails one day, and I called and they told
B it was canceled months ago and someone else has
it.  They apologized.  Thanks, D."

        Do you remember sending that email to
Darrick?

    A   Is this for -- what is this for?  Like the
emails or --

    Q   Yeah.  Did you learn at some point that
Hidden Empire Film Group.com had expired or been
transferred?

    A   Yes, it did expire or got trans- -- something
happened, yeah.  Definitely, I remember that.

    Q   Does that help recollect your memory

regarding these emails?

A    Yeah.  I mean if that's what this is about, if that's -- if it's about the website.  Let me go back.

Yeah.  So it -- yeah, this is about the website when looking at the prior pages.

Q    Okay.  And my next question is, if you recall, what steps did you take upon realizing that the domain had lapsed?  What did you do to try to fix this situation?

A    It looks like I tried to get it back and figure out who it was.  I don't remember the steps.  It was --

Q    Did you ask --

A    -- 2014.  So I don't know what my steps were.

Q    Do you recall asking Mr. Angelone for assistance to help you?

A    In the email it says if he can dig up -- what did I just see?  So I can't -- I can't really tell.  It just says, "I wanted to check in with you see if you can send me the latest version of the" -- and then there's a page or something missing 'cause it doesn't complete it.

And it looks like he responded, "File should be on HEFG.com."  But I don't know what this is all

in reference from 'cause there's like stuff missing in between those times.

Q   That's fair.  And you -- as long as you -- and the question was if you recollect email communication with Mr. Angelone --

A   Yeah.

Q   -- in respect to these emails.

Who was responsible for monitoring the domain renewals for the company at this time?

A   I would assume I was.  I was always --

Q   Did anyone ever assist you with domain renewals at Hidden Empire?

A   Darrick.  That was part of his --

Q   Okay.  And besides Darrick anyone else assist you?

A   Like I'm sure there was people along the way that would go secure stuff for us.  Like if I didn't have time, I would say, can you go reserve.

Q   Okay.

A   But again --

Q   Do you recall any of those people, the names of those people?

A   I don't.  It would have been assistance at the time, or it could have been Velma at the time. Anybody that could help out, if I wasn't free, I

Page 150

would ask.

Q   Would you be the person who'd receive the renewal notices from the do- -- the company that was holding the domain?

A   Yes.

Q   And just -- I don't remember if I asked you, but this was your gmail email address r-o-x-a-n-n-e-a-v-e-n-t @gmail.com?

A   Yes.

Q   Okay.  Thank you.  And do you still use that email to today?

A   I still have it, yeah.

Q   When did you start using that email address?

A   I don't know.  Years and years ago.

Q   Do you remember or have you produced any emails from this email address during the discovery in this court case?

A   I don't know.  You'd have to ask Felton.

Q   And in respect to those emails that we were just looking at, do you recall the domain that was lost?

A   I don't know that it was lost.  It looks like it expired.

Q   Or someone else acquired domain --

A   Correct.

Page 151

Q    -- when it was lost; correct?

A    From my recollection, yeah.

Q    Was someone able to reclaim the site, meaning the domain?

A    What do you mean?

Q    Well, did --

A    Anyone can register to get a site.

Q    Well, I think somebody -- someone ended up registering the same name; correct?

A    Yes.

Q    Did Mr. Angelone assist you in trying to reclaim that domain name?

A    I don't remember.  I just see that he looked up -- it's here on the first page that he looked up who registered it and what they registered.

Q    Okay.  Did you end up getting back the domain name?

A    Yes.

Q    And does that recollect or help you recollect whether Mr. Angelone helped you retrieve it?

A    It doesn't.  I don't --

Q    And do you know, did Mr. Angelone ever send you or Hidden Empire an invoice for services for helping retrieve the domain?

A    I'm sure he did.  He invoiced for everything.

Page 152

But I would have look at all of his invoices to say yes or no.

Q   When you lost the domain -- do you remember how long it was -- I don't say lost, but how long it was you were unable to use the domain?

A   I don't.

Q   Did it disrupt your business in any way?

A   I'm sure it did.

Q   Did it disrupt your email accounts?

A   Yes.  If the emails are connected to the domain, then I'm sure it would have.

Q   Did it affect your communications from a business perspective?

A   If I didn't have the email, then, yes, it would have.

Q   Were you using your gmail account at that time to communicate or to -- yeah, to communicate from a business standpoint?

A   Well, people often use that because I had it forwarded.  I had so I could just check one email.  So sometimes when I would reply, it would come from that email.  But I wasn't, like, in the business of using the gmail account.

Q   I see.  Would you say that lapses in record keeping or communication contributed to the domain's

Page 153

transfer?

A    Lapses in record keep- -- lapses of what, in record keeping of what?

Q    Well, I think you mentioned that you received renewal notices for domain --

A    I'm sure I would have, yeah.

Q    So if you received the -- just as an example, if you received the renewal and you left -- let's say you printed a copy of the email, 'cause I know that's how we usually receive those renewal notices, and you just left a copy on your desk and you just didn't get to it in a certain point, that's what I'm meaning.  That would be an example of lack of record keeping, if you will.

So do you -- do you owe any sort of -- I guess the question -- a better question is what do you owe the reason for the domain being transferred to a third party and then having to retrieve it?

A    I didn't transfer anything to a third party. So I don't --

Q    But the fact that it lapsed, if you will, and it ended up in a third person's hands, what do you attribute that to?  Was that Mr. Angelone's fault or was someone else's fault?

A    I don't know.

MR. NEWELL:  Objection.  Compound question.

You can answer.

THE WITNESS:  Yeah, I don't -- I don't remember what was happening at 2014 on what the background of why it lapsed or what happened.

BY MR. FOX:

Q   Okay.  Move on.  Exhibit 12.

(Exhibit 12 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   If you could review this exhibit, and then I'll follow up with some questions.  There are 1, 2 -- there's four pages to this document.

A   Is this supposed to be the same document, all the pages to this?

Q   Well, it's the same exhibit.  I'm not saying it's the same document.  It's --

A   Oh, these are all separate attachments.

Q   Yeah, it's all part of the same exhibit.

A   Okay.

Q   So I just want you to review each page.

A   Okay.

Okay.

Q   Okay.  Looking at the second page, which appears to be a deal memo, do you recall that

Page 155

document?

A    Yeah, it looks familiar.

Q    At the very -- do you recall signing this document?

A    Yes.

Q    And do you recall Mr. Angelone signing this document?

A    I -- his signature's on here.

Q    Did you ask Mr. Angelone to prepare his deal memo for this Meet The Blacks, LLC project?

A    I don't know if I asked him to do it.

Q    The following page lists services addendum for MTB Aone Marketing Services, and then the last page is a continuation of that document.  Do you see that handy?

A    These two separate documents you're talking about?

Q    Yes.  That's one document, the -- which --

A    Yes, I have these.

Q    Okay.  Do you recall ever seeing this document?

A    Yes.  It looks familiar.

Q    And in respect to -- my understanding is that that was the services addendum to the document that you said that you had signed that we looked at

Page 156

previously.

A    How is that possible if it's dated before this?

Q    I'm just asking the questions.  So --

A    So it's not an addendum to this because it's dated before.  So, no.

Q    Okay.

A    An addendum comes after an agreement is done.

Q    Did -- do you recall that document, though --

A    I recall this.  I recall seeing this.  It's not -- maybe it was part of an email.  I'm not sure.  But it's definitely not part of this because it was before this.

Q    Okay.  So but does the addendum document that you're looking at, does that spell out what Aone would be providing in respect to marketing services for the MTB project?

A    Yeah, it spells out, but I don't know -- yeah, it doesn't -- it's not part of this.  So I don't know what you're --

Q    Okay.  Were you involved in or participated in outlining or coming up with Mr. Angelone's deliverables for this project?

A    Yes.

Q    Do you know if there were any addendums or

Page 157

modifications or expansions in regard to the work that Aone Entertainment was going to provide in respect to Meet The Blacks project?

A    No.

Q    Looking at paragraph 4 on the document that's signed --

A    Yes.

Q    -- it says, "Relationship with the parties. For the purposes of this agreement, each party shall be and act as an independent contractor retaining the vested interest in their respective works.  No work will be considered for hire."  Do you see that?

A    I do.

Q    Was that your understanding as part of the -- of this particular agreement?

A    That what?  That no work is considered for hire?

Q    Yeah.

A    Like the social media work?

Q    Yeah.  Was paragraph 4, was that part of the agreement?  Like do you remember that language and was that part of this agreement?

A    I don't remember the language, but it's listed as part of the agreement that I signed off on.

Page 158

Q   And that was your understanding as to how --
as whether no work would be considered for hire;
correct?

MR. NEWELL:  Objection.  Calls for
speculation.

BY MR. FOX:

Q   Was there ever a modification to this
language, if you know?

A   Not that I'm aware of.  But I'm not quite
sure -- first of all, we're an entity.  So I'm not
part of an independent contractor.  This is a film
entity, and we're paying services.  So I'm not --

Q   And in respect to this transaction -- so Meet
The Blacks was retaining Aone Entertainment as an
independent contractor; correct?

A   Correct.

Q   To provide certain marketing services.

A   Correct.

Q   Okay.  Great.  And based on paragraph 4, it
would appear that -- it states that the independent
contractor would retain the vested interest in their
respective works.  So was it your understanding that
the work that Mr. Angelone would create would be --
would end up being his work?

A   Well, he didn't create any work.  All the

Page 159

assets came from the IP of the movie.  So nothing was created other than pulling from the actual movie an IP that was created by us.

Q   Okay.  So if there was anything that was created that wasn't pulling IP, would that work belong to Mr. Angelone based on this paragraph?

A   No.  'Cause you can't use someone's name or likeliness (sic) without approval that are in the movie.  You can't --

Q   And do you remember if back in 2016 were -- was Hidden Empire providing a W -- I'm sorry, a 1099 to Mr. Angelone for all of the services that he was rendering?

A   I'm sure they did.  You'd have to ask him that.

Q   Okay.  Was there any reason to treat Aone Entertainment as an employee or a joint venturer instead of an independent contractor?

A   No.

Q   Did you ever discuss or negotiate with Mr. Angelone in regards to the aspects of the marketing materials, social media content or other creative assets, being and remaining the property of Aone Entertainment?

A   Did I ask him -- sorry, say that again.

Page 160

Q   Did you ever discuss it?  Did you ever have discussions with Mr. Angelone in regards to the work that he was creating as an independent contractor, that his work would remain his property?

A   No.

Q   Did he ever tell you that?

A   No.

Q   In the clause that says "No work will be considered for hire," what's your understanding of that phrase?

A   I'm not quite sure what that means, honestly.

Q   You had said before -- I believe you used the words that Mr. Angelone or Aone was work for hire. So do you have any understanding of what work for hire means?

A   That you're hired to do work.

Q   Do you recall if your company's counsel or yourself or your husband tried to negotiate and change that provision in the agreement that dealt with work for hire or no work for hire?

A   I don't.  Yeah, I don't remember.

Q   Do you remember if anyone expressed any concern on Hidden Empire's behalf that the work that was being done by Aone Entertainment would be no work for hire?

Page 161

A    No.

MR. FOX:  Let's go to Exhibit 13.

(Exhibit 13 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    If you can take a look at Exhibit 13, and then after you're done I'll ask you a few questions.

A    Okay.

Q    Now, having a chance to review these emails, do you recollect ever seeing this email chain?

A    Vaguely, yeah.

Q    And was -- based on the communications between your husband and Mr. Angelone, did your husband ever indicate to anyone that he was looking to partner with Mr. Angelone?

A    I didn't see any emails of him and Deon.  I thought I just saw emails of him with Simone at Lions Gate.

Q    It's not so much the email.  It's just whether -- yeah, it's just whether did your husband ever indicate to anyone that he was looking to partner with Mr. Angelone?

A    On Hyper Engine?

Q    Yes.

A    You'd have to ask him that if he said that to

Page 162

anybody.

Q   Did you ever hear your husband ever mention to Mr. Angelone that he was looking to create a partnership with him?

A   Within our conversations --

Q   Yes, within Hyper Engine.

A   We've talked about it, Darrick and I.  So I don't know who he else spoke with it about.

Q   So your husband was also party to those discussions.

A   To which discussions?

Q   Regarding partnership with Mr. Angelone.

A   Some of them, yes.  Some of them were just Darrick and I.

Q   And as far as this proposed partnership, what were the -- what were the terms, if you will?  Like what do you remember about?  Like what was Darrick going to do?  What was Hyper Engine going to do? What were you -- what were you and your husband going to do?  Like what was -- what was Hyper Engine?

A   Hyper Engine was meant to be a marketing company for our films.  Hyper -- everything that we did we marketed on our own, along with a bunch of other vendors that the distributor either came from

Page 163

or what have you.  Darrick was doing a piece of the digital marketing for some of these projects, not the sole person, part of it.

Q   So if you guys normally did your own marketing, which it sounds like you did for Hidden Empire, before this time frame where Hyper Engine became a thought, why would you need Darrick's involvement with Hyper Engine if you were creating a subsidary -- or subsidy company to provide marketing services?

A   So Hidden Empire didn't provide the marketing for these individual entities.  We did our own personal marketing.  These distributors provided the marketing: radio, street teams, cable, media buys -- the list goes on and on of the marketing services that were provided from the distributors.  We just did our own added self-marketing on our own, and then he was a part of that piece.

Q   So what value was Mr. Angelone going to provide to this proposed partnership?

A   What he was doing.

Q   And so is the -- I think what I'm trying to understand -- bless you.

What I'm trying to understand is, conceptually, he would be providing digital

Page 164

marketing services, and in exchange he would be receiving equity in Hyper Engine, LLC so that Hyper Engine, LLC wouldn't have to pay him as a contractor for those services.

A    That might have been one of the discussions. There were several about how that relationship would operate.  I don't remember each thing of if he would get a payment still or not get a payment still.  So I don't -- I don't know what -- we never decided on anything firm of what that would look like.

Q    So just kind of an overall discussion, but nothing -- your testi- -- I think --

A    The idea -- yeah, the idea was, again, you know, when you try to run a company and start a company from conception, you hire different parties to perform those functions because you can't do them all on your own.  That's what the company's supposed to do.  So people of their different expertise come in and do those services.

So that's what his expertise was.  I produce. That's my expertise.  He was in digital, the digital world.  I don't know that he ever marketed anything in his life prior to us but --

Q    And thereafter, after the time that you had these discussions regarding this proposed

Page 165

partnership -- i.e, Hyper Engine, LLC -- after that, did Mr. Angelone provide digital marketing services on behalf of Hyper Engine, LLC?

A    They're all the same thing.  They're all -- they're all the same thing.

Q    So he would have -- he would have either provided it to Hyper Engine, LLC or Hidden Empire Film Group, LLC.  Is that what you mean?

A    Or Traffik, LLC or Meet The Blacks, LLC or Black -- all the names of the movies that I named originally.

Q    So that's fair.

A    Yeah.

Q    So he was continuing to provide various marketing services for different film projects for Hidden Film -- sorry, Hidden Empire Film Group; correct?

A    Hidden Empire was included, but there was several other LLCs included as well.

Q    Okay.  And for him in providing those services to those other entities --

A    Yes.

Q    -- did that have anything to do with Hyper Engine, LLC?

A    Unless it was billed to Hyper Engine, LLC.

Page 166

Yeah, whatever was billed to Hyper Engine was Hyper Engine.  Whatever was billed to Meet The Blacks was Meet the Blacks.  Whatever was billed to Hidden Empire was for Hidden Empire.

Q    Okay.  Understood.

And I look -- I'm looking at the bottom of page 1, and I see where I believe your husband on December 18, 2017 at 9:20 p.m., writes, "Looking to partner...need the real info. so please move forward with the meeting."  Do you recall a meeting between your husband and Mr. Angelone or yourself in regards to discussing this potential partnership?

A    This doesn't even say -- this email chain is about assets for Traffik.  So I don't know what "looking to partner" is referring to.  It looks like it's referring to a partnership with Kevin from above, but I -- I don't know what the intention here was.  I'm just going by the emails 'cause it says, "Do you envision a partner with Kevin's company?" So I'm assuming that's what it has to do with, but I don't really know.

Q    Who is Kevin?

A    I'm assuming it's Kevin Hart because it says Jeff and Code Black, but I don't know because it doesn't have a last name.  So I don't honestly know.

Page 167

MR. NEWELL:  When we get to a good place, can he take a five-minute break?

MR. FOX:  Yeah.

THE VIDEOGRAPHER:  Counsel, do you want to go off the record?

MR. FOX:  Sure.  Yeah, yeah.

THE VIDEOGRAPHER:  We're going off the record.  This is the end of media unit No. 4.  Time is 3:06 p.m.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record. This is the beginning of media unit No. 5.  Time is 3:15 p.m.

Counsel, you may proceed.

MR. FOX:  Thank you.

Q   Roxanne, if you -- we could continue to look at Exhibit 13, which is in front of you.  If you could look -- you have the first page turned up.

A   I do.

Q   Thank you.  So I just want you to look at -- towards the top of the page there's an email on December 18, 2017 at 9:35 p.m. from darrick@hiddenempirefilmgroup.com, where he states, "Let's talk through how you envision a partnership because Kevin's company is way different than what

Page 168

Jeff/CodeBlack/ignitioncreative do. like way different.  Don't sike yourself out, D, outside of literal creative department they've brought nothing to the table that can't be don't in-house.  What they turned in literally could and prob was used for every film they created a deck for.  Sent on the fly."

Did you receive that email from Mr. Angelone, if you recall?

A    It looks like it's just -- I don't know.  It looks like it's just Darrick and Deon.

Q    And above that there's an email, I believe from you, where it says -- I believe you said agreed.  Is that --

A    I don't know what I'm agreeing to.  Again, like I said earlier, there's clearly stuff missing from this because this was an email with Simone and Traffik promos.  And then all of a sudden from this thread it's talking about something totally different, which I'm assuming is something relating to maybe what Shane sent, but I don't have that context.  So I don't know what this is talking about.

Q    Okay.  That's fair.  The -- but from this partial email exchange, I know that you had -- I

Page 169

think you testified that the parties had discussed the potential of a partnership.  And so I see the word envision.  So to me that means -- in your opinion, does that mean the same thing to you when you see the word envision, where Darrick says I envision a partnership, was your understanding that this was a potential business relationship to be discussed?

A    This email or Hyper Engine?  I'm sorry, I'm confused.

Q    This -- this is as to Hyper Engine.

A    But this is not about Hyper Engine.

Q    But --

A    This is --

Q    Okay.  So were you going to -- was there going to be discussion about a partnership between Mr. Angelone and a third party dealing with Traffik?

A    I have no idea because there's not a complete -- I don't know what they're talking about.  From my understanding it says something about looking to partner, need real info so please forward at the meeting.  I don't know what this is in reference to.  I don't know if it's a project.  I don't know if it's a separate business.  I have no idea what this is in reference to answer this

Page 170

question.

Q   That's fair.  So -- and I just -- so I can just clarify, I just -- and I can't recall.  You said something about how you and Mr. Taylor had a meeting with Mr. Angelone in regard to discussing a potential partnership in regards to Empire -- I'm sorry, Hyper Engine, LLC; correct?

A   Yes.  We've had discussions with him about that.

Q   And how many -- were these meetings in person?  Were they by phone?

A   I think mostly on the phone.

Q   And how many meetings do you think that you had regarding this potential partnership?

A   Several.

Q   And how long -- how long of a time frame did this go on for, discussing potential partnership between Mr. Angelone and Hyper Engine, LLC?

A   It would go off and on because we couldn't come to a conclusion.  So he continued to operate as a vendor.  And then we would try again to try to get something, you know, working that --

Q   And was that -- was that in 2020?

A   I don't remember the dates of discussions or any of that.

Page 171

Q    Okay.  At some point following these meetings with Mr. Angelone, did you or Mr. Taylor instruct an attorney that provided services for Hidden -- I'm sorry, for Hidden Empire Film to prepare an operating agreement for Hyper Engine?

A    The Chris Fry email.

Q    Okay.  So that was after you began discussions with Mr. Angelone for the potential partnership creation.

A    Yes, I would assume that was from a conversation that we had.

Q    What about the 2018 operating agreement?

A    Same, I would assume that came from a conversation that we have.

Q    Did you have the conversation with Mr. Angelone before you created Hyper Engine, LLC?

A    About working with us on Hyper Engine or --

Q    Yeah.  What I mean is that did you begin discussions with Mr. Angelone about a potential partnership before you created the entity Hyper Engine, LLC?

A    I don't think so.  We had a marketing company prior to this.  So -- called Ether Marketing.  So this was just a new name that we were going with.  So it's all the same thing.  Again, it's all our

Page 172

projects and all of our ideas and all of our --

Q    Was Ether Marketing a corporation or LLC?

A    I believe it was an LLC.

Q    In California?

A    I think so.

Q    And where -- are you still using that entity?

A    Uh-uh.

THE REPORTER:  I'm sorry?

THE WITNESS:  No.  I'm sorry.

BY MR. FOX:

Q    Do you recall when you stopped using that entity?

A    No.

Q    Now, the digital marketing services that Mr. Angelone had provided to Hyper Engine, LLC or these other projects, were these things that you and Mr. Taylor used to do prior to Mr. Angelone -- prior to the discussions between you and Mr. Angelone about creating a partnership, i.e. Hyper Engine, LLC?

A    Not necessarily personally doing it.  We would hire third parties to do it.  And there was still other third parties at the same time that he was doing it as well doing the same thing.

Q    And how -- if -- strike that.

Page 173

From one particular film project, one of your film projects, how much money would you spend on marketing?

A    It depends on the project.

Q    Can you give me a range?

A    No.  And that comes from the distributor. So, no, I can't give you a range.  I can --

Q    More than a hundred thousand dollars for a particular film project?

A    Oh, I'm sure way over that.

Q    More than 200,000?

A    Yeah.

Q    More than 500,000?

A    Yeah, I'm sure.  It depends on the project, and I don't have access to those distributors' records on what they spent for digital marketing. So but I'm just guessing that it was --

Q    Okay.  So you --

A    -- millions of dollars.

Q    So the market- -- is -- did you differentiate between marketing and digital marketing, or was it all the same number?

A    It's all the same number.

Q    I see.  Okay.

A    And I don't -- I didn't dictate that.  That

Page 174

wasn't my job.  We licensed our films to the distributor, and they dictate it.

Q   What the marketing expense would be.

A   Yeah.

Q   Okay.  I see.  And what about documentaries, for example?  Did they have a lower number for marketing?

A   I have not release a documentary.

Q   What about live events?

A   What about them?

Q   Would you spend money on live event marketing?

A   It just depends.  On the LMAO, yes, it was -- you were selling tickets for a comedy show.  So you had to market it for people to know about it to buy the tickets.

Q   Do you remember what costs -- costs?

A   No.

Q   Besides the two operating agreements that we looked today, and then -- we looked at, and then the original operating agreement that you mentioned was signed when the company was first formed, were there any other documents that you can recall that would -- that formalized this potential partnership between Mr. Angelone, you and your husband, i.e.

Page 175

Hyper Engine, LLC?

A    There's no documents because we kept contracting him through Aone and paying him as a vendor.

Q    Okay.  Was the discussions regarding the potential partnership ever shelved?

A    Yeah.

Q    And why was it shelved?

A    Because we couldn't come to a resolution.

Q    What was the reason why you couldn't come up with a resolution?

A    We couldn't agree to the terms.

Q    And what were those?

A    I mean most recently is because of what he did to us which would never be a conversation again about, and that was the -- the departure of our relationship.

Q    Okay.  So -- and I know what you're talking about.  You have allegations against Mr. Angelone and Aone Entertainment about them allegedly deleting your Workspace account.  That's my understanding.  But --

A    Among others, yes.

Q    Okay.  Understood.  Prior to that what were the issues, the specific issues that prevented you

Page 176

and your husband from entering into a partnership agreement with Mr. Angelone for Hyper Engine, LLC?

A  You know, I don't know the specifics, but, you know -- I don't know what the specifics where we couldn't come to an agreement, but it's a lot to do with he's a major con artist.  He's a major fraud, and constant things would be exposed.

Q  Okay.  So you said con artist.  What gave you the impression that he was a con artist?

A  Google him.

Q  Do you remember specifically things that --

A  I mean he was -- he extorts people's business for money.

Q  Okay.  Can you give me an instance where he tried to extort --

A  Well, that's how we met him.  He did that. That's how we originally met him.

Q  And how did you meet him?

A  Well, I met him through Deon.  So I don't know how.  They reached out or connected some sort of way through a lawsuit with Jamie Foxx.

Q  So when you said extort people for money, do you have an example of specifically what he did to somebody?

A  There's plenty, if you just look him up.

Page 177

Q    But do you know -- in your mind, do you recollect some instance that led you to make this conclusion that he extorts people for money?

A    He's extorting us.

Q    Besides you guys.

A    Oh, besides us.  Okay.

Q    Yeah, is there another instance that you know of personally --

A    Kim Kardashian, Jamie Foxx.  I have to look it up.  It's been a while.

Q    But what --

A    But there's several people.  I've gotten emails from people -- I don't remember their names -- of him harassing them, stalking them, I mean --

Q    So what happened with Jamie Foxx?

A    What happened with what, him and Jamie Foxx?

Q    Yes.

A    I don't know what happened with him and Jamie Foxx.

Q    Okay.  What about Kim Kardashian?

A    I don't know what they did.  Like, I wasn't in the middle of it.  It was just in public record to read about what he had done.

Q    Okay.  So you don't know what he's

Page 178

specifically done to extort someone for money except you and your husband; correct?

A   Oh, well, he takes negative information about people and asks for money so it's not exposed, whether it's true or not.  He cuts and pastes different information, fabricates documents to make it look a certain way so he can then turn around and get money out of people.

Q   Okay.  Can you tell me about an instance where he did that?

A   I don't know the instances of the amounts and different things.  I just know that people have told me this.

Q   Okay.  And who's told you that?

A   Jamie has told me.

Q   Anyone else?

A   Other people that I don't want to disclose. Or I'm not going to disclose.

Q   When you said con artist, do you mean fraud, too, kind of one and the same, or are those different instances?

A   You could pick one.

Q   Okay.  Understood.

Can we look at 14, Exhibit 14.

(Exhibit 14 was marked for identification

Page 179

by the court reporter and is attached hereto.)

BY MR. FOX:

Q   If you can please review these pages, and then I'll ask you some questions.

A   Do we want to just go -- these are so many different email chains with different topics and date.  Do you want to just -- so I know what I'm --

Q   Yeah, we could do that.  We can do that.  So if you turn to not the first page, not the second page, but the third page.  There's an email from Darrick to Velma and you on February 24, 2018 at 2:32 p.m.  Do you see that?

A   Yes.

Q   And you see in the subject matter it says revised proposal.  Do you recall receiving this email from Mr. Angelone?

A   Sure.

Q   And you can see the highlighted portion towards the bottom where it says, "Ideally, my equity would be in Hyper Engine, our Hyper Engine, not Optimad's and the clients of this marketing company would be motivated seller, HEFG, Robert, et cetera, but I'm unsure if these products would be available."

Do you recall that language?

Page 180

A    I don't know what he's talking about.

Q    And then if you go to -- two more pages, and there's a page No. 1 at the bottom of the actual page, where it says at the top darrick@onchainmedia.com.  And then it says from Roxanne to Darrick -- there you go -- dated February 28, 2018.

Okay.  And then below that -- well, first of all, there's one email from you to Darrick, February 28, 2018.  Then there's one that's below that from Darrick where it says -- the paragraph that's highlighted, this is from Darrick -- "we should also set up LLCs as soon as possible.  I suggest we set up in a more tax friendly state.  California's not ideal for that and as we both have California LLCs, there are no issues with work dones in California, sent on the fly."

Do you remember receiving that from Darrick?

A    Sure, yeah.  My name's on it, but I don't know what this -- is this about Hyper Engine?  It looks like there's something here at the bottom, but I don't know what it is.

Q    And then your response to this email is "Got it.  Thanks D for hustling to get done.  Will look at first thing in the morning."  Was that your

Page 181

response to that email, if you recall?

A    Well, it doesn't look like it's in response to what's highlighted.  It looks like it's in response to whatever he's talking about as nearly completed and next he's going to set up a website.

Q    When did -- when did you first form the opinion that Mr. Angelone was a con artist or a fraud?

A    No comment.

Q    Okay.  Before 2020?

A    No comment.

Q    Before --

A    I'm not going to answer that question.  I'm just going to let you know right now.

MR. FOX:  Obviously, Felton, I'll just -- I'll preserve the record 'cause it's a critical question at this juncture.  And I --

THE WITNESS:  Save it for trial.

MR. FOX:  Okay.  Please, if I can.

The deponent is refusing to answer a question which we think is critical to this matter.  The deponent is not willing to answer these questions.  Felton, I don't know if you want to speak with her, or are you going to instruct her to not answer these questions?  'Cause I think we need to know from you

Page 182

what it is that you --

MR. NEWELL:  I'm not instructing her not to answer.

MR. FOX:  Okay.  So --

THE WITNESS:  I'm instructing you that I'm not answering, yeah.

MR. FOX:  Okay.

Q   So just for the record, so because you're refusing to answer these questions that -- and this is optional to us, we may have no choice but to seek judicial intervention to have these -- or to get an order from the judge to have you answer these questions.  Okay.

A   Understood.

Q   And with that risk is that we would seek our attorneys' fees and costs in having to bring a motion before the judge to have you -- to get an order to have you answer these questions.  You understand?

A   Understood.

Q   Okay.  Great.

One last question.  Did you learn that Mr. Angelone was a fraud and/or a con artist in 2017?

A   I am not answering any of these questions.

Page 183

Q    Okay.

A    As I just said.

Q    Okay.  That's fine.  Same instruction.

A    Same instruction.

Q    Okay.  And if you would look at the page or the following page at the very top.  It should have from Darrick Angelone, darrick@aone.la, dated March 1st, 2018.  Do you see that?

A    Yes.

Q    And this is -- okay.  Hold on.  If we go down towards the middle of the page, it says from Roxanne Avent, March 1st, 2018, to Darrick.  It says, "This shit is dope.  You did an incredible job putting this together.  I do think our influencers should be more diverse.  Also, should we add anything about brand integration using video marketing on these social platforms to dominate?  Roxanne."

Do you recall sending Darrick that message?

A    Sure.

Q    And at that time how did you feel about Mr. Angelone's work product?

A    I don't know what he's -- what this is about.

Q    But the question is how did you feel about his work product in March of 2018?

A    He was delivering on the services that he was

Page 184

asked to do.  Is that what you're asking?

Q   Yeah, were you happy with his services?

A   Yeah.

Q   Did Darrick ever prepare a business plan on behalf of Hyper Engine, LLC?

A   Not that I recall.

Q   Did he ever prepare an investor deck on behalf of Hyper Engine, LLC?

A   No.  I don't know why he would prepare an investor deck.

Q   Did he ever prepare any sort of business marketing plan on behalf of Hyper Engine, LLC?

A   Most likely, if it was a project that was contracted through them.  You should have that if there was.  I don't remember what -- but that's what you would typically do.

Q   And what was that report that he would prepare, specifically?

A   For which?

Q   For -- I was just asking if he prepared any sort of business marketing proposal on behalf -- on his -- or on your behalf or your company's behalf.

A   So what he would do is we would ask what -- we would request what is needed, and then he would present a proposal for those services.

Q   And going to the third to last page from the last page.  There's -- if you look at the very -- the bottom email, which is about a quarter down from the top of the page, it says, on March 6, 2018 at 8 -- I'm sorry, at 9:54 a.m., "Darrick Angelone wrote:  Good morning.  Please find the attached" -- I'm sorry, "Please find attached the payment invoice for February...per the last revised proposal.  For all intents and purpose, perhaps as consideration towards our joint venture 'Hyper Engine' we can drop the MTB balance we've been carrying.  And forgive the payment that would have been for services/costs incurred for January and prior.

"I am still confident I will recover damages from Jeff in that case, I would invest the costs incurred by HEFG for Traffik into hyper Engine. Regards, Darrick Angelone."

Do you recall him sending that email to either you or Velma or your husband?

A   Sure.

Q   And up above I believe -- this may be in response to that email -- you write shortly -- I mean six minutes later, "Got it.  We discussed yesterday payment processed today.  I'll let you know once complete.  Please clarify the 4,250."  Do

Page 186

you remember that response to Mr. Angelone?

A    Yeah.

Q    Now, did Mr. Angelone ever drop the MTB balance, if you recall?

A    No.

Q    Did he forgive -- did he at any time forgive any payment on behalf of Aone for any services provided?

A    No.

Q    Then if you'd turn to the second to last page at the very top -- I think you're on the correct page -- there's an email from Darrick, March 8, 2018 to you where it says, "For instance, I've never been an employee, and if the way forward with Hyper Engine has me as an employee of some division, this will not work for me.  Let's hammer this out.  Even a proposal so I know your position would be a good start.  Ideally given" -- i'm sorry, "and ideally, Glenn and my attorney can start discussions as soon as possible.  Sent on the fly."

Do you recall receiving that email?

A    Sure.

Q    And then I want to see if the -- if you sent this email on March 8th, 2018 at 8:37 a.m. just below that email.

Page 187

It says, "Roxanne@hiddenempirefilmgroup.com wrote, okay.  Got it.  I think we should talk.  Hyper Engine is the arm of the HEFG."  F, it says -- I think it --

A   Ether.

Q   "Ether Marketing.  We set up all of this to be bigger.  Roxanne."  Do you remember sending that to Mr. Angelone?

A   Just looking at the paper, like, yeah, sure.

Q   And do you -- what is that -- what does that mean, "We set up all of this to be bigger"?

A   I have no idea what it means or -- I would have to see the chain to have the context of what we're talking about here.  But clearly it appears that it's another discussion about trying to figure out a path for us with Hyper Engine.

Q   And so it's my understanding that Hyper Engine was to be the marketing arm/wing/division of Hidden Empire Film Group; correct?

A   Uh-huh.  Yes.

Q   And when you were discussing official Hyper Engine business and/or financial details, did you use your gmail account typically for that?

A   I didn't -- the only -- my gmail was forwarded to my Hidden Empire email.  So I used my

Page 188

Hidden Empire email. But sometimes when you reply from a certain email when it's forwarded, it comes over that way. So I was never intentionally using gmail for business. Does that make sense?

Q   Yeah. That's fair.

A   Okay.

Q   Were there any company policies, whether it was Hidden Empire Film Group, LLC or Hyper Engine, LLC, regarding the use of personal email address versus official corporate email accounts for handling sensitive or business-related communications?

A   Yeah. There was for employees.

Q   What was that policy?

A   I don't have that. I don't know what it was.

Q   Was it written down anywhere?

A   I'm sure it was.

Q   So you believe it was --

A   Yes. There's a manual, I'm sure, that at the time -- 'cause we have those.

Q   When you say manual, do you mean an employee manual?

A   Yeah.

Q   And the employee manual was for Hyper Engine, or was it for Hidden Empire Film Group?

Page 189

A    It was for Hidden Empire Film Group and all subsidiaries.

Q    Did you produce a copy of the employee manual during the litigation, if you recall?

A    I don't have any of my files.

Q    Do you know who prepared the employee manual?

A    No.  Not offhand.

Q    Did you have a -- did you use a payroll company for the employees for Hidden Empire Film Group?

A    Yes, I'm sure we did.

Q    Do you remember what payroll company you used?

A    No.

Q    ADP?

A    I don't know.  But you can probably request it from -- someone has it, a record somewhere.

Q    Now, I know -- I don't -- I don't think I asked you this, and I'm sorry if I already did, but between this -- we'll call it the variation operating agreement in 2018 and then what you call another variation of the operating group in 2019, do you know why the ownership interest from -- that was supposed to go to Darrick, the 16.66, went to 33.33 percent?

Page 190

A   No.

MR. NEWELL:  Objection.  Asked and answered.

MR. FOX:  Okay.

THE WITNESS:  You asked that earlier.  So I don't know.

BY MR. FOX:

Q   Okay.  Good.

So despite not having an agreement with Mr. Angelone, why would you have a lawyer prepare an operating agreement reflecting him as a partner of Hyper Engine, LLC?

A   It was a proposed structure that we discussed is what I'm assuming from my earlier conversations about it.

Q   Okay.  So that's the only reason why you prepare -- had the operating agreement prepared; correct?

A   Yeah.  We were trying to come up with --

Q   Okay.

A   Yeah.

MR. NEWELL:  Did you finish the answer?

THE WITNESS:  Yeah, we were trying to come up with a working relationship for Hyper Engine.  Like, if we did, we would have it, and we wouldn't be sitting here doing this, asking questions, the same

ones over and over again.

BY MR. FOX:

Q   Did you want -- did you want Mr. Angelone to feel comfortable that he was going to become a partner of Hyper Engine, LLC by giving him an operating agreement that showed him as an owner of the company?

A   I was using different thoughts and ideas to try to come to a working relationship with Darrick. So nothing was ever signed by him.  Nothing was ever accepted by him.

Q   Did you --

A   So clearly he was never comfortable.

Q   By giving him these different operating agreements, were you trying to give Mr. Angelone assurances that he would become a partner of Hyper Engine, LLC at some point in the near future?

A   I didn't think of it as an insurance.  We were two parties trying to negotiate a relationship. That's kind of part of the back and forth.

Q   Okay.  Did you ever discuss or raise concerns about Mr. Angelone regarding the final viability or budget for Hyper Engine, LLC?

A   What budget?

Q   It's just a question.  Did you ever have

Page 192

those conversations with him?

A   I can't answer the question.  For what budget?

Q   Okay.  So the answer's no.  You never had --

A   The answer is that I don't know what you're talking about to answer.  So --

Q   I'll rephrase it.

A   -- there's no yes or no at this point.

Q   Did you ever have a conversation with Mr. Angelone about the financial viability of Hyper Engine, LLC at any time?

A   No.  I don't know what you're talking about.  So I can't really answer that.  So the answer would be no.

Q   Did you ever speak with Mr. Angelone about budgets in regards to Hyper Engine, LLC?

A   If there was accounts that went through Hyper Engine, then we would discuss the budgets for him to give me a proposal to perform the services.

Q   What was the -- what was the reason why the 2019 operating agreement, as you said, was never formalized?

A   I don't know what the reason was.

Q   Did Mr. Angelone ever discuss with you any tax implications by forming Hyper Engine, LLC in

California?

A    Nothing other than -- that I remember other than what he put in this email.  So for the record, I wouldn't -- my accounting team would direct me on how to set up -- like, I don't do that.

Q    Okay.  In respect to "Black History in Two Minutes," that was a documentary; correct?

A    It was a podcast.  I believe it's labeled as a podcast.

Q    Who owns the rights to "Black History in Two Minutes"?

A    Henry Louis Gates, I believe, and Robert Smith.  I don't know the official owners of it.

Q    But you --

A    I'm assuming that's who --

Q    You and your husband are not owners of "Black History in Two Minutes."

A    No.  We don't own it, no.

Q    Okay.  Understood.

If we could look at Exhibit 22 briefly.

(Exhibit 22 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    Whenever you're ready.  And I'm sorry, just in respect to "Black History in Two Minutes,"

there's -- that's not the full name of the podcast; right?  Isn't there like parentheses, or so?  Is that the --

A    I don't know the legal full name of it.  I just know it by "Black History in Two Minutes."

Q    Okay.  Thank you.

Okay.  Exhibit 22, I can represent that these are invoices from Aone Entertainment.  If you could just take a quick look at these invoices. There's -- 1, 2, 3, 4, 5, 6 -- seven invoices.

A    Okay.

Q    You've had a chance to look at them?

A    Yeah.  I will when you --

Q    Okay.  In respect to these invoices, do you recall receiving these invoices from Aone Entertainment billed to Hidden Empire Film Group?

A    I'm assuming, yes.

Q    And are you aware that Aone Entertainment is alleging that these invoices have not been paid to date?

A    No.

Q    Okay.  Is there any reason why Hidden Empire Film Group has not paid these invoices?

A    Listen, there's always some invoices that he comes up with that hasn't been paid.  So as far as I

Page 195

know, he's been paid in full for all of his invoice. Even as recently as when we separated from him, he furnished several more invoices at two different times, like, oh, these weren't paid. Paid those. Oh, these weren't paid. Paid those. So now this is another set I'm assuming.

Q   So your opinion is, without actually looking at all of these invoices, that Hidden Empire Film Group does not owe money towards any of these invoices; correct?

A   Yeah. I don't -- how am I supposed to just look at these and say, he said that everything was paid in full. You've even said that when they were -- Quincy and you were going back about any outstanding invoices that were furnished by him. And then more furnished by him, that once everything was furnished and paid off, that we would then get our information back, which was a lie. It never happened, on behalf of you.

So these invoices, if they're not paid, then I'm not sure why. Were they furnished? I don't know. I don't have emails to see if I ever received them. So I don't know what to tell you, honestly.

Q   So real easy question. So sitting here today, you can't say whether these invoices have

Page 196

been paid or not; correct?

MR. NEWELL:  Objection.  Misstates testimony.

BY MR. FOX:

Q   Correct?

A   I can't say one way or the other without looking at records, no.

Q   Okay.  That's fair.

A   Yeah.

We're done with 22.

And just briefly -- I'm sorry, with respect to 22, just looking at the first invoice, was this typically the style of the invoice that you guys would receive from Aone Entertainment?  Is this typically how the invoice looked?

A   For the most part.  There was variances but for the most part.

Q   Okay.  Exhibit 23.

(Exhibit 23 marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   I'll represent to you that this is a email exchange between you and Dorothea Silva.  If you want to take a look at both pages, briefly.  Do you recollect who Dorothea Silva was?

A   She worked for Avaunt.

Page 197

Q   And did she help you with the accounting or financials for Hidden Empire Film Group?

A   She worked directly for Perry for the most part.

Q   And what is Perry's full name?

A   Ghilarducci I think is how you say it.

Q   And did they also assist with incorporating LLCs or corporations?

A   Sometimes I'm sure they did.

Q   Okay.  Understood.

So I'm looking at the bottom of page 1, and I see an email from Dorothea Silva which says -- this was March 11, 2021, "Roxanne, I found the operating agreement for Hyper Engine.  I missed it when I first looked.  I show the following members:  Robert Smith, 50 percent; Deon Taylor, 16.67 percent; Roxanne Taylor, 16.67 percent; Darrick Angelone, 16.66 percent.  Darrick is the only member I do not have information on.  Could you please send his address and tax ID number so we can issue him a K-1. Thanks, Dorothea Silva, CPA."

Do you know why or did you ever send the 2019 operating agreement to Avaunt at any time?

A   Not -- there would be no reason to.

Q   Do you have any understanding as to why she

Page 198

had the operating agreement on March 11, 2021?

A   I don't, and I think my response is clear 'cause it says it just should be me and Deon.

Q   Okay.

A   I don't know what this original request was. Again, you're only furnishing part of these emails, and I don't know what this top thing is 'cause I wouldn't send -- I don't even understand what this means up here, from office to info regarding -- this doesn't even make any sense.

Q   So you disagree with her by virtue of your response that, it should just be me and Deon; correct?

A   Yes.  I told her that it should just be me and Deon in the email.

Q   Why did you put a question mark after Deon?

A   Because I'm asking her why she's talking about Darrick Angelone.  It should just be me and Deon.

Q   And were you surprised when you got this email and she indicated that Darrick was a member of the company?

A   I don't know what my feeling was in 2021, but clearly I was surprised and didn't understand.

Q   Besides your communication with Dorothea, was

there anyone else from Hyper Engine or Hidden Empire Film Group that communicated with her?

A    I don't know.  I'm sure there was people.

Q    Do you know if Velma Sykes used to communicate with her?

A    Probably.  You'd have to ask them specifically.

Q    That's fair.  What about Quincy Newell?

A    You'd have to ask him specifically.

Q    Now, in your email -- I'm sorry, wasn't your husband the 100 percent membership holder of Hyper Engine in the 2018 tax return for Hyper Engine?

A    Do you have a copy?

Q    No.

A    So I don't know.

Q    And was there any reason why you told Dorothea that you and Deon should be the only owners of Hyper Engine, LLC at that time?

A    I would assume because that's what it was set up as.

Q    But you were going to -- I think you said before that you were going to do something nice for Robert Smith.  But did you and Deon make a decision to remove -- was he -- I'm sorry.  Was Robert Smith ever a member of Hyper Engine, LLC at any time?

Page 200

A    Not that I'm aware of that I can recall, no.

Q    Why was he written -- or why was he listed in the 2018 operating agreement as a membership holder of Hyper Engine?

A    Because we were going to give him a piece of whatever future business.

Q    Okay.  And then you decided not to do that anymore; correct?

A    Correct.

Q    Once you received this email from Dorothea Silva, did you in any way notify Darrick or confirm with Darrick that he was not a member of Hyper Engine, LLC?

A    I don't remember what I did at the time with the email, but he's never been a member.  So I don't know why I would be calling him to ask him about it.

MR. FOX:  Now, if we could turn to Exhibit 24, please.

(Exhibit 24 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    Let me know after you've had a chance to review this, please.

A    Yeah, I'm ready.

Q    Are you finished?

Page 201

A    Am I finished?

Q    Yeah.  Reading the email.

A    Oh, yeah, I said already, yeah.

Q    Thank you.  So in respect to this document, this email exchange, do you recall receiving this email from Velma Sykes, being a carbon copy on the email transmission?

A    Sure.

Q    And who was spottier@frylawcorp.com, if you recall?

A    I don't.  It looks like her name is Stephanie from the email.  I don't remember who that was.

Q    And did you authorize Velma Sykes to send this information to Fry Law Corp?

A    I don't recall.  I don't know.  I'm assuming this is for the Chris Fry operating agreement of what this is referencing from the email.  So she could be giving her own notes.  I don't remember.

Q    Okay.  And then it looks like someone sent this email to Darrick.  It came from HEFG, and it says "FYI."  Do you know if you sent this email to Darrick or someone else?

A    I think Darrick sent this email to Darrick.

Q    Okay.

A    Yeah.  It doesn't make any sense.

Q    Okay.  Would Velma Sykes have sent this email to Darrick, if you know?

A    Why would she send this to Darrick with her notes on a legal matter for -- it doesn't make any sense.  But you're going to need to ask her, but this is like every other exhibit.  It's pulled out of emails that he's not copied on that's being forwarded to him.  So this is just another example of it.

Q    Okay.

A    Every single exhibit is that.

Q    Was part of the reason for the drafting of the 2019 operating agreement to remove Robert Smith from the 2018 operating agreement?

A    I don't remember any of that.

Q    Was there a decision made at any time to terminate the 2018 operating agreement for Hyper Engine?

A    Terminate what?  There wasn't anything executed.

Q    Okay.  So an operating agreement doesn't necessarily have to be executed.  It could be -- it doesn't have to be signed.

A    It does for me if we're going to be agreeing to terms.  You have to sign something to know what

Page 203

the terms are.

Q   Okay.  That's fair.  The original operating agreement that you said was signed in the very beginning of the incorporation, was that operating agreement ever terminated?

A   No.

Q   Was Velma Sykes ever instructed to communicate with the attorneys for your company to help memorialize the terms of this operating agreement?

A   No, not that I recall.

Q   If you could look at Exhibit 25.

(Exhibit 25 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   Okay.  You want to just take a quick look would be great.

(Discussion off the record.)

BY MR. FOX:

Q   Okay.  You done?

A   Yeah.

Q   So the -- with respect to the first page, do you recall receiving this email from Velma Sykes on June 21st, 2021?

A   Sure.

Page 204

Q   And do you see the second sentence where she says, "Please let me know if you want to edit the owners on the Word Doc by deleting Robert and Aone"?

A   I do see it.

Q   So you relect -- you recollect that language being sent to you by Velma?

A   Sure.  I'm just -- again, I'm looking at the email on the page.  So --

Q   That's fair.  And you sent an email, I believe, back to her saying, on June 21st, 2021 -- I think that was earlier in the afternoon.  If you go towards the bottom of the email it says, "Also, we should be using Hyper Engine operating agreement that is just me and D," from you.  Do you remember sending her that email?

A   Sure.

Q   Now, if you -- wait.  And why did you tell Roxanne to use the Hyper Engine operating agreement that's just you and D?

A   I'm assuming Velma?

Q   Yeah.

A   I would assume there was probably confusion.  So I was probably clarifying the correct operating agreement that was executed, that it should go -- again, I don't have the context of this, and I don't

Page 205

see the response of this.

Q   Did you ever --

A   So --

Q   Did you ever delete Aone Entertainment and/or Robert Smith from any ownership document in respect to Hyper Engine, LLC?

A   There was no ownership document.  It says operating agreement.  And she's asking should she be editing the owners.  So I don't see my response.  It's cut off.

Q   Was there ever a membership vote authorizing these changes to the operating agreement for Hyper Engine, LLC?

A   That operating agreement wasn't finalized.  The only operating agreement was the original agreement.  So there would need to be no vote because they weren't on it.

Q   Do you recall what operating agreement you used to open the City National Bank account for Hyper Engine?

A   They don't ask for operating agreements.

Q   Did you ever notify Robert Smith in writing that he was being removed from Hyper Engine, LLC?

A   There's no -- there was no reason to have that conversation 'cause nothing was ever done.

Page 206

Q   And after these --

A   But I don't know what Deon's conversations are.

Q   And after these several draft operating agreements from Hyper Engine, LLC, did you ever notify Mr. Angelone in writing that he wasn't going to be an owner of Hyper Engine, LLC?

A   I'm sure I said something in an email about it.

Q   And why did you change the bank account for Hyper Engine from Bank of the West to City National Bank?

A   We moved all of the accounts.

MR. FOX:  Exhibit 26.

THE WITNESS:  Huh?

MR. FOX:  Actually, let's go to Exhibit -- I'm sorry -- let's go to Exhibit 43.

(Exhibit 43 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   Ready?

A   Yeah.

Q   When you would -- you understand that a limited liability company has to file a statement of officers every year with the California Secretary of

Page 207

State?

A    Yeah, I guess so.

Q    And did you regularly do this for your various LLCs:  Hyper Engine, LLC, Hidden Film -- I'm sorry, Hidden Empire Film Group, LLC?

A    I did it in the past, but usually it was performed by the -- some sort of business attorney or somebody.

Q    Would you instruct the attorney or the accounting person, if you will, to go ahead and file the annual officer statement for these various --

A    It's -- it was -- it's automatic usually. They do that automatically.

Q    Would they contact you every year to find out if there were any changes in the information that you would provide to the Secretary of State for each entity?

A    Not that I recall, no.

Q    Did you ever have Velma Sykes, or did you authorize her to file these officer statements on behalf --

A    Sometimes.  I don't remember which entities, but she was -- she was in those roles to do as such.

Q    And would she ask you if the -- the management of the entity had ever changed before she

Page 208

would file the Secretary --

A    Probably.  Yeah, probably.  I don't -- I would assume.  I don't know exactly.

Q    Okay.  Did she ever do these filings with you in person?  Because I know most people now do it digitally online.  So did you ever actually file one with her in her presence?

A    Maybe.

Q    You're looking at -- this is a document that we obtained from the California Secretary of State.  Were you ever sued by Naomi Leslie?

A    I guess if that's -- this is a labor law thing.

Q    And do you know if she obtained a judgment against you for $300,573.51?

A    It looks like it here on this top page.

Q    Have you -- have you actually paid this judgment?

A    No.

Q    Why is that?

A    I didn't know there was a judgment.

Q    Did you ever appeal the judgment?

A    I didn't know there was a judgment from my recollection, but I did appeal her charges or her -- whatever it's called.

Page 209

Q    Was the appeal successful?

A    Clearly it wasn't if there was a judgment.

Q    But --

A    I don't remember honestly, like, the steps.

Q    And when you -- this judgment was entered I believe February 17th, 2024; correct?

A    Yeah, I guess that's --

Q    And have you since that time -- when did you incorporate this Hidden Empire Sports, LLC entity?

A    I have to look it up.  This year, I believe. It's this year, I think.

Q    And when you incorporated the entity, did you notify the California Secretary of State that you had a labor judgment entered against you personally?

A    No.

Q    And when you filed your statements of information for 2024/2025, did you ever advise the California Secretary of State that you had a labor judgment entered against you personally?

A    No.  But I don't do the statement of informations.  But, no, I've never advised anybody of this.

Q    Okay.  43's done.

A    Okay.

MR. FOX:  Let's go to Exhibit 28.

Page 210

MR. ANGELONE:  You have her copy.

MR. FOX:  Oh, I'm sorry.

(Exhibit 28 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   Have you had a chance to look at this?

A   Yeah.

Q   Can you tell me what or who is -- who is -- what's the name of this company?  I'm sorry.  There we go.  Who is OP Innovate?

A   It was a company that we were referred to to do cybersecurity.

Q   Okay.  And when did you first retain them?

A   After the incident with Darrick, if I recall.

Q   And did you -- who was it that retained this entity?

A   I believe this came from Robert initially. Yeah, this came from Robert Smith.

Q   And under and pursuant to this services agreement, did you or Mr. -- your husband, pay for their services?

A   Did who pay me for my services?

Q   Did you or your husband pay OP Innovate for the services that they were going to provide your husband?

Page 211

A    Yes.

Q    And you're familiar with the -- it's the -- let's see -- 1, 2, 3 -- the fourth page, fifth, sixth, seventh page.  So you've seen this incident response document -- correct? -- in the past.

A    Which page are you looking at?  Or are you talking about just this whole thing?

Q    Yeah, the whole document.

A    Yeah.  I'm sure this -- yeah.

Q    And were you familiar with the scope of work on page 3 of their agreement?

A    Yes.

Q    And in the scope of work, what was your understanding of paragraph 6 where it says, "Approach Mr. Angelone and/or his wife with the goal of negotiating"?

A    To -- I would assume to negotiate or close out the defamation and all of the attacks and things that he was doing.

Q    Did this OP Innovate company inform you that they were going to visit Mr. Angelone's residence?

A    No.

Q    Do you know if they ever visited Mr. Angelone's residence?

A    No.  This is all -- they didn't live here.

Page 212

They're overseas.

Q    And No. 1 under scope of work says, "Attempt to recover access to Google Workspace accounts, social media accounts and web server.  This includes retracing Mr. Angelone's step in search of holes and approaching service providers on behalf of and with supporting evidence from HEFG."  Your understanding is that that was part of scope of service?

A    Yes.  There were several companies that were working together.

Q    Were they ever able to recover access to the company's Workspace account or accounts?

A    You should know the answer to that.  No.

Q    No. 3, "Creation of a reciprocal campaign in attempt to coerce Mr. Angelone to cease and desist all malicious activity towards HEFG."  Was that -- was your understanding that that was part of their scope of service?

A    To stop him from doing what he was doing? Yes.

Q    It says here that "OSINT analysis on Mr. Angelone, search the clear web and dark web for intelligence information data about Mr. Darrick Angelone."  Did they do that, if you know?

A    I don't know exactly.

Page 213

Q   Okay.  And was that how you learned about these -- you mentioned these incidents with Kim Kardashian and Jimmie Fo- -- Jamie Foxx.  Is this the company that provided you that information?

A   No.  I Googled it prior to this.  This wasn't -- one didn't have anything to do with the other.

Q   And No. 4, "Collaboration on a PR campaign to strength HEFG brand and discredit Mr. Angelone."  Do you know if OP Innovate was able to successfully discredit Mr. Angelone?

A   I don't know that -- I can't remember from the reports that they provided if they were able to discredit that he stole the emails or not, but I know another group did.

THE REPORTER:  Counsel?

(Discussion off the record.)

BY MR. FOX:

Q   Now, this agreement also accuses Mr. Angelone of hijacking Google Workspace and financial extortion.  Is that your understanding?

A   Yes.

Q   And what was -- what was the financial extortion?  What did that mean to you?

A   I mean you just put a set of exhibits in

Page 214

front of me with outstanding invoices as of today.

Q   But you said the invoices -- well, you didn't know if they were paid or not paid.  I think that was --

A   Well, he confirmed that all invoices were paid, and so did you a while ago.

Q   Okay.  What evidence did you supply to OP Innovate that corroborated any hijacking of your company's Google Workspace account?

A   I don't know what we provided.  A lot of this was done with the attorneys.  I think --

What's the name --

MR. NEWELL:  Don't -- communications with attorneys.

MR. FOX:  I don't want to know what your attorneys told you.

Q   And who recommended that you hire this company?

A   Robert Smith.

Q   What did Mr. Smith tell you about what this company could do?

A   He's just worked with them in the past and so gave us the recommendation.

Q   So do you recall providing OP Innovate with any email documentation or financial --

Page 215

MR. NEWELL:  Before you ask the question, I don't want to stop you right in the middle of the question.

MR. FOX:  Yeah.  It's okay.

MR. NEWELL:  Can we take a break now?

MR. FOX:  Yeah, sure.

THE VIDEOGRAPHER:  Okay.  Hold on everybody. We are going off the record.  This is the end of media unit No. 5.  Time is 4:28 p.m.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record. This is the beginning of media unit No. 6.  Time is 4:40 p.m.

Counsel, you may proceed.

MR. FOX:  Thank you.

Q   Roxanne, going back to Exhibit 28 in respect to this contract with OP Innovate, scope of work paragraph No. 7 -- if you keep going, you'll find it.  I think it's two more pages.  There it is, scope of work.

Paragraph 7 says "Creation of recommendations to reduce and harden HEFG'S attack service."  Did you ever receive any sort of written reports or findings by OP Innovate in respect to the services they provided pursuant to this agreement?

Page 216

A   I'm sure that we did.

Q   And where did those -- where did those -- where are those reports?

A   Where did you get this?  Was there any reports that were provided with it?

Q   We got this from Barbara Campbell.

A   Okay.  Did she provide the reports?

Q   No, there's no reports.

A   Okay.

Q   So did those -- do you know who has those reports?

A   You could probably request it from them.

Q   Okay.  Do you remember what those reports said?

A   No.

Q   Was there any finding by OP Innovate that Mr. Angelone had somehow deleted your Google Workspace account, as you recall?

A   I don't recall.

Q   In respect to -- I'm sorry.  Did OP Innovate ever request any documentation from you to help them do their work?

A   They might have, but I didn't have anything to give them.

Q   Was there any reason why -- I'm sorry, strike

Page 217

that.

Did you ever provide a copy of this OP Innovate agreement during discovery in this matter?

A   I don't remember what I provided and didn't provide.

MR. FOX:   Looking briefly at Exhibit 31.

(Exhibit 31 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   Okay.   Thank you.   I'll represent we received this document pursuant to the subpoena.

A   Okay.

Q   And it appears to be a 2018 tax return for Hyper Engine, LLC.   And if you thumb through the operating agreement, I just have a few questions.   I wanted to confirm with you in respect to this document that the tax return indicates that the only membership holder of Mr. Taylor -- I'm sorry, of Hyper Engine, LLC is Mr. Deon Taylor.   If you look, I can tell you the exact page --

A   I saw it.

Q   You did?

A   Yeah.

Q   Okay.   So looking at this now, does this refresh your recollection as to who the membership

holder is of Hyper Engine LLC back in 2018?

A    Well, I originally told you that he was the original member of everything before conversations with Darrick.

Q    Okay.  But the question is in 2018 he was the 100 percent membership holder of Hyper Engine, LLC; correct?

MR. NEWELL:  Objection.  Asked and answered.

BY MR. FOX:

Q    Okay.  Correct?

A    Correct.

Q    And I believe towards the back of the document there is a K-1 statement on behalf of Deon Taylor.

A    What do you need me to answer?  What --

Q    It doesn't matter.  It's just a K-1 statement.  I don't need to ask anything else. Okay.

What was your understanding in the OP Innovate agreement where one of the scopes of service was -- I asked you this before -- "Creation of reciprocal campaign to attempt to coerce Mr. Angelone to cease and desist all malicious activity towards HEFG."  What was your understanding as to what a reciprocal campaign was supposed to be?

Page 219

A    To get him to release our files and prove that he stole them.

Q    Okay.  And is it your recollection that you or your husband paid OP Innovate a total of $50,000 for these services?

A    I don't know what the total is that we paid them.

Q    But on the -- if you look at --

A    Which one is it again?

Q    Exhibit 28.  It's right there.  The second page, there's an invoice for $25,000.  Do you see that?

A    I do.

Q    And then the contract, the last page of the contract says the fee is based on a fixed price of $50,000.

A    Okay.

Q    Do you see that?

A    Yes.

Q    Does that recollect -- or I'm sorry.  Does that refresh your recollection that their fee was a total of $50,000?

A    Yes.

Q    And did you and Mr. Taylor pay that money?

A    Yes.

Page 220

Q    Who paid --

A    I would assume.

Q    Who actually paid the 50,000?  Was it you personally or your husband, or was it one of the corporate entities?

A    It was paid from Hidden Empire Films.  I'm looking at the wire information.

Q    Okay.  Thank you.

If we could go to Exhibit 32.

(Exhibit 32 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    And just briefly before you look at that, in respect to Hyper Engine and the various corporate entities you have, you've always filed tax returns for these entities; correct?

A    Yes.

Q    Okay.  And -- okay.  If you can look at 32, please.  Let me know after you've had a chance to look at this email exchange.

A    Yes.  I read it.

Q    Okay.  Do you recall receiving this email from Barbara Campbell in 2022?

A    Sure.

Q    Now, why were you asking Barbara for her 2020

Page 221

files for Hyper Engine, if you recall?

A    I have no idea because this email chain is cut off.  I'm sure there was -- I have no idea.  This is cut off.

Q    Okay.  Did Barbara ever mention to you that there were holes in respect to documentation regarding Hyper Engine, meaning issues with Hyper Engine?

MR. NEWELL:  Are you saying apart from this email?

MR. FOX:  Yeah, yeah.  Just 'cause she -- Barbara mentions in her email, we are reviewing it now to see what holes we can fill in on Hyper Engine before sending you updated list.

Q    I guess I'm just trying to -- do you have any understanding what she meant by see what holes we can fill in?

A    I don't.  But maybe backup documents, maybe invoices.

MR. NEWELL:  Don't speculate.

THE WITNESS:  Yeah, I don't know.

BY MR. FOX:

Q    And When you asked her for the 2020 files, did she send you 2020 files for Hyper Engine?

MR. NEWELL:  Objection.  Vague as to time.

Page 222

BY MR. FOX:

Q    Around -- when you sent this email, did you then send -- or did she send you 2020 documentation on behalf of Hyper Engine back in August of 2022?

A    I don't know.  This email's from October, 2021, and then an email from her August 30th from 2022.  So it doesn't really make sense that she's responding to this email from a year after.

Q    Oh, I see.  I see.

A    So I don't know what these have to do with each other.  It's not clear.

Q    Okay.  I understand.

And how does -- how did you or how do you keep the financial records for Hyper Engine?

A    I don't keep -- we don't use Hyper Engine.

Q    How do you keep records in the past for Hyper Engine, LLC, whether it was financial or corporate records?

A    Depending on what it was and when, it would have been either saved emails for the most part usually, I would assume.

Q    Did Barbara keep copies of your corporate documents?

A    She might have.  That wasn't her function, though.  She was accounts payable.

Page 223

Q    Would she have copies of your bank statements?

A    Probably.

Q    For the various companies?

A    Whatever company she was working on.

Q    What about your CPA?  Would they have copies of your bank statements?

A    Whatever they would be working on, I'm sure they had it.

Q    And did you have -- did you keep or maintain like a storage file for corporate records or financial documents on behalf of any of these LLCs?

MR. NEWELL:  Objection.  Vague as to time.

THE WITNESS:  No, yeah.  Yeah, like --

MR. NEWELL:  Let him finish the question.

BY MR. FOX:

Q    At any time.  Like did you have a filing cabinet where you kept these records at home or in an office somewhere?

A    Wait.  Which records?

Q    Any corporate records on behalf of these various LLCs.

A    Probably at some point they were hard copies. I don't know.  It would have been quite a while ago because the digital was a lot easier to just save.

Page 224

Q    'Cause you don't currently maintain like a file cabinet for financials or corporate records for these LLCs.

A    No.  I haven't for a very long time.

Q    Okay.  And when Barbara sent you -- well, we don't know if Barbara sent you information.  So I'm going to strike that question.

Did you have or do you recollect having any difficulty filing the tax return for Hyper Engine for 2020, if you recall?

A    No.

Q    And this supposed box of 2020, your recollection's you haven't received anything from Barbara Campbell -- right? -- in respect to that request?

A    I don't know what the request was for, a box of 2020.

Q    Okay.  Have you discarded any financial records for Hyper Engine, LLC since the filing of your lawsuit in this case?

A    There is no records.

Q    You have -- do you -- sitting here today, do you have the articles of organization for Hyper Engine, LLC?

A    I could probably get it off the Secretary of

Page 225

State.

Q    What about bank statements for Hyper Engine, LLC?

A    I don't have any hard copies for anything.  I would have to go to the website.

Q    You mean the bank's website?

A    Yeah.

Q    To get those records; correct?

A    Yeah, to get records that they have for the years that they --

(Discussion off the record.)

BY MR. FOX:

Q    Are you -- are you and your husband -- are you current with your -- strike that.

Do you regularly -- I think I asked you, the corporations pay their taxes every year the Franchise Tax Board?

MR. NEWELL:  Objection.  Vague as to the corporations.

BY MR. FOX:

Q    As to the -- well, Hyper Engine, LLC you're no longer using, but did you cause tax returns to be filed for Hyper Engine, LLC every year that the company was in use?

A    As far as I know, yeah.

Page 226

Q    And did Hyper Engine, LLC always pay its taxes?

A    As far as I know, yeah.

Q    Same thing with Hidden Empire Film Group, LLC?

A    As far as you know, yeah.

Q    What about personally, you and your husband? You guys file personal tax returns every year?

A    They file -- the accounting team files all the taxes.

Q    And is your understanding that you're current at your taxes, your income taxes for you and your husband?

A    Uh-huh.

Q    And you don't owe the IRS --

A    Yes.

Q    -- any money?

A    Oh, yeah --

MR. NEWELL:  Objection.  Objection.  Instruct you not to answer.  That's privacy.

(Instruction not to answer.)

MR. FOX:  Okay.

Q    Do you -- are you -- are you going to take your counsel's --

A    I am.

Page 227

Q    -- instruction --

A    I am.

Q    -- not to answer the question?

Okay.  I'll just -- again, for the record, we think that question is highly relevant, and we're not saying that we're going to, but we're going to reserve the right to go to the judge or the magistrate who's handling the discovery issues in the case and possibly seek an order compelling you to answer that question and potentially seek fees and costs.  So you understand that that's a possibility.

A    I do understand.

Q    And knowing that, you're still not going to answer that question; correct?

A    Correct.

Q    And last question, I'm sure you're not going to answer it, but is it your understanding that you and your husband owe the Internal Revenue Service over $7 million?

MR. NEWELL:  Same objection.

THE WITNESS:  Same --

MR. NEWELL:  And same instruction.

(Instruction not to answer.)

BY MR. FOX:

Page 228

Q   You're not going to answer that question; correct?

A   Correct.

MR. FOX:  Okay.  I want to go to Exhibit 36.

(Discussion off the record.)

MR. NEWELL:  This one has a Post-it on it.

MR. FOX:  Oh, by accident.

I think I can knock out 40 really fast.

THE WITNESS:  Is this 40?

MR. FOX:  No.  I'm going to hand you 40 really quick, just 'cause we can knock that out really fast.  I'm trying to get through the quick ones.

THE WITNESS:  Okay.

MS. CALIN:  Are you marking 36 too?

MR. FOX:  Not yet.

MR. ANGELONE:  Do you want to give her 40?

MR. FOX:  Here's Exhibit 40.

(Exhibit 40 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   If you can just take a quick look.  And the first question I'm going to ask is if you recollect these being checks on behalf of Hyper Engine, LLC.

A   Sure.  That's what's in front of me.

Q   So on the second page there's a check made payable to Rashad Lyons at the bottom there.  Do you know who Rashad -- Rashad Lyons is?

A   I do.

Q   And who is he?

A   He owns S.T.A.B.L.E. Backpacks.

Q   It says, Xmas. -- Xmas popup.  What does that mean in the memo portion of the check?

A   I'm not entirely sure.  It looks like it was a charitable -- we do an annual Christmas event. and it looks like we may have paid him for providing bags to the kids.

Q   Okay.  Great.  The next page, Icon Solutions Group.  It's the second group for $15,000.  Do you recall what that was for?

A   I think that's Suzanne's company.

(Reporter clarification.)

THE WITNESS:  I'm sorry.  I think that's Suzanne's company, I think, which was a consultant performing services.

BY MR. FOX:

Q   What types of services would --

A   She did production.  But I don't know without having the backup.

Q   Okay.  And then on the following page,

Page 230

there's a -- the second -- it's not a check, but it says -- it's a debit checking slip customer initiated.  And it has customer name, Roxanne Taylor, and it looks like withdraw in excess of $7,000.  Do you remember if you withdrew $7,000 from the Bank of the West?

A    It says I did.

Q    Do you remember what that was for?

A    No.

Q    Then the next page at the very top appears to be a check from Hyper Engine, LLC that says Mercedes-Benz of Rockland for $12,500.  Do you remember that?

A    That's Deon's signature.  So you got to talk to him.

Q    So you don't know what that check was for?

A    No.

Q    At the very -- in the memo I think it says new lease.

A    Yeah.

Q    Do you think that was the deposit for the Mercedes that you obtained?

A    Potentially, yeah.  Not for what I'm driving now, I wouldn't assume, but I -- I don't know. There's usually backup to this that I could speak to

Page 231

specifically.

Q    And then the third check down says Tesla, $117,152 and I think -- I think that says 7 cents. Do you see that?

A    Uh-huh.  I do.

Q    Do you know what that was for?

A    I'm assuming it's the same line item that you presented on the prior exhibit.  I feel like it's the same amount, but this is signed by Deon also. So you should talk to him.

Q    But this -- was this the check for the purchase of the Tesla that you mentioned earlier in the deposition?

A    It looks like it is.

Q    Okay.  Thank you.  Next page, there's a check to PMKBNC for $7,000.  What is that, please?

A    Publicity.

Q    I'm sorry?

A    A publicity company.

Q    Okay.  Thank you.  The following page at the very top is another check to Rashad Lyons --

A    Uh-huh.

Q    Okay.

A    Yes.

Q    -- for $9,218.

Page 232

A    Yes.

Q    In the memo it says Stable book -- book pack investment.

A    Correct.

Q    Was this -- were you investing in his company?

A    It feels that way, but there would have been backup for this also.

Q    Do you remember ever investing money in something or some business interest that Rashad Lyons had?

A    Yes.  I know Deon has invested in S.T.A.B.L.E. Backpack.

Q    Do you know what Deon's ownership interest is in the S.T.A.B.L.E. Backpack business?

A    I don't know about that.

Q    Then at the bottom of the page there's something called the Block House Foundation -- I'm sorry if I'm getting it wrong.  It's just hard for me to see.

A    It's fine.

Q    15,000 the Blackhouse Foundation.  Do you remember what that was for?

A    Well, it says Sundance Blackhouse fellowship program sponsor.  So it's another charitable --

Page 233

Q    Understood.  Then the next page, no questions.  The next page after that, no questions.  That's it for Exhibit 40.  Thank you.

A    Okay.

Q    Who was Damien Douglas?  I think he was a payee on one of those checks?

A    He's been a consultant over the years.

Q    What does he do for Hyper Engine, LLC or what did he do for Hyper Engine, LLC?

A    He would have provided any producer services.  I don't remember exactly, but it would have been some -- along the lines of producer services.

Q    Okay.  Do you remember what the ABFF awards is or was?

A    It's an award show.

Q    And is there a reason why you would pay money from Hyper Engine to ABFF awards show?

A    Is that on here?

Q    Yeah.  It's one of the checks.

A    I don't remember, but they're a nonprofit that does awards, panels, film festival.  They do a number of things.  Does it have -- there's an invoice number reference, so probably details out what it was for.

Q    Okay.  All right.  Thank you.  And then make

Page 234

sure -- who's Suzanne Summerville?

A    That's Icon I believe is her company.

Q    Oh, Icon.  Did she provide services for Hidden Empire Film Group or for Hyper Engine?

A    She performed services for various entities. She's a producer as well.

Q    So she would have provided services for Hyper Engine?

A    Yes.

Q    And then what about Rogers & Cowan?

A    That's a publicity firm.

Q    And is there any reason why Hyper Engine would be paying Rogers & Cowan?

A    For publicity I would assume.

Q    Part of the marketing services?

A    Yeah.

Q    Okay.  Understood.

Who's Shandra Dickson?

A    She's worked for the company.

Q    What did she do?

A    She did various services at different times. She was Deon's assistant at one time.  She's done production services for some of the entities.

Q    Okay.  And did she work for Hyper Engine or did she work for Hidden Empire Film Group?

Page 235

A   A lot of the staff intertwined because there was no organization for Hyper Engine.  So there was a lot of overlap with having them help do stuff.

Q   Okay.  I guess we're done with 40.

Okay.  41.

(Exhibit 41 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   I can represent you're about to receive a copy, Roxanne, but this is a -- these are records from City National Bank that were obtained by subpoena.

MR. ANGELONE:  41?

MR. FOX:  Yes, 41.  It is the City National Bank.  Oh, 41 is over there.

MR. ANGELONE:  Yeah, but it's not that.  Take a look.

MR. FOX:  It's not.  What I can do is -- why don't -- Roxanne, why don't I have you review this briefly, and then we can then proceed.

MR. NEWELL:  That's the only copy?

MR. FOX:  Yeah.  It think Darrick's --

MR. ANGELONE:  I can send JT a copy right now.  He can send you --

MR. FOX:  And I can send it to you so you

Page 236

have a digital copy.  I'll represent that these are City National Bank records that we obtained by subpoena.

THE WITNESS:  All right.  You can --

MR. FOX:  Thank you.  If I can just grab these really quick.  What I can do is I can -- we can kind of work with this together.

Did you send me the document?

MR. ANGELONE:  I emailed it to you.

MR. FOX:  Let me send it to Felton real quick.

(Discussion off the record.)

BY MR. FOX:

Q   So we're just briefly looking at the first two pages.  It's appears to be an agreement with City National Bank.  Do you recall seeing that document ever?

A   Do you have page 1?

Q   No.

A   Looks like a signature card, maybe.

Q   Yeah, that's all we received from City National Bank.

A   Okay.

Q   But I mean you did open an account on behalf of Hyper Engine, LLC with City National Bank at some

Page 237

point; correct?

A    Yeah.

Q    Okay.  Great.  And then looking at the first page, it just shows Deon Taylor is a managing member; correct?

A    Correct.

Q    And do you recognize his signature on there?

A    I do.

Q    And then your signature, you're also an authorized signer on the account; correct?

A    Correct.

Q    Who is the Institute of Church Administration?  If you know.

A    Institute of Church Administration.  Can I see the document?

Q    Yeah.

A    Maybe this is -- this should be the CMBC. Maybe this is their company name, maybe.

Q    Was that a --

A    I'm not sure.

Q    Was that a client of Hyper Engine, LLC?

A    Yes.

Q    Okay.  I see.  That's good.  I just wanted to know who it was.

A    I'm not for sure 'cause that's not the name I

Page 238

know but --

Q    Okay.  I understand.

A    Yeah.

Q    Could be -- could be a client.

A    It could be -- it could be the name of their official --

Q    Okay.  Understood.  And then on this very next page, looking at City National records, it showed -- I believe it shows an incoming wire of $200,000 on October 21st, I'm not -- around, I think, 2021.  But I just wanted to see -- and my question was, how did you -- do you recall how you funded this account?  Meaning did you -- when you closed the Bank of the West account, did you then transfer whatever funds were left in Bank of the West over to City National, if you remember?

A    If -- yeah, if there were funds, that's what I would have done.

Q    Okay.  But do you remember $200,000 going from Bank of the West to City National?

A    I don't.  I'm trying to figure out -- I'm trying to see where this came from.  It just says -- this is very confusing.  Yeah, this doesn't say -- this just looks like a summary.  So it doesn't say, like, who and from on here.

Page 239

Q    You remember some funds came over.  You just don't know the amount from --

A    I don't know the amounts and who they were unless I could look at it.

Q    And then I'm going to have you look at another page.  This shows various activity with City National Bank.  This is in regard to the Hyper Engine, LLC bank account.  And it looks like it's from -- I'm trying to see the time frame, but it says August 2nd.  I think it's 2022.  So here's -- if you want to look at that.

My question is, the -- it appears that these are transfers from Hoop 2 Film, LLC to Hyper Engine.  And I guess, looking at that, it may not help you, but do you remember Hoop 2 Film, LLC depositing monies into the Hyper Engine, LLC bank account?

A    I don't remember the exact numbers, but it's highly possible for funding and helping to do stuff.

Q    Was Hyper Engine, LLC doing marketing services for "Hoop 2 Film," if you remember?

A    No.  It wouldn't be doing marketing services for "Hoop 2 Film," but "Hoop 2 Film" would have engaged maybe in marketing services that then was transferred to try to put it through Hyper Engine.

Q    Oh, I see.

Page 240

A    But I don't know exactly those specific ones. Or it could have been funding the account.  I don't -- "Hoop 2 Film" is owned by Deon so you should speak to him.

Q    Okay.  So Deon handled all the finances for Hoop 2 Film, LLC.  Is that your understanding?

A    He's the one that has authorization to move money from "Hoop 2 Film," yeah.

Q    And it looks like from the checks that we looked at from Hyper Engine, LLC, a lot of those checks were written by your husband; correct?

A    I didn't look at all of them.  I only looked at the ones that you told me to look at.

Q    You saw the car ones; right?  Those --

A    I seen the car one you asked me about, yes.

Q    Was Deon, like, somewhat involved in the finances for Hyper Engine, LLC?

MR. NEWELL:  Objection.  Vague.

BY MR. FOX:

Q    As far as check writing or deposits, accounting for the company?

A    Yeah, he wrote those checks and looks like he transferred money from his account.

Q    But do you remember him -- like, are you -- do you guys work closely together?

Page 241

A    We do.

Q    And do you work closely together in respect to financial decisions, financial activities amongst your entities?

A    Not for his personal.  I'm not exposed to everything that he does with his personal account.

Q    But for Hyper Engine, LLC did you guys, like, intimately work together in getting taxes, tax returns completed, monies into the account for funding bill pay, those sorts of things?

A    It varies.  Usually if they have questions, they ask him directly; and if they have questions for me, they ask me directly, depending on who was a part of whatever.

Q    There's entries here.  I can't tell if they're -- they look like their potentially deposits, but it's something called Bsuite Bas, B-a-s.  Does that mean anything?

A    Can I see?  Can I see it?

Q    Yeah.

MR. NEWELL:  Is this still part of Exhibit 41?

MR. FOX:  Yeah, we're still on 41.

THE WITNESS:  Bsuite -- I don't know what this is.

Page 242

BY MR. FOX:

Q    And I notice that in the bank account, sometimes there were -- for example, if you look at this online wires out from.  Any idea what that -- what that means?

A    That a wire was sent?

Q    But you don't know.  You won't know sitting here today what --

A    No.

Q    Okay.  That's fair.  That's fair.

And just so for clarity, those funds that Hoop 2 Film, LLC transferred into Hyper Engine, I'm just trying to understand exactly how the funds were then utilized, if that makes sense.  So the money coming --

MR. NEWELL:  She's already testified she doesn't know anything about the funds.  How would she know how they were utilized?

BY MR. FOX:

Q    Okay.  But once they got into the account, do you know how they were utilized?

A    I don't.

Q    Do you know how the monies that came in from the Institute of Church Administration, how they were utilized by Hyper Engine?

Page 243

A    Yeah.  There was an agreement for services for their campaign.

Q    But I think you had mentioned, too, that when you and Deon would provide services, that you would be compensated -- right? -- by Hyper Engine, LLC.

A    Correct.

Q    Do you have -- sitting here today, do you have any recollection as to how much money that either you or Mr. Taylor, your husband, received from Hyper Engine, LLC for profit participation?

A    We didn't get any profit participation.  It was only fees for services.

Q    Okay.  I see.  So did Hyper Engine 1099 you and your husband for those monies?

A    I'm sure.  Yeah, I'm sure they would have.

Q    I see.

A    Yeah, they 1099 everybody if they were a W-9 or contractor or however they do that.

Q    Understood.  Do you know who Top of the Food Chain Entertainment was?

A    Yes.  That's Damien Douglas's company.

Q    And was Velma Sykes -- she was an employee of Hidden Empire Film Group; correct?

A    Correct.

Q    Was she also ever an employee for a

Page 244

contractor for Hyper Engine?

    A    Probably.  Like I said earlier, there was a lot of overlapping because we didn't have a staff. So if an account came in, then they would be doing double work.

    Q    Okay.  Understood.  And I think Forever Young Entertainment, LLC, that was -- I believe that was a colleague of yours.

    A    Omar Joseph.

    Q    Omar Joseph.  Understood.

         And would there be any reason why Hyper Engine would transfer funds to Hidden Empire Film Group?

    A    Paying back something maybe or --

    Q    Would you recall if there were loans between the two entities?

    A    I'm sure there were loans from Hidden Empire to Hyper Engine.

    Q    Do you know were any -- was that ever documented by a promissory note or some other type of loan agreement?

    A    Maybe.

    Q    And do you know, sitting here today, whether Hyper Engine, LLC owes any money to Hidden Empire Film Group?

Page 245

A    I'm sure, but it would be in the tax returns as a line item.

MR. FOX:  We already did 42.

Q    What was the -- and you heard of -- or do you recognize the name Silhouette Group?

A    Silhouette Group.  Yes, I'm trying to think who that was.  I recognize the name.

Q    I think the amount was $83,000.  I don't know if that helps refresh your memory.

A    I won't be able to know what I paid people for what without a backup, but I think Silhouette Group was Robert's -- what did they do?  They were like a production arm, I think, of Robert's.  They did something for Robert.

Q    Okay.  So did they --

A    Like an event -- they're like event people.

Q    So did they do something for Hyper Engine?

A    Possibly.  If there's a check to them, then -- from Hyper Engine, then yes.

Q    And do you recall what JSR Capital is or was?

A    It rings a bell, but I don't remember.

Q    And going back to Exhibit 42.  Sorry.

(Discussion off the record.)

THE WITNESS:  Do I have 42?

BY MR. FOX:

Page 246

Q   I'm going to hand you a copy.  So as a reminder, Exhibit 42 was the -- these supposed profit and loss statements from Barbara Campbell, Campbell's office and asked you some questions about it previously.  Here it is.  That's the exhibit.

And in this -- let's see here.  I'm fine.  I already went into the ownership agreements with you.  And so we can put that away.

A   Do you want this back?  There was, like, writing on it or whatever.

Q   Yes.

Be Woke Vote, what is that?

A   It was a voting narrative that Robert came up with that we did for -- to get out the importance of voting.

Q   And who owns Be Woke Vote?

A   I don't remember who owns that.  It doesn't exist anymore.

Q   What do you mean, it doesn't exist anymore?

A   It was a one-time campaign.  It doesn't exist.

Q   So it was an advertising campaign?

A   Yeah.  It was for the election to get people registered to vote.

Q   I see.  Okay.  But you don't remember who

Page 247

initially -- or who owned it years ago when it was in existence.

A   It would have been Robert or Deon or mys- -- same people.

Q   But you're not sure.

A   I'm not, not without looking it up.

Q   You're also -- besides being a managing member of Hyper Engine, LLC, you're also a managing member of Hidden Empire Film Group; correct?

A   Correct.

Q   Are you also a managing member of Hidden Empire Holdings, LLC, or former?

A   Yes.

Q   Are you a managing member of Hidden Empire Sports?

A   Yes.

Q   And in respect to the movies that you've produced -- for example, "Fatale" -- who's actually -- who's the owner of the movie "Fatale"?

A   Fatale, LLC.

Q   And who owns Fatale, LLC?

A   Robert and Deon I believe are the owners of that one.

Q   And what about the movie "Intruder"?  Who owns that movie?

Page 248

A    Same, I believe Robert and Deon.

Q    What about the movie "Traffik"?

A    I think it's the same for most of them.

Q    And so you mentioned Fatale, LLC.  What's the corporate entity that owns "Intruder," if you know?

A    Motivated Seller, LLC.

Q    And then what LLC owns "Traffik"?

A    Stranded, LLC.

Q    And did I -- is it the same relationship that Deon and Robert Smith own the entity that owns "Traffik" movie?

A    I believe so.

Q    Okay.  And then who owns "Meet The Blacks"?

A    I believe it's the same.

Q    But does it belong to a corporate entity?

A    Every entity has their own, LLC.

Q    I see.

A    Yes.

Q    So what's the entity for "Meet The Blacks"?

A    Meet The Blacks, LLC.

Q    I should have known that.

A    Try to be consistent.

Q    Okay.  What about "The House Next Door," what corporate entity --

A    LLC.

Page 249

Q    Okay.  What's the -- is it the --

A    The House Next Door --

Q    LLC.

A    It might be House Next Door movie for some of them, but I don't remember.  But traditionally it's the name of the movie LLC.

Q    I see.  What about "Meet The Blacks 2"?  What corporate entity owns that?

A    That's The House Next Door.  "Meet The Blacks 2" is The House Next Door.

Q    I see.  And then who owns the movie "Supremacy"?  What corporate entity?

A    Supremacy.

Q    LLC?

A    Yeah.  Or it could be the movie.

Q    Okay.  And you're feeling is that Deon and Robert Smith are the shareholders of that LLC.

A    Of which one?

Q    The one that owns "Supremacy."

A    Yes.

Q    Understood.  Are there any movies that you've produced that Deon is not an owner of as an example?

A    "Black and Blue."

Q    So going -- I'm going back to my list.  What corporate entity owns the movie "Fear"?

Page 250

A    Social Distance, LLC.

Q    And again, is that owned by Robert and Deon together?

A    I don't think Robert -- no, I don't -- I can't remember if Robert's a part that.  There's several partners in that, I believe.

Q    And then --

A    I can't answer that one, actually.

Q    What entity owns "Free Agents"?

A    "Free Agents" hasn't been put out.  It's in development.

Q    I see.  What about "Hoop 2"?

A    I'm sorry, which one?

Q    Who owns or what corporate entity owns "Hoop 2"?

A    "Hoop 2 Film" are you talking about?

Q    It just says -- oh, is that the name of the movie, "Hoop 2 Film"?

A    No.  That's the name of Deon's personal loan-out.

Q    Oh, I see.  But was there a movie called Hoop 2?

A    No.

Q    What about the initiative called Facts not Politics?

Page 251

A   I think that was related to the CMBC campaign.  I think that's what it was.  I don't know -- I don't remember if an LLC was set up for that or not.

Q   Do you know who owns that, that project?

A   I don't remem- -- that's not our project. That's -- the CMBC was a --

Q   I see.  What about Climb?

A   That's a nonprofit that I have.

Q   So that's your nonprofit.

A   Correct.

Q   And what's the name of the nonprofit that owns Climb?

A   Climb is a nonprofit organization.  So that's the --

Q   Did you incorporate it?

A   No.  It's an LLC.  There's no -- like, it's a nonprofit so that is the owner.  Yeah.

Q   So is it called Climb, LLC?

A   Yeah.

Q   Okay.  Thank you.

What about Black Chair Show?

A   What about it?

Q   What corporate entity owns Black Chair Show?

A   I don't know.  I don't remember if an LLC was

Page 252

set up for that.  That was never released, or it was just a private thing that Deon was trying to do.

Q   I see.  Does any -- is there a -- is it a script at this point?

A   No.  It was a -- just like interviewing people.

Q   Okay.  And who owns the -- I don't know if it's an initiative or interviews or video footage. Is that Deon's?

A   Deon would own it.  Yeah.

Q   Understood.  Was a corporate entity set up to own Be Woke Vote, if you remember?

A   I believe so, yeah.

Q   Do you remember the name of the corporate entity?

A   Probably Be Woke Vote, LLC.

Q   Okay.  Got it.  And the -- do you know the domain name of eventVIII.com?

A   Yeah.  Event eight?

Q   What is that?

A   It's a champagne that I created.

Q   Okay.  And is that -- when you say champagne, like alcohol champagne.

A   Yeah.  You know champagne?

Q   I know champagne.

Page 253

A    Okay.

Q    I just want to make sure it's not --

A    Sorry.  I shouldn't have said that joke.

Q    -- like a dog or something or --

A    No.

Q    -- a clothing line.

A    Champagne that you drink.

Q    That's your product?

A    Correct.

Q    Is it something that's bottled and sold or --

A    Correct.

Q    Did Mr. Angelone ever create a Facebook page for Hidden Empire Film Group?

A    I'm sure he did.  That was part of his role.

Q    And do you still have access to his Facebook page?

A    You know, I don't know.  I don't use Facebook.  There was some -- some things that were granted back and some with shared stuff and some -- so I don't remember without consulting someone to know exactly.

Q    Who manages your company's social media now?

A    Several different people.

Q    Who is that?

A    Like you want their names?

Page 254

Q    Sure.

A    Rundown Media is one.  There's -- there's different individuals depending on which it is, which thing we're doing.

Q    Anyone else you can recall besides that entity that you just named?

A    Yeah, but I don't need to go into people's names of who are managing our social media.

Q    What about the company names?

A    I gave you the one company name.

Q    So you're refusing to provide --

A    The individual names?

Q    Yeah.

A    Correct.

Q    Or other company names that provide social media?

A    The other company names would be the distributors that are distributing the projects.

Q    So just same admonition before about not answering the question -- is that fair? -- so I don't have to repeat the whole exercise?

MR. NEWELL:  Yeah.  Although you don't actually have to do it at all.

MR. FOX:  So --

MR. NEWELL:  That's an answer that you think

Page 255

is -- you're entitled to, you can just move.

MR. FOX:  So just so you -- just so you know.

All I know is I did bring a motion once, and it was denied because I didn't give the instruction to the deponent.  Just FYI.

I don't think we need 44.

THE WITNESS:  I'm going to need to take a bathroom break --

MR. FOX:  Okay.  Sure.

THE WITNESS:  -- if it goes --

MR. FOX:  Sure, sure.

THE WITNESS:  -- quite a bit longer.  I can hold on for a little bit but --

BY MR. FOX:

Q   Did either you or Deon ever receive reimbursement of business expenses from Hyper Engine, if you recall?

A   Like personally?

Q   Yeah.

A   Maybe.

Q   Travel expenses, et cetera?

A   Maybe.

Q   Did you ever provide a copy of either the original Hyper Engine operating agreement or the variation operating agreements that we discussed

Page 256

today to Robert Smith?

A    No.  I don't recall doing that.

Q    Did you ever give the original operating agreement, when you incorporated Hyper Engine, LLC, to Barbara Campbell?

A    I wouldn't have given it to Barbara.  I would have given it to the accounting firm.

Q    So Aprio?

A    To Avaunt I believe at the time.

Q    So in respect to what Mr. Angelone did for Hyper Engine, can you tell me specifically what he did, if you recall?  Like all the different services that he provided Hyper Engine.

A    It would depend on the account, what service he would be providing.  But it's the same services. It would encompass same services, securing domain, securing social platforms, performing digital marketing services, sometimes ad buys.  It depends on what the project is and what they're asking for. And then if it related to him specifically, then that piece would be carved out with him specifically.

Q    Did he ever make -- let's -- I guess we can put it this way -- a sales call, for example?  Did he meet with potential clients?

Page 257

A    All the clients were our films.  So he met with the distributors at times to perform as you seen in one of these exhibits of Lions Gate, getting assets from them, sending assets or whatever the case may be.

Q    Did Quincy Newell ever restructure either Hidden Empire Film Group or Hyper Engine, LLC if you recall?

A    Restructure what?

Q    Like change the ownership structure of the businesses or, you know, create a new operating agreement or prepare corporate resolutions, you know, modifying the business name or changing the business address?

A    Not that I recall, no.

Q    And does Mr. -- Mr. Newell worked for your company; correct?

MR. NEWELL:  You're referring to Quincy Newell?

MR. FOX:  Yeah, not you.  Yeah, I know.  I made that mistake before.

Q    So Quincy Newell, no relation, used to work for Hidden Empire Film Group.

A    Yeah.  He was a contractor.

Q    And what did he -- what services did he

Page 258

provide to Hidden Empire Film Group?

A    He was the COO.

Q    And as COO what did he do for Hidden Empire Film Group, if you recall?

A    Operational -- a COO is the chief operating officer as I'm sure you probably know.  So there's really no limit to operations that he provided.

Q    Did he hire -- was he responsible for hiring and firing?

A    Sometimes, yeah.

Q    Just as an example.

If you could briefly look at Exhibit 26, we'll pull a copy of this.

(Exhibit 26 was marked for identification by the court reporter and is attached hereto.)

MR. FOX:  You wanted five minutes to use the rest room?

THE WITNESS:  Oh, sure.  Yeah.

THE VIDEOGRAPHER:  Not hearing any objections, we're going off the record.  This is the end of media unit No. 6.  Time is 5:45 p.m.

(Recess.)

THE VIDEOGRAPHER:  We are back on the record. This is the beginning of media unit No. 7.  Time is 5:55 p.m.

Page 259

Counsel, you may proceed.

MR. FOX:  Thank you.

Q   Roxanne, have you had a chance to review Exhibit 26?

A   Yes.

Q   It's my understanding that this is a Hidden Empire job responsibilities draft chart which also includes job responsibilities for Hyper Engine, LLC; is that correct?

A   I've never seen this document.  So it's my first time seeing this.

Q   Okay.  And I --

A   So I didn't create it.

Q   Do you know if Aone Entertainment created it?

A   I have no idea.

Q   So you don't know if Darrick Angelone created it; correct?

A   I don't know why he would be creating a job description for Hidden Empire.  So I doubt that he created it.

Q   Do you know if Quincy Newell created --

MR. NEWELL:  Objection.  Calls for speculation.  She says she doesn't know.

BY MR. FOX:

Q   If you know.

Page 260

A   I don't know.  As I said, I've never seen it.

Q   That's fair.  If you turn to page -- 1, 2, 3 -- 4.  So at the very top, if you see at the top left corner it says Hyper Engine.

A   Yes.

Q   And it says head of social media and marketing.

A   Yes.

Q   Was Mr. Angelone and/or Aone Entertainment acting as a director of social media and marketing for Hyper Engine, LLC at any time?

A   Not that I recall.

Q   And if you see all the different things, if you look to the middle of the page, it has a description of the different services that the head of social media and marketing would perform; correct?

A   I've never seen this document.  I don't know who created this.  So I'm not sure what this is -- like, I can't speak to --

Q   But what I'm asking you --

A   I can speak to what's in front of me, what reads on the page.

Q   That's what I'm asking.  If you look at the items that are listed in the middle of that chart

Page 261

under head of social media and marketing, were any of these listed services things that Mr. Angelone or his company provided to Hyper Engine, LLC?

A   On bullet point 2.

Q   Okay.

A   1, 2, 3, 4.  A lot of these aren't clear.  So I'm going to just speak to what was clear that related to what he did contracted.  Only No. 2.

Q   Okay.  What about under the second item towards the bottom of the chart where it says business development?  Did Mr. Angelone and/or Aone Entertainment provide the services listed in the middle of the chart starting with lead sourcing?

A   No.

Q   And then turning the next page, you'll see that there's more description of responsibilities.  Where it says stay abreast, did Mr. Angelone and/or Aone Entertainment provide these listed responsibilities in that box?

A   No.

Q   Okay.  What about under activation and sponsorship?  Did Mr. Angelone or Aone Entertainment provide any of the service or responsibilities listed in that box?

A   No.

Page 262

Q    What about the graphic -- graphic art/design?
Are any of the items -- responsibilities listed in
that box something that Mr. Angelone or Aone
Entertainment performed?

A    Number bullet point 1.

Q    Where it says ability to work, that --

A    Creatively while making ideas, yes.

Q    What about under -- there's the project
manager box, whether -- and then you have to turn
over to the next page, but are any of those listed
responsibilities things that Aone Entertainment or
Darrick Angelone performed for Hyper Engine, LLC?

A    The second to the last, assisted marketing
activations as needed.

Q    Okay.  Thank you.  And then if you go to the
next page, there's a section at the very bottom of
the chart where it says Hyper Engine manager,
marketing.  Are any of the responsibilities listed
in the middle box to the right, where it says
manager, marketing and then on the next page all the
listed responsibilities, are any of those things
that Mr. Angelone or Aone Entertainment provided to
Hyper Engine, LLC?

A    Second to the last, prepare reports and
analyze performance relevant to campaign objectives,

that line.

Q   Now, you just went through all those different responsibilities for Hyper Engine, LLC. And I know you just specified that there were only certain things that Mr. Angelone provided from the service perspective.  These other things that are -- these other responsibilities that are listed as a whole, what other people were providing these responsibilities to Hyper Engine, LLC?

MR. NEWELL:  Objection.  Vague as to time.

THE WITNESS:  I didn't come up with this.  So I don't know where this came from.  So we're just hypothetically talking about these titles or --

BY MR. FOX:

Q   How about this?  Who was handling business development for Hyper Engine?

MR. NEWELL:  Objection.  Vague as to time.

BY MR. FOX:

Q   During -- at all times that Hyper Engine was a business concern.

A   Well, all the business that came through Hyper Engine came through Deon or I or our projects. So hopefully that answers your question.

Q   So Mr. Angelone never procured any business on behalf of Hyper Engine, LLC.

Page 264

A    No.

Q    What about Aone Entertainment, LLC?

A    No.

Q    And then who was also or who -- 'cause you said -- you did mention that Mr. Angelone provided one of the responsibilities, head of social media and marketing.  Who was -- besides Mr. Angelone, who was also involved in social media and marketing on behalf of Hyper Engine, LLC during the time that Hyper Engine, LLC was a growing concern?

A    I don't remember any projects going through Hyper Engine except for the CMBC project.  There might have been some of the films.  So if that was the case, then it would be the distributors' team, digital team performing those functions.  If they're movie related, then the distributor would have been the other people performing those functions or a third party hired by them.

Q    Okay.  Understood.  And then under the following page, activations and sponsorship, who were handling those responsibilities for Hyper Engine, LLC?

A    I'm sorry, which -- where am I looking?

Q    It's page 5 on the chart, where it says Hyper Engine and then activation and sponsorship.

Page 265

A   We never got any sponsorship that I recall for Hyper Engine.  And the only activation that I remember doing is for the Be Woke Vote campaign to do pop-ups to register people to vote.

Q   Was Mr. Angelone involved in Be Woke -- the Be Woke Vote campaign?

A   He was.

Q   So he was involved in activation and sponsorship on behalf of Hyper Engine, LLC; correct?

A   No.  He was involved in the digital marketing to promote or to market that project.  I'm sure he probably went to -- there was at least 50 activations across the country for that.  So I'm sure he attended some.  I don't remember which ones if he attended and was a party of exactly what it was.  There was a whole entire team that was managing that.

Q   So is it fair to say that in that respective, the box for responsibilities for activation and sponsorship, that he was actually engaged in some of these listed responsibilities?

A   No, he wasn't.

Q   In respect to -- when you say team, what do you mean by the Be Woke Vote team?  Are these representatives of Hyper Engine, LLC, or are

Page 266

these --

A    For Be Woke Vote.

Q    So you had people -- you didn't have employees -- right? -- for --

A    No.

Q    -- LLC.

A    They were contractors.

Q    So these are all the contractors that were doing these services for Hyper Engine, LLC.

A    No.  For the -- you said for Be Woke Vote.

Q    Yeah.

A    So for Be Woke Vote.

Q    What were the independent contractors that you were requiring for Hyper Engine, LLC, what were those people doing for Hyper Engine, LLC?

A    It depended on what the project was for.  If you ask me a specific person like you did earlier, I could tell you what they were doing.

Q    What they were doing.

A    Yes.

Q    And in respect to graphic art design, who from Hyper -- I'm sorry, from Hyper Engine were providing those services listed in the responsibility section?

A    So no one worked for Hyper Engine.  They were

Page 267

all contractors, if a project came through there. There was no staff.  There was no graphic artists. There was no nothing.  And the people we used were already working for Hidden Empire.

Q    So these were people from Hidden Empire that were helping Hyper Engine with certain tasks?

A    Correct.  Or the contracted people if that project went through Hyper Engine.

Q    Was there anyone else assisting with project management for Hyper Engine, LLC during the time that it was a business concern?

A    All the project management was for the individual projects.  So it would be whatever group that was assigned through the distributor or that campaign would be associated with that.  Nobody was ever hired for Hyper Engine, per se.  It was for a specific thing.

Q    And in respect to the items that you mentioned that Mr. Angelone had provided on behalf of Hyper Engine that we just went over, was he compensated for these things?

A    Everything that he did for us he was compensated for.  He billed for everything. Domains, setting up platforms.  We paid for ad buys if it was ad buys.  Like everything that he did was

Page 268

billed.

Q    Even these trips on behalf of for the Be Woke Vote project?

A    I didn't fly him anywhere that I recall. There was no reason for me to fly him anywhere for Be Woke Vote.

Q    Did he --

A    I don't remember doing --

Q    Did he bill you for marketing activations?

A    I don't know.  You'd have to look at the invoice.

MR. FOX:  Let's go to No. 17.

(Discussion off the record.)

(Exhibit 17 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    So if you look at the -- just the first page in particular.  Do you recognize this email that -- from Abt, Yvonne from Sony to, it looks like, a Joe Whitmore and some other people in which you were carbon copied on August 15th, 2019?

A    Sure.

Q    And Yvonne -- who was Yvonne or Yvonne Abt?

A    I don't remember.  She worked for Sony, looks like, but I don't know that I remember what her

Page 269

title was.

Q   Okay.  And here she says, "To echo Joe -- the excitement is shared all around.  We'd love to connect with Darrick right away to discuss an engagement with Hyper Engine.  I have his email address.  darrick@hyperengine.ai and will formally introduce myself and the team under separate cover."

Do you recollect this email?

A   Sure.

Q   And do you recall Darrick on behalf of Hyper Engine dealing with Sony with respect to this particular project?

A   I don't recollect it, but it's very possible 'cause it's a project that we did.

Q   So Sony did in fact retain Hyper Engine for marketing service; correct?

A   I don't know that that happened.

Q   Did Hyper Engine ever receive money from Sony?

A   No.  What usually would happen is these people would connect with him to provide assets to support the digital marketing.  So I don't remember a contract with Sony.  You have all the bank statements.  So there would have been an incoming wire from Sony noted.

Page 270

Q   So if I'm turning to --

A   But I can look -- keep looking through these emails and see what I can muster up.

Q   If you go to page 7, appears to be an email between Darrick and Yvonne.

A   23rd, 2019 at 10:50?

Q   Yes.

A   Okay.  I'm here.

Q   So I see the email from Yvonne in the middle of the page.  "Hi, Darrick.  Can you please send a final invoice $75,000 for this campaign so we can process for payment.  Many thanks, Yvonne."

A   Okay.

Q   From Darrick to get back to Yvonne, "Yes, we'll have processed today.  Thank you."

Does that refresh your recollection?

A   What's the question?

Q   Whether or not Darrick was able to procure this job on behalf of Sony -- I'm sorry, this job --

A   What's the job?

Q   Marketing, marketing job.

A   I don't know.

Q   Or marketing services.

A   I don't know.  We introduced him to all the distributors for our project.  Our projects.

Page 271

Is there an invoice that you have that he sent her for the services he was going to provide?

Q   Were you aware that Darrick was negotiating with Sony in respect to these -- this Hyper Engine proposal?

A   No.  It looks like this is about post from our past partners Jamie Foxx, King Bach --

(Reporter clarification.)

THE WITNESS:  King Bach, Terrence J.  Again, I wasn't on these emails.  I'm just reading.  It looks like we used our network of influencers to post, and maybe that's what the payment was for. Again, I don't have the invoice or context.  I'm just looking at these pages that I wasn't on the emails.  So --

BY MR. FOX:

Q   Did anyone within Hyper Engine formally designate Darrick to handle deals with high-profile studios like Sony?

A   We would have introduced him, as I said earlier.  There was no high-profile deals.

Q   Were there any discussions of affirming that Darrick was qualified or authorized to set these structure influencer campaigns and invoice clients?

A   I don't know where the fees or information

Page 272

came from.

Q   In respect to Darrick's dealings with Sony, did you expect him to report back to you on the final contract, contract details, expenses or revenue allocation?

A   Yes, I would expect that.

Q   Was Darrick's authority contingent on providing updates or transparency about funds received and project status in respect to Sony?

A   It looks like here Yvonne set the budget and the terms.

Q   Did Darrick have authority to reduce the budget with respect to the project?

A   No.  He didn't have authority over anything unless I verbally gave it to him or Deon variably gave it to him.

MR. FOX:  Let's move on to Exhibit 38.

(Exhibit 38 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q   I'll represent to you that this was Quincy's -- Quincy Newell's document production pursuant to a subpoena.

A   This is what, I'm sorry?  Say that again.

Q   This is a document provided to us by Quincy

Page 273

Newell --

A    Okay.

Q    -- pursuant to a subpoena.

Once you've had a look, let me know if you've seen this document before.

A    Okay.  I'm ready.

Q    Have you seen this --

A    I think these --

Q    -- document before?

A    -- repeating.

Yeah, I've seen these documents for the most part.  I don't think I've seen this one.

Q    Okay.  And are you aware of who actually prepared this -- this business plan, if you will?

A    It came from Quincy.

Q    Okay.  It did.

A    Yeah.

Q    Was there a reason why he created this document?

A    I believe this was around the services that he was working on.

Q    Okay.

A    If I remember correctly.

Q    And do you know when about, time frame, he created this document?

Page 274

A    When he was working for the company.  So whenever.

Q    Was this before the litigation in this matter?

A    I would assume, yeah.

Q    When did he begin working for Hidden Empire Film Group, if you know?

A    I don't.

MR. NEWELL:  Objection.  Misstates testimony.

BY MR. FOX:

Q    I remember, he's a contractor.

A    Yeah, I don't remember the exact date, sorry.

Q    When did he begin -- oh, you don't know -- you don't remember when he started?

A    It was a few years ago.  Yeah, prob- -- I don't know.

Q    And in this document do you observe a Hidden Empire Film Group legal structure chart?

A    The exploration?  Exploration chart?

Q    Yeah.

A    Yes.

Q    And you see -- I believe there's a legal chart as well, the page before that; correct?

A    No.

Q    This page.  I think it's right in -- right

Page 275

there.  Oh, you're -- that's the page right there.  It says HEFG legal structure explanation chart.

A    Yeah.  That's what I just asked if --

Q    Oh, okay.  Sorry.  I thought you meant -- okay.  In any event, do you see Hyper Engine marketing agency as a subsidiary in that chart?

A    Yes.

Q    Did you ever receive compliance documents from Mr. Newell?

MR. NEWELL:  Referring to Quincy Newell?

MR. FOX:  Yes.  Yes.

THE WITNESS:  Compliance docs for --

BY MR. FOX:

Q    For these entities.

A    I don't know what that means.  I'm sorry.

Q    Okay.  It's okay.  Did he provide the articles, the operating agreements, et cetera, for these various entities?

MR. NEWELL:  Objection.  Vague as to "these various entities."

BY MR. FOX:

Q    The entities listed in the HEFG legal structure expiration chart.

A    Did he do what?

Q    Did he provide corporate confirmation, like

Page 276

articles, statements of officers, corporate resolutions, operation agreements, et cetera?

A    Like, did you prepare them and give them to somebody?

Q    No.  To you, to you or to Deon.

A    Did he give these to us?

Q    Yes.

A    Well, he might have done some of these, but this is an exploration.  So this is just a potential org. chart of what the companies could look like in the future.  That's what all of these were.

Q    Do you know what this document was used for?

A    It was just used internally between us.

Q    Now, if you go -- if you move backward into the document -- I don't have a page number.

A    It's fine.  Just tell me what's on the top. I'll find it.

Q    Okay.  You have company operations.  You have Hidden Empire Films org. structure exploration.

A    Yep.

Q    HEFG releasing org. structure --

MR. NEWELL:  There's actually a page number.

MR. ANGELONE:  Yeah, there's page numbers on all --

MR. FOX:  I'm sorry, they are.  Thank you.

Thank you, folks.

MR. ANGELONE:  Bates.  You're welcome.

MR. FOX:  I see it.  I see it's right below.

Q    Okay.  So do you see TWENTYONE014?

A    Yes.

Q    Okay.  And underneath Hyper Engine do you see where it says head of marketing Darrick Angelone?

A    I do.

Q    And do you know why Mr. Angelone is specified as the head of marketing in that chart?

MR. NEWELL:  Objection.  Calls for speculation, lacks foundation, assumes facts not in evidence.

BY MR. FOX:

Q    If you know.

A    I would assume because that's what we were trying to --

MR. NEWELL:  Don't assume.

THE WITNESS:  Okay.  Then no.

MR. NEWELL:  No.

THE WITNESS:  No.

BY MR. FOX:

Q    The -- did Hidden Empire Film Group have a written code of ethics, if you know?

MR. NEWELL:  Objection.  Vague as to time.

Page 278

BY MR. FOX:

Q   At any time.

A   Yes.

Q   Who is Xavier Savant?

A   I don't know.

Q   He's under creative director.  Who is Michael Claps?

A   He was an old assistant I had.

Q   Who is Melva Benoit or Benoit?

A   I don't know.

Q   And I believe Dorothea or Dorothea Silva was listed as client reporting if I'm not mistaken; correct?

A   Yes.  She was listed.

Q   But she was the -- she worked for one of the accounting firms, I believe?

A   Avaunt.

Q   Avaunt.  Okay.  Were you planning on retaining her as a contractor specifically for Hyper Engine?

A   No.

Q   Or as an employee?

A   No.

Q   So you don't know why she's listed on here?

A   I don't know why he listed --

Page 279

Q    Who is Paul Homegins?

A    I don't know any of these names other than Dorothea, Darrick and Michael Claps.

Q    Okay.  Do you know if any of these people that I just mentioned, if they were ever paid by Hyper Engine?

A    Darrick I know for sure.  I don't know about Michael Claps or Dorothea or anyone else.

Q    Did Hyper Engine ever compensate Darrick individually as head of digital marketing?

A    I don't know.

Q    Did -- if you know, did Darrick ever hold himself out as head of digital marketing for Hyper Engine?

A    I believe so.  I think it was on his signature -- I don't -- I'll just say I don't know 'cause --

Q    Okay.  And did Hyper Engine ever at any time hold or -- yeah, hold Darrick Angelone as the head of marketing for Hyper Engine, LLC?

A    Well, he wouldn't have been head of marketing.  He would have been head of digital marketing.  It would have been specific to a project that we were referring to.

Q    So did Hyper Engine ever hold him out as head

Page 280

of digital marketing?

A    Not that I recall.

Q    And if you turn to the next page, TWENTYONE015.

A    I don't -- oh, that's this page.

Q    Yeah.  So at the top --

MR. NEWELL:  So this is the page you said you had not seen.

THE WITNESS:  No.  Yeah, I've never seen this.

BY MR. FOX:

Q    And at the very top of the page, it says, Aone, Darrick Angelone, April 4, 2021; correct?

A    Yes.

Q    Then underneath that it says Darrick Angelone, and then it lists various responsibilities; correct?

A    It does.

Q    You're saying that you're not familiar with this page; correct?

A    I've never seen it, no.

Q    Did Mr. Angelone ever act as a creative director on behalf of Hyper Engine, LLC?

A    Define creative director.  He liked to refer to himself as a creative director.  I never called

Page 281

him a creative director.

Q   Did anyone else refer to him as a creative director for Hyper Engine?

A   Not in my presence.

Q   Was he responsible for DNS/server management?

A   Yes.  If that means setting up the domains and that such, then yes.

Q   Was he responsible for Google analytics and reporting?

A   For the individual projects he would send a report for the performance of the ads and different things of that nature.

Q   Was he responsible for audience data collection integration?

A   For any of the ad buys and different things we had for the projects, then he would provide those reports.

Q   Did he --

A   It's not for Hyper Engine.  It was for the projects.

Q   I see.  Did he provide audience data management?

A   Maybe.  I don't know what really that means.

Q   Did he provide audience target information?

A   Usually that was defined -- if we're

Page 282

relating -- again, if we're going to relate to the individual movie projects, the genre and age and all that was defined.  So he didn't define it.

Q    Was he responsible for managing the Facebook ads, Google ads and native advertising for Hyper Engine?

A    Some of -- for -- not for Hyper Engine, but for the individual projects --

Q    I understand.

A    -- some of them, yes.

Q    Okay.  Was he responsible for influencer management?

A    For some of the projects of our network of influencers.

Q    Was he responsible for digital strategy?

A    The digital strategy came again from the higher level distributors on what they wanted to do unless we did our own -- like, own personal stuff on the side, and Deon field all that creative.

Q    So Darrick never worked with the distributors in respect to digital strategies; correct?

A    No.  Not to the strategy.

Q    What about podcast distribution?

A    I don't think we distributed a podcast.

Q    Was Darrick responsible or did he engage in

Page 283

service 3rdparty asset requirements?

A    I'm not sure what that means.

Q    Was he responsible for video edit, graphic design or HTML?

A    I don't remember him ever videoing anything. Maybe like behind the scenes stuff, maybe.

Q    I don't -- I don't know what CMS is but I'm --

A    I don't either.

Q    Okay.  I'll move on.

And you saw the chart that Mr. Newell provided us in respect to -- I'm sorry, Mr. Quincy Newell.  There was a chart that had these various roles.  Besides the chart what roles did Hyper Engine, LLC have for its business while it was a business concern?

A    The Hyper Engine chart?

Q    Okay.

A    Is that what you're talking about?

Q    Well, remember we went over Mr. Quincy Newell's responsibility chart for Hyper Engine, and I'd asked you if there was, like, digital media director or head of marketing, those things.

A    That's not part of this.

Q    No, no.  What I'm trying to get at is at

Page 284

what -- what --

A    And he didn't create that.  Remember, I never seen it.  I don't know where that came from.

Q    My question was -- my question is did Hyper Engine have various roles within the company?  Did Hyper Engine, LLC have a creative director?  Did it have a project manager, et cetera?  Did it have any titles?

A    No.  We've talked about this several times. These people came with those movies.  There was no one that was the day-to-day.  All these projects were projects we brought.  They came with teams to manage different things.  There was never any employees of Hyper Engine.  All the contractors that worked for -- were project-based to perform a specific function.

Q    Understood.  The movie "Fear," did I ask you -- I think we already went over that, who owned the movie "Fear"?  I think --

A    Social Distance, LLC.

Q    Social -- understood.  Who owns the Fear game?

A    Well, we don't.  We didn't create it, but it can't be used without approval of the actors that he created.

Page 285

Q   How do you know that it can't be used because -- unless the actors agree?

A   What do you mean, how -- because you're not allowed to use people's name and likeliness without their approval.

Q   Okay.  So you're --

A   And it's based on the IP and characters of that film that's owned by Social Distance.

Q   So did you ever receive notification from any of the actors that the use of the game was not going to be permitted?

A   I believe there were people, but I don't remember.  But --

Q   Do you remember what actors had objection?

A   I don't -- I don't know that any of the actors were solicited.  I mean they definitely weren't solicited by us, but it was brought to our attention by one of them.  I can't remember when it was out -- I can't remember who it was.  Like, they seen the game.  It could have been Mike Epps.  I don't remember who exactly, but somebody saw it, like, out.

Q   Did you ever -- did you ever see the game ever?  Did you ever use the game?

A   I seen, like, a version of a piece of a

Page 286

prototype maybe.

Q    Who authorized the production of the game?

A    Darrick authorized it.

Q    Did you or Deon ever authorize Darrick to go ahead with the production of the Fear game?

A    No.

Q    Did -- at any time did you or your husband ever feel that the game was a good idea for the marketing of the film?

A    I mean, honestly, I thought it was stupid to be completely honest.  I can't speak for what Deon thought.

Q    Did you ever actually try to use the Fear game in --

A    I never seen a final -- whatever was sent over which I'd have to --

Q    So you don't know if it was actually used to promote the film?

A    Oh, I know it was used because he said it was used and people said they saw it.  And he put out a fake press release without our authorization with quotes.  So, yeah, I -- I know.

Q    And the film did really bad; correct? Meaning --

A    In whose eyes?

Page 287

Q    In a banker's eyes.  Did the film make money?

A    Yes.

Q    How much money did the film make?

A    I don't think that's relevant.  But I don't --

Q    It's not your decision.

A    Yeah.  Well, I don't know the exact amount but --

Q    So it was a profitable venture?

A    It's still in profit.

Q    Okay.  Do you know what Screen Engine is?

A    I do.

Q    What is that?

A    It's a -- what are they?  I don't know their technical term.  They are a -- what is it called? They're like a data collection.  You should probably go online and get the exact thing for what they actually do.  They perform multiple functions.

Q    Were they ever a partner of Hyper Engine, LLC?

A    No.

Q    Who is Corbin Media Group?

A    I don't remember who Corbin Media Group is.

MR. FOX:  And just the last exhibit, just briefly.  It's Exhibit 16.

Page 288

THE WITNESS:  Okay.

(Exhibit 16 was marked for identification by the court reporter and is attached hereto.)

BY MR. FOX:

Q    Take a quick look at this exhibit.

A    Ready.

Q    Okay.  Perfect.  Do you recall receiving the email on the first page, as a carbon copy?

A    Yeah.

Q    Do you remember what the -- this contractual relationship between Hyper Engine and Lamya Malhorta (sic) -- I hope I didn't -- I'm sorry, Work Vineyard?

A    Yeah.  Again, it's a vendor that we had a personal relationship with and that needed these services.

Q    And was Darrick responsible for having this agreement finalized?

A    Was he responsible for doing this?

Q    Yeah.  Was it his --

A    What do you mean?

Q    Was it his task or assigned duty, if you will?

A    It wasn't his assigned duty.  I agreed to the money and the numbers and then turned it over to

Page 289

him.

Q   And so Darrick at that point prepared the contract which is page 3 and 4, and then --

A   I don't know that he prepared this contract. I don't know who prepared this.  So I don't know that that's true.

Q   And do you -- if you look on the last page, do you see Darrick's signature on behalf of Hyper Engine?

A   I do.

Q   And do you remember, does this now refresh your recollection as to whether you've seen this agreement before?

A   I didn't say that I didn't see the agreement.

Q   Oh, you've seen the agreement.  Okay.  I thought you said you didn't see it.

A   No.  I said I don't know who prepared the agreement.  You said that --

Q   Oh, I'm sorry.

A   -- Darrick prepared --

Q   So you've seen this agreement; correct?

A   Yes.

Q   Why did Darrick sign this agreement on behalf of Hyper Engine, if you know?

A   'Cause I probably asked him to.

Page 290

Q   Was there a written protocol requiring that all client agreements would be reviewed or approved by you or other members such as your husband before Darrick could execute the agreement?

A   For hyper Engine?

Q   Yes.

A   Yes, there would be.

Q   Do you recall any internal resolutions or official documentation with Hyper Engine granting Darrick the power to sign third-party contracts?

A   No.

Q   Were you -- prior to this agreement with Work Vineyard, were you aware that Darrick intended to finalize a six-month contract for social media management with Work Vineyard?

A   I don't remember what this -- is that what it says?

MR. NEWELL:  Are you referring to something in the document?

MR. FOX:  Yeah.  I mean it says term, six months, and then there's a circle around three-month minimum.

Q   So the question is, whether or not -- whether --

A   Yeah, I don't know.  All I remember is that

Page 291

it started and then she wasn't happy with the services, and so it ended.  So I don't know how long it actually lasted, but since there's copies of checks right here, it looks like there's two checks written from her to Hyper Engine.

Q   Were there any other contracts, if you recall, that Darrick signed on behalf of Hyper Engine?

A   No.

Q   Have you seen any other document prior to today where Darrick identified himself as an authorized signatory for Hyper Engine?

A   No.

MR. FOX:  I have nothing further.

THE WITNESS:  Okay.

THE VIDEOGRAPHER:  Follow up, Counsel?

MR. NEWELL:  I have no questions.

THE VIDEOGRAPHER:  Thank you.  Before we go off the record, Counsel, do you have -- Counsel, do you want to order a copy of the video?

MR. NEWELL:  Yes.

MR. FOX:  Madam court reporter, you have anything to add?

THE REPORTER:  I assume you want a transcript too?

Page 292

MR. NEWELL:  I do, yes.

THE VIDEOGRAPHER:  And on this side is just one copy of the video or two?

MS. CALIN:  Do you want a video?

We don't want a video right now.

THE VIDEOGRAPHER:  Well, you already ordered it.

MS. CALIN:  One copy of the video.

THE VIDEOGRAPHER:  Okay.  Thank you.

MS. CALIN:  And the transcript.

THE VIDEOGRAPHER:  Hold on, everybody.  Thank you.

We are off the record at 6:42 p.m., and this concludes today's testimony given by Roxanne Taylor. The total number of media used was seven and will be retained by Veritext Legal Solutions.  Thank you.

Page 293

/

       I, ROXANNE TAYLOR, do hereby declare under penalty of perjury that I have read the foregoing transcript; that I have made such corrections as noted herein, in ink, initialed by me, or attached hereto; that my testimony as contained herein, as corrected, is true and correct.

       EXECUTED this _____ day of _____, _____, at _____, _____.
                (City)       (State)

_____
ROXANNE TAYLOR
Volume I

Page 294

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney or any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: September 29, 2025.

*Lynn Gearhart*

LYNN GEARHART, RPR

CSR No. 9466

Page 295

Felton Newell, Esq.

felton@newellpc.com

September 29, 2025

RE: Hidden Empire Holdings, LLC v. Angelone, Darrick

9/10/2025, Roxanne Taylor (#7572255)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at (Erratas-CS@veritext.com).

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

Page 296

Hidden Empire Holdings, LLC v. Angelone, Darrick

Roxanne Taylor (#7572255)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____   _____

Roxanne Taylor                                  Date

**[& - 2012]**                                                                 Page 1

| & | | | |
|---|---|---|---|
| **&**  3:12 10:22 234:10,13 | **100**  38:23 55:1 60:13 79:4 199:11 218:6 | **120**  6:16 | **19**  138:20 |
| **0** | **104**  6:13 | **128**  9:10 | **193**  7:20 |
| **06515**  1:9 2:9 10:19 | **1099**  159:11 243:13,17 | **12:01**  91:6 | **196**  7:24 |
| **1** | **10:02**  2:21 10:2 10:5 | **12:04**  91:10 | **1:53**  107:5 |
| **1**  5:11 53:9,14 53:17,19,23 57:2 62:5,8 64:7 68:13,25 99:4 102:21 105:14 136:25 141:4 154:12 166:7 180:3 194:10 197:11 197:20 211:3 212:2 218:13 218:16 236:18 260:2 261:6 262:5 | **10:50**  270:6 | **12:16**  105:19 | **1st**  84:22 121:8 183:8,12 |
| **1,075,000**  131:4 | **10:58**  57:2 | **12:45**  119:19 | **2** |
| **1/27/2016**  6:23 | **10th**  10:5 147:11 | **13**  7:4 161:2,3 161:6 167:17 | **2**  5:15 57:5 63:12 69:13 71:25 72:4,5 91:6 99:4 107:9 129:22 136:25 141:5 154:13 194:10 211:3 239:13 239:15,20,22 239:22 240:3,6 240:8 242:12 249:7,10 250:12,15,16 250:18,22 260:2 261:4,6 261:8 |
| **1/30/2018**  7:9 | **11**  15:6 197:13 198:1 | **14**  7:8 70:4 178:24,24,25 | |
| **10**  1:19 2:22 6:19 10:1 129:19,21,23 132:5 135:4,17 146:13,20 | **11/25/2019**  8:4 | **146**  6:19 | |
| **10,000**  92:7 | **11/29/17**  5:19 | **14th**  15:6 | |
| **10/22/13**  5:15 | **11/4/2019**  6:13 | **15,000**  229:14 232:22 | |
| | **117,152**  231:3 | **154**  6:23 | |
| | **117,152.03**  137:20 | **15th**  268:21 | |
| | **11:14**  57:6 | **16**  7:12 95:15 287:25 288:2 | |
| | **12**  5:5 6:23 59:10 107:23 154:7,8 | **16.66**  87:16 89:9,15 113:12 113:15 114:4 189:24 197:18 | |
| | **12,500**  230:12 | **16.67**  87:15,16 197:16,17 | **2.07.**  123:19 |
| | **12/1/2019**  6:17 | **161**  7:4 | **2.08**  124:6 |
| | **12/10/2014**  6:19 | **1630**  92:16 | **20**  85:24 87:17 129:16 140:17 140:20 |
| | **12/19/2017**  7:5 | **17**  7:16 24:14 268:12,14 | **200**  8:4 |
| | **12/31/2020**  9:12 | **178**  7:8 | **200,000**  173:11 238:10,19 |
| | **12/31/2021**  141:1 | **17th**  209:6 | **2012**  43:11 62:13,23 70:20 |
| | | **18**  166:8 167:22 | |
| | | **1801**  3:7 | |

**[2012 - 3,000]**

70:23 71:2,11 71:14 73:9,16 73:24 74:2,16 80:3,7

**2013** 72:10

**2014** 147:11 148:15 154:4

**2016** 67:19 159:10

**2017** 75:11,21 76:6 79:3 80:2 80:8 166:8 167:22 182:24

**2018** 8:17 84:22 85:6,9 85:14 88:25 89:21 90:12 122:1 128:2 171:12 179:11 180:7,10 183:8 183:12,24 185:4 186:12 186:24 189:21 199:12 200:3 202:14,17 217:13 218:1,5

**2019** 90:11 93:7 95:15 105:19 107:5 108:22 117:4 121:8 123:12 124:2,16 128:2 128:9 131:4,8 132:12 135:8

136:8 138:20 189:22 192:21 197:22 202:13 268:21 270:6

**2020** 8:22 129:12 131:17 131:21 132:2 133:23 135:13 135:19,20 136:2 138:20 141:1 170:23 181:10 220:25 221:23,24 222:3 224:10 224:12,17

**2021** 132:2 136:9 137:3 138:21 140:19 140:20 141:2 197:13 198:1 198:23 203:24 204:10 222:6 238:11 280:13

**2022** 138:22 140:17,18 141:12 145:19 220:23 222:4,7 239:10

**2023** 138:22 141:8

**2024** 209:6

**2024/2025** 209:17

**2025** 1:19 2:22 10:1,6 294:21 295:3

**203** 8:7

**206** 9:14

**21** 9:20

**210** 8:14

**217** 8:17

**21st** 203:24 204:10 238:10

**22** 7:20 193:20 193:21 194:7 196:9,11

**220** 8:20

**226** 9:20

**227** 9:21

**228** 9:4

**22nd** 72:10

**23** 7:24 196:17 196:18

**235** 9:7

**23rd** 270:6

**24** 8:4 9:21 179:11 200:18 200:19

**24th** 3:7

**25** 8:7 203:12 203:13

**25,000** 219:11

**25,411** 132:10 132:12

**258** 8:11

**26** 8:11 62:13 206:14 258:12

258:14 259:4

**268** 7:16

**27001** 2:20 3:15 10:22

**272** 8:24

**28** 8:14 180:7 180:10 209:25 210:3 215:16 219:10

**2850** 145:8

**288** 7:12

**29** 294:21 295:3

**29th** 75:11,21

**2:00** 119:24

**2:22** 1:9 2:9 10:19

**2:32** 179:12

**2nd** 239:10

**3**

**3** 5:19 74:20,22 75:3 91:9 119:18 123:10 123:18,19 129:19,21,23 136:25 141:5 194:10 211:3 211:11 212:14 260:3 261:6 289:3

**3,000** 96:7 102:20,23

**[3/1/2018 - 8/5/2020]**                                                    Page 3

| | | | |
|---|---|---|---|
| **3/1/2018** 5:24 | 108:21 119:23 | **5** | **6:42** 2:21 |
| **3/2021** 7:25 | 122:8,9 136:25 | | 292:13 |
| **30** 17:10,10 | 141:5 157:5,20 | **5** 6:4 91:15,19 | **7** |
| 295:16 | 158:19 167:8 | 101:2,3 102:21 | |
| **300,573.51** | 194:10 213:8 | 122:6,7 132:4 | **7** 6:11 69:12,14 |
| 208:15 | 260:3 261:6 | 136:25 141:5 | 98:20,21,22,25 |
| **30th** 222:6 | 280:13 289:3 | 146:5,6 167:12 | 99:3 104:14,16 |
| **31** 8:17 217:6,7 | **4,250** 185:25 | 194:10 215:9 | 136:25 215:18 |
| **310** 3:9 | **4/26/12** 5:11 | 264:24 | 215:21 227:20 |
| **3100** 135:5 | **40** 9:4 228:8,9 | **50** 38:24 81:12 | 231:3 258:24 |
| 146:4,6 | 228:10,17,18 | 87:15 109:15 | 270:4 |
| **31st** 129:12 | 228:19 233:3 | 109:16,20 | **7,000** 230:5,5 |
| 137:2 141:8 | 235:4 | 197:16 265:12 | 231:16 |
| **32** 8:20 220:9 | **400** 133:23 | **50,000** 219:4,16 | **7113** 294:24 |
| 220:10,18 | **402,106** 131:18 | 219:22 220:3 | **72** 5:15 |
| **33.33** 107:20 | 141:2 | **500** 109:22 | **74** 5:19 |
| 108:14 109:2,5 | **41** 9:7 235:5,6 | **500,000** 173:13 | **75** 27:14 |
| 113:16,25 | 235:13,14,15 | **556** 3:22 | **75,000** 270:11 |
| 189:24 | 241:22,23 | **556-9663** 3:9 | **750-5530** 3:24 |
| **350** 2:20 3:15 | **42** 9:10 128:19 | **5:45** 258:21 | **7506** 133:22 |
| 10:23 | 128:20 129:17 | **5:55** 258:25 | **7572255** 295:5 |
| **36** 228:4,15 | 245:3,22,24 | | 296:2 |
| **370** 99:17 | 246:2 | **6** | **7800** 141:17,18 |
| **38** 8:24 272:17 | **43** 9:14 206:17 | | **8** |
| 272:18 | 206:18 | **6** 6:8 97:3,4,17 | |
| **396** 100:1 | **43's** 209:23 | 135:4 136:25 | **8** 6:13 104:15 |
| **3:06** 167:9 | **44** 255:6 | 185:4 194:10 | 104:16,19,21 |
| **3:15** 167:13 | **444** 3:22 | 211:14 215:12 | 112:17 122:5 |
| **3rdparty** 283:1 | **4:28** 215:9 | 258:21 | 124:22 135:17 |
| **4** | **4:30** 92:18 | **6/21/21** 8:8 | 136:25 185:5 |
| | **4:40** 215:13 | **62** 5:11 | 186:12 |
| **4** 5:23 65:19 | **4:49** 147:11 | **657-0255** 3:17 | **8/15/2019** 7:17 |
| 83:18,19 | | **66.67** 107:19 | **8/30/2022** 8:20 |
| 105:19 107:5 | | **660,010** 141:12 | **8/5/2020** 7:12 |
| | | **6950** 132:8 | |

**[818 - activations]** Page 4

**818** 3:17
**824,240** 141:2
**83** 5:23
**83,000** 245:8
**888** 3:24
**8:37** 186:24
**8th** 186:24

**9**

**9** 6:16 120:4,5
  136:25 243:17
**9,218** 231:25
**9/10/2025**
  295:5
**9/20/19** 6:4
**90067** 3:8
**901,000** 141:21
**91** 6:4
**91105** 3:23
**91301** 3:16
  10:23
**9466** 1:23 2:23
  12:3 294:25
**97** 6:8
**98** 6:11
**9:20** 166:8
**9:35** 167:22
**9:54** 185:5

**a**

**a.m.** 2:21 10:2
  10:5 57:2,6
  185:5 186:24
**aa** 17:25 18:12

**abff** 233:13,17
**ability** 35:17
  262:6
**able** 30:8 81:3
  90:8 95:18
  96:15 117:7
  151:3 212:11
  213:10,13
  245:10 270:18
**above** 106:20
  107:12 120:22
  166:17 168:12
  185:21 295:6
**abreast** 261:17
**abt** 268:19,23
**ac** 96:10 99:6,9
**accepted**
  191:11
**access** 100:14
  100:16,20
  103:15,25
  173:15 212:3
  212:11 253:15
**accident** 228:7
**accommodate**
  13:6
**accordance**
  69:21
**account** 48:14
  58:7,12,25
  59:3,18 90:11
  92:4,5,7,25
  93:7,15,18
  94:2,16,21,24

95:9,12,18
96:14,19,20,24
98:10,12,15
99:12,17 100:1
100:7,24
101:14 102:3,9
103:1,22,25
104:4 109:18
109:23 113:4
117:5 118:13
119:9 126:8
131:10 140:23
143:12 152:16
152:23 175:21
187:23 205:19
206:10 212:12
214:9 216:18
236:24 237:10
238:13,14
239:8,16 240:2
240:23 241:6,9
242:2,20 244:4
256:14
**accountant**
  142:7
**accounting**
  22:7 134:18
  140:12 141:19
  193:4 197:1
  207:10 226:9
  240:21 256:7
  278:16
**accounts** 8:9
  48:13 58:22

79:17 94:10
96:18 100:5,10
100:13,15,19
103:16 131:15
134:9 135:10
135:15 152:9
188:10 192:17
206:13 212:3,4
212:12 222:25
**accuracy** 295:9
**accurate**
  132:15 140:10
  140:12 294:11
**accuses** 213:19
**acknowledging**
  95:5
**acknowledg...**
  295:12
**acquired** 50:24
  150:24
**act** 157:10
  280:22
**acting** 260:10
**action** 11:3
  25:8,11 29:6
  78:6 294:17
**activated** 94:2
**activation**
  261:21 264:25
  265:2,8,19
**activations**
  262:14 264:20
  265:13 268:9

Veritext Legal Solutions

[active - agreement]                                                    Page 5

| | | | |
|---|---|---|---|
| **active**  44:3,25 | **addendum** | **advise**  209:17 | 168:14 288:24 |
| **activities**  241:3 | 63:16 64:1 | **advised**  27:9 | **agreeing** |
| **activity**  212:16 | 155:12,24 | 209:21 | 168:15 202:24 |
| 218:24 239:6 | 156:5,8,14 | **affairs**  78:12 | **agreement**  5:11 |
| **actors**  284:24 | **addendums** | 78:13,15 | 5:23 6:16 |
| 285:2,10,14,16 | 66:19 156:25 | **affect**  38:3 | 41:12 54:9 |
| **actual**  16:13,15 | **additional**  45:4 | 152:12 | 59:17 62:11,22 |
| 42:20 43:2 | 98:5 | **affiliations** | 63:1,8,25 64:2 |
| 54:4 59:18 | **address**  15:10 | 11:7 | 65:4,7,20 66:3 |
| 78:6 129:15 | 16:8,15 38:21 | **affirming** | 66:12,15,19,22 |
| 139:14 159:2 | 55:17 73:4 | 271:22 | 67:1 68:13,17 |
| 180:3 | 77:20 92:9 | **afternoon** | 68:23 69:8,24 |
| **actually**  13:17 | 99:5 105:15 | 204:11 | 70:1,12,16,20 |
| 32:17 39:9 | 150:7,13,16 | **age**  282:2 | 70:22 71:1,7 |
| 42:4,11 61:4 | 188:9 197:20 | **agency**  275:6 | 71:10 73:15,19 |
| 79:6 82:21 | 257:14 269:6 | **agents**  27:25 | 73:25 74:2,17 |
| 108:19 114:18 | **administer** | 250:9,10 | 80:3,6 81:24 |
| 120:20 129:23 | 11:23 | **ago**  15:7 17:10 | 82:11,14,21 |
| 132:19 139:1 | **administered** | 24:14 51:2,10 | 83:2 84:10,11 |
| 195:7 206:16 | 12:6 | 51:17 74:12 | 84:16,20,21,21 |
| 208:6,17 220:3 | **administration** | 78:22 144:1 | 84:23 85:6,15 |
| 247:19 250:8 | 237:13,14 | 147:14 150:14 | 87:12,19,23 |
| 254:23 265:20 | 242:24 | 214:6 223:24 | 88:2,20 89:21 |
| 273:13 276:22 | **admonition** | 247:1 274:15 | 90:6,12,25 |
| 286:13,17 | 254:19 | **agoura**  2:20 | 103:5 106:19 |
| 287:18 291:3 | **admonitions** | 3:15 10:22 | 106:25 108:6 |
| **ad**  102:16 | 13:20 14:11 | **agr**  1:9 2:9 | 108:20 110:5 |
| 256:18 267:24 | 19:3 | 10:20 | 113:1,7,11 |
| 267:25 281:15 | **adp**  189:15 | **agree**  10:12 | 114:4 116:19 |
| **add**  183:15 | **ads**  93:25 | 109:19 113:25 | 117:14,21,24 |
| 291:23 | 281:11 282:5,5 | 175:12 285:2 | 118:14 120:9 |
| **added**  95:12 | **advertising** | **agreed**  14:22 | 121:7,22,25 |
| 163:17 | 246:22 282:5 | 33:13 114:2,6 | 123:12,24 |
| | | 114:23,24 | 124:2,9,11,17 |

**[agreement - angelone]** Page 6

| | | | |
|---|---|---|---|
| 125:10,15,20 | 174:19 191:15 | **amply** 14:1 | 128:6 147:6,11 |
| 125:24 126:2 | 205:21 206:5 | **analysis** 212:21 | 148:16 149:5 |
| 126:11,23 | 246:7 255:25 | **analytics** 281:8 | 151:11,20,22 |
| 127:18,23 | 275:17 276:2 | **analyze** 262:25 | 155:6,9 158:23 |
| 128:1,3,5,7,9 | 290:2 | **angeles** 3:8 | 159:6,12,21 |
| 128:11 156:8 | **ahead** 62:19 | **angelone** 1:10 | 160:2,13 |
| 157:9,15,21,22 | 64:15 78:2 | 2:10 4:4 6:9 | 161:13,15,22 |
| 157:24 160:19 | 207:10 286:5 | 10:17 11:12,20 | 162:3,12 |
| 171:5,12 | **al** 10:17,17 | 32:19 33:16,17 | 163:19 165:2 |
| 174:21 176:2,5 | 22:17 | 33:18,21,25 | 166:11 168:8 |
| 189:21 190:8 | **alcohol** 252:23 | 34:14 36:16 | 169:17 170:5 |
| 190:10,16 | **allegations** | 37:4 40:6 41:4 | 170:18 171:2,8 |
| 191:6 192:21 | 175:19 | 41:21 42:11 | 171:16,19 |
| 197:14,23 | **allegedly** | 43:4,9,13 49:8 | 172:15,17,18 |
| 198:1 200:3 | 175:20 | 70:24 71:15 | 174:25 175:19 |
| 201:16 202:13 | **alleging** 194:19 | 74:15 75:10,10 | 176:2 179:16 |
| 202:14,17,21 | **allocated** | 75:22 80:13,18 | 181:7 182:23 |
| 203:3,5,10 | 107:23 118:1,8 | 85:3 86:5,22 | 183:7 185:5,17 |
| 204:13,18,24 | **allocation** | 87:17 89:2,5,9 | 186:1,3 187:8 |
| 205:8,12,14,15 | 272:5 | 89:15 90:3 | 190:9 191:3,15 |
| 205:16,18 | **allotted** 295:19 | 93:14,17,21 | 191:22 192:10 |
| 210:20 211:11 | **allowed** 285:4 | 95:6,8 96:21 | 192:15,24 |
| 213:19 215:25 | **amend** 66:21 | 98:4,9 100:24 | 197:17 198:18 |
| 217:3,15 | **amended** 60:7 | 102:1,13 103:6 | 206:6 210:1 |
| 218:20 236:15 | **amendments** | 104:12,15 | 211:15 212:15 |
| 243:1 244:21 | 66:19 | 110:16,21 | 212:22,24 |
| 255:24 256:4 | **amount** 132:10 | 111:11,16,17 | 213:9,11,19 |
| 257:12 288:18 | 137:21 141:21 | 113:21,25 | 216:17 218:23 |
| 289:13,14,15 | 231:9 239:2 | 114:8,18,19,25 | 228:17 235:13 |
| 289:18,21,23 | 245:8 287:7 | 115:1,15,17 | 235:16,23 |
| 290:4,12 | **amounts** 73:23 | 116:7,22,24 | 236:9 253:12 |
| **agreements** | 74:13 178:11 | 117:6,11,13,15 | 256:10 259:16 |
| 31:15 71:13 | 239:3 | 118:15 122:6,8 | 260:9 261:2,11 |
| 82:3 83:4,8 | | 127:4,7,19 | 261:17,22 |

262:3,12,22
263:5,24 264:5
264:7 265:5
267:19 276:23
277:2,7,9
279:19 280:13
280:16,22
295:4 296:1
**angelone's** 32:4
32:13 33:9
66:7,8 92:5,8
96:8 98:15
102:19 153:23
156:22 183:21
211:21,24
212:5
**angry** 37:22
38:4 40:19
**annual** 207:11
229:10
**answer** 9:19
15:20,25 16:1
16:5 17:1
19:23 20:1,13
20:20,24 21:5
21:5 30:25
31:6 33:4,5
34:24 35:9
38:25 39:5,7
39:11 42:3
50:4 71:21
81:25 85:20,22
88:1 90:9
110:3,6 111:21

115:3 124:24
125:14 135:14
154:2 169:25
181:13,20,22
181:24 182:3,9
182:12,18
190:21 192:2,5
192:6,13,13
212:13 218:15
226:20,21
227:3,10,15,18
227:24 228:1
250:8 254:25
**answer's** 192:4
**answered**
71:20 77:12
112:7 190:2
218:8
**answering**
14:17 182:6,25
254:20
**answers** 30:6
263:23
**anybody** 83:5
149:25 162:1
209:21
**anymore** 200:8
246:18,19
**anyway** 64:3
**aone** 1:10,11
2:10,11 5:12
7:20 11:12
32:5 62:11,22
63:1 64:22

70:22,25 71:10
71:15 73:10,23
74:3,5,15 80:3
107:19 108:15
109:1,4 113:11
155:13 156:15
157:2 158:14
159:16,24
160:13,24
175:3,20 186:7
194:8,15,18
196:13 204:3
205:4 259:14
260:9 261:11
261:18,22
262:3,11,22
264:2 280:13
**aone.la** 183:7
**apart** 221:9
**apc** 3:19
**apologize** 48:18
**apologized**
147:15
**appeal** 208:22
208:24 209:1
**appear** 66:8
88:11 95:4
158:20
**appearance**
11:7,9
**appearances**
3:1 4:1
**appeared** 88:9

**appears** 72:24
105:14,17,18
154:25 187:14
217:13 230:10
236:15 239:12
270:4
**applicable**
295:8
**application**
102:7
**applied** 90:18
**apply** 88:14
146:17
**applying** 88:12
**appreciate**
56:20 64:13
91:14
**approach**
211:15
**approaching**
212:6
**appropriate**
48:16
**approval** 38:1
70:10 159:8
284:24 285:5
**approved**
125:3,7,11,16
132:14 134:6
135:23 290:2
**approximately**
17:9
**approximation**
140:9

**[april - attorney]**

| | | | |
|---|---|---|---|
| **april**  62:13 70:23 280:13 | **asking**  40:18 48:5,18 50:9 57:9 92:13 93:24 96:25 101:11 136:2 140:4 148:16 156:4 184:1,20 190:25 198:17 205:8 220:25 256:19 260:21 260:24 | **associated** 267:15 | **atfg**  105:7 |
| **aprio**  79:9,10 79:18 256:8 | | **assume**  20:2 66:17 71:22 89:18 93:10 97:25 99:24 130:12,18 149:10 171:10 171:13 199:19 204:22 208:3 211:17 220:2 222:21 230:24 234:14 274:5 277:16,18 291:24 | **attach**  61:5 |
| **area**  65:16 | | | **attached**  6:25 62:9 64:1 72:6 74:23 83:20 91:16 96:13 97:5 98:23 104:22 120:6 128:21 146:21 154:9 161:4 179:1 185:6,7 193:22 196:19 200:20 203:14 206:19 210:4 217:8 220:11 228:20 235:7 258:15 268:15 272:19 288:3 293:7 295:11 |
| **arm**  44:24 119:5 187:3,18 245:13 | | | |
| **art**  262:1 266:21 | | | |
| **articles**  224:23 275:17 276:1 | **asks**  43:8 178:4 | | |
| **artist**  176:6,8,9 178:19 181:7 182:23 | **aspects**  159:21 | | |
| | **assembly**  21:21 | | |
| | **asset**  283:1 | | |
| **artists**  267:2 | **assets**  36:20 137:9,10 159:1 159:23 166:14 257:4,4 269:21 | **assumes**  87:24 109:6,25 110:12 111:20 125:13 277:12 | |
| **aside**  26:2 | | | |
| **asked**  20:12 24:15,16 29:12 30:9 31:12 38:11 40:17 43:1 48:18 71:19 93:22 100:21 103:18 126:6,15 142:9 142:11 143:6 146:16 150:6 155:11 184:1 189:19 190:2,4 218:8,21 221:23 225:15 240:15 246:4 275:3 283:22 289:25 | | **assuming**  41:22 75:13 76:7 88:15 89:3,6 95:2 96:7 100:10 108:17 113:17 127:2 142:4 146:8 166:20,23 168:20 190:13 193:15 194:17 195:6 201:15 204:20 231:7 | **attachments** 154:18 |
| | **assign**  69:17 | | **attack**  215:22 |
| | **assigned**  70:16 267:14 288:22 288:24 | | **attacks**  211:18 |
| | | | **attempt**  212:2 212:15 218:22 |
| | **assist**  78:7,10 149:11,14 151:11 197:7 | | **attempts**  33:21 |
| | **assistance** 148:17 149:23 | | **attended** 265:14,15 |
| | **assistant** 234:22 278:8 | | **attending**  11:6 18:13 |
| | **assisted**  142:4 262:13 | **assurances** 191:16 | **attention** 285:18 |
| | **assisting**  21:20 58:9 267:9 | | **attorney**  3:6,14 3:21 11:10 |

12:16 13:5,14
13:15,16,19
15:16,21,25
16:17 25:7,8
30:9 63:4
82:13,20,24
84:23 85:13
105:21,22,23
171:3 186:19
207:7,9 294:18
295:13
**attorneys**
182:16 203:8
214:11,14,16
**attribute**
153:23
**audience**
281:13,21,24
**audio** 10:11,11
**august** 72:10
222:4,6 239:10
268:21
**authority** 94:24
272:7,12,14
**authorization**
38:1 240:7
286:21
**authorize**
52:15 78:2
201:13 207:20
286:4
**authorized**
70:7 74:4 78:5
98:5 237:10

271:23 286:2,3
291:12
**authorizing**
74:9 205:11
**automatic**
207:12
**automatically**
207:13
**automobile**
133:23
**automotive**
134:2
**available**
179:24 295:6
**avaunt** 79:4,6
79:19 130:24
130:24 134:19
134:23 142:10
142:14,18
196:25 197:23
256:9 278:17
278:18
**avent** 75:13,13
75:15 183:12
**avenue** 3:22
**award** 233:15
**awards** 233:13
233:17,21
**aware** 26:5
29:2,8,9,11,14
29:18 32:18
60:21 83:6
100:23 112:25
113:2 117:9

133:20 158:9
194:18 200:1
271:3 273:13
290:13

| b |
| --- |

**b** 147:14
241:18
**bach** 271:7,9
**back** 14:21
19:3 40:11
43:9,10 57:4,8
61:3 62:23
69:6 70:14,23
71:11,14 73:16
73:24 74:15
75:11 79:3
80:2 83:15
84:9 85:8,23
85:23 88:25
91:8 96:5 97:7
101:2 107:3,22
119:22 121:4
122:2 124:19
142:25 143:3
145:19 148:4
148:11 151:16
159:10 167:11
191:20 195:14
195:18 204:10
215:11,16
218:1,12 222:4
244:14 245:22
246:9 249:24

253:19 258:23
270:14 272:3
**background**
17:11 36:7
154:5
**backpack**
232:13,15
**backpacks**
229:6
**backup** 143:2
221:18 229:24
230:25 232:8
245:11
**backward**
141:4 276:14
**backwards**
136:25 137:1
**bad** 286:23
**bags** 229:12
**balance** 137:2
185:11 186:4
**bank** 6:6,11 8:9
9:7 57:17 58:7
58:22,25 59:2
59:16,18 60:1
90:10,12 91:22
92:25,25 93:4
93:6,15,18
94:3,6,10,16,16
94:20,21,24
95:9 96:18
97:24 99:12
100:7 103:15
109:18,23

**[bank - billed]**

113:4 117:5 118:13 126:4,7 126:10 143:5 205:19 206:10 206:11,12 223:1,7 225:2 230:6 235:11 235:15 236:2 236:16,22,25 238:14,15,20 239:7,8,16 242:2 269:23

**bank's** 225:6

**banked** 57:15

**banker** 91:22 93:3 95:5 126:6

**banker's** 287:1

**bankers** 58:18

**banking** 31:13 57:24 58:1,5,9 60:2 100:8

**banks** 57:22 59:21

**barbara** 8:21 79:13 128:25 130:4,6 134:22 134:23 142:3 216:6 220:23 220:25 221:5 221:12 222:22 224:5,6,14 246:3 256:5,6

**barbara's** 135:21

**bas** 241:17

**base** 123:20 124:25

**based** 22:8 59:1 70:19 108:25 114:7 117:23 117:24 119:9 158:19 159:6 161:12 219:15 284:15 285:7

**basically** 96:12

**basics** 107:8

**bates** 277:2

**bathroom** 13:8 255:8

**becoming** 41:23 42:12

**began** 43:18 171:7

**beginning** 2:21 11:9 57:5 91:9 119:23 167:12 203:4 215:12 258:24

**behalf** 2:19 9:4 34:1 49:9 52:20 58:15 64:21 66:12 67:3 71:17 74:5 79:7,23 94:20 98:16 104:4 111:17

114:21 118:2,8 130:8,11 143:8 160:23 165:3 184:5,8,12,21 184:22,22 186:7 195:19 207:21 212:6 218:13 222:4 223:12,21 228:24 236:24 263:25 264:9 265:9 267:19 268:2 269:10 270:19 280:23 289:8,23 291:7

**believe** 16:14 25:2 27:17 30:2 34:14 43:3 44:13 50:5,21 53:25 54:22 55:5 56:4 57:18 68:9 69:13 71:5 73:13,22 80:11 82:5,9 82:18 88:24 104:1 105:23 107:8,13 113:11 117:6 124:3 125:19 130:22 134:19 137:13 139:5,8 141:8 160:12 166:7 168:12

168:13 172:3 185:21 188:18 193:8,12 204:10 209:6 209:10 210:17 218:12 234:2 238:9 244:7 247:22 248:1 248:12,14 250:6 252:13 256:9 273:20 274:22 278:11 278:16 279:15 285:12

**bell** 59:10,14 59:15 245:21

**bella** 17:17

**belong** 159:6 248:15

**benoit** 278:9,9

**benz** 51:1 230:12

**best** 14:14 19:6 20:2,15 31:18

**better** 12:20 92:22 141:6 153:16

**big** 61:20,20

**bigger** 187:7,11

**bill** 115:21 116:11 241:10 268:9

**billed** 7:20 116:13 165:25

166:1,2,3 194:16 267:23 268:1

**bit** 19:3 36:4 38:10 255:12 255:13

**black** 27:17 165:10 166:24 193:6,10,16,25 194:5 249:23 251:22,24

**blackhouse** 232:22,24

**blacks** 27:16 155:10 157:3 158:14 165:9 166:2,3 248:13 248:19,20 249:7,9

**blacula** 27:24

**blank** 79:9,11 125:2

**blanks** 14:21 133:7

**bless** 94:25 95:1 121:6 163:23

**blessing** 81:2

**block** 232:18

**blood** 38:7

**blue** 27:17 249:23

**board** 225:17

**book** 106:7 232:2,2

**booking** 22:23 22:24

**bookkeeper** 142:7

**booklet** 14:18 30:5

**bottled** 253:10

**bottom** 105:13 123:13 129:20 166:6 179:19 180:3,21 185:3 197:11 204:12 229:2 232:17 261:10 262:16

**box** 36:1 224:12,16 261:19,24 262:3,9,19 265:19

**brand** 46:5,12 46:13 47:7 119:5 183:16 213:9

**break** 13:4 35:25 56:22 91:2 97:9,13 101:25 104:24 112:16 119:14 119:14 167:2 215:5 255:8

**breakdown** 120:16,17

121:23

**breaks** 13:6 19:5

**briefly** 12:19 14:11 15:16 69:16 70:5 71:25 72:13,23 85:25 193:20 196:10,23 217:6 220:13 235:20 236:14 258:12 287:25

**bring** 49:8,9 60:22,25 182:16 255:3

**broad** 76:25

**brought** 49:6 135:10,15 145:2 168:3 284:12 285:17

**bsuite** 241:17 241:24

**budget** 7:10 61:23,24 191:23,24 192:3 272:10 272:13

**budgets** 192:16 192:18

**build** 47:7

**building** 46:12 46:13

**bullet** 261:4 262:5

**bunch** 162:24

**burger** 23:12

**business** 6:8 15:4 17:7 18:11 22:19 23:18 27:6 35:20 36:4,23 38:12,12 39:12 41:16 42:2,21 44:23 45:4 47:1,4 50:22 51:19 52:8 55:14,18 56:3 56:6,9,16 59:23 78:12,13 78:15 93:11 98:2,16 110:7 119:2,3,11 123:21 134:18 143:12,16,20 143:22,22 144:3,15 146:9 146:18 152:7 152:13,18,22 169:7,24 176:12 184:4 184:11,21 187:22 188:4 188:11 200:6 207:7 232:10 232:15 255:16 257:13,14 261:11 263:15 263:20,21,24

**[business - cause]**

267:11 273:14 283:15,16

**businesses** 46:16 257:11

**buy** 174:15

**buys** 102:16 163:14 256:18 267:24,25 281:15

**c**

**c** 99:20

**cabinet** 223:18 224:2

**cable** 163:14

**calabasas** 1:18 2:20 3:16 10:1 10:23

**calculate** 56:1

**california** 1:2,6 1:18 2:2,6,20 3:8,16,23 10:1 10:19,23 12:2 17:3 22:1,13 172:4 180:15 180:16 193:1 206:25 208:10 209:13,18 294:2

**california's** 180:14

**calin** 3:13 11:11,11,15 19:13,16,20,23

20:1,5,11,19,23 21:3,9 86:19 119:21 127:13 228:15 292:4,8 292:10

**call** 13:10 32:10,13 57:25 71:15 78:8 126:4,10,14 131:18 189:20 189:21 256:24

**called** 26:17 44:6 60:6 68:2 137:1 147:13 171:23 208:25 232:18 241:17 250:21,24 251:19 280:25 287:15

**calling** 200:16

**calls** 109:8,24 110:13 114:11 158:4 259:22 277:11

**cama** 48:13

**campaign** 212:14 213:8 218:22,25 243:2 246:20 246:22 251:2 262:25 265:3,6 267:15 270:11

**campaigns** 271:24

**campbell** 8:21 79:13 128:25 130:4,6 216:6 220:23 224:14 246:3 256:5

**campbell's** 246:4

**canceled** 147:14

**capable** 117:6

**capital** 245:20

**capitalized** 118:17

**car** 49:20 52:3 52:4,6,7 138:4 240:14,15

**carbon** 201:6 268:21 288:8

**card** 6:8 58:11 58:13 92:5,8 93:17,20,23,25 94:1 95:6,9,11 96:8,9,13,13,14 96:21,23,24 98:2,5,9,11,11 98:12,12,13,15 99:25 100:6,6 100:9 101:7,8 101:14 102:1,4 102:8,13,14,15 102:19 103:7,9 103:14,14,18 236:20

**cards** 92:6 100:11 101:17

**care** 81:3

**career** 81:2

**careful** 67:9

**carrying** 27:6 185:11

**cars** 51:25

**carved** 256:21

**case** 10:19 20:9 25:12,13,21,24 30:16 73:7 150:17 185:15 224:20 227:9 257:5 264:14 294:14

**cases** 25:1

**caught** 83:11

**cause** 19:4 20:25 31:9 67:10 76:22,25 86:7,13 92:21 104:18 142:1 147:1 148:22 149:1 153:9 159:7 166:18 181:16,25 188:20 198:3,7 205:25 221:11 224:1 225:22 228:11 237:25 264:4 269:14 279:17 289:25

**[cc - claiming]** Page 13

cc 6:21
cease 212:15
  218:23
cell 10:9
cellular 10:8
center 22:10
central 1:2 2:2
  10:18
cents 231:3
century 3:7
certain 13:20
  60:17 114:20
  139:10,21
  142:25 153:12
  158:17 178:7
  188:2 263:5
  267:6
certainly 15:24
certified 2:23
  12:2 294:1
certify 294:3,16
cetera 13:10
  107:21 144:17
  179:23 255:21
  275:17 276:2
  284:7
cfry 112:22
chain 1:12 2:12
  6:4 7:4,8,16
  8:7 11:12
  27:14 75:6,9
  91:14 146:23
  161:10 166:13
  187:13 221:2

243:20
chains 179:6
chair 251:22,24
champagne
  252:21,22,23
  252:24,25
  253:7
chance 20:5
  30:11,15 32:4
  32:12 60:9
  62:15 63:20
  64:17,18 70:15
  75:8 86:25
  91:18 97:16
  120:12 161:9
  194:12 200:22
  210:6 220:19
  259:3
change 81:15
  121:23 122:22
  122:25 123:2
  160:19 206:10
  257:10 296:4,7
  296:10,13,16
  296:19
changed 20:13
  207:25
changes 20:6,7
  20:17 122:21
  205:12 207:15
  295:10
changing 38:9
  257:13

character
  117:11
characterizati...
  38:23
characterizing
  39:8
characters
  285:7
charge 107:23
charges 208:24
charitable
  132:8,12,14,19
  229:10 232:25
charities
  132:19,22
charity 132:16
chart 259:7
  260:25 261:10
  261:13 262:17
  264:24 274:18
  274:19,23
  275:2,6,23
  276:10 277:10
  283:11,13,14
  283:17,21
check 7:14
  148:20 152:20
  229:1,8 230:1
  230:11,16
  231:2,11,15,21
  240:20 245:18
checking 230:2
checks 9:4
  58:14 228:24

233:6,19 240:9
  240:11,22
  291:4,4
chief 258:5
choice 182:10
chris 105:19,20
  106:18 107:18
  120:15 123:3
  171:6 201:16
christmas
  229:10
christopher
  6:14
chronologica...
  147:2
church 237:12
  237:14 242:24
circle 290:21
circulate 113:6
circulated
  89:20 113:8
  127:21
circulating
  89:24
cited 31:22
city 9:7 57:17
  205:19 206:11
  235:11,14
  236:2,16,21,25
  238:8,16,20
  239:6 293:11
claim 33:1,9
claiming 32:23

**[claims - company]**                                                                    Page 14

| | | | |
|---|---|---|---|
| **claims** 32:18,22 | **client** 11:19 | **college** 17:20 | **communication** |
| **claps** 278:7 | 63:17 69:22 | 17:22 18:2,6 | 92:1 149:5 |
| 279:3,8 | 237:21 238:4 | 18:17,22,23 | 152:25 198:25 |
| **clarification** | 278:12 290:2 | 21:12,15,16 | **communicati...** |
| 12:15 23:7 | **client's** 71:4 | **colleges** 17:23 | 152:12 161:12 |
| 39:6 53:21 | **clients** 107:23 | **come** 20:25 | 188:12 214:13 |
| 229:17 271:8 | 179:21 256:25 | 108:14 114:14 | **companies** 24:7 |
| **clarify** 32:8 | 257:1 271:24 | 114:23 131:23 | 42:3 48:2,8 |
| 50:3 91:3 | **climb** 251:8,13 | 132:24 137:17 | 79:7 212:9 |
| 170:3 185:25 | 251:14,19 | 152:21 164:18 | 223:4 276:10 |
| **clarifying** | **close** 143:11,16 | 170:20 175:9 | **company** 1:5,6 |
| 204:23 | 143:21 211:17 | 175:10 176:5 | 1:12,13 2:5,6 |
| **clarity** 12:17 | **closed** 29:16 | 190:18,22 | 2:12,13 22:22 |
| 242:11 | 146:8 238:14 | 191:9 263:11 | 24:3,6 26:17 |
| **class** 25:7,11 | **closely** 240:25 | **comedy** 63:9 | 27:5 32:19 |
| 29:6 87:15 | 241:2 | 174:14 | 34:17 37:5 |
| **classes** 18:24 | **closing** 143:15 | **comerica** 57:17 | 39:17,21,24 |
| 21:16 | **clothing** 253:6 | **comes** 107:22 | 40:2,4 42:1,6 |
| **classify** 61:15 | **cmbc** 237:17 | 156:8 173:6 | 42:11,25 43:18 |
| **clause** 69:23 | 251:1,7 264:12 | 188:2 194:25 | 44:4,6 45:4,15 |
| 160:8 | **cms** 283:7 | **comfortable** | 45:15 46:5 |
| **clear** 26:10 | **code** 166:24 | 16:7 191:4,13 | 49:19 52:8 |
| 68:16 69:2 | 277:24 | **coming** 31:11 | 54:1,2,4,8 |
| 76:21 90:23 | **codeblack** | 156:22 242:15 | 75:25 76:5,7 |
| 124:11 198:2 | 168:1 | **comment** 19:10 | 76:10,12,24 |
| 212:22 222:11 | **coerce** 212:15 | 20:22 117:16 | 77:1,11,24 |
| 261:6,7 | 218:22 | 181:9,11 | 78:4,18,19,21 |
| **clearly** 68:22 | **coffee** 83:22 | **commented** | 80:2,5,8,14,17 |
| 97:11 103:23 | **collaboration** | 20:8 | 80:20,25 81:8 |
| 168:16 187:14 | 213:8 | **communicate** | 82:15 106:20 |
| 191:13 198:24 | **colleague** 244:8 | 152:17,17 | 107:19 109:18 |
| 209:2 | **collection** | 199:5 203:8 | 109:20 110:9 |
| **clerk** 140:12 | 48:14 281:14 | **communicated** | 110:25 118:22 |
| | 287:16 | 142:7,13 199:2 | 118:22 123:21 |

**[company - context]**

134:21 135:1 135:10,25 136:21 142:19 145:14,15 149:9 150:3 162:23 163:9 164:14,15 166:19 167:25 171:22 174:22 179:22 188:7 189:9,12 191:7 198:22 203:8 206:24 210:9 210:11 211:20 213:4 214:18 214:21 223:5 225:24 229:16 229:19 231:19 232:6 234:2,19 237:18 240:21 243:21 254:9 254:10,15,17 257:17 261:3 274:1 276:18 284:5

**company's** 144:23 160:17 164:17 184:22 212:12 214:9 253:22

**compare** 122:3 122:12

**compelling** 227:9

**compensate** 279:9

**compensated** 243:5 267:21 267:23

**compensation** 139:22,23,24 139:25

**complaint** 32:9 32:11,13,16

**complete** 142:19 148:23 169:19 185:25

**completed** 14:19 18:23 48:2 70:25 71:16,23 73:18 142:20 181:5 241:9 295:16

**completely** 45:24 286:11

**completion** 5:16 18:17 69:19 294:14

**compliance** 101:10 275:8 275:12

**components** 35:23

**compound** 154:1

**con** 176:6,8,9 178:19 181:7 182:23

**concept** 76:16

**conception** 164:15

**conceptually** 163:25

**concern** 160:23 263:20 264:10 267:11 283:16

**concerns** 191:21

**concerts** 21:23

**concludes** 292:14

**conclusion** 170:20 177:3

**conditions** 124:15 126:22

**confident** 185:14

**confirm** 87:19 88:23 112:18 136:5 200:11 217:16

**confirmation** 275:25

**confirmed** 214:5

**confirming** 92:3

**conflict** 37:24

**confuse** 92:24

**confused** 169:10

**confusing** 238:23

**confusion** 204:22

**connect** 75:25 76:4 269:4,21

**connected** 152:10 176:20

**connection** 71:1

**consent** 104:5,7

**consider** 61:21 145:4

**consideration** 115:15 185:9

**considered** 157:12,16 158:2 160:9

**considering** 131:9

**consistent** 248:22

**constant** 176:7

**consultant** 229:19 233:7

**consulting** 141:19 253:20

**contact** 207:14

**contain** 14:20

**contained** 293:8

**content** 159:22

**context** 124:25 168:22 187:13

**[context - correct]**                                    Page 16

204:25 271:13
**contingent** 272:7
**continuation** 155:14
**continue** 10:12 18:2 38:19 39:8 116:4 167:16
**continued** 4:1 6:1 7:1 8:1 9:1 117:8 170:20
**continuing** 165:14
**continuously** 34:7
**contract** 8:14 70:6,9 215:17 219:14,15 269:23 272:4,4 289:3,4 290:14
**contracted** 184:14 261:8 267:7
**contracting** 31:13 175:3
**contractor** 42:7 79:16 111:2 157:10 158:11 158:15,21 159:18 160:3 164:3 243:18 244:1 257:24 274:11 278:19

**contractors** 266:7,8,13 267:1 284:14
**contracts** 31:14 106:6,8,13,15 139:3,6,11,13 290:10 291:6
**contractual** 73:9 288:10
**contributed** 152:25
**contribution** 132:20
**conversation** 37:24 40:12,15 40:21 41:1,4,8 42:14 89:2,5 93:24 113:17 113:18,21 127:2 142:12 171:11,14,15 175:15 192:9 205:25
**conversations** 10:8 41:6 42:10,23 85:11 85:12 89:1,18 108:18 114:16 115:14 116:3 127:9 162:5 190:13 192:1 206:2 218:3
**coo** 258:2,3,5

**copied** 202:7 268:21
**copies** 7:14 9:4 72:3 126:7 222:22 223:1,6 223:23 225:4 291:3 295:14
**copy** 59:17 61:4 62:5,6 66:15 83:16 86:4,8,14,19,21 89:25 90:3 122:10,18 125:23 126:1,5 126:6,10,11,13 126:14 153:9 153:11 189:3 199:13 201:6 210:1 217:2 235:10,21,23 236:1 246:1 255:23 258:13 288:8 291:20 292:3,8
**copy's** 86:4
**corbin** 287:22 287:23
**corner** 260:4
**corp** 201:14
**corporate** 46:22 48:8 49:15,20 52:25 53:5 94:19 111:14 142:6

188:10 220:5 220:14 222:17 222:22 223:11 223:21 224:2 248:5,15,24 249:8,12,25 250:14 251:24 252:11,14 257:12 275:25 276:1
**corporation** 58:25 78:8 172:2
**corporations** 109:1 197:8 225:16,19
**correct** 19:14 23:22 24:17 26:8 27:7,8 29:6 35:4 40:13 41:15,16 41:24 42:8 43:11 46:20 47:25 53:1 54:16 56:7 58:22,23 67:5 73:1 76:10,12 79:22 80:11,14 80:15 81:19 83:8 88:10 91:1 93:1,2,12 93:13 94:11 98:10,18,19 99:20 100:2

**[correct - crucial]**

102:9 103:1 110:19,20 111:3,4,6,25 112:1,3,10,13 112:14 115:12 121:16 125:5 126:2 143:5,8 145:22 150:25 151:1,9 158:3 158:15,16,18 165:17 170:7 178:2 186:11 187:19 190:17 193:7 195:10 196:1,4 198:13 200:8,9 204:23 209:6 211:5 218:7,10,11 220:16 225:8 227:15,16 228:2,3 232:4 237:1,5,6,10,11 240:11 243:6 243:23,24 247:9,10 251:11 253:9 253:11 254:14 257:17 259:9 259:17 260:17 265:9 267:7 269:16 274:23 278:13 280:13 280:17,20 282:21 286:23

289:21 293:9
**corrected** 293:9
**corrections** 14:21 293:6
**correctly** 31:22 34:13 273:23
**corroborated** 214:8
**costs** 174:17,17 182:16 185:12 185:15 227:11
**counsel** 10:15 11:5,19,24 57:7 64:8,15 91:11 119:25 160:17 167:4 167:14 213:16 215:14 259:1 291:16,19,19 295:14
**counsel's** 34:13 226:24
**count** 104:16 141:4
**country** 265:13
**county** 18:19
**court** 1:1 2:1 10:18 11:1,22 16:3,18,18 19:7,17 24:19 24:23,25 26:5 29:2 62:9 72:6 74:23 77:15 83:20 91:16

97:5 98:23 104:22 120:6 128:21 146:21 150:17 154:9 161:4 179:1 193:22 196:19 200:20 203:14 206:19 210:4 217:8 220:11 228:20 235:7 258:15 268:15 272:19 288:3 291:22
**cover** 269:7
**covid** 90:18,21
**cowan** 234:10 234:13
**cpa** 52:13,22,24 78:12 79:2,3,6 130:20 135:22 142:10 197:21 223:6
**cpas** 130:7 142:3
**create** 27:9 45:3,14 78:3 108:5 119:5 158:23,25 162:3 253:12 257:11 259:13 284:2,23
**created** 26:22 27:8 37:25 45:7 92:25

128:11 131:16 159:2,3,5 168:6 171:16 171:20 252:21 259:14,16,20 259:21 260:19 273:18,25 284:25
**creating** 76:16 76:18 160:3 163:8 172:19 259:18
**creation** 77:11 80:1,7,17 171:9 212:14 215:21 218:21
**creative** 1:10 2:10 11:12 159:23 168:3 278:6 280:22 280:24,25 281:1,2 282:19 284:6
**creatively** 262:7
**credit** 100:6
**critical** 181:16 181:21
**cross** 11:17 32:9,11,13,16 133:2
**crucial** 35:21 35:22

**[cs - decide]**

**cs** 295:15
**cs7572255** 1:25
**csr** 1:23 294:25
**current** 28:8
  29:17 43:20,24
  44:11 225:14
  226:11
**currently** 15:9
  18:4 27:19
  28:5 38:12
  46:10 50:18
  224:1
**customer** 230:2
  230:3
**cut** 205:10
  221:3,4
**cuts** 178:5
**cv** 1:9 2:9 10:19
**cybersecurity**
  210:12

**d**

**d** 75:21,22
  147:15 168:2
  180:24 204:14
  204:19
**daily** 134:25
**damages**
  185:14
**damien** 233:5
  243:21
**dark** 212:22
**darrick** 1:10
  2:10 4:4 5:16

5:20 6:9,21,24
7:6,10,13
10:17 11:12
32:19 36:23
40:19 41:8
42:6 72:2 73:1
75:20 85:2
87:16 92:5,8
93:24 95:8
96:20 98:4
99:20 102:15
105:8 113:19
125:16,17
127:11,19,23
128:6 147:17
149:13,14
162:7,14,17
163:1 167:23
168:11 169:5
179:11 180:5,6
180:9,11,12,18
183:7,7,12,18
184:4 185:5,17
186:12 189:24
191:9 197:17
197:18 198:18
198:21 200:11
200:12 201:20
201:22,23,23
202:2,3 210:14
212:23 218:4
259:16 262:12
269:4,6,10
270:5,10,14,18

271:3,18,23
272:12 277:7
279:3,7,9,12,19
280:13,15
282:20,25
286:3,4 288:17
289:2,20,23
290:4,10,13
291:7,11 295:4
296:1
**darrick's** 29:24
  163:7 235:22
  272:2,7 289:8
**data** 22:9
  212:23 281:13
  281:21 287:16
**date** 15:5 43:15
  65:20 72:8
  121:7 126:2
  179:7 194:20
  274:12 294:19
  296:24
**dated** 5:11,15
  5:19,24 6:4,13
  6:17,19,23 7:4
  7:8,12,16 8:4,7
  8:20 62:13
  65:4 75:20
  147:11 156:2,6
  180:6 183:7
  294:21
**dates** 136:4
  147:1 170:24

**day** 107:14
  134:20,20
  147:13 284:11
  284:11 293:10
**days** 36:13
  295:16
**dba** 26:19
**deal** 6:25
  154:25 155:9
**dealing** 68:10
  93:3 169:17
  269:11
**dealings** 272:2
**deals** 124:6
  271:18,21
**dealt** 58:17
  142:10 160:19
**debit** 6:8 92:5,6
  93:17,20 95:5
  95:9,11 96:8,9
  96:13,21 98:2
  98:9,11,11
  101:8,17 102:1
  102:13,14
  103:14 230:2
**deboer** 3:12
  10:22
**december**
  121:8 129:12
  136:2 137:2
  141:8 147:11
  166:8 167:22
**decide** 102:12

**[decided - designers]**

decided 106:7 164:9 200:7
decision 199:23 202:16 287:6
decisions 241:3
deck 168:6 184:7,10
declare 293:4
defamation 211:18
defendant 10:16 11:17 37:13 60:8
defendant's 60:7
defendants 1:14 2:14,19 3:11 11:11,14 12:17
define 49:17 280:24 282:3
defined 281:25 282:3
definitely 69:10 107:5 147:24 156:12 285:16
definition 61:8
degree 17:14 17:25 18:6,10 18:12
degrees 17:12
delaware 1:5 2:5

delete 205:4
deleted 216:17
deleting 175:20 204:3
deliverables 64:21 65:7,10 65:11,13 156:23
delivered 92:8
delivering 183:25
delivery 69:20
denied 255:4
deon 1:6 2:6 5:15 6:21 15:1 43:23 44:5,10 44:13 52:10 54:22 55:1 74:10 85:2 87:16 92:6 95:2 101:7 125:17 128:7 138:2 161:16 168:11 176:19 197:16 198:3 198:12,15,16 198:19 199:17 199:23 217:19 218:13 231:9 232:12 237:4 240:3,5,16 243:4 247:3,22 248:1,10 249:16,22

250:2 252:2,10 255:15 263:22 272:15 276:5 282:19 286:4 286:11
deon's 206:2 230:14 232:14 234:22 250:19 252:9
deontaylor 72:21
department 168:3
departure 175:16
depend 110:4 256:14
depended 266:16
depending 24:8 42:4 47:22 222:19 241:13 254:3
depends 173:4 173:14 174:13 256:18
depo 133:8
deponent 181:20,22 255:5 295:13
deponent's 26:9
deposed 24:16 24:19,19 38:11

deposing 295:13
deposit 230:21
depositing 239:15
deposition 1:17 2:18 10:11,15 10:21 13:3,13 13:19,21,23 14:13,19 20:16 29:23,25 30:1 30:10,16,19 31:10,16,23 34:11 38:18,20 57:11 60:8,22 61:1 133:19 231:13 294:13
deposits 240:20 241:17
derived 37:25 131:13,15
describe 63:16
description 5:10 6:3 7:3 8:3 9:3 63:13 259:19 260:15 261:16
design 71:4 262:1 266:21 283:4
designate 271:18
designers 69:18

**[desist - distribute]** Page 20

**desist** 212:15
218:23
**desk** 153:11
**despite** 190:8
**detail** 90:9
**details** 143:3
187:22 233:23
272:4
**determine**
118:6
**developer**
63:17 69:17,19
**development**
71:4 250:11
261:11 263:16
**dickson** 234:18
**dictate** 173:25
174:2
**differences**
122:24
**different** 16:17
28:25 34:9
37:4 42:17,24
42:24 46:4
61:16 68:18
86:4 93:25
104:18 108:6
121:24 122:17
122:20 123:7,9
164:15,18
165:15 167:25
168:2,20 178:6
178:12,21
179:6,6 191:8

191:14 195:3
234:21 253:23
254:3 256:12
260:13,15
263:3 281:11
281:15 284:13
**differentiate**
61:13,19
173:20
**differentiation**
61:23
**difficult** 67:11
**difficulty** 224:9
**dig** 148:18
**digest** 73:16
**digital** 34:3,6
34:15 35:21
43:19 46:2,2,3
65:23,24 87:8
88:5,10,12
163:2,25
164:21,21
165:2 172:14
173:16,21
223:25 236:1
256:17 264:15
265:10 269:22
279:10,13,22
280:1 282:15
282:16,21
283:22
**digitally** 66:16
88:20 208:6

**direct** 102:2
193:4
**direction**
294:10
**directly** 38:21
48:13 58:19
98:12 127:11
127:19 197:3
241:12,13
**director** 260:10
278:6 280:23
280:24,25
281:1,3 283:23
284:6
**directors** 47:21
**disagree**
198:11
**disburse** 48:15
**discarded**
224:18
**disclose** 178:17
178:18
**discovery** 73:6
77:15 150:16
217:3 227:8
**discredit** 213:9
213:11,14
**discuss** 30:22
97:8,12 159:20
160:1 191:21
192:18,24
269:4
**discussed** 66:25
102:14,15

115:24 132:18
136:2 169:1,8
185:23 190:12
255:25
**discussing**
116:6 166:12
170:5,17
187:21
**discussion** 14:4
18:25 75:1
83:23 104:20
164:11 169:16
187:15 203:18
213:17 225:11
228:5 236:12
245:23 268:13
**discussions**
80:10 127:7
160:2 162:10
162:11 164:5
164:25 170:8
170:24 171:8
171:19 172:18
175:5 186:19
271:22
**dismissed**
25:24
**disrupt** 152:7,9
**dissolving**
143:21
**distance** 250:1
284:20 285:8
**distribute**
109:19

[distributed - dorothea]

**distributed**
111:13 112:3
282:24
**distributing**
112:1 254:18
**distribution**
48:1,10 111:10
111:12,17,20
111:22 282:23
**distributions**
26:23 48:6
49:3,5 110:22
110:24,25
111:6,8
**distributor**
36:19 162:25
173:6 174:2
264:16 267:14
**distributors**
45:2 163:13,16
173:15 254:18
257:2 264:14
270:25 282:17
282:20
**district** 1:1,2
2:1,2 10:18,19
**diverse** 183:15
**division** 186:15
187:18
**dns** 281:5
**doc** 204:3
**docs** 50:16
54:12 143:3
275:12

**document** 8:11
8:24 60:6,9
62:7,11,13
69:13 70:15
83:25 84:2,7
84:14 85:24
88:13 89:19
90:6 97:19
98:2 103:19
120:10,14,21
121:2,9,20
130:3 136:24
137:1 140:15
141:7 145:7
154:13,14,17
155:1,4,7,14,18
155:21,24
156:9,14 157:5
201:4 205:5,7
208:9 211:5,8
217:11,17
218:13 236:8
236:17 237:15
259:10 260:18
272:22,25
273:5,9,19,25
274:17 276:12
276:15 290:19
291:10
**documentaries**
24:10 28:3,7
174:5
**documentary**
61:15,17 174:8

193:7
**documentation**
9:11 29:23
60:18 70:10
128:25 142:25
214:25 216:21
221:6 222:3
290:9
**documented**
244:20
**documents**
30:12 60:22,25
101:8 122:14
123:7,8 129:1
130:13 142:8,9
155:16 174:23
175:2 178:6
221:18 222:23
223:12 273:11
275:8
**dog** 253:4
**doing** 17:7
18:19 21:23
23:10,14 34:2
34:5 36:19
38:12,14 39:12
39:14,15 42:2
45:11 46:14,15
46:21,24,25
47:22 56:24
78:23 116:14
143:22 163:1
163:21 172:21
172:24,24

190:25 211:19
212:19,19
239:19,21
244:4 254:4
256:2 265:3
266:9,15,18,19
268:8 288:19
**dollar** 134:8
**dollars** 109:17
173:8,19
**domain** 37:9
71:5 148:9
149:8,11 150:4
150:20,24
151:4,12,16,24
152:3,5,11
153:5,17
252:18 256:16
**domain's**
152:25
**domains**
267:24 281:6
**dominate**
183:17
**dones** 180:16
**door** 27:16,24
29:18 138:7
248:23 249:2,4
249:9,10
**dope** 183:13
**dorothea**
196:22,24
197:12,21
198:25 199:17

200:10 278:11 278:11 279:3,8
**dorthea** 7:24
**double** 244:5
**doubt** 259:19
**douglas** 233:5
**douglas's** 243:21
**draft** 8:12 63:3 82:14 89:21 128:10,11 206:4 259:7
**drafted** 63:5
**drafting** 62:22 62:25 202:12
**draw** 47:10,13 135:5,8,18,20 136:3 138:22 146:4
**drawing** 47:17 79:8,11
**draws** 124:6,16
**dreams** 38:6
**drift** 28:9
**drink** 253:7
**drive** 50:18,22 51:11,14
**drives** 51:13
**driving** 230:23
**drop** 185:10 186:3
**duty** 288:22,24
**dynamic** 65:12

**e**

**e** 150:8,8 296:3 296:3,3
**earlier** 37:8 41:5,10 54:14 54:23 108:7 113:13 122:1 138:4,25 141:24 168:16 190:4,13 204:11 231:12 244:2 266:17 271:21
**early** 22:6 76:16
**easier** 12:20 93:25 223:25
**east** 3:7
**easy** 195:24
**echo** 269:2
**edit** 204:2 283:3
**editing** 205:9
**education** 18:3
**educational** 17:11
**effect** 80:12
**egg** 138:3
**eight** 252:19
**either** 33:24 37:5 38:21 47:13 52:6 56:13 78:5

82:18 85:22 113:22 118:20 135:20 138:22 144:6 162:25 165:6 185:19 222:20 243:9 255:15,23 257:6 283:9
**election** 246:23
**else's** 153:24
**email** 5:15 6:4 6:23 7:4,8,12 7:16,24 8:4,7 8:20 30:7,7 72:8,13,16,18 72:18,20,23 73:1,4,6 75:5,5 75:9,19 77:14 77:18,19 91:13 91:25 92:10 95:4,13,14,20 97:7,11 101:9 101:12 105:3,6 105:14,15,18 106:18,22 107:4,10,13 108:1,4,8,10,21 112:18,21 120:16 123:4 124:3,12,19,23 128:17 146:23 147:6,10,16 148:18 149:4 150:7,11,13,16

152:9,14,20,22 153:9 156:11 161:10,19 166:13 167:21 168:8,12,17,25 169:9 171:6 179:6,10,16 180:9,23 181:1 185:3,18,22 186:12,21,24 186:25 187:25 188:1,2,9,10 193:3 196:21 197:12 198:15 198:21 199:10 200:10,15 201:2,5,6,7,12 201:17,20,21 201:23 202:1 203:23 204:8,9 204:12,15 206:8 214:25 220:20,22 221:2,10,12 222:2,6,8 268:18 269:5,8 270:4,9 288:8
**email's** 222:5
**emailed** 60:14 236:9
**emails** 5:19 6:13,19 37:22 76:10 88:16 90:7 91:19,21

**[emails - engine]**

94:18 126:3
147:13,19
148:1 149:7
150:16,19
152:10 161:9
161:16,17
166:18 177:13
195:22 198:6
202:7 213:14
222:20 270:3
271:10,15
**empire** 1:4 2:4
5:13 7:21 8:11
8:15 10:16
23:20 24:3,9
24:12 25:15
26:6,13,13,15
26:17,19,21
27:1,7,11,12,20
28:13,15,15,17
28:18,22 31:13
32:6,14,20
33:25 34:19
37:6 38:14
39:22 40:4,7,7
42:7 43:10,14
43:17,21,25
44:7,8 45:24
45:25 46:14,23
46:24 47:10,11
50:5,6,7,8
54:17 55:14
56:5,14 57:13
57:14,14,25

59:21,22 62:12
63:2 64:22
66:12 67:2,5
67:18 68:3,7,9
68:14 69:8
70:17,23 71:11
71:17 73:11,24
74:3,6,14 80:4
82:5,6,7 106:4
106:5,9,9,11
118:2,23 119:1
136:21 138:10
138:13 144:10
144:11 145:16
147:21 149:12
151:23 159:11
163:6,11 165:7
165:16,18
166:4,4 170:6
171:4 187:19
187:25 188:1,8
188:25 189:1,9
194:16,22
195:8 197:2
199:1 207:5
209:9 220:6
226:4 234:4,25
243:23 244:12
244:17,24
247:9,12,14
253:13 257:7
257:23 258:1,3
259:7,19 267:4
267:5 274:6,18

276:19 277:23
295:4 296:1
**empire's** 28:4
160:23
**empires** 26:11
**employee**
159:17 186:14
186:15 188:21
188:24 189:3,6
243:22,25
278:22 294:18
**employees** 34:8
188:13 189:9
266:4 284:14
**employment**
23:10,14 25:12
25:13
**encompass**
256:16
**ended** 9:12
129:11 151:8
153:22 291:2
**ends** 100:1
**engage** 282:25
**engaged** 46:9
105:24,24
239:23 265:20
**engagement**
269:5
**engine** 1:5 2:5
5:24 6:17 8:18
9:5 31:13 32:7
32:15,20,24
33:10,19,23

34:1,19 37:5
37:23 40:9,12
40:14,21 41:3
41:9,17,23,24
41:25 42:8,12
42:19 43:2,5
44:12,14,17,22
48:20 49:1,4
49:10,21,25
52:11,14,21
53:5,6,10,15
54:6,13,16,20
54:21 55:2,7,9
55:21 57:20
58:4,10,15,18
59:25 60:3
76:16,19 81:19
82:6,10,16,22
84:12,16,20,24
85:15 87:20
88:25 89:9,16
90:13,17,20,24
92:4 93:1,6,12
94:4,7,11,21
95:9,24 96:19
98:16 99:6,9
99:12,20
101:15,16
102:3,9 103:6
104:4 105:20
105:22 106:15
106:25 107:17
108:12,16,20
109:3,14,16,17

109:21,23
110:17,22
111:10,15,18
112:10,13
113:1,5,5
114:1,5,10,20
114:21 115:1,2
115:16,18
116:5,7,9,11,13
116:16,20
117:8,15,25
118:2,8,16
119:1,7,12
120:9 126:12
127:8,16 128:4
128:12,16
129:11 130:8
130:11,16,20
131:8,14,21
132:2,11 134:1
134:4,10,17,24
135:7,19 136:8
136:11,14,19
137:2,9,12,14
137:18,20
138:9,12,19,21
138:24 139:2
139:12,14,20
139:25 140:2,7
141:7 142:6,18
143:8,12,16,23
144:6,8,9
145:4,21,25
146:17 161:23

162:6,18,21,22
163:6,8 164:2
164:3 165:1,3
165:7,24,25
166:1,2 169:9
169:11,12
170:7,18 171:5
171:16,17,21
172:15,19
175:1 176:2
179:20,20
180:20 184:5,8
184:12 185:10
185:16 186:15
187:3,16,18,22
188:8,24
190:11,23
191:5,17,23
192:11,16,18
192:25 197:14
199:1,12,12,18
199:25 200:4
200:13 202:18
204:13,18
205:6,13,20,23
206:5,7,11
207:4 217:14
217:19 218:1,6
220:14 221:1,7
221:8,13,24
222:4,14,15,17
224:9,19,24
225:2,21,23
226:1 228:24

230:11 233:8,9
233:17 234:4,8
234:12,24
235:2 236:25
237:21 239:8
239:13,16,19
239:24 240:10
240:17 241:7
242:12,25
243:5,10,13
244:1,12,18,24
245:17,19
247:8 255:17
255:24 256:4
256:11,13
257:7 259:8
260:4,11 261:3
262:12,17,23
263:3,9,16,19
263:22,25
264:9,10,12,22
264:25 265:2,9
265:25 266:9
266:14,15,22
266:25 267:6,8
267:10,16,20
269:5,11,15,18
271:4,17 275:5
277:6 278:20
279:6,9,14,18
279:20,25
280:23 281:3
281:19 282:6,7
283:15,17,21

284:5,6,14
287:11,19
288:11 289:9
289:24 290:5,9
291:5,8,12
**engine's** 141:13
**enrollment** 6:8
98:2 101:8
103:14
**ensure** 69:18
**entered** 24:22
25:4 26:3,6
29:3 70:22
209:5,14,19
**entering** 176:1
**enterprises**
145:9,11
**entertainment**
1:11 2:11 5:12
7:21 22:17,19
50:16 62:12,23
63:2 64:22
70:25 71:10,16
73:10,23 74:3
74:5,15 80:3
107:20 108:15
109:1,4 157:2
158:14 159:17
159:24 160:24
175:20 194:8
194:16,18
196:13 205:4
243:20 244:7
259:14 260:9

**[entertainment - excitement]**   Page 25

261:12,18,22
262:4,11,22
264:2
**entertainment's**
32:5
**entire** 21:4 84:2
145:1 265:16
**entirely** 229:9
**entities** 27:6
46:15,22 47:14
47:17 48:9,10
55:15,20 56:5
56:14 57:15,25
57:25 58:2,3
69:10 79:24
80:19 82:1,2,4
132:18 139:10
163:12 165:21
207:22 220:5
220:15,16
234:5,23 241:4
244:16 275:14
275:18,20,22
**entitled** 14:14
16:15 255:1
**entity** 32:6 44:2
45:8,19,21
46:25 49:24
50:2,2,3,7
59:18 67:23
68:2 76:17
81:11 82:8
95:16,22
111:23,23

116:14 144:11
158:10,12
171:20 172:6
172:12 207:17
207:25 209:9
209:12 210:16
248:5,10,15,16
248:19,24
249:8,12,25
250:9,14
251:24 252:11
252:15 254:6
**entries** 241:15
**envision** 166:19
167:24 169:3,5
169:6
**epps** 285:20
**equity** 43:2,21
81:8 114:19
115:15,23
116:6,22 164:2
179:20
**errata** 295:11
295:13,16
**erratas** 295:15
**esq** 295:1
**essence** 115:23
**establish** 77:23
78:3
**established**
102:2,5
**et** 10:17,17
13:10 107:21
144:17 179:22

255:21 275:17
276:2 284:7
**ether** 171:23
172:2 187:5,6
**ethics** 277:24
**event** 28:24
63:9 174:11
229:10 245:16
245:16 252:19
275:5
**events** 21:23
22:12,16 24:11
28:22,23,25
63:10 174:9
**eventviii.com**
252:18
**everybody**
215:7 243:17
292:11
**evidence** 87:25
109:7,25
110:12 111:20
125:13 212:7
214:7 277:13
**evolution** 35:19
**evolved** 27:5
**exact** 24:13
43:15 70:20
92:10 115:19
120:16 136:7
217:20 239:17
274:12 287:7
287:17

**exactly** 19:4
51:9 79:4
126:18 139:8,9
208:3 212:25
233:11 240:1
242:13 253:21
265:15 285:21
**examination**
5:2 12:11
**examined** 12:6
**example** 14:16
20:11 46:23
48:3 49:18,20
56:10 58:14
109:13 144:17
153:7,13 174:6
176:23 202:8
242:3 247:18
249:22 256:24
258:11
**except** 145:1
178:1 264:12
**exceptional**
35:15
**excess** 230:4
**exchange** 95:4
95:14 105:4,6
115:18 116:2
116:22 139:21
147:6 164:1
168:25 196:22
201:5 220:20
**excitement**
269:3

excuse  15:8
execute  290:4
executed  54:10
  67:1,3 68:21
  121:14 202:20
  202:22 204:24
  293:10
execution
  31:14
executive  21:20
  129:10 130:7
exercise  254:21
exhibit  5:10,11
  5:15,19,23 6:3
  6:4,8,11,13,16
  6:19,23 7:3,4,8
  7:12,16,20,24
  8:3,4,7,11,14
  8:17,20,24 9:3
  9:4,7,10,14
  62:5,8 64:2,7
  68:13,25 71:25
  72:5 74:20,22
  75:3 83:15,18
  83:19 91:3,15
  91:19 97:3,4
  97:16 98:20,21
  98:22,25 99:3
  101:2,3 102:21
  104:14,19,21
  104:23 112:17
  120:4,5 124:22
  128:19,20
  129:16,17

146:13,20
154:7,8,11,16
154:19 161:2,3
161:6 167:17
178:24,25
193:20,21
194:7 196:17
196:18 200:17
200:19 202:6
202:11 203:12
203:13 206:14
206:16,17,18
209:25 210:3
215:16 217:6,7
219:10 220:9
220:10 228:4
228:18,19
231:8 233:3
235:6 241:21
245:22 246:2,5
258:12,14
259:4 268:14
272:17,18
287:24,25
288:2,5
exhibits  5:9 6:2
  7:2 8:2 9:2
  61:7 213:25
  257:3
exist  83:2
  106:11 246:18
  246:19,21
existence  247:2

existing  108:11
  119:6
expansions
  157:1
expect  30:23
  31:2 110:8
  272:3,6
expense  52:6
  55:22 56:6,7
  56:13,15,16
  98:16 134:2
  136:12 174:3
expenses  56:11
  133:23 134:11
  255:16,21
  272:4
experience
  18:15,16,18
  59:2 108:25
expert  36:5
  49:18
expertise
  164:18,20,21
expiration
  275:23
expire  147:23
expired  147:21
  150:23
explain  15:17
explanation
  275:2
exploration
  274:19,19
  276:9,19

exploring
  80:13,18
exposed  176:7
  178:4 241:5
expressed
  160:22
extent  42:14
extort  176:15
  176:22 178:1
extorting  177:4
extortion
  213:21,24
extorts  176:12
  177:3
eyes  286:25
  287:1

**f**

f  85:1 187:3
fabricates
  178:6
facebook
  253:12,15,18
  282:4
facets  24:8
facilities  22:8
fact  14:13
  153:21 269:15
facts  87:24
  109:6,25
  110:12 111:20
  125:13 250:24
  277:12

**[fails - film]** Page 27

**fails** 295:18

**fair** 3:22 20:3
62:4 69:5
149:3 165:12
168:24 170:2
188:5 196:7
199:8 203:2
204:9 242:10
242:10 254:20
260:2 265:18

**fairly** 82:12

**fake** 286:21

**familiar** 35:3
51:25 60:5
66:7 155:2,22
211:2,10
280:19

**family** 36:3

**fan** 26:8

**fantastic** 38:13

**far** 18:15 21:24
29:13 36:2,8
39:22 41:21
43:5 44:23
132:16 135:18
138:24 139:2
141:11 162:15
194:25 225:25
226:3,6 240:20

**fast** 83:13
228:8,12

**fatale** 27:15
247:18,19,20
247:21 248:4

**fault** 153:23,24

**fear** 27:17
37:25 46:4
249:25 284:17
284:19,21
286:5,13

**feature** 24:10
27:11,12 61:8
61:10,21

**february**
179:11 180:6,9
185:8 209:6

**federal** 294:13

**fee** 219:15,21

**feel** 20:6 35:6
35:20 37:14
183:20,23
191:4 231:8
286:8

**feeling** 32:2
33:1,2,8 34:18
34:20,23,25
35:7 37:16,17
198:23 249:16

**feels** 232:7

**fees** 135:9,14
182:16 227:10
243:12 271:25

**fellowship**
232:24

**felt** 35:9

**felton** 3:5,10
11:16 72:3
83:16 86:19

133:7 150:18
181:15,23
236:10 295:1,2

**festival** 233:21

**field** 282:19

**fifth** 141:5
211:3

**figure** 26:18
33:22 34:9
76:20 77:5,7
114:16 134:8
148:12 187:15
238:21

**figured** 88:18

**file** 52:12 59:8
77:23 142:14
148:24 206:24
207:10,20
208:1,6 223:11
224:2 226:8,9

**filed** 10:17
32:14 52:10
142:20,20
209:16 220:15
225:23

**files** 189:5
219:1 221:1,23
221:24 226:9

**filing** 52:15,20
130:12 223:17
224:9,19

**filings** 78:8,8
208:4

**fill** 14:21
221:13,17

**filling** 125:1

**film** 5:13 7:22
8:15 23:24
24:3,5 25:3,16
27:18,19 28:19
35:21 36:1,3,9
36:13,17,24
38:5 43:21
45:25 46:14,24
47:11 48:5,8
50:6,15 57:15
59:22 61:8,10
61:10,11,13,17
61:21,22,22
62:12 63:2
64:22 66:13
67:2,5,18 68:3
68:7,15 69:8
70:17,23 71:11
71:17 73:11,24
74:4,6,14 80:4
82:6 106:5,9
107:9 144:10
147:21 158:11
165:8,15,16,16
168:6 171:4
173:1,2,9
187:19 188:8
188:25 189:1,9
194:16,23
195:8 197:2
199:2 207:4,5

**[film - form]**                                                                      Page 28

| | | | |
|---|---|---|---|
| 226:4 233:21 234:4,25 239:13,15,20 239:22,22 240:3,6,8 242:12 243:23 244:12,25 247:9 250:16 250:18 253:13 257:7,23 258:1 258:4 274:7,18 277:23 285:8 286:9,18,23 287:1,3 **filmmakers** 38:5 **films** 24:10 25:5 26:24 27:11,12 28:15 34:6 42:3 47:6 47:18 61:15,23 61:24 82:9 138:10,13 144:22 162:23 174:1 220:6 257:1 264:13 276:19 **final** 191:22 270:11 272:4 286:15 **finalize** 117:14 142:8,14 290:14 | **finalized** 94:5 124:13 125:11 128:4,6 205:14 288:18 **finalizing** 62:22 63:1 **finances** 134:20 135:1 240:5,17 **financial** 9:10 31:15 128:24 142:24 187:22 192:10 213:20 213:23 214:25 222:14,17 223:12 224:18 241:3,3 **financially** 11:3 47:16 294:17 **financials** 111:15 197:2 224:2 **find** 132:23 133:15 185:6,7 207:14 215:18 276:17 **finding** 216:16 **findings** 215:24 **fine** 12:22 13:5 19:24 28:1 56:23 61:3 65:15,15 97:1 112:5 146:11 183:3 232:21 246:6 276:16 | **finish** 16:21 21:5,15 62:15 190:21 223:15 **finished** 18:22 21:4,12 75:17 105:5 117:23 129:6 200:25 201:1 **firing** 258:9 **firm** 10:24 11:1 78:12 107:6 164:10 234:11 256:7 **firms** 79:7 278:16 **first** 12:6 18:21 21:13 22:18 23:9,14 43:13 43:17 60:20 63:12 71:8 84:9,24 96:5 99:16 101:3 107:3 124:23 147:5,8 151:14 158:10 167:18 174:22 179:9 180:8,25 181:6 196:11 197:15 203:22 210:13 228:23 236:14 237:3 259:11 268:17 288:8 **five** 62:13 167:2 258:16 | **fix** 148:10 **fixed** 137:9 219:15 **floor** 3:7 **florida** 1:11,13 2:11,13 **flow** 92:22 **floyd** 28:9 **fly** 168:7 180:17 186:20 268:4,5 **fo** 213:3 **folks** 277:1 **follow** 147:1 154:12 291:16 **following** 18:16 70:9 124:5 129:16 155:12 171:1 183:6 197:15 229:25 231:20 264:20 **follows** 12:7 **food** 243:19 **foot** 56:1 **footage** 252:8 **foregoing** 293:5 294:4,6 294:11,12 **forever** 145:8 145:11 244:6 **forgive** 185:11 186:6,6 **form** 30:7 59:7 59:8 101:8 |

**[form - friendly]**

110:25 181:6
**formalize** 41:11
**formalized** 33:23 54:12 110:5 116:3 117:21 174:24 192:22
**formally** 269:6 271:17
**formation** 54:12
**formed** 174:22
**former** 247:12
**formerly** 1:11 2:11
**forming** 192:25
**formulate** 117:25 118:7
**forth** 191:20 294:5
**forward** 21:11 31:10,22,25 97:10 166:9 169:21 186:14
**forwarded** 105:7 152:20 187:25 188:2 202:8
**found** 65:16 88:18 197:13
**foundation** 87:25 109:7 110:1,13

232:18,22 277:12
**four** 138:7 154:13
**fourth** 60:7 211:3
**fox** 3:19,20 5:5 11:14,14,20 12:10,12,16 14:5,7,10 16:23 19:1 21:10 23:8 32:10 33:3 35:2,12 37:19 39:4,10 40:3 53:22 56:23 57:8 60:12,16 62:10 64:16 71:24 72:7 74:20,24 75:2 83:13,21,24 86:3,6,21,24 87:6 88:3,8 89:12 91:2,12 91:17 92:19 97:15 98:24 104:10,13,16 104:23 105:2 109:9 110:2,15 111:24 114:17 115:10 117:3 117:19 118:12 119:14 120:1,7 122:4,7,9

125:18 127:14 128:19,22 129:22 130:1 133:10,15,21 146:13,15,22 154:6,10 158:6 161:2,5 167:3 167:6,15 172:10 179:2 181:15,19 182:4,7 190:3 190:6 191:2 193:23 196:3 196:20 200:17 200:21 203:15 203:19 206:14 206:16,20 209:25 210:2,5 213:18 214:15 215:4,6,15 217:6,9 218:9 220:12 221:11 221:22 222:1 223:16 225:12 225:20 226:22 227:25 228:4,7 228:10,16,18 228:21 229:21 235:8,14,18,22 235:25 236:5 236:10,13 240:19 241:23 242:1,19 245:3 245:25 254:24

255:2,9,11,14 257:20 258:16 259:2,24 263:14,18 268:12,16 271:16 272:17 272:20 274:10 275:11,13,21 276:25 277:3 277:14,22 278:1 280:11 287:24 288:4 290:20 291:14 291:22
**foxx** 176:21 177:9,16,17,20 213:3 271:7
**frame** 36:6 71:17 125:10 163:6 170:16 239:9 273:24
**framework** 127:3
**franchise** 225:17
**fraud** 176:6 178:19 181:8 182:23
**free** 27:25 149:25 250:9 250:10
**freedom** 27:24
**friendly** 180:14

**[front - go]** Page 30

| front 167:17 | funded 93:23 | gates 193:12 | giving 20:2 |
|---|---|---|---|
| 214:1 228:25 | 98:13 100:12 | gearhart 1:22 | 109:14 132:8 |
| 260:22 | 103:1 238:13 | 2:22 11:1 12:2 | 133:19 191:5 |
| fronting 107:20 | funding 239:18 | 294:24 | 191:14 201:18 |
| fry 6:14 105:19 | 240:2 241:10 | general 141:25 | glenn 186:19 |
| 105:20 106:22 | funds 54:1 | generated | gmail 150:7 |
| 107:4,14 108:2 | 96:10,15 | 124:12 140:8 | 152:16,23 |
| 108:4,19 | 109:19,22 | genius 34:14 | 187:23,24 |
| 120:15 123:24 | 238:15,17 | genre 282:2 | 188:4 |
| 124:15 126:21 | 239:1 242:11 | getting 18:4,5 | gmail.com |
| 126:25 127:5 | 242:13,17 | 18:12 36:6 | 77:19 150:8 |
| 127:19 128:17 | 244:12 272:8 | 46:7 104:17 | go 10:13 13:9 |
| 171:6 201:14 | furnish 90:11 | 111:22 139:23 | 14:21 16:3,18 |
| 201:16 | furnished | 139:24 151:16 | 16:25 17:16,20 |
| fry's 112:21 | 195:3,15,16,17 | 232:19 241:8 | 17:22 19:3 |
| 123:4 | 195:21 | 257:3 | 20:5 21:23,24 |
| frylawcorp.c... | furnishing | ghilarducci | 55:20 57:10 |
| 201:9 | 198:6 | 197:6 | 62:19 63:19 |
| frylawcorpor... | further 291:14 | gift 132:12 | 64:15 65:17 |
| 112:22 | 294:10,12,16 | give 16:16 | 72:3 78:2 |
| fulfilled 73:14 | future 39:7 | 20:12 30:24 | 85:23 95:13 |
| full 21:13 194:1 | 50:11 191:17 | 36:6 86:7 | 99:8 107:3,12 |
| 194:4 195:1,13 | 200:6 276:11 | 89:15 122:2,10 | 122:18 128:19 |
| 197:5 | fyi 201:21 | 124:18 132:19 | 136:24 141:3 |
| function | 255:5 | 133:1,3,4 | 141:16 147:1 |
| 222:24 284:16 | | 140:9 143:4 | 148:3 149:17 |
| functioning | **g** | 173:5,7 176:14 | 149:18 161:2 |
| 42:1 | game 37:25 | 191:15 192:19 | 167:4 170:17 |
| functions 35:18 | 284:22 285:10 | 200:5 216:24 | 170:19 179:5 |
| 37:12 144:18 | 285:20,23,24 | 228:17 255:4 | 180:2,6 183:10 |
| 164:16 264:15 | 286:2,5,8,14 | 256:3 276:3,6 | 189:24 204:11 |
| 264:17 287:18 | gas 134:12 | given 33:18 | 204:24 206:16 |
| fund 96:9 | gate 161:18 | 132:22 186:18 | 206:17 207:10 |
| 118:22 | 257:3 | 256:6,7 292:14 | 209:25 210:10 |

Veritext Legal Solutions

**[go - hammer]**

220:9 225:5
227:7 228:4
254:7 262:15
268:12 270:4
276:14 286:4
287:17 291:18

**goal**  24:8
211:15

**goes**  163:15
255:10

**going**  10:5 13:1
14:18,19 15:25
18:8 23:16
29:21 33:13
38:19,25 40:11
47:4,8 52:24
57:1,10 60:1
64:21 69:6
70:14 74:20
81:14 88:24
91:5 96:5
107:12 115:17
119:17 120:3
121:4 122:11
133:4,12 144:4
157:2 162:18
162:18,20
163:19 166:18
167:7 169:15
169:16 171:24
178:18 181:5
181:13,14,24
185:1 191:4
195:14 199:21

199:22 200:5
202:5,24 206:6
210:24 211:21
215:8,16,18
224:7 226:23
227:6,6,14,17
228:1,10,23
238:19 239:5
245:22 246:1
249:24,24
255:7 258:20
261:7 264:11
271:2 282:1
285:10

**good**  10:4 12:1
12:13,14,14,15
34:16 56:22,24
57:11 77:17
104:11 107:9
167:1 185:6
186:17 190:7
237:23 286:8

**google**  176:10
212:3 213:20
214:9 216:17
281:8 282:5

**googled**  213:5

**gotten**  177:12

**grab**  236:5

**graduate**  18:5
18:8

**granted**  253:19

**granting**  290:9

**graphic**  262:1,1
266:21 267:2
283:3

**great**  21:10
39:13,14 67:9
80:16 92:11
107:18 130:2
143:25 158:19
182:21 203:17
229:13 237:3

**ground**  77:9

**group**  3:4 5:13
7:22 8:15
43:22 45:25
46:14,24 47:11
50:6 57:15
59:22 62:12
63:2 64:22
66:13 67:2,5
67:18 68:3,7
68:15 69:8
70:17,23 71:11
71:18 73:11,24
74:4,6,14 80:4
82:6 106:5,9
108:12 144:10
165:8,16
187:19 188:8
188:25 189:1
189:10,22
194:16,23
195:9 197:2
199:2 207:5
213:15 226:4

229:14,14
234:4,25
243:23 244:13
244:25 245:5,6
245:12 247:9
253:13 257:7
257:23 258:1,4
267:13 274:7
274:18 277:23
287:22,23

**group.com**
147:21

**growing**  264:10

**growth**  34:9

**guess**  66:10
92:12 153:16
207:2 208:12
209:7 221:15
235:4 239:14
256:23

**guessing**  125:2
173:17

**guys**  83:21
107:7 116:6
117:13 163:4
177:5 196:12
226:8 240:25
241:7

**h**

**h**  296:3
**half**  110:7,8
**hammer**
186:16

**[hand - hidden]** Page 32

**hand** 59:16 61:3 74:24 83:14 89:19 228:10 246:1

**handle** 271:18

**handled** 240:5

**handling** 58:1 58:5 188:11 227:8 263:15 264:21

**hands** 153:22

**handwriting** 97:19,21

**handy** 155:15

**hanging** 83:22

**happen** 269:20

**happened** 37:24 73:16 78:1 147:24 154:5 177:16 177:17,19 195:19 269:17

**happening** 154:4

**happy** 184:2 291:1

**harassing** 177:14

**hard** 146:25 223:23 225:4 232:19

**harden** 215:22

**hardware** 21:21

**hardworking** 117:12

**hart** 166:23

**he'll** 31:5

**head** 78:12,13 78:15 133:18 260:6,15 261:1 264:6 277:7,10 279:10,13,19 279:21,22,25 283:23

**header** 84:19

**hear** 14:1 56:25 91:5 162:2

**heard** 20:2 40:25 49:14 245:4

**hearing** 258:19

**hefg** 6:20 107:19,20 179:22 185:16 187:3 201:20 212:7,16 213:9 218:24 275:2 275:22 276:21

**hefg's** 215:22

**hefg.com.** 148:25

**held** 10:21 48:14

**help** 49:9 118:22 119:2 142:8,19 147:25 148:17

149:25 151:19 197:1 203:9 216:21 235:3 239:14

**helped** 58:21 151:20

**helpful** 21:25

**helping** 151:24 239:18 267:6

**helps** 245:9

**henry** 193:12

**hereto** 62:9 72:6 74:23 83:20 91:16 97:5 98:23 104:22 120:6 128:21 146:21 154:9 161:4 179:1 193:22 196:19 200:20 203:14 206:19 210:4 217:8 220:11 228:20 235:7 258:15 268:15 272:19 288:3 293:8

**hey** 75:21 106:18 107:18

**heymon** 22:17

**hi** 270:10

**hidden** 1:4 2:4 5:12 7:21 8:11 8:15 10:16 23:20 24:3,9

24:12 25:14 26:6,11,12,13 26:15,17,18,21 27:1,7,11,12,20 28:3,13,15,15 28:17,18,22 31:13 32:6,14 32:20 33:25 34:19 37:5 38:14 39:22 40:4,6,7 42:7 43:10,14,17,21 43:24 44:7,8 45:24,25 46:14 46:23,24 47:10 47:11 50:5,6,7 50:8 54:17 55:14 56:5,14 57:13,14,14,25 59:21,22 62:12 63:2 64:22 66:12 67:2,5 67:18 68:2,6,9 68:14 69:8 70:16,23 71:10 71:17 73:10,24 74:3,6,14 80:4 82:5,6,7 105:23 106:4,5 106:8,9,11 118:2,23 119:1 136:21 138:10 138:13 144:10 144:10 145:16

**[hidden - husband]**

147:21 149:12 151:23 159:11 160:23 163:5 163:11 165:7 165:16,16,18 166:3,4 171:3 171:4 187:19 187:25 188:1,8 188:25 189:1,9 194:16,22 195:8 197:2 199:1 207:4,5 209:9 220:6 226:4 234:4,25 243:23 244:12 244:17,24 247:9,11,14 253:13 257:7 257:23 258:1,3 259:6,19 267:4 267:5 274:6,17 276:19 277:23 295:4 296:1

**hiddenempir...** 7:18 105:16 112:19 167:23 187:1

**high** 17:13,14 17:16 23:16 271:18,21

**higher** 64:9 282:17

**highlighted** 179:18 180:12

181:3

**highly** 132:15 227:5 239:18

**hijacking** 213:20 214:8

**hire** 106:5 111:1,8,25 136:16 139:20 157:12,17 158:2 160:9,13 160:15,20,20 160:25 164:15 172:22 214:17 258:8

**hired** 22:1 35:10 160:16 264:18 267:16

**hiring** 258:8

**history** 193:6 193:10,17,25 194:5

**hitting** 64:10

**hold** 91:4 183:10 215:7 255:13 279:12 279:19,19,25 292:11

**holder** 55:2 76:23 81:8 98:5,9 114:10 114:14 199:11 200:3 217:18 218:1,6

**holding** 150:4

**holdings** 1:4 2:4 10:16 26:13,15,19,21 26:23 28:14,18 43:25 45:25 46:23 47:11 50:6 57:14 59:22 82:5,9 106:5,9,11 247:12 295:4 296:1

**holes** 212:5 221:6,13,16

**home** 16:7 55:22,25 56:9 223:18

**homegins** 279:1

**honest** 117:12 286:11

**honestly** 65:5 100:8 160:11 166:25 195:23 209:4 286:10

**hoop** 107:9 239:13,15,20 239:22,22 240:3,6,8 242:12 250:12 250:14,16,18 250:21

**hope** 120:2 288:12

**hopefully** 31:22 263:23

**hoping** 34:12 44:24 45:3

**house** 27:16 29:17 106:2,4 144:25 145:1,5 168:4 232:18 248:23 249:2,4 249:9,10

**housekeeping** 143:3

**html** 283:4

**huge** 97:6

**huh** 14:2 17:4 20:20,24 99:7 99:10 124:7 131:3 135:6 187:20 206:15 226:14 231:5 231:22

**huhs** 67:10

**hundred** 173:8

**husband** 15:2 17:5 31:12 32:6,14,20 33:24 34:11 38:11 39:2,3 48:9 49:1 54:7 54:15 58:14,17 59:20 60:1 72:25 90:6 94:13 112:12 121:19 127:4

**[husband - hyper]** Page 34

| | | | |
|---|---|---|---|
| 132:17 135:20 | 42:7,12,19 | 112:10,13 | 164:2,2 165:1 |
| 136:1,15 | 43:2,5 44:11 | 113:1,4,5 | 165:3,7,23,25 |
| 138:22 144:7 | 44:14,17,22 | 114:1,5,10,20 | 166:1,1 169:9 |
| 160:18 161:13 | 48:20 49:1,3,9 | 114:21,25 | 169:11,12 |
| 161:14,20 | 49:21,25 52:11 | 115:2,16,17 | 170:7,18 171:5 |
| 162:2,9,19 | 52:14,21 53:5 | 116:5,7,9,11,13 | 171:16,17,20 |
| 166:7,11 | 53:6,10,15 | 116:16,20 | 172:15,19 |
| 174:25 176:1 | 54:6,13,15,20 | 117:8,15,25 | 175:1 176:2 |
| 178:2 185:19 | 54:21 55:2,6,9 | 118:2,8,16 | 179:20,20 |
| 193:16 199:11 | 55:21,21 57:19 | 119:1,7,12 | 180:20 184:5,8 |
| 210:20,23,25 | 57:25 58:4,9 | 120:9 126:11 | 184:12 185:10 |
| 219:4 220:4 | 58:15,18 59:25 | 127:8,16 128:4 | 185:16 186:14 |
| 225:13 226:7 | 60:3 76:16,18 | 128:12,16 | 187:3,16,17,21 |
| 226:13 227:19 | 81:18 82:6,10 | 129:11 130:8 | 188:8,24 |
| 240:11 243:9 | 82:16,21 84:11 | 130:11,16,20 | 190:11,23 |
| 243:14 286:7 | 84:16,20,24 | 131:8,14,21 | 191:5,16,23 |
| 290:3 | 85:15 87:20 | 132:2,11 134:1 | 192:10,16,17 |
| **husband's** | 88:25 89:9,16 | 134:4,10,17,24 | 192:25 197:14 |
| 30:16 31:9 | 90:13,17,20,24 | 135:7,19 136:8 | 199:1,11,12,18 |
| 33:16 58:8 | 92:4 93:1,6,11 | 136:11,14,19 | 199:25 200:4 |
| 72:20 120:22 | 94:4,7,11,20 | 137:2,9,12,13 | 200:12 202:17 |
| 120:25 121:16 | 95:9,24 96:19 | 137:18,20 | 204:13,18 |
| **hustle**  27:15 | 98:16 99:6,9 | 138:9,12,19,21 | 205:6,12,20,23 |
| **hustling**  180:24 | 99:12,20 | 138:24 139:2 | 206:5,7,11 |
| **hyper**  1:5 2:5 | 101:15,16 | 139:12,14,20 | 207:4 217:14 |
| 5:23 6:16 8:17 | 102:3,9 103:6 | 139:25 140:2,7 | 217:19 218:1,6 |
| 9:5 31:13 32:6 | 104:4 105:20 | 141:7,13 142:6 | 220:14 221:1,7 |
| 32:15,20,24 | 105:22 106:15 | 142:18 143:8 | 221:7,13,24 |
| 33:10,19,23 | 106:25 107:17 | 143:12,16,22 | 222:4,14,15,16 |
| 34:1,19 37:5 | 108:12,16,20 | 144:6,8,9 | 224:9,19,23 |
| 37:23 40:9,12 | 109:3,14,15,16 | 145:4,21,25 | 225:2,21,23 |
| 40:14,19,20,20 | 109:21,23 | 146:17 161:23 | 226:1 228:24 |
| 40:25 41:3,8 | 110:17,22 | 162:6,18,20,22 | 230:11 233:8,9 |
| 41:17,23,24,25 | 111:10,15,18 | 162:23 163:6,8 | 233:17 234:4,7 |

**[hyper - incurred]** Page 35

234:12,24
235:2 236:25
237:21 239:7
239:13,16,19
239:24 240:10
240:17 241:7
242:12,25
243:5,10,13
244:1,11,18,24
245:17,19
247:8 255:16
255:24 256:4
256:11,13
257:7 259:8
260:4,11 261:3
262:12,17,23
263:3,9,16,19
263:22,25
264:9,10,12,21
264:24 265:2,9
265:25 266:9
266:14,15,22
266:22,25
267:6,8,10,16
267:20 269:5
269:10,15,18
271:4,17 275:5
277:6 278:19
279:6,9,13,18
279:20,25
280:23 281:3
281:19 282:5,7
283:14,17,21
284:4,6,14

287:19 288:11
289:8,24 290:5
290:9 291:5,7
291:12
**hyperengine.ai**
269:6
**hypothetical**
109:7,14 110:1
110:13
**hypothetically**
110:6 263:13

**i**

**i.e** 165:1
**i.e.** 172:19
174:25
**icon** 229:13
234:2,3
**idea** 54:3 89:13
89:14,17
115:21 138:23
164:13,13
169:18,25
187:12 221:2,3
242:4 259:15
286:8
**ideal** 180:15
**ideally** 179:19
186:18,18
**ideas** 172:1
191:8 262:7
**identification**
62:8 72:5
74:22 83:19

91:15 97:4
98:22 104:21
120:5 128:20
146:20 154:8
161:3 178:25
193:21 196:18
200:19 203:13
206:18 210:3
217:7 220:10
228:19 235:6
258:14 268:14
272:18 288:2
**identified**
118:15 291:11
**ignitioncreati...**
168:1
**image** 101:20
**impetus** 80:5
**implications**
192:25
**implimentation**
70:8
**importance**
246:14
**important**
13:10 14:12
19:9 20:15,19
20:23 31:24
36:12
**importantly**
13:3
**impression**
33:19 176:9

**incident** 210:14
211:4
**incidents** 213:2
**include** 107:7
124:1 126:24
144:16
**included** 124:8
124:10 165:18
165:19
**includes** 212:4
259:8
**income** 131:2
131:18,21
140:25 141:7
141:13 226:12
**incoming** 238:9
269:24
**incomplete**
109:7 110:1,13
**incorporate**
209:9 251:16
**incorporated**
26:20,23
209:12 256:4
**incorporating**
197:7
**incorporation**
203:4
**incorrectly**
31:8 40:24
**incredible**
183:13
**incurred**
185:13,16

**independent** 23:4 38:4 42:7 61:22 79:16 111:2 157:10 158:11,15,20 159:18 160:3 266:13

**independently** 45:24 46:16 47:1

**index** 5:1 6:1 7:1 8:1 9:1

**indicate** 161:14 161:21

**indicated** 198:21

**indicates** 217:17

**individual** 1:7 1:10 2:7,10 42:2,3 48:4,15 48:23 100:11 163:12 254:12 267:13 281:10 282:2,8

**individually** 25:9 279:10

**individuals** 254:3

**influencer** 271:24 282:11

**influencers** 183:14 271:11 282:14

**info** 7:17 97:10 166:9 169:21 198:9

**inform** 211:20

**information** 14:22 59:12 133:12,16,17 142:25 178:3,6 195:18 197:19 201:14 207:15 209:17 212:23 213:4 220:7 224:6 271:25 281:24

**informations** 209:21

**initialed** 293:7

**initially** 210:17 247:1

**initiated** 230:3

**initiative** 250:24 252:8

**ink** 293:7

**innovate** 8:14 210:10,23 211:20 213:10 214:8,24 215:17,24 216:16,20 217:3 218:20 219:4

**innovations** 1:12 2:12 11:13

**insert** 120:23

**installing** 21:20

**instance** 176:14 177:2,7 178:9 186:13

**instances** 178:11,21

**institute** 237:12 237:14 242:24

**instruct** 39:7 39:11 171:2 181:24 207:9 226:19

**instructed** 126:21 203:7

**instructing** 39:4 85:13 124:15 182:2,5

**instruction** 9:19 126:23,24 183:3,4 226:21 227:1,23,24 255:4

**instructs** 15:21 16:1 33:4

**insurance** 191:18

**integral** 36:9

**integration** 183:16 281:14

**intelligence** 212:23

**intended** 80:23 98:15 102:19

290:13

**intention** 166:17

**intentionally** 188:3

**intents** 185:9

**interest** 87:17 108:15 109:2 114:19,25 115:18 157:11 158:21 189:23 232:10,14

**interested** 11:4 13:15 294:17

**interfere** 10:10

**interference** 10:8

**internal** 227:19 290:8

**internally** 276:13

**internet** 56:18

**interrupt** 25:22

**intertwined** 235:1

**intervention** 182:11

**interviewing** 252:5

**interviews** 252:8

**intimately** 241:8

**introduce** 11:19,22 269:7
**introduced** 270:24 271:20
**introduction** 22:18
**intruder** 27:15 247:24 248:5
**invest** 185:15
**invested** 54:1,2 232:12
**investing** 232:5 232:9
**investment** 139:16 232:3
**investor** 118:20 118:24 184:7 184:10
**invoice** 151:23 185:7 195:1 196:11,12,14 219:11 233:23 268:11 270:11 271:1,13,24
**invoiced** 151:25
**invoices** 7:14 7:20 152:1 194:8,9,10,14 194:15,19,23 194:24 195:3,8 195:10,15,20 195:25 214:1,2 214:5 221:19

**involved** 40:6 41:23 62:21,25 94:13 127:7 156:21 240:16 264:8 265:5,8 265:10
**involvement** 163:8
**involving** 70:8
**ip** 159:1,3,5 285:7
**iq** 27:25
**irs** 226:15
**issue** 14:8 60:2 197:20
**issued** 58:11
**issues** 9:15 69:25 116:24 117:1,10,13 175:25,25 180:16 221:7 227:8
**item** 132:8 133:22 135:5 137:9 141:17 231:7 245:2 261:9
**items** 260:25 262:2 267:18
**iteration** 81:5,7 107:1 108:6,8

**j**

**j** 271:9
**j.t.** 3:20 11:14 12:16
**jamie** 176:21 177:9,16,17,19 178:15 213:3 271:7
**january** 185:13
**jeez** 79:8
**jeff** 166:24 168:1 185:15
**jimmie** 213:3
**job** 1:25 8:12 18:21 23:1 35:10,11 174:1 183:13 259:7,8 259:18 270:19 270:19,20,21
**jobs** 21:17
**joe** 268:19 269:2
**joint** 159:17 185:10
**joke** 253:3
**joseph** 145:13 244:9,10
**joseph's** 145:12
**jsr** 245:20
**jt** 3:19,25 235:23
**jtfoxlaw.com** 3:25

**judge** 16:4,25 16:25 19:17 182:12,17 227:7
**judgment** 9:14 24:22,23 25:2 25:4 29:12 208:14,18,21 208:22,23 209:2,5,14,19
**judgments** 26:3 26:5 29:2
**judicial** 182:11
**jump** 61:7
**jumps** 147:2
**juncture** 38:15 77:22 181:17
**june** 203:24 204:10
**junior** 17:23 18:17,22,23 21:12,15,16
**jury** 19:18

**k**

**k** 53:9,14,17,19 53:23 197:20 218:13,16
**kardashian** 177:9,21 213:3
**kdeklaw.com** 3:18
**keane** 3:12 10:22

**[keep - know]** Page 38

| | | | |
|---|---|---|---|
| **keep** 83:15,16 | 25:8,25 26:6 | 120:20 121:17 | 185:25 186:17 |
| 153:2 215:18 | 26:11 29:4 | 122:11 127:18 | 188:15 189:6 |
| 222:14,15,16 | 31:17,21 32:16 | 127:20,22,25 | 189:16,18,23 |
| 222:22 223:10 | 32:22,23 36:4 | 128:13 129:5,7 | 190:5 192:5,12 |
| 270:2 | 36:5 38:4 | 130:10,13,18 | 192:23 193:13 |
| **keeping** 16:14 | 43:15 44:18,19 | 131:23 134:5,7 | 194:4,5 195:1 |
| 152:25 153:3 | 48:17 49:12,13 | 134:13,15 | 195:22,23 |
| 153:14 | 49:14 51:9,10 | 135:22 137:5 | 197:22 198:5,7 |
| **kept** 66:12 | 51:22,24 53:12 | 137:17 138:2,5 | 198:23 199:3,4 |
| 175:2 223:18 | 53:16,17,17,19 | 138:5 141:25 | 199:15 200:16 |
| **kevin** 166:16 | 55:3 57:12,13 | 145:24 146:2 | 200:22 201:15 |
| 166:22,23 | 58:17 59:7 | 146:10,19 | 201:21 202:2 |
| **kevin's** 166:19 | 62:14 66:2 | 147:12 148:15 | 202:25 204:2 |
| 167:25 | 67:14,20 68:21 | 148:25 150:14 | 206:2 208:3,5 |
| **khatchadorian** | 72:18,24 73:2 | 150:18,22 | 208:14,21,23 |
| 4:6 10:24 | 73:21 75:16 | 151:22 153:9 | 211:23 212:13 |
| **kids** 229:12 | 76:6,18 78:23 | 153:25 155:11 | 212:24,25 |
| **kim** 177:9,21 | 78:25 81:25 | 156:18,20,25 | 213:10,12,15 |
| 213:2 | 82:9,20,24 | 158:8 162:8 | 214:3,10,15 |
| **kind** 51:25 | 83:1,2 85:17 | 164:9,14,22 | 216:10 219:6 |
| 56:11 164:11 | 86:3 88:15 | 166:14,17,21 | 220:19 221:21 |
| 178:20 191:20 | 90:4 92:20 | 166:24,25 | 222:5,10 |
| 236:7 | 95:8,22 96:3 | 168:10,15,22 | 223:24 224:6 |
| **kinds** 56:19 | 96:11,17 97:17 | 168:25 169:19 | 224:16 225:25 |
| **king** 23:12 | 97:21,22 99:1 | 169:22,23,24 | 226:3,6 229:3 |
| 271:7,9 | 99:22 100:7,25 | 170:22 174:15 | 229:23 230:16 |
| **kirkland** 27:25 | 102:4,10 103:4 | 175:18 176:3,3 | 230:24 231:6 |
| 28:10 | 103:11,12,16 | 176:4,4,20 | 232:12,14,16 |
| **knock** 228:8,11 | 105:8 106:20 | 177:1,7,19,22 | 237:13,24 |
| **know** 13:5,11 | 108:17 109:10 | 177:25 178:11 | 238:1 239:2,3 |
| 13:14,18 14:7 | 109:11 110:11 | 178:12 179:7 | 240:1 241:24 |
| 14:17 15:6 | 111:15 112:24 | 180:1,20,22 | 242:7,7,17,18 |
| 19:23,24 20:12 | 114:24 115:12 | 181:14,23,25 | 242:21,23 |
| 21:19 23:13 | 115:13 119:11 | 183:22 184:9 | 243:19 244:19 |

244:23 245:8 245:10 248:5 251:3,5,25 252:7,17,24,25 253:17,17,21 255:2,3 257:11 257:13,20 258:6 259:14 259:16,18,21 259:23,25 260:1,18 263:4 263:12 268:10 268:25 269:17 270:22,24 271:25 273:4 273:24 274:7 274:13,16 275:15 276:12 277:9,15,24 278:5,10,24,25 279:2,4,7,7,11 279:12,16 281:23 283:7 284:3 285:1,15 286:17,19,22 287:7,11,14 289:4,5,5,17,24 290:25 291:2

**knowing** 33:15 70:20,21 73:3 111:9 227:14

**knowledge** 25:10 106:12 114:8

**known** 1:11 2:11 248:21

**kramer** 3:12 10:21

**l**

**label** 23:3,4,5

**labeled** 72:17 120:4 193:8

**labeling** 111:7

**labor** 9:14 136:14 208:12 209:14,18

**lack** 153:13

**lacks** 87:25 109:7,25 110:13 277:12

**lamya** 7:13 288:11

**language** 70:11 124:1,8,10 157:21,23 158:8 179:25 204:5

**lapsed** 68:9 148:9 153:21 154:5

**lapses** 152:24 153:2,2

**larger** 61:23

**lasted** 291:3

**latest** 148:21

**launches** 28:25

**law** 3:4,6,14,19 3:21 19:17 201:14 208:12

**lawsuit** 29:9,10 29:11,14 32:5 37:14 176:21 224:20

**lawsuits** 29:19

**lawyer** 19:4 101:24 106:4 190:9

**lead** 261:13

**learn** 147:20 182:22

**learned** 213:1

**lease** 51:5 137:16 230:19

**leased** 51:1

**leave** 78:20 133:7

**leaving** 41:22

**led** 177:2

**ledger** 141:25

**left** 153:8,11 238:15 260:4

**leftover** 73:12

**legal** 10:25 11:2 194:4 202:4 274:18 274:22 275:2 275:22 292:16 295:23

**legislature** 22:9

**leslie** 208:11

**letter** 6:25 27:14 101:4

**level** 282:17

**levels** 42:24

**liability** 1:5,6 1:12,13 2:5,6 2:12,13 206:24

**liaison** 142:18

**licensed** 174:1

**lie** 195:18

**life** 21:17 164:23

**liked** 280:24

**likeliness** 159:8 285:4

**likely** 43:19 85:11 184:13

**limit** 96:7 102:21,23 258:7

**limited** 1:5,6,12 1:13 2:5,6,12 2:13 116:8,9 116:10,11,16 206:24

**limits** 92:7 102:18

**line** 9:20 76:8 92:21 132:8 133:22 135:4 137:8 141:17 145:8 231:7 245:2 253:6

**[line - llc]** Page 40

263:1 296:4,7
296:10,13,16
296:19
**lines** 107:9
145:20 233:12
**linked** 92:6
98:12
**lions** 161:18
257:3
**list** 17:24 27:21
28:3 132:23
163:15 221:14
249:24
**listed** 11:15
82:5 98:4
113:12 135:21
157:24 200:2
260:25 261:2
261:12,18,24
262:2,10,18,21
263:7 265:21
266:23 275:22
278:12,14,24
278:25
**listen** 100:7
194:24
**lists** 65:12
155:12 280:16
**literal** 168:3
**literally** 112:5
168:5
**litigation** 45:7
73:7 189:4
274:3

**little** 14:3,5
19:3 36:4,7
38:10 64:9
255:13
**live** 15:9 16:8,9
17:5 21:22
22:12,15 24:11
28:22 63:10
174:9,11
211:25
**lives** 78:25
**llc** 1:4,5,10,11
1:12 2:4,5,10
2:11,12 5:12
5:13,24 6:17
8:18 9:5 10:17
10:22 11:12,13
26:14,15,19
28:14 43:25
44:12,14,17
45:25,25 46:14
46:23,24 47:11
47:11 48:20
49:1,4,10,22
50:6,6 52:11
52:14,21 53:5
53:10,15 54:7
54:16,20 55:2
55:7,10 57:15
57:20 58:10,15
58:18 59:1,4,5
59:10,22,22
62:12,12 64:23
66:13 67:2,5

67:18 70:25
71:11,16,18
74:3,4,5,6,15
77:23 78:3,8
80:3,4 81:19
81:23 82:6,6,7
82:22 84:12,16
84:20,24 85:15
87:20 88:25
89:9,16 90:17
90:20,24 92:4
93:1 94:4,7,11
94:21 95:10,24
96:19 99:6,9
99:13,20
101:16 102:3,9
103:6 104:4
105:20 106:5,9
106:10,15
107:17 108:12
108:16,21
109:3,14,16,17
109:21,23
110:17,22
111:10,15,18
112:10,13
113:1,5,5
114:1,5,10,20
114:21 115:1
115:16,18
116:5,7,11,16
117:8,25 118:3
118:8,16 119:1
119:7,12 120:9

127:16 128:4
128:12,17
129:11 130:11
130:21 131:8
131:14,21
132:11 134:1,4
134:10,17,24
135:7,19 136:8
136:11,14
137:2,9,12,20
138:9,10,12,13
138:19,21,24
139:2,12,15,21
140:8 141:7
142:6,18 143:8
143:12,17,18
143:20,21,23
144:6,8 145:4
145:9,11,21,25
146:17 155:10
164:2,3 165:1
165:3,7,8,9,9
165:24,25
170:7,18
171:16,21
172:2,3,15,20
175:1 176:2
184:5,8,12
188:8,9 190:11
191:5,17,23
192:11,16,25
199:18,25
200:13 205:6
205:13,23

**[llc - looks]** Page 41

| | | | |
|---|---|---|---|
| 206:5,7 207:4 | **llc's** 116:20 | 146:23 147:8 | 105:6 113:10 |
| 207:5 209:9 | **llcs** 109:1 | 152:1 161:6 | 120:20 121:4 |
| 217:14,19 | 165:19 180:13 | 164:10 166:6 | 121:22 128:10 |
| 218:1,6 222:17 | 180:15 197:8 | 167:16,18,20 | 131:24 136:6 |
| 224:19,24 | 207:4 223:12 | 176:25 177:9 | 137:7 140:11 |
| 225:3,21,23 | 223:22 224:3 | 178:7,24 | 140:25 146:7 |
| 226:1,5 228:24 | **lmao** 174:13 | 180:24 181:2 | 148:6 150:20 |
| 230:11 233:8,9 | **loan** 48:12 | 183:5 185:2 | 154:24 156:15 |
| 236:25 237:21 | 90:18,18,21,21 | 193:20 194:9 | 157:5 161:14 |
| 239:8,13,15,16 | 145:8,12,21,24 | 194:12 195:12 | 161:21 162:3 |
| 239:19 240:6 | 146:2,16,17,18 | 196:23 203:12 | 166:6,8,15 |
| 240:10,17 | 244:21 250:20 | 203:16 209:10 | 169:21 187:9 |
| 241:7 242:12 | **loans** 244:15,17 | 210:6 217:19 | 195:7 196:6,11 |
| 243:5,10 244:7 | **located** 10:22 | 219:8 220:13 | 197:11 204:7 |
| 244:24 247:8 | 86:13 | 220:18,20 | 208:9 211:6 |
| 247:12,20,21 | **long** 51:2,10 | 228:22 235:17 | 217:6,24 220:7 |
| 248:4,6,7,8,16 | 149:3 152:4,4 | 239:4,5,11 | 236:14 237:3 |
| 248:20,25 | 170:16,16 | 240:12,13 | 238:8 239:14 |
| 249:3,6,14,17 | 224:4 291:2 | 241:16 242:3 | 247:6 264:23 |
| 250:1 251:3,17 | **longer** 115:21 | 258:12 260:14 | 270:2 271:14 |
| 251:19,25 | 225:22 255:12 | 260:24 268:10 | **looks** 60:13,14 |
| 252:16 256:4 | **look** 60:9 64:5 | 268:17 270:2 | 65:23 66:1 |
| 257:7 259:8 | 69:12 70:4 | 273:4 276:10 | 67:4 69:3 |
| 260:11 261:3 | 75:4 77:5 | 288:5 289:7 | 84:17 87:8 |
| 262:12,23 | 85:25 86:25 | **looked** 84:14 | 95:14 96:23 |
| 263:3,9,25 | 94:18 97:3 | 95:16 113:13 | 102:20 107:1 |
| 264:2,9,10,22 | 98:20,25 101:5 | 151:13,14 | 120:15 121:18 |
| 265:9,25 266:6 | 104:14 105:13 | 155:25 174:20 | 121:24 123:3 |
| 266:9,14,15 | 114:15 120:3 | 174:20 196:14 | 134:22 140:10 |
| 267:10 279:20 | 120:12 123:10 | 197:15 240:10 | 148:11,24 |
| 280:23 283:15 | 123:12 124:5 | 240:12 | 150:22 155:2 |
| 284:6,20 | 130:25 131:4 | **looking** 63:22 | 155:22 166:15 |
| 287:20 295:4 | 133:3 135:4 | 66:6,24 68:14 | 168:10,11 |
| 296:1 | 136:5 138:3 | 71:25 99:3 | 180:21 181:3 |

201:11,19
208:16 229:9
229:11 230:4
231:14 236:20
238:24 239:8
240:9,22
268:19,24
271:6,11
272:10 291:4
**los** 3:8
**loss** 130:11,16
142:5 246:3
**lost** 150:21,22
151:1 152:3,4
**lot** 27:21 31:17
45:1 69:25
132:14 176:5
214:10 223:25
235:1,3 240:10
244:3 261:6
**loud** 20:20,24
**louder** 14:5
**louis** 193:12
**love** 39:15
269:3
**low** 14:3
**lower** 75:19
174:6
**loyal** 34:7
**lp** 68:3,7,15
69:8 70:17
**lunch** 13:10
104:24 112:16
119:14,14,20

119:21 120:3
**lynn** 1:22 2:22
11:1 12:1
294:24
**lyons** 229:2,3
231:21 232:11

**m**

**ma'am** 64:13
**machine** 294:9
**madam** 291:22
**made** 23:6,19
23:23 27:11
32:18 38:17
55:6,9 84:21
85:5 98:9
133:21 202:16
229:1 257:21
293:6 294:8
**magistrate**
227:8
**maiden** 75:14
75:15
**mailroom** 22:6
**maintain**
223:10 224:1
**major** 61:13
176:6,6
**make** 13:1
14:21 15:18
20:6,7,17
24:10 35:25
37:14 38:19
44:20 47:20

64:3 97:14
102:16 108:11
138:5 177:2
178:6 188:4
198:10 199:23
201:25 202:4
222:7 233:25
253:2 256:23
287:1,3
**makes** 48:11
61:10 242:14
**making** 39:18
57:11 83:21
132:11 262:7
**malhorta**
288:12
**malhotra** 7:13
**malicious**
212:16 218:23
**manage** 134:18
284:13
**management**
9:10 128:24
130:8 134:25
207:25 267:10
267:12 281:5
281:22 282:12
290:15
**manager** 42:22
262:9,17,20
284:7
**manages**
253:22

**managing**
127:15 128:16
134:20 237:4
247:7,8,11,14
254:8 265:17
282:4
**manual** 188:19
188:21,22,24
189:3,6
**march** 84:22
183:7,12,24
185:4 186:12
186:24 197:13
198:1
**mark** 198:16
**marked** 62:8
72:5 74:22
83:19 91:15
97:4 98:22
101:9 104:21
120:5 128:20
146:20 154:8
161:3 178:25
193:21 196:18
200:19 203:13
206:18 210:3
217:7 220:10
228:19 235:6
258:14 268:14
272:18 288:2
**market** 45:22
173:20 174:15
265:11

**marketed**
162:24 164:22
**marketing** 5:21
34:5,6,15
35:21,23,24
36:12 41:13
43:19 44:24
45:3,8,10,12,13
45:15,19 46:1
46:3,6,8,20
76:7,8,12
77:24 78:3
80:2,5,8,14,17
80:20,24 81:8
82:15 107:18
119:5 139:3,21
140:1,2 144:17
155:13 156:16
158:17 159:22
162:22 163:2,5
163:9,11,13,14
163:15,17
164:1 165:2,15
171:22,23
172:2,14 173:3
173:16,21,21
174:3,7,12
179:21 183:16
184:12,21
187:6,18
234:15 239:19
239:21,23
256:18 260:7
260:10,16

261:1 262:13
262:18,20
264:7,8 265:10
268:9 269:16
269:22 270:21
270:21,23
275:6 277:7,10
279:10,13,20
279:22,23
280:1 283:23
286:9
**marking** 76:10
228:15
**marry** 15:5
**master's** 18:4
18:11,13
**material** 20:8
85:14 122:21
122:21,24
123:1
**materially**
121:24
**materials**
159:22
**matter** 10:16
13:17,18 24:19
38:10 39:1
76:9,13 77:15
122:23 179:14
181:21 202:4
217:3 218:16
274:4
**mayweather**
28:9

**me.com** 72:21
**mean** 21:23
23:19 41:22
42:20 47:21
48:1 50:14
51:6 52:7 59:5
61:17 73:13
76:3,22,23
77:1,2,3,6,6
103:2,8 110:24
122:16,22
137:25 147:4
148:2 151:5
165:8 169:4
171:18 175:14
176:12 177:15
178:19 185:23
187:11 188:21
213:24,25
225:6 229:8
236:24 241:18
246:19 265:24
285:3,16
286:10 288:21
290:20
**meaning** 17:12
39:16 44:1,2
52:15 80:6
96:7,18 120:17
139:16 151:3
153:13 221:7
238:13 286:24
**means** 36:5
61:12 102:4

111:12 160:11
160:15 169:3
187:12 198:9
242:5 275:15
281:6,23 283:2
**meant** 40:20
86:16 96:11
162:22 221:16
275:4
**media** 10:14
36:2,12,12,21
36:25 37:3
46:8,19 57:2,5
91:6,9 119:18
119:23 144:16
157:19 159:22
163:14 167:8
167:12 212:4
215:9,12
253:22 254:2,8
254:16 258:21
258:24 260:6
260:10,16
261:1 264:6,8
283:22 287:22
287:23 290:14
292:15
**meet** 27:16
155:10 157:3
158:13 165:9
166:2,3 176:18
248:13,19,20
249:7,9 256:25

**[meeting - monies]**                                    Page 44

**meeting**  166:10
  166:10 169:22
  170:5
**meetings**
  170:10,13
  171:1
**mehran**  4:6
  10:24
**melva**  278:9
**member**  123:19
  127:15 197:18
  198:21 199:25
  200:12,15
  218:3 237:5
  247:8,9,11,14
**members**  107:6
  107:19 128:16
  197:15 290:3
**membership**
  55:2 76:23
  108:15 109:2
  114:10,13
  199:11 200:3
  205:11 217:18
  217:25 218:6
**memo**  6:25
  64:3 69:3
  154:25 155:10
  229:8 230:18
  232:2
**memorialize**
  203:9
**memory**  147:25
  245:9

**mention**  162:2
  221:5 264:5
**mentioned**
  22:11 44:6
  49:24 50:5
  127:25 136:16
  138:25 153:4
  174:21 213:2
  231:12 243:3
  248:4 267:19
  279:5
**mentions**
  221:12
**mercedes**  50:19
  50:20 51:1
  52:7 137:15,16
  230:12,22
**message**  75:10
  75:11 183:18
**met**  23:10,15
  176:16,17,19
  257:1
**michael**  278:6
  279:3,8
**microphone**
  64:9
**microphones**
  10:6,10
**middle**  98:5
  99:8 132:7
  141:16 177:23
  183:11 215:2
  260:14,25
  261:13 262:19

  270:9
**mike**  285:20
**militar**  92:16
**million**  227:20
**millions**  173:19
**mind**  16:14
  20:14 72:2
  85:24 99:16
  133:7,11 177:1
**minimal**  119:10
**minimum**
  290:22
**minute**  62:6
  91:2 104:13,17
  167:2
**minutes**  73:15
  185:23 193:7
  193:11,17,25
  194:5 258:16
**missed**  83:13
  197:14
**missing**  14:22
  148:22 149:1
  168:16
**misstates**  115:8
  117:18 125:12
  196:2 274:9
**mistake**  257:21
**mistaken**
  278:12
**model**  138:5
**modification**
  158:7

**modifications**
  66:4 70:6
  157:1
**modifying**
  257:13
**moment**  133:20
**money**  39:18
  48:14,16 53:25
  53:25 111:12
  111:13 112:1
  119:1 131:9,13
  132:22 133:1
  138:10,13
  139:17 140:7
  173:2 174:11
  176:13,22
  177:3 178:1,4
  178:8 195:9
  219:24 226:17
  232:9 233:16
  240:8,23
  242:14 243:8
  244:24 269:18
  287:1,3 288:25
**monica**  6:5
  55:16 91:22
  93:4 95:15
  97:25
**monica's**  97:22
**monies**  90:21
  90:21 118:21
  132:19 139:17
  239:16 241:9
  242:23 243:14

**[moniker - negotiate]** Page 45

**moniker** 72:16
**monitoring** 149:8
**month** 290:14 290:21
**months** 147:14 290:21
**morning** 10:4 12:1,13,14 13:16 30:13,20 60:23 61:1 180:25 185:6
**morning's** 29:22
**mortgage** 56:13
**motion** 182:17 255:3
**motivated** 179:22 248:6
**mouth** 24:2
**mouths** 26:9
**move** 12:23 31:10,21,24 61:20 74:20 83:14 126:20 154:7 166:9 240:7 255:1 272:17 276:14 283:10
**moved** 206:13
**movie** 27:14 61:9,19,21,25 159:1,2,9

247:19,24,25 248:2,11 249:4 249:6,11,15,25 250:18,21 264:16 282:2 284:17,19
**movie's** 61:25
**movies** 45:1 47:24 139:9 145:3 165:10 247:17 249:21 284:10
**moving** 21:11 83:18 141:3
**mtb** 155:13 156:17 185:11 186:3
**mugs** 83:22
**multiple** 287:18
**music** 23:6,19 23:23 145:18
**muster** 270:3
**mwf** 1:9 2:9 10:20
**mys** 247:3

**n**

**n** 150:8,8,8
**name** 10:24 12:1 23:5 29:24 50:1 75:14,15 82:24 88:20 93:4

99:23 120:22 151:9,12,17 159:7 166:25 171:24 194:1,4 197:5 201:11 210:9 214:12 230:3 237:18 237:25 238:5 245:5,7 249:6 250:17,19 251:12 252:14 252:18 254:10 257:13 285:4 294:20
**name's** 12:16 180:19
**named** 25:18 25:19 37:13 91:22 165:10 254:6
**names** 71:5 79:8 132:24 149:21 165:10 177:14 253:25 254:8,9,12,15 254:17 279:2
**naomi** 208:11
**narrative** 246:13
**national** 9:7 57:17 205:19 206:11 235:11 235:14 236:2 236:16,22,25

238:8,16,20 239:7
**native** 282:5
**nature** 20:8 42:1 281:12
**near** 191:17
**nearly** 181:4
**necessarily** 172:21 202:22
**necessary** 20:7
**need** 13:4,4,9,9 13:18 20:16 50:3 61:4 64:8 75:25 76:4 83:10 91:3 96:9 101:10 106:19,21 107:21,24 115:3 163:7 166:9 169:21 181:25 202:5 205:16 218:15 218:17 254:7 255:6,7
**needed** 67:17 96:16 106:24 130:13 184:24 262:14 288:15
**needs** 52:25
**negative** 146:6 178:3
**negotiate** 159:20 160:18 191:19 211:17

**[negotiating - numbered]**

**negotiating** 74:13 211:16 271:3

**negotiation** 31:14

**neither** 294:16

**network** 271:11 282:13

**never** 18:23 33:13,23 37:23 44:20 49:2 54:9,12 81:17 81:18 83:7 86:17 94:1,2 95:11,12 96:22 100:21 102:5 103:1,2,3,3 114:13,14 116:20 119:3 121:19 124:12 125:5,10 126:6 126:7,13,15 128:5 132:13 132:13 134:6,6 135:23 142:9 164:9 175:15 186:13 188:3 191:13 192:4 192:21 195:18 200:15 209:21 252:1 259:10 260:1,18 263:24 265:1 280:9,21,25

282:20 284:2 284:13 286:15

**new** 8:9 27:5 43:7 45:7 46:25 49:24 70:8 77:23 78:3 80:1,5,8 80:14,20,24 81:8,11 82:12 82:15 171:24 230:19 257:11

**newell** 3:4,5 11:16,16 32:8 33:2 34:23 35:7 37:17 38:16 39:6 40:1 56:21 60:11 71:19 86:20 87:4,22 87:24 88:6 89:10 92:13,18 97:8,12 104:11 109:6,24 110:10,12 111:19 114:11 115:6,8 117:1 117:18 118:10 119:16 122:2 125:12 127:9 129:19,24 133:9,11,17 154:1 158:4 167:1 182:2 190:2,21 196:2

199:8 214:13 215:1,5 218:8 221:9,20,25 223:13,15 225:18 226:19 227:21,23 228:6 235:21 240:18 241:21 242:16 254:22 254:25 257:6 257:16,18,19 257:22 259:21 259:22 263:10 263:17 273:1 274:9 275:9,10 275:10,19 276:22 277:11 277:18,20,25 280:7 283:11 283:13 290:18 291:17,21 292:1 295:1

**newell's** 8:24 272:22 283:21

**newellpc.com** 3:10 295:2

**nice** 120:2 199:22

**nite** 27:14

**nonprofit** 233:20 251:9 251:10,12,14 251:18

**nope** 125:8

**normally** 15:20 16:5 163:4

**note** 10:6 244:20 295:10

**noted** 269:25 293:7

**notes** 201:18 202:4

**notice** 57:11 60:7,11 76:9 242:2

**notices** 150:3 153:5,10

**noticing** 11:10

**notification** 285:9

**notify** 200:11 205:22 206:6 209:13

**november** 75:11,21 79:3 105:19 107:5 108:21

**number** 122:23 136:23 137:19 173:22,23 174:6 197:20 233:22,23 262:5 276:15 276:22 292:15

**numbered** 129:8,13

**[numbers - okay]**

| | | | |
|---|---|---|---|
| **numbers** 134:7 142:1 239:17 276:23 288:25 | 258:20 **objectives** 262:25 **obligations** 73:14 | **officer's** 49:20 **officers** 206:25 276:1 **offices** 3:19 | 27:3,10 28:2,8 28:12,21,21 29:6,8,13 30:1 30:3,8,12,15 |

| | |
|---|---|
| **o** | |

**o** 150:8
**oakland** 28:10
**oaks** 3:22
**oath** 11:23 12:6 19:13,16,16 294:7
**objection** 33:2 34:23 35:7 37:17 38:16 40:1 71:19 87:4,22,24 88:6 89:10 109:6,24 110:10 111:19 114:11 115:6 117:1,18 118:10 125:12 154:1 158:4 190:2 196:2 218:8 221:25 223:13 225:18 226:19,19 227:21 240:18 259:22 263:10 263:17 274:9 275:19 277:11 277:25 285:14
**objections** 11:8 57:1 91:5

**observe** 120:21 120:24 274:17
**obtain** 17:14,25 104:5
**obtained** 208:10,14 230:22 235:11 236:2
**obvi** 137:25
**obviously** 181:15
**occasion** 31:16 116:15
**october** 15:6 222:5 238:10
**odd** 63:24 65:4
**offered** 43:3
**offhand** 54:5 189:7
**office** 36:1 55:14,23,25 56:1,9,16 105:7 198:9 223:19 246:4
**officer** 52:25 53:6 59:14 207:11,20 258:6

**official** 136:21 187:21 188:10 193:13 238:6 290:9
**officially** 125:3
**oh** 16:22 29:13 54:18 86:15 99:16 104:16 154:18 173:10 177:6 178:3 195:4,5 201:3 210:2 222:9 226:18 228:7 234:3 235:15 239:25 250:17 250:21 258:18 274:13 275:1,4 280:5 286:19 289:15,19
**okay** 12:18,24 13:7,12,23 14:24 15:5,13 15:15 16:9,11 16:13 17:1,2 19:2,2,8,12,22 19:25 20:5,10 20:17,19 21:2 21:7,10,18 22:5 24:9 25:21,24 26:2

31:2,7,20 32:1 32:18 33:6,12 35:13 36:2 39:10 41:3,3,7 44:9,22 45:11 45:18 47:6,19 54:20 56:20 57:13,19 60:25 61:6,7,10 62:1 62:4 64:11,18 64:25 67:7,9 67:13,16,18 68:20 69:1,5 70:2 71:14 73:22 75:7,16 75:19,24 76:9 76:25 77:10,18 79:10 80:16,16 81:21 82:1,13 83:25 84:3,5 86:6,12,15 87:18 88:4,17 88:23 91:4,12 91:18 92:23 93:11 96:5 97:3 98:14 99:2,8 100:23 101:2,19 102:12,22 103:21 104:2

**[okay - open]**

| | | | |
|---|---|---|---|
| 104:17,17,19 | 159:16 161:8 | 224:5,18 | **omar**  145:12,13 |
| 105:13 106:1 | 165:20 166:5 | 226:22 227:4 | 244:9,10 |
| 107:3 108:24 | 168:24 169:15 | 228:4,14 | **once**  14:19 |
| 109:13 111:2,9 | 171:1,7 173:18 | 229:13,25 | 21:11 107:22 |
| 112:6,15 | 173:24 174:5 | 231:15,20,23 | 185:25 195:16 |
| 113:20 114:7 | 175:5,18,24 | 233:4,13,25 | 200:10 242:20 |
| 115:11,11 | 176:8,14 177:6 | 234:17,24 | 255:3 273:4 |
| 116:4,19 | 177:21,25 | 235:4,5 236:23 | **onchainmedi...** |
| 119:14,17 | 178:9,14,23 | 237:3,23 238:2 | 180:5 |
| 120:12 121:19 | 180:8 181:10 | 238:7,19 240:5 | **one's**  47:8 58:6 |
| 121:19,22 | 181:19 182:4,7 | 242:10,20 | **ones**  82:1 191:1 |
| 122:13,15 | 182:13,21 | 243:13 244:6 | 228:13 240:1 |
| 123:5,16,22 | 183:1,3,5,10 | 245:15 246:25 | 240:13,14 |
| 125:4,19 | 187:2 188:6 | 248:13,23 | 265:14 |
| 128:14 129:3 | 190:3,7,15,19 | 249:1,16 | **ongoing**  89:18 |
| 129:18 130:2,2 | 191:21 192:4 | 251:21 252:7 | **online**  100:14 |
| 130:15,20 | 193:6,19 194:6 | 252:17,22 | 100:20 208:6 |
| 131:11,17 | 194:7,11,14,22 | 253:1 255:9 | 242:4 287:17 |
| 132:4 133:6,10 | 196:7,17 | 259:12 261:5,9 | **onset**  127:16 |
| 134:14 135:11 | 197:10 198:4 | 261:21 262:15 | **oops**  77:17 |
| 135:16,24 | 200:7 201:19 | 264:19 269:2 | **op**  8:14 210:10 |
| 136:7,23 137:4 | 201:24 202:1 | 270:8,13 273:2 | 210:23 211:20 |
| 138:9,18,24 | 202:10,21 | 273:6,13,16,22 | 213:10 214:7 |
| 140:6,21,25 | 203:2,16,20 | 275:4,5,16,16 | 214:24 215:17 |
| 141:3 143:10 | 208:4 209:23 | 276:18 277:4,6 | 215:24 216:16 |
| 143:25 144:16 | 209:24 210:13 | 277:19 278:18 | 216:20 217:2 |
| 144:25 146:25 | 213:1 214:7 | 279:4,18 | 218:19 219:4 |
| 147:9 148:7 | 215:4,7 216:7 | 282:11 283:10 | **open**  27:24 |
| 149:14,19 | 216:9,13 | 283:18 285:6 | 29:15,16,17 |
| 150:10 151:16 | 217:10,12,24 | 287:11 288:1,7 | 58:25 59:3,18 |
| 154:7,20,22,23 | 218:5,10,18 | 289:15 291:15 | 73:17 93:6 |
| 154:24 155:20 | 219:3,17 220:8 | 292:9 | 95:18 96:3 |
| 156:7,14,21 | 220:18,18,22 | **old**  17:9 278:8 | 103:22 104:7 |
| 158:19 159:4 | 221:5 222:12 | | 205:19 236:24 |

**[opened - own]**

**opened** 90:10 92:4 103:2 104:3 113:5 117:5 118:13
**opening** 94:16 94:21 95:3 102:2,7,9
**oper** 59:17
**operate** 164:7 170:20
**operated** 96:12
**operating** 5:23 6:16 26:25 54:9 59:17 81:24 82:3,11 82:14,21 83:2 83:4,7 84:10 84:11,15,20,21 84:23 85:6,14 87:12,18 89:21 90:12,25 92:4 92:7 96:10,19 99:6,9,12 102:3 103:5 106:19,25 108:5,11,20 113:1,6,11 114:3 117:24 118:14 120:9 121:25 123:12 123:24 124:2,9 124:11,16 125:10,20,23 126:2,11,22

127:18,23 128:1,3,5,6,9 128:11 171:5 171:12 174:19 174:21 189:21 189:22 190:10 190:16 191:6 191:14 192:21 197:13,23 198:1 200:3 201:16 202:13 202:14,17,21 203:2,4,9 204:13,18,23 205:8,12,14,15 205:18,21 206:4 217:15 255:24,25 256:3 257:11 258:5 275:17
**operation** 276:2
**operational** 258:5
**operations** 258:7 276:18
**opinion** 24:5 38:14 53:24 61:11 66:8 67:1 68:19 90:24 169:4 181:7 195:7
**opportunities** 81:3

**opportunity** 14:20 133:13
**optimad's** 179:21
**optional** 182:10
**orangevale** 17:19
**order** 16:4,4 59:18 77:23 83:15 142:5 147:1 182:12 182:18 227:9 291:20
**ordered** 292:6
**org** 276:10,19 276:21
**organi** 132:25
**organization** 136:22 224:23 235:2 251:14
**organized** 12:25 141:6
**organizing** 22:24
**original** 66:11 68:23 125:20 127:25 128:7 174:21 198:5 203:2 205:15 218:3 255:24 256:3 294:13
**originally** 165:11 176:17 218:2

**osint** 212:21
**outcome** 11:4
**outlined** 71:7
**outlining** 156:22
**outs** 48:12
**outside** 37:2 71:13 89:23 145:2 168:2
**outstanding** 146:2 195:15 214:1
**overall** 32:2,25 33:8 34:20 37:16 164:11
**overhead** 107:21
**overlap** 235:3
**overlapping** 244:3
**overseas** 212:1
**owe** 153:15,17 195:9 226:15 227:19
**owed** 73:23 74:14
**owes** 244:24
**own** 23:17 45:1 45:11,13,19 46:19,20 109:15 118:21 137:12 144:23 162:24 163:4 163:12,17,17

164:17 193:18
201:18 248:10
248:16 252:10
252:12 282:18
282:18
**owned** 109:2
110:7 240:3
247:1 250:2
284:18 285:8
**owner** 32:23
33:10,11,14,19
40:22 42:21
55:2,6,9 76:22
77:1,2 81:18
109:21 113:12
135:18 191:6
206:7 247:19
249:22 251:18
**owner's** 135:5
135:8 146:4
**owners** 43:21
44:4,9,11 54:8
54:15,21
109:20 193:13
193:16 199:17
204:3 205:9
247:22
**ownership** 54:6
69:11 81:10,14
87:11,19 88:24
89:8,11 94:4,5
94:7 114:25
115:18 120:17
121:23 122:25

189:23 205:5,7
232:14 246:7
257:10
**owns** 54:4
109:15,16
193:10 229:6
246:16,17
247:21,25
248:5,7,10,13
249:8,11,19,25
250:9,14,14
251:5,13,24
252:7 284:21

**p**

**p** 93:23 96:13
96:23 98:11,12
98:15 99:25
100:6,9,24
102:8,15,19,25
103:7,9
**p.m.** 2:21 91:10
105:19 107:5
107:15 119:19
119:24 147:11
166:8 167:9,13
167:22 179:12
215:9,13
258:21,25
292:13
**pack** 232:2
**page** 9:20
36:21 62:13
63:13,19,21

64:5,6,6,7,18
65:11,17,19
66:9,25 68:24
68:24 69:13
75:20 84:9,18
85:24,25 87:1
87:3,7,10
92:12 95:13
96:5 98:6 99:4
99:9,15,16,19
101:3 102:21
103:3 104:18
105:13 106:17
107:4,13
120:21 121:5
122:20,20
123:10,18,19
124:5,23
129:10,16,16
129:17,19,22
131:1 132:4,7
135:3,4 136:23
137:8 141:4,5
141:17 145:7
147:8 148:22
151:14 154:21
154:24 155:12
155:14 166:7
167:18,21
179:9,10,10
180:3,4 183:5
183:6,11 185:1
185:2,4 186:10
186:12 197:11

203:22 204:8
208:16 211:3,4
211:6,11
217:20 219:11
219:14 229:1
229:13,25
230:10 231:15
231:20 232:17
233:1,2 236:18
237:4 238:8
239:6 253:12
253:16 260:2
260:14,23
261:15 262:10
262:16,20
264:20,24
268:17 270:4
270:10 274:23
274:25 275:1
276:15,22,23
280:3,5,7,12,20
288:8 289:3,7
296:4,7,10,13
296:16,19
**pagel** 6:6
**pages** 5:10 6:3
7:3 8:3 9:3
47:4 65:12
129:8,13 148:6
154:13,15
179:3 180:2
196:23 215:19
236:15 271:14

**[paid - patel]** Page 51

| | | | |
|---|---|---|---|
| **paid** 47:20,23 | 215:18,21 | **participation** | **partnership** |
| 48:7,9,12,23 | **parameters** | 109:4 110:17 | 28:24 127:8 |
| 49:7,19 51:4,6 | 109:12 | 110:18 112:8 | 162:4,12,15 |
| 51:9,21 56:5 | **parentheses** | 112:13 243:10 | 163:20 165:1 |
| 56:15 107:22 | 194:2 | 243:11 | 166:12,16 |
| 111:22,23 | **park** 3:7 | **particular** | 167:24 169:2,6 |
| 115:25 116:17 | **part** 33:23 | 22:21 46:22 | 169:16 170:6 |
| 116:18 128:16 | 35:22 42:19,20 | 48:8 50:1 | 170:14,17 |
| 135:25 138:11 | 56:16 68:17,22 | 100:1,15 | 171:9,20 |
| 139:18 194:19 | 69:24 70:11 | 141:14 157:15 | 172:19 174:24 |
| 194:23,25 | 76:20,22 85:5 | 173:1,9 268:18 | 175:6 176:1 |
| 195:1,4,4,5,5 | 89:18 134:22 | 269:12 | **party** 11:3 |
| 195:13,17,20 | 142:11 149:13 | **parties** 10:12 | 29:10,11,13,14 |
| 196:1 208:17 | 154:19 156:11 | 25:22 48:16 | 29:20 37:11 |
| 214:3,3,6 | 156:12,19 | 70:7 80:19 | 45:12 60:8 |
| 219:4,6 220:1 | 157:14,20,22 | 120:18 139:3 | 89:22 118:17 |
| 220:3,6 229:11 | 157:24 158:11 | 139:14 140:3 | 118:24 127:6 |
| 245:10 267:24 | 163:3,18 | 144:20,21,22 | 136:17 139:11 |
| 279:5 | 191:20 196:15 | 157:8 164:15 | 139:20 144:8 |
| **panels** 233:21 | 196:16 197:4 | 169:1 172:22 | 153:18,19 |
| **paper** 65:9 67:6 | 198:6 202:12 | 172:23 191:19 | 157:9 162:9 |
| 85:7 131:24 | 212:8,17 | 294:18 | 169:17 264:18 |
| 136:5 141:15 | 222:20 234:15 | **partner** 15:2,4 | 265:15 290:10 |
| 187:9 | 241:14,21 | 42:12 77:3 | **pasadena** 3:23 |
| **papers** 86:2 | 250:5 253:14 | 80:14,18,24 | **past** 25:3 28:6 |
| **paragraph** | 273:12 283:24 | 161:15,22 | 28:7 57:16 |
| 63:12 69:12,14 | **partial** 168:25 | 166:9,15,19 | 70:17 137:22 |
| 69:16 70:4,5 | **participant** | 169:21 190:10 | 207:6 211:5 |
| 71:8 101:6 | 42:22 76:24,25 | 191:5,16 | 214:22 222:16 |
| 122:23 123:9,9 | 80:24 | 287:19 | 271:7 |
| 123:13,19 | **participated** | **partners** 43:21 | **pastes** 178:5 |
| 124:6 157:5,20 | 156:21 | 77:8 80:20 | **patel** 91:22 |
| 158:19 159:6 | **participating** | 250:6 271:7 | 92:1 93:4,20 |
| 180:11 211:14 | 42:25 134:25 | | 95:15 96:6 |

**[patel - phrase]**

97:25 101:4
**path** 187:16
**paul** 279:1
**pay** 55:21
111:10 136:11
138:13 164:3
210:20,22,23
219:24 225:16
226:1 233:16
241:10
**payable** 79:17
222:25 229:2
**payee** 233:6
**paying** 47:8
93:25 134:10
135:7 137:21
138:9,21
158:12 175:3
234:13 244:14
**payment** 49:20
51:5 134:2
137:15 164:8,8
185:7,12,24
186:7 270:12
271:12
**payments**
47:24 74:5,9
**payroll** 48:25
49:2 136:12
189:8,12
**pc** 3:4
**pee** 27:25 28:9
**penalty** 293:5

**people** 21:6
25:9 34:10
35:17 38:6
78:7 100:11
133:1 136:20
149:16,21,22
152:19 164:18
174:15 176:22
177:3,12,13
178:4,8,12,17
199:3 208:5
245:10,16
246:23 247:4
252:6 253:23
263:8 264:17
265:4 266:3,15
267:3,5,7
268:20 269:21
279:4 284:10
285:12 286:20
**people's** 176:12
254:7 285:4
**pepperdine**
18:9
**percent** 38:23
38:24 55:1
60:14 79:4
81:12 87:15,17
89:9,15 107:23
108:14 109:2,5
109:15,16,21
113:12,16,25
114:4 189:25
197:16,16,17

197:18 199:11
218:6
**percentage**
81:10 122:25
**perfect** 67:16
75:19 115:14
128:14 288:7
**perform** 35:10
35:17 164:16
192:19 257:2
260:16 284:15
287:18
**performance**
262:25 281:11
**performed**
35:10,13
114:20 140:2
207:7 234:5
262:4,12
**performing**
37:12 115:20
144:18 229:20
256:17 264:15
264:17
**perjury** 293:5
**perk** 49:14,14
49:16,19
**perks** 49:13,21
**permitted**
285:11
**perquisites**
49:13
**perry** 130:22
197:3

**perry's** 197:5
**person** 31:18
31:18 87:13
94:9 142:13,17
143:7 150:2
163:3 170:11
207:10 208:5
266:17
**person's**
153:22
**personal** 28:23
50:22 51:12,19
59:1 77:19
98:18 108:25
114:8 117:10
117:12 163:13
188:9 226:8
241:5,6 250:19
282:18 288:15
**personally** 26:3
51:7 69:9
172:21 177:8
209:14,19
220:4 226:7
255:18
**perspective**
127:8 152:13
263:6
**pertains** 294:12
**phone** 56:18
170:11,12
**phones** 10:9
**phrase** 160:10

[physical - presented]                                          Page 53

**physical** 58:12
**physically** 66:16
**pick** 10:7 178:22
**piece** 35:24 163:1,18 200:5 256:21 285:25
**pippen** 28:9
**place** 10:9,12 56:22 167:1 294:5
**placed** 93:14 102:19 294:7
**plaintiffs** 1:8 2:8 3:3 11:16
**plan** 119:11 184:4,12 273:14
**planning** 278:18
**plat** 34:4
**platform** 47:9
**platforms** 34:4 37:10 183:17 256:17 267:24
**play** 80:7
**playbook** 36:18
**please** 10:6,8 11:8,22 14:7 19:21 21:3 24:25 28:3 62:14 69:13 74:21 75:3,6

97:3,17 98:25 101:6,7 105:3 120:10 135:4 135:17 166:9 169:21 179:3 181:19 185:6,7 185:25 197:19 200:18,23 204:2 220:19 231:16 270:10
**plenty** 176:25
**pmkbnc** 231:16
**podcast** 193:8 193:9 194:1 282:23,24
**podcasts** 50:16
**point** 23:17 35:19,20 42:10 45:6,12 72:16 81:6,22 143:11 144:5,25 147:20 153:12 171:1 191:17 192:8 223:23 237:1 252:4 261:4 262:5 289:2
**policies** 188:7
**policy** 188:14
**polite** 15:18
**politics** 250:25
**pop** 265:4
**popup** 229:7

**portion** 99:5 179:18 229:8
**position** 15:24 21:13 22:2 81:14 102:25 116:6 125:4 145:19 186:17
**positions** 22:3 22:5
**possibility** 80:13 227:12
**possible** 132:15 156:2 180:13 186:20 239:18 269:13
**possibly** 100:17 227:9 245:18
**post** 36:20 46:4 228:6 271:6,12
**posting** 37:10 47:5,9
**potential** 166:12 169:2,7 170:6,14,17 171:8,19 174:24 175:6 256:25 276:9
**potentially** 227:10 230:23 241:16
**pottier** 8:5
**power** 290:10
**ppp** 90:18,21 146:16

**pr** 213:8
**prefer** 12:21 15:12 96:10
**preparation** 13:13
**prepare** 14:18 82:14,21 84:24 106:8 130:7,10 130:15,16,19 142:5 155:9 171:4 184:4,7 184:9,11,18 190:9,16 257:12 262:24 276:3
**prepared** 13:19 106:14 108:20 123:24 125:20 142:20,21 184:20 189:6 190:16 273:14 289:2,4,5,17,20
**preparing** 29:22 142:4
**presence** 208:7 281:4
**present** 4:3 11:5,20 34:13 57:16 119:21 184:25
**presented** 108:7 142:23 231:8

**[preserve - project's]** Page 54

| | | | |
|---|---|---|---|
| **preserve** 181:16 | 204:23 208:2,2 216:12 223:3 223:23 224:25 233:23 244:2 252:16 258:6 265:12 287:16 289:25 | 126:1 150:15 247:18 249:22 | 243:11 246:3 287:10 |
| **president** 145:18 | | **producer** 48:4 233:10,12 234:6 | **profitability** 131:1 |
| **press** 286:21 | | | **profitable** 39:22,24 40:7 40:9 287:9 |
| **pretend** 133:5 | | **producers** 47:21 | |
| **prevented** 175:25 | **problem** 64:14 97:6 | **producing** 28:5 73:5 77:14 | **profits** 47:18 48:4 107:22 112:9,11 118:1 118:7,9 |
| **previous** 53:4 136:1 | **procedures** 70:9 | **product** 183:21 183:24 253:8 | |
| **previously** 103:12 156:1 246:5 | **proceed** 11:24 57:7 91:11 119:25 167:14 215:14 235:20 259:1 | **production** 8:25 22:23 23:24 24:3,6 35:21 36:10 61:14 145:18 229:23 234:23 245:13 272:22 286:2,5 | **program** 18:13 232:25 |
| **price** 219:15 | | | **programming** 21:22 |
| **printed** 153:9 | | | **progress** 57:12 |
| **prior** 18:13 31:8 69:4 148:6 164:23 171:23 172:17 172:17 175:24 185:13 213:5 231:8 290:12 291:10 294:7 | **proceeding** 11:8 19:7 | | **project** 25:6 37:8 47:22,23 49:6,6,8,9 155:10 156:17 156:23 157:3 169:23 173:1,4 173:9,14 184:13 251:5,6 256:19 262:8 264:12 265:11 266:16 267:1,8 267:9,12 268:3 269:12,14 270:25 272:9 272:13 279:23 284:7,15 |
| | **proceedings** 127:13 294:4,6 294:8,14 | | |
| | | **products** 179:23 | |
| | **process** 73:6 77:15 94:14,15 270:12 | **professional** 79:21 | |
| **privacy** 226:20 | | **professionally** 116:25 117:7 | |
| **private** 10:7 89:4 252:2 | **processed** 185:24 270:15 | **profile** 271:18 271:21 | |
| **prob** 168:5 274:15 | **procure** 270:18 | **profit** 39:20 48:1,6,10,20,21 109:3,5,17,19 110:8,16,18,25 112:8,12 130:10,16 142:5 243:10 | |
| | **procured** 263:24 | | |
| **probably** 12:23 53:16 81:12 83:3 90:8 100:25 118:23 145:20 189:16 199:6 204:22 | **produce** 164:20 189:3 | | **project's** 48:2 |
| | **produced** 27:13 28:4,13 28:22 47:24 | | |

**[projects - putting]** Page 55

**projects** 27:20 36:17,24 39:17 45:5 46:20 47:20 48:15,24 50:12,13 119:6 119:10 144:22 145:2 163:2 165:15 172:1 172:16 173:2 254:18 263:22 264:11 267:13 270:25 281:10 281:16,20 282:2,8,13 284:11,12

**promise** 114:19

**promised** 114:22

**promissory** 244:20

**promo** 7:6

**promos** 168:18

**promote** 47:6 265:11 286:18

**promoting** 44:25

**proper** 30:4

**properly** 50:4

**property** 159:23 160:4

**proposal** 7:10 63:15 64:1 116:21 117:15 179:15 184:21

184:25 185:8 186:17 192:19 271:5

**propose** 89:15

**proposed** 162:15 163:20 164:25 190:12

**protocol** 290:1

**prototype** 286:1

**prove** 219:1

**provide** 14:23 16:13,25 59:2 79:23 94:3,19 98:21 101:21 114:25 115:2 115:17 116:4 117:7 133:12 139:3 143:2 144:7,12,19 157:2 158:17 163:9,11,20 165:2,14 207:16 210:24 216:7 217:2,5 234:3 243:4 254:11,15 255:23 258:1 261:12,18,23 269:21 271:2 275:16,25 281:16,21,24

**provided** 34:19 37:5 69:22

81:15 103:6 116:12,15 131:14 163:13 163:16 165:7 171:3 172:15 186:8 213:4,13 214:10 215:25 216:5 217:4 233:10 234:7 256:13 258:7 261:3 262:22 263:5 264:5 267:19 272:25 283:12

**provider** 41:22

**providers** 212:6

**providing** 16:7 36:23 43:9,14 43:17 89:8 116:21 134:2 135:19 139:14 144:23 156:16 159:11 163:25 165:20 214:24 229:11 256:15 263:8 266:23 272:8

**provision** 160:19

**provisions** 103:4

**public** 177:23

**publicity** 231:17,19 234:11,14

**pull** 258:13

**pulled** 135:23 202:6

**pulling** 142:1 159:2,5

**purchase** 231:12

**purchased** 137:13,24

**purpose** 44:23 59:23 63:7 68:6 107:6 185:9

**purposes** 55:18 93:11 157:9

**pursuant** 129:1 210:19 215:25 217:11 272:23 273:3

**put** 24:1 64:8 96:15 106:19 118:21 128:8 193:3 198:16 213:25 239:24 246:8 250:10 256:24 286:20

**putting** 26:8 183:13

**[qualified - reason]** Page 56

| q |
|---|

**qualified** 271:23

**quality** 34:22 69:19

**quarter** 130:25 137:8 185:3

**question** 14:15 15:21 17:1 19:21,24 20:1 20:12 21:4,6 36:6,11 38:9 38:13,25 39:1 40:17 45:14 46:17,21 48:19 50:4 57:10,19 64:4 69:6 77:12 91:3 112:2,7 114:3 118:18 120:11 126:9 135:13 135:18 139:19 140:23 147:4 148:7 149:4 153:16,16 154:1 170:1 181:13,17,20 182:22 183:23 191:25 192:2 195:24 198:16 215:1,3 218:5 223:15 224:7 227:3,5,10,15 227:17 228:1 228:23 238:12 239:12 254:20 263:23 270:17 284:4,4 290:23

**questioning** 86:18 92:21

**questions** 14:17 16:5,6 30:5,9 30:25 31:5,12 39:8 50:11 101:22 105:4 105:10,11 133:13 146:24 154:12 156:4 161:7 179:4 181:22,25 182:9,13,18,25 190:25 217:15 233:2,2 241:11 241:12 246:4 291:17

**quick** 13:1 62:17 194:9 203:16 228:11 228:12,22 236:6,11 288:5

**quicker** 12:23

**quincy** 8:24 127:9 195:14 199:8 257:6,18 257:22 259:21 272:22,25 273:15 275:10

283:12,20

**quincy's** 272:22

**quite** 35:8 158:9 160:11 223:24 255:12

**quotes** 286:22

**quoting** 34:12

| r |
|---|

**r** 150:8 296:3,3

**race** 14:16

**radio** 163:14

**raise** 191:21

**rallied** 25:9

**range** 51:13 173:5,7

**rashad** 229:2,3 229:3 231:21 232:10

**reached** 116:20 176:20

**read** 30:8 32:4 32:12 38:21 39:2 60:19 62:16 65:14 69:16 70:5 75:18 106:18 177:24 220:21 293:5 295:9

**reading** 39:9 64:24 65:9 67:6 75:12,17 105:5 107:11

131:22 201:2 271:10

**reads** 260:23

**ready** 36:6 105:12 119:15 146:25 193:24 200:24 206:21 273:6 288:6

**real** 166:9 169:21 195:24 236:10

**realize** 19:9 36:9

**realizing** 148:8

**really** 15:18 44:20 58:6 71:6 100:21 119:3,4 139:1 148:19 166:21 192:13 222:7 228:8,11,12 236:6 258:7 281:23 286:23

**reason** 20:14 99:22 102:22 113:15 117:5 117:20 125:9 138:12 144:2 153:17 159:16 175:10 190:15 192:20,23 194:22 197:24 199:16 202:12 205:24 216:25

**[reason - recollect]**

233:16 234:12
244:11 268:5
273:18 295:11
296:6,9,12,15
296:18,21
**recall** 18:17
21:13 23:2,9
24:21 26:4
27:13 31:3
36:15,17,22,23
39:25 40:5,8
42:15,16,23
43:4,13 50:24
52:19 53:9
54:12 55:7,11
55:21,23 56:14
56:16,17 59:19
60:1,17 65:25
67:19 68:16
69:7,9 80:21
80:22 82:25
88:21 89:25
90:17,20 91:21
91:25 92:9
94:8,23 95:24
98:1 100:14,16
102:22 113:8
113:10,12
114:8 115:5,16
117:17,20
127:1,10,11
130:3 132:11
133:14,14
135:7,19 136:3

136:7,12
138:20,21
139:12 141:23
143:15 147:5
148:8,16
149:21 150:20
154:25 155:3,6
155:20 156:9
156:10,10
160:17 166:10
168:9 170:3
172:11 174:23
179:15,25
181:1 183:18
184:6 185:18
186:4,21 189:4
194:15 200:1
201:5,10,15
203:11,23
205:18 207:18
210:14 214:24
216:18,19
220:22 221:1
224:10 229:15
236:16 238:12
244:15 245:20
254:5 255:17
256:2,12 257:8
257:15 258:4
260:12 265:1
268:4 269:10
280:2 288:7
290:8 291:7

**receipt** 295:17
**receive** 48:19
48:25 49:3,12
49:21 93:17
109:4,22 110:8
110:16,21
113:25 114:4
123:20 126:23
139:25 150:2
153:10 168:8
196:13 215:23
235:9 255:15
269:18 275:8
285:9
**received** 53:14
66:18 90:20
111:17 112:9
112:12 126:15
128:25 129:2
135:9,14 136:4
153:4,7,8
195:22 200:10
217:10 224:13
236:21 243:9
272:9
**receiving** 95:20
130:3 131:21
136:3 138:20
147:13 164:2
179:15 180:18
186:21 194:15
201:5 203:23
220:22 288:7

**recently** 26:21
175:14 195:2
**recess** 57:3
91:7 119:20,21
167:10 215:10
258:22
**reciprocal**
212:14 218:22
218:25
**reclaim** 151:3
151:12
**recognize**
112:21 237:7
245:5,7 268:18
**recollect** 37:3
41:7 62:21
66:11,20 68:12
69:23 70:11,16
71:9,14 72:12
72:24 73:5
74:13 75:9
84:6,15,22
85:5,8,13 87:3
87:5 88:4,7
95:20 101:11
103:13,17
104:3 108:19
123:23 134:1
134:10 137:19
137:20 147:25
149:4 151:19
151:19 161:10
177:2 196:24
204:5 219:20

224:8 228:23 269:8,13

**recollection** 31:9 58:21 64:20 65:1,6 97:2 99:11 131:7,20 141:13 151:2 208:24 217:25 219:3,21 243:8 270:16 289:12

**recollection's** 224:13

**recommendat...** 214:23

**recommendat...** 215:21

**recommended** 214:17

**record** 10:5,13 11:7 14:4 16:16 18:25 21:1 23:3,4 26:11 31:8,22 39:3 56:24 57:1,4,8 61:5 75:1 83:23 91:5,8 104:20 119:18,22 133:21 152:24 153:2,3,13 167:5,8,11 177:23 181:16 182:8 189:17

193:3 203:18 213:17 215:8 215:11 225:11 227:4 228:5 236:12 245:23 258:20,23 268:13 291:19 292:13 294:8

**record's** 69:2

**recorded** 10:14 31:5 111:16

**recording** 10:11

**records** 111:14 142:14,16 173:16 196:6 222:14,16,18 223:11,18,20 223:21 224:2 224:19,21 225:8,9 235:10 236:2 238:8

**recover** 185:14 212:3,11

**red** 133:2

**reduce** 215:22 272:12

**refer** 12:20 75:22 101:2 280:24 281:2

**reference** 38:17 62:20 90:8 124:4,20 140:13 149:1

169:23,25 233:23

**referenced** 82:2 106:20 295:6

**references** 38:19

**referencing** 201:17

**referred** 210:11

**referring** 46:1 56:11 71:7 90:14 166:15 166:16 257:18 275:10 279:24 290:18

**reflecting** 190:10

**refresh** 64:20 65:6,8 131:7 131:20 141:12 217:25 219:21 245:9 270:16 289:11

**refusing** 181:20 182:9 254:11

**regard** 30:9 80:5 157:1 170:5 239:7

**regarding** 13:17 76:7 120:15 124:15 148:1 162:12 164:25 170:14 175:5 188:9

191:22 198:9 221:7

**regards** 34:18 57:24 116:21 159:21 160:2 166:11 170:6 185:17 192:16

**register** 68:2 151:7 265:4

**registered** 68:4 68:8 151:15,15 246:24

**registering** 68:6 151:9

**regularly** 207:3 225:15

**reimbursement** 255:16

**rejoined** 127:13

**relate** 68:18 282:1

**related** 11:2 188:11 251:1 256:20 261:8 264:16

**relating** 73:24 168:20 282:1

**relation** 257:22

**relationship** 14:25 33:16,17 33:20,22 41:16 43:7 73:10 79:18,21 157:8

**[relationship - reporter]**                    Page 59

| | | | |
|---|---|---|---|
| 164:6 169:7 | 65:3 66:3 | 184:15 186:1 | **remotely** 11:6 |
| 175:17 190:23 | 67:25 68:4 | 187:7 189:12 | **remove** 199:24 |
| 191:9,19 248:9 | 70:18 71:12 | 193:2 200:14 | 202:13 |
| 288:11,15 | 73:17 74:7 | 201:12,18 | **removed** |
| **relative** 294:17 | 77:14,25 78:1 | 202:15 204:14 | 205:23 |
| **release** 174:8 | 78:6 79:2,13 | 207:22 209:4 | **rendered** |
| 219:1 286:21 | 80:9 81:10 | 213:12 216:13 | 123:20 |
| **released** 252:1 | 82:11 88:12 | 217:4 230:5,8 | **rendering** |
| **releasing** | 89:7,17,20,22 | 230:13 232:9 | 159:13 |
| 276:21 | 89:23,24 90:5 | 232:23 233:11 | **renewal** 150:3 |
| **relect** 68:12 | 90:7,13,16 | 233:13,20 | 153:5,8,10 |
| 204:5 | 93:3 100:18 | 238:16,19 | **renewals** 149:9 |
| **relevant** 16:6 | 101:4,13 | 239:1,15,17,20 | 149:12 |
| 227:5 262:25 | 103:24 106:12 | 240:24 245:21 | **rent** 56:13,17 |
| 287:4 | 106:14,21,24 | 246:17,25 | **repaid** 145:24 |
| **rely** 78:10 | 107:10 108:1 | 249:5 250:5 | **repeat** 254:21 |
| **remain** 69:20 | 109:11 115:24 | 251:3,25 | **repeating** |
| 160:4 | 115:25 116:1 | 252:12,14 | 273:10 |
| **remainder** | 118:25 120:14 | 253:20 264:11 | **rephrase** 14:16 |
| 75:24 | 124:8,10,14,14 | 265:3,14 268:8 | 192:7 |
| **remaining** | 127:21 131:25 | 268:24,25 | **reply** 152:21 |
| 159:23 | 135:24 136:4 | 269:22 273:23 | 188:1 |
| **remem** 251:6 | 137:18 138:11 | 274:11,12,14 | **report** 9:10 |
| **remember** | 139:6,9 143:25 | 283:5,20 284:2 | 128:24 184:17 |
| 21:14 22:7 | 147:16,24 | 285:13,14,18 | 272:3 281:11 |
| 23:5 29:19 | 148:12 150:6 | 285:19,21 | **reported** 1:22 |
| 34:11 38:10 | 150:15 151:13 | 287:23 288:10 | **reporter** 2:23 |
| 42:17 43:8,16 | 152:3 154:4 | 289:11 290:16 | 11:1,22 12:1,3 |
| 50:10 51:4,8 | 157:21,23 | 290:25 | 12:9 14:3,9,18 |
| 51:16,21,24,25 | 159:10 160:21 | **remembered** | 16:20 20:22 |
| 52:5,22 53:4,8 | 160:22 162:17 | 135:25 | 23:7 53:21 |
| 53:13 54:10,24 | 164:7 170:24 | **reminder** 76:4 | 62:9 67:10 |
| 55:4 58:16 | 174:17 176:11 | 246:2 | 72:6 74:23 |
| 59:24 63:5,7 | 177:13 180:18 | | 83:10,20 91:16 |

**[reporter - rest]**

97:5 98:23 104:22 120:6 128:21 146:21 154:9 161:4 172:8 179:1 193:22 196:19 200:20 203:14 206:19 210:4 213:16 217:8 220:11 228:20 229:17 235:7 258:15 268:15 271:8 272:19 288:3 291:22 291:24 294:2

**reporting** 31:15 278:12 281:9

**reports** 130:8 213:13 215:23 216:3,5,7,8,11 216:13 262:24 281:17

**represent** 120:8 128:23 142:1 194:7 196:21 217:10 235:9 236:1 272:21

**representatives** 265:25

**represented** 109:12 134:9

**request** 96:14 184:24 189:16 198:5 216:12 216:21 224:15 224:16

**requested** 102:20 294:15

**requests** 60:17

**required** 63:16 65:7

**requirements** 283:1

**requiring** 266:14 290:1

**reserve** 16:17 149:18 227:7

**reserves** 69:17

**reserving** 16:24

**residence** 16:13 211:21,24

**resident** 56:8

**residential** 15:11 16:15 55:17,22 56:6 56:15

**residuals** 47:23 48:7

**resolution** 175:9,11

**resolutions** 94:20 257:12 276:2 290:8

**resolve** 60:3

**respect** 14:11 19:2,10 21:25 22:15 25:6,11 29:1,22 41:8 43:5 46:7 49:15 54:6 55:13,13 57:19 58:9 59:21 60:2,3 61:1 68:24 72:23 73:9 74:2 78:7 80:1,16 89:8 100:13 103:14 108:16 112:17 115:14,15 116:20 124:16 138:19 139:11 149:7 150:19 155:23 156:16 157:3 158:13 193:6,25 194:14 196:10 201:4 203:22 205:5 215:16 215:24 216:20 217:16 220:14 221:6 224:14 241:2 247:17 256:10 265:23 266:21 267:18 269:11 271:4 272:2,9,13 282:21 283:12

**respective** 157:11 158:22 265:18

**responded** 148:24

**responding** 92:9 222:8

**response** 92:3 92:10,16 107:4 123:3 180:23 181:1,2,4 185:22 186:1 198:2,12 205:1 205:9 211:5

**responsibilities** 8:12 259:7,8 261:16,19,23 262:2,11,18,21 263:3,7,9 264:6,21 265:19,21 280:17

**responsibility** 266:24 283:21

**responsible** 58:1,5,6 69:20 74:8 134:17 149:8 258:8 281:5,8,13 282:4,11,15,25 283:3 288:17 288:19

**rest** 258:17

[restructure - roxanne]

**restructure** 257:6,9

**result** 102:2

**retain** 158:21 210:13 269:15

**retained** 210:15 292:16

**retaining** 157:10 158:14 278:19

**retracing** 212:5

**retrieve** 151:20 151:24 153:18

**return** 8:17 52:10,15,16,17 52:25 53:2,7 101:9 199:12 217:13,17 224:9 295:13 295:16

**returns** 52:12 52:20 53:5 130:14 142:6 142:15,19,22 220:15 225:22 226:8 241:9 245:1

**revenue** 107:22 119:8 131:8,9 131:17,25 139:14,16 140:8 227:19 272:5

**revenues** 119:8 136:8

**review** 20:16 29:23 30:11,15 62:7,17 64:17 64:18 70:15 72:13 75:6,8 84:2 91:13,18 97:16 100:19 105:3,11 120:10 129:5 154:11,21 161:9 179:3 200:23 235:19 259:3 294:14 295:7

**reviewed** 30:12 290:2

**reviewing** 62:10,18 83:25 84:1 129:7 221:12

**revised** 179:15 185:8

**revisions** 66:3 108:11

**revive** 67:22

**ride** 27:25

**ridiculous** 37:18,20

**right** 15:23 16:18,24 26:13 38:24,24 52:25 69:17 86:4

101:23 112:11 114:6 133:21 141:11 144:4 181:14 194:2 215:2 219:10 224:14 227:7 233:25 235:23 236:4 240:14 243:5 262:19 266:4 269:4 274:25,25 275:1 277:3 291:4 292:5

**rights** 69:7,10 100:4 193:10

**ring** 59:10,14 59:15

**rings** 245:21

**risk** 16:3 182:15

**road** 2:20 3:15 10:22

**robert** 43:23 54:7,15 55:6 80:23 81:1 85:1 87:15,17 89:25 179:22 193:12 197:15 199:23,24 202:13 204:3 205:5,22 210:17,18 214:19 245:14 246:13 247:3

247:22 248:1 248:10 249:17 250:2,4 256:1

**robert's** 245:12 245:13 250:5

**rockland** 230:12

**rogers** 234:10 234:13

**role** 58:8 78:18 80:7 253:14

**roles** 207:23 283:14,14 284:5

**room** 11:5 31:4 258:17

**rover** 51:13

**roxanne** 1:17 2:18 5:3,20 6:5 6:14,20,24 7:5 7:25 8:8,21 10:15 11:17 12:5,20,23 57:9 60:8 62:10,14 72:16 72:17 73:2 75:3,13 85:2 105:16 112:19 120:2 128:23 167:16 180:6 183:11,17 187:1,7 197:13 197:17 204:18 215:16 230:3

**[roxanne - see]**

235:10,19 259:3 292:14 293:4,15 295:5 296:2,24

**roxanneavent** 77:19

**rpr** 1:22 294:24

**rude** 15:17

**rule** 106:7

**run** 104:23 164:14

**rundown** 254:2

**s**

**s** 8:5 241:18 296:3

**s.t.a.b.l.e.** 229:6 232:13,15

**s550** 50:21

**sad** 37:15

**safe** 24:1,2

**salaries** 47:17 124:16 128:15

**salary** 47:10,13 123:20

**sales** 139:17 140:8 141:11 256:24

**sandra** 3:13 11:11

**sandy** 21:10

**santa** 55:16

**savant** 278:4

**save** 181:18 223:25

**saved** 222:20

**saw** 121:19 161:17 217:21 240:14 283:11 285:21 286:20

**saying** 40:25 61:18 62:3 77:7 89:14 126:18 142:17 154:16 204:10 221:9 227:6 280:19

**says** 63:13,15 65:8,14 73:2 75:20,24 76:8 76:10,11,12 77:18 84:11,19 84:20 85:1 95:16 96:6 99:4,5,19 101:6,12 105:20 106:18 107:4 108:5,10 124:19,20 129:10,19,22 131:1 132:8,8 135:5,9 141:1 141:2,2,7,19 145:23 148:18 148:20 157:8 160:8 166:18 166:23 168:13

169:5,20 179:14,19 180:4,5,11 183:11,12 185:4 186:13 187:1,3 197:12 198:3 201:21 204:2,12 205:7 211:14 212:2 212:21 215:21 219:15 229:7 230:2,7,11,18 231:2,3 232:2 232:24 238:22 239:10 250:17 259:23 260:4,6 261:10,17 262:6,17,19 264:24 269:2 275:2 277:7 280:12,15 290:17,20

**sba** 90:18,21 146:17

**scalin** 3:18

**scenario** 110:6

**scenes** 283:6

**schedule** 87:12 88:23

**school** 17:13,14 17:16 18:8 23:16 38:5

**scope** 70:25 71:3,6 211:10

211:13 212:2,8 212:18 215:17 215:20

**scopes** 218:20

**scottie** 28:9

**screen** 287:11

**script** 252:4

**se** 267:16

**search** 212:5,22

**second** 38:16 77:17 104:18 124:23 154:24 179:9 186:10 204:1 219:10 229:1,14 230:1 261:9 262:13 262:24

**secretary** 54:11 59:8 95:16 143:14 206:25 207:16 208:1 208:10 209:13 209:18 224:25

**section** 22:8 262:16 266:24

**secure** 102:13 149:17

**secured** 96:14 98:13

**securing** 34:4 37:9 256:16,17

**sedan** 52:3

**see** 17:9 22:8 25:17,17,19

[see - services] Page 63

26:25 28:17
39:10 41:11,14
45:6 61:13
63:12,17,18,19
65:18,20 69:14
72:8 84:10
85:3 92:13,15
98:4 99:5,17
121:1 122:19
122:24 129:4
131:5,18 132:7
132:9,10
133:22,23,25
137:8,19 141:4
141:10,11,17
141:21 145:8,9
146:4 148:19
148:20 151:13
152:24 155:14
157:12 161:16
166:7 169:2,5
173:24 174:5
179:12,14,18
183:8 186:23
187:13 195:22
197:12 204:1,4
205:1,9 211:3
219:11,18
221:13,16
222:9,9 231:4
232:20 237:15
237:23 238:11
238:22 239:9
239:25 241:19

241:19 243:13
243:16 246:6
246:25 248:17
249:7,11
250:12,21
251:8 252:3
260:3,13
261:15 270:3,9
274:22 275:5
277:3,3,4,6
281:21 285:23
289:8,14,16
**seeing**   53:9,13
65:3 76:19
84:6 155:20
156:10 161:10
236:16 259:11
**seek**   182:10,15
227:9,10
**seen**   60:9 121:9
132:13 134:6
211:4 240:15
257:3 259:10
260:1,18 273:5
273:7,11,12
280:8,9,21
284:3 285:20
285:25 286:15
289:12,15,21
291:10
**self**   163:17
**seller**   179:22
248:6

**selling**   174:14
**senate**   21:21
**send**   90:3 108:4
148:21 151:22
197:19,22
198:8 201:13
202:3 221:24
222:3,3 235:23
235:24,25
236:8,10
270:10 281:10
**sending**   72:25
75:10 89:25
106:21 107:10
108:1,21
147:16 183:18
185:18 187:7
204:15 221:14
257:4
**sense**   48:11
64:3 97:14
188:4 198:10
201:25 202:5
222:7 242:14
**sensitive**   10:7
188:11
**sent**   29:24
66:18 75:9
92:10 94:1
105:18 127:19
127:22 128:17
168:6,21
180:17 186:20
186:23 201:19

201:21,23
202:1 204:6,9
222:2 224:5,6
242:6 271:2
286:15 295:14
**sentence**   96:6,9
204:1
**separate**   47:1
63:15,25 64:2
96:17,20
100:10,23
102:13 146:18
154:18 155:16
169:24 269:7
**separated**
195:2
**separately**   45:1
113:22
**september**   1:19
2:22 10:1,5
90:11 93:7
95:15 294:21
295:3
**server**   212:4
281:5
**service**   41:22
131:15 212:6,8
212:18 215:22
218:21 227:19
256:14 261:23
263:6 269:16
283:1
**services**   6:24
37:4,7 43:10

**[services - signature]** Page 64

43:14,16 48:24
49:7 56:18
71:1,3,6,16
79:23 80:6
107:24 111:1
114:21 115:1
115:17,19,22
116:5,16,17,22
117:8 123:20
131:14 135:15
136:1,3 139:4
139:12,18,21
140:1,3 144:7
144:8,12,19,23
151:23 155:12
155:13,24
156:16 158:12
158:17 159:12
163:10,15
164:1,4,19
165:2,15,21
171:3 172:14
183:25 184:2
184:25 185:12
186:7 192:19
210:19,21,22
210:24 215:24
219:5 229:20
229:22 233:10
233:12 234:3,5
234:7,15,21,23
239:20,21,23
243:1,4,12
256:12,15,16

256:18 257:25
260:15 261:2
261:12 266:9
266:23 270:23
271:2 273:20
288:16 291:2
**set** 49:2 54:11
55:11 56:17
58:7,21 93:20
93:22 94:10
95:6 96:18,22
96:24 99:25
100:9,10,24
107:2 125:22
136:22 180:13
180:13 181:5
187:6,11 193:5
195:6 199:19
213:25 251:3
252:1,11
271:23 272:10
294:5
**setting** 102:15
126:7 267:24
281:6
**settled** 25:25
26:1
**seven** 7:20
57:10 194:10
292:15
**seventh** 211:4
**several** 17:23
21:17 22:3,4
24:8 30:19

34:3 35:17,23
42:16 44:19
51:17 77:4
114:15 116:2
144:1 164:6
165:19 170:15
177:12 195:3
206:4 212:9
250:6 253:23
284:9
**shandra** 234:18
**shane** 168:21
**share** 15:12
48:6,7,20,21
112:9
**shared** 90:5
253:19 269:3
**shareholders** 249:17
**she'd** 20:12
**sheet** 137:2
295:11
**shell** 119:4
**shelved** 175:6,8
**shifted** 37:23
**shit** 183:13
**shorthand** 2:23
12:2 294:1,9
**shortly** 185:22
**show** 22:25
174:14 197:15
233:15,17
251:22,24

**showed** 122:1
191:6 238:9
**showing** 95:17
103:19
**shows** 54:3
131:4 237:4
238:9 239:6
**shrugs** 20:25
**shut** 143:19
**sic** 72:10 159:8
288:12
**side** 27:18 34:4
34:15,15 41:13
41:15 46:2
100:8 282:19
292:2
**sign** 52:16,18
52:24 53:2
58:12,14 87:21
88:2,14,20
101:7 103:18
121:20 139:2
142:22 202:25
289:23 290:10
295:12
**signatory** 52:20
93:14 95:12
100:4 291:12
**signature** 58:12
65:22,23,24
66:7,9,9,24,25
86:25 87:3,7,8
87:9 88:5,10
88:13,16 94:1

**[signature - sorry]**

101:7,14 103:3
103:13,18
120:22,23
121:2,12,13,16
121:18 230:14
236:20 237:7,9
279:16 289:8
294:24
**signature's**
155:8
**signed** 53:6
63:3 83:5,7
86:7,13,17,19
87:18 89:14
90:25 94:2
95:11 96:22
101:17,21
103:3,19,19,23
103:23 121:17
125:3,5,16
155:25 157:6
157:24 174:22
191:10 202:23
203:3 231:9
291:7 295:19
**signer** 237:10
**signify** 121:15
121:17
**signing** 94:23
98:1 101:13
103:13 155:3,6
**sike** 168:2
**silhouette**
245:5,6,11

**silly** 38:7,8
**silva** 7:24
196:22,24
197:12,21
200:11 278:11
**similar** 76:17
144:7
**simone** 161:17
168:17
**simple** 147:5
**simultaneously**
21:7
**single** 202:11
**sit** 90:23 133:4
**site** 151:3,7
**sitting** 43:20
56:4 109:18,22
118:25 190:25
195:24 224:22
242:7 243:7
244:23
**situation** 110:5
144:4 148:10
**six** 57:9 185:23
290:14,20
**sixth** 211:4
**slip** 230:2
**small** 61:14,19
61:22
**smaller** 61:24
**smith** 54:8,15
55:6 80:23
81:1,15,18
85:2 87:15,17

90:1 193:13
197:16 199:23
199:24 202:13
205:5,22
210:18 214:19
214:20 248:10
249:17 256:1
**snack** 13:9
**social** 34:4 36:2
36:3,11,12,21
36:25 37:2,2,9
46:7,19 144:16
157:19 159:22
183:17 212:4
250:1 253:22
254:8,15
256:17 260:6
260:10,16
261:1 264:6,8
284:20,21
285:8 290:14
**software** 21:21
**soi** 9:15
**sold** 253:10
**soldiers** 28:10
**sole** 163:3
**solicited** 285:16
285:17
**solidified** 81:17
**solutions** 10:25
11:2 229:13
292:16 295:23
**somebody**
100:21 111:12

151:8 176:24
207:8 276:4
285:21
**someone's**
159:7
**someplace**
133:18
**somewhat**
240:16
**sony** 268:19,24
269:11,15,19
269:23,25
270:19 271:4
271:19 272:2,9
**soon** 67:14
180:13 186:19
**sorry** 16:20
25:22,23 32:3
40:16 46:17
49:25 54:18
63:22 64:10
68:12 75:5
77:17 83:11,12
86:2,8 101:6
102:7 104:17
109:15 117:14
118:2,6 129:17
129:22 130:24
141:5 142:21
159:11,25
165:16 169:9
170:7 171:4
172:8,9 185:5
185:7 186:18

**[sorry - statement]**                                                            Page 66

189:19 193:24
196:10 199:10
199:24 206:17
207:5 210:2,9
216:20,25
217:18 219:20
229:18 231:18
232:19 245:22
250:13 253:3
264:23 266:22
270:19 272:24
274:12 275:4
275:15 276:25
283:12 288:12
289:19
**sort**  70:22 80:4
  81:4 82:8
  94:19 132:11
  134:2 141:25
  153:15 176:20
  184:11,21
  207:7 215:23
**sorts**  241:10
**sounds**  135:24
  163:5
**sourcing**
  261:13
**south**  3:22
**spaces**  101:9
**speak**  13:4 14:5
  24:7 29:21
  30:18 36:18
  73:4 100:9
  134:8,16

181:23 192:15
230:25 240:4
260:20,22
261:7 286:11
**speaking**  16:21
  42:4
**specific**  30:24
  43:8 50:17
  69:21 140:22
  175:25 240:1
  266:17 267:17
  279:23 284:16
**specifically**
  18:19 70:19
  91:25 107:7
  176:11,23
  178:1 184:18
  199:7,9 231:1
  256:11,20,22
  278:19
**specifications**
  69:22
**specifics**  176:3
  176:4
**specified**  263:4
  277:9
**speculate**
  221:20
**speculation**
  109:8,25
  110:14 114:12
  158:5 259:23
  277:12

**spell**  156:15
**spells**  156:18
**spend**  173:2
  174:11
**spending**
  102:18
**spent**  173:16
**spoke**  37:7 49:5
  162:8
**sponsor**  232:25
**sponsorship**
  261:22 264:20
  264:25 265:1,9
  265:20
**sports**  28:16,18
  44:7,8 46:25
  49:25 50:7,8
  50:12,13 82:7
  82:11 144:11
  209:9 247:15
**spottier**  201:9
**square**  56:1
**stable**  232:2
**staff**  107:21
  138:14,14
  235:1 244:3
  267:2
**staffing**  138:16
**stage**  76:16
**stakeholder**
  43:2
**stalking**  177:14
**standard**  35:14
  35:16 70:9

**standpoint**
  152:18
**stapled**  147:2
**stars**  61:20
**start**  17:7,13
  23:17 24:12
  27:11 39:24
  41:19 44:17
  58:4 92:20
  119:2 123:8
  150:13 164:14
  186:18,19
**started**  23:19
  23:20 26:17
  38:5,6 43:9,14
  60:20 105:10
  119:3 274:14
  291:1
**starting**  127:3
  261:13
**startup**  118:22
**state**  11:6,8
  18:18 21:19
  22:1,13 31:8
  54:11 59:9
  95:17 143:14
  180:14 207:1
  207:16 208:10
  209:13,18
  225:1 293:11
  294:2
**stated**  54:22
**statement**  53:9
  53:14,18,23

**[statement - sure]**

59:12,14 99:11
99:23 100:2
140:25 141:7
206:24 207:11
209:20 218:13
218:17
**statements**
6:11 100:19
130:11,16
142:5 143:5
207:20 209:16
223:2,7 225:2
246:3 269:24
276:1
**states** 1:1 2:1
10:18 158:20
167:23
**stating** 46:18
**statments** 9:7
**status** 43:24
44:1 272:9
**stay** 61:5
261:17
**stealing** 37:21
88:16
**step** 212:5
**stephanie**
201:11
**steps** 148:8,12
148:15 209:4
**stole** 213:14
219:2
**stop** 104:11
143:22 212:19

215:2
**stopped** 144:5
147:12 172:11
**storage** 223:11
**store** 66:15
**stranded** 25:2,5
29:4 248:8
**strategies**
282:21
**strategy** 282:15
282:16,22
**street** 163:14
**strength** 213:9
**strike** 32:3
41:19,19 81:22
139:1 172:25
216:25 224:7
225:14
**structure** 75:25
76:4 87:11,19
88:25 89:8,11
94:4,5,7
136:22 190:12
257:10 271:24
274:18 275:2
275:23 276:19
276:21
**studio** 45:2
**studios** 45:5
271:19
**stuff** 149:1,17
168:16 235:3
239:18 253:19
282:18 283:6

**stupid** 286:10
**style** 196:12
**subcontractors**
69:18 136:20
**subject** 38:9
76:8,9,13
105:20 107:17
179:14
**submitted**
131:23
**subpoena**
129:1 217:11
235:12 236:3
272:23 273:3
**subscribed**
294:20
**subsequent**
66:18 77:22
**subsidary**
163:9
**subsidiaries**
189:2
**subsidiary**
28:18 275:6
**subsidy** 163:9
**substandard**
35:14
**success** 48:5
144:24
**successful**
39:16 209:1
**successfully**
213:10

**sudden** 168:18
**sue** 25:5,9
**sued** 25:7
208:11
**suggest** 180:13
**suite** 2:20 3:15
3:22 10:23
**summary** 9:11
128:24 129:11
130:7 238:24
**summerville**
234:1
**sundance** 28:24
232:24
**supply** 214:7
**support** 269:22
**supporting**
212:7
**supposed** 44:22
60:22 81:7
154:14 164:17
189:24 195:11
218:25 224:12
246:2
**supremacy**
27:15 72:16,18
73:3 249:12,13
249:19
**sure** 13:1 16:19
19:4 20:23
21:2 30:4 35:9
56:17 58:16
60:5,14 62:18
66:6 67:12

**[sure - taylor]**                                                    Page 68

79:5 101:17,23 103:22,23 107:24 110:23 113:2 115:24 118:15 121:11 124:25 125:2 137:11 140:12 149:16 151:25 152:8,11 153:6 156:11 158:10 159:14 160:11 167:6 173:10 173:14 179:17 180:19 183:19 185:20 186:22 187:9 188:17 188:19 189:11 195:21 197:9 199:3 201:8 203:25 204:7 204:16 206:8 211:9 215:6 216:1 220:24 221:3 223:8 227:17 228:25 229:9 234:1 237:20,25 243:15,15 244:17 245:1 247:5 253:2,14 254:1 255:9,11 255:11 258:6 258:18 260:19 265:11,14

268:22 269:9 279:7 283:2
**surprised** 198:20,24
**survive** 47:16
**suspended** 67:19,20,21 95:17,25 96:3
**suzanne** 234:1
**suzanne's** 229:16,19
**swap** 86:16
**sweat** 38:7
**switch** 86:4
**sykes** 7:9 78:14 85:21 127:22 199:4 201:6,13 202:1 203:7,23 207:19 243:22

**t**

**t** 3:5 150:8 296:3,3
**table** 168:4
**take** 10:12 13:4 13:10 14:17 15:24 19:17 48:1 56:21 60:9 62:6 75:4 81:3 86:9 91:2 104:24 122:11 122:18 146:23 148:8 161:6 167:2 194:9

196:23 203:16 215:5 226:23 228:22 235:16 255:7 288:5
**taken** 2:19 10:15 13:24 294:4
**takes** 178:3
**talent** 22:24 38:2
**tales** 27:14
**talk** 31:18 167:24 187:2 230:14 231:10
**talked** 14:13 19:5,5 112:8 138:20 162:7 284:9
**talking** 21:7 26:12,16 32:9 35:23 36:25 50:4 95:23 143:20 155:16 168:19,22 169:19 175:18 180:1 181:4 187:14 192:6 192:12 198:17 211:7 250:16 263:13 283:19
**target** 281:24
**task** 288:22
**tasks** 73:13,17 267:6

**tax** 8:17 52:10 52:12,16,20 53:5,6 59:4 130:13 142:6 142:15,19,21 180:14 192:25 197:20 199:12 217:13,17 220:15 224:9 225:17,22 226:8 241:8 245:1
**taxes** 130:12 225:16 226:2 226:10,12,12 241:8
**taylor** 1:6,17 2:6,19 5:3 7:25 10:15 11:17 12:5,13,21 15:1 23:6,10 23:13,19,21,23 25:15,19 26:17 29:2,3,9 30:18 38:18 45:23 46:8,19 47:13 51:7,11 60:8 67:22 72:25 85:2,2,19 91:13 100:23 101:13 103:13 104:6 109:16 109:19 112:24 112:25 113:20

113:24 114:24 115:3,9 118:5 118:21 126:24 127:15 134:14 134:16 170:4 171:2 172:17 197:16,17 217:18,19 218:14 219:24 230:4 237:4 243:9 292:14 293:4,15 295:5 296:2,24

**taylor's** 38:20 52:7 134:3

**team** 193:4 226:9 264:14 264:15 265:16 265:23,24 269:7

**teams** 163:14 284:12

**tears** 38:7

**technical** 287:15

**television** 50:15

**tell** 18:15,16 19:21 20:14 21:18 24:25 31:2 53:20,23 87:11 116:19 124:19 148:19 160:6 178:9 195:23 204:17

210:8 214:20 217:20 241:15 256:11 266:18 276:16

**tells** 16:17

**temporarily** 68:10

**term** 123:23 287:15 290:20

**terminate** 202:17,19

**terminated** 203:5

**terminology** 49:13

**terms** 70:6 85:14 114:14 114:23 162:16 175:12 202:25 203:1,9 272:11

**terrence** 271:9

**tesla** 51:14 52:1 52:8 137:13,21 137:24,25 138:3 231:2,12

**testi** 164:12

**testified** 12:7 38:18 54:14 73:13 88:9 169:1 242:16

**testifying** 70:21 294:7

**testimony** 14:14,20 19:6

20:3,6,15 30:8 30:20 39:9,9 98:8 115:8 117:18 125:12 133:19 196:2 274:9 292:14 293:8 295:9,17

**thank** 11:18,21 11:25 12:9,10 14:10,25 21:9 21:10 27:19,23 28:2,12,12,21 29:1 54:24 57:8 61:6 64:12,12 75:6 75:16 77:12 81:5 84:4,6 98:14 105:2 107:24 120:1,2 133:10 135:16 140:5 143:10 150:10 167:15 167:20 194:6 201:4 215:15 217:10 220:8 231:15,20 233:3,25 236:5 251:21 259:2 262:15 270:15 276:25 277:1 291:18 292:9 292:11,16

**thanks** 107:18 147:15 180:24

197:21 270:12

**thereof** 294:11

**thing** 14:12 41:10 50:17 59:25 77:9 164:7 165:4,5 169:4 171:25 172:24 180:25 198:7 208:13 211:7 226:4 252:2 254:4 267:17 287:17

**things** 13:2 30:22 31:19 36:9,10,11,16 36:22 38:13,17 40:11 41:25 46:5 47:5 56:19 94:1 101:20 172:16 176:7,11 178:12 211:18 233:22 241:10 253:18 260:13 261:2 262:11 262:21 263:5,6 267:21 281:12 281:15 283:23 284:13

**think** 12:25 13:2 14:12 24:15,15 26:7 27:22 28:1,10 29:25 31:15,24

**[think - today]**

33:17 34:12
35:14 37:15
40:18,20,20,24
43:10 44:7
46:18 49:24
55:4 57:18
72:15 80:6
82:10 84:8
86:1 92:22
101:5 102:25
103:21 112:7
119:7,13 122:4
127:20 130:23
136:16 138:8
138:25 140:7
146:13,25
147:4 151:8
153:4 163:22
164:12 169:1
170:12,13
171:22 172:5
181:21,25
183:14 186:11
187:2,4 189:18
191:18 197:6
198:2 199:21
201:23 204:11
209:11 214:3
214:11 215:19
225:15 227:5
228:8 229:16
229:18,19
230:18,21
231:3,3 233:5

235:22 238:11
239:10 243:3
244:6 245:6,8
245:11,13
248:3 250:4
251:1,2 254:25
255:6 273:8,12
274:25 279:15
282:24 284:18
284:19 287:4
**third**   37:11
45:12 60:8
89:22 101:5
118:17,24
129:10,15,15
129:16 136:16
139:3,11,13,20
140:3 144:8,20
144:21 153:18
153:19,22
169:17 172:22
172:23 179:10
185:1 231:2
264:18 290:10
**thirsty**   83:21
**thought**   12:19
20:13 29:11
45:14 161:17
163:7 275:4
286:10,12
289:16
**thoughts**   191:8
**thousand**
109:17 173:8

**thread**   168:19
**three**   54:8
57:23 290:21
**thumb**   129:4,9
217:14
**tickets**   174:14
174:16
**time**   11:9 14:17
21:13 23:11,14
35:25 38:17
42:18 52:23
55:10 57:2,5
66:4 69:19
71:17 81:16
91:6,9 92:17
95:25 102:6,8
102:11,17
104:10,11
105:15 106:12
106:25 111:11
112:18 116:5
116:25 117:2,4
118:11 119:8
119:19,23
122:18 125:9
128:17 130:17
130:22 133:1
145:1 149:9,18
149:24,24
152:17 163:6
164:24 167:8
167:12 170:16
172:23 183:20
186:6 188:20

192:11 197:23
199:18,25
200:14 202:16
209:8 215:9,12
221:25 223:13
223:17 224:4
234:22 239:9
246:20 256:9
258:21,24
259:11 260:11
263:10,17
264:9 267:10
273:24 277:25
278:2 279:18
286:7 294:5
295:18
**timeframe**
295:8
**timely**   69:20
**times**   42:17,24
116:8 149:2
195:4 234:21
257:2 263:19
284:9
**title**   25:8 269:1
**titled**   8:11
**titles**   263:13
284:8
**today**   12:25
14:14 19:6,11
20:15 39:12
43:20 44:15
56:4 78:18
82:2 90:24

**[today - turn]**

113:13 118:25
121:10 122:1
128:10 132:18
150:11 174:20
185:24 195:25
214:1 224:22
242:8 243:7
244:23 256:1
270:15 291:11
**today's** 13:20
292:14
**together** 17:8
59:21 106:19
113:22 183:14
212:10 236:7
240:25 241:2,8
250:3
**told** 13:14,15
13:17 19:4
60:19 138:4
147:13 178:12
178:14,15
198:14 199:16
214:16 218:2
240:13
**took** 18:24
21:15 31:9,23
**top** 7:4,8,16 8:7
84:10,19 99:4
99:20 107:12
129:10,13
131:1 137:8
167:21 180:4
183:6 185:4

186:11 198:7
208:16 230:10
231:21 243:19
260:3,3 276:16
280:6,12
**topics** 179:6
**total** 140:8
219:4,6,22
292:15
**totally** 37:23
122:16 123:7
168:19
**towards** 85:23
99:8 101:5
132:7 137:7
141:16 167:21
179:19 183:11
185:10 195:9
204:12 212:16
218:12,24
261:10
**traditionally**
48:12 55:24
249:5
**traffik** 7:6
27:16 165:9
166:14 168:18
169:17 185:16
248:2,7,11
**trans** 147:23
**transaction**
158:13
**transactions**
9:8 78:11

**transcribe**
67:11
**transcribed**
294:10
**transcript** 2:18
30:1,16 133:8
291:24 292:10
293:6 294:13
294:15 295:6
295:19
**transcription**
294:11
**transfer** 41:12
96:10 153:1,19
238:15 244:12
**transferred**
69:10 147:22
153:17 239:24
240:23 242:12
**transferring**
68:13 69:7
**transfers**
239:13
**transmission**
201:7
**transparency**
272:8
**travel** 255:21
**treat** 159:16
**treated** 52:5
**trial** 19:10 20:9
181:18
**trickle** 38:3

**tried** 44:20
99:25 148:11
160:18 176:15
**trips** 268:2
**troubleshooti...**
21:22
**true** 178:5
289:6 293:9
**try** 13:1 14:5
33:21 34:9
50:10 81:4
119:4 148:9
164:14 170:21
170:21 191:9
239:24 248:22
286:13
**trying** 15:18
26:18 36:8
40:23 77:5,7
107:1 114:16
151:11 163:22
163:24 187:15
190:18,22
191:15,19
221:15 228:12
238:21,22
239:9 242:13
245:6 252:2
277:17 283:25
**tuesday** 101:10
**turn** 10:9 63:20
84:9,18 87:10
106:17 132:4
135:3,17 178:7

**[turn - university]**

179:9 186:10 200:17 260:2 262:9 280:3

**turned** 113:15 167:18 168:5 288:25

**turning** 86:2 99:15,19 261:15 270:1

**twentyone014** 277:4

**twentyone015** 280:4

**twice** 48:19

**two** 5:19 41:25 47:14 86:23 91:2 96:17 100:13 122:14 122:16 123:7 140:21 155:16 174:19 180:2 191:19 193:6 193:10,17,25 194:5 195:3 215:19 236:15 244:16 291:4 292:3

**type** 25:12,13 46:1 50:20 52:3 137:25 244:20

**types** 16:5 30:22 36:15,16 43:16 78:10

115:16,22 229:22

**typically** 184:16 187:23 196:12,14

**u**

**uh** 14:2 17:4 20:20,21,21,24 20:25,25 67:10 83:9,9 99:7,10 124:7 130:9,9 131:3 135:6 172:7,7 187:20 226:14 231:5 231:22

**ultimately** 52:24 69:20

**unable** 152:5

**under** 19:13 28:13 45:20,21 46:23,23,25 50:16 65:7,12 73:14 119:5 137:13 144:9 144:10 210:19 212:2 261:1,9 261:21 262:8 264:19 269:7 278:6 293:4 294:7,10

**underlying** 12:16

**underneath** 46:14,21 84:19 277:6 280:15

**undersigned** 294:1

**understand** 14:15 19:13,20 19:21 20:18 46:17 61:12 62:2 106:3 118:17 138:25 139:19 144:21 163:23,24 182:19 198:8 198:24 206:23 222:12 227:11 227:13 238:2 242:13 282:9

**understanding** 31:11 49:19 56:2 58:24 70:24 73:12 76:15 81:23 108:24 114:9 118:1,7 128:15 155:23 157:14 158:1,22 160:9 160:14 169:6 169:20 175:21 187:17 197:25 211:14 212:7 212:17 213:21 218:19,24 221:16 226:11

227:18 240:6 259:6

**understood** 23:23 25:14,21 26:2 27:3,10 28:21 29:1,8 45:18 81:21 101:19 104:2 111:9 112:4,15 136:23 138:18 143:4 166:5 175:24 178:23 182:14,20 193:19 197:10 233:1 234:17 238:7 243:19 244:6,10 249:21 252:11 264:19 284:17 284:21

**unfortunately** 15:13 129:8 141:24

**unique** 35:16

**unit** 10:14 57:2 57:5 91:6,9 119:18,23 167:8,12 215:9 215:12 258:21 258:24

**united** 1:1 2:1 10:18

**university** 18:9

**[unlv - veritext]**

| | | | |
|---|---|---|---|
| **unlv** 28:11 | 292:15 295:19 | 277:25 | **vehicle** 50:18 |
| **unsure** 179:23 | **using** 44:17 | **vaguely** 63:9 | 50:25 51:5,12 |
| **unwarranted** 37:15 | 72:15 112:4,19 | 161:11 | 51:21 52:3,6 |
| **update** 95:19 | 144:6 150:13 | **value** 163:19 | 134:3,3 137:21 |
| **updated** 221:14 | 152:16,23 | **variably** | **vehicle's** |
| **updates** 272:8 | 172:6,11 | 272:15 | 134:11 |
| **ups** 265:4 | 183:16 188:3 | **variances** | **vehicles** 137:12 |
| **upset** 37:22 | 191:8 204:13 | 196:15 | **velma** 7:9 8:5,8 |
| **use** 13:8 44:2 | 225:22 294:9 | **variation** 43:3 | 78:14 82:18 |
| 51:18,18 55:17 | **usually** 58:6 | 81:1 88:15 | 85:21 127:22 |
| 62:20 93:10,25 | 116:1 143:1,1 | 103:8 113:6 | 149:24 179:11 |
| 96:16,21 98:18 | 153:10 207:6 | 189:20,22 | 185:19 199:4 |
| 100:12 102:16 | 207:12 222:21 | 255:25 | 201:6,13 202:1 |
| 150:10 152:5 | 230:25 241:11 | **variations** | 203:7,23 204:6 |
| 152:19 159:7 | 269:20 281:25 | 26:22 42:17 | 204:20 207:19 |
| 187:23 188:9 | **utilities** 56:18 | 46:6 77:4 | 243:22 |
| 189:8 204:18 | **utility** 52:3 | 112:25 113:10 | **vendor** 31:14 |
| 222:15 225:24 | **utilized** 136:14 | 117:24 128:2 | 41:12 115:20 |
| 253:17 258:16 | 242:14,18,21 | **varied** 37:9 | 170:21 175:4 |
| 285:4,10,24 | 242:25 | **varies** 47:21 | 288:14 |
| 286:13 | | 241:11 | **vendors** 34:8 |
| **used** 19:7 44:15 | **v** | **various** 26:11 | 36:20 37:11 |
| 44:20 56:2 | **v** 150:8 295:4 | 36:17,24 42:23 | 136:19 162:25 |
| 79:7 95:8 | 296:1 | 48:7 57:24 | **venture** 185:10 |
| 132:16 160:12 | **vague** 33:2 | 58:22 103:5 | 287:9 |
| 168:5 172:17 | 34:23 35:7 | 165:14 207:4 | **venturer** |
| 187:25 189:13 | 37:17 40:1 | 207:11 220:14 | 159:17 |
| 199:4 205:19 | 87:4 88:6 | 223:4,22 234:5 | **verbally** 272:15 |
| 257:22 267:3 | 89:10 111:19 | 234:21 239:6 | **verbatim** 40:25 |
| 271:11 276:12 | 117:1 118:10 | 275:18,20 | 294:8 |
| 276:13 284:24 | 118:10 221:25 | 280:16 283:13 | **verified** 135:23 |
| 285:1 286:17 | 223:13 225:18 | 284:5 | **verify** 295:9 |
| 286:19,20 | 240:18 263:10 | **vary** 42:4 | **veritext** 10:25 |
| | 263:17 275:19 | | 11:2 292:16 |

| | | | |
|---|---|---|---|
| 295:14,23 | **videotaped** | 24:1 26:10,10 | 128:8 149:16 |
| **veritext.com** | 1:17 2:18 | 27:21 31:7,7 | 152:7 167:25 |
| 295:15 | **vineyard** | 31:21 32:8 | 168:1 173:10 |
| **version** 70:8 | 288:13 290:13 | 39:2 57:12 | 176:21 178:7 |
| 84:15 85:11 | 290:15 | 61:3 62:16,19 | 186:14 188:3 |
| 127:23 148:21 | **violation** 9:14 | 65:13 68:16 | 196:5 200:11 |
| 285:25 | **virtue** 198:11 | 72:13 74:24 | 232:7 256:24 |
| **versions** 42:18 | **visit** 211:21 | 76:21 84:9 | **we've** 23:20 |
| 83:1 103:5 | **visited** 211:23 | 89:19 90:23 | 28:23 56:17 |
| **versus** 10:17 | **vista** 17:17 | 92:24 101:24 | 68:14 132:18 |
| 12:20 61:11,14 | **volume** 1:20 | 107:7,8 108:11 | 162:7 170:8 |
| 61:20,21 | 2:19 5:3 | 112:17 122:19 | 185:11 284:9 |
| 188:10 | 293:16 | 124:18 140:13 | **web** 212:4,22 |
| **vested** 157:11 | **vote** 205:11,16 | 154:21 167:4 | 212:22 |
| 158:21 | 246:12,16,24 | 167:20 178:17 | **website** 5:17 |
| **viability** 191:22 | 252:12,16 | 179:5,7 181:23 | 6:20 95:17 |
| 192:10 | 265:3,4,6,24 | 186:23 191:3,3 | 148:3,6 181:5 |
| **video** 10:11,14 | 266:2,10,12 | 196:23 203:16 | 225:5,6 |
| 183:16 252:8 | 268:3,6 | 204:2 214:15 | **websites** 34:5 |
| 283:3 291:20 | **voting** 246:13 | 215:2 228:4,17 | 71:5 |
| 292:3,4,5,8 | 246:15 | 239:11 246:9 | **wednesday** |
| **videographer** | **vs** 1:9 2:9 | 253:2,25 | 1:19 2:22 10:1 |
| 4:5 10:4,25 | | 291:20,24 | **wee** 27:25 |
| 11:18,21 56:25 | **w** | 292:4,5 | 28:10 |
| 57:4 64:8,12 | **w** 159:11 | **wanted** 43:5 | **weeks** 30:19 |
| 64:15 91:4,8 | 243:17 | 95:19 102:12 | **weird** 147:12 |
| 119:17,22 | **wait** 16:20 21:3 | 126:22 148:20 | **welcome** 277:2 |
| 167:4,7,11 | 21:5 39:10 | 217:16 237:23 | **went** 13:20 |
| 215:7,11 | 104:16 204:17 | 238:11 258:16 | 17:23 23:24 |
| 258:19,23 | 223:20 | 282:17 | 52:13 116:8 |
| 291:16,18 | **walk** 122:19 | **wanting** 33:25 | 119:10 189:24 |
| 292:2,6,9,11 | **want** 13:8,14 | **way** 27:9 73:3 | 192:17 246:7 |
| **videoing** 283:5 | 15:17 16:11 | 74:25 81:4 | 263:2 265:12 |
| | 17:24 19:3 | 88:11,23 99:16 | 267:8,20 |

**[went - world]**

283:20 284:18

**west** 6:6,11 57:18 90:11,12 91:23 93:1,4 94:3,6,10,17,20 96:18 97:24 103:15 206:11 230:6 238:14 238:16,20

**westwood** 16:8 16:9 17:3

**whatever's** 124:24

**whereof** 294:19

**whispering** 10:7

**whitmore** 268:20

**wife** 211:15

**willing** 181:22

**wing** 45:10 187:18

**wire** 220:7 238:9 242:6 269:25

**wires** 242:4

**wise** 23:14

**withdraw** 230:4

**withdrew** 230:5

**witness** 5:2 11:23 14:6 16:22 19:15,19

19:22,25 20:4 20:10,18 21:2 21:8 34:25 35:8 37:18 60:13 64:11,14 71:22 83:11 86:1 87:23 88:2 92:15 97:6,10,14 104:25 110:11 111:21 114:13 115:7,9 117:2 119:15 125:15 129:21,25 146:14 154:3 172:9 181:18 182:5 190:4,22 206:15 221:21 223:14 227:22 228:9,14 229:18 236:4 241:24 245:24 255:7,10,12 258:18 263:11 271:9 275:12 277:19,21 280:9 288:1 291:15 294:19 295:8,10,12,18

**witnesses** 294:6

**woke** 246:12,16 252:12,16 265:3,5,6,24 266:2,10,12

268:2,6

**word** 108:8 112:4 132:17 169:3,5 204:3

**words** 20:20,24 24:2 26:9 76:1 160:13

**work** 13:10,11 18:15,16,18 22:12 34:22 35:3,6,9,13,14 36:19 45:5 63:13,16 69:18 69:21 111:1,8 111:25 116:8 116:10,11,14 132:14,16,17 136:16 157:1 157:12,16,19 158:2,23,24,25 159:5 160:2,4 160:8,13,14,16 160:20,20,23 160:25 180:16 183:21,24 186:16 211:10 211:13 212:2 215:17,20 216:22 234:24 234:25 236:7 240:25 241:2,8 244:5 257:22 262:6 288:12 290:12,15

**worked** 18:18 18:20 21:16,19 22:3,6,6,7,9,9 22:11,12,17 55:25 63:11 196:25 197:3 214:22 234:19 257:16 266:25 268:24 278:15 282:20 284:15

**working** 21:22 22:13,15 23:12 27:20 33:22 34:3 37:10 39:17 41:11,11 41:14,15,16 43:18 55:11 115:23 136:18 136:20,24 137:1 170:22 171:17 190:23 191:9 212:10 223:5,8 267:4 273:21 274:1,6

**works** 100:8 145:14 157:11 158:22

**workspace** 175:21 212:3 212:12 213:20 214:9 216:18

**world** 49:15 77:8 114:16 164:22

**[worries - years]**                                               Page 76

| | | | |
|---|---|---|---|
| **worries** 63:23 | 56:23,23,23,24 | 156:19 157:18 | 241:20,23 |
| **write** 47:21 | 57:23 60:12 | 157:20 160:21 | 243:1,15,17 |
| 185:22 | 61:18 62:18 | 161:11,20 | 246:23 249:15 |
| **writes** 166:8 | 64:5,19 65:20 | 164:13 165:13 | 251:18,20 |
| **writing** 40:24 | 66:10 67:6,9 | 166:1 167:3,6 | 252:10,13,19 |
| 105:8 205:22 | 69:1 74:10 | 167:6 171:18 | 252:24 254:7 |
| 206:6 240:20 | 75:12,15,18 | 173:12,14 | 254:13,22 |
| 246:10 | 79:11 83:11 | 174:4 175:7 | 255:19 257:20 |
| **written** 70:7 | 84:17 86:5,11 | 177:7 179:8 | 257:20,24 |
| 76:2 103:8 | 89:13 92:15 | 180:19 182:6 | 258:10,18 |
| 188:16 200:2 | 93:9 94:12 | 184:2,3 186:2 | 266:11 273:11 |
| 215:23 240:11 | 97:1,1 103:10 | 187:9 188:5,13 | 273:17 274:5 |
| 277:24 290:1 | 104:25 107:11 | 188:23 190:18 | 274:12,15,20 |
| 291:5 | 110:4 111:21 | 190:20,22 | 275:3 276:23 |
| **wrong** 26:8 | 112:23 115:13 | 194:13 195:11 | 279:19 280:6,9 |
| 47:25 50:1 | 120:13,19 | 196:8 200:24 | 286:22 287:7 |
| 80:12 86:21 | 122:4,4,21 | 201:2,3,3,25 | 288:9,14,20 |
| 232:19 | 123:2,7 124:24 | 203:21 204:21 | 290:20,25 |
| **wrote** 40:24 | 125:6,15 129:7 | 206:22 207:2 | **year** 9:12 15:6 |
| 185:6 187:2 | 131:12,22,24 | 208:2 209:7 | 21:14 67:20 |
| 240:22 | 135:12 136:18 | 210:7,18 211:8 | 78:22 129:11 |
| **x** | 137:6 138:17 | 211:9,9 215:4 | 140:11,16 |
| | 139:5 140:15 | 215:6 217:23 | 141:1,8,14 |
| **x** 101:9 150:8 | 140:24 141:10 | 221:11,11,21 | 142:15 206:25 |
| **xavier** 278:4 | 143:1,6,19 | 223:14,14 | 207:14 209:10 |
| **xmas** 229:7,7 | 144:13,15,15 | 225:7,9,25 | 209:11 222:8 |
| **y** | 144:19 146:8 | 226:3,6,18 | 225:16,23 |
| | 146:12,15 | 230:20,23 | 226:8 |
| **yeah** 14:6,9 | 147:20,24 | 233:19 234:16 | **years** 15:7 |
| 15:11,19 16:2 | 148:2,5,5 | 235:16,22 | 17:10,10 22:4 |
| 16:24 18:21 | 149:6 150:12 | 236:21 237:2 | 24:14 34:3 |
| 25:18 29:7,16 | 151:2 152:17 | 237:16 238:3 | 44:19 51:3,17 |
| 33:7,9 35:8 | 153:6 154:3,19 | 238:17,23 | 74:12 136:1 |
| 37:2,2 41:18 | 155:2 156:18 | 240:8,22 | 140:21 144:1 |
| 48:22 53:3 | | | |

**[years - yvonne]**

150:14,14
225:10 233:7
247:1 274:15
**yep**   123:19
276:20
**yesterday**
185:24
**young**   145:8,11
244:6
**yvonne**   268:19
268:23,23,23
270:5,9,12,14
272:10

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# EXHIBIT "C"

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:        AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:        100.205.070A
    OUR FILE NO.:        L-6604

                    Jul 31, 2023          INVOICE NO.:128980

            BALANCE DUE FROM PREVIOUS STATEMENT            0.00
            LESS PAYMENT(S)                                0.00
                                                        --------
            BALANCE FORWARD ..................................  0.00

            FOR PROFESSIONAL SERVICES RENDERED THROUGH  Jun 30, 2023

05/31/23 EXCHANGE EMAIL WITH CARRIER REGARDING NEW          .30    75.00
         ASSIGNMENT.
         PARTNER:  SJSK

05/31/23 CONFERENCE WITH COUNSEL REGARDING REVIEW OF        .50   125.00
         PLEADINGS IN BOTH FEDERAL AND STATE COURT,
         SCOPE OF ASSIGNMENT AND RESULTS OF CONVERSATION
         WITH CLIENT'S PERSONAL COUNSEL WHO IS HANDLING
         THE AFFIRMATIVE CLAIMS.
         PARTNER:  SJSK

05/31/23 DETAILED ANALYSIS OF PLEADINGS FOR NEW            .80   200.00
         ASSIGNMENT.
         PARTNER:  SSC

05/31/23 TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL       .30    75.00
         COUNSEL REGARDING FACTS OF THE CASE, STATUS OF
         THE PLEADINGS AND OUR REPRESENTATION.
         PARTNER:  SSC

06/01/23 EXCHANGE E-MAILS WITH CARRIER AND CLIENT          .30    75.00
         REGARDING STATUS OF THE CASE AND OUR
         REPRESENTATION.
         PARTNER:  SSC

06/01/23 ANALYZE ADDITIONAL FILE DOCUMENTS FROM CARRIER.   .50   125.00
         PARTNER:  SSC

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

```
HISCOX, USA                           Jul 31, 2023      PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 128980


06/01/23  EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND         .40    100.00
          CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL
          DOCUMENTS AND PRIOR PLEADINGS IN THE CASE.
          PARTNER:  SSC


06/01/23  TELEPHONE CONFERENCE WITH CARRIER REGARDING       .10     25.00
          STATUS OF THE CASE, SCOPE OF OUR REPRESENTATION
          AND ADDITIONAL DOCUMENTS TO BE RECEIVED FROM
          CLIENT.
          PARTNER:  SSC


06/02/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S         .30     75.00
          PERSONAL COUNSEL REGARDING FACTS OF THE CASE
          AND AVAILABLE DOCUMENTS REGARDING ALLEGATIONS
          IN THE COMPLAINTS.
          PARTNER:  SSC


06/05/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S         .30     75.00
          PERSONAL COUNSEL REGARDING PRIOR PLEADINGS IN
          THE CASE AND SCOPE OF OUR REPRESENTATION.
          PARTNER:  SSC


06/05/23  DETAILED ANALYSIS OF EXTENSIVE PRIOR PLEADINGS   2.30    575.00
          SERVED IN THIS CASE.
          PARTNER:  SSC


06/07/23  PREPARE FOR MEETING WITH CLIENT AND CLIENT'S      .80    200.00
          PERSONAL COUNSEL.
          PARTNER:  SSC


06/08/23  PARTICIPATE IN MEETING WITH CLIENT AND CLIENT'S  1.80    450.00
          PERSONAL COUNSEL REGARDING FACTS OF THE CASE,
          STATUS OF PLEADINGS AND SCOPE OF OUR
          REPRESENTATION.
          PARTNER:  SSC
```

KRIEGER DEBLER & KAPLAN
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Jul 31, 2023      PAGE    3
FILE NUMBER: L-6604
INVOICE NO.: 128980

06/08/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S           .30    75.00
          PERSONAL COUNSEL REGARDING DISCOVERY TO BE
          PROPOUNDED TO PLAINTIFF.
          PARTNER:  SSC

06/08/23  ANALYZE NUMEROUS SUGGESTED INTERROGATORIES FROM    1.20   300.00
          CLIENT TO BE PROPOUNDED TO PLAINTIFF.
          PARTNER:  SSC

06/13/23  PREPARATION OF NOTICE OF APPEARANCE ON BEHALF       .40   100.00
          OF DEFENDANTS.
          PARTNER:  SSC

06/20/23  EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL     .30    75.00
          REGARDING ALLEGED DEFICIENCIES IN CLIENT'S
          AMENDED COUNTERCLAIMS AND THIRD PARTY
          COMPLAINT.
          PARTNER:  SSC

06/21/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S           .30    75.00
          PERSONAL COUNSEL REGARDING SCOPE OF OUR
          REPRESENTATION.
          PARTNER:  SSC

06/22/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S           .30    75.00
          PERSONAL COUNSEL REGARDING CLAIMS MADE AGAINST
          OUR CLIENT.
          PARTNER:  SSC

06/27/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S           .20    50.00
          PERSONAL COUNSEL REGARDING COUNTERCLAIMS.
          PARTNER:  SSC

06/29/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S           .20    50.00
          PERSONAL COUNSEL REGARDING ADDITIONAL CLAIMS
          AGAINST OUR CLIENT.
          PARTNER:  SSC


          ATTORNEY FEES:                              11.90 HRS    2975.00

KRAMER, DE BOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA  92210
TELEPHONE (760) 776-1226

   

```
HISCOX, USA                                  Jul 31, 2023     PAGE    4
FILE NUMBER: L-6604
INVOICE NO.: 128980


       SUB-TOTAL FOR CURRENT PERIOD ..............    2975.00


                                                     _____


       BALANCE DUE: ......................................    2975.00


  *-----------------------------TIME AND FEE SUMMARY----------------------*
  *----------TIMEKEEPER---------*    RATE   HOURS           FEES
  JEFFREY S. KRAMER                 250.00    .80         200.00
  SANDRA CALIN                      250.00  11.10        2775.00
                        TOTALS              11.90        2975.00


        COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

              PLEASE RETURN REMITTANCE COPY WITH PAYMENT

                  TAX I.D. NUMBER: 95-3931157
```

**KRAMER DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

COPY

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:     AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:    100.205.070A
    OUR FILE NO.:    L-6604

                 Aug 14, 2023        INVOICE NO.:129172

       BALANCE DUE FROM PREVIOUS STATEMENT      2975.00
       LESS PAYMENT(S)                    0.00
                                     --------
       BALANCE FORWARD ................................    2975.00

       FOR PROFESSIONAL SERVICES RENDERED THROUGH  Jul 31, 2023

07/06/23 ANALYZE  MOTION BY PLAINTIFFS TO DISMISS FOURTH   .50  125.00
        CAUSE OF ACTION OF COUNTERCLAIMS AND THIRD
        PARTY CLAIMS BY OUR CLIENTS.
        PARTNER:  SSC

07/06/23 EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL   .30   75.00
        REGARDING MOTION TO DISMISS PORTIONS OF OUR
        CLIENT'S CROSS-CLAIMS AND PREPARATION OF
        OPPOSITION THERETO.
        PARTNER:  SSC

07/06/23 EXCHANGE E-MAILS WITH CLIENT REGARDING       .20   50.00
        ADDITIONAL LAWSUIT FILED BY PLAINTIFFS HEREIN.
        PARTNER:  SSC

07/06/23 ANALYZE LAWSUIT FILED BY PLAINTIFFS HEREIN SENT   .30   75.00
        BY CLIENT AND ANALYSIS OF EFFECT ON THE SUBJECT
        ACTION.
        PARTNER:  SSC

07/06/23 ANALYZE OUR CLIENT'S FOURTH AMENDED        .40  100.00
        COUNTERCLAIMS AND FIRST AMENDED THIRD PARTY
        COMPLAINT, AND COMPARISON OF ALLEGATIONS.
        PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Aug 14, 2023      PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 129172

07/06/23  ANALYZE OPPOSITION TO MOTION TO DISMISS FOURTH        .40    100.00
          CAUSE OF ACTION OF COUNTERCLAIMS AND THIRD
          PARTY CLAIMS BY OUR CLIENTS.
          PARTNER:  SSC

07/06/23  TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL           .20     50.00
          COUNSEL REGARDING PLAINTIFFS' MOTION TO
          DISMISS, DISCOVERY TO BE UNDERTAKEN AND STATUS
          OF THE CASE.
          PARTNER:  SSC

07/17/23  ANALYZE PLAINTIFFS' REPLY IN SUPPORT OF MOTION        .30     75.00
          TO DISMISS.
          PARTNER:  SSC

07/18/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S             .30     75.00
          PERSONAL COUNSEL REGARDING STATUS OF THE CASE
          AND PREPARATION OF DISCOVERY TO PLAINTIFFS.
          PARTNER:  SSC

07/19/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S             .20     50.00
          PERSONAL COUNSEL REGARDING CONFERENCE CALL TO
          DISCUSS DISCOVERY TO BE PROPOUNDED.
          PARTNER:  SSC

07/21/23  PREPARE FOR CONFERENCE CALL WITH CLIENT AND           .40    100.00
          CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF
          THE CASE AND DISCOVERY TO BE PROPOUNDED.
          PARTNER:  SSC

07/21/23  PARTICIPATE IN VIDEO CONFERENCE WITH CLIENT AND       .50    125.00
          CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF
          THE PLEADINGS, MOTION TO DISMISS FILED BY
          PLAINTIFFS AND DISCOVERY TO BE PROPOUNDED TO
          PLAINTIFFS.
          PARTNER:  SSC

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA  92210
TELEPHONE (760) 776-1226



HISCOX, USA                                Aug 14, 2023    PAGE   4
FILE NUMBER: L-6604
INVOICE NO.: 129172


BALANCE DUE: ........................................    4325.00


```
*-----------------------------TIME AND FEE SUMMARY----------------------*
*----------TIMEKEEPER---------*   RATE   HOURS              FEES
SANDRA CALIN                     250.00   5.40           1350.00
                      TOTALS             5.40           1350.00
```


COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

PLEASE RETURN REMITTANCE COPY WITH PAYMENT

TAX I.D. NUMBER: 95-3931157

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:     AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:    100.205.070A
    OUR FILE NO.:    L-6604

                Sep 25, 2023          INVOICE NO.:129403

BALANCE DUE FROM PREVIOUS STATEMENT            4325.00
LESS PAYMENT(S)                       0.00
                                          ---------
BALANCE FORWARD ................................    4325.00

FOR PROFESSIONAL SERVICES RENDERED THROUGH  Aug 31, 2023

08/09/23 ANALYZE ANSWER OF THIRD PARTY DEFENDANTS TO OUR    .30    75.00
        CLIENTS' THIRD PARTY COMPLAINT.
        PARTNER:  SSC

08/09/23 ANALYZE PLAINTIFFS' ANSWER TO AMENDED    .20    50.00
        COUNTERCLAIM.
        PARTNER:  SSC

08/11/23 EXCHANGE EXTENSIVE E-MAILS WITH CLIENT AND    .40    100.00
        CLIENT'S PERSONAL COUNSEL REGARDING DISCOVERY
        TO BE PROPOUNDED TO PLAINTIFFS.
        PARTNER:  SSC

08/11/23 ANALYZE EXTENSIVE PROPOSED INTERROGATORIES TO    .70    175.00
        BE PROPOUNDED TO EACH OF THE FOUR PLAINTIFFS.
        PARTNER:  SSC

08/14/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S    .20    50.00
        PERSONAL COUNSEL REGARDING DISCOVERY TO BE
        PROPOUNDED TO PLAINTIFFS.
        PARTNER:  SSC

08/15/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S    .30    75.00
        PERSONAL COUNSEL REGARDING ADDITIONAL DOCUMENTS
        TO REQUEST PLAINTIFFS TO ADMIT TO GENUINENESS.
        PARTNER:  SSC

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Sep 25, 2023        PAGE     2
FILE NUMBER: L-6604
INVOICE NO.: 129403

08/18/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S        .30     75.00
          PERSONAL COUNSEL REGARDING TELEPHONIC COURT
          HEARING REGARDING LIFTING OF STAY ON DISCOVERY
          AND SUBPOENAS OF RECORDS.
          PARTNER:  SSC

08/21/23  ANALYZE NOTICE FROM COURT REGARDING TELEPHONIC   .10     25.00
          DISCOVERY CONFERENCE.
          PARTNER:  SSC

08/22/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S        .20     50.00
          PERSONAL COUNSEL REGARDING SUBPOENAS TO BE
          ISSUED IN THE CASE.
          PARTNER:  SSC

08/24/23  EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS   .20     50.00
          OF THE CASE.
          PARTNER:  SSC

08/26/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S        .20     50.00
          PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY.
          PARTNER:  SSC

08/28/23  EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL  .30     75.00
          REGARDING SUBPOENAS TO BE SERVED ON PLAINTIFFS,
          UPCOMING HEARING WITH MAGISTRATE JUDGE
          REGARDING DISCOVERY AND LIFTING ON STAY FOR
          SUBPOENAS.
          PARTNER:  SSC

08/28/23  ANALYZE DETAILED MEET AND CONFER LETTER FROM     .40    100.00
          PLAINTIFF'S COUNSEL REGARDING SUBPOENAS AND
          RESPONSE BY CLIENT'S PERSONAL COUNSEL.
          PARTNER:  SSC

08/28/23  ANALYZE MEET AND CONFER CORRESPONDENCE FROM OUR  .20     50.00
          CLIENT'S PERSONAL COUNSEL IN RESPONSE TO
          CORRESPONDENCE FROM PLAINTIFF'S COUNSEL.
          PARTNER:  SSC

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226



```
HISCOX, USA                                 Sep 25, 2023    PAGE    3
FILE NUMBER: L-6604
INVOICE NO.: 129403
```

08/29/23  PREPARE FOR TELEPHONIC HEARING WITH COURT            .50    125.00
          REGARDING OUTSTANDING SUBPOENAS, OBJECTIONS
          THERETO AND STATUS OF DISCOVERY.
          PARTNER:  SSC

08/29/23  PARTICIPATE IN TELEPHONIC HEARING WITH              1.80    450.00
          MAGISTRATE JUDGE REGARDING 45 SUBPOENAS SERVED
          BY OUR CLIENT'S PERSONAL COUNSEL, SUBPOENAS
          STILL AT ISSUE, AND RULINGS REGARDING
          OBJECTIONS BY PLAINTIFFS TO THE SUBPOENAS.
          PARTNER:  SSC

08/29/23  ANALYZE COURT'S MINUTE ORDER REGARDING HEARING       .10     25.00
          CONCERNING SUBPOENAS.
          PARTNER:  SSC

08/30/23  ANALYZE NOTICE OF SUBPOENAS PURSUANT TO FEDERAL      .10     25.00
          RULE OF CIVIL PROCEDURE 45.
          PARTNER:  SSC

08/30/23  ANALYZE SUBPOENA FOR BUSINESS RECORDS TO PHILIP      .10     25.00
          FIER.
          PARTNER:  SSC

08/30/23  ANALYZE SUBPOENA FOR BUSINESS RECORDS TO BANK        .10     25.00
          OF THE WEST.
          PARTNER:  SSC

08/30/23  ANALYZE SUBPOENA FOR BUSINESS RECORDS TO CITY        .10     25.00
          NATIONAL BANK.
          PARTNER:  SSC

08/30/23  ANALYZE SUBPOENA FOR BUSINESS RECORDS TO LAMYA       .10     25.00
          MALHOTRA.
          PARTNER:  SSC

08/31/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S            .20     50.00
          PERSONAL COUNSEL REGARDING BANK DOCUMENTS.
          PARTNER:  SSC

**KRAMER, DEBOER & KEANE**

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

```
HISCOX, USA                                 Sep 25, 2023      PAGE    4
FILE NUMBER: L-6604
INVOICE NO.: 129403

08/31/23 ANALYZE EXTENSIVE DOCUMENTS FROM CLIENT.            .50    125.00
         PARTNER:  SSC


         ATTORNEY FEES:                            7.60 HRS      1900.00


         SUB-TOTAL FOR CURRENT PERIOD .............      1900.00



         BALANCE DUE: ...................................    6225.00


*-----------------------------TIME AND FEE SUMMARY---------------------*
*------------TIMEKEEPER----------*   RATE   HOURS         FEES
SANDRA CALIN                        250.00   7.60      1900.00
                        TOTALS               7.60      1900.00
```

COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

PLEASE RETURN REMITTANCE COPY WITH PAYMENT

TAX I.D. NUMBER: 95-3931157

**KRAMER DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
YOUR INSURED:      AONE ENTERTAINMENT, LLC
CLAIM NUMBER:      100.205.070A
OUR FILE NO.:      L-6604

Oct 12, 2023          INVOICE NO.:129507

BALANCE DUE FROM PREVIOUS STATEMENT              6225.00
LESS PAYMENT(S)                                     0.00
                                                 ---------
BALANCE FORWARD ..............................    6225.00

FOR PROFESSIONAL SERVICES RENDERED THROUGH  Sep 30, 2023

09/01/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S          .20    50.00
         PERSONAL COUNSEL REGARDING PREPARATION OF
         REQUEST FOR ADMISSIONS AND INTERROGATORIES TO
         PLAINTIFFS.
         PARTNER:  SSC

09/01/23 REVIEW, ANALYZE AND CATEGORIZE 283 ITEMS TO BE    4.20   525.00
         AUTHENTICATED BY THE APPROPRIATE PARTY IN
         REQUESTS FOR ADMISSIONS ON PLAINTIFFS HIDDEN
         EMPIRE HOLDINGS, LLC, HYPERENGINE LLC, DEON
         TAYLOR AND ROXANNE TAYLOR.
         PARALEGAL:  SRVD

09/05/23 FURTHER WORK ON REVIEW, ANALYZE AND CATEGORIZE    5.20   650.00
         283 ITEMS TO BE AUTHENTICATED BY THE
         APPROPRIATE PARTY IN REQUESTS FOR ADMISSIONS ON
         PLAINTIFFS HIDDEN EMPIRE HOLDINGS, LLC,
         HYPERENGINE LLC, DEON TAYLOR AND ROXANNE
         TAYLOR.
         PARALEGAL:  SRVD

09/06/23 PREPARATION OF MASTER CHART OF EXHIBITS TO BE     4.80   600.00
         AUTHENTICATED BY EACH PLAINTIFF.
         PARALEGAL:  SRVD

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

  

HISCOX, USA                                    Oct 12, 2023        PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 129507

09/07/23 PREPARATION OF PLEADING RE: REQUEST FOR           3.10    387.50
         ADMISSIONS SET ONE ON PLAINTIFF DEON TAYLOR
         WITH SPECIFIC EXHIBITS TO BE AUTHENTICATED.
         PARALEGAL:   SRVD

09/11/23 PREPARATION OF PLEADING RE: REQUEST FOR           2.80    350.00
         ADMISSIONS SET ONE ON PLAINTIFF HYPERENGINE LLC
         WITH SPECIFIC EXHIBITS TO BE AUTHENTICATED.
         PARALEGAL:   SRVD

09/13/23 PREPARATION OF PLEADING RE: REQUEST FOR           2.80    350.00
         ADMISSIONS SET ONE ON PLAINTIFF HIDDEN EMPIRE
         HOLDINGS, LLC.,  WITH SPECIFIC EXHIBITS TO BE
         AUTHENTICATED.
         PARALEGAL:   SRVD

09/15/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S          .20     50.00
         PERSONAL COUNSEL REGARDING PRIOR TRADEMARK
         CASE.
         PARTNER:  SSC

09/28/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S          .30     75.00
         PERSONAL COUNSEL REGARDING POTENTIAL WITNESSES
         IN THE CASE.
         PARTNER:  SSC

         ATTORNEY FEES:                            23.60 HRS    3037.50

         SUB-TOTAL FOR CURRENT PERIOD .............    3037.50

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

VISA   DISCOVER

HISCOX, USA                                    Oct 12, 2023      PAGE    3
FILE NUMBER: L-6604
INVOICE NO.: 129507


BALANCE DUE: ...................................... 9262.50


*-------------------------------TIME AND FEE SUMMARY---------------------*
*----------TIMEKEEPER----------*    RATE    HOURS            FEES
SANDRA CALIN                      250.00     .70           175.00
RONALD VAN DEUSEN                 125.00   22.90          2862.50
                        TOTALS            23.60          3037.50


              COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

              PLEASE RETURN REMITTANCE COPY WITH PAYMENT

                    TAX I.D. NUMBER: 95-3931157

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226



HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:    AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:    100.205.070A
    OUR FILE NO.:    L-6604

            Nov 27, 2023          INVOICE NO.:129719

| | | |
|---|---|---|
| BALANCE DUE FROM PREVIOUS STATEMENT | | 9262.50 |
| LESS PAYMENT(S) | | 0.00 |
| BALANCE FORWARD ................................ | | 9262.50 |

FOR PROFESSIONAL SERVICES RENDERED THROUGH  Oct 31, 2023

| Date | Description | Hours | Amount |
|---|---|---|---|
| 10/04/23 | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY.<br>PARTNER:  SSC | .30 | 75.00 |
| 10/09/23 | EXCHANGE E-MAILS WITH CARRIER REGARDING EVALUATION OF THE CASE.<br>PARTNER:  SSC | .20 | 50.00 |
| 10/10/23 | DETAILED ANALYSIS OF FILE IN PREPARATION OF INITIAL CASE ANALYSIS REPORT.<br>PARTNER:  SSC | 1.40 | 350.00 |
| 10/10/23 | PREPARATION OF INITIAL CASE ANALYSIS REPORT.<br>PARTNER:  SSC | 2.30 | 575.00 |

ATTORNEY FEES:                      4.20 HRS    1050.00

SUB-TOTAL FOR CURRENT PERIOD .............    1050.00

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                              Nov 27, 2023    PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 129719

BALANCE DUE: .........................................  10312.50

```
*-------------------------------TIME AND FEE SUMMARY-----------------------*
*-----------TIMEKEEPER----------*    RATE    HOURS          FEES
SANDRA CALIN                        250.00    4.20       1050.00
                         TOTALS              4.20       1050.00
```

COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

PLEASE RETURN REMITTANCE COPY WITH PAYMENT

TAX I.D. NUMBER: 95-3931157

KRAMER, DEBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
   YOUR INSURED:     AONE ENTERTAINMENT, LLC
   CLAIM NUMBER:    100.205.070A
   OUR FILE NO.:     L-6604

Dec 20, 2023       INVOICE NO.:129926

| | | |
|---|---:|---:|
| BALANCE DUE FROM PREVIOUS STATEMENT | | 10312.50 |
| LESS PAYMENT(S) | | 0.00 |
| BALANCE FORWARD ................................ | | 10312.50 |

FOR PROFESSIONAL SERVICES RENDERED THROUGH  Nov 30, 2023

| Date | Description | Hours | Amount |
|---|---|---|---|
| 09/04/23 | FURTHER WORK ON REVIEW, ANALYZE AND CATEGORIZE 283 ITEMS TO BE AUTHENTICATED BY THE APPROPRIATE PARTY IN REQUESTS FOR ADMISSIONS ON PLAINTIFFS HIDDEN EMPIRE HOLDINGS, LLC, HYPER ENGINE LLC, DEON TAYLOR AND ROXANNE TAYLOR. PARALEGAL: SRVD | 5.80 | 725.00 |
| 09/08/23 | PREPARATION OF PLEADING RE: REQUEST FOR ADMISSIONS SET ONE ON PLAINTIFF ROXANNE TAYLOR WITH SPECIFIC EXHIBITS TO BE AUTHENTICATED. PARALEGAL: SRVD | 2.40 | 300.00 |
| 11/01/23 | REVIEW FILE REGARDING INITIAL EVALUATION, NEED FOR COORDINATED DISCOVERY WITH PERSONAL COUNSEL AND DETERMINATION OF WHAT NEEDS TO OCCUR FOR CASE TO BE IN A POSITION TO BE RESOLVED. PARTNER: SJSK | .30 | 75.00 |
| 11/08/23 | ANALYZE STIPULATION TO EXTEND DISCOVERY AND EXPERT DESIGNATION CUT-OFFS. PARTNER: SSC | .10 | 25.00 |
| 11/08/23 | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STIPULATION TO EXTEND DISCOVERY CUT-OFF AND STATUS OF PROPOUNDING DISCOVERY TO PLAINTIFFS. PARTNER: SSC | .30 | 75.00 |

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA  92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
FILE NUMBER: L-6604                          Dec 20, 2023     PAGE   2
INVOICE NO.: 129926

11/09/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S          .20     50.00
          PERSONAL COUNSEL REGARDING DISCOVERY TO BE
          PROPOUNDED TO PLAINTIFF.
          PARTNER:  SSC

11/10/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S          .30     75.00
          PERSONAL COUNSEL REGARDING DISCOVERY TO BE
          SERVED ON PLAINTIFFS.
          PARTNER:  SSC

11/13/23  ANALYZE ORDER GRANTING JOINT STIPULATION TO        .10     25.00
          CONTINUE DISCOVERY AND EXPERT DESIGNATION
          DEADLINES.
          PARTNER:  SSC

11/13/23  PARTICIPATE IN VIDEO CONFERENCE WITH CLIENT AND    .50    125.00
          CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF
          DISCOVERY AND FINALIZATION OF INTERROGATORIES
          AND REQUEST FOR ADMISSIONS AS TO ALL FOUR
          PLAINTIFFS.
          PARTNER:  SSC

11/13/23  PREPARATION OF REQUEST FOR ADMISSIONS TO          1.20    300.00
          PLAINTIFF HIDDEN EMPIRE HOLDINGS.
          PARTNER:  SSC

11/13/23  PREPARATION OF REQUEST FOR ADMISSIONS TO          1.00    250.00
          PLAINTIFF HYPER ENGINE.
          PARTNER:  SSC

11/13/23  PREPARATION OF REQUEST FOR ADMISSIONS TO           .90    225.00
          PLAINTIFF DEON TAYLOR.
          PARTNER:  SSC

11/13/23  PREPARATION OF REQUEST FOR ADMISSIONS TO THIRD     .70    175.00
          PARTY DEFENDANT ROXANNE TAYLOR.
          PARTNER:  SSC

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
FILE NUMBER: L-6604                           Dec 20, 2023      PAGE    3
INVOICE NO.: 129926

| Date | Description | | |
|---|---|---|---|
| 11/13/23 | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING INDIVIDUALS TO BE DEPOSED IN THE CASE AND RETENTION OF EXPERTS. PARTNER: SSC | .30 | 75.00 |
| 11/13/23 | PREPARATION OF REQUEST FOR ADMISSION/AUTHENTICATION OF DOCUMENTS TO PLAINTIFF DEON TAYLOR. PARALEGAL: SRVD | 2.20 | 275.00 |
| 11/13/23 | PREPARATION OF REQUEST FOR ADMISSION/AUTHENTICATION OF DOCUMENTS TO THIRD PARTY DEFENDANT ROXANNE TAYLOR. PARALEGAL: SRVD | 2.10 | 262.50 |
| 11/13/23 | PREPARATION OF REQUEST FOR ADMISSION/AUTHENTICATION OF DOCUMENTS TO PLAINTIFF HYPER ENGINE LLC. PARALEGAL: SRVD | 1.80 | 225.00 |
| 11/13/23 | PREPARATION OF REQUEST FOR ADMISSION/AUTHENTICATION OF DOCUMENTS TO PLAINTIFF HIDDEN EMPIRE HOLDINGS. PARALEGAL: SRVD | 1.90 | 237.50 |
| 11/14/23 | PREPARATION OF SPECIAL INTERROGATORIES TO HIDDEN EMPIRE HOLDINGS. PARTNER: SSC | .80 | 200.00 |
| 11/14/23 | PREPARATION OF SPECIAL INTERROGATORIES TO HYPER ENGINE, LLC. PARTNER: SSC | .70 | 175.00 |
| 11/14/23 | PREPARATION OF SPECIAL INTERROGATORIES TO DEON TAYLOR. PARTNER: SSC | .50 | 125.00 |

KRAMER, DEBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Dec 20, 2023      PAGE    4
FILE NUMBER: L-6604
INVOICE NO.: 129926

11/14/23  PREPARATION OF SPECIAL INTERROGATORIES TO                .50    125.00
          ROXANNE TAYLOR.
          PARTNER:  SSC

11/14/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S               .30     75.00
          PERSONAL COUNSEL REGARDING SPECIAL
          INTERROGATORIES AND REQUEST FOR ADMISSIONS
          PROPOUNDED TO PLAINTIFFS.
          PARTNER:  SSC

11/14/23  AUGMENT REQUEST FOR AUTHENTICATION OF DOCUMENTS        1.20    150.00
          TO PLAINTIFF DEON TAYLOR.
          PARALEGAL:  SRVD

11/14/23  AUGMENT REQUEST FOR AUTHENTICATION OF DOCUMENTS        1.90    237.50
          TO THIRD PARTY DEFENDANT ROXANNE TAYLOR.
          PARALEGAL:  SRVD

11/14/23  AUGMENT REQUEST FOR  AUTHENTICATION OF                 1.40    175.00
          DOCUMENTS TO PLAINTIFF HIDDEN EMPIRE HOLDINGS.
          PARALEGAL:  SRVD

11/14/23  AUGMENT REQUEST FOR AUTHENTICATION OF DOCUMENTS        1.60    200.00
          TO PLAINTIFF HYPER ENGINE LLC.
          PARALEGAL:  SRVD

11/15/23  EXCHANGE NUMEROUS E-MAILS WITH CLIENT AND              .50     125.00
          CLIENT'S PERSONAL COUNSEL REGARDING SPECIAL
          INTERROGATORIES AND REQUEST FOR ADMISSIONS
          PROPOUNDED TO PLAINTIFFS AND CHANGES THERETO.
          PARTNER:  SSC

11/15/23  FURTHER AUGMENT PLEADING RE: REQUEST FOR              1.40     175.00
          ADMISSION/AUTHENTICATION WITH CHANGES FROM
          CLIENT TO PLAINTIFF DEON TAYLOR.
          PARALEGAL:  SRVD

KRAMER, DEBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Dec 20, 2023    PAGE    5
FILE NUMBER: L-6604
INVOICE NO.: 129926

11/15/23  FURTHER AUGMENT  OF DOCUMENTS  REQUEST FOR          1.70    212.50
          AUTHENTICATION WITH CHANGES FROM CLIENT TO
          THIRD PARTY DEFENDANT ROXANNE TAYLOR.
          PARALEGAL:  SRVD

11/15/23  FURTHER AUGMENT REQUEST FOR AUTHENTICATION OF       1.60    200.00
          DOCUMENTS WITH CHANGES FROM CLIENT TO PLAINTIFF
          HYPER ENGINE LLC.
          PARALEGAL:  SRVD

11/15/23  FURTHER AUGMENT REQUEST FOR AUTHENTICATION OF       1.30    162.50
          DOCUMENTS WITH CHANGES FROM CLIENT TO PLAINTIFF
          HIDDEN EMPIRE HOLDINGS.
          PARALEGAL:  SRVD


          ATTORNEY FEES:                              37.50 HRS    5837.50


              SUB-TOTAL FOR CURRENT PERIOD .............   5837.50



          BALANCE DUE: ......................................   16150.00


*-----------------------------------TIME AND FEE SUMMARY--------------------------*
*-----------TIMEKEEPER-----------*   RATE    HOURS           FEES
JEFFREY S. KRAMER                    250.00    .30          75.00
SANDRA CALIN                         250.00   8.90        2225.00
RONALD VAN DEUSEN                    125.00  28.30        3537.50
                    TOTALS                   37.50        5837.50

# KRAMER, DEBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
FILE NUMBER: L-6604
INVOICE NO.: 129926

Dec 20, 2023    PAGE    6

COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

PLEASE RETURN REMITTANCE COPY WITH PAYMENT

TAX I.D. NUMBER: 95-3931157

KRAMER, DeBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA  92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:    AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:    100.205.070A
    OUR FILE NO.:    L-6604

                Jan 12, 2024          INVOICE NO.:130006

BALANCE DUE FROM PREVIOUS STATEMENT        16150.00
LESS PAYMENT(S)                        0.00
                                        ---------
BALANCE FORWARD .................................    16150.00

FOR PROFESSIONAL SERVICES RENDERED THROUGH  Dec 31, 2023

12/08/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S    .30    75.00
        PERSONAL COUNSEL REGARDING DISCOVERY PROPOUNDED
        TO PLAINTIFFS.
        PARTNER:  SSC

12/08/23 TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL    .20    50.00
        COUNSEL REGARDING FURTHER CHANGES TO
        INTERROGATORIES AND REQUEST FOR ADMISSIONS
        PROPOUNDED TO PLAINTIFFS.
        PARTNER:  SSC

12/13/23 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S    .30    75.00
        PERSONAL COUNSEL REGARDING STATUS OF
        FINALIZATION OF DISCOVERY TO PLAINTIFFS.
        PARTNER:  SSC

12/15/23 FINAL PREPARATION OF INTERROGATORIES TO HIDDEN    .60    150.00
        EMPIRE HOLDINGS.
        PARTNER:  SSC

12/15/23 FINAL PREPARATION OF INTERROGATORIES TO HYPER    .50    125.00
        ENGINE, LLC.
        PARTNER:  SSC

12/15/23 FINAL PREPARATION OF INTERROGATORIES TO DEON    .50    125.00
        TAYLOR.
        PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Jan 12, 2024      PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 130006

12/15/23  FINAL PREPARATION OF INTERROGATORIES TO ROXANNE      .40    100.00
          TAYLOR.
          PARTNER:  SSC

12/15/23  FINAL PREPARATION OF REQUEST FOR ADMISSIONS TO       .70    175.00
          HIDDEN EMPIRE HOLDINGS.
          PARTNER:  SSC

12/15/23  FINAL PREPARATION OF REQUEST FOR ADMISSIONS TO       .60    150.00
          HYPER ENGINE, LLC.
          PARTNER:  SSC

12/15/23  FINAL PREPARATION OF REQUEST FOR ADMISSIONS TO       .50    125.00
          DEON TAYLOR.
          PARTNER:  SSC

12/15/23  FINAL PREPARATION OF REQUEST FOR ADMISSIONS TO       .50    125.00
          ROXANNE TAYLOR.
          PARTNER:  SSC

12/15/23  AUGMENT DEON TAYLOR'S REQUEST FOR ADMISSIONS.        .80    100.00
          PARALEGAL:  SRVD

12/18/23  EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S            .30     75.00
          PERSONAL COUNSEL REGARDING FINAL
          INTERROGATORIES AND REQUEST FOR ADMISSIONS TO
          BE SERVED ON PLAINTIFFS.
          PARTNER:  SSC

12/19/23  EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL      .20     50.00
          REGARDING APPROVAL OF FINAL INTERROGATORIES AND
          REQUEST FOR ADMISSIONS TO PLAINTIFFS.
          PARTNER:  SSC


          ATTORNEY FEES:                                6.40 HRS    1500.00


          SUB-TOTAL FOR CURRENT PERIOD .............     1500.00

KRAMER, DEBATE & KRAMER
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                               Jan 12, 2024    PAGE    3
FILE NUMBER: L-6604
INVOICE NO.: 130006

BALANCE DUE: .......................................    17650.00

```
*-----------------------------TIME AND FEE SUMMARY----------------------*
*----------TIMEKEEPER----------*    RATE    HOURS           FEES
SANDRA CALIN                       250.00    5.60         1400.00
RONALD VAN DEUSEN                  125.00     .80          100.00
                        TOTALS              6.40         1500.00
```

COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

PLEASE RETURN REMITTANCE COPY WITH PAYMENT

TAX I.D. NUMBER: 95-3931157

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:    AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:    100.205.070A
    OUR FILE NO.:    L-6604

Feb 14, 2024        INVOICE NO.:130232

| | |
|---|---|
| BALANCE DUE FROM PREVIOUS STATEMENT | 17650.00 |
| LESS PAYMENT(S) | 0.00 |
| BALANCE FORWARD ............................... | 17650.00 |

FOR PROFESSIONAL SERVICES RENDERED THROUGH  Jan 31, 2024

| Date | Description | Hours | Amount |
|---|---|---|---|
| 01/11/24 | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF CASE.<br>PARTNER:  SSC | .20 | 50.00 |
| 01/12/24 | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO OUR DISCOVERY.<br>PARTNER:  SSC | .20 | 50.00 |
| 01/12/24 | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PROVIDING AN EXTENSION TO PLAINTIFF'S COUNSEL TO RESPOND TO OUR DISCOVERY.<br>PARTNER:  SSC | .20 | 50.00 |
| 01/19/24 | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY.<br>PARTNER:  SSC | .30 | 75.00 |
| 01/22/24 | CONFERENCE WITH COUNSEL REGARDING STATUS OF CLAIM, POSITION OF PERSONAL COUNSEL AND PLAN FOR RESOLUTION.<br>PARTNER:  SJSK | .30 | 75.00 |
| 01/22/24 | ANALYZE INITIAL DISCLOSURE OF EXPERT WITNESSES AND EXPERT REPORT BY PLAINTIFFS.<br>PARTNER:  SSC | .50 | 125.00 |

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

```
HISCOX, USA                                   Feb 14, 2024      PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 130232
```

01/22/24 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S         .30      75.00
         PERSONAL COUNSEL REGARDING EXPERT WITNESS
         EXCHANGE.
         PARTNER:  SSC

01/22/24 ANALYZE DRAFT INITIAL EXPERT WITNESS EXCHANGE     .40     100.00
         FROM CLIENT'S PERSONAL COUNSEL.
         PARTNER:  SSC

01/23/24 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S         .40     100.00
         PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY,
         EXPERT DESIGNATION AND TAKING DEPOSITIONS OF
         PLAINTIFFS.
         PARTNER:  SSC

01/23/24 EXCHANGE E-MAILS WITH CARRIER REGARDING           .30      75.00
         CORRESPONDENCE FROM CLIENT AND HANDLING OF THE
         CASE.
         PARTNER:  SSC

01/23/24 EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND         .40     100.00
         CLIENT'S PERSONAL COUNSEL REGARDING EXPERT
         RETENTION AND RESPONSE TO REPORT FROM
         PLAINTIFF'S EXPERT.
         PARTNER:  SSC

01/23/24 ANALYZE DETAILED ENGAGEMENT AGREEMENT FROM OUR    .20      50.00
         CLIENT'S PROPOSED EXPERT.
         PARTNER:  SSC

01/23/24 PARTICIPATE IN EXTENSIVE VIDEO CONFERENCE WITH    .80     200.00
         CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING
         OUR EXPERT DESIGNATION, RETENTION OF EXPERTS,
         PLAINTIFFS' EXPERT'S REPORT AND CONTENTIONS,
         FACTS OF THE CASE AND DEPOSITIONS TO BE TAKEN.
         PARTNER:  SSC

KRAMER, DEBOER, & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Feb 14, 2024      PAGE   3
FILE NUMBER: L-6604
INVOICE NO.: 130232

01/24/24 ANALYZE SUPPLEMENTAL DISCLOSURE OF EXPERT          .30     75.00
         WITNESSES BY OUR CLIENT'S PERSONAL COUNSEL.
         PARTNER:  SSC

01/24/24 EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL    .30     75.00
         REGARDING COMMUNICATIONS BY CLIENT TO CARRIER.
         PARTNER:  SSC

01/24/24 EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND          .40    100.00
         CLIENT'S PERSONAL COUNSEL REGARDING HANDLING OF
         THE CASE, ADDITIONAL DISCOVERY, DEPOSITIONS TO
         BE TAKEN AND LITIGATION STRATEGY.
         PARTNER:  SSC

01/24/24 ANALYZE DETAILED LITIGATION STRATEGY TIMELINE      .20     50.00
         FROM CLIENT'S PERSONAL COUNSEL.
         PARTNER:  SSC

01/24/24 ANALYZE DETAILED CORRESPONDENCE FROM CLIENT       1.20    300.00
         RESPONDING TO EACH OF THE ALLEGATIONS IN
         PLAINTIFFS' EXPERT'S REPORT.
         PARTNER:  SSC

01/24/24 DETAILED ANALYSIS OF FILE IN PREPARATION OF       2.10    525.00
         EVALUATION LETTER TO CARRIER.
         PARTNER:  SSC

01/25/24 PARTICIPATION IN CONFERENCE CALL WITH CARRIER.     .50    125.00
         PURSUANT TO REQUEST IF CLAIMS PROFESSIONAL.
         PARTNER:  SJSK

01/25/24 EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS     .20     50.00
         OF THE CASE AND COMMUNICATIONS WITH CLIENT.
         PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Feb 14, 2024        PAGE    4
FILE NUMBER: L-6604
INVOICE NO.: 130232

01/25/24 PARTICIPATE IN CONFERENCE CALL WITH CARRIER          .50    125.00
         REGARDING STATUS OF THE CASE, CLIENT'S
         CONCERNS, EXPERT RETENTION, POSSIBLE RESOLUTION
         AND FURTHER HANDLING.
         PARTNER:  SSC

01/25/24 TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL          .20     50.00
         COUNSEL REGARDING EXPERT RETENTION, CLIENT'S
         CONCERNS REGARDING HANDLING OF THE CASE AND
         DISCOVERY TO BE COMPLETED.
         PARTNER:  SSC

01/25/24 TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL        .20     50.00
         REGARDING DEPOSITIONS TO BE TAKEN AND
         PLAINTIFFS' CLAIMED DAMAGES FOR AN EVALUATION
         OF THE CASE.
         PARTNER:  SSC

01/25/24 PREPARATION OF DETAILED EVALUATION LETTER TO        2.30    575.00
         CARRIER.
         PARTNER:  SSC

01/26/24 EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL      .20     50.00
         REGARDING RETAINED ECONOMIST EXPERT.
         PARTNER:  SSC

01/26/24 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S            .30     75.00
         PERSONAL COUNSEL REGARDING REBUTTAL TO
         INFORMATION IN PLAINTIFFS' EXPERT'S REPORT.
         PARTNER:  SSC

01/29/24 TELEPHONE CONFERENCE WITH PLAINTIFFS' COUNSEL        .30     75.00
         REGARDING MEET AND CONFER PRIOR TO FILING
         MOTION FOR TERMINATING SANCTIONS FOR VIOLATION
         OF INJUNCTION AND SPOLIATION OF EVIDENCE, AND
         VALUE OF PLAINTIFFS' DAMAGES.
         PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1228

   

HISCOX, USA                                       Feb 14, 2024    PAGE    5
FILE NUMBER: L-6604
INVOICE NO.: 130232

01/30/24 ANALYZE CORRESPONDENCE FROM CLIENT REGARDING          .60    150.00
         DEPOSITIONS OF THE PLAINTIFFS AND EXTENSIVE
         QUESTIONS TO BE ASKED AT DEPOSITION, CONSISTING
         OF 17 PAGES.
         PARTNER:  SSC

01/30/24 EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND            .50    125.00
         CLIENT'S PERSONAL COUNSEL REGARDING PROPOSED
         DEPOSITION QUESTIONS, STATUTORY LIMIT ON
         DEPOSITIONS AND CONVERSATION WITH PLAINTIFFS'
         COUNSEL REGARDING MOTION FOR TERMINATING
         SANCTIONS.
         PARTNER:  SSC

01/30/24 EXCHANGE E-MAILS WITH CLIENT, CLIENT'S PERSONAL      .30     75.00
         COUNSEL AND CARRIER REGARDING PLAINTIFFS'
         INTENT TO FILE A MOTION FOR TERMINATING
         SANCTIONS FOR VIOLATION OF INJUNCTION AND
         SPOLIATION OF EVIDENCE.
         PARTNER:  SSC

01/30/24 EXCHANGE E-MAILS WITH CARRIER REGARDING             .20     50.00
         CONFERENCE CALL WITH CLIENT AND CLIENT'S
         PERSONAL COUNSEL.
         PARTNER:  SSC

01/30/24 EXCHANGE E-MAILS WITH CLIENT REGARDING PREVIOUS     .30     75.00
         FILINGS IN CONNECTION WITH PLAINTIFF'S REQUEST
         FOR AN INJUNCTION.
         PARTNER:  SSC

01/30/24 ANALYZE DECLARATION OF OUR CLIENT DARRICK          1.60    400.00
         ANGELONE IN RESPONSE TO COURT'S ORDER FOR
         RESPONSE DEMONSTRATING COMPLIANCE WITH COURT'S
         ORDER FOR PRELIMINARY INJUNCTION.
         PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Feb 14, 2024      PAGE   6
FILE NUMBER: L-6604
INVOICE NO.: 130232

01/31/24 ANALYZE PLAINTIFF'S SUPPLEMENTAL EXPERT WITNESS      .40     100.00
         DISCLOSURE AND AMENDED REPORT FROM THEIR
         EXPERT.
         PARTNER:  SSC

01/31/24 DETAILED ANALYSIS OF PLEADINGS FILED PRIOR TO       5.60    1400.00
         OUR ENTRY INTO THE CASE IN CONNECTION WITH
         REQUEST FOR INJUNCTION BY PLAINTIFFS,
         CONSISTING OF APPROXIMATELY 2,000 PAGES.
         PARTNER:  SSC

01/31/24 ANALYZE DETAILED MEMORANDUM FROM CLIENT'S            .40     100.00
         PERSONAL COUNSEL REGARDING UPCOMING CONFERENCE
         CALL WITH CARRIER AND ISSUES TO BE ADDRESSED.
         PARTNER:  SSC

01/31/24 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S            .30      75.00
         PERSONAL COUNSEL REGARDING UPCOMING CONFERENCE
         CALL WITH CARRIER AND ISSUES TO BE DISCUSSED.
         PARTNER:  SSC


         ATTORNEY FEES:                           23.90 HRS    5975.00


         SUB-TOTAL FOR CURRENT PERIOD .............  5975.00

**KRAMER, DEBOER & KEANE**
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

  

HISCOX, USA                                    Feb 14, 2024      PAGE    7
FILE NUMBER: L-6604
INVOICE NO.: 130232


BALANCE DUE: ..............................................  23625.00


```
*----------------------------TIME AND FEE SUMMARY--------------------*
*----------TIMEKEEPER----------*    RATE   HOURS             FEES
JEFFREY S. KRAMER                 250.00    .80           200.00
SANDRA CALIN                      250.00   23.10          5775.00
                      TOTALS              23.90          5975.00
```


COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

PLEASE RETURN REMITTANCE COPY WITH PAYMENT

TAX I.D. NUMBER: 95-3931157

**KRAMER     KRAMER**

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

VISA   DISCOVER


HISCOX, USA
420 NICHOLS ROAD, SUITE 200
KANSAS CITY MO 64112

ATTN: RAJIV BATRA

RE: HIDDEN EMPIRE HOLDINGS, LLC v. DARRICK ANGELONE, ET AL.
    YOUR INSURED:        AONE ENTERTAINMENT, LLC
    CLAIM NUMBER:        100.205.070A
    OUR FILE NO.:        L-6604

                    Feb 27, 2024          INVOICE NO.:130382

          BALANCE DUE FROM PREVIOUS STATEMENT          23625.00
          LESS PAYMENT(S)                                  0.00
                                                      _____
          BALANCE FORWARD ............................   23625.00

          FOR PROFESSIONAL SERVICES RENDERED THROUGH  Feb 22, 2024

02/01/24 PREPARE FOR CONFERENCE CALL WITH CLIENT,          .50    125.00
         CLIENT'S PERSONAL COUNSEL AND CARRIER REGARDING
         STATUS OF THE AND HANDLING OF THE DEFENSE.
         PARTNER:  SSC

02/01/24 PARTICIPATE IN CONFERENCE CALL WITH CLIENT,       .40    100.00
         CLIENT'S PERSONAL COUNSEL AND CARRIER REGARDING
         HANDLING OF THE CASE EXPERT RETENTIONS,
         PLAINTIFF'S INTENT TO FILE A MOTION FOR
         TERMINATING SANCTIONS AND RESPONDING TO THE
         MOTION.
         PARTNER:  SSC

02/01/24 TELEPHONE CONFERENCE WITH CARRIER REGARDING       .20     50.00
         EXPERT RETENTIONS, STATUS OF THE CASE AND
         FURTHER HANDLING.
         PARTNER:  SSC

02/02/24 EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND         .50    125.00
         CLIENT'S PERSONAL COUNSEL REGARDING EXPERT
         RETENTIONS, REPORTS BY EXPERT AND PAYMENT OF
         RETAINERS FOR EXPERTS.
         PARTNER:  SSC

02/02/24 ANALYZE EXTENSIVE REBUTTAL BY CLIENT TO          1.30    325.00
         PLAINTIFF'S EXPERT REPORT.
         PARTNER:  SSC

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

VISA   DISCOVER

HISCOX, USA                                    Feb 27, 2024      PAGE    2
FILE NUMBER: L-6604
INVOICE NO.: 130382

02/05/24 EXCHANGE NUMEROUS E-MAILS WITH CLIENT AND           .50    125.00
         CLIENT'S PERSONAL COUNSEL REGARDING EXPERT
         RETENTION, DOCUMENTS NECESSARY FOR OUR EXPERT'S
         REVIEW AND DETAILED INFORMATION FROM OUR CLIENT
         REGARDING FACTS OF THE CASE.
         PARTNER:  SSC

02/05/24 EXCHANGE E-MAILS WITH OUR EXPERT AT QUADARY         .30     75.00
         PEAK REGARDING EXPERT RETENTION AND SCOPE OF
         WORK.
         PARTNER:  SSC

02/05/24 ANALYZE PLAINTIFFS' EXTENSIVE MOTION FOR ORDER     2.10    525.00
         TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE
         IMPOSED AGAINST DEFENDANTS FOR VIOLATING THE
         PRELIMINARY INJUNCTION AND SPOLIATION OF
         EVIDENCE.
         PARTNER:  SSC

02/06/24 ANALYZE EXTENSIVE EXHIBITS, CONSISTING OF OVER     3.40    850.00
         400 PAGES IN SUPPORT OF MOTION FOR ORDER TO
         SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED
         ON DEFENDANTS FOR VIOLATING THE PRELIMINARY
         INJUNCTION AND SPOLIATION OF EVIDENCE.
         PARTNER:  SSC

02/06/24 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S           .40    100.00
         PERSONAL COUNSEL REGARDING PLAINTIFFS' MOTION
         FOR TERMINATING SANCTIONS.
         PARTNER:  SSC

02/06/24 EXCHANGE E-MAILS WITH OUR EXPERT AND CLIENT         .40    100.00
         REGARDING DOCUMENTS NEEDED BY EXPERT TO REFUTE
         CLAIMS OF PLAINTIFFS' EXPERT.
         PARTNER:  SSC

KRAMER DEBOER & KRANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Feb 27, 2024        PAGE   3
FILE NUMBER: L-6604
INVOICE NO.: 130382

02/06/24 ANALYZE CLIENT'S EXTENSIVE REBUTTAL TO            .90   225.00
         ALLEGATIONS IN PLAINTIFFS' MOTION FOR
         TERMINATING SANCTIONS.
         PARTNER:  SSC

02/06/24 EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL, AND    .30    75.00
         CLIENT'S PERSONAL COUNSEL REGARDING STIPULATION
         TO CONTINUE TRIAL.
         PARTNER:  SSC

02/06/24 ANALYZE PROPOSED JOINT STIPULATION TO CONTINUE    .10    25.00
         TRIAL.
         PARTNER:  SSC

02/07/24 LEGAL RESEARCH REGARDING FEDERAL OPPOSITION      2.10   525.00
         DEADLINE RULES.
         PARTNER:  SKGA

02/07/24 LEGAL RESEARCH REGARDING FEDERAL EX PARTE        2.30   575.00
         RULES.
         PARTNER:  SKGA

02/07/24 LEGAL RESEARCH REGARDING CENTRAL DISTRICT AND    1.20   300.00
         SPECIFIC COURTROOM RULES FOR EX PARTE
         APPLICATIONS AND HEARINGS.
         PARTNER:  SKGA

02/07/24 TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL     .30    75.00
         REGARDING MOTION FOR TERMINATING SANCTIONS,
         REQUEST TO CONTINUE THE MOTION, PLAINTIFFS'
         REQUEST FOR EXTENSION TO RESPOND TO DISCOVERY
         AND STIPULATION TO CONTINUE TRIAL.
         PARTNER:  SSC

K·RAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

```
HISCOX, USA                            Feb 27, 2024      PAGE   4
FILE NUMBER: L-6604
INVOICE NO.: 130382


02/07/24 EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL AND     .40   100.00
         CLIENT'S PERSONAL COUNSEL REGARDING STIPULATION
         TO CONTINUE TRIAL, REQUEST TO CONTINUE HEARING
         ON MOTION FOR TERMINATING SANCTIONS AND OUR
         NEED TO FILE AN EX PARTE APPLICATION TO
         CONTINUE THE HEARING ON THE MOTION FOR
         TERMINATING SANCTIONS.
         PARTNER:  SSC

02/07/24 ANALYZE EXTENSIVE CORRESPONDENCE FROM CLIENT      .50   125.00
         REGARDING REFUSING CLAIMS IN PLAINTIFFS' MOTION
         FOR TERMINATING SANCTIONS.
         PARTNER:  SSC

02/07/24 ANALYZE FILED STIPULATION TO CONTINUE TRIAL AND   .10    25.00
         DISCOVERY CUTOFF.
         PARTNER:  SSC

02/08/24 LEGAL RESEARCH REGARDING FEDERAL GROUNDS TO      2.90   725.00
         SUPPORT CONTINUANCE MOTION HEARING AND
         OPPOSITION DEADLINE.
         PARTNER:  SKGA

02/08/24 DRAFT EX PARTE APPLICATION TO CONTINUE MOTION    3.40   850.00
         AND OPPOSITION DEADLINE.
         PARTNER:  SKGA

02/08/24 DRAFT PROPOSED ORDER TO EX PARTE APPLICATION      .30    75.00
         TO CONTINUE MOTION AND OPPOSITION DEADLINE.
         PARTNER:  SKGA

02/08/24 EXCHANGE E-MAILS WITH OUR EXPERT AND CLIENT       .30    75.00
         REGARDING DOCUMENTS NEEDED FOR ANALYSIS TO
         REFUTE PLAINTIFFS' EXPERT'S REPORT.
         PARTNER:  SSC

02/08/24 EXCHANGE E-MAILS WITH CARRIER REGARDING EXPERT    .20    50.00
         RETENTION.
         PARTNER:  SSC
```

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Feb 27, 2024      PAGE   5
FILE NUMBER: L-6604
INVOICE NO.: 130382

| Date | Description | | |
|------|-------------|---|---|
| 02/08/24 | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING EXTENSION TO RESPOND TO DISCOVERY. PARTNER: SSC | .20 | 50.00 |
| 02/08/24 | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING REQUEST FOR CONTINUANCE OF MOTION FOR TERMINATING SANCTIONS AND NEED FOR EX PARTE APPLICATION TO REQUEST CONTINUANCE FROM THE COURT. PARTNER: SSC | .20 | 50.00 |
| 02/08/24 | FINAL PREPARATION OF EX PARTE APPLICATION TO CONTINUE HEARING ON PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS. PARTNER: SSC | .50 | 125.00 |
| 02/08/24 | ANALYZE COURT ORDER CONTINUING HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. PARTNER: SSC | .10 | 25.00 |
| 02/08/24 | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING COURT'S CONTINUANCE OF HEARING ON MOTION FOR TERMINATING SANCTIONS. PARTNER: SSC | .20 | 50.00 |
| 02/08/24 | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CONTINUANCE OF PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND DOCUMENTS TO BE PROVIDED TO OUR EXPERT TO PREPARE REBUTTAL TO PLAINTIFF'S EXPERT REPORT. PARTNER: SSC | .40 | 100.00 |
| 02/09/24 | EXCHANGE E-MAILS WITH CLIENT REGARDING PLAINTIFFS' DISCOVERY RESPONSES. PARTNER: SSC | .30 | 75.00 |

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

HISCOX, USA                                    Feb 27, 2024      PAGE    6
FILE NUMBER: L-6604
INVOICE NO.: 130382

02/09/24 ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT          .60    150.00
         CONTRADICTING DECLARATIONS OF ROXANNE TAYLOR IN
         RESPONSE TO MOTION FOR TERMINATING SANCTIONS.
         PARTNER:  SSC

02/09/24 EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS       .20     50.00
         REGARDING DOCUMENTS RECEIVED FROM CLIENT.
         PARTNER:  SSC

02/09/24 ANALYZE COURT ORDER GRANTING STIPULATION TO       .10     25.00
         CONTINUE TRIAL.
         PARTNER:  SSC

02/09/24 EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S         .30     75.00
         PERSONAL COUNSEL REGARDING LITIGATION TIMELINE
         IN LIGHT OF COURT'S CONTINUANCE OF THE TRIAL
         DATE.
         PARTNER:  SSC

02/12/24 EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS       .30     75.00
         REGARDING DOCUMENTS TO BE REVIEWED TO PREPARE
         REBUTTAL TO PLAINTIFF'S EXPERT REPORT.
         PARTNER:  SSC

02/12/24 ANALYZE ADDITIONAL DOCUMENTS FROM OUR CLIENT TO   .30     75.00
         BE PROVIDED TO OUR EXPERT IN PREPARATION OF HIS
         REPORT REBUTTING ALLEGATIONS OF PLAINTIFFS'
         EXPERT.
         PARTNER:  SSC

02/12/24 INDEX AND CREATE BINDER OF EXHIBITS REGARDING    2.40    300.00
         TERMINATION MOTION AND SANCTIONS.
         PARALEGAL:  SRVD

02/14/24 EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL   .30     75.00
         REGARDING RETENTION OF ACCOUNTING EXPERT.
         PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

VISA  DISCOVER

HISCOX, USA                                    Feb 27, 2024      PAGE    7
FILE NUMBER: L-6604
INVOICE NO.: 130382

02/15/24  EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL           .30      75.00
          REGARDING FURTHER EXTENSION TO RESPOND TO OUR
          DISCOVERY.
          PARTNER:  SSC

02/16/24  EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL AND       .40     100.00
          OUR CLIENT'S PERSONAL COUNSEL REGARDING
          EXTENSION TO RESPOND TO OUR DISCOVERY AND
          EXTENSION TO SUBMIT OUR EXPERT'S REBUTTAL
          REPORT.
          PARTNER:  SSC

02/16/24  TELEPHONE CONFERENCE WITH PLAINTIFFS' COUNSEL       .20      50.00
          REGARDING EXTENSION TO RESPOND TO DISCOVERY AND
          EXTENSION TO SUBMIT OUR EXPERT'S REBUTTAL
          REPORT.
          PARTNER:  SSC

02/16/24  EXCHANGE NUMEROUS E-MAILS WITH OUR CLIENT'S         .40     100.00
          PERSONAL COUNSEL REGARDING EXPERT DESIGNATIONS
          AND REPORTS BY OUR EXPERTS.
          PARTNER:  SSC

02/16/24  EXCHANGE E-MAILS WITH CLIENT, CLIENT'S PERSONAL     .30      75.00
          COUNSEL AND EXPERT RETAINED TO REBUT
          ALLEGATIONS BY PLAINTIFF'S EXPERT.
          PARTNER:  SSC

02/16/24  EXCHANGE NUMEROUS E-MAILS WITH CLIENT'S             .50     125.00
          PERSONAL COUNSEL REGARDING EXPERT DESIGNATION,
          OUR EXPERT'S PREPARATION OF REPORT IN REBUTTAL
          TO PLAINTIFFS' EXPERT AND NEED FOR EX PARTE
          APPLICATION TO PERMIT LATE FILING OF EXPERT
          REPORT.
          PARTNER:  SSC

KRAMER, DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

  

HISCOX, USA                                    Feb 27, 2024      PAGE    8
FILE NUMBER: L-6604
INVOICE NO.: 130382

02/16/24 EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL          .40    100.00
         REGARDING REQUEST TO FILE A LATE EXPERT
         DESIGNATION AND REBUTTAL REPORT BY OUR EXPERT,
         AND PLAINTIFFS' REQUEST FOR AN EXTENSION TO
         RESPOND TO OUR DISCOVERY.
         PARTNER: SSC

02/16/24 EXCHANGE E-MAILS WITH CARRIER REGARDING EXPERT     .20     50.00
         RETENTIONS.
         PARTNER: SSC

02/19/24 EXCHANGE NUMEROUS E-MAILS WITH CLIENT'S            .40    100.00
         PERSONAL COUNSEL REGARDING EX PARTE APPLICATION
         REGARDING EXPERT DESIGNATIONS AND PRODUCTION OF
         EXPERT REPORTS.
         PARTNER: SSC

02/19/24 ANALYZE DRAFT EX PARTE APPLICATION FROM            .30     75.00
         CLIENT'S PERSONAL COUNSEL.
         PARTNER: SSC

02/19/24 EXCHANGE NUMEROUS E-MAILS WITH CLIENT'S            .50    125.00
         PERSONAL COUNSEL REGARDING AMENDING OUR EXPERT
         DESIGNATION AND EX PARTE APPLICATION TO PERMIT
         LATE FILING OF OUR EXPERT'S REPORT.
         PARTNER: SSC

02/19/24 PREPARATION OF CORRESPONDENCE TO PLAINTIFFS'       .20     50.00
         COUNSEL REGARDING EXTENSION TO SERVE OUR
         EXPERT'S REBUTTAL REPORT.
         PARTNER: SSC

02/20/24 EXCHANGE NUMEROUS E-MAILS WITH OUR EXPERT          .40    100.00
         REGARDING DOCUMENTS TO BE REVIEWED IN
         PREPARATION OF REBUTTAL REPORT TO PLAINTIFF'S
         EXPERT REPORT.
         PARTNER: SSC

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

  

HISCOX, USA                                      Feb 27, 2024      PAGE    9
FILE NUMBER: L-6604
INVOICE NO.: 130382

| | | | |
|---|---|---|---|
| 02/20/24 | EXCHANGE E-MAILS WITH CARRIER REGARDING EXPERT RETAINER.<br>PARTNER:  SSC | .20 | 50.00 |
| 02/20/24 | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING REPORT BY OUR EXPERT IN REBUTTAL TO PLAINTIFFS' EXPERT REPORT.<br>PARTNER:  SSC | .30 | 75.00 |
| 02/20/24 | EXCHANGE E-MAILS WITH OUR EXPERT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF REPORT IN REBUTTAL TO PLAINTIFFS' EXPERT'S REPORT.<br>PARTNER:  SSC | .30 | 75.00 |
| 02/20/24 | ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT TO BE USED BY OUR EXPERT IN PREPARATION OF REBUTTAL REPORT TO PLAINTIFFS' EXPERT REPORT.<br>PARTNER:  SSC | .50 | 125.00 |
| 02/20/24 | ANALYZE NOTICE OF WITHDRAWAL OF ECONOMIST EXPERT BY CLIENT'S PERSONAL COUNSEL.<br>PARTNER:  SSC | .10 | 25.00 |
| 02/20/24 | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING EX PARTE APPLICATION TO PERMIT LATE FILING OF EXPERT'S REBUTTAL REPORT.<br>PARTNER:  SSC | .20 | 50.00 |
| 02/21/24 | EXCHANGE E-MAILS WITH CLIENT, CLIENT'S PERSONAL COUNSEL AND OUR EXPERT REGARDING PREPARATION OF REPORT TO REBUT PLAINTIFFS' EXPERT REPORT.<br>PARTNER:  SSC | .30 | 75.00 |

**KRAMER, DEBOER & KEANE**

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

   

```
HISCOX, USA                                Feb 27, 2024      PAGE   10
FILE NUMBER: L-6604
INVOICE NO.: 130382


02/21/24  PARTICIPATE IN CONFERENCE CALL WITH CLIENT,      1.50    375.00
          CLIENT'S PERSONAL COUNSEL AND OUR EXPERT
          REGARDING REBUTTAL TO PLAINTIFFS' EXPERT REPORT
          AND INFORMATION NEEDED TO PREPARE OPPOSITION TO
          PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS.
          PARTNER:  SSC

02/21/24  LEGAL RESEARCH REGARDING CASES CITED IN          3.20    800.00
          PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS.
          PARTNER:  SSC

02/22/24  EXCHANGE E-MAILS WITH CLIENT REGARDING FACTS TO   .30     75.00
          DISPUTE ALLEGATIONS OF PLAINTIFFS IN MOTION FOR
          TERMINATING SANCTIONS.
          PARTNER:  SSC

02/22/24  EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL   .30     75.00
          REGARDING OUR EXPERT DESIGNATION AND CHANGE IN
          EXPERTS.
          PARTNER:  SSC

02/22/24  PREPARATION OF CORRESPONDENCE TO PLAINTIFFS'      .20     50.00
          COUNSEL REGARDING OUR EXPERT DESIGNATION AND
          CHANGE OF EXPERTS.
          PARTNER:  SSC

02/22/24  EXCHANGE E-MAILS WITH OUR EXPERT REGARDING        .40    100.00
          DECLARATION TO BE PREPARED IN SUPPORT OF OUR
          OPPOSITION TO PLAINTIFFS' MOTION FOR
          TERMINATING SANCTIONS.
          PARTNER:  SSC

02/22/24  LEGAL RESEARCH REGARDING PREPARATION OF          4.20   1050.00
          OPPOSITION TO PLAINTIFFS' MOTION FOR
          TERMINATING SANCTIONS.
          PARTNER:  SSC


          ATTORNEY FEES:                         48.20 HRS   11750.00
```

KRAMER DEBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
74770 HIGHWAY 111, SUITE 201
INDIAN WELLS, CA 92210
TELEPHONE (760) 776-1226

VISA

```
HISCOX, USA                                Feb 27, 2024      PAGE  11
FILE NUMBER: L-6604
INVOICE NO.: 130382


        SUB-TOTAL FOR CURRENT PERIOD ..............    11750.00




        BALANCE DUE: ....................................    35375.00



*----------------------------TIME AND FEE SUMMARY----------------------*
*-----------TIMEKEEPER----------*    RATE   HOURS           FEES
KELSEY G. ARTINGER               250.00   12.20        3050.00
SANDRA CALIN                     250.00   33.60        8400.00
RONALD VAN DEUSEN                125.00    2.40         300.00
                        TOTALS           48.20       11750.00


    COSTS RECEIVED AFTER CLOSING DATE WILL APPEAR ON SUBSEQUENT BILL

        PLEASE RETURN REMITTANCE COPY WITH PAYMENT

        TAX I.D. NUMBER: 95-3931157
```

# KRAMER, DEBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 Highway 111, Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
www.kdeklaw.com

---

Hiscox, Usa

Attention:  **RAJIV BATRA**

| | |
|---|---|
| **Date:** | April 11, 2024 |
| **Our File No.:** | L6604 |
| **Invoice #:** | 130579 |

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

 COPY

For Professional Services Rendered Through March 31, 2024

---

| Date | Initials | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 02/23/2024 | SJSK | CONFERENCE WITH COUNSEL REGARDING MOTION FOR EVIDENTIARY SANCTIONS AGAINST CLIENT. | 0.30 | $75.00 |
| 02/23/2024 | SSC | DETAILED ANALYSIS OF DECLARATION OF PLAINTIFFS' EXPERT ERIN BURKE IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS AND EXHIBITS THERETO. | 2.40 | $600.00 |
| 02/23/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING ALLEGATIONS IN PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 02/23/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT REGARDING ARGUMENTS RAISED IN PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 02/23/2024 | SSC | BEGIN DRAFTING OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 3.60 | $900.00 |
| 02/23/2024 | SSC | CONTINUED PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 2.70 | $675.00 |
| 02/23/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING OUR EXPERT DESIGNATION, REQUEST FOR CHANGE OF EXPERTS AND POSSIBLE EX PARTE APPLICATION REGARDING EXPERT DISCLOSURES. | 0.30 | $75.00 |
| 02/23/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH OUR CLIENT'S PERSONAL COUNSEL REGARDING EXPERT DISCLOSURES AND PLAINTIFFS' COUNSEL'S POSITION REGARDING AMENDING OUR EXPERT DISCLOSURE AND REBUTTAL REPORT. | 0.40 | $100.00 |

| Date | Initials | Description of Services | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 02/24/2024 | SSC | LEGAL RESEARCH REGARDING GROUNDS FOR CONTEMPT IN PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 2.60 | $650.00 |
| 02/24/2024 | SSC | LEGAL RESEARCH REGARDING SPOLIATION OF EVIDENCE IN PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 2.10 | $525.00 |
| 02/25/2024 | SSC | LEGAL RESEARCH REGARDING PREPARATION OF OPPOSITION TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS. | 0.90 | $225.00 |
| 02/25/2024 | SSC | PREPARATION OF OPPOSITION TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS. | 1.30 | $325.00 |
| 02/25/2024 | SSC | PREPARATION OF DECLARATION OF CLIENT DARRICK ANGELONE IN OPPOSITION TO MOTION FOR TERMINATING SANCTIONS. | 1.10 | $275.00 |
| 02/25/2024 | SSC | PREPARATION OF DECLARATION OF COUNSEL IN OPPOSITION TO MOTION FOR TERMINATING SANCTIONS. | 0.90 | $225.00 |
| 02/25/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS PREPARATION OF REPORT TO BE USED IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 02/26/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING FINAL PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 02/26/2024 | SSC | PREPARATION OF EXHIBITS TO DECLARATION OF DARRICK ANGELONE IN OPPOSITION TO MOTION FOR TERMINATING SANCTIONS. | 0.80 | $200.00 |
| 02/26/2024 | SSC | PREPARATION OF EXHIBITS TO DECLARATION OF COUNSEL IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.70 | $175.00 |
| 02/26/2024 | SSC | FINAL PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 2.80 | $700.00 |
| 02/26/2024 | SSC | ANALYZE DRAFT REPORT FROM OUR EXPERT RICK WATTS TO BE USED IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.90 | $225.00 |
| 02/26/2024 | SSC | FINAL PREPARATION OF DECLARATION OF COUNSEL TO INCORPORATE DRAFT REPORT FROM OUR EXPERT RICK WATTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 02/26/2024 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING PLAINTIFFS' MOTION FOR TERMINATING SANCTION. | 0.20 | $50.00 |
| 02/26/2024 | SSC | EXTENSIVE TELEPHONE CONFERENCE WITH CARRIER REGARDING STATUS OF THE CASE, PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS, OUR OPPOSITION THERETO, AND INFORMATION FROM OUR CLIENT. | 0.50 | $125.00 |

| Date | Initials | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 02/26/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING USE OF DRAFT REPORT FROM OUR EXPERT RICK WATTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.50 | $125.00 |
| 02/26/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING OUR USE OF EXPERT RICK WATTS IN PLACE OF PREVIOUSLY DESIGNATED EXPERT. | 0.30 | $75.00 |
| 02/27/2024 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 02/27/2024 | SSC | ANALYZE FINAL REPORT FROM OUR EXPERT RICK WATTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.80 | $200.00 |
| 02/27/2024 | SSC | PREPARATION OF SUPPLEMENTAL DECLARATION OF COUNSEL IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS TO INCLUDE FINAL REPORT FROM OUR EXPERT RICK WATTS. | 0.80 | $200.00 |
| 02/27/2024 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING HIS FINAL REPORT IN REBUTTAL TO PLAINTIFFS' EXPERT REPORT. | 0.10 | $25.00 |
| 02/27/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING USE OF HIS FINAL REPORT IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.40 | $100.00 |
| 02/27/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING FINAL REPORT FROM OUR EXPERT AND SUPPLEMENTAL DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.50 | $125.00 |
| 02/28/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING EX PARTE APPLICATION TO ALLOW FILING OF OUR EXPERT'S REBUTTAL REPORT. | 0.30 | $75.00 |
| 02/28/2024 | SSC | ANALYZE DRAFT OF EX PARTE APPLICATION TO ALLOW FILING OF OUR EXPERT'S REBUTTAL REPORT. | 0.40 | $100.00 |
| 03/01/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL AND OUR CLIENT'S PERSONAL COUNSEL REGARDING OUR NAMING OF ALTERNATE EXPERT AND SUBMISSION OF REBUTTAL REPORT. | 0.30 | $75.00 |
| 03/01/2024 | SSC | ANALYZE CORRESPONDENCE FROM PLAINTIFF'S COUNSEL REGARDING TAKING OF EXPERT DEPOSITIONS. | 0.10 | $25.00 |
| 03/01/2024 | SSC | PARTICIPATION IN CONFERENCE CALL WITH ALL COUNSEL REGARDING EXPERT DEPOSITIONS, STATUS OF MEDIATION AND ADDITIONAL DEPOSITIONS THAT NEED TO BE TAKEN. | 0.50 | $125.00 |
| 03/01/2024 | SSC | ANALYZE PLAINTIFF'S NOTICE OF DEPOSIT OF THEIR EXPERT ABB'S JOB FILE. | 0.50 | $125.00 |
| 03/01/2024 | SSC | ANALYZE PLAINTIFF'S NOTICE OF PRODUCTION OF AMENDED REPORTS AND ADDITIONAL DOCUMENTS. | 0.10 | $25.00 |
| 03/01/2024 | SSC | ANALYZE PLAINTIFF'S NOTICE OF PRODUCTION OF THEIR EXPERT HARVEY KREITENBERG'S JOB FILE. | 0.20 | $50.00 |

| Date | Initials | Description of Services | Hours | Amount |
|------|----------|-------------------------|-------|--------|
| 03/04/2024 | SSC | TELEPHONE CALL FROM PLAINTIFFS' COUNSEL REGARDING REQUEST FOR FURTHER EXTENSION TO RESPOND TO OUR DISCOVERY, AND ISSUES CONCERNING EXPERT DISCLOSURES. | 0.20 | $50.00 |
| 03/04/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING REQUEST FOR EXTENSION TO RESPOND TO OUR DISCOVERY AND OUR SUPPLEMENTAL EXPERT WITNESS DESIGNATION AND FINAL REPORT BY OUR EXPERT. | 0.30 | $75.00 |
| 03/04/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING OUR EXPERT DISCLOSURE AND FINAL REPORT BY OUR EXPERT. | 0.30 | $75.00 |
| 03/04/2024 | SSC | ANALYZE PLAINTIFF'S NOTICE OF MANUAL FILING AND LODGING OF EXHIBIT IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR TERMINATING SANCTIONS. | 0.10 | $25.00 |
| 03/04/2024 | SSC | ANALYZE EX PARTE APPLICATION BY CLIENT'S PERSONAL COUNSEL REGARDING OUR EXPERT DESIGNATION AND REBUTTAL REPORT BY OUR EXPERT. | 0.30 | $75.00 |
| 03/04/2024 | SSC | PREPARATION OF SUGGESTED CHANGED TO EX PARTE APPLICATION BY OUR CLIENT'S PERSONAL COUNSEL REGARDING OUR EXPERT DESIGNATION AND SUBMITTAL OF EXPERT'S REBUTTAL REPORT. | 0.50 | $125.00 |
| 03/04/2024 | SSC | ANALYZE PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR TERMINATING SANCTIONS AND SUPPORTING DOCUMENTS. | 0.80 | $200.00 |
| 03/04/2024 | SSC | ANALYZE PLAINTIFFS' RESPONSE TO OBJECTION TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN CONNECTION WITH MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/04/2024 | SSC | ANALYZE PLAINTIFFS' OBJECTION AND REQUEST TO STRIKE DEFENDANTS' INITIAL EXPERT WITNESS DISCLOSURE, REBUTTAL WITNESS DISCLOSURE AND REPORTS OF RICK WATTS. | 0.50 | $125.00 |
| 03/04/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' OBJECTIONS TO OUR EXPERT DISCLOSURE AND OUR EX PARTE APPLICATION TO PERMIT RICK WATTS AS OUR EXPERT. | 0.10 | $25.00 |
| 03/05/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR TERMINATING SANCTIONS. | 0.40 | $100.00 |
| 03/05/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR TERMINATING SANCTIONS AND PLAINTIFFS' OBJECTIONS TO OUR EXPERT WITNESS DISCLOSURE. | 0.30 | $75.00 |
| 03/05/2024 | SSC | ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT REGARDING REFUTING ALLEGATIONS IN PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |

| Date | Initials | Description of Services | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 03/05/2024 | SSC | ANALYZE PLAINTIFF'S OPPOSITION TO OUR EX PARTE APPLICATION ALLOW REBUTTAL REPORT BY EXPERT RICK WATTS. | 0.40 | $100.00 |
| 03/06/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DECLARATION OF PLAINTIFFS' EXPERT ERIN BURKE IN REPLY TO OUR OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND FACTS TO REFUTE SAME. | 0.30 | $75.00 |
| 03/06/2024 | SSC | ANALYZE PLAINTIFFS' SUPPLEMENT TO REPLY BRIEF CITING RECENT CASE CONCERNING MOTION FOR TERMINATING SANCTIONS. | 0.40 | $100.00 |
| 03/06/2024 | SSC | LEGAL RESEARCH REGARDING RECENT CASES CONCERNING MOTION FOR TERMINATING SANCTIONS. | 0.50 | $125.00 |
| 03/06/2024 | SSC | PREPARATION OF SUR-REPLY BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 1.10 | $275.00 |
| 03/06/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF SUR-REPLY BRIEF REGARDING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ADVISABILITY OF ADDITIONAL SUPPLEMENTAL BRIEFS. | 0.40 | $100.00 |
| 03/06/2024 | SSC | ANALYZE COURT'S MINUTE ORDER GRANTING OUR EX PARTE APPLICATION TO PERMIT FILING OF OUR EXPERT'S REBUTTAL REPORT. | 0.10 | $25.00 |
| 03/07/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION TO CONTINUE MEDIATION CUT-OFF DATE. | 0.30 | $75.00 |
| 03/07/2024 | SSC | ANALYZE RECORDING PLACED INTO EVIDENCE BY PLAINTIFFS IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 03/07/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING RECORDING PLACED INTO EVIDENCE BY PLAINTIFFS IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 03/07/2024 | SSC | DETAILED TELEPHONE CONVERSATION WITH OUR EXPERT RICK WATTS REGARDING EVIDENCE FROM PLAINTIFFS IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS, INFORMATION CONTAINED IN RECORDING, AND CREDIBILITY OF PLAINTIFFS' EXPERT REPORT SUBMITTED IN SUPPORT OF MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY PLAINTIFF DEON TAYLOR TO FIRST SET OF REQUESTS FOR ADMISSIONS. | 0.40 | $100.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY PLAINTIFF HIDDEN EMPIRE HOLDINGS TO FIRST SET OF REQUESTS FOR ADMISSIONS. | 0.30 | $75.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY PLAINTIFF HYPER ENGINE, LLC TO FIRST SET OF REQUESTS FOR ADMISSIONS. | 0.30 | $75.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY THIRD PARTY DEFENDANT ROXANNE TAYLOR TO FIRST SET OF REQUESTS FOR ADMISSIONS. | 0.30 | $75.00 |

| Date | Initials | Description of Services | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 03/07/2024 | SSC | ANALYZE RESPONSES BY PLAINTIFF HIDDEN EMPIRE HOLDINGS TO FIRST SET OF INTERROGATORIES. | 0.40 | $100.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY PLAINTIFF HYPER ENGINE LLC TO FIRST SET OF INTERROGATORIES. | 0.30 | $75.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY PLAINTIFF DEON TAYLOR TO FIRST SET OF INTERROGATORIES. | 0.30 | $75.00 |
| 03/07/2024 | SSC | ANALYZE RESPONSES BY THIRD PARTY DEFENDANT ROXANNE TAYLOR TO FIRST SET OF INTERROGATORIES. | 0.30 | $75.00 |
| 03/07/2024 | SSC | LEGAL RESEARCH REGARDING FILING OF A MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY IN FEDERAL COURT. | 0.60 | $150.00 |
| 03/07/2024 | SSC | PREPARATION OF CORRESPONDENCE TO PLAINTIFFS' COUNSEL REQUESTING FURTHER RESPONSES TO OUR WRITTEN DISCOVERY IN ORDER TO AVOID A MOTION TO COMPEL. | 0.40 | $100.00 |
| 03/07/2024 | SSC | PREPARATION OF CORRESPONDENCE TO CARRIER REGARDING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS, OUR EX PARTE APPLICATION TO PERMIT USE OF OUR EXPERT RICK WATTS AND GRANTING OF SAME, AND PLAINTIFFS' RESPONSES TO OUR DISCOVERY AND MEET AND CONFER ATTEMPT TO OBTAIN SUBSTANTIVE RESPONSES. | 0.50 | $125.00 |
| 03/11/2024 | SSC | Analyze correspondence from plaintiff's counsel regarding taking of expert depositions. | 0.10 | $25.00 |
| 03/11/2024 | SSC | ANALYZE PROPOSED JOINT STATEMENT TO THE COURT REGARDING ALTERNATE DISPUTE RESOLUTION DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 03/11/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING JOINT STATEMENT REGARDING ALTERNATE DISPUTE RESOLUTION DISCOVERY CONFERENCE. | 0.40 | $100.00 |
| 03/11/2024 | SSC | PREPARATION OF JOINT STIPULATION TO CONTINUE MEDIATION. | 0.50 | $125.00 |
| 03/11/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT STIPULATION TO CONTINUE MEDIATION COMPLETION DATE. | 0.30 | $75.00 |
| 03/13/2024 | SSC | ANALYZE NOTICE FROM THE COURT OF HEARING ON MOTION FOR TERMINATING SANCTIONS. | 0.10 | $25.00 |
| 03/13/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING HEARING ON MOTION FOR TERMINATING SANCTIONS. | 0.50 | $125.00 |
| 03/13/2024 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS, POSSIBLE ISSUES TO BE RAISED AT THE HEARING AND TESTIMONY BY OUR CLIENT. | 0.30 | $75.00 |
| 03/13/2024 | SSC | TELEPHONE CONFERENCE WITH OUR CLIENT'S PERSONAL COUNSEL REGARDING HEARING SET BY THE COURT FOR PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |

| Date | Initials | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 03/13/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING HEARING SET BY THE COURT FOR PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND POTENTIAL TESTIMONY TO BE PROVIDED. | 0.40 | $100.00 |
| 03/13/2024 | SSC | ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT IN SUPPORT OF OUR OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.40 | $100.00 |
| 03/14/2024 | SSC | ANALYZE ADDITIONAL INFORMATION FROM CLIENT IN OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/14/2024 | SSC | PREPARATION OF CORRESPONDENCE TO PLAINTIFFS' COUNSEL REGARDING JOINT STIPULATION TO CONTINUE MEDIATION COMPLETION DATE. | 0.20 | $50.00 |
| 03/14/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING REVISIONS TO STIPULATION TO CONTINUE MEDIATION COMPLETION DATE. | 0.50 | $125.00 |
| 03/14/2024 | SSC | PREPARATION OF REVISED STIPULATION TO CONTINUE MEDIATION COMPLETION DATE. | 0.30 | $75.00 |
| 03/14/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING FINAL STIPULATION TO CONTINUE MEDIATION COMPLETION DATE. | 0.30 | $75.00 |
| 03/15/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.80 | $200.00 |
| 03/15/2024 | SSC | ANALYZE ORDER FROM THE COURT GRANTING STIPULATION TO CONTINUE MEDIATION COMPLETION DATE. | 0.10 | $25.00 |
| 03/15/2024 | SSC | ANALYZE ADDITIONAL DOCUMENTS PROVIDED BY CLIENT IN PREPARATION FOR HEARING ON PLAINTIFFS' MOTION FOR EVIDENTIARY SANCTIONS. | 0.50 | $125.00 |
| 03/16/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT IN PREPARATION FOR HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.50 | $125.00 |
| 03/16/2024 | SSC | DETAILED ANALYSIS OF ALL PLEADINGS FILED IN CONNECTION WITH PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS IN PREPARATION FOR HEARING ON SAME. | 1.70 | $425.00 |
| 03/16/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING ADDITIONAL INFORMATION TO BE USED AT HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.40 | $100.00 |
| 03/16/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/18/2024 | SSC | TRAVEL TO AND FROM COURT IN LOS ANGELES FOR HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS (50 MILES ROUND TRIP). | 3.20 | $800.00 |
| 03/18/2024 | SSC | Appear in court for hearing on Plaintiffs' Motion for Terminating Sanctions. | 1.20 | $300.00 |

| Date | Initials | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 03/18/2024 | SSC | Preparation of correspondence to carrier regarding hearing on Plaintiffs' Motion for Terminating Sanctions, additional Declarations to be filed and Court's tentative ruling. | 0.40 | $100.00 |
| 03/18/2024 | SSC | Multiple telephone conversations with witness Sean Merrick regarding his ownership of the subject internet domains and preparation of his Declaration to be submitted to the court regarding same. | 0.50 | $125.00 |
| 03/18/2024 | SSC | Preparation of Declaration of Sean Merrick regarding Plaintiffs' Motion for Terminating Sanctions. | 0.90 | $225.00 |
| 03/18/2024 | SSC | Preparation of Declaration of counsel regarding ownership of the subject internet domains, as requested by the Court. | 0.70 | $175.00 |
| 03/18/2024 | SSC | Preparation of Exhibits to Declaration of counsel regarding internet domains, as requested by the Court. | 0.60 | $150.00 |
| 03/18/2024 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.10 | $25.00 |
| 03/18/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS WORK ON THIS CASE. | 0.20 | $50.00 |
| 03/19/2024 | SSC | TELEPHONE CONFERENCE WITH WITNESS SEAN MERRICK REGARDING INFORMATION IN HIS DECLARATION AND PREPARATION OF REVISED DECLARATION. | 0.20 | $50.00 |
| 03/19/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT REGARDING DECLARATION TO BE SIGNED BY SEAN MERRICK. | 0.10 | $25.00 |
| 03/19/2024 | SSC | PREPARATION OF REVISIONS TO DECLARATION OF SEAN MERRICK. | 0.30 | $75.00 |
| 03/19/2024 | SSC | EXCHANGE E-MAILS WITH SEAN MERRICK REGARDING HIS DECLARATION. | 0.30 | $75.00 |
| 03/19/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING REVISED DECLARATION FOR SEAN MERRICK. | 0.30 | $75.00 |
| 03/20/2024 | SSC | ANALYZE MINUTE ORDER FROM THE COURT SETTING AN EVIDENTIARY HEARING FOR PLAINTIFFS' MOTION TO TERMINATING SANCTIONS. | 0.10 | $25.00 |
| 03/20/2024 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING EVIDENTIARY HEARING SET BY THE COURT. | 0.20 | $50.00 |
| 03/20/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT AND CLIENT'S PERSONAL COUNSEL REGARDING EVIDENTIARY HEARING SET BY THE COURT. | 0.30 | $75.00 |
| 03/21/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION FOR EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 03/21/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING EVIDENTIARY HEARING, POSSIBLE TESTIMONY TO BE ELICITED AND PREPARATION FOR SAME. | 0.40 | $100.00 |
| 03/21/2024 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING PREPARATION FOR EVIDENTIARY HEARING. | 0.20 | $50.00 |

| Date | Initials | Description of Services | Hours | Amount |
|------|----------|------------------------|-------|--------|
| 03/21/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT AND CLIENT'S PERSONAL COUNSEL REGARDING EXPERT'S ANALYSIS IN PREPARATION FOR EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 03/21/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING EVIDENTIARY HEARING SET BY THE COURT AND INDIVIDUALS WHO WILL TESTIFY. | 0.30 | $75.00 |
| 03/22/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT REGARDING UPCOMING EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 03/22/2024 | SSC | EXTENSIVE TELEPHONE CONFERENCE WITH CARRIER REGARDING STATUS OF THE CASE, UPCOMING EVIDENTIARY HEARING AND FURTHER CONFERENCE WITH CLIENT. | 0.70 | $175.00 |
| 03/22/2024 | SSC | TELEPHONE CONFERENCE WITH WITNESS SEAN MERRICK REGARDING HIS DECLARATION PREVIOUSLY SUBMITTED TO THE COURT. | 0.10 | $25.00 |
| 03/22/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING APPEARANCE AT EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 03/22/2024 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/22/2024 | SSC | ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT IN SUPPORT OF OUR OPPOSITION TO PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/22/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING HIS APPEARANCE AT EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 03/23/2024 | SSC | ANALYZE MULTIPLE E-MAILS FROM CLIENT REGARDING ALLEGATIONS CONTAINED IN PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 03/25/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING PREPARATION FOR EVIDENTIARY HEARING AND COMPLIANCE WITH PRELIMINARY INJUNCTION. | 0.30 | $75.00 |
| 03/25/2024 | SSC | EXCHANGE NUMEROUS E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION FOR EVIDENTIARY HEARING AND TESTIMONY TO BE PROVIDED AT SAME. | 0.70 | $175.00 |
| 03/25/2024 | SSC | ANALYZE INFORMATION FROM OUR EXPERT REGARDING RESPONSE TO PLAINTIFFS' ALLEGATIONS REGARDING TRANSFER OF CERTAIN DOMAINS TO PLAINTIFFS. | 0.30 | $75.00 |
| 03/25/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING WITNESSES TO TESTIFY AT EVIDENTIARY HEARING AND TRANSFER OF CERTAIN DOMAINS REQUESTED BY PLAINTIFFS. | 0.40 | $100.00 |
| 03/25/2024 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING TESTIMONY AT EVIDENTIARY HEARING. | 0.20 | $50.00 |

**TIMEKEEPER SUMMARY**

| Name | Title | Rate | Hours | Amount |
|---|---|---|---|---|
| Sandra Calin | Partner | $250.00 | 72.60 | $18,150.00 |
| Jeffrey S. Kramer | Partner | $250.00 | 0.30 | $75.00 |

**DISBURSEMENTS**

| Date | Description of Disbursements | Amount |
|---|---|---|
| 3/18/2024 | FOR APPEARANCE AT COURT IN LOS ANGELES FOR HEARING | $10.00 |
| 3/18/2024 | MILEAGE @ $0.67 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES FOR HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS (50 MILES ROUND TRIP). (50 @ $0.67) | $33.50 |
| 3/21/2024 | Parking for attendance at- court in Los Angeles | $10.00 |
| | Total Disbursements | $53.50 |

## Retainer and Trust Activity

| Date | Description | Deposits | Amounts Used |
|---|---|---|---|
| | Beginning Trust Balance | $0.00 | |
| /7/2024 | Retainer Deposit. [CK# WIRE] | $8,725.00 | ($8,725.00) |
| /7/2024 | Retainer Applied as Payment | $8,725.00 | ($8,725.00) |
| 31/2024 | Adjustment to Voucher # 55550176; court in Los Angeles | $10.00 | ($10.00) |
| | Ending Trust Balance | $0.00 | |

| | |
|---|---|
| Total Fees | $18,225.00 |
| Total Disbursements | $53.50 |
| **Total Current Charges** | **$18,278.50** |
| Previous Balance | $35,375.00 |
| *Less Retainer Applied* | *($8,725.00)* |
| **AMOUNT DUE AND OWING** *Please pay this amount* | $44,928.50 |

**Retainer Balance** $10.00

# KRAMER, DEBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

74770 Highway 111, Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
www.kdeklaw.com

---

Hiscox, Usa
,
Attention:  **RAJIV  BATRA**

**Date:**      April 11, 2024
**Our File No..** 101388  - L6604
**Invoice #:**      130579

RE:  Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
     Claim Number: 100.205.070A
     Your Insured: Aone Entertainment, Llc

**Balance Due**

**$44,928.50**

A supplemental final bill will be sent if additional costs are received.

Costs received after closing date will appear on subsequent bill

Please return this reimttance copy with your payment.

This file will be destroyed in 24 months from the date of this bill.

Tax I.D. Number 95-3931157

# KRAMER deBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

| | |
|---|---|
| **May 22, 2024** | |
| Client: | 101388 |
| Matter: | L6604 |
| Invoice #: | 130880 |
| Resp. Atty: | SSC |
| Page: | 1 |

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

For Professional Services Rendered Through April 30, 2024

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 4/1/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS APPEARANCE AT EVIDENTIARY HEARING. | 0.40 | $100.00 |
| 4/1/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING UPCOMING EVIDENTIARY HEARING AND TESTIMONY AT SAME. | 0.20 | $50.00 |
| 4/1/2024 | SSC | EXCHANGE E-MAILS WITH CARRIER AND CLIENT REGARDING ATTENDANCE BY OUR EXPERT AT EVIDENTIARY HEARING. | 0.50 | $125.00 |
| 4/1/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING HIS TESTIMONY AT EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 4/2/2024 | SSC | PREPARE FOR STATUS CONFERENCE WITH THE COURT REGARDING UPCOMING EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 4/2/2024 | SSC | ATTEND STATUS CONFERENCE IN COURT BY VIDEO CONFERENCE REGARDING UPCOMING EVIDENTIARY HEARING. | 0.50 | $125.00 |
| 4/2/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING UPCOMING EVIDENTIARY HEARING AND TESTIMONY AT SAME. | 0.20 | $50.00 |
| 4/2/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING CONFERENCE CALL WITH SEAN MERRICK FOR TRANSFER OF DOMAINS, AND POSSIBILITY OF SETTLEMENT DISCUSSIONS. | 0.20 | $50.00 |
| 4/2/2024 | SSC | EXCHANGE NUMEROUS E-MAILS WITH CLIENT AND SEAN MERRICK REGARDING TRANSFER OF DOMAINS. | 0.40 | $100.00 |
| 4/2/2024 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING STATUS CONFERENCE PRIOR TO EVIDENTIARY HEARING. | 0.10 | $25.00 |
| 4/3/2024 | SSC | ANALYZE MINUTE ORDER FROM THE COURT REGARDING AMENDED ORDER FOR EVIDENTIARY HEARING. | 0.10 | $25.00 |

May 22, 2024

| | |
|---|---|
| Client: | 101388 |
| Matter: | L6604 |
| Invoice #: | 130880 |
| Resp. Atty: | SSC |
| Page: | 2 |

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 4/3/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING COURT'S AMENDED ORDER REGARDING EVIDENTIARY HEARING. | 0.40 | $100.00 |
| 4/3/2024 | SSC | PREPARATION OF CORRESPONDENCE TO OUR EXPERT RICK WATTS REGARDING COURT'S AMENDED ORDER REGARDING EVIDENTIARY HEARING. | 0.10 | $25.00 |
| 4/3/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH PLAINTIFFS' EXPERT, PLAINTIFFS' COUNSEL AND SEAN MERRICK REGARDING TRANSFER OF CERTAIN DOMAINS. | 0.20 | $50.00 |
| 4/3/2024 | SSC | TELEPHONE CONFERENCE WITH SEAN MERRICK REGARDING TRANSFER OF CERTAIN DOMAINS. | 0.10 | $25.00 |
| 4/3/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH SEAN MERRICK REGARDING TRANSFER OF CERTAIN DOMAINS. | 0.30 | $75.00 |
| 4/3/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING TRANSFER OF CERTAIN DOMAINS. | 0.20 | $50.00 |
| 4/4/2024 | SSC | PREPARATION OF DECLARATION TO THE COURT REGARDING TRANSFER OF THE SUBJECT DOMAINS. | 0.60 | $150.00 |
| 4/4/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING UPCOMING EVIDENTIARY HEARING AND EVIDENCE TO BE PRESENTED AT SAME. | 0.40 | $100.00 |
| 4/4/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING EVIDENCE TO BE PRESENTED AT UPCOMING EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 4/4/2024 | SSC | ANALYZE DOCUMENTS FROM OUR EXPERT RICK WATTS REGARDING UPCOMING EVIDENTIARY HEARING. | 0.40 | $100.00 |
| 4/4/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH OUR EXPERT RICK WATTS AND CLIENT'S PERSONAL COUNSEL TO PREPARE FOR EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 1.20 | $300.00 |
| 4/5/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING TESTIMONY TO BE ELICITED FROM PLAINTIFFS' EXPERT AT EVIDENTIARY HEARING. | 0.40 | $100.00 |
| 4/8/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING UPCOMING EVIDENTIARY HEARING AND WITNESSES TO BE CALLED. | 0.30 | $75.00 |
| 4/8/2024 | SSC | DETAILED CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING EVIDENTIARY HEARING, HIS TESTIMONY AND EXAMINATION OF PLAINTIFFS' EXPERT. | 1.40 | $350.00 |
| 4/8/2024 | SSC | EXCHANGE E-MAILS WITH OUR CO-COUNSEL REGARDING UPCOMING EVIDENTIARY HEARING, EVIDENCE TO BE PRESENTED AND ADDITIONAL INFORMATION FROM OUR CLIENT. | 0.50 | $125.00 |
| 4/8/2024 | SSC | PREPARATION OF EXAMINATION OF PLAINTIFF'S EXPERT AT EVIDENTIARY HEARING. | 0.80 | $200.00 |
| 4/8/2024 | SSC | PREPARE FOR EVIDENTIARY HEARING IN COURT. | 1.00 | $250.00 |

May 22, 2024
Client:        101388
Matter:        L6604
Invoice #:     130880
Resp. Atty:    SSC
Page:          3

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 4/8/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING UPCOMING EVIDENTIARY HEARING. | 0.20 | $50.00 |
| 4/8/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFFS' COUNSEL REGARDING CONDUCT OF EVIDENTIARY HEARING. | 0.10 | $25.00 |
| 4/8/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL AND THE COURT REGARDING CONDUCT OF EVIDENTIARY HEARING. | 0.20 | $50.00 |
| 4/9/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 4/9/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING EVIDENTIARY HEARING AND EVIDENCE TO BE SUBMITTED. | 0.20 | $50.00 |
| 4/9/2024 | SSC | APPEAR IN COURT BY VIDEO CONFERENCE FOR EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 1.10 | $275.00 |
| 4/9/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT REGARDING EVIDENTIARY HEARING AND OUR THOUGHTS ON SAME. | 0.20 | $50.00 |
| 4/10/2024 | SSC | ANALYZE MINUTE ORDER FROM THE COURT REGARDING EVIDENTIARY HEARING AND TAKING THE MATTER UNDER SUBMISSION. | 0.10 | $25.00 |
| 4/17/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING TRANSCRIPT OF EVIDENTIARY HEARING. | 0.20 | $50.00 |
| 4/29/2024 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF RULING FOLLOWING EVIDENTIARY HEARING. | 0.30 | $75.00 |
| 4/30/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING RESULTS OF EVIDENTIARY HEARING. | 0.30 | $75.00 |

**Total Fees**                                                                    **$3,750.00**

## PERSON RECAP

| Person | | Level | Hours | Rate | Amount |
|--------|--|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 15.00 | $250.00 | $3,750.00 |

May 23, 2024
Client:        101388
Matter:        L6604
Invoice #:     130880
Resp. Atty:    SSC
Page:            4

| | |
|---|---|
| Total Services | $3,750.00 |
| Applicable Tax | $0.00 |
| Total Disbursements | $0.00 |
| Total Current Charges | $3,750.00 |
| Previous Balance | $44,928.50 |
| Current Interest | $0.00 |
| Less Payments | ($17,241.00) |
| Less Retainer Applied | ($0.00) |
| Less Trust Applied | ($0.00) |
| Less Credits/Write Offs | ($3,025.00) |
| **PAY THIS AMOUNT** | $28,412.50 |

| | |
|---|---|
| **Trust Balance** | $0.00 |
| **Retainer Balance** | $10.00 |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

00 - Standard New

Hiscox, Usa

**Attention: RAJIV BATRA**

**August 19, 2024**
Client: 101388
Matter: L6604
Invoice #: 132487
Resp. Atty: SSC
Page: 1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through July 31, 2024

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 5/9/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING DECISION FROM THE COURT ON SUBMITTED EVIDENTIARY HEARING, AND STATUS OF DISCOVERY. | 0.30 | $75.00 |
| 5/9/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING COURT'S DECISION ON SUBMITTED EVIDENTIARY HEARING. | 0.20 | $50.00 |
| 5/29/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING STATUS OF RULING ON MOTION FOR TERMINATION SANCTIONS. | 0.20 | $50.00 |
| 6/4/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF THE CASE. | 0.30 | $75.00 |
| 6/6/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF THE CASE. | 0.30 | $75.00 |
| 7/1/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND OUR EXPERT REGARDING SCOPE OF EXPERT'S WORK. | 0.20 | $50.00 |
| 7/8/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CONTINUING WITH DISCOVERY PENDING COURT'S RULING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 7/9/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY. | 0.20 | $50.00 |
| 7/9/2024 | SSC | PREPARATION OF CORRESPONDENCE TO CARRIER REGARDING STATUS OF THE CASE, STATUS OF COURT'S RULING ON MOTION FOR TERMINATING SANCTIONS, AND RESUMPTION OF DISCOVERY. | 0.30 | $75.00 |
| 7/12/2024 | SSC | ANALYZE OF FILE REGARDING STATUS OF DISCOVERY PROPOUNDED TO PLAINTIFF. | 0.40 | $100.00 |

August 15, 2024
Client:        101388
Matter:        L6604
Invoice #:     132487
Resp. Atty:    SSC
Page:               2

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 7/12/2024 | SSC | PREPARATION OF CORRESPONDENCE TO PLAINTIFF'S COUNSEL REGARDING DISCOVERY PREVIOUSLY PROPOUNDED, REQUEST FOR FURTHER RESPONSES AND MEET AND CONFER REGARDING SAME. | 0.50 | $125.00 |
| 7/12/2024 | SSC | TELEPHONE CALL FROM PLAINTIFF'S COUNSEL REGARDING STATUS OF DISCOVERY, RULING ON MOTION FOR TERMINATING SANCTIONS AND STIPULATION TO CONTINUE TRIAL. | 0.20 | $50.00 |
| 7/12/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY AND STIPULATION TO CONTINUE TRIAL. | 0.40 | $100.00 |
| 7/12/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION TO CONTINUE TRIAL. | 0.30 | $75.00 |
| 7/12/2024 | SSC | ANALYZE PROPOSED STIPULATION TO CONTINUE TRIAL. | 0.10 | $25.00 |
| 7/17/2024 | SSC | ANALYZE DETAILED FINDINGS OF FACT AND CONCLUSIONS OF LAW FROM THE COURT REGARDING PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS. | 0.30 | $75.00 |
| 7/17/2024 | SSC | PREPARATION OF CORRESPONDENCE TO CARRIER REGARDING COURT'S RULING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS, STATUS OF THE CASE, DISCOVERY TO BE COMPLETED AND HANDLING OF THE CASE GOING FORWARD. | 0.30 | $75.00 |
| 7/17/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING COURT'S RULING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS, DISCOVERY TO BE COMPLETED AND STRATEGY GOING FORWARD. | 0.40 | $100.00 |
| 7/17/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING COURT'S RULING ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. | 0.20 | $50.00 |
| 7/17/2024 | SSC | ANALYZE COURT'S ORDER REGARDING STIPULATION TO CONTINUE TRIAL DATE AND RELATED DATES. | 0.10 | $25.00 |
| 7/17/2024 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING CONTINUANCE OF THE TRIAL DATE. | 0.20 | $50.00 |
| 7/17/2024 | SSC | ANALYZE INTERROGATORIES PROPOUNDED BY PLAINTIFFS TO OUR CLIENTS DARRICK ANGELONE, AONE CREATIVE AND ON CHAIN INNOVATIONS. | 0.40 | $100.00 |
| 7/17/2024 | SSC | ANALYZE REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS TO OUR CLIENTS DARRICK ANGELONE, AONE CREATIVE AND ON CHAIN INNOVATIONS. | 0.50 | $125.00 |
| 7/17/2024 | SSC | PREPARATION OF CORRESPONDENCE TO CLIENT REGARDING DISCOVERY SERVED BY PLAINTIFFS AND INFORMATION NEEDED TO PREPARE RESPONSES. | 0.30 | $75.00 |
| 7/19/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF WRITTEN DISCOVERY AND DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |

August 19, 2024

| | |
|---|---|
| Client: | 101388 |
| Matter: | L6604 |
| Invoice #: | 132487 |
| Resp. Atty: | SSC |
| Page: | 3 |

## SERVICES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 7/22/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY AND PREPARATION FOR TRIAL. | 0.30 | $75.00 |
| 7/22/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY, ADDITIONAL DISCOVERY AND DEPOSITIONS TO BE CONDUCTED AND PREPARATION FOR TRIAL. | 0.50 | $125.00 |
| 7/22/2024 | SSC | ANALYZE REQUEST FOR DISMISSAL OF CROSS-COMPLAINT BY SOUTHWEST DOOR & FRAME. | 0.10 | $25.00 |
| 7/23/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING FURTHER HANDLING OF THE CASE, DISCOVERY TO BE COMPLETED AND LITIGATION COSTS THROUGH TRIAL. | 0.30 | $75.00 |
| 7/29/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING SUBPOENAS OF DOCUMENTS AND DISCOVERY TO BE COMPLETED. | 0.30 | $75.00 |
| 7/31/2024 | SSC | EXCHANGE E-MAILS WITH OUR LIABILITY EXPERT REGARDING STATUS OF THE CASE. | 0.20 | $50.00 |
| 7/31/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING DISCOVERY RESPONSES, EXTENSION THERETO AND FURTHER RESPONSES REQUIRED. | 0.30 | $75.00 |
| | | **Total Fees** | | **$2,300.00** |

## PERSON RECAP

| Person | | Level | Hours | Rate | Amount |
|---|---|---|---|---|---|
| SSC | Sandra Calin | PARTNER | 9.20 | $250.00 | $2,300.00 |

| | | |
|---|---|---|
| Total Services | $2,300.00 | |
| Applicable Tax | $0.00 | |
| Total Disbursements | $0.00 | |
| Total Current Charges | | $2,300.00 |
| Previous Balance | | $28,412.50 |
| Current Interest | | $0.00 |
| *Less Payments* | | *($2,975.00)* |
| *Less Retainer Applied* | | *($0.00)* |
| *Less Trust Applied* | | *($0.00)* |
| *Less Credits* | | *($1,037.50)* |
| **PAY THIS AMOUNT** | | **$26,700.00** |

August 19, 2024

Client:         101388
Matter:         L6604
Invoice #:      132487
Resp. Atty:     SSC
Page:           4

Trust Balance                                          $0.00
Retainer Balance                                      $10.00


*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

KDK Invoice

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**September 24, 2024**
Matter:      L6604
Invoice #:   132706
Page:            1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
    Claim Number: 100.205.070A
    Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through August 31, 2024

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 8/1/2024 | SSC | EXCHANGE E-MAILS WITH OUR LIABILITY EXPERT RICK WATTS AND CLIENT'S PERSONAL COUNSEL REGARDING POTENTIAL TRIAL PREPARATION. | 0.30 | $75.00 |
| 8/1/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STATUS OF DISCOVERY AND EXTENSIONS TO RESPOND TO SAME. | 0.30 | $75.00 |
| 8/7/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY. | 0.30 | $75.00 |
| 8/7/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING STATUS OF DISCOVERY, DOCUMENTS TO BE PRODUCED AND EXTENSION TO RESPOND TO DISCOVERY. | 0.30 | $75.00 |
| 8/8/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING OUTSTANDING DISCOVERY, EXTENSION TO PROVIDE RESPONSES, DEPOSITIONS TO BE TAKEN AND POSSIBLE MEDIATION. | 0.30 | $75.00 |
| 8/12/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY RESPONSES BY PLAINTIFF, AND PREPARATION OF OUR RESPONSES TO DISCOVERY PROPOUNDED BY PLAINTIFF. | 0.40 | $100.00 |
| 8/12/2024 | SSC | ANALYZE CLIENT'S EXTENSIVE DRAFT RESPONSES TO INTERROGATORIES PROPOUNDED BY PLAINTIFF. | 1.80 | $450.00 |
| 8/14/2024 | SSC | ANALYZE EXTENSIVE DRAFT RESPONSE BY CLIENT TO REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFF. | 2.10 | $525.00 |
| 8/15/2024 | SJSK | CONFERENCE WITH COUNSEL REGARDING FACT THAT TRIAL HAS BEEN CONTINUED, PLAINTIFF'S MOTION BEING DENIED AND DISCOVERY THAT NEEDS TO BE COMPLETED TO GET CASE GET RESOLVED. | 0.30 | $75.00 |

September 24, 2024
Matter:          L6604
Invoice #:       132706
Page:               2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 8/15/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF RESPONSES TO DISCOVERY PROPOUNDED BY PLAINTIFFS. | 0.30 | $75.00 |
| 8/15/2024 | SRVD | ASSIST CLIENT IN ORGANIZING VOLUMINOUS (55,000 ITEMS) RECORDS PRODUCTION DIRECTORY. | 4.20 | $525.00 |
| 8/16/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO DISCOVERY. | 0.30 | $75.00 |
| 8/16/2024 | SSC | EXCHANGE DETAILED E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS AND DOCUMENTS TO BE PRODUCED. | 0.50 | $125.00 |
| 8/16/2024 | SRVD | ASSIST CLIENT ORGANIZING AND UPLOADING DOCUMENTS FOR LOCAL FOLDER FOR PRODUCTION. | 2.80 | $350.00 |
| 8/19/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF RESPONSES TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 0.40 | $100.00 |
| 8/20/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DAMAGES CLAIMED AND EVIDENCE OF DAMAGES TO BE PRESENTED AT TRIAL. | 0.40 | $100.00 |
| 8/27/2024 | SRVD | REVIEW VOLUMINOUS RECORDS (OVER 55,000 ITEMS) UPLOADED BY CLIENT WITH ATTEMPT TO DESIGNATE AND ORGANIZE WHICH DOCUMENTS/ITEMS HAVE TO BE PUT IN PROPER FORMAT FOR PRODUCTION. | 6.10 | $762.50 |
| 8/28/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF THE CASE AND ADDITIONAL WORK BY OUR EXPERT. | 0.30 | $75.00 |
| | | **Total Fees** | | **$3,712.50** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|------|---------------------|-----------|-------|---------|-----------|
| SSC | Sandra Calin | PARTNER | 8.00 | $250.00 | $2,000.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.30 | $250.00 | $75.00 |
| SRVD | Ronald Van Deusen | PARALEGAL | 13.10 | $125.00 | $1,637.50 |

| | | |
|---|---|---|
| Total Fees | $3,712.50 | |
| Total Cost Advanced | $0.00 | |
| *Less Retainer Applied* | | *($0.00)* |
| **PAY THIS AMOUNT** | | **$3,712.50** |

September 24, 2024

Matter:      L6604
Invoice #:   132706
Page:        3

---

| | |
|---|---|
| **Trust Balance** | **$0.00** |
| **Retainer Balance** | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**October 16, 2024**
Matter:        L6604
Invoice #:     132804
Page:              1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

COPY

For Professional Services Rendered Through September 30, 2024

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 9/3/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FINALIZATION OF RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 9/5/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF THE CASE, DISCOVERY RESPONSE BY PLAINTIFF AND DOCUMENTS TO BE PRODUCED IN OUR RESPONSES TO DISCOVERY. | 0.40 | $100.00 |
| 9/6/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING STATUS OF RESPONSES TO WRITTEN DISCOVERY AND EXTENSIONS FOR SAME. | 0.30 | $75.00 |
| 9/13/2024 | SSC | ANALYZE REQUEST FOR APPROVAL OF SUBSTITUTION OF COUNSEL FOR PLAINTIFFS. | 0.10 | $25.00 |
| 9/13/2024 | SSC | ANALYZE REQUEST FOR APPROVAL OF SUBSTITUTION OF COUNSEL FOR THIRD PARTY DEFENDANT ROXANNE TAYLOR. | 0.10 | $25.00 |
| 9/13/2024 | SSC | ANALYZE ORDER BY JUDGE REGARDING REQUESTS FOR SUBSTITUTION OF COUNSEL. | 0.20 | $50.00 |
| 9/13/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING REQUEST FOR SUBSTITUTION OF COUNSEL AND INFORMATION REGARDING NEW COUNSEL SEEKING TO SUBSTITUTE INTO THE CASE. | 0.60 | $150.00 |
| 9/13/2024 | SSC | ANALYZE FILE REGARDING PLEADINGS AND DECLARATIONS PREVIOUSLY FILED BY COUNSEL SEEKING TO SUBSTITUTE INTO THE CASE. | 0.50 | $125.00 |
| 9/13/2024 | SSC | LEGAL RESEARCH REGARDING PROPRIETY OF COUNSEL WHO MAY BE CALLED AS A WITNESS APPEARING AS COUNSEL OF RECORD IN THE CASE. | 0.80 | $200.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 9/13/2024 | SSC | PREPARATION OF DECLARATION REGARDING PROPOSED SUBSTITUTIONS OF ATTORNEY. | 1.10 | $275.00 |
| 9/13/2024 | SSC | ANALYZE AMENDED REQUESTS BY PLAINTIFF FOR SUBSTITUTION OF COUNSEL. | 0.20 | $50.00 |
| 9/13/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING DECLARATION REGARDING REQUEST FOR SUBSTITUTION OF COUNSEL. | 0.20 | $50.00 |
| 9/13/2024 | SSC | ANALYZE NOTICE OF SUBPOENAS BY CLIENT'S PERSONAL COUNSEL, AND MULTIPLE SUBPOENAS SERVED. | 0.50 | $125.00 |
| 9/16/2024 | SSC | TELEPHONE CONFERENCE WITH COUNSEL SEEKING TO SUBSTITUTE INTO THE CASE FOR PLAINTIFF REGARDING STATUS OF DISCOVERY AND DEPOSITIONS OF THE PARTIES. | 0.20 | $50.00 |
| 9/16/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH COUNSEL ATTEMPTING TO SUBSTITUTE INTO THE CASE FOR PLAINTIFFS REGARDING DISCOVERY TO BE COMPLETED AND DEPOSITIONS OF THE PARTIES. | 0.40 | $100.00 |
| 9/17/2024 | SJSK | CONFERENCE WITH COUNSEL REGARDING ISSUES POSED BY NEW ATTORNEY TRYING TO SUBSTITUTE INTO MATTER AND POSSIBILITY OF ATTORNEY-CLIENT PRIVILEGES BEING MADE EVEN THOUGH POTENTIAL NEW ATTORNEY IS A WITNESS TO EVENTS THAT TRANSPIRED AT TIME OF INCIDENT. | 0.20 | $50.00 |
| 9/17/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING SUBSTITUTION OF ATTORNEY FOR PLAINTIFFS, ISSUES WITH SAME AND ADDITIONAL BRIEFING TO SUBMIT TO THE COURT. | 0.40 | $100.00 |
| 9/17/2024 | SSC | ANALYZE ORDER FROM THE COURT REGARDING HEARING CONCERNING PROPOSED SUBSTITUTION OF ATTORNEY FOR PLAINTIFFS. | 0.10 | $25.00 |
| 9/17/2024 | SSC | ANALYZE DETAILED INFORMATION FROM CLIENT REGARDING ISSUES TO BE RAISED AT HEARING CONCERNING SUBSTITUTION OF ATTORNEY FOR PLAINTIFFS. | 0.40 | $100.00 |
| 9/17/2024 | SSC | ANALYZE DETAILED MEET AND CONFER CORRESPONDENCE FROM CLIENT'S PERSONAL COUNSEL TO PLAINTIFF'S COUNSEL REGARDING SUBPOENAS PREVIOUSLY SERVED AND COMPLIANCE WITH COURT ORDER REGARDING STAYED SUBPOENAS. | 0.20 | $50.00 |
| 9/18/2024 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING STATUS OF THE CASE AND ADDITIONAL WORK TO BE DONE AT THIS TIME. | 0.40 | $100.00 |
| 9/18/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ISSUES CONCERNING SUBSTITUTION OF ATTORNEYS FOR PLAINTIFFS AND MEET AND CONFER REGARDING SUBPOENAS FOR DOCUMENTS. | 0.30 | $75.00 |
| 9/18/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING HEARING WITH THE COURT CONCERNING SUBSTITUTION OF ATTORNEY FOR PLAINTIFFS AND PREPARATION OF FURTHER BRIEF REGARDING SAME. | 0.40 | $100.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 9/18/2024 | SSC | ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT REGARDING LAW FIRM ATTEMPTING TO SUBSTITUTE INTO THE CASE. | 0.30 | $75.00 |
| 9/18/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING DRAFT MEMORANDUM OF POINTS AND AUTHORITIES TO SUBMIT TO COURT REGARDING REQUEST FOR SUBSTITUTION OF COUNSEL. | 0.40 | $100.00 |
| 9/19/2024 | SSC | ANALYZE ADDITIONAL SUBPOENAS FOR RECORDS. | 0.30 | $75.00 |
| 9/19/2024 | SSC | ANALYZE BRIEF PREPARED BY CLIENT'S PERSONAL COUNSEL REGARDING REQUEST FOR SUBSTITUTION OF ATTORNEY. | 0.30 | $75.00 |
| 9/20/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING HEARING ON REQUEST FOR SUBSTITUTION OF ATTORNEY. | 0.30 | $75.00 |
| 9/20/2024 | SSC | ANALYZE OPPOSITION BRIEF BY PLAINTIFFS IN RESPONSE TO OUR BRIEF CONCERNING REQUEST FOR SUBSTITUTION OF ATTORNEY. | 0.40 | $100.00 |
| 9/23/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING HEARING PM REQUEST FOR SUBSTITUTION OF COUNSEL AND PREPARATION FOR SAME. | 0.30 | $75.00 |
| 9/23/2024 | SSC | APPEAR IN COURT BY VIDEO CONFERENCE FOR HEARING REGARDING REQUEST FOR SUBSTITUTION OF COUNSEL FOR PLAINTIFFS. | 0.40 | $100.00 |
| 9/23/2024 | SSC | PREPARATION OF CORRESPONDENCE TO CARRIER REGARDING HEARING ON PLAINTIFF'S REQUEST TO SUBSTITUTE COUNSEL, STATUS OF DISCOVERY, CONTINUANCE OF TRIAL DATE AND FURTHER HANDLING OF THE CASE. | 0.80 | $200.00 |
| 9/24/2024 | SSC | ANALYZE COURT ORDER APPROVING SUBSTITUTION OF COUNSEL FOR PLAINTIFFS. | 0.10 | $25.00 |
| 9/26/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS SERVED FOR FINANCIAL RECORDS AND MEET AND CONFER REGARDING SAME. | 0.40 | $100.00 |
| 9/27/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING EXTENSIONS TO RESPOND TO SUBPOENAS FOR DOCUMENTS AND MEET AND CONFER REGARDING SAME. | 0.40 | $100.00 |
| 9/30/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING DISCOVERY ISSUES, SUBPOENAS SERVED AND RESPONSES TO WRITTEN DISCOVERY. | 0.50 | $125.00 |
| 9/30/2024 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING HEARING ON REQUEST FOR PLAINTIFFS' SUBSTITUTION OF ATTORNEY. | 0.10 | $25.00 |
| 9/30/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING FINALIZATION OF DISCOVERY RESPONSES. | 0.30 | $75.00 |

**Total Fees**                                                          **$3,400.00**

October 16, 2024

Matter:       L6604
Invoice #:    132804
Page:            4

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|---|---|---|---|
| SSC | Sandra Calin | PARTNER | 13.40 | $250.00 | $3,350.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.20 | $250.00 | $50.00 |

| | | |
|---|---|---|
| Total Fees | $3,400.00 | |
| Total Cost Advanced | $0.00 | |
| Less Retainer Applied | | ($0.00) |
| **PAY THIS AMOUNT** | | **$3,400.00** |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

KDK Invoice

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

Attention: RAJIV BATRA

November 20, 2024
Matter:      L6604
Invoice #:   133025
Page:           1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
    Claim Number: 100.205.070A
    Your Insured: Aone Entertainment, Llc

COPY

For Professional Services Rendered Through October 31, 2024

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 10/2/2024 | SJSK | REVIEW FILE REGARDING STATUS OF MOTION FOR TERMINATING SANCTIONS, SUBSTITUTION OF NEW COUNSEL AND POTENTIAL OF NEW COUNSEL ASSERTING ATTORNEY CLIENT PRIVILEGE TO THWART DISCOVERY, STATUS OF DISCOVERY DUE TO LENGTH OF TIME TO HEAR MOTIONS AND NEW TRIAL DATE. | 0.30 | $75.00 |
| 10/2/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STATUS OF SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 10/3/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS FOR FINANCIAL RECORDS AND SCOPE OF SAME. | 0.40 | $100.00 |
| 10/4/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS FOR FINANCIAL RECORDS AND RESPONSES TO SAME. | 0.40 | $100.00 |
| 10/4/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING SUBPOENA FOR FINANCIAL RECORDS AND STATUS OF RESPONSES TO WRITTEN DISCOVERY. | 0.20 | $50.00 |
| 10/7/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING TAKING OF DEPOSITIONS OF THE PARTIES AND ORDER OF THE DEPOSITIONS. | 0.30 | $75.00 |
| 10/9/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING STATUS OF SUBPOENAS OF FINANCIAL RECORDS AND OBJECTIONS THERETO. | 0.40 | $100.00 |
| 10/10/2024 | SSC | ANALYZE RESPONSES TO SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 10/11/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING STATUS OF SUBPOENAS FOR FINANCIAL RECORDS AND OBJECTIONS THERETO. | 0.50 | $125.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 10/11/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING RESPONSES TO SUBPOENAS FOR FINANCIAL RECORDS. | 0.20 | $50.00 |
| 10/14/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING RESPONSES TO SUBPOENAS FOR FINANCIAL RECORDS. | 0.20 | $50.00 |
| 10/16/2024 | SSC | ANALYZE REQUEST TO THE COURT FOR AN INFORMAL DISCOVERY CONFERENCE REGARDING SUBPOENAS FOR FINANCIAL RECORDS. | 0.10 | $25.00 |
| 10/16/2024 | SSC | EXCHANGE E-MAILS WITH COURT AND ALL COUNSEL REGARDING REQUEST FOR INFORMAL DISCOVERY CONFERENCE. | 0.30 | $75.00 |
| 10/16/2024 | SSC | EXCHANGE E-MAILS WITH OUR CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF RESPONSES TO DISCOVERY PROPOUNDED TO CLIENT. | 0.30 | $75.00 |
| 10/17/2024 | SSC | EXCHANGE E-MAILS WITH COURT AND ALL COUNSEL REGARDING REQUEST FOR INDEPENDENT DENTAL EXAMINATION CONCERNING SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 10/17/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS FOR FINANCIAL RECORDS AND ISSUES TO BE PRESENTED TO THE COURT IN THE INFORMAL DISCOVERY CONFERENCE. | 0.40 | $100.00 |
| 10/17/2024 | SSC | ANALYZE DRAFTS OF AMENDED SUBPOENAS FOR FINANCIAL RECORDS FROM NUMEROUS ENTITIES (X7). | 0.40 | $100.00 |
| 10/18/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING REQUEST FOR INFORMAL DISCOVERY CONFERENCE CONCERNING SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 10/18/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.10 | $25.00 |
| 10/18/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING EXTENSION TO RESPOND TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 10/18/2024 | SSC | ANALYZE NOTICE FROM THE COURT REGARDING INFORMAL DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 10/22/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING JOINT REPORT TO THE COURT FOR THE INFORMAL DISCOVERY CONFERENCE. | 0.50 | $125.00 |
| 10/22/2024 | SSC | ANALYZE PROPOSED JOINT REPORT TO THE COURT REGARDING ISSUES RAISED IN INFORMAL DISCOVERY CONFERENCE. | 0.20 | $50.00 |
| 10/23/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING UPCOMING INFORMAL DISCOVERY CONFERENCE AND ISSUES TO BE RAISED AT CONFERENCE. | 0.20 | $50.00 |

November 20, 2024
Matter:      L6604
Invoice #:   133025
Page:            3

---

**ATTORNEY FEES**

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 10/23/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 10/23/2024 | SSC | ANALYZE REVISED JOINT REPORT TO THE COURT FOR INFORMAL DISCOVERY CONFERENCE. | 0.20 | $50.00 |
| 10/23/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING REVISED JOINT REPORT TO THE COURT FOR INFORMAL DISCOVERY CONFERENCE AND ADDITIONAL REVISIONS THERETO. | 0.40 | $100.00 |
| 10/23/2024 | SSC | ANALYZE FINAL JOINT REPORT FILED WITH THE COURT FOR INFORMAL DISCOVERY CONFERENCE. | 0.20 | $50.00 |
| 10/24/2024 | SSC | BEGIN PREPARATION OF CLIENT'S RESPONSES TO EXTENSIVE SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF. | 3.60 | $900.00 |
| 10/25/2024 | SSC | PARTICIPATE IN COURT HEARING BY VIDEO CONFERENCE FOR INFORMAL DISCOVERY CONFERENCE CONCERNING SUBPOENAS OF FINANCIAL RECORDS. | 0.30 | $75.00 |
| 10/25/2024 | SSC | ANALYZE COURT'S MINUTES REGARDING INFORMAL DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 10/25/2024 | SSC | CONTINUED PREPARATION OF RESPONSES TO PLAINTIFF'S EXTENSIVE SPECIAL INTERROGATORIES. | 2.80 | $700.00 |
| 10/28/2024 | SSC | CONTINUED PREPARATION OF RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFFS. | 2.90 | $725.00 |
| 10/28/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF AND NEED FOR ADDITIONAL INFORMATION. | 0.30 | $75.00 |
| 10/29/2024 | SSC | ANALYZE ADDITIONAL INFORMATION FROM CLIENT TO COMPLETE RESPONSE TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFFS. | 0.30 | $75.00 |
| 10/29/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT REGARDING PREPARATION OF FINAL RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFFS. | 0.30 | $75.00 |
| 10/29/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING FINALIZATION OF DISCOVERY RESPONSES. | 0.30 | $75.00 |
| 10/29/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING COURT-ORDERED MEET AND CONFER CONCERNING SUBPOENAS FOR FINANCIAL RECORDS. | 0.20 | $50.00 |
| 10/29/2024 | SSC | ANALYZE ADDITIONAL INFORMATION FROM CLIENT TO COMPLETE RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFFS. | 0.30 | $75.00 |
| 10/30/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING FINALIZATION OF RESPONSES TO DISCOVERY PROPOUNDED BY PLAINTIFFS. | 0.10 | $25.00 |
| 10/30/2024 | SSC | PREPARATION OF RESPONSES TO EXTENSIVE REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 3.60 | $900.00 |

November 20, 2024
Matter:        L6604
Invoice #:     133025
Page:          4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 10/30/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 0.30 | $75.00 |
| 10/31/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT REPORT TO COURT REGARDING MEET AND CONFER CONCERNING SUBPOENAS OF FINANCIAL RECORDS. | 0.30 | $75.00 |
| 10/31/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING JOINT REPORT TO COURT CONCERNING SUBPOENAS OF FINANCIAL RECORDS. | 0.20 | $50.00 |
| 10/31/2024 | SSC | ANALYZE PROPOSED STIPULATION TO CONTINUE DISCOVERY CUT-OFF DATES. | 0.20 | $50.00 |
| 10/31/2024 | SSC | ANALYZE ADDITIONAL INFORMATION FROM CLIENT IN PREPARATION OF FINAL RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF. | 0.30 | $75.00 |
| 10/31/2024 | SRVD | REVIEW PRODUCTION ITEMS AND PREPARE FOR FINALIZATION OF REQUEST FOR DOCUMENT PRODUCTION PLEADING. | 1.50 | $187.50 |
| | | **Total Fees** | | **$6,312.50** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|------|------|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 24.20 | $250.00 | $6,050.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.30 | $250.00 | $75.00 |
| SRVD | Ronald Van Deusen | PARALEGAL | 1.50 | $125.00 | $187.50 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 9/24/2024 | QUANDARY PEAK RESEARCH- INVESTIGATOR FEES - INVOICE #-25564 - DOMAIN TOOLS; FORENSIC TOOLS; DISCUSSION WITH COUNSEL | $932.40 |
| | Total Costs Advanced | $932.40 |

| | | |
|---|---|---|
| Total Fees | $6,312.50 | |
| Total Cost Advanced | $932.40 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$7,244.90** |

| | |
|---|---|
| **Trust Balance** | $0.00 |
| **Retainer Balance** | $10.00 |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

KDK Invoice

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**December 09, 2024**
Matter:      L6604
Invoice #:    133175
Page:             1

RE:  Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through November 30, 2024

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 11/1/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF FINALIZATION OF RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFF. | 0.50 | $125.00 |
| 11/1/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO DISCOVERY. | 0.10 | $25.00 |
| 11/1/2024 | SSC | ANALYZE DRAFT OF RESPONSES FROM CLIENT'S PERSONAL COUNSEL TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF. | 0.60 | $150.00 |
| 11/1/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO DISCOVERY. | 0.20 | $50.00 |
| 11/1/2024 | SSC | ANALYZE OPERATING AGREEMENTS PRODUCED BY PLAINTIFF PURSUANT TO COURT ORDER. | 0.40 | $100.00 |
| 11/1/2024 | SSC | ANALYZE COURT ORDER GRANTING STIPULATION TO CONTINUE DISCOVERY CUTOFFS. | 0.20 | $50.00 |
| 11/4/2024 | SSC | ANALYZE ADDITIONAL INFORMATION FROM CLIENT FOR FURTHER PREPARATION OF RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF. | 0.40 | $100.00 |
| 11/4/2024 | SSC | FURTHER PREPARATION OF RESPONSES TO EXTENSIVE REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 1.70 | $425.00 |
| 11/5/2024 | SSC | EXCHANGE MULTIPLE EXTENSIVE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S DISCOVERY RESPONSES AND ADDITIONAL INFORMATION NEEDED TO FINALIZE SAME. | 0.60 | $150.00 |

December 09, 2024

Matter:      L6604
Invoice #:   133175
Page:             2

_____

**ATTORNEY FEES**

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 11/5/2024 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING FINAL PREPARATION OF RESPONSES BY CLIENT TO SPECIAL INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 0.40 | $100.00 |
| 11/5/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FINALIZATION OF RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.50 | $125.00 |
| 11/5/2024 | SSC | ANALYZE AMENDED RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF PREPARED BY CLIENT'S PERSONAL COUNSEL. | 0.90 | $225.00 |
| 11/5/2024 | SSC | ANALYZE AMENDED RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFF PREPARED BY CLIENT'S PERSONAL COUNSEL. | 0.70 | $175.00 |
| 11/5/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING SERVICE OF DISCOVERY RESPONSES. | 0.30 | $75.00 |
| 11/6/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FINALIZATION OF RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR PRODUCTION OR DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 0.60 | $150.00 |
| 11/6/2024 | SSC | FINAL PREPARATION OF RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFFS. | 1.30 | $325.00 |
| 11/6/2024 | SSC | FINAL PREPARATION OF RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 1.20 | $300.00 |
| 11/6/2024 | SRVD | REVISE RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS ADDING APPROPRIATE LINKS TO DOCUMENTS BEING PRODUCED. | 2.60 | $325.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY DEON TAYLOR TO OUR REQUEST FOR ADMISSIONS. | 0.60 | $150.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY ROXANNE TAYLOR TO OUR REQUEST FOR ADMISSIONS. | 0.70 | $175.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY HYPER ENGINE LLC TO OUR REQUEST FOR ADMISSIONS. | 0.80 | $200.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY HIDDEN EMPIRE HOLDINGS TO OUR REQUEST FOR ADMISSIONS. | 0.40 | $100.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY HIDDEN EMPIRE HOLDINGS TO SPECIAL INTERROGATORIES. | 0.50 | $125.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY HYPER ENGINE LLC TO SPECIAL INTERROGATORIES. | 0.40 | $100.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY DEON TAYLOR TO SPECIAL INTERROGATORIES. | 0.40 | $100.00 |
| 11/7/2024 | SSC | PRELIMINARY ANALYSIS OF RESPONSES BY DEON TAYLOR TO OUR SPECIAL INTERROGATORIES. | 0.40 | $100.00 |

---

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 11/7/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' DISCOVERY RESPONSES AND DEFICIENCIES IN SAME. | 0.50 | $125.00 |
| 11/7/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |
| 11/8/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PROPOUNDING REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS. | 0.30 | $75.00 |
| 11/8/2024 | SSC | ANALYZE PROPOSED REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS PREPARED BY CLIENT. | 0.30 | $75.00 |
| 11/8/2024 | SSC | ANALYZE EXTENSIVE CORRESPONDENCE FROM CLIENT REGARDING PLAINTIFFS' RESPONSES TO SPECIAL INTERROGATORIES, THEIR OBJECTIONS AND INADEQUACY OF THE RESPONSES. | 0.70 | $175.00 |
| 11/12/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' RESPONSES TO OUR DISCOVERY AND PREPARATION OF MEET AND CONFER LETTER REGARDING SAME. | 0.30 | $75.00 |
| 11/12/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE FROM CLIENT REGARDING HIS ANALYSIS OF DEFICIENCIES IN PLAINTIFFS' RESPONSES TO OUR SPECIAL INTERROGATORIES. | 0.60 | $150.00 |
| 11/13/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING TAKING OF DEPOSITION OF OUR CLIENT AND PRIORITY OF DEPOSITIONS. | 0.30 | $75.00 |
| 11/13/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFF'S DISCOVERY RESPONSES, ADEQUACY OF SAME AND PREPARATION OF A MEET AND CONFER LETTER REQUESTING FURTHER RESPONSES. | 0.50 | $125.00 |
| 11/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE FROM CLIENT REGARDING HIS ANALYSIS OF THE RESPONSES TO OUR SPECIAL INTERROGATORIES BY ROXANNE TAYLOR. | 0.50 | $125.00 |
| 11/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE FROM CLIENT REGARDING HIS ANALYSIS OF THE RESPONSES TO OUR SPECIAL INTERROGATORIES BY HIDDEN EMPIRE. | 0.40 | $100.00 |
| 11/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE FROM CLIENT REGARDING HIS ANALYSIS OF THE RESPONSES TO OUR SPECIAL INTERROGATORIES BY HYPER ENGINE. | 0.60 | $150.00 |
| 11/14/2024 | SSC | EXCHANGE E-MAILS WITH ALL PARTIES REGARDING DEPOSITIONS TO BE TAKEN AND PRIORITY OF DEPOSITIONS. | 0.30 | $75.00 |
| 11/14/2024 | SIS | DRAFT A MEET AND CONFER LETTER TO DEON TAYLOR'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO INTERROGATORIES PROPOUNDED ON HIM. | 2.40 | $564.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 11/15/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S ANALYSIS OF RESPONSES BY PLAINTIFFS TO OUR REQUEST FOR ADMISSIONS. | 0.40 | $100.00 |
| 11/15/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING TAKING OF DEPOSITIONS OF THE PARTIES AND PRIORITY FOR SAME. | 0.30 | $75.00 |
| 11/15/2024 | SSC | ANALYZE EXTENSIVE CORRESPONDENCE FROM CLIENT REGARDING PLAINTIFFS' DEFICIENCIES IN RESPONSES TO REQUEST FOR ADMISSIONS. | 0.70 | $175.00 |
| 11/15/2024 | SIS | DRAFT A MEET AND CONFER LETTER TO HIDDEN EMPIRE HOLDINGS LLC'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO INTERROGATORIES PROPOUNDED ON THEM. | 2.50 | $587.50 |
| 11/15/2024 | SIS | DRAFT A MEET AND CONFER LETTER TO HYPER ENGINE LLC'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO INTERROGATORIES PROPOUNDED ON THEM. | 2.30 | $540.50 |
| 11/16/2024 | SIS | DRAFT A MEET AND CONFER LETTER TO ROXANNE TAYLOR'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO INTERROGATORIES PROPOUNDED ON HER. | 2.50 | $587.50 |
| 11/18/2024 | SSC | ANALYZE OPERATING AGREEMENTS PROVIDED BY CLIENT'S PERSONAL COUNSEL. | 0.40 | $100.00 |
| 11/18/2024 | SIS | CONTINUE DRAFTING A MEET AND CONFER LETTER TO DEON TAYLOR'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO REQUEST FOR ADMISSIONS PROPOUNDED ON HIM. | 2.20 | $517.00 |
| 11/18/2024 | SIS | CONTINUE DRAFTING A MEET AND CONFER LETTER TO HIDDEN EMPIRE HOLDINGS LLC'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO REQUEST FOR ADMISSIONS PROPOUNDED ON THEM. | 1.70 | $399.50 |
| 11/18/2024 | SIS | CONTINUE DRAFTING A MEET AND CONFER LETTER TO ROXANNE TAYLOR'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO REQUEST FOR ADMISSIONS PROPOUNDED ON HER. | 1.40 | $329.00 |
| 11/18/2024 | SIS | CONTINUE DRAFTING A MEET AND CONFER LETTER TO HYPER ENGINE'S ATTORNEY REQUESTING HIM TO SUPPLEMENT HIS RESPONSES TO REQUEST FOR ADMISSIONS PROPOUNDED ON THEM. | 1.30 | $305.50 |
| 11/19/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DISCOVERY TO BE COMPLETED AND DEADLINES FOR SAME. | 0.30 | $75.00 |
| 11/19/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PROCEDURE FOR TAKING DEPOSITION AND PRIORITY OF DEPOSITIONS. | 0.30 | $75.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 11/20/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL PRIOR TO CALL WITH PLAINTIFF'S COUNSEL TO DISCUSS STATUS OF DEPOSITIONS AND POSSIBLE INFORMAL DISCOVERY CONFERENCE REGARDING SAME. | 0.30 | $75.00 |
| 11/20/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN, PRIORITY OF DEPOSITIONS AND POSSIBLE INFORMAL DISCOVERY CONFERENCE REGARDING SAME. | 0.50 | $125.00 |
| 11/20/2024 | SSC | ANALYZE NOTICE OF TAKING DEPOSITION OF OUR CLIENT DARRICK ANGELONE. | 0.10 | $25.00 |
| 11/20/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITION PRIORITY ISSUES AND POSSIBLE INFORMAL DISCOVERY CONFERENCE REGARDING SAME. | 0.30 | $75.00 |
| 11/20/2024 | SSC | ANALYZE NOTICE OF DEPOSITION OF DEON TAYLOR. | 0.10 | $25.00 |
| 11/20/2024 | SSC | ANALYZE NOTICE OF DEPOSITION OF ROXANNE TAYLOR. | 0.10 | $25.00 |
| 11/21/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING OUR RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 11/21/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING INFORMAL DISCOVERY CONFERENCE WITH MAGISTRATE REGARDING DEPOSITIONS OF THE PARTIES AND CLAIMS OF PRIORITY IN DEPOSITIONS. | 0.40 | $100.00 |
| 11/22/2024 | SSC | FINAL PREPARATION OF MEET AND CONFER CORRESPONDENCE TO PLAINTIFFS' COUNSEL REGARDING DEFICIENCIES IN RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR ADMISSIONS PROPOUNDED TO HIDDEN EMPIRE HOLDINGS. | 1.20 | $300.00 |
| 11/22/2024 | SRVD | REVISE RESPONSE TO REQUEST FOR PRODUCTION TO ADD ADDITIONAL LINKS TO DOCUMENTS TO BE PRODUCED. | 0.80 | $100.00 |
| 11/25/2024 | SSC | FINAL PREPARATION OF MEET AND CONFER CORRESPONDENCE TO PLAINTIFFS' COUNSEL REGARDING DEFICIENCIES IN RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR ADMISSIONS PROPOUNDED TO HYPER ENGINE. | 1.00 | $250.00 |
| 11/26/2024 | SSC | ANALYZE MINUTE ORDER FROM THE COURT REGARDING INFORMAL DISCOVERY CONFERENCE CONCERNING DEPOSITIONS TO BE TAKEN. | 0.10 | $25.00 |
| 11/26/2024 | SSC | FINAL PREPARATION OF MEET AND CONFER CORRESPONDENCE TO PLAINTIFFS' COUNSEL REGARDING DEFICIENCIES IN RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR ADMISSIONS PROPOUNDED TO DEON TAYLOR. | 1.10 | $275.00 |

December 09, 2024

Matter:        L6604
Invoice #:     133175
Page:              6

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 11/26/2024 | SSC | FINAL PREPARATION OF MEET AND CONFER CORRESPONDENCE TO PLAINTIFFS' COUNSEL REGARDING DEFICIENCIES IN RESPONSES TO SPECIAL INTERROGATORIES AND REQUEST FOR ADMISSIONS PROPOUNDED TO ROXANNE TAYLOR. | 0.90 | $225.00 |
| 11/27/2024 | SJSK | REVIEW FILE REGARDING STATUS OF PLAINTIFF'S DISCOVERY OWED AND STATUS OF DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 11/27/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PLAINTIFFS' INTENTION TO FILE A MOTION FOR LEAVE TO AMEND COMPLAINT. | 0.40 | $100.00 |
| 11/27/2024 | SSC | ANALYZE PLAINTIFFS' PROPOSED AMENDED COMPLAINT. | 0.40 | $100.00 |
| 11/27/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING AMENDED COMPLAINT TO BE FILED BY PLAINTIFFS AND EFFECT ON DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 11/27/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S POSITION ON PLAINTIFFS' PROPOSED AMENDED COMPLAINT AND DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |

| | | **Total Fees** | | **$11,980.50** |
|---|---|---|---|---|

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 30.60 | $250.00 | $7,650.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.30 | $250.00 | $75.00 |
| SIS | Iris Shelub | ASSOCIATE | 16.30 | $235.00 | $3,830.50 |
| SRVD | Ronald Van Deusen | PARALEGAL | 3.40 | $125.00 | $425.00 |

| | | | |
|---|---|---|---|
| Total Fees | | $11,980.50 | |
| Total Cost Advanced | | $0.00 | |
| *Less Retainer Applied* | | | *($0.00)* |
| **PAY THIS AMOUNT** | | | **$11,980.50** |
| **Trust Balance** | | | **$0.00** |
| **Retainer Balance** | | | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

KDK Invoice

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**January 14, 2025**

| | |
|---|---|
| Matter: | L6604 |
| Invoice #: | 133335 |
| Page: | 1 |

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through December 31, 2024

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 12/2/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING INFORMAL DISCOVERY CONFERENCE CONCERNING DEPOSITIONS. | 0.30 | $75.00 |
| 12/2/2024 | SSC | ANALYZE PROPOSED JOINT AGENDA FOR INFORMAL DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 12/3/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING POSTPONEMENT OF DEPOSITIONS TO BE TAKEN AND STATUS OF INFORMAL DISCOVERY CONFERENCE REGARDING DEPOSITIONS. | 0.30 | $75.00 |
| 12/3/2024 | SSC | ANALYZE NOTICE OF TAKING INFORMAL DISCOVERY CONFERENCE OFF CALENDAR. | 0.10 | $25.00 |
| 12/3/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' PROPOSED AMENDED COMPLAINT AND OUR RESPONSE THERETO. | 0.40 | $100.00 |
| 12/3/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING PROPOSED AMENDED COMPLAINT AND OUR STIPULATION TO THE FILING OF SAME. | 0.30 | $75.00 |
| 12/3/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' PROPOSED AMENDED COMPLAINT, OUR STIPULATION TO FILING OF SAME, AND ADDITIONAL DISCOVERY REQUIRED. | 0.40 | $100.00 |
| 12/5/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING PROPOSED AMENDED COMPLAINT, CONTINUANCE OF THE TRIAL DATE AND DISCOVERY CUTOFF DATES. | 0.20 | $50.00 |
| 12/6/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION FOR LEAVE TO FILE AMENDED COMPLAINT AND CONTINUANCE OF TRIAL DATE AND DISCOVERY CUTOFF DATES. | 0.30 | $75.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 12/6/2024 | SSC | ANALYZE PROPOSED STIPULATION FOR LEAVE TO FILE AMENDED COMPLAINT AND CONTINUANCE OF TRIAL DATE AND DISCOVERY CUTOFF DATES. | 0.20 | $50.00 |
| 12/9/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION TO ALLOW PLAINTIFFS TO AMEND THEIR COMPLAINT AND CONTINUANCE OF THE TRIAL DATE. | 0.30 | $75.00 |
| 12/10/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFFS' COUNSEL REGARDING STIPULATION TO ALLOW PLAINTIFF TO AMEND THEIR COMPLAINT AND CONTINUANCE OF THE TRIAL DATE. | 0.10 | $25.00 |
| 12/10/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION TO ALLOW PLAINTIFF TO AMEND THEIR COMPLAINT AND CONTINUANCE OF THE TRIAL DATE. | 0.30 | $75.00 |
| 12/10/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO OUR MEET AND CONFER CORRESPONDENCE REQUESTING FURTHER RESPONSES TO OUR DISCOVERY. | 0.30 | $75.00 |
| 12/10/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING EXTENSION TO PLAINTIFFS TO RESPOND TO OUR MEET AND CONFER CORRESPONDENCE REQUESTING FURTHER RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 12/10/2024 | SSC | ANALYZE STIPULATION FILED WITH THE COURT TO ALLOW PLAINTIFFS' AMENDMENT TO COMPLAINT AND CONTINUANCE OF TRIAL DATE. | 0.10 | $25.00 |
| 12/11/2024 | SSC | ANALYZE ORDER BY THE COURT REGARDING SUBMITTED STIPULATION TO ALLOW AMENDMENT TO COMPLAINT BY PLAINTIFFS AND TO CONTINUE TRIAL DATE. | 0.10 | $25.00 |
| 12/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE IN RESPONSE TO OUR MEET AND CONFER LETTER REQUESTING FURTHER RESPONSES TO DISCOVERY FROM HIDDEN EMPIRE HOLDINGS. | 0.40 | $100.00 |
| 12/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE IN RESPONSE TO OUR MEET AND CONFER LETTER REQUESTING FURTHER RESPONSES TO DISCOVERY FROM HYPER ENGINE, LLC. | 0.30 | $75.00 |
| 12/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE IN RESPONSE TO OUR MEET AND CONFER LETTER REQUESTING FURTHER RESPONSES TO DISCOVERY FROM DEON TAYLOR. | 0.30 | $75.00 |
| 12/13/2024 | SSC | ANALYZE DETAILED CORRESPONDENCE IN RESPONSE TO OUR MEET AND CONFER LETTER REQUESTING FURTHER RESPONSES TO DISCOVERY FROM ROXANNE TAYLOR. | 0.20 | $50.00 |
| 12/13/2024 | SSC | PREPARATION OF CORRESPONDENCE TO PLAINTIFFS' COUNSEL REGARDING RESPONSES TO OUR MEET AND CONFER CORRESPONDENCE. | 0.30 | $75.00 |
| 12/13/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING RESPONSE BY PLAINTIFFS TO OUR MEET AND CONFER CORRESPONDENCE REQUESTING FURTHER RESPONSES TO DISCOVERY. | 0.30 | $75.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 12/16/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL SUBPOENAS FOR BUSINESS RECORDS FOR FINANCIAL INFORMATION. | 0.30 | $75.00 |
| 12/16/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' FURTHER RESPONSES TO OUR REQUEST FOR ADMISSIONS. | 0.40 | $100.00 |
| 12/17/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FURTHER RESPONSES TO DISCOVERY FROM PLAINTIFFS. | 0.30 | $75.00 |
| 12/17/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND CONTINUANCE OF TRIAL DATE. | 0.30 | $75.00 |
| 12/17/2024 | SSC | ANALYZE FINAL STIPULATION SUBMITTED TO THE COURT REGARDING FILING OF AMENDED COMPLAINT BY PLAINTIFF AND CONTINUANCE OF THE TRIAL DATE. | 0.10 | $25.00 |
| 12/18/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' RESPONSES TO OUR DISCOVERY. | 0.30 | $75.00 |
| 12/18/2024 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' FURTHER DISCOVERY RESPONSES. | 0.30 | $75.00 |
| 12/19/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL SUBPOENAS FOR FINANCIAL RECORDS. | 0.40 | $100.00 |
| 12/19/2024 | SSC | ANALYZE COURT'S ORDER GRANTING STIPULATION FOR LEAVE TO FILE AMENDED COMPLAINT AND CONTINUANCE OF TRIAL DATE. | 0.10 | $25.00 |
| 12/19/2024 | SSC | ANALYZE PLAINTIFFS' FIRST AMENDED COMPLAINT. | 0.60 | $150.00 |
| 12/19/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL SUBPOENAS FOR FINANCIAL RECORDS AND COMPLIANCE WITH MAGISTRATE'S ORDER REGARDING SUBPOENAS. | 0.50 | $125.00 |
| 12/20/2024 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL SUBPOENAS FOR FINANCIAL RECORDS AND SCOPE OF SAME. | 0.30 | $75.00 |
| 12/20/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 12/20/2024 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION FOR FURTHER RESPONSES TO OUR DISCOVERY. | 0.20 | $50.00 |
| 12/20/2024 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING FURTHER RESPONSES TO OUR DISCOVERY. | 0.10 | $25.00 |

January 14, 2025

Matter:        L6604
Invoice #:     133335
Page:              4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 12/23/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL SUBPOENAS FOR FINANCIAL RECORDS. | 0.50 | $125.00 |
| 12/23/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING PLAINTIFF'S FURTHER RESPONSE TO OUR DISCOVERY AND EXTENSION FOR SAME. | 0.20 | $50.00 |
| 12/24/2024 | SSC | PRELIMINARY ANALYSIS OF PLAINTIFFS' FURTHER RESPONSES TO OUR DISCOVERY. | 0.80 | $200.00 |
| 12/26/2024 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING PLAINTIFFS' FURTHER RESPONSES TO OUR DISCOVERY. | 0.30 | $75.00 |
| 12/27/2024 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' FURTHER RESPONSES TO OUR DISCOVERY. | 0.40 | $100.00 |
| | | **Total Fees** | | **$3,150.00** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 12.60 | $250.00 | $3,150.00 |

| | | |
|---|---|---|
| Total Fees | $3,150.00 | |
| Total Cost Advanced | $0.00 | |
| Less Retainer Applied | | ($0.00) |
| **PAY THIS AMOUNT** | | **$3,150.00** |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE
A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

KDK Invoice

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

Attention: **RAJIV BATRA**

**February 20, 2025**
Matter: L6604
Invoice #: 133557
Page: 1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through January 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 1/3/2025 | SIS | ANALYZE PLAINTIFF HIDDEN EMPIRE RESPONSES TO INTERROGATORIES IN PREPARATION FOR CARRIER UPDATE. | 0.30 | $70.50 |
| 1/3/2025 | SIS | ANALYZE PLAINTIFF HIDDEN EMPIRE RESPONSES TO REQUEST FOR ADMISSIONS IN PREPARATION FOR CARRIER UPDATE. | 0.40 | $94.00 |
| 1/3/2025 | SIS | ANALYZE PLAINTIFF HYPER ENGINE RESPONSES TO INTERROGATORIES IN PREPARATION FOR CARRIER UPDATE. | 0.20 | $47.00 |
| 1/4/2025 | SIS | ANALYZE PLAINTIFF HYPER ENGINE RESPONSES TO REQUEST FOR ADMISSIONS IN PREPARATION FOR CARRIER UPDATE. | 0.20 | $47.00 |
| 1/5/2025 | SIS | ANALYZE PLAINTIFF ROXANNE TAYLOR'S RESPONSES TO REQUEST FOR ADMISSIONS IN PREPARATION FOR CARRIER UPDATE. | 0.10 | $23.50 |
| 1/6/2025 | SJSK | REVIEW FILE REGARDING STATUS OF DISCOVERY RESPONSES DUE BY VARIOUS PARTIES AND EVALUATION OF SAID RESPONSES. | 0.30 | $75.00 |
| 1/6/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' FIRST AMENDED COMPLAINT AND RESPONSE THERETO. | 0.40 | $100.00 |
| 1/6/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY, DEPOSITIONS TO BE TAKEN AND PRIORITY OF DEPOSITIONS. | 0.40 | $100.00 |
| 1/6/2025 | SIS | ANALYZE PLAINTIFF DEON TAYLOR'S RESPONSES TO REQUEST FOR ADMISSIONS IN PREPARATION FOR CARRIER UPDATE. | 0.30 | $70.50 |
| 1/7/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 1/7/2025 | SIS | ANALYZE PLAINTIFF ROXANNE TAYLOR'S RESPONSES TO INTERROGATORIES IN PREPARATION FOR CARRIER UPDATE. | 0.20 | $47.00 |

February 20, 2025

Matter:      L6604
Invoice #:   133557
Page:            2

---

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 1/7/2025 | SIS | ANALYZE PLAINTIFF DEON TAYLOR'S RESPONSES TO INTERROGATORIES IN PREPARATION FOR CARRIER UPDATE. | 0.20 | $47.00 |
| 1/8/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING AMENDED COMPLAINT AND RESPONSE THERETO. | 0.30 | $75.00 |
| 1/8/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING SUBPOENAS PREVIOUSLY SERVED AND OBTAINING OF FINANCIAL DOCUMENTS. | 0.30 | $75.00 |
| 1/8/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ANSWER TO PLAINTIFFS' AMENDED COMPLAINT. | 0.30 | $75.00 |
| 1/8/2025 | SSC | ANALYZE DRAFT ANSWER FROM CLIENT'S PERSONAL COUNSEL TO PLAINTIFFS' AMENDED COMPLAINT. | 0.40 | $100.00 |
| 1/8/2025 | SIS | PREPARE DETAILED REPORT REGARDING ALL 4 PLAINTIFFS RESPONSES TO DISCOVERY PROPOUNDED BY DEFENDANTS. | 4.20 | $987.00 |
| 1/9/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ANSWER TO AMENDED COMPLAINT. | 0.30 | $75.00 |
| 1/9/2025 | SSC | ANALYZE FINAL ANSWER TO AMENDED COMPLAINT FILED WITH THE COURT. | 0.20 | $50.00 |
| 1/9/2025 | SSC | ANALYZE AMENDED NOTICE OF TAKING DEPOSITION OF DARRICK ANGELONE. | 0.20 | $50.00 |
| 1/10/2025 | SSC | ANALYZE NOTICE OF MULTIPLE SUBPOENAS FOR DEPOSITION OF NON-PARTIES FROM PLAINTIFF. | 0.20 | $50.00 |
| 1/10/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING SERVICE OF SUBPOENAS FOR DEPOSITIONS. | 0.20 | $50.00 |
| 1/13/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN IN THE CASE AND SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 1/14/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 1/14/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STATUS OF OUTSTANDING SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 1/15/2025 | SSC | ANALYZE DOCUMENTS FROM CLIENT REGARDING OTHER LAWSUITS INVOLVING THESE PLAINTIFFS AND SIMILARITIES WITH THE SUBJECT LAWSUIT. | 0.30 | $75.00 |
| 1/16/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING OUTSTANDING SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 1/17/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING DOCUMENTS PRODUCED IN RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.20 | $50.00 |
| 1/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING OTHER CASES INVOLVING PLAINTIFFS AND SIMILARITIES WITH OUR CASE. | 0.30 | $75.00 |

February 20, 2025
Matter: L6604
Invoice #: 133557
Page: 3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 1/21/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING STATUS OF DISCOVERY, DEPOSITIONS TO BE TAKEN AND PRIORITY OF DEPOSITIONS. | 0.50 | $125.00 |
| 1/21/2025 | SSC | PARTICIPATE IN DETAILED TELEPHONE CONFERENCE WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING RESULTS OF TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL, DEPOSITIONS TO BE TAKEN AND PRIORITY OF DEPOSITIONS. | 0.50 | $125.00 |
| 1/21/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING INFORMAL DISCOVERY CONFERENCE WITH MAGISTRATE REGARDING DISCOVERY ISSUES. | 0.30 | $75.00 |
| 1/21/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFF'S SUBPOENA TO CLIENT'S PREVIOUS ATTORNEY. | 0.40 | $100.00 |
| 1/22/2025 | SSC | ANALYZE AMENDED NOTICE OF TAKING DEPOSITION OF DEON TAYLOR. | 0.10 | $25.00 |
| 1/22/2025 | SSC | ANALYZE AMENDED NOTICE OF TAKING DEPOSITION OF ROXANNE TAYLOR. | 0.10 | $25.00 |
| 1/22/2025 | SSC | ANALYZE PLAINTIFFS' SECOND AMENDED NOTICE OF TAKING DEPOSITION OF DARRICK ANGELONE. | 0.10 | $25.00 |
| 1/22/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN AND PRIORITY OF DEPOSITIONS. | 0.30 | $75.00 |
| 1/22/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING EX PARTE MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITIONS. | 0.30 | $75.00 |
| 1/22/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DISCOVERY TO BE PROPOUNDED, DEPOSITIONS TO BE TAKEN AND MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITIONS. | 0.50 | $125.00 |
| 1/22/2025 | SSC | ANALYZE SUBMISSIONS TO THE COURT REGARDING INFORMAL DISCOVERY CONFERENCE CONCERNING DEPOSITIONS AND SUBPOENAS OF ADDITIONAL DOCUMENTS. | 0.20 | $50.00 |
| 1/23/2025 | SSC | ANALYZE NOTICE FROM THE COURT REGARDING INFORMAL DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 1/23/2025 | SRVD | IN RESPONSE TO ADVERSE COUNSEL NEWELL'S COMPLAINTS ABOUT THE INABILITY TO DOWNLOAD THE CLIENT'S PRODUCTION OF DOCUMENTS, PERFORMED TROUBLESHOOTING ON THE 265 GB OF FILES TO BE DOWNLOADED. | 2.40 | $300.00 |
| 1/24/2025 | SRVD | DISCUSSION WITH ATTORNEY NEWELL'S DISCOVERY EXPERT AND CONTINUED TROUBLESHOOTING ON THE 265 GB OF FILES TO BE DOWNLOADED. | 3.60 | $450.00 |
| 1/27/2025 | SSC | ANALYZE PLAINTIFFS' REQUEST FOR ADMISSIONS PROPOUNDED TO OUR CLIENT DARRICK ANGELONE. | 0.30 | $75.00 |

February 20, 2025

| | |
|---|---|
| Matter: | L6604 |
| Invoice #: | 133557 |
| Page: | 4 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 1/27/2025 | SSC | ANALYZE PLAINTIFFS' EXTENSIVE SPECIAL INTERROGATORIES SET TWO, PROPOUNDED TO OUR CLIENT DARRICK ANGELONE. | 0.50 | $125.00 |
| 1/27/2025 | SSC | ANALYZE PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO, PROPOUNDED TO OUR CLIENT DARRICK ANGELONE. | 0.30 | $75.00 |
| 1/28/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S MEDICAL EMERGENCY AND STATUS OF DISCOVERY. | 0.40 | $100.00 |
| 1/30/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY AND UPCOMING INFORMAL DISCOVERY CONFERENCE. | 0.40 | $100.00 |
| 1/30/2025 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF DISCOVERY AND UPCOMING INFORMAL DISCOVERY CONFERENCE. | 0.20 | $50.00 |
| 1/31/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN AND PRIORITY OF DEPOSITIONS. | 0.30 | $75.00 |
| 1/31/2025 | SIS | EMAIL COMMUNICATION WITH CLIENT REGARDING WRITTEN DISCOVERY. | 0.10 | $23.50 |

| | | | |
|---|---|---|---|
| **Total Fees** | | | **$5,107.00** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|---|---|---|---|
| SSC | Sandra Calin | PARTNER | 11.30 | $250.00 | $2,825.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.30 | $250.00 | $75.00 |
| SIS | Iris Shelub | ASSOCIATE | 6.20 | $235.00 | $1,457.00 |
| SRVD | Ronald Van Deusen | PARALEGAL | 6.00 | $125.00 | $750.00 |

| | | |
|---|---|---|
| Total Fees | $5,107.00 | |
| Total Cost Advanced | $0.00 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | $5,107.00 |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

**Please include this remittance with your payment.**
**Costs received after closing date will appear on a supplemental final bill.**
**This file will be destroyed 24 months from the date on this invoice**

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**March 14, 2025**
Matter:       L6604
Invoice #:    133691
Page:         1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through February 28, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 2/3/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT STATEMENT FOR INFORMAL DISCOVERY CONFERENCE. | 0.30 | $75.00 |
| 2/3/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING CONTINUANCE OF TRIAL DATE. | 0.20 | $50.00 |
| 2/3/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING TAKING OF PERSON MOST KNOWLEDGEABLE DEPOSITIONS OF PLAINTIFFS AND SCOPE OF THE DEPOSITIONS. | 0.30 | $75.00 |
| 2/4/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING UPCOMING INFORMAL DISCOVERY CONFERENCE AND ISSUES TO BE DISCUSSED AT SAME. | 0.30 | $75.00 |
| 2/4/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING ISSUES TO BE PRESENTED TO THE JUDGE AT THE INFORMAL DISCOVERY CONFERENCE. | 0.30 | $75.00 |
| 2/4/2025 | SSC | ANALYZE DRAFT REPORT TO THE COURT REGARDING ISSUES TO BE DISCUSSED AT INFORMAL DISCOVERY CONFERENCE. | 0.20 | $50.00 |
| 2/4/2025 | SIS | PREPARE RESPONSES TO REQUEST FOR ADMISSIONS SET ONE BY PLAINTIFFS. | 0.50 | $117.50 |
| 2/4/2025 | SIS | PREPARE RESPONSES TO SPECIAL INTERROGATORIES SET TWO BY PLAINTIFFS. | 0.70 | $164.50 |
| 2/4/2025 | SIS | PREPARE RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS SET TWO BY PLAINTIFFS. | 0.40 | $94.00 |
| 2/5/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS OF THIRD PARTIES TO PRODUCE DOCUMENTS AND SUBPOENAS TO NON-PARTIES TO APPEAR AT DEPOSITION. | 0.30 | $75.00 |
| 2/6/2025 | SSC | PREPARE FOR INFORMAL DISCOVERY CONFERENCE HEARING REGARDING SUBPOENAS SERVED ON NON-PARTIES FOR FINANCIAL RECORDS. | 0.50 | $125.00 |

March 14, 2025
Matter:        L6604
Invoice #:     133691
Page:                2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 2/6/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING UPCOMING INFORMAL DISCOVERY CONFERENCE REGARDING SUBPOENAS OF FINANCIAL RECORDS. | 0.30 | $75.00 |
| 2/6/2025 | SSC | ANALYZE EXTENSIVE JOINT STATEMENT REGARDING INFORMAL DISCOVERY CONFERENCE. | 0.30 | $75.00 |
| 2/6/2025 | SSC | PREPARE FOR INFORMAL DISCOVERY CONFERENCE. | 0.40 | $100.00 |
| 2/6/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DOCUMENTS REQUESTED FROM PLAINTIFFS. | 0.30 | $75.00 |
| 2/6/2025 | SSC | ANALYZE DAFT REQUESTS FOR PRODUCTION OF DOCUMENTS TO EACH OF THE FOUR PLAINTIFFS. | 0.40 | $100.00 |
| 2/6/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING MEET AND CONFER CONCERNING PLAINTIFF'S SUBPOENAS FOR APPEARANCE AT DEPOSITION TO OUR CLIENT'S WIFE AND MOTHER. | 0.30 | $75.00 |
| 2/7/2025 | SSC | APPEAR IN COURT BY VIDEO CONFERENCE FOR INFORMAL DISCOVERY CONFERENCE REGARDING SUBPOENAS SERVED ON NON-PARTIES FOR FINANCIAL RECORDS. | 1.40 | $350.00 |
| 2/7/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING REVISED SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 2/7/2025 | SSC | ANALYZE PLAINTIFF'S MEET AND CONFER CORRESPONDENCE REGARDING OUR RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES. | 0.20 | $50.00 |
| 2/7/2025 | SSC | PREPARATION OF CORRESPONDENCE TO CLIENT REGARDING PLAINTIFFS' MEET AND CONFER CORRESPONDENCE AND RESPONSE THERETO. | 0.20 | $50.00 |
| 2/7/2025 | SSC | ANALYZE SECOND AMENDED NOTICE OF SUBPOENA TO APPEAR AT DEPOSITION TO DARRELL THOMPSON. | 0.10 | $25.00 |
| 2/10/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DISCOVERY TO BE PROPOUNDED TO PLAINTIFFS. | 0.30 | $75.00 |
| 2/10/2025 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING DISCOVERY HEARING. | 0.10 | $25.00 |
| 2/10/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |
| 2/11/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING TAKING OF THE DEPOSITIONS OF ALL PARTIES. | 0.30 | $75.00 |
| 2/11/2025 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF THE CASE. | 0.20 | $50.00 |
| 2/11/2025 | SSC | ANALYZE ADDITIONAL SUBPOENAS TO SIX INDIVIDUALS FOR PRODUCTION OF ADDITIONAL DOCUMENTS. | 0.30 | $75.00 |
| 2/11/2025 | SSC | ANALYZE THIRD AMENDED NOTICE OF TAKING DEPOSITION OF DARRICK ANGELONE. | 0.10 | $25.00 |

March 14, 2025
Matter:        L6604
Invoice #:     133691
Page:            . 3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 2/11/2025 | SIS | EMAIL COMMUNICATION TO CLIENT REGARDING THE MEET AND CONFER LETTER TO SUPPLEMENT WRITTEN DISCOVERY. | 0.10 | $23.50 |
| 2/11/2025 | SIS | DRAFT RESPONSE LETTER TO A MEET AND CONFER LETTER FROM PLAINTIFF'S ATTORNEY. | 1.70 | $399.50 |
| 2/13/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |
| 2/18/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING MEET AND CONFER CONCERNING FURTHER RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 2/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF WITNESS DARRELL THOMPSON AND PREPARATION FOR SAME. | 0.30 | $75.00 |
| 2/19/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF DARRELL THOMPSON TO BE TAKEN BY PLAINTIFFS' COUNSEL. | 0.40 | $100.00 |
| 2/19/2025 | SSC | ANALYZE FILE TO PREPARE FOR DEPOSITION OF DARRELL THOMPSON. | 0.80 | $200.00 |
| 2/19/2025 | SSC | TELEPHONE CONFERENCE WITH CLIENT TO PREPARE FOR DEPOSITION OF DARRELL THOMPSON. | 0.40 | $100.00 |
| 2/19/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITION OF DARRELL THOMPSON AND SCOPE OF SAME. | 0.30 | $75.00 |
| 2/19/2025 | SSC | ANALYZE DOCUMENTS FROM CLIENT REGARDING COMMUNICATIONS WITH DEPONENT DARRELL THOMPSON. | 0.40 | $100.00 |
| 2/20/2025 | SJSK | PREPARATION OF APPEAL MEMO. | 0.40 | $100.00 |
| 2/20/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING DEPOSITION OF DARRELL THOMSON AND ATTENDANCE AT SAME. | 0.20 | $50.00 |
| 2/20/2025 | SSC | ATTENDANCE AT DEPOSITION OF WITNESS DARRELL THOMPSON BY VIDEO CONFERENCE. | 1.80 | $450.00 |
| 2/20/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING FURTHER RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 2/20/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 2/20/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING FURTHER RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 2/21/2025 | SSC | PREPARE FOR HEARING IN COURT REGARDING SUBPOENAS SERVED ON NON-PARTY WITNESSES AND PLAINTIFFS' OBJECTIONS THERETO. | 0.80 | $200.00 |
| 2/24/2025 | SSC | TRAVEL BETWEEN LOS ANGELES AND CALABASAS FOR DISCOVERY HEARING REGARDING SUBPOENAS TO THIRD PARTIES - 66 MILES ROUNDTRIP. | 3.10 | $387.50 |
| 2/24/2025 | SSC | APPEAR IN COURT FOR DISCOVERY HEARING REGARDING SUBPOENAS TO THIRD PARTIES. | 2.40 | $600.00 |

March 14, 2025
Matter:          L6604
Invoice #:       133691
Page:                4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 2/24/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING SUBPOENAS IN DISPUTE TO BE ADDRESSED AT CONTINUED DISCOVERY CONFERENCE. | 0.30 | $75.00 |
| 2/25/2025 | SSC | ANALYZE COURT'S ORDER REGARDING DISCOVERY CONFERENCE AND FURTHER MODIFICATIONS OF SUBPOENAS. | 0.20 | $50.00 |
| 2/26/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXTENSION TO RESPOND TO DISCOVERY. | 0.30 | $75.00 |
| 2/27/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS OF OUR CLIENT AND PLAINTIFFS, AND PREPARATION FOR SAME. | 0.50 | $125.00 |
| 2/28/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING UPCOMING DEPOSITIONS, DOCUMENTS TO BE USED AS EXHIBITS AND PREPARATION FOR SAME. | 0.50 | $125.00 |
| | | **Total Fees** | | **$6,111.50** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|------|------|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 19.30 | $250.00 | $4,825.00 |
| SSC | Sandra Calin | PARTNER | 3.10 | $125.00 | $387.50 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.40 | $250.00 | $100.00 |
| SIS | Iris Shelub | ASSOCIATE | 3.40 | $235.00 | $799.00 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 2/24/2025 | MILEAGE- MILEAGE @ $0.67 PER MILE FOR APPEARANCE AT FEDERAL COURT IN LOS ANGELES (66 MI) (APPROVED BY ADJUSTOR RAJIV BATRA) (66 @ $0.67) | $44.22 |
| 2/24/2025 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT FEDERAL COURT IN LOS ANGELES   (APPROVED BY ADJUSTOR S H TRICE) | $12.00 |
| | **Total Costs Advanced** | **$56.22** |

March 14, 2025
Matter:         L6604
Invoice #:      133691
Page:               5

| | |
|---|---|
| Total Fees | $6,111.50 |
| Total Cost Advanced | $56.22 |
| *Less Retainer Applied* | ($0.00) |
| **PAY THIS AMOUNT** | **$6,167.72** |
| | |
| **Trust Balance** | **$0.00** |
| **Retainer Balance** | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**April 21, 2025**
Matter: L6604
Invoice #: 133932
Page: 1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

COPY

For Professional Services Rendered Through March 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 3/2/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION FOR CLIENT'S DEPOSITION. | 0.30 | $75.00 |
| 3/2/2025 | SSC | ANALYZE FILE AND DISCOVERY RESPONSES IN PREPARATION FOR MEETING WITH CLIENT TO PREPARE FOR HIS DEPOSITION. | 1.20 | $300.00 |
| 3/3/2025 | SSC | PARTICIPATE IN VIDEO CONFERENCE WITH CLIENT AND CLIENT'S PERSONAL COUNSEL TO PREPARE CLIENT FOR HIS DEPOSITION. | 4.40 | $1,100.00 |
| 3/3/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT REGARDING ADDITIONAL INFORMATION TO COMPLETE RESPONSES TO DISCOVERY. | 0.50 | $125.00 |
| 3/3/2025 | SSC | FINAL PREPARATION OF RESPONSES TO REQUEST FOR ADMISSIONS PROPOUNDED BY PLAINTIFFS. | 0.70 | $175.00 |
| 3/3/2025 | SSC | FINAL PREPARATION OF RESPONSES TO SPECIAL INTERROGATORIES SET TWO, PROPOUNDED BY PLAINTIFFS. | 0.50 | $125.00 |
| 3/3/2025 | SSC | FINAL PREPARATION OF RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY PLAINTIFFS. | 0.40 | $100.00 |
| 3/3/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING FINAL RESPONSES TO DISCOVERY PROPOUNDED BY PLAINTIFFS AND VERIFICATIONS OF SAME. | 0.30 | $75.00 |
| 3/4/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITION OF OUR CLIENT. | 0.20 | $50.00 |
| 3/5/2025 | SSC | TRAVEL BETWEEN CALABASAS AND CENTURY CITY FOR DEPOSITION (54 MILES ROUND TRIP) - RATE REDUCED TO 50%. | 3.20 | $400.00 |
| 3/5/2025 | SSC | ATTEND DEPOSITION OF OUR CLIENT. | 7.10 | $1,775.00 |

April 21, 2025
Matter:         L6604
Invoice #:      133932
Page:                2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 3/6/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DOCUMENTS TO BE USED AS EXHIBITS AT DEPOSITION OF PLAINTIFF DEON TAYLOR. | 0.30 | $75.00 |
| 3/6/2025 | SSC | TELEPHONE CONFERENCE WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION FOR DEPOSITION OF PLAINTIFF DEON TAYLOR. | 0.20 | $50.00 |
| 3/6/2025 | SSC | ANALYZE CORRESPONDENCE FROM PLAINTIFF'S COUNSEL REGARDING TESTIMONY AT DEPOSITION BY OUR CLIENT. | 0.10 | $25.00 |
| 3/6/2025 | SSC | PREPARATION OF CORRESPONDENCE TO CLIENT REGARDING HIS DEPOSITION TESTIMONY AND DOCUMENTS TO BE PRODUCED. | 0.20 | $50.00 |
| 3/7/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DOCUMENTS TO BE PRODUCED. | 0.30 | $75.00 |
| 3/7/2025 | SSC | ANALYZE PLAINTIFF DEON TAYLOR'S OBJECTIONS AND RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION. | 0.30 | $75.00 |
| 3/7/2025 | SSC | ANALYZE ROXANNE TAYLOR'S OBJECTIONS AND RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION. | 0.20 | $50.00 |
| 3/10/2025 | SSC | ATTEND DEPOSITION OF PLAINTIFF DEON TAYLOR IN OUR OFFICE (NO TRAVEL). | 6.30 | $1,575.00 |
| 3/11/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION TESTIMONY BY DEON TAYLOR AND PREPARATION FOR DEPOSITION OF ROXANNE TAYLOR. | 0.50 | $125.00 |
| 3/13/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING TAKING THE DEPOSITION OF ROXANNE TAYLOR. | 0.20 | $50.00 |
| 3/13/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITION OF ROXANNE TAYLOR AND CONDUCT OF SAME. | 0.30 | $75.00 |
| 3/13/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITION OF DEON TAYLOR AND FUTURE USE OF SAME. | 0.30 | $75.00 |
| 3/14/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STATUS OF DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 3/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF ROXANNE TAYLOR AND STRATEGY FOR SAME. | 0.30 | $75.00 |
| 3/17/2025 | SSC | ANALYZE PLAINTIFFS' DETAILED MEET AND CONFER LETTER REGARDING FURTHER RESPONSES TO DISCOVERY. | 0.20 | $50.00 |
| 3/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN AND DOCUMENTS REQUESTED TO BE PRODUCED AT DEPOSITION. | 0.30 | $75.00 |
| 3/19/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DISCOVERY TO BE COMPLETED. | 0.20 | $50.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 3/24/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 3/24/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING REQUEST FOR PRODUCTION OF DOCUMENTS TO BE PROPOUNDED TO PLAINTIFFS. | 0.30 | $75.00 |
| 3/24/2025 | SSC | ANALYZE DRAFT REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS PREPARED BY CLIENT'S PERSONAL COUNSEL. | 0.20 | $50.00 |
| 3/27/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FURTHER DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| | | **Total Fees** | | **$7,200.00** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 27.20 | $250.00 | $6,800.00 |
| SSC | Sandra Calin | PARTNER | 3.20 | $125.00 | $400.00 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 2/20/2025 | NETWORK DEPOSITION SERVICES, INC.- DEPOSITION COSTS - INVOICE #- A25030944 - DARRELL THOMPSON, ESQ   (APPROVED BY ADJUSTOR RAJIV  BATRA) | $769.75 |
| 3/5/2025 | MILEAGE- MILEAGE @ $0.67 PER MILE FOR APPEARANCE AT DEPOSITION IN CENTURY CITY (54 MI)  (54 @  $0.67) | $36.18 |
| 3/5/2025 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT DEPOSITION. | $42.00 |
| 3/5/2025 | NETWORK DEPOSITION SERVICES, INC.- DEPOSITION COSTS - INVOICE #- A25040471 - DARRICK ROBERT ANGELONE- (APPROVED BY ADJUSTOR RAJIV  BATRA) | $1,278.75 |
| 3/26/2025 | VERITEXT WESTERN REGIONAL HEADQUARTERS- DEPOSITION COSTS - INVOICE #- 8185661 - DEON TAYLOR - (APPROVED BY ADJUSTOR RAJIV  BATRA) | $1,284.20 |
| | **Total Costs Advanced** | **$3,410.88** |

April 21, 2025
Matter:        L6604
Invoice #:     133932
Page:             4

---

| | |
|---|---|
| Total Fees | $7,200.00 |
| Total Cost Advanced | $3,410.88 |
| *Less Retainer Applied* | ($0.00) |
| **PAY THIS AMOUNT** | **$10,610.88** |
| | |
| **Trust Balance** | **$0.00** |
| **Retainer Balance** | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**May 19, 2025**
Matter:     L6604
Invoice #:    134085
Page:          1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
     Claim Number: 100.205.070A
     Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through April 30, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 4/1/2025 | SSC | PREPARATION OF FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENT PROPOUNDED BY PLAINTIFFS. | 0.40 | $100.00 |
| 4/1/2025 | SSC | PREPARATION OF FURTHER RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFFS. | 0.50 | $125.00 |
| 4/1/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING FURTHER RESPONSES TO DISCOVERY AND VERIFICATIONS OF SAME. | 0.30 | $75.00 |
| 4/2/2025 | SSC | PREPARATION OF DETAILED CORRESPONDENCE TO CARRIER REGARDING STATUS OF THE CASE, DISCOVERY COMPLETED AND DEPOSITIONS TO BE TAKEN. | 1.20 | $300.00 |
| 4/3/2025 | SJSK | CONFERENCE WITH COUNSEL REGARDING RECENT TESTIMONY OF PLAINTIFF AND CLIENT AND ISSUES OF CREDIBILITY WITH INSURED CLIENT. | 0.30 | $75.00 |
| 4/5/2025 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING EVALUATION OF THE CASE AND POSSIBLE STATUTORY OFFER OF COMPROMISE. | 0.30 | $75.00 |
| 4/7/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING CONTINUED COURT DISCOVERY HEARING REGARDING SUBPOENAS FOR FINANCIAL RECORDS. | 0.20 | $50.00 |
| 4/7/2025 | SSC | ANALYZE COURT'S NOTICE OF CONTINUED DISCOVERY HEARING. | 0.10 | $25.00 |
| 4/9/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING DEPOSITION OF PLAINTIFF DEON AND SECOND SESSION OF SAME. | 0.20 | $50.00 |
| 4/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING REQUEST FOR PRODUCTION OF DOCUMENTS TO BE SERVED ON PLAINTIFFS. | 0.30 | $75.00 |

May 19, 2025
Matter:         L6604
Invoice #:      134085
Page:                2

---

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 4/17/2025 | SSC | ANALYZE PROPOSED REQUEST FOR PRODUCTION OF DOCUMENTS TO BE SERVED ON PLAINTIFFS AND PREPARATION OF AMENDMENTS TO SAME. | 0.30 | $75.00 |
| 4/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF THE CASE. | 0.30 | $75.00 |
| 4/19/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING REVISED REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS. | 0.20 | $50.00 |
| 4/21/2025 | SSC | ANALYZE REQUEST FOR PRODUCTION OF DOCUMENTS SERVED BY CLIENT'S PERSONAL COUNSEL ON PLAINTIFFS. | 0.10 | $25.00 |
| 4/22/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |
| 4/25/2025 | SSC | ANALYZE RESPONSES BY PLAINTIFF HYPER ENGINE LLC TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 4/29/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PLAINTIFFS' INTENT TO FILE A MOTION FOR SUMMARY JUDGMENT AND MEET AND CONFER REGARDING SAME. | 0.30 | $75.00 |

|  |  | **Total Fees** |  | **$1,400.00** |

## ATTORNEY TIME AND FEE SUMMARY

|  |  | Level | Hours | Rate | Amount |
|------|------|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 5.30 | $250.00 | $1,325.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 0.30 | $250.00 | $75.00 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 4/1/2025 | VERITEXT - DEPOSITION COSTS - INVOICE #- 8205852 - DEON TAYLOR  (APPROVED BY ADJUSTOR RAJIV  BATRA) | $1,413.00 |
| 4/23/2025 | VERITEXT- DEPOSITION COSTS - INVOICE #- 8263385 - DEON TAYLOR | $468.00 |

|  | **Total Costs Advanced** | **$1,881.00** |

May 19, 2025
Matter:          L6604
Invoice #:      134085
Page:                 3

| | |
|---|---|
| Total Fees | $1,400.00 |
| Total Cost Advanced | $1,881.00 |
| *Less Retainer Applied* | ($0.00) |
| **PAY THIS AMOUNT** | **$3,281.00** |
| | |
| **Trust Balance** | **$0.00** |
| **Retainer Balance** | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

| | |
|---|---|
| **June 12, 2025** | |
| Matter: | L6604 |
| Invoice #: | 134191 |
| Page: | 1 |

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

COPY

For Professional Services Rendered Through May 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 5/1/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING PLAINTIFFS' FILING OF A MOTION FOR SUMMARY JUDGMENT AND CONTINUANCE OF TRIAL DATE. | 0.20 | $50.00 |
| 5/5/2025 | SSC | ANALYZE STIPULATION TO CONTINUE PRETRIAL AND TRIAL DATES. | 0.10 | $25.00 |
| 5/7/2025 | SSC | ANALYZE COURT ORDER GRANTING STIPULATION TO CONTINUE PRETRIAL AND TRIAL DATES. | 0.10 | $25.00 |
| 5/9/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF THE CASE AND ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 5/14/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING TAKING OF ADDITIONAL DEPOSITIONS AND INDIVIDUALS TO BE DEPOSED. | 0.30 | $75.00 |
| 5/19/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL AND OUR CLIENT'S PERSONAL COUNSEL REGARDING EXTENSION TO RESPOND TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 5/20/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PLAINTIFFS' RESPONSES TO OUR REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.20 | $50.00 |
| 5/20/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN AND SCOPE OF THE DEPOSITIONS. | 0.30 | $75.00 |
| 5/20/2025 | SSC | EXCHANGE MULTIPLE DETAILED E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF OUTSTANDING SUBPOENAS FOR FINANCIAL RECORDS AND OUR POSITION AT CONTINUED DISCOVERY CONFERENCE WITH THE COURT. | 0.50 | $125.00 |

June 12, 2025
Matter:        L6604
Invoice #:     134191
Page:              2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 5/21/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING SUBPOENAS OF ADDITIONAL DOCUMENTS CONCERNING PLAINTIFFS' FINANCES. | 0.30 | $75.00 |
| 5/21/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING UPCOMING HEARING ON DISCOVERY ISSUES AND LIMITING OF SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 5/27/2025 | SSC | PREPARE FOR DISCOVERY CONFERENCE IN COURT REGARDING SUBPOENAS FOR FINANCIAL DOCUMENTS. | 0.50 | $125.00 |
| 5/27/2025 | SSC | APPEAR IN COURT BY VIDEO CONFERENCE FOR DISCOVERY CONFERENCE REGARDING SUBPOENAS FOR FINANCIAL RECORDS. | 1.80 | $450.00 |
| 5/27/2025 | SSC | ANALYZE DETAILED ANALYSIS BY CLIENT OF PLAINTIFFS' DISCOVERY RESPONSES AND EFFECT ON THE ISSUES IN THE CASE. | 0.60 | $150.00 |
| 5/28/2025 | SSC | ANALYZE COURT'S DETAILED ORDER FOLLOWING DISCOVERY CONFERENCE. | 0.30 | $75.00 |
| 5/28/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING OUTCOME OF DISCOVERY CONFERENCE IN COURT. | 0.30 | $75.00 |
| 5/28/2025 | SSC | ANALYZE RESPONSES BY PLAINTIFF TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.50 | $125.00 |
| 5/30/2025 | SSC | ANALYZE ADDITIONAL SUBPOENAS FOR FINANCIAL RECORDS SERVED BY CLIENT'S PERSONAL COUNSEL. | 0.30 | $75.00 |
| 5/30/2025 | SRVD | ATTEMPT TO PRINT VOLUMINOUS AND LENGTHY SPREADSHEET PRODUCED BY PLAINTIFF OF STATUS OF DISCOVERY RESPONSES BETWEEN PARTIES. | 1.90 | $237.50 |

| | | **Total Fees** | | **$2,037.50** |
|--|--|--|--|--|

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|--|--|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 7.20 | $250.00 | $1,800.00 |
| SRVD | Ronald Van Deusen | PARALEGAL | 1.90 | $125.00 | $237.50 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 5/6/2025 | QUANDARY PEAK RESEARCH- INVESTIGATOR FEES - INVOICE #- INV25950 - Research : Registrar change alert for domain (APPROVED BY ADJUSTOR RAJIV  BATRA) | $142.50 |

| | **Total Costs Advanced** | **$142.50** |
|--|--|--|

June 12, 2025
Matter:        L6604
Invoice #:     134191
Page:              3

| | | |
|---|---|---|
| Total Fees | $2,037.50 | |
| Total Cost Advanced | $142.50 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$2,180.00** |
| | | |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**July 14, 2025**
Matter:     L6604
Invoice #:   134365
Page:       1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through June 30, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 6/2/2025 | SSC | ANALYZE MEET AND CONFER CORRESPONDENCE FROM CLIENT'S PERSONAL COUNSEL TO PLAINTIFFS' COUNSEL REGARDING OUTSTANDING SUBPOENAS AND COURT'S DISCOVERY ORDER. | 0.20 | $50.00 |
| 6/2/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN IN THE CASE AND SCOPE OF THE DEPOSITIONS. | 0.40 | $100.00 |
| 6/4/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL SUBPOENAS TO BE SERVED FOR PRODUCTION OF FINANCIAL RECORDS. | 0.20 | $50.00 |
| 6/6/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DRAFT JOINT REPORT TO THE COURT REGARDING RULING ON SUBPOENAS OF FINANCIAL RECORDS. | 0.30 | $75.00 |
| 6/6/2025 | SSC | ANALYZE DRAFT REPORT TO THE COURT REGARDING SUBPOENAS OF FINANCIAL RECORDS. | 0.20 | $50.00 |
| 6/6/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PROPOSED STIPULATION TO EXTEND TIME FOR DISCOVERY TO BE COMPLETED. | 0.30 | $75.00 |
| 6/9/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS. | 0.30 | $75.00 |
| 6/9/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT REPORT TO THE COURT CONCERNING SUBPOENAS OF FINANCIAL DOCUMENTS. | 0.30 | $75.00 |
| 6/10/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING MEET AND CONFER EFFORTS REQUESTING FURTHER RESPONSES FROM PLAINTIFFS TO OUR REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |

July 14, 2025
Matter:      L6604
Invoice #:   134365
Page:              2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 6/10/2025 | SSC | ANALYZE FINAL JOINT REPORT FILED WITH THE COURT REGARDING SUBPOENAS OF FINANCIAL RECORDS. | 0.20 | $50.00 |
| 6/10/2025 | SSC | ANALYZE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND EXTENSIVE SUPPORTING DOCUMENTS. | 1.20 | $300.00 |
| 6/10/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEPOSITIONS TO BE TAKEN TO OPPOSE THE MOTION. | 0.30 | $75.00 |
| 6/10/2025 | SSC | ANALYZE MULTIPLE SUBPOENAS TO VARIOUS INDIVIDUALS FOR FINANCIAL RECORDS CONCERNING PLAINTIFFS. | 0.30 | $75.00 |
| 6/11/2025 | SSC | ANALYZE COURT'S ORDER REGARDING DEFICIENCIES IN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 6/11/2025 | SSC | ANALYZE COURT'S ORDER REGARDING SETTING OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 6/11/2025 | SSC | ANALYZE PLAINTIFFS' NOTICE OF LODGING PROPOSED ORDER FOR MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 6/12/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, REQUEST FOR A CONTINUANCE OF THE MOTION AND PREPARATION OF OPPOSITION TO SAME. | 0.50 | $125.00 |
| 6/13/2025 | SSC | PRELIMINARY LEGAL RESEARCH REGARDING CASES CITED BY PLAINTIFFS IN MOTION FOR SUMMARY JUDGMENT. | 1.10 | $275.00 |
| 6/13/2025 | SSC | TELEPHONE CONFERENCE WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, POSSIBLE CONTINUANCE OF THE MOTION, AND ARGUMENTS IN OPPOSITION TO THE MOTION. | 0.40 | $100.00 |
| 6/13/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING POTENTIAL DEFECTS IN PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ARGUMENTS IN OPPOSITION. | 0.50 | $125.00 |
| 6/16/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING REQUEST FOR CONTINUANCE OF MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 6/16/2025 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFFS' COUNSEL REGARDING REQUEST FOR CONTINUANCE OF MOTION FOR SUMMARY JUDGMENT, CONTINUANCE OF TRIAL AND ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.20 | $50.00 |
| 6/17/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING HEARING ON MOTION FOR SUMMARY JUDGMENT AND POSSIBLE CONTINUANCE OF THE TRIAL DATE. | 0.20 | $50.00 |
| 6/18/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING POSSIBLE CONTINUANCE OF HEARING ON MOTION FOR SUMMARY JUDGMENT AND TRIAL. | 0.30 | $75.00 |

July 14, 2025
Matter:       L6604
Invoice #:    134365
Page:               3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 6/18/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' REFUSAL TO AGREE TO CONTINUE HEARING ON MOTION FOR SUMMARY JUDGMENT AND PREPARATION OF EX PARTE APPLICATION TO CONTINUE HEARING AND TRIAL. | 0.40 | $100.00 |
| 6/18/2025 | SSC | LEGAL RESEARCH REGARDING EX PARTE APPLICATION TO CONTINUE HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND TRIAL. | 1.30 | $325.00 |
| 6/18/2025 | SSC | PREPARATION OF EX PARTE APPLICATION TO CONTINUE HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND TRIAL. | 2.80 | $700.00 |
| 6/18/2025 | SSC | PREPARATION OF DECLARATION OF COUNSEL IN SUPPORT OF EX PARTE APPLICATION TO CONTINUE HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND TRIAL. | 0.60 | $150.00 |
| 6/18/2025 | SSC | PREPARATION OF CORRESPONDENCE TO ALL COUNSEL REGARDING NOTICE OF EX PARTE APPLICATION TO CONTINUE HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND TRIAL. | 0.20 | $50.00 |
| 6/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING OUR EX PARTE APPLICATION TO CONTINUE HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 6/18/2025 | SSC | PREPARATION OF PROPOSED ORDER FOR EX PARTE APPLICATION TO CONTINUE HEARING ON MOTION FOR SUMMARY JUDGMENT AND TRIAL. | 0.30 | $75.00 |
| 6/18/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DISCOVERY TO BE PROPOUNDED TO PLAINTIFFS. | 0.50 | $125.00 |
| 6/19/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL WRITTEN DISCOVEY TO PLAINTIFFS. | 0.40 | $100.00 |
| 6/20/2025 | SSC | EXCHANGE E-MAILS WITH COURT CLERK AND ALL COUNSEL REGARDING OUR EX PARTE APPLICATION AND COURT'S REQUEST FOR MEET AND CONFER AMONG COUNSEL TO RESOLVE THE ISSUES RAISED IN THE MOTION. | 0.40 | $100.00 |
| 6/20/2025 | SSC | ANALYZE COURT ORDER CONTINUING HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 6/24/2025 | SSC | ANALYZE DECLARATION OF DEON TAYLOR IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT. | 0.50 | $125.00 |
| 6/24/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEPOSITIONS TO BE TAKEN IN ORDER TO OPPOSE THE MOTION. | 0.40 | $100.00 |

July 14, 2025
Matter:       L6604
Invoice #:    134365
Page:              4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 6/24/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND HIS PARTICIPATION IN PREPARATION OF OPPOSITION THERETO. | 0.30 | $75.00 |
| 6/25/2025 | SSC | ANALYZE REQUEST FOR ADMISSIONS TO PLAINTIFF DEON TAYLOR. | 0.20 | $50.00 |
| 6/25/2025 | SSC | ANALYZE REQUEST FOR ADMISSIONS TO PLAINTIFF HIDDEN EMPIRE HOLDINGS. | 0.20 | $50.00 |
| 6/25/2025 | SSC | ANALYZE REQUEST FOR ADMISSIONS TO ROXANNE TAYLOR. | 0.20 | $50.00 |
| 6/25/2025 | SSC | ANALYZE SPECIAL INTERROGATORIES TO HIDDEN EMPIRE HOLDINGS. | 0.30 | $75.00 |
| 6/25/2025 | SSC | ANALYZE REQUEST FOR PRODUCTION OF DOCUMENTS TO ROXANNE TAYLOR. | 0.20 | $50.00 |
| 6/25/2025 | SSC | ANALYZE REQUEST FOR PRODUCTION OF DOCUMENTS TO DEON TAYLOR. | 0.20 | $50.00 |
| 6/25/2025 | SSC | ANALYZE REQUEST FOR PRODUCTION OF DOCUMENTS TO HYPER ENGINE. | 0.20 | $50.00 |
| 6/30/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ANALYSIS OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.50 | $125.00 |
| | | **Total Fees** | | **$4,700.00** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|--|--|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 18.80 | $250.00 | $4,700.00 |

| | | |
|--|--|--|
| Total Fees | $4,700.00 | |
| Total Cost Advanced | $0.00 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$4,700.00** |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

July 14, 2025
Matter:          L6604
Invoice #:       134365
Page:                5

**Please include this remittance with your payment.**
**Costs received after closing date will appear on a supplemental final bill.**
**This file will be destroyed 24 months from the date on this invoice**

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

,

**Attention: RAJIV BATRA**

**August 20, 2025**

| | |
|---|---|
| Matter: | L6604 |
| Invoice #: | 134547 |
| Page: | 1 |

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through July 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 7/1/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL AND OUR EXPERT RICK WATTS REGARDING HIS ASSISTANCE IN OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 7/1/2025 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING SCOPE OF HIS WORK IN ASSISTING WITH OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 7/2/2025 | SJSK | REVIEW FILE REGARDING STATUS OF OUTSTANDING DEPOSITIONS TO BE COMPLETED, VALUATION AND POTENTIAL RESOLUTION. | 0.30 | $75.00 |
| 7/2/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL AND OUR EXPERT REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PREPARATION OF OPPOSITION TO SAME. | 0.30 | $75.00 |
| 7/7/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING ADDITIONAL DOCUMENTS TO BE REQUESTED FROM PLAINTIFFS. | 0.20 | $50.00 |
| 7/7/2025 | SSC | ANALYZE DETAILED INFORMATION FROM CLIENT REGARDING TOPICS OF INQUIRY AT DEPOSITION OF ROXANNE TAYLOR. | 0.30 | $75.00 |
| 7/8/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING CONFERENCE CALL WITH PLAINTIFFS' COUNSEL AND DISCOVERY TO BE COMPLETED. | 0.30 | $75.00 |
| 7/8/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING COMPLETION OF DISCOVERY AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.20 | $50.00 |
| 7/9/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF ROXANNE TAYLOR AND SCOPE OF SAME. | 0.20 | $50.00 |

August 20, 2025
Matter:      L6604
Invoice #:   134547
Page:             2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 7/10/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING MEET AND CONFER CONFERENCE CONCERNING DISCOVERY. | 0.30 | $75.00 |
| 7/10/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING ADDITIONAL DISCOVERY TO BE COMPLETED AND FURTHER DEPOSITIONS OF THE PARTIES. | 0.30 | $75.00 |
| 7/10/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING POSSIBLE AMENDMENT OF THE PLEADINGS AND CONTINUANCE OF THE TRIAL DATE. | 0.30 | $75.00 |
| 7/10/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING HIS PREPARATION OF DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 7/11/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING DISCOVERY TO BE COMPLETED BEFORE TRIAL, OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AMENDMENT TO THE COMPLAINT AND POSSIBLE CONTINUANCE OF TRIAL DATE. | 0.40 | $100.00 |
| 7/11/2025 | SSC | ANALYZE DOCUMENTS FROM CLIENT REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN AND SCOPE OF THE EXAMINATION AT DEPOSITIONS. | 0.20 | $50.00 |
| 7/14/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DOCUMENTS RECEIVED BY SUBPOENA AND FURTHER DISCOVERY TO BE COMPLETED. | 0.40 | $100.00 |
| 7/14/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND STATUS OF SUBPOENAS FOR FINANCIAL RECORDS. | 0.40 | $100.00 |
| 7/15/2025 | SSC | ANALYZE CORRESPONDENCE FROM PLAINTIFFS' COUNSEL REGARDING MEET AND CONFER CONCERNING PLAINTIFFS' RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.10 | $25.00 |
| 7/15/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, ADDITIONAL DEPOSITIONS TO BE TAKEN AND SUBPOENAS FOR FINANCIAL RECORDS. | 1.10 | $275.00 |
| 7/15/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 7/15/2025 | SSC | ANALYZE DOCUMENTS PRODUCES BY SUZANNE SUMMERVILLE IN RESPONSE TO SUBPOENA. | 0.50 | $125.00 |
| 7/15/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING PREPARATION OF HIS DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 7/15/2025 | SSC | ANALYZE NOTICE OF EX PARTE APPLICATION BY CLIENT'S PERSONAL COUNSEL TO REQUEST AN EXTENSION OF TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |

August 20, 2025
Matter:        L6604
Invoice #:     134547
Page:               3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 7/16/2025 | SSC | ANALYZE DRAFT EX PARTE APPLICATION FROM CLIENT'S PERSONAL COUNSEL TO EXTEND TIME TO SUBMIT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 7/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING EX PARTE APPLICATION TO EXTEND TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.20 | $50.00 |
| 7/18/2025 | SJSK | EXCHANGE EMAIL WITH CARRIER REGARDING AMOUNT REMAINING ON DEFENSE WITHIN LIMIT POLICY. | 0.20 | $50.00 |
| 7/18/2025 | SJSK | REVIEW PLEADINGS, DISCOVERY AND DEPOSITION TESTIMONY IN PREPARATION FOR CONFERENCE CALL WITH CARRIER. | 0.80 | $200.00 |
| 7/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING TAKING OF DEPOSITION OF ROXANNE TAYLOR AND DOCUMENTS TO BE PRODUCED AT HER DEPOSITION. | 0.30 | $75.00 |
| 7/18/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PLAINTIFFS' RESPONSE TO OUR REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 7/18/2025 | SSC | ANALYZE PLAINTIFFS' OPPOSITION TO EX PARTE APPLICATION TO EXTEND TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 7/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF SUBPOENAS FOR FINANCIAL RECORDS. | 0.30 | $75.00 |
| 7/21/2025 | SJSK | PARTICIPATION IN STRATEGY CONFERENCE CALL WITH CARRIER. | 0.50 | $125.00 |
| 7/21/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CARRIER REGARDING STATUS OF THE CASE, PENDING MOTION FOR SUMMARY JUDGMENT, ADDITIONAL DISCOVERY TO BE COMPLETED AND POSSIBLE CONTINUANCE OF THE TRIAL DATE. | 0.50 | $125.00 |
| 7/21/2025 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING POSSIBLE SETTLEMENT DISCUSSIONS TO ATTEMPT TO RESOLVE THE CASE. | 0.10 | $25.00 |
| 7/21/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL AREAS OF INQUIRY AT DEPOSITION OF ROXANNE TAYLOR. | 0.30 | $75.00 |
| 7/21/2025 | SSC | ANALYZE COURT'S ORDER GRANTING EX PARTE APPLICATION TO EXTEND TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 7/21/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING COURT'S RULING ON EX PARTE APPLICATION TO EXTEND TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 7/22/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING REQUEST FOR EXTENSION BY PLAINTIFFS TO RESPOND TO DISCOVERY. | 0.30 | $75.00 |

August 20, 2025
Matter:          L6604
Invoice #:       134547
Page:                4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 7/22/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS AND CLIENT'S PERSONAL COUNSEL REGARDING EXTENSION OF TIME TO FILE OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PREPARATION OF HIS DECLARATION. | 0.40 | $100.00 |
| 7/23/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 7/23/2025 | SSC | ANALYZE MEET AND CONFER CORRESPONDENCE TO PLAINTIFF'S COUNSEL FROM CLIENT'S PERSONAL COUNSEL REGARDING RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.20 | $50.00 |
| 7/25/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION SUBPOENAS TO BE SERVED ON THIRD PARTIES. | 0.30 | $75.00 |
| 7/25/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF ROXANNE TAYLOR AND EXTENSIVE OUTLINE FOR HER DEPOSITION. | 0.40 | $100.00 |
| 7/25/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING MEET AND CONFER CONFERENCE REGARDING PLAINTIFFS' RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 7/28/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING EXHIBITS TO BE USED AT DEPOSITION OF ROXANNE TAYLOR. | 0.30 | $75.00 |
| 7/29/2025 | SKGA | LEGAL RESEARCH REGARDING MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS - (APPROVED BY RAJIV BATRA). | 1.00 | $250.00 |
| 7/29/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING SUBPOENAS FOR DEPOSITIONS OF THIRD PARTIES. | 0.30 | $75.00 |
| 7/29/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING EX PARTE APPLICATION TO CONTINUE TRIAL. | 0.30 | $75.00 |
| 7/29/2025 | SSC | ANALYZE DRAFT EX PARTE APPLICATION TO CONTINUE TRIAL FROM CLIENT'S PERSONAL COUNSEL. | 0.30 | $75.00 |
| 7/29/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING MOTION TO COMPEL FURTHER RESPONSES BY PLAINTIFFS TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.20 | $50.00 |
| 7/29/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING EX PARTE APPLICATION TO CONTINUE TRIAL. | 0.30 | $75.00 |
| 7/29/2025 | SSC | PREPARATION OF NUMEROUS SUBPOENAS FOR THIRD PARTY DEPOSITIONS REQUESTED BY CLIENT. | 0.40 | $100.00 |
| 7/30/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING MOTIONS TO BE FILED, INCLUDING MOTION TO COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS AND EX PARTE APPLICATION TO CONTINUE TRIAL. | 0.50 | $125.00 |

August 20, 2025
Matter:        L6604
Invoice #:     134547
Page:          5

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 7/30/2025 | SSC | DETAILED ANALYSIS OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PREPARATION FOR CONFERENCE CALL WITH OUR EXPERT REGARDING HIS DECLARATION IN OPPOSITION TO THE MOTION. | 0.80 | $200.00 |
| 7/30/2025 | SSC | PARTICIPATE IN VIDEO CONFERENCE WITH OUR EXPERT RICK WATTS AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PREPARATION OF OPPOSITION THERETO. | 0.50 | $125.00 |
| 7/30/2025 | SSC | PARTICIPATE IN VIDEO CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PREPARATION OF OPPOSITION THERETO, ADDITIONAL DEPOSITIONS TO BE TAKEN AND EX PARTE APPLICATION TO CONTINUE TRIAL DATE. | 0.50 | $125.00 |
| 7/30/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING EX PARTE APPLICATION TO CONTINUE TRIAL AND DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 7/30/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING MOTION TO QUASH DEPOSITION SUBPOENAS FOR THIRD PARTY DEPOSITIONS. | 0.30 | $75.00 |
| 7/31/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING CONTINUANCE OF TRIAL, DEPOSITIONS TO BE TAKEN AND MEET AND CONFER REGARDING PLAINTIFFS' RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.50 | $125.00 |
| 7/31/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING CONTINUANCE OF TRIAL, DEPOSITIONS TO BE TAKEN AND MEET AND CONFER REGARDING PLAINTIFFS' RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.70 | $175.00 |

|  | **Total Fees** | **$5,300.00** |
|--|----------------|---------------|

## ATTORNEY TIME AND FEE SUMMARY

|  |  | Level | Hours | Rate | Amount |
|--|--|-------|-------|------|--------|
| SKGA | Kelsey G. Artinger | PARTNER | 1.00 | $250.00 | $250.00 |
| SSC | Sandra Calin | PARTNER | 18.40 | $250.00 | $4,600.00 |
| SJSK | Jeffrey S. Kramer | PARTNER | 1.80 | $250.00 | $450.00 |

| | | | |
|--|--|--|--|
| Total Fees | | $5,300.00 | |
| Total Cost Advanced | | $0.00 | |
| *Less Retainer Applied* | | | ($0.00) |
| **PAY THIS AMOUNT** | | | **$5,300.00** |

| | |
|---|---:|
| **Trust Balance** | **$0.00** |
| **Retainer Balance** | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

| | |
|---|---|
| **September 23, 2025** | |
| Matter: | L6604 |
| Invoice #: | 134734 |
| Page: | 1 |

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through August 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 8/1/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION TO CONTINUE TRIAL DATE AND REQUESTED CHANGES THERETO. | 0.50 | $125.00 |
| 8/1/2025 | SSC | ANALYZE DRAFT STIPULATION TO CONTINUE TRIAL DATE. | 0.20 | $50.00 |
| 8/1/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PLAINTIFFS' REQUEST FOR EXTENSION TO RESPOND TO OUR DISCOVERY. | 0.30 | $75.00 |
| 8/1/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 8/1/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 8/1/2025 | SSC | ANALYZE DETAILED DRAFT DECLARATION FROM OUR EXPERT RICK WATTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/1/2025 | SSC | ANALYZE FILED STIPULATION TO CONTINUE TRIAL. | 0.10 | $25.00 |
| 8/1/2025 | SSC | LEGAL RESEARCH REGARDING PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 2.10 | $525.00 |
| 8/1/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF CLIENT'S DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/1/2025 | SSC | ANALYZE DRAFT DECLARATION OF CLIENT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/2/2025 | SSC | PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 3.20 | $800.00 |

September 23, 2025
Matter:      L6604
Invoice #:   134734
Page:        2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 8/2/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CHANGES TO CLIENT'S DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/3/2025 | SSC | CONTINUED PREPARATION OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 3.30 | $825.00 |
| 8/3/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S DECLARATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.20 | $50.00 |
| 8/4/2025 | SSC | FINAL PREPARATION OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. | 1.40 | $350.00 |
| 8/4/2025 | SSC | PREPARATION OF DECLARATION OF COUNSEL IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.80 | $200.00 |
| 8/4/2025 | SSC | FINAL PREPARATION OF DECLARATION OF RICK WATTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.50 | $125.00 |
| 8/4/2025 | SSC | FINAL PREPARATION OF DECLARATION OF CLIENT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.60 | $150.00 |
| 8/4/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FINAL DECLARATION OF CLIENT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND EXHIBITS THERETO. | 0.40 | $100.00 |
| 8/4/2025 | SSC | PREPARATION OF EXHIBITS TO DECLARATION OF CLIENT IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/4/2025 | SSC | ANALYZE COURT'S ORDER GRANTING TRIAL CONTINUANCE. | 0.10 | $25.00 |
| 8/5/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN IN THE CASE AND CONTINUANCE OF THE TRIAL DATE. | 0.30 | $75.00 |
| 8/8/2025 | SSC | ANALYZE RESPONSES OF PLAINTIFF DEON TAYLOR TO REQUEST FOR ADMISSIONS, SET TWO. | 0.40 | $100.00 |
| 8/8/2025 | SSC | ANALYZE RESPONSES OF PLAINTIFF HIDDEN EMPIRE HOLDINGS TO SPECIAL INTERROGATORIES, SET TWO. | 0.50 | $125.00 |
| 8/8/2025 | SSC | ANALYZE RESPONSES OF THIRD PARTY DEFENDANT ROXANNE TAYLOR TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.40 | $100.00 |
| 8/8/2025 | SSC | ANALYZE RESPONSES OF PLAINTIFF DEON TAYLOR TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO. | 0.30 | $75.00 |
| 8/8/2025 | SSC | ANALYZE RESPONSES OF PLAINTIFF HIDDEN EMPIRE HOLDINGS TO REQUEST FOR ADMISSIONS, SET TWO. | 0.30 | $75.00 |
| 8/8/2025 | SSC | ANALYZE RESPONSES OF THIRD PARTY DEFENDANT ROXANNE TAYLOR TO REQUEST FOR ADMISSIONS, SET TWO. | 0.30 | $75.00 |

September 23, 2025
Matter:       L6604
Invoice #:    134734
Page:              3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 8/8/2025 | SSC | ANALYZE RESPONSES OF HYPER ENGINE LLC TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO. | 0.30 | $75.00 |
| 8/11/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' RECENT DISCOVERY RESPONSES. | 0.30 | $75.00 |
| 8/12/2025 | SSC | ANALYZE PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/12/2025 | SSC | ANALYZE DECLARATION OF PLAINTIFFS' EXPERT ERIN BURKE IN REPLY TO OUR OPPOSITION TO MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 8/12/2025 | SSC | LEGAL RESEARCH REGARDING CASES CITED IN PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR SUMMARY JUDGMENT. | 0.90 | $225.00 |
| 8/12/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING DECLARATION OF ERIN BURKE IN REPLY TO OUR OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 8/12/2025 | SSC | ANALYZE PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT. | 0.40 | $100.00 |
| 8/12/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND LATE FILED STATEMENT OF UNCONTROVERTED FACTS. | 0.40 | $100.00 |
| 8/12/2025 | SSC | ANALYZE DRAFT MOTION TO STRIKE PLAINTIFFS' LATE FILED STATEMENT OF UNCONTROVERTED FACTS, FROM CLIENT'S PERSONAL COUNSEL. | 0.30 | $75.00 |
| 8/12/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL AND CLIENT'S PERSONAL COUNSEL REGARDING RESPONSES BY PLAINTIFF DEON TAYLOR TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 8/12/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |
| 8/14/2025 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING PLAINTIFFS' REPLY TO OUR OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' EXPERT'S DECLARATION AT ORAL ARGUMENT ON MOTION. | 0.30 | $75.00 |
| 8/14/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.20 | $50.00 |
| 8/14/2025 | SSC | ANALYZE COURT'S ORDER STRIKING PLAINTIFFS' UNTIMELY STATEMENT OF UNCONTROVERTED FACTS. | 0.10 | $25.00 |
| 8/14/2025 | SSC | PRELIMINARY ANALYSIS FO EXTENSIVE DOCUMENTS PRODUCED BY MCGEE MEDIA IN RESPONSE TO SUBPOENA. | 0.50 | $125.00 |

September 23, 2025
Matter:        L6604
Invoice #:     134734
Page:              4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 8/15/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ARGUMENTS AT SAME. | 0.30 | $75.00 |
| 8/17/2025 | SSC | PREPARATION OF ORAL ARGUMENT FOR HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 1.20 | $300.00 |
| 8/18/2025 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR COURT (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.70 | $337.50 |
| 8/18/2025 | SSC | APPEAR IN COURT FOR HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 1.40 | $350.00 |
| 8/18/2025 | SSC | PREPARATION OF CORRESPONDENCE TO CARRIER REGARDING HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, STATUS OF THE CASE AND EVALUATION. | 0.50 | $125.00 |
| 8/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING RESULTS OF HEARING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. | 0.30 | $75.00 |
| 8/18/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING RESULT OF HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ADDITIONAL WORK TO BE DONE. | 0.30 | $75.00 |
| 8/18/2025 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 8/19/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 8/19/2025 | SSC | ANALYZE COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT. | 0.10 | $25.00 |
| 8/20/2025 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF THE CASE. | 0.20 | $50.00 |
| 8/20/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING COURT'S DENIAL OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DISCOVERY TO BE COMPLETED. | 0.30 | $75.00 |
| 8/21/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING FURTHER RESPONSES BY PLAINTIFF DEON TAYLOR TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.20 | $50.00 |
| 8/22/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN IN THE CASE. | 0.30 | $75.00 |
| 8/25/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING FURTHER RESPONSES BY PLAINTIFF DEON TAYLOR TO REQUEST FOR PRODUCTION OF DOCUMENTS. | 0.30 | $75.00 |
| 8/25/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING ADDITIONAL DEPOSITIONS OF THE PARTIES. | 0.20 | $50.00 |
| 8/25/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING SECOND SESSION OF HIS DEPOSITION AND CONDUCT OF SAME. | 0.30 | $75.00 |

September 23, 2025
Matter:      L6604
Invoice #:    134734
Page:            5

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 8/26/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN AND CONDUCT OF THE DEPOSITIONS. | 0.40 | $100.00 |
| 8/27/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION OF ROXANNE TAYLOR AND OBJECTIONS TO SAME. | 0.40 | $100.00 |
| 8/27/2025 | SRVD | REVIEW AND IDENTIFY DOCUMENTS PRODUCED BY MCGEE MEDIA. | 1.20 | $150.00 |
| 8/28/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING INFORMATION TO BE USED AT DEPOSITION OF ROXANNE TAYLOR. | 0.20 | $50.00 |
| 8/29/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING POSSIBLE SETTLEMENT DEMAND. | 0.20 | $50.00 |
| 8/29/2025 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING POSSIBLE SETTLEMENT DEMAND. | 0.10 | $25.00 |
| | | **Total Fees** | | **$8,412.50** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|------|------|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 31.70 | $250.00 | $7,925.00 |
| SSC | Sandra Calin | PARTNER | 2.70 | $125.00 | $337.50 |
| SRVD | Ronald Van Deusen | PARALEGAL | 1.20 | $125.00 | $150.00 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 8/18/2025 | MILEAGE- MILEAGE @ $0.70 PER MILE FOR APPEARANCE AT COURT HEARING IN LOS ANGELES  (72 MILES) (72 @  $0.70) | $50.40 |
| 8/18/2025 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT  COURT HEARING IN LOS ANGELES | $12.00 |
| | **Total Costs Advanced** | **$62.40** |

| | | |
|--|--|--|
| Total Fees | $8,412.50 | |
| Total Cost Advanced | $62.40 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$8,474.90** |

September 23, 2025
Matter:        L6604
Invoice #:     134734
Page:             6

---

**Trust Balance**                                                    **$0.00**
**Retainer Balance**                                               **$10.00**

*Please  include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed  24 months from the date on this invoice*

# KRAMER deBOER & KEANE

KDK Invoice

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**October 20, 2025**
Matter:      L6604
Invoice #:   134881
Page:        1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through September 29, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 9/2/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF ROXANNE TAYLOR AND SCOPE OF THE DEPOSITION. | 0.40 | $100.00 |
| 9/2/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING DEPOSITION OF ROXANNE TAYLOR, DOCUMENTS REQUESTED TO BE PRODUCED AT DEPOSITION, AND PLAINTIFFS' OBJECTIONS TO SAME. | 0.30 | $75.00 |
| 9/3/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TO BE TAKEN AND PREPARATION FOR SAME. | 0.40 | $100.00 |
| 9/3/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING SECOND SESSION OF DEPOSITION OF OUR CLIENT AND SCOPE OF SAME. | 0.20 | $50.00 |
| 9/3/2025 | SSC | ANALYZE AMENDED NOTICE OF DEPOSITION OF CLIENT. | 0.10 | $25.00 |
| 9/4/2025 | SSC | ANALYZE MEET AND CONFER CORRESPONDENCE FROM CLIENT'S PERSONAL COUNSEL TO PLAINTIFFS' COUNSEL REGARDING FURTHER RESPONSES TO DISCOVERY. | 0.20 | $50.00 |
| 9/5/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S DEPOSITION AND CONDUCT OF SAME. | 0.20 | $50.00 |
| 9/5/2025 | SSC | ANALYZE DEPOSITION TRANSCRIPT OF FIRST SESSION OF DEPOSITION OF OUR CLIENT DARRICK ANGELONE IN PREPARATION FOR SECOND SESSION OF HIS DEPOSITION. | 0.90 | $225.00 |
| 9/6/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING CLIENT'S DEPOSITION AND CONDUCT OF SAME. | 0.20 | $50.00 |
| 9/8/2025 | SSC | TRAVEL BETWEEN CALABASAS AND CENTURY CITY FOR DEPOSITION (54 MILES ROUND TRIP)- 1/2 BILL RATE. | 3.10 | $387.50 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 9/8/2025 | SSC | APPEAR AT DEPOSITION OF OUR CLIENT DARRICK ANGELONE, SECOND SESSION. | 4.10 | $1,025.00 |
| 9/8/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL AND COURT CLERK REGARDING INFORMAL DISCOVERY CONFERENCE TO ADDRESS PLAINTIFFS' RESPONSES TO DISCOVERY. | 0.30 | $75.00 |
| 9/8/2025 | SSC | ANALYZE MINUTE ORDER FROM COURT REGARDING INFORMAL DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 9/8/2025 | SJBA | REVIEW AND ANALYZE FEDERAL RULES OF CIVIL PROCEDURE 30(D) REGARDING WHETHER THERE IS AN EXCEPTION TO THE SEVEN HOUR DEPOSITION LIMIT FOR MULTI-PARTY CASES. | 1.00 | $235.00 |
| 9/9/2025 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING RESPONSES TO DISCOVERY PROPOUNDED BY PLAINTIFF. | 0.10 | $25.00 |
| 9/9/2025 | SSC | PREPARE FOR DEPOSITION OF ROXANNE TAYLOR. | 1.10 | $275.00 |
| 9/9/2025 | SSC | ANALYZE PLAINTIFFS' OBJECTIONS TO REQUEST FOR PRODUCTION OF DOCUMENTS AT DEPOSITION OF ROXANNE TAYLOR. | 0.20 | $50.00 |
| 9/10/2025 | SSC | ATTEND DEPOSITION OF ROXANNE TAYLOR IN OUR OFFICE (NO TRAVEL). | 9.20 | $2,300.00 |
| 9/12/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING INFORMAL DISCOVERY CONFERENCE AND JOINT AGENDA FOR SAME. | 0.30 | $75.00 |
| 9/15/2025 | SSC | ANALYZE PLAINTIFF FIRST AMENDED RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE. | 0.30 | $75.00 |
| 9/15/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT AGENDA FOR INFORMAL DISCOVERY CONFERENCE REGARDING PLAINTIFFS' DISCOVERY RESPONSES. | 0.20 | $50.00 |
| 9/15/2025 | SSC | ANALYZE FINAL JOINT AGENDA FOR INFORMAL DISCOVERY CONFERENCE. | 0.20 | $50.00 |
| 9/15/2025 | SSC | ANALYZE COURT ORDER REGARDING SUBPOENAS TO THIRD PARTIES. | 0.10 | $25.00 |
| 9/16/2025 | SSC | ANALYZE COURT'S MINUTE ORDER FOLLOWING INFORMAL DISCOVERY CONFERENCE. | 0.10 | $25.00 |
| 9/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| 9/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING COMPLETION OF DEPOSITION OF PLAINTIFF DEON TAYLOR AND SCOPE OF QUESTIONS AT SAME. | 0.30 | $75.00 |
| 9/22/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL TRIAL PREPARATION, DEPOSITIONS TO BE TAKEN AND FURTHER DISCOVERY. | 0.50 | $125.00 |

October 20, 2025

Matter:     L6604
Invoice #:    134881
Page:        3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 9/23/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING JOINT NOTICE TO COURT REGARDING CURRENT ESTIMATE FOR TRIAL PURSUANT TO COURT ORDER. | 0.30 | $75.00 |
| 9/23/2025 | SSC | ANALYZE TRANSCRIPT OF CLIENT'S DEPOSITION, SESSION TWO. | 0.80 | $200.00 |
| 9/26/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING HIS DEPOSITION TRANSCRIPT. | 0.30 | $75.00 |
| | | **Total Fees** | | **$6,047.50** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|---|---|---|---|
| SSC | Sandra Calin | PARTNER | 21.70 | $250.00 | $5,425.00 |
| SSC | Sandra Calin | PARTNER | 3.10 | $125.00 | $387.50 |
| SJBA | Jumana Bambot | ASSOCIATE | 1.00 | $235.00 | $235.00 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|---|---|---|
| 9/8/2025 | MILEAGE- MILEAGE @ $0.70 PER MILE FOR APPEARANCE AT DEPOSITION IN CENTURY CITY  (54 MILES) (54 @ $0.70) | $37.80 |
| 9/8/2025 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT DEPOSITION IN CENTURY CITY | $42.00 |
| | **Total Costs Advanced** | **$79.80** |

| | | |
|---|---|---|
| Total Fees | $6,047.50 | |
| Total Cost Advanced | $79.80 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$6,127.30** |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

*Please  include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed  24 months from the date on this invoice*

# KRAMER deBOER & KEANE

KDK Invoice

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: JOHN PETROSKI**

**November 18, 2025**
Matter:        L6604
Invoice #:     135017
Page:              1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through October 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 9/30/2025 | SSC | ANALYZE TRANSCRIPT OF DEPOSITION OF ROXANNE TAYLOR. | 0.80 | $200.00 |
| 9/30/2025 | SSC | PREPARATION OF CORRESPONDENCE TO CLIENT REGARDING DEPOSITION OF ROXANNE TAYLOR. | 0.30 | $75.00 |
| 9/30/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT NOTICE FOR TRIAL TO BE SUBMITTED TO THE COURT PURSUANT TO LOCAL COURT RULES. | 0.30 | $75.00 |
| 10/6/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING NOTICE TO THE COURT OF TRIAL ESTIMATES. | 0.30 | $75.00 |
| 10/6/2025 | SSC | ANALYZE PLAINTIFF'S NOTICE TO THE COURT REGARDING TRIAL ESTIMATES. | 0.10 | $25.00 |
| 10/6/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING NOTICE TO THE COURT REGARDING TRIAL ESTIMATES. | 0.20 | $50.00 |
| 10/8/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF TRIAL AND PREPARATION FOR SAME. | 0.30 | $75.00 |
| 10/20/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF TRIAL AND PREPARATION FOR TRIAL. | 0.30 | $75.00 |
| 10/21/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT, CLIENT'S PERSONAL COUNSEL AND PARALEGAL RETAINED BY CLIENT TO ASSIST WITH TRIAL PREPARATION. | 0.30 | $75.00 |
| 10/22/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING STATUS OF THE CASE AND PREPARATION FOR TRIAL. | 0.30 | $75.00 |
| 10/23/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFFS' COUNSEL REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |

November 18, 2025
Matter:         L6604
Invoice #:      135017
Page:               2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 10/23/2025 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING STATUS OF THE CASE, TRIAL PREPARATION, DEPOSITION OF PLAINTIFFS' EXPERT AND PREPARATION FOR SAME, AND ADDITIONAL WORK REQUIRED TO PREPARE FOR TRIAL. | 0.50 | $125.00 |
| 10/23/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL AND PARALEGAL RETAINED BY CLIENT REGARDING DOCUMENTS NEEDED FOR TRIAL PREPARATION. | 0.30 | $75.00 |
| 10/28/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS AND PREPARATION FOR TRIAL. | 0.40 | $100.00 |
| 10/29/2025 | SSC | DETAILED ANALYSIS OF FILE REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN, PRETRIAL DOCUMENTS TO BE FILED AND PREPARATION FOR TRIAL. | 2.80 | $700.00 |
| 10/30/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FURTHER TRIAL PREPARATION AND TAKING OF ADDITIONAL DEPOSITIONS. | 0.30 | $75.00 |
| 10/30/2025 | SSC | DETAILED ANALYSIS OF DISCOVERY COMPLETED AND DEPOSITIONS TAKEN TO DETERMINE MOTIONS IN LIMINE TO BE FILED. | 1.70 | $425.00 |
| 10/31/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING TRIAL PREPARATION AND ADDITIONAL DEPOSITIONS TO BE TAKEN. | 0.30 | $75.00 |
| | | **Total Fees** | | **$2,450.00** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|------|------|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 9.80 | $250.00 | $2,450.00 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 10/7/2025 | VERITEXT- DEPOSITION COSTS - INVOICE #- 8672870 - ROXANNE TAYLOR | $2,291.50 |
| | **Total Costs Advanced** | **$2,291.50** |

November 18, 2025

Matter: L6604
Invoice #: 135017
Page: 3

| | | |
|---|---|---|
| Total Fees | $2,450.00 | |
| Total Cost Advanced | $2,291.50 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$4,741.50** |
| | | |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

KDK Invoice

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: JOHN PETROSKI**

**December 05, 2025**
Matter:      L6604
Invoice #:   135075
Page:        1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc



For Professional Services Rendered Through November 30, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 11/3/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DEPOSITIONS, PREPARATION OF MOTIONS IN LIMINE AND PREPARATION FOR TRIAL. | 0.60 | $150.00 |
| 11/4/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING TRIAL PREPARATION, JOINT MEETING TO DISCUSS PRE-TRIAL DOCUMENTS AND MOTIONS TO BE FILED. | 0.50 | $125.00 |
| 11/5/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE SUBMITTED TO THE COURT. | 0.40 | $100.00 |
| 11/7/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING EXCHANGE OF REQUIRED PRE-TRIAL DOCUMENTS AND MEETING TO DISCUSS TRIAL ISSUES AS REQUIRED BY THE COURT. | 0.40 | $100.00 |
| 11/10/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE EXCHANGED. | 0.30 | $75.00 |
| 11/10/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS AND PROPOSED JURY INSTRUCTIONS. | 0.40 | $100.00 |
| 11/10/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH PARALEGAL RETAINED BY CLIENT REGARDING TRIAL DOCUMENTS AND PREPARATION OF SAME. | 0.50 | $125.00 |
| 11/12/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS. | 0.30 | $75.00 |
| 11/13/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS. | 0.30 | $75.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 11/13/2025 | SSC | ANALYZE CLIENT'S EXTENSIVE PROPOSED LIST OF TRIAL WITNESSES AND SUBSTANCE OF THEIR TESTIMONY. | 0.40 | $100.00 |
| 11/14/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DOCUMENTS NEEDED FOR JOINT MEETING OF COUNSEL. | 0.20 | $50.00 |
| 11/14/2025 | SSC | ANALYZE EXTENSIVE DOCUMENTS FROM CLIENT REGARDING FACTUAL ISSUES IN THE CASE AND POSSIBLE PRE-TRIAL STIPULATIONS. | 0.50 | $125.00 |
| 11/14/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PRE-TRIAL MEETING OF COUNSEL AND ISSUES TO BE DISCUSSED. | 0.30 | $75.00 |
| 11/14/2025 | SSC | ANALYZE CLIENT'S EXTENSIVE PROPOSED MOTIONS IN LIMINE AND GROUNDS FOR SAME. | 0.40 | $100.00 |
| 11/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DOCUMENTS FOR JOINT PRE-TRIAL MEETING OF COUNSEL. | 0.30 | $75.00 |
| 11/17/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING ADDITIONAL WORK TO BE DONE BEFORE TRIAL. | 0.30 | $75.00 |
| 11/17/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING REQUIRED JOINT MEETING OF COUNSEL AND PRE-TRIAL DOCUMENTS TO BE EXCHANGED. | 0.30 | $75.00 |
| 11/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE EXCHANGED WITH ALL COUNSEL. | 0.30 | $75.00 |
| 11/18/2025 | SSC | PREPARATION OF PROPOSED JURY INSTRUCTIONS. | 1.40 | $350.00 |
| 11/19/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING REQUIRED EXCHANGE OF DOCUMENTS PRIOR TO JOINT MEETING OF COUNSEL REQUIRED BY COURT PRIOR TO TRIAL. | 0.40 | $100.00 |
| 11/19/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF JURY INSTRUCTIONS. | 0.50 | $125.00 |
| 11/20/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DOCUMENTS TO BE EXCHANGED PRIOR TO JOINT MEETING OF COUNSEL. | 0.30 | $75.00 |
| 11/20/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE EXCHANGED PRIOR TO JOINT MEETING OF COUNSEL. | 0.30 | $75.00 |
| 11/20/2025 | SSC | LEGAL RESEARCH REGARDING FEDERAL COURT JURY INSTRUCTIONS FOR COPYRIGHT INFRINGEMENT AND COMPUTER FRAUD. | 1.40 | $350.00 |
| 11/21/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING PRE-TRIAL JOINT MEETING OF COUNSEL AND DOCUMENTS TO BE EXCHANGED.. | 0.40 | $100.00 |
| 11/21/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PROPOSED JURY INSTRUCTIONS. | 0.40 | $100.00 |

December 05, 2025

Matter: L6604
Invoice #: 135075
Page: 3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 11/24/2025 | SSC | ANALYZE DEPOSITION MATRIX FROM CLIENT'S PARALEGAL IN PREPARATION FOR CROSS-EXAMINATION OF WITNESSES AT TRIAL. | 0.50 | $125.00 |
| 11/24/2025 | SSC | ANALYZE FINAL JURY INSTRUCTIONS FROM CLIENT'S PERSONAL COUNSEL. | 0.50 | $125.00 |
| 11/24/2025 | SSC | PREPARE FOR JOINT MEETING OF COUNSEL REGARDING PRE-TRIAL DOCUMENTS, POSSIBLE STIPULATIONS AND EXCHANGE OF JURY INSTRUCTIONS. | 0.80 | $200.00 |
| 11/24/2025 | SSC | PARTICIPATE IN JOINT MEETING OF COUNSEL BY VIDEO CONFERENCE TO DISCUSS PRE-TRIAL DOCUMENTS, POSSIBLE STIPULATIONS AND EXCHANGE OF JURY INSTRUCTIONS. | 0.30 | $75.00 |
| 11/24/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS, MOTIONS IN LIMINE AND CONTENTIONS OF FACT AND LAW TO BE FILED WITH THE COURT. | 0.40 | $100.00 |
| 11/24/2025 | SSC | ANALYZE DETAILED CONTENTIONS OF LAW AND FACT FROM CLIENT'S PERSONAL COUNSEL TO BE FILED WITH THE COURT. | 0.40 | $100.00 |
| 11/25/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING MEMORANDUM OF CONTENTIONS OF FACT AND LAW TO BE FILED WITH THE COURT AND CONTENTS OF SAME. | 0.20 | $50.00 |
| 11/25/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT, CLIENT'S PARALEGAL AND CLIENT'S PERSONAL COUNSEL REGARDING EXHIBIT LIST OF DOCUMENTS TO BE INTRODUCED INTO EVIDENCE AT TRIAL AND SUGGESTED MOTIONS IN LIMINE. | 0.60 | $150.00 |
| 11/25/2025 | SSC | ANALYZE PROPOSED LIST OF EXHIBITS TO BE USED AT TRIAL. | 0.30 | $75.00 |
| 11/25/2025 | SSC | LEGAL RESEARCH REGARDING PREPARATION OF MOTIONS IN LIMINE. | 2.10 | $525.00 |
| 11/26/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE FILED. | 0.30 | $75.00 |
| 11/26/2025 | SSC | TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING MOTIONS IN LIMINE TO BE FILED AND PREPARATION OF SAME. | 0.20 | $50.00 |
| 11/26/2025 | SSC | PREPARATION OF MOTION IN LIMINE TO PRECLUDE EVIDENCE REGARDING INSURANCE. | 2.10 | $525.00 |
| 11/26/2025 | SSC | PREPARATION OF MOTION IN LIMINE TO PRECLUDE REFERENCE TO ICELANDIC DOMAINS AND EMOTIONALLY CHARGE LANGUAGE. | 2.80 | $700.00 |
| 11/26/2025 | SSC | PREPARATION OF MOTION IN LIMINE TO LIMIT EXPERT'S TESTIMONY TO THEIR TESTIMONY AT DEPOSITION. | 2.40 | $600.00 |
| 11/26/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING MOTIONS IN LIMINE TO BE FILED. | 0.40 | $100.00 |
| 11/28/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT REGARDING ADDITIONAL MOTION IN LIMINE AND PREPARATION FOR DEPOSITION OF DEON TAYLOR. | 0.40 | $100.00 |

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

Hiscox, Usa

**Attention: RAJIV BATRA**

**January 22, 2026**
Matter: L6604
Invoice #: 135335
Page: 1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

For Professional Services Rendered Through December 31, 2025

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 12/1/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF EXHIBIT LIST FOR TRIAL. | 0.60 | $150.00 |
| 12/1/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING JOINT TRIAL DOCUMENTS AND PREPARATION OF SAME. | 0.50 | $125.00 |
| 12/1/2025 | SSC | ANALYZE PLAINTIFFS' DETAILED MEMORANDUM OF CONTENTIONS OF FACT AND LAW. | 0.50 | $125.00 |
| 12/1/2025 | SSC | ANALYZE FINAL JOINT EXHIBIT LIST FILED WITH THE COURT. | 0.60 | $150.00 |
| 12/1/2025 | SSC | ANALYZE PLAINTIFFS' WITNESS LIST FILED WITH THE COURT. | 0.30 | $75.00 |
| 12/1/2025 | SSC | ANALYZE PLAINTIFFS' PROPOSED VERDICT FORM. | 0.30 | $75.00 |
| 12/1/2025 | SSC | ANALYZE MOTION IN LIMINE FROM CLIENT'S PERSONAL COUNSEL TO EXCLUDE DOCUMENTS NOT PRODUCED IN DISCOVERY. | 0.50 | $125.00 |
| 12/1/2025 | SSC | ANALYZE MOTION IN LIMINE FROM CLIENT'S PERSONAL COUNSEL TO EXCLUDE EVIDENCE OF UNDISCLOSED OR SPECULATIVE DAMAGES. | 0.40 | $100.00 |
| 12/2/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE FILED WITH THE COURT. | 0.50 | $125.00 |
| 12/2/2025 | SSC | ANALYZE PLAINTIFF'S DETAILED TRIAL VERDICT FORM. | 0.70 | $175.00 |
| 12/2/2025 | SSC | ANALYZE PROPOSED UNDISPUTED FACTS FROM CLIENT. | 0.40 | $100.00 |
| 12/3/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE FILED WITH THE COURT. | 0.50 | $125.00 |
| 12/3/2025 | SSC | ANALYZE PROPOSED VERDICT FORMS. | 0.40 | $100.00 |

January 22, 2026
Matter:       L6604
Invoice #:    135335
Page:              2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 12/3/2025 | SSC | RESEARCH REGARDING LOCAL RULES CONCERNING DOCUMENTS TO BE FILED WITH THE COURT PRIOR TO PRE-TRIAL STATUS CONFERENCE. | 0.30 | $75.00 |
| 12/3/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT REGARDING ADDITIONAL DEPOSITIONS TO BE TAKEN IN THE CASE TO PREPARE FOR TRIAL. | 0.50 | $125.00 |
| 12/3/2025 | SSC | ANALYZE FILE REGARDING TAKING OF EXPERT DEPOSITIONS, INFORMATION NEEDED FOR DEPOSITION OF PLAINTIFF'S EXPERT AND PREPARATION FOR DEPOSITION OF OUR EXPERT. | 0.80 | $200.00 |
| 12/3/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING PREPARATION FOR DEPOSITION OF PLAINTIFF'S EXPERT. | 0.40 | $100.00 |
| 12/3/2025 | SSC | DETAILED ANALYSIS OF FILE IN PREPARATION OF UPDATED CASE ANALYSIS REPORT TO CARRIER. | 2.10 | $525.00 |
| 12/4/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING JOINT EXHIBIT LIST TO BE FILED WITH THE COURT AND OUR EXHIBITS TO BE USED AT TRIAL. | 0.40 | $100.00 |
| 12/4/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PROPOSED JURY INSTRUCTIONS AND FILING OF JOINT PRE-TRIAL DOCUMENTS PRIOR TO PRE-TRIAL STATUS CONFERENCE. | 0.40 | $100.00 |
| 12/4/2025 | SSC | ANALYZE EXTENSIVE PROPOSED OBJECTIONS TO PLAINTIFF'S EXHIBITS TO BE INTRODUCED AT TRIAL. | 0.50 | $125.00 |
| 12/4/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING OBJECTIONS TO PLAINTIFF'S EXHIBITS TO BE USED AT TRIAL. | 0.30 | $75.00 |
| 12/4/2025 | SSC | PREPARATION OF UPDATED CASE ANALYSIS REPORT TO CARRIER. | 2.30 | $575.00 |
| 12/5/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING COURT-REQUIRED MEET AND CONFER TO DISCUSS PRE-TRIAL DOCUMENTS. | 0.30 | $75.00 |
| 12/5/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING EXHIBITS TO BE USED AT TRIAL AND OBJECTIONS TO SAME. | 0.40 | $100.00 |
| 12/5/2025 | SSC | PREPARE FOR CONFERENCE CALL WITH ALL COUNSEL REGARDING JOINT PRE-TRIAL DOCUMENTS TO BE FILED WITH THE COURT. | 0.50 | $125.00 |
| 12/5/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING JOINT PRE-TRIAL DOCUMENTS TO BE FILED WITH THE COURT. | 0.40 | $100.00 |
| 12/8/2025 | SSC | ANALYZE PLAINTIFFS' PROPOSED JURY INSTRUCTIONS. | 0.80 | $200.00 |
| 12/8/2025 | SSC | ANALYZE PLAINTIFF'S EXTENSIVE PROPOSED JURY VERDICT FORM. | 0.60 | $150.00 |

January 22, 2026
Matter:        L6604
Invoice #:     135335
Page:              3

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 12/8/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING DEPOSITION OF PLAINTIFFS' EXPERT ERIN BURKE AND SCOPE OF SAME. | 0.30 | $75.00 |
| 12/8/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING SUBMISSION OF PRE-TRIAL DOCUMENTS TO COURT. | 0.40 | $100.00 |
| 12/8/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING JOINT JURY INSTRUCTIONS, VERDICT FORM, EXHIBIT LISTS AND WITNESS LISTS TO BE SUBMITTED TO THE COURT PRIOR TO PRE-TRIAL STATUS CONFERENCE. | 1.30 | $325.00 |
| 12/8/2025 | SSC | ANALYZE DEPOSITION TRANSCRIPT OF FIRST SESSION OF DEPOSITION OF DEON TAYLOR IN PREPARATION FOR SECOND SESSION OF HIS DEPOSITION. | 1.70 | $425.00 |
| 12/8/2025 | SSC | PREPARATION OF EXAMINATION OF PLAINTIFF DEON TAYLOR AT SECOND SESSION OF HIS DEPOSITION. | 1.20 | $300.00 |
| 12/8/2025 | SSC | PREPARATION OF EXHIBITS TO BE USED AT DEPOSITION OF DEON TAYLOR, SECOND SESSION. | 0.50 | $125.00 |
| 12/8/2025 | SSC | PREPARATION OF CORRESPONDENCE TO OUR EXPERT RICK WATTS REGARDING TAKING OF HIS DEPOSITION, SCOPE OF SAME AND PREPARATION FOR DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.20 | $50.00 |
| 12/9/2025 | SSC | TAKE DEPOSITION OF PLAINTIFF DEON TAYLOR BY VIDEO CONFERENCE. | 5.80 | $1,450.00 |
| 12/9/2025 | SSC | ANALYZE PLAINTIFF'S OPPOSITION TO OUR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF INSURANCE AND THE FINANCIAL STATUS OF DEFENDANT. | 0.40 | $100.00 |
| 12/9/2025 | SSC | ANALYZE PLAINTIFF'S OPPOSITION TO OUR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PREJUDICIAL ALLEGATIONS. | 0.40 | $100.00 |
| 12/9/2025 | SSC | ANALYZE PLAINTIFF'S OPPOSITION TO OUR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DOCUMENTS NOT PRODUCED IN DISCOVERY. | 0.50 | $125.00 |
| 12/9/2025 | SSC | ANALYZE PLAINTIFF'S OPPOSITION TO OUR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SPECULATIVE DAMAGES. | 0.40 | $100.00 |
| 12/9/2025 | SSC | ANALYZE PLAINTIFF'S OPPOSITION TO OUR MOTION IN LIMINE TO EXCLUDE EXPERT OPINIONS NOT TESTIFIED TO IN DEPOSITION. | 0.30 | $75.00 |
| 12/9/2025 | SSC | ANALYZE PLAINTIFF'S PROPOSED JURY INSTRUCTIONS FILED WITH THE COURT. | 0.30 | $75.00 |
| 12/9/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING PREPARATION FOR DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.30 | $75.00 |
| 12/9/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING PRE-TRIAL DOCUMENTS TO BE FILED WITH THE COURT. | 0.30 | $75.00 |

January 22, 2026

| | |
|---|---|
| Matter: | L6604 |
| Invoice #: | 135335 |
| Page: | 4 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 12/10/2025 | SSC | ANALYZE EXTENSIVE DOCUMENTS FROM OUR CLIENT'S PERSONAL COUNSEL PRODUCED IN RESPONSE TO SUBPOENAS. | 1.30 | $325.00 |
| 12/10/2025 | SSC | ANALYZE JURY VERDICT FORM FILED WITH THE COURT BY PLAINTIFFS. | 0.40 | $100.00 |
| 12/10/2025 | SSC | PREPARE FOR TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING DEPOSITION OF PLAINTIFFS EXPERT ERIN BURKE AND PREPARATION FOR SAME. | 0.90 | $225.00 |
| 12/10/2025 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS TO PREPARE FOR TAKING OF DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 1.30 | $325.00 |
| 12/10/2025 | SSC | ANALYZE DOCUMENTS FROM OUR EXPERT RICK WATTS TO PREPARE FOR DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.30 | $75.00 |
| 12/11/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING INFORMATION NEEDED FROM CLIENT TO SUPPORT HIS OPINIONS. | 0.30 | $75.00 |
| 12/11/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING JOINT PRETRIAL CONFERENCE ORDER. | 0.50 | $125.00 |
| 12/11/2025 | SSC | ANALYZE PLAINTIFFS' DRAFT JOINT PRETRIAL CONFERENCE ORDER. | 0.30 | $75.00 |
| 12/11/2025 | SSC | ANALYZE PROPOSED AMENDMENTS TO JOINT PRETRIAL CONFERENCE ORDER FROM OUR CLIENT'S PERSONAL COUNSEL. | 0.20 | $50.00 |
| 12/11/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING INFORMATION REQUESTED BY OUR EXPERT RICK WATTS. | 0.30 | $75.00 |
| 12/12/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL AND COURT CLERK REGARDING UPCOMING PRETRIAL CONFERENCE AND FILING OF JOINT PRETRIAL CONFERENCE ORDER. | 0.30 | $75.00 |
| 12/12/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING INFORMATION REQUESTED BY OUR EXPERT. | 0.30 | $75.00 |
| 12/12/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING INFORMATION FROM OUR CLIENT TO BE USED IN FINALIZING HIS OPINIONS. | 0.30 | $75.00 |
| 12/12/2025 | SSC | ANALYZE FINAL JOINT PRETRIAL CONFERENCE ORDER FILED WITH THE COURT. | 0.30 | $75.00 |
| 12/15/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE AND PREPARATION FOR HER DEPOSITION. | 0.30 | $75.00 |
| 12/15/2025 | SSC | ANALYZE ROUGH TRANSCRIPT OF DEPOSITION DEON TAYLOR, SESSION TWO. | 0.90 | $225.00 |
| 12/15/2025 | SSC | DETAILED ANALYSIS OF PLEADINGS AND PREVIOUS DECLARATION BY PLAINTIFF'S EXPERT ERIN BURKE IN PREPARATION FOR HER DEPOSITION. | 2.10 | $525.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 12/15/2025 | SSC | PREPARATION OF EXAMINATION AT DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 1.20 | $300.00 |
| 12/16/2025 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING UPCOMING DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.40 | $100.00 |
| 12/16/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING UPCOMING DEPOSITIONS AND HIS ATTENDANCE AT SAME. | 0.20 | $50.00 |
| 12/16/2025 | SSC | TAKE DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE BY VIDEO CONFERENCE. | 2.70 | $675.00 |
| 12/16/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING STIPULATIONS PRIOR TO TRIAL. | 0.30 | $75.00 |
| 12/16/2025 | SSC | ANALYZE NOTICE OF TAKING DEPOSITION OF RICK WATTS. | 0.10 | $25.00 |
| 12/16/2025 | SSC | ANALYZE SUBPOENA AND NOTICE OF TAKING DEPOSITION OF SEAN MILLER. | 0.10 | $25.00 |
| 12/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING DEPOSITIONS TAKEN TO DATE AND ADDITIONAL DEPOSITION TO BE COMPLETED. | 0.30 | $75.00 |
| 12/17/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS DEPOSITION AND CONDUCT OF SAME. | 0.30 | $75.00 |
| 12/17/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING DEPOSITION OF OUR EXPERT RICK WATTS AND CONDUCT OF SAME. | 0.40 | $100.00 |
| 12/17/2025 | SSC | ANALYZE ROUGH TRANSCRIPT OF DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.80 | $200.00 |
| 12/17/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING ROUGH TRANSCRIPT OF DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.20 | $50.00 |
| 12/17/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING EXPERT WITNESS FEE FOR DEPOSITION OF ERIN BURKE. | 0.20 | $50.00 |
| 12/17/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF SEAN MILLER AND PREPARATION OF EXAMINATION FOR SAME. | 0.40 | $100.00 |
| 12/17/2025 | SSC | ANALYSIS OF EXHIBITS FROM CLIENT TO BE USED AT DEPOSITION OF SEAN MILLER. | 0.50 | $125.00 |
| 12/18/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS DEPOSITION AND CONDUCT OF SAME. | 0.20 | $50.00 |
| 12/18/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING DEPOSITION OF OUR EXPERT RICK WATTS AND CONDUCT OF SAME. | 0.20 | $50.00 |
| 12/18/2025 | SSC | PREPARATION OF EXAMINATION AT DEPOSITION OF SEAN MILLER. | 0.90 | $225.00 |

January 22, 2026

| | |
|---|---|
| Matter: | L6604 |
| Invoice #: | 135335 |
| Page: | 6 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 12/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF SEAN MILLER AND SCOPE OF THE EXAMINATION AT SAME. | 0.30 | $75.00 |
| 12/18/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL EXAMINATION QUESTIONS AT DEPOSITION OF SEAN MILLER. | 0.50 | $125.00 |
| 12/18/2025 | SSC | PARTICIPATE IN TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS TO PREPARE FOR HIS DEPOSITION. | 0.60 | $150.00 |
| 12/19/2025 | SSC | PARTICIPATE IN DEPOSITION OF OUR EXPERT RICK WATTS BY VIDEO CONFERENCE. | 1.60 | $400.00 |
| 12/19/2025 | SSC | PARTICIPATE IN DEPOSITION OF WITNESS SEAN MILLER BY VIDEO CONFERENCE. | 1.20 | $300.00 |
| 12/19/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITION OF SEAN MILLER. | 0.30 | $75.00 |
| 12/19/2025 | SSC | EXCHANGE E-MAILS WITH PLAINTIFF'S COUNSEL REGARDING SUBPOENAS FOR TRIAL WITNESSES. | 0.20 | $50.00 |
| 12/19/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING TRIAL WITNESSES AND STIPULATIONS PRIOR TO TRIAL. | 0.30 | $75.00 |
| 12/21/2025 | SSC | ANALYZE MOTIONS IN LIMINE AND PREPARATION OF ARGUMENT AT PRETRIAL STATUS CONFERENCE. | 2.70 | $675.00 |
| 12/21/2025 | SSC | PREPARE FOR PRETRIAL STATUS CONFERENCE. | 0.70 | $175.00 |
| 12/21/2025 | SSC | LEGAL RESEARCH REGARDING CASES CITED IN MOTIONS IN LIMINE TO PREPARE FOR ORAL ARGUMENT. | 1.30 | $325.00 |
| 12/22/2025 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR PRETRIAL STATUS CONFERENCE (72 MILES ROUND TRIP). | 2.60 | $650.00 |
| 12/22/2025 | SSC | PARTICIPATE IN CONFERENCE WITH ALL COUNSEL PRIOR TO PRETRIAL STATUS CONFERENCE REGARDING POSSIBLE STIPULATIONS. | 0.50 | $125.00 |
| 12/22/2025 | SSC | APPEAR IN COURT FOR PRETRIAL STATUS CONFERENCE. | 0.70 | $175.00 |
| 12/22/2025 | SSC | ANALYZE NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL FOR PLAINTIFFS. | 0.10 | $25.00 |
| 12/22/2025 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING STATUS OF THE TRIAL. | 0.30 | $75.00 |
| 12/22/2025 | SSC | ANALYZE COURT'S ORDER REGARDING RULINGS ON MOTIONS IN LIMINE. | 0.20 | $50.00 |
| 12/22/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING SUBMISSION OF FINAL TRIAL DOCUMENTS TO COURT. | 0.30 | $75.00 |
| 12/23/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING TRIAL STRATEGY AND WITNESSES TO CALL. | 0.50 | $125.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 12/23/2025 | SSC | ANALYZE COURT'S FINAL ORDERS ON MOTIONS IN LIMINE FOLLOWING ARGUMENT OF COUNSEL. | 0.20 | $50.00 |
| 12/23/2025 | SSC | EXCHANGE NUMEROUS E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING WITNESSES TO BE CALLED AT TRIAL, DOCUMENTS TO BE INTRODUCED INTO EVIDENCE AT TRIAL AND PREPARATION OF DOCUMENTS TO BE FILED WITH THE COURT PURSUANT TO THE COURT'S TRIAL ORDERS. | 0.70 | $175.00 |
| 12/23/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING STATUS OF PLAINTIFF HYPER ENGINE LLC AND SUSPENSION BY THE FRANCHISE TAX BOARD. | 0.30 | $75.00 |
| 12/23/2025 | SSC | LEGAL RESEARCH REGARDING EFFECT OF SUSPENSION BY THE FRANCHISE TAX BOARD OF ONE OF THE PLAINTIFFS. | 1.20 | $300.00 |
| 12/23/2025 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF THE CASE AND UPCOMING TRIAL. | 0.30 | $75.00 |
| 12/23/2025 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING CONFERENCE CALL WITH CARRIER REGARDING STATUS OF THE TRIAL. | 0.30 | $75.00 |
| 12/23/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING WITNESSES TO BE CALLED TO TESTIFY AT TRIAL. | 0.40 | $100.00 |
| 12/23/2025 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PRIOR SETTLEMENT DEMANDS. | 0.30 | $75.00 |
| 12/23/2025 | SSC | PREPARE FOR CONFERENCE CALL WITH CARRIER AND CLIENT. | 0.50 | $125.00 |
| 12/23/2025 | SRVD | ASSIST ATTORNEY FOR PREPARATION FOR TRIAL:  ASSEMBLE TRIAL BINDERS. | 4.70 | $587.50 |
| 12/24/2025 | SSC | TELEPHONE CONFERENCE WITH CARRIER REGARDING STATUS OF THE CASE, UPCOMING TRIAL AND CONFERENCE CALL WITH CLIENT. | 0.30 | $75.00 |
| 12/24/2025 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CARRIER, CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING UPCOMING TRIAL AVAILABLE POLICY LIMITS AND FURTHER HANDLING OF THE CASE. | 0.70 | $175.00 |
| 12/24/2025 | SSC | TELEPHONE CONFERENCE WITH CARRIER FOLLOWING CONFERENCE CALL WITH CLIENT. | 0.10 | $25.00 |
| 12/26/2025 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING DEPOSITIONS TAKEN IN THE CASE AND EVIDENCE AT TRIAL REGARDING DEPOSITION TESTIMONY. | 0.40 | $100.00 |
| 12/26/2025 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION PLAINTIFF DEON TAYLOR, VOLUME ONE. | 2.20 | $550.00 |
| 12/26/2025 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION PLAINTIFF DEON TAYLOR, VOLUME TWO. | 1.90 | $475.00 |
| 12/26/2025 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION THIRD PARTY DEFENDANT ROXANNE TAYLOR. | 3.10 | $775.00 |
| 12/29/2025 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION WITNESS DARRELL THOMPSON. | 1.00 | $250.00 |

January 22, 2026
Matter:     L6604
Invoice #:   135335
Page:          8

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 12/29/2025 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION CLIENT DARRICK ANGELONE, VOLUME ONE. | 2.10 | $525.00 |
| 12/29/2025 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION CLIENT DARRICK ANGELONE, VOLUME TWO. | 2.30 | $575.00 |
| 12/30/2025 | SSC | DETAILED ANALYSIS OF FILE IN PREPARATION OF PRETRIAL REPORT TO CARRIER. | 2.10 | $525.00 |
| 12/30/2025 | SSC | PREPARATION OF PRETRIAL REPORT TO CARRIER. | 2.70 | $675.00 |
| 12/30/2025 | SSC | PREPARATION OF PROPOSED STATEMENT OF THE CASE TO BE READ TO THE JURY. | 0.60 | $150.00 |
| 12/31/2025 | SSC | PREPARATION OF REVISED VERDICT FORM PURSUANT TO COURT'S ORDERS AT PRETRIAL STATUS CONFERENCE. | 2.30 | $575.00 |
| 12/31/2025 | SSC | ANALYSIS OF CURRENT WITNESS LIST AND PREPARATION OF REVISED WITNESS LIST TO REDUCE NUMBER OF WITNESSES AT TRIAL. | 1.30 | $325.00 |
| 12/31/2025 | SSC | ANALYSIS OF CURRENT EXTENSIVE EXHIBIT LIST AND PREPARATION OF REVISED EXHIBIT LIST TO REDUCE NUMBER OF EXHIBITS AT TRIAL. | 3.20 | $800.00 |

| | **Total Fees** | **$24,737.50** |
|--|--|--|

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|--|--|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 96.60 | $250.00 | $24,150.00 |
| SRVD | Ronald Van Deusen | PARALEGAL | 4.70 | $125.00 | $587.50 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 10/3/2025 | NETWORK DEPOSITION SERVICES, INC.- DEPOSITION COSTS - INVOICE #- A25100212 - DARRICK ROBERT ANGELONE - VOLUME 2 - WE DID NOT NOTICE THIS DEPO | $588.45 |
| 12/15/2025 | SILENT STACK CYBERSECURITY LLC- WITNESS FEE - CHECK #- 47024 - APPROVED BY RAJIV BATRA | $1,450.00 |
| 12/22/2025 | MILEAGE- MILEAGE @ $0.70 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (74 MI) (72 @ $0.70) | $50.40 |
| 12/22/2025 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $12.00 |

| | Total Costs Advanced | $2,100.85 |
|--|--|--|

January 22, 2026
Matter:        L6604
Invoice #:     135335
Page:          9

| | |
|---|---|
| Total Fees | $24,737.50 |
| Total Cost Advanced | $2,100.85 |
| *Less Retainer Applied* | ($0.00) |
| **PAY THIS AMOUNT** | **$26,838.35** |
| | |
| **Trust Balance** | **$0.00** |
| **Retainer Balance** | **$10.00** |

*Please include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed 24 months from the date on this invoice*

# KRAMER deBOER & KEANE

A LIMITED LIABILITY PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS

74770 Highway 111 Suite 201
Indian Wells, CA 92210
Telephone: (760) 776-1226
http://www.kdeklaw.com
Tax I.D. Number 95-3931157

KDK Invoice

Hiscox, Usa

**Attention: RAJIV BATRA**

**February 12, 2026**
Matter:       L6604
Invoice #:    135456
Page:             1

RE: Hidden Empire Holdings, Llc V. Darrick Angelone, Et Al.
Claim Number: 100.205.070A
Your Insured: Aone Entertainment, Llc

For Professional Services Rendered Through February 12, 2026

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 1/2/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PRETRIAL CONFERENCE ORDER REQUIREMENTS AND MEET AND CONFER TO DISCUSS SAME. | 0.40 | $100.00 |
| 1/2/2026 | SSC | ANALYZE PROPOSED UNDISPUTED FACTS FROM CLIENT'S PERSONAL COUNSEL. | 0.40 | $100.00 |
| 1/2/2026 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION SEAN MILLER. | 0.80 | $200.00 |
| 1/2/2026 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION ERIN BURKE. | 1.60 | $400.00 |
| 1/2/2026 | SSC | PREPARATION OF PAGE-LINE INDEX OF DEPOSITION RICK WATTS. | 1.50 | $375.00 |
| 1/5/2026 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING EACH PARTY'S TRIAL EXHIBITS AND EXCHANGE OF SAME. | 0.50 | $125.00 |
| 1/5/2026 | SSC | PRELIMINARY ANALYSIS OF PLAINTIFFS' PROPOSED TRIAL EXHIBITS. | 1.20 | $300.00 |
| 1/5/2026 | SSC | ANALYZE TRANSCRIPT OF HEARING OF MOTION FOR TERMINATING SANCTIONS. | 0.50 | $125.00 |
| 1/5/2026 | SSC | ANALYZE TRANSCRIPT OF DEPOSITION OF PLAINTIFF'S EXPERT ERIN BURKE. | 0.50 | $125.00 |
| 1/5/2026 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT, CLIENT'S PERSONAL COUNSEL AND CLIENT'S PARALEGAL REGARDING OUR PROPOSED TRIAL EXHIBITS AND PREPARATION OF EXHIBIT BINDERS TO COMPLY WITH COURT'S REQUIREMENTS. | 0.50 | $125.00 |
| 1/5/2026 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL TO DISCUSS UPCOMING PRETRIAL CONFERENCE, STIPULATIONS PRIOR TO TRIAL AND JOINT PRETRIAL DOCUMENTS TO BE FILED WITH THE COURT. | 0.40 | $100.00 |

February 12, 2026

Matter: L6604
Invoice #: 135456
Page: 2

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 1/5/2026 | SSC | ANALYZE AMENDED WITNESS LIST AND TIME ESTIMATES FOR TRIAL TESTIMONY TO BE FILED WITH THE COURT. | 0.30 | $75.00 |
| 1/6/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PROPOSED STATEMENT OF THE CASE AND REQUESTED CHANGES THERETO. | 0.30 | $75.00 |
| 1/6/2026 | SSC | PREPARATION OF REVISED STATEMENT OF THE CASE. | 0.30 | $75.00 |
| 1/6/2026 | SSC | EXCHANGE E-MAILS WITH OUR WITNESS RICK WATTS REGARDING STATUS OF TRIAL AND HIS EXPECTED TESTIMONY. | 0.20 | $50.00 |
| 1/6/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING REVISED JOINT WITNESS LIST. | 0.30 | $75.00 |
| 1/6/2026 | SSC | ANALYZE REVISED JOINT WITNESS LIST. | 0.30 | $75.00 |
| 1/6/2026 | SSC | ANALYZE FINAL JOINT WITNESS LIST FILED BY PLAINTIFFS. | 0.30 | $75.00 |
| 1/6/2026 | SSC | ANALYZE FINAL JOINT STATEMENT OF THE CASE FILED BY PLAINTIFFS. | 0.20 | $50.00 |
| 1/6/2026 | SSC | ANALYZE REVISED PROPOSED JOINT VERDICT FORM FROM PLAINTIFFS' COUNSEL. | 0.50 | $125.00 |
| 1/6/2026 | SSC | EXCHANGE NUMEROUS E-MAILS WITH ALL COUNSEL REGARDING REVISED JOINT VERDICT FORM AND PROPOSED CHANGES THERETO. | 0.60 | $150.00 |
| 1/6/2026 | SSC | EXCHANGE MULTIPLE E-MAILS WITH ALL COUNSEL REGARDING JOINT PROPOSED UNDISPUTED FACTS AND OBJECTIONS THERETO. | 0.40 | $100.00 |
| 1/6/2026 | SSC | ANALYZE PLAINTIFFS' PROPOSED JOINT UNDISPUTED FACTS. | 0.30 | $75.00 |
| 1/6/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DOCUMENTS TO BE INCLUDED IN OUR TRIAL EXHIBIT BINDERS. | 0.30 | $75.00 |
| 1/6/2026 | SSC | PREPARE FOR PRETRIAL STATUS CONFERENCE. | 0.80 | $200.00 |
| 1/6/2026 | SRVD | ASSIST ATTORNEY IN PREPARATION FOR TRIAL - TRIALS BOOKS. | 0.80 | $100.00 |
| 1/7/2026 | SSC | DETAILED TELEPHONE CONFERENCE WITH CLIENT'S PERSONAL COUNSEL REGARDING UPCOMING PRETRIAL STATUS CONFERENCE AND ISSUES TO RAISE WITH THE COURT. | 0.40 | $100.00 |
| 1/7/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING UPCOMING PRETRIAL CONFERENCE AND ISSUES TO BE RAISED AT SAME. | 0.40 | $100.00 |
| 1/7/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR COURT (72 MILES ROUND TRIP) - 1/2 TRAVEL RATE. | 2.40 | $300.00 |
| 1/7/2026 | SSC | APPEAR IN COURT FOR PRETRIAL STATUS CONFERENCE. | 1.30 | $325.00 |
| 1/7/2026 | SSC | ANALYZE COURT'S MINUTES REGARDING FINAL PRETRIAL CONFERENCE. | 0.10 | $25.00 |

February 12, 2026

| | | |
|---|---|---|
| Matter: | L6604 |
| Invoice #: | 135456 |
| Page: | 3 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 1/7/2026 | SSC | ANALYZE FURTHER REVISED JURY VERDICT FORM FROM PLAINTIFFS' COUNSEL AND PREPARATION OF REVISIONS THERETO. | 0.50 | $125.00 |
| 1/7/2026 | SRVD | ASSIST ATTORNEY FOR PREPARATION FOR TRIAL - REVIEW TRIAL BINDER DOCUMENTS PROVIDED BY OUR CLIENT. | 4.20 | $525.00 |
| 1/8/2026 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING STATUS OF TRIAL AND PREPARATION FOR HIS TESTIMONY. | 0.20 | $50.00 |
| 1/8/2026 | SSC | ANALYZE INFORMATION FROM CLIENT REGARDING ASSET OWNERSHIP OF PLAINTIFF ENTITIES AND DOCUMENTATION FOR SAME. | 0.40 | $100.00 |
| 1/8/2026 | SSC | DETAILED ANALYSIS OF DOCUMENTS TO BE INCLUDED IN OUR EXHIBIT BINDERS TO BE SUBMITTED TO THE COURT. | 3.20 | $800.00 |
| 1/8/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL DOCUMENTS TO BE USED AS EXHIBITS AT TRIAL. | 0.30 | $75.00 |
| 1/8/2026 | SRVD | FURTHER WORK ON REVIEWING CLIENT DOCUMENTS TO BE INCLUDED IN TRIAL BINDERS. | 4.90 | $612.50 |
| 1/8/2026 | SRVD | NUMEROUS TELEPHONE CALLS TO COPY SERVICE REGARDING SPECIFICATIONS FOR TRIAL BINDER PROJECT. | 0.30 | $37.50 |
| 1/9/2026 | SSC | EXCHANGE NUMEROUS E-MAILS WITH CLIENT, CLIENT'S PERSONAL COUNSEL AND CLIENT'S PARALEGAL REGARDING DOCUMENTS TO BE INTRODUCED AS EXHIBITS AT TRIAL AND COMPILATION OF EXHIBIT BINDERS TO BE LODGED WITH THE COURT. | 1.20 | $300.00 |
| 1/9/2026 | SSC | ANALYZE REVISED JOINT EXHIBIT LIST TO BE FILED WITH THE COURT. | 0.40 | $100.00 |
| 1/9/2026 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING TRIAL STATUS. | 0.30 | $75.00 |
| 1/9/2026 | SSC | TELEPHONE CONFERENCE WITH CARRIER REGARDING TRIAL STATUS AND PREPARATION. | 0.10 | $25.00 |
| 1/9/2026 | SSC | ANALYZE REVISED JOINT EXHIBIT LIST TO BE FILED WITH THE COURT. | 0.30 | $75.00 |
| 1/9/2026 | SRVD | REVIEW/ANALYZE JOINT EXHIBIT LIST PREPARED BY JUSTIN KHAN FIRM. | 1.60 | $200.00 |
| 1/9/2026 | SRVD | REVIEW FURTHER DOCUMENTS FOR FORMATTING FROM KAHN FIRM FOR TRIAL BINDERS. | 4.70 | $587.50 |
| 1/10/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING JOINT EXHIBIT LIST AND SPECIFIC EXHIBITS TO BE USED AT TRIAL. | 0.30 | $75.00 |
| 1/10/2026 | SSC | EXCHANGE NUMEROUS E-MAILS WITH CLIENT, CLIENT'S PERSONAL COUNSEL AND CLIENT'S PARALEGAL REGARDING PREPARATION OF EXHIBIT BINDERS TO BE LODGED WITH THE COURT AND DOCUMENTS TO BE INCLUDED IN THE EXHIBITS. | 1.40 | $350.00 |

February 12, 2026
Matter:       L6604
Invoice #:    135456
Page:              4

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 1/10/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DIRECT EXAMINATION OF CLIENT AT TRIAL. | 0.30 | $75.00 |
| 1/10/2026 | SSC | ANALYZE PROPOSED DETAILED EXAMINATION OF CLIENT AT TRIAL BY CLIENT'S PERSONAL COUNSEL. | 0.50 | $125.00 |
| 1/11/2026 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING TRIAL EXHIBITS TO BE USED AT TRIAL. | 1.20 | $300.00 |
| 1/12/2026 | SSC | EXCHANGE MULTIPLE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF BINDERS OF TRIAL EXHIBITS TO BE LODGED WITH THE COURT. | 0.60 | $150.00 |
| 1/12/2026 | SSC | EXCHANGE E-MAILS WITH COURT CLERK REGARDING TRIAL STATUS. | 0.20 | $50.00 |
| 1/12/2026 | SSC | ANALYZE ADDITIONAL DOCUMENTS FROM CLIENT'S PERSONAL COUNSEL TO BE ADDED TO EXHIBITS TO BE USED AT TRIAL. | 0.30 | $75.00 |
| 1/12/2026 | SRVD | REVIEW, ANALYZE AND SUMMARIZE INVOICES FROM PLAINTIFF'S EXPERT IN SCHEDULE TO BE USED AT TRIAL. | 3.10 | $387.50 |
| 1/12/2026 | SRVD | NUMEROUS TELEPHONE CALLS WITH COPY SERVICE (X4) REGARDING EXPECTATIONS REGARDING COMPLETIONS OF TRIAL BINDER PROJECT WITH CHANGES STILL COMING IN. | 0.30 | $37.50 |
| 1/12/2026 | SRVD | REVIEW 26 MORE DOCUMENTS PROVIDED BY KAHN FIRM TO BE ADDED TO TRIAL BINDERS. | 1.80 | $225.00 |
| 1/12/2026 | SRVD | REVIEW EMAILS FROM CLIENT DERRICK ANGELONE REGARDING MISSING EXHIBITS IN BINDERS. | 0.30 | $37.50 |
| 1/12/2026 | SRVD | REVIEW LAST 100 DOCUMENTS FOR TRIAL BINDERS THAT WERE FORWARDED BY CLIENT DERRICK ANGELONE. | 0.90 | $112.50 |
| 1/13/2026 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING FILING OF VERDICT FORM AND JURY INSTRUCTIONS. | 0.10 | $25.00 |
| 1/13/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PROPOSED VERDICT FORM AND JURY INSTRUCTIONS. | 0.40 | $100.00 |
| 1/13/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING PLAINTIFF'S PROPOSED POWER POINT PRESENTATION FOR OPENING STATEMENT AND OUR OBJECTIONS THERETO. | 0.50 | $125.00 |
| 1/13/2026 | SSC | ANALYZE PLAINTIFFS' PROPOSED POWER POINT PRESENTATION FOR OPENING STATEMENT. | 0.40 | $100.00 |
| 1/13/2026 | SSC | ANALYZE REVISED VERDICT FORM. | 0.30 | $75.00 |
| 1/13/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING WITNESSES TO BE CALLED AT TRIAL AND AMENDED WITNESS LISTS. | 0.40 | $100.00 |
| 1/13/2026 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS DEPOSITION TRANSCRIPT AND REVIEW OF SAME. | 0.30 | $75.00 |
| 1/13/2026 | SSC | PREPARE FOR VOIR DIRE EXAMINATION OF THE JURY. | 1.40 | $350.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 1/13/2026 | SSC | PREPARATION OF OPENING STATEMENT. | 2.60 | $650.00 |
| 1/13/2026 | SSC | ANALYZE PLAINTIFFS' REVISED OPENING STATEMENT POWER POINT PRESENTATION. | 0.30 | $75.00 |
| 1/13/2026 | SRVD | TELEPHONE CALL AND EMAILS TO COPY SERVICE REGARDING LAST ADDITIONS TO TRIAL BINDERS. | 0.60 | $75.00 |
| 1/13/2026 | SRVD | PREPARATION OF INSTRUCTIONS TO COPY SERVICE TO DELIVER TRIAL BINDERS DIRECTLY TO THE TRIAL COURT. | 0.20 | $25.00 |
| 1/13/2026 | SRVD | CORRECT ISSUES WITH DOWNLOAD OF ELLEN BURKE'S DEPOSITION TESTIMONY BECAUSE OF SIZE OF FILE. | 0.80 | $100.00 |
| 1/14/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP).\ - 1/2 TRAVEL RATE. | 2.60 | $325.00 |
| 1/14/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 8.20 | $2,050.00 |
| 1/14/2026 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF TRIAL. | 0.20 | $50.00 |
| 1/14/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING ADDITIONAL EXHIBITS TO BE USED AT TRIAL. | 0.30 | $75.00 |
| 1/14/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.40 | $100.00 |
| 1/14/2026 | SSC | PREPARATION OF EXAMINATION OF ROXANNE TAYLOR AT TRIAL. | 1.60 | $400.00 |
| 1/15/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.70 | $337.50 |
| 1/15/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.10 | $1,775.00 |
| 1/15/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL TRIAL EXHIBITS TO BE USED AT TRIAL. | 0.30 | $75.00 |
| 1/15/2026 | SSC | ANALYZE DAILY MINUTE ORDER FROM COURT REGARDING TRIAL. | 0.10 | $25.00 |
| 1/15/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.50 | $125.00 |
| 1/15/2026 | SSC | ANALYZE TRIAL NOTES FOR THE DAY'S TESTIMONY. | 0.80 | $200.00 |
| 1/15/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.60 | $150.00 |
| 1/15/2026 | SSC | PREPARATION OF CROSS-EXAMINATION OF PLAINTIFF'S EXPERT ERIN BURKE. | 1.60 | $400.00 |
| 1/16/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.30 | $287.50 |
| 1/16/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 6.10 | $1,525.00 |
| 1/16/2026 | SSC | ANALYZE TRIAL NOTES. | 0.60 | $150.00 |
| 1/16/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.60 | $150.00 |

February 12, 2026

| | |
|---|---|
| Matter: | L6604 |
| Invoice #: | 135456 |
| Page: | 6 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|---|---|---|---|---|
| 1/16/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING OBJECTIONS TO PLAINTIFFS' TRIAL EXHIBITS. | 0.30 | $75.00 |
| 1/16/2026 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 1/16/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT'S PERSONAL COUNSEL REGARDING TESTIMONY OF PLAINTIFF AT TRIAL AND THEIR DEPOSITION TESTIMONY. | 0.30 | $75.00 |
| 1/16/2026 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING TRIAL TESTIMONY BY PLAINTIFF'S EXPERT ERIN BURKE. | 0.30 | $75.00 |
| 1/19/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING PREPARATION OF EXAMINATION OF OUR EXPERT RICK WATTS. | 0.30 | $75.00 |
| 1/19/2026 | SSC | ANALYZE CLIENT'S NOTES REGARDING EXAMINATION OF OUR EXPERT RICK WATTS AT TRIAL. | 0.30 | $75.00 |
| 1/19/2026 | SSC | ANALYZE DETAILED EXAMINATION OF PLAINTIFF DEON TAYLOR BY CLIENT'S PERSONAL COUNSEL. | 0.30 | $75.00 |
| 1/19/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING DEPOSITION TRANSCRIPT OF PLAINTIFF DEON TAYLOR. | 0.20 | $50.00 |
| 1/19/2026 | SSC | ANALYZE IMPEACHMENT MATRIX OF DEPOSITION OF ROXANNE TAYLOR IN PREPARATION FOR HER CROSS-EXAMINATION. | 0.40 | $100.00 |
| 1/19/2026 | SSC | ANALYZE IMPEACHMENT MATRIX OF DEPOSITION OF DEON TAYLOR IN PREPARATION FOR HIS CROSS-EXAMINATION. | 0.50 | $125.00 |
| 1/19/2026 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING CLIENT'S REQUEST FOR CONFERENCE PRIOR TO HIS TESTIMONY. | 0.10 | $25.00 |
| 1/19/2026 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CLIENT, CLIENT'S PERSONAL COUNSEL AND OUR EXPERT RICK WATTS REGARDING SUBSTANCE OF MR. WATTS' TRIAL TESTIMONY. | 0.50 | $125.00 |
| 1/19/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATIONS TO CERTAIN EXHIBITS. | 0.30 | $75.00 |
| 1/19/2026 | SSC | PREPARATION OF CROSS-EXAMINATION OF PLAINTIFF DEON TAYLOR AT TRIAL. | 1.50 | $375.00 |
| 1/20/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.20 | $275.00 |
| 1/20/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.20 | $1,800.00 |
| 1/20/2026 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 1/20/2026 | SSC | ANALYZE REVISED FINAL EXHIBIT LIST OF EXHIBITS TO BE INTRODUCED AT TRIAL. | 0.40 | $100.00 |
| 1/20/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING NEXT TRIAL WITNESSES TO BE CALLED. | 0.20 | $50.00 |

February 12, 2026
Matter:        L6604
Invoice #:     135456
Page:          7

---

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 1/20/2026 | SSC | ANALYZE INFORMATION FROM OUR EXPERT RICK WATTS REGARDING HIS TRIAL TESTIMONY. | 0.30 | $75.00 |
| 1/20/2026 | SSC | TELEPHONE CONFERENCE WITH OUR EXPERT RICK WATTS REGARDING PREPARATION FOR HIS TRIAL TESTIMONY. | 1.10 | $275.00 |
| 1/20/2026 | SSC | ANALYZE TRIAL NOTES FROM THE DAY'S TESTIMONY. | 0.50 | $125.00 |
| 1/20/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.60 | $150.00 |
| 1/20/2026 | SSC | PREPARATION OF CROSS-EXAMINATION OF WITNESS QUINCY NEWELL. | 0.90 | $225.00 |
| 1/20/2026 | SSC | PREPARATION OF EXAMINATION OF OUR EXPERT RICK WATTS. | 0.90 | $225.00 |
| 1/20/2026 | SSC | PREPARATION OF EXAMINATION OF OUR CLIENT  ANGELONE. | 0.50 | $125.00 |
| 1/21/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.40 | $300.00 |
| 1/21/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.90 | $1,975.00 |
| 1/21/2026 | SSC | ANALYZE COURT'S REVISED JURY INSTRUCTIONS. | 0.50 | $125.00 |
| 1/21/2026 | SSC | ANALYZE TRIAL NOTES FROM THE DAY'S TESTIMONY. | 0.50 | $125.00 |
| 1/21/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.60 | $150.00 |
| 1/22/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.30 | $287.50 |
| 1/22/2026 | SSC | APPEAR IN COURT FOR TRIAL, BUT TRIAL WAS NOT CONDUCTED - DUE TO POWER OUTAGE. | 0.70 | $175.00 |
| 1/22/2026 | SSC | EXCHANGE MULTIPLE E-MAILS WITH COURT CLERK AND ALL COUNSEL REGARDING STATUS OF TRIAL. | 0.50 | $125.00 |
| 1/22/2026 | SSC | ANALYZE COURT'S DAILY MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 1/22/2026 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING HIS FURTHER WORK ON THIS CASE. | 0.20 | $50.00 |
| 1/22/2026 | SSC | EXCHANGE E-MAILS WITH CARRIER REGARDING STATUS OF THE TRIAL. | 0.30 | $75.00 |
| 1/23/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT REGARDING RAISING ISSUE OF STATUS OF HIDDEN EMPIRE FILM GROUP LLC. | 0.30 | $75.00 |
| 1/23/2026 | SSC | ANALYZE COURT'S NOTICE OF STATUS CONFERENCE TO DISCUSS JURY INSTRUCTIONS AND VERDICT FORMS. | 0.10 | $25.00 |
| 1/23/2026 | SSC | EXCHANGE E-MAILS WITH COURT CLERK AND ALL COUNSEL REGARDING STATUS CONFERENCE TO DISCUSS JURY INSTRUCTIONS AND VERDICT FORMS. | 0.30 | $75.00 |
| 1/23/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING DOCUMENTS CONCERNING CORPORATE STATUS OF PLAINTIFF HIDDEN EMPIRE FILM GROUP LLC. | 0.30 | $75.00 |
| 1/23/2026 | SSC | BEGIN PREPARATION OF CLOSING ARGUMENT. | 2.30 | $575.00 |

February 12, 2026
Matter:       L6604
Invoice #:    135456
Page:          8

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 1/26/2026 | SSC | ANALYZE NOTICE FROM THE COURT REGARDING FILING OF TRANSCRIPT FROM PRIOR COURT HEARING. | 0.10 | $25.00 |
| 1/26/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL AND COURT CLERK REGARDING VIRTUAL HEARING TO DISCUSS JURY INSTRUCTIONS AND VERDICT FORMS. | 0.30 | $75.00 |
| 1/26/2026 | SSC | ANALYZE COURT'S VERDICT FORMS. | 0.20 | $50.00 |
| 1/26/2026 | SSC | ANALYZE COURT'S REVISED JURY INSTRUCTIONS. | 0.40 | $100.00 |
| 1/26/2026 | SSC | LEGAL RESEARCH REGARDING REVISING PROPOSED JURY INSTRUCTIONS. | 0.40 | $100.00 |
| 1/26/2026 | SSC | PREPARE FOR COURT HEARING REGARDING JURY INSTRUCTIONS AND VERDICT FORMS. | 0.50 | $125.00 |
| 1/26/2026 | SSC | APPEAR IN COURT BY VIDEO CONFERENCE FOR DISCUSSION WITH THE JUDGE REGARDING JURY INSTRUCTIONS AND VERDICT FORMS. | 1.60 | $400.00 |
| 1/26/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING AMENDED JURY INSTRUCTIONS AS DISCUSSED WITH THE COURT IN CONFERENCE. | 0.30 | $75.00 |
| 1/26/2026 | SSC | TELEPHONE CONFERENCE WITH PLAINTIFF'S COUNSEL REGARDING REVISION OF JURY INSTRUCTIONS AS DISCUSSED WITH THE COURT. | 0.30 | $75.00 |
| 1/26/2026 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING POSSIBLE REBUTTAL TESTIMONY BY PLAINTIFF'S EXPERT. | 0.30 | $75.00 |
| 1/27/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.30 | $287.50 |
| 1/27/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 8.20 | $2,050.00 |
| 1/27/2026 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 1/27/2026 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT RICK WATTS REGARDING ANTICIPATED TESTIMONY OF PLAINTIFF'S EXPERT IN REBUTTAL. | 0.30 | $75.00 |
| 1/27/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.60 | $150.00 |
| 1/27/2026 | SSC | ANALYZE REVISED JURY INSTRUCTIONS AND VERDICT FORMS. | 0.40 | $100.00 |
| 1/27/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING ADDITIONAL EXHIBITS TO BE INTRODUCED INTO EVIDENCE AT TRIAL. | 0.30 | $75.00 |
| 1/27/2026 | SSC | ANALYZE TRIAL NOTES AND PREPARE FOR ADDITIONAL EXAMINATION AT TRIAL. | 0.50 | $125.00 |
| 1/28/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.10 | $262.50 |
| 1/28/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.90 | $1,975.00 |
| 1/28/2026 | SSC | ANALYZE COURT'S DAILY MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|------------------------|-------|--------|
| 1/28/2026 | SSC | ANALYZE FINAL JURY INSTRUCTIONS AND VERDICT FORMS. | 0.30 | $75.00 |
| 1/28/2026 | SSC | ANALYZE TRIAL NOTES AND PREPARE FOR FURTHER EXAMINATION. | 0.50 | $125.00 |
| 1/28/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.50 | $125.00 |
| 1/28/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING FINAL EXHIBIT LIST OF ADMITTED EXHIBITS. | 0.30 | $75.00 |
| 1/29/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.40 | $300.00 |
| 1/29/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.80 | $1,950.00 |
| 1/29/2026 | SSC | ANALYZE FINAL PRETRIAL CONFERENCE ORDER FROM THE COURT. | 0.20 | $50.00 |
| 1/29/2026 | SSC | ANALYZE COURT'S DAILY MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 1/29/2026 | SSC | ANALYZE TRIAL NOTES. | 0.40 | $100.00 |
| 1/29/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.50 | $125.00 |
| 1/29/2026 | SSC | PREPARATION OF CLOSING ARGUMENT. | 1.80 | $450.00 |
| 1/30/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.30 | $287.50 |
| 1/30/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.80 | $1,950.00 |
| 1/30/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT. | 0.40 | $100.00 |
| 2/2/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.40 | $300.00 |
| 2/2/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 7.30 | $1,825.00 |
| 2/2/2026 | SSC | PREPARATION OF DAILY TRIAL REPORT TO CARRIER. | 0.30 | $75.00 |
| 2/2/2026 | SSC | ANALYZE COURT'S MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 2/2/2026 | SSC | ANALYZE COURT'S AMENDED MINUTES OF STATUS OF JURY TRIAL. | 0.10 | $25.00 |
| 2/3/2026 | SSC | TRAVEL BETWEEN CALABASAS AND LOS ANGELES FOR TRIAL (72 MILES ROUND TRIP)- 1/2 TRAVEL RATE. | 2.60 | $325.00 |
| 2/3/2026 | SSC | APPEAR IN COURT FOR TRIAL. | 8.70 | $2,175.00 |
| 2/3/2026 | SSC | PREPARATION OF CORRESPONDENCE TO CARRIER REGARDING TRIAL RESULT. | 0.20 | $50.00 |
| 2/5/2026 | SSC | ANALYZE COURT'S DAILY MINUTE ORDER REGARDING TRIAL. | 0.10 | $25.00 |
| 2/5/2026 | SSC | TELEPHONE CONFERENCE WITH CARRIER REGARDING TRIAL VERDICT AND POST TRIAL ISSUES. | 0.20 | $50.00 |
| 2/5/2026 | SSC | EXCHANGE E-MAILS WITH CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING POST-TRIAL ISSUES. | 0.30 | $75.00 |

February 12, 2026
Matter:       L6604
Invoice #:    135456
Page:         10

## ATTORNEY FEES

| Date | Person | Description of Services | Hours | Amount |
|------|--------|-------------------------|-------|--------|
| 2/5/2026 | SSC | PARTICIPATE IN CONFERENCE CALL WITH ALL COUNSEL REGARDING BRIEFING OF POST TRIAL MOTIONS. | 0.40 | $100.00 |
| 2/5/2026 | SSC | EXCHANGE E-MAILS WITH OUR EXPERT REGARDING STATUS OF THE CASE. | 0.20 | $50.00 |
| 2/5/2026 | SSC | EXCHANGE E-MAILS WITH CARRIER, CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FURTHER HANDLING OF THE CASE. | 0.30 | $75.00 |
| 2/6/2026 | SSC | ANALYZE MULTIPLE MINUTE ORDERS FROM THE COURT REGARDING TRIAL SUBMISSIONS AND VERDICTS. | 0.30 | $75.00 |
| 2/6/2026 | SSC | EXCHANGE E-MAILS WITH COURT CLERK AND ALL COUNSEL REGARDING FILED VERDICT FORMS. | 0.30 | $75.00 |
| 2/9/2026 | SSC | EXCHANGE E-MAILS WITH CARRIER, CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING FURTHER HANDLING OF THE CASE. | 0.30 | $75.00 |
| 2/10/2026 | SSC | PARTICIPATE IN CONFERENCE CALL WITH CARRIER, CLIENT AND CLIENT'S PERSONAL COUNSEL REGARDING POST TRIAL MOTIONS. | 0.70 | $175.00 |
| 2/10/2026 | SSC | EXCHANGE E-MAILS WITH ALL COUNSEL REGARDING STIPULATION REGARDING HEARING OF POST TRIAL MOTIONS. | 0.30 | $75.00 |
| 2/10/2026 | SSC | PREPARATION OF NOTICE OF CHANGE OF COUNSEL FOR REPRESENTATION OF DEFENDANTS. | 0.40 | $100.00 |

|  |  | **Total Fees** | | **$46,837.50** |

## ATTORNEY TIME AND FEE SUMMARY

| | | Level | Hours | Rate | Amount |
|---|---|-------|-------|------|--------|
| SSC | Sandra Calin | PARTNER | 31.00 | $125.00 | $3,875.00 |
| SSC | Sandra Calin | PARTNER | 159.60 | $250.00 | $39,900.00 |
| SRVD | Ronald Van Deusen | PARALEGAL | 24.50 | $125.00 | $3,062.50 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 1/7/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/7/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/14/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 1/14/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/15/2026 | NETWORK DEPOSITION SERVICES, INC.- DEPOSITION COSTS - INVOICE #- A26010970 - SAEN MILLER - VOL 1 | $622.75 |
| 1/15/2026 | NETWORK DEPOSITION SERVICES, INC.- DEPOSITION COSTS - INVOICE #- A26010964 - RICHARD A. WATTS - VOL 1 | $705.70 |
| 1/15/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/15/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/16/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/16/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/19/2026 | AMY DIAZ- COURT REPORTER FEES - CHECK #- 47502 - FEDERAL COURT TRANSCRIBER - TRANSCRIPT OF ERIN BURKE 1-16-26 (TRIAL) | $321.90 |
| 1/19/2026 | AMY DIAZ- COURT REPORTER FEES - CHECK #- 47025 - FEDERAL COURT TRANSCRIPT | $204.75 |
| 1/20/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/20/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/21/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/21/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/22/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/22/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/27/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/27/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/28/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |
| 1/28/2026 | PARKING/TOLLS- PARKING/TOLLS FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/29/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES (72 MILES) (72 @ $0.725) | $52.20 |

February 12, 2026

Matter:      L6604
Invoice #:   135456
Page:          12

## COSTS ADVANCED

| Date | Description of Costs Advanced | Amount |
|------|-------------------------------|--------|
| 1/29/2026 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 1/30/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES  (72 MILES) (72 @ $0.725) | $52.20 |
| 1/30/2026 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 2/2/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES  (72 MILES) (72 @ $0.725) | $52.20 |
| 2/2/2026 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |
| 2/3/2026 | MILEAGE- MILEAGE @ $0.725 PER MILE FOR APPEARANCE AT COURT IN LOS ANGELES  (72 MILES) (72 @ $0.725) | $52.20 |
| 2/3/2026 | PARKING/TOLLS- PARKING/TOLLS  FOR ATTENDANCE AT COURT IN LOS ANGELES | $10.00 |

|  |  |
|--|--|
| Total Costs Advanced | $2,663.70 |

| | | |
|--|--|--|
| Total Fees | $46,837.50 | |
| Total Cost Advanced | $2,663.70 | |
| *Less Retainer Applied* | | ($0.00) |
| **PAY THIS AMOUNT** | | **$49,501.20** |
| **Trust Balance** | | **$0.00** |
| **Retainer Balance** | | **$10.00** |

*Please  include this remittance with your payment.*
*Costs received after closing date will appear on a supplemental final bill.*
*This file will be destroyed  24 months from the date on this invoice*

| Type | Payee | Payment Amount | Invoice Date | Invoice Number | Mode of Payment | Check/EFT Reference Number | Creation Date | Processed Date | Status | Record Only Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| Defense | Veritext LLC | $995.00 | 2026-01-09 00:01:00 | 8924817 | Wire | 5828900042JO | 2026-02-10 19:20:58 | 2026-02-10 19:24:03 | Disbursed | |
| Defense | Veritext LLC | $1,413.00 | 2025-12-31 00:01:00 | 8905287 | Wire | 5831000042JO | 2026-02-10 19:14:25 | 2026-02-10 19:18:44 | Disbursed | |
| Defense | Veritext LLC | $1,488.70 | 2026-01-05 00:01:00 | 8915179 | Wire | 5827400042JO | 2026-02-10 19:07:32 | 2026-02-10 19:11:56 | Disbursed | |
| Defense | Quandary Peak Research Inc | $18,987.24 | 2026-02-04 00:01:00 | INV26762 | Wire | 5828300042JO | 2026-02-10 13:31:23 | 2026-02-10 13:36:58 | Disbursed | |
| Defense | Integrity Legal Corp. | $7,324.41 | 2026-01-16 00:01:00 | 151249 | Check | 4553851377 | 2026-01-21 08:21:42 | 2026-01-21 08:24:37 | Disbursed | |
| Defense | Quandary Peak Research Inc | $13,304.00 | 2026-01-06 00:01:00 | 26695 | Wire | 5439200021JO | 2026-01-20 17:15:31 | 2026-01-20 17:19:51 | Disbursed | |
| Defense | Veritext LLC | $2,220.85 | 2025-12-29 00:01:00 | 8898897 | Wire | 2527900002JO | 2025-12-31 13:02:11 | 2025-12-31 13:07:20 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $235.00 | 2025-10-20 00:01:00 | 134881 | Wire | 3200300324JO | 2025-11-19 08:25:57 | 2025-11-19 08:27:58 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $5,892.30 | 2025-10-20 00:01:00 | 134881 | Wire | 1489700315JO | 2025-11-10 08:53:32 | 2025-11-10 08:55:48 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $125.00 | 2025-08-20 00:01:00 | 134547 | Wire | 2575500308JO | 2025-11-03 03:41:33 | 2025-11-03 03:43:03 | Disbursed | |
| Defense | Quandary Peak Research Inc | $4,663.70 | 2025-08-04 00:01:00 | INV26234 | Wire | 1966300273JO | 2025-09-29 14:46:48 | 2025-09-29 14:53:03 | Disbursed | |
| Defense | Quandary Peak Research Inc | $5,225.00 | 2025-09-08 00:01:00 | INV26350 | Wire | 1965000273JO | 2025-09-29 14:39:37 | 2025-09-29 14:43:39 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $4,700.00 | 2025-07-28 00:01:00 | 134365 | Wire | 1637000210JO | 2025-07-28 23:28:52 | 2025-07-28 23:30:23 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,942.50 | 2025-06-12 00:01:00 | 134191 | Wire | 2241300188JO | 2025-07-03 07:54:33 | 2025-07-03 07:56:15 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $2,048.50 | 2025-04-21 00:01:00 | 133932 | Wire | 1557000154JO | 2025-06-02 11:54:05 | 2025-06-02 11:56:26 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $8,412.38 | 2025-04-21 00:01:00 | 133932 | Wire | 1906100128JO | 2025-05-06 15:47:54 | 2025-05-06 15:52:43 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $10,030.50 | 2024-12-09 00:01:00 | 133175 | Wire | 1815800092JO | 2025-04-01 17:41:51 | 2025-04-01 17:45:43 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $5,767.72 | 2025-03-14 00:01:00 | 133691 | Wire | 1704100087JO | 2025-03-27 10:24:16 | 2025-03-27 10:29:16 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $5,107.00 | 2025-02-20 00:01:00 | 133557 | Wire | 1601700066JO | 2025-03-06 10:30:19 | 2025-03-06 10:33:27 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $3,150.00 | 2025-01-14 00:01:00 | 133335 | Wire | 1968800031JO | 2025-01-30 08:41:25 | 2025-01-30 08:42:57 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $932.40 | 2024-11-20 00:01:00 | 133025 | Wire | 3477800014JO | 2025-01-13 16:25:00 | 2025-01-13 16:28:10 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $5,650.00 | 2024-11-20 00:01:00 | 133025 | Wire | 1300000346JO | 2024-12-10 16:18:07 | 2024-12-10 16:23:21 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $3,350.00 | 2024-10-16 00:01:00 | 132804 | Wire | 2408700306JO | 2024-10-31 12:35:05 | 2024-10-31 12:36:34 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $2,837.50 | 2024-09-24 00:01:00 | 132706 | Wire | 1811200285JO | 2024-10-10 03:49:28 | 2024-10-10 03:51:00 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,500.00 | 2024-01-12 00:01:00 | 130008 | Wire | 3248800257JO | 2024-09-12 09:46:51 | 2024-09-12 09:48:18 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,050.00 | 2023-11-27 00:01:00 | 129718 | Wire | 3234200257JO | 2024-09-12 09:44:27 | 2024-09-12 09:45:52 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $3,037.50 | 2023-10-12 00:01:00 | 129508 | Wire | 3242800257JO | 2024-09-12 09:42:11 | 2024-09-12 09:43:40 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,350.00 | 2023-08-14 00:01:00 | 129178 | Wire | 3248000257JO | 2024-09-12 09:39:44 | 2024-09-12 09:41:17 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $2,887.50 | 2023-07-31 00:01:00 | 128988 | Wire | 3242200257JO | 2024-09-12 09:36:49 | 2024-09-12 09:38:48 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,900.00 | 2023-09-25 00:01:00 | 129403 | Wire | 3248700257JO | 2024-09-12 09:32:13 | 2024-09-12 09:34:36 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,800.00 | 2023-12-20 00:01:00 | 129926 | Wire | 3978800249JO | 2024-09-04 15:05:19 | 2024-09-04 15:06:30 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $5,775.00 | 2024-02-14 00:01:00 | 130232 | Wire | 3980200249JO | 2024-09-04 15:01:27 | 2024-09-04 15:03:10 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $3,750.00 | 2024-05-22 00:01:00 | 130880 | Wire | 3974000249JO | 2024-09-04 14:52:51 | 2024-09-04 14:56:04 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $2,300.00 | 2024-08-19 00:01:00 | 132487 | Wire | 2484700247JO | 2024-08-31 07:06:12 | 2024-08-31 07:08:19 | Disbursed | |
| Defense | Quandary Peak Research Inc | $16,606.81 | 2024-05-19 00:01:00 | 25192 | Wire | 3859700241JO | 2024-08-27 16:35:25 | 2024-08-27 16:36:44 | Disbursed | |
| Defense | aone creative llc | $5,339.76 | 2024-04-29 00:01:00 | 4.29.2024 | Wire | 3857900241JO | 2024-08-27 16:24:28 | 2024-08-27 16:27:09 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $2,975.00 | 2023-07-31 00:01:00 | 128980 | Wire | 2619700197JO | 2024-07-12 16:35:35 | 2024-07-12 16:38:14 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $17,241.00 | 2024-04-11 00:01:00 | 130579 | Wire | 3728000110JO | 2024-04-18 14:03:25 | 2024-04-18 14:04:59 | Disbursed | |
| Defense | Quandary Peak | $16,582.75 | 2024-03-18 00:01:00 | INV25075 | Wire | 3639300093JO | 2024-04-01 16:18:44 | 2024-04-01 16:24:30 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $8,725.00 | 2024-02-27 00:01:00 | 130382 | Wire | 4207400067JO | 2024-03-06 11:03:09 | 2024-03-06 11:05:27 | Disbursed | |
| Defense | Quandary Peak | $15,000.00 | 2024-01-24 00:01:00 | retainer | Check | 2266399530 | 2024-02-08 13:45:56 | 2024-02-08 13:53:19 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,500.00 | 2024-01-12 00:01:00 | 130006 | Wire | 2817700018JO | 2024-01-17 15:51:30 | 2024-01-17 15:56:34 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $3,325.00 | 2023-12-20 00:01:00 | 129926 | Wire | 2195100363JO | 2023-12-28 12:14:59 | 2023-12-28 12:23:07 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,050.00 | 2023-11-27 00:01:00 | 129719 | Wire | 8674700338JO | 2023-12-01 11:41:47 | 2023-12-01 11:44:41 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $3,037.50 | 2023-10-12 00:01:00 | 129507 | Wire | 4463000306JO | 2023-11-01 16:54:45 | 2023-11-01 16:58:08 | Disbursed | |
| Defense | aone creative llc | $65,285.50 | 2023-07-07 00:01:00 | Angelone ALL | Wire | 1580100283JO | 2023-10-09 09:32:59 | 2023-10-09 09:38:49 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,900.00 | 2023-09-25 00:01:00 | 129403 | Wire | 4008900269JO | 2023-09-25 19:57:40 | 2023-09-25 19:58:50 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $1,350.00 | 2023-08-14 00:01:00 | 129172 | Wire | 2386400241JO | 2023-08-28 15:32:58 | 2023-08-28 15:34:07 | Disbursed | |
| Defense | Kramer,deBoer & Keane | $2,887.50 | 2023-07-31 00:01:00 | 128980 | Wire | 1418800230JO | 2023-08-15 11:29:11 | 2023-08-15 11:30:44 | Disbursed | |
| | | $322,255.77 | | | | | | | | |
| | Kramer,deBoer & Keane | $4,741.50 | | 135017 | | | 11/18/2025 | | Pending | |
| | Kramer,deBoer & Keane | $26,838.35 | | 135335 | | | 1/22/2026 | | Pending | |
| | Kramer,deBoer & Keane | $49,501.20 | | 135456 | | | 2/12/2026 | | Pending | |
| | | $403,336.82 | | | | | | | | |
| | | $500,000.00 | | | | | | | | |
| | | $96,663.18 | | | | | | | | |

# EXHIBIT "D"

| KDK | **CURRICULUM VITAE** |
|---|---|

*Los Angeles*        *San Francisco*        *San Bernardino*        *Indian Wells*

**SANDRA CALIN**
**PARTNER**

KRAMER, DEBOER, & KEANE
27001 Agoura Rd., Suite 350
Calabasas, California 91301
(818) 657-0255

### *SPECIALTY AREAS OF PRACTICE*

Commercial and Personal Lines            Construction Defect/Construction Site Accidents
Cyber Risk and Privacy Breaches          Product Liability
Toxic Tort Litigation                    Professional Malpractice

### *PROFESSIONAL EXPERIENCE*

| | | |
|---|---|---|
| Kramer, deBoer & Keane, LLP | Los Angeles, CA | 2005 – Present |
| Tuverson & Hillyard/Tuverson, Kramer & DeBoer | Los Angeles, CA | 2002 - 2005 |
| Kramer & Associates, APC | Los Angeles, CA | 2002 |
| Koester& Gelman/Koester & Walker | Glendale, CA | 1994 - 2002 |
| Stein, Hanger, Levine & Young | Encino, CA | 1986 - 1993 |
| Yusim, Stein & Hanger | Beverly Hills, CA | 1981 - 1986 |

### *CAREER HIGHLIGHTS*

Senior Trial attorney, handling complex litigation
Numerous Superior Court jury trials
Settlement Officer Van Nuys Superior Court VAST Program
Presented seminars to insurance companies regarding handling of lawsuits, recent
developments in California law and discovery techniques

### *PROFESSIONAL ASSOCIATIONS/MEMBERSHIPS*

State Bar of California
Los Angeles County Bar Association
Associate of Southern California Defense Counsel
American Board of Trial Advocates

### *BAR ADMISSIONS*

State Bar of California (1981)
United States District Court, Central and Northern Districts of California (1981)
United States Court of Appeals, 9th Circuit
United States Supreme Court

### *EDUCATIONAL BACKGROUND*

| | | |
|---|---|---|
| Juris Doctor | Southwestern University School of Law | 1981 |
| B.S. | University of California, Santa Barbara, CA | 1977 |
| | Graduated with Honors | |

# EXHIBIT "E"

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

## INVOICE

**Date:** 06/22/2023
**Invoice #:** 2600
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 07/22/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| 05/30/2023 | JK | Conversation w/ Jt. | 0.08 | $325.00 | $27.08 |
| 05/31/2023 | JF | Conversation w/ insurance counsel. | 0.25 | $375.00 | $93.75 |
| 05/31/2023 | JK | Prepare amended counterclaim. | 0.50 | $325.00 | $162.50 |
| 05/31/2023 | JK | Email conversation w/ DDS. | 0.08 | $325.00 | $27.08 |
| 06/01/2023 | JK | Conversation w/ client via email. | 0.08 | $325.00 | $27.08 |
| 06/01/2023 | JK | Prepare amended counterclaims. | 1.75 | $325.00 | $568.75 |
| 06/01/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 06/01/2023 | JK | Conversation w/ outside counsel. | 0.08 | $325.00 | $27.08 |
| 06/06/2023 | JK | Conversation w/ Jt. | 0.12 | $325.00 | $37.92 |
| 06/07/2023 | JK | Prepare amended claims. | 0.83 | $325.00 | $270.83 |
| 06/08/2023 | JK | Conversation w/ Jt. | 0.08 | $325.00 | $27.08 |
| 06/08/2023 | JK | Meeting w/ Sandy Calin. | 1.08 | $325.00 | $352.08 |
| 06/08/2023 | JK | Prepare amended counterclaims. | 0.50 | $325.00 | $162.50 |
| 06/08/2023 | JK | Conversation w/ client. | 0.13 | $325.00 | $43.33 |
| 06/08/2023 | JK | Prepare discovery questions. | 0.42 | $325.00 | $135.42 |
| 06/09/2023 | JF | Review complaint 4th amended. | 0.85 | $375.00 | $318.75 |
| 06/09/2023 | JK | Prepare amended counterclaims. | 1.50 | $325.00 | $487.50 |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| 06/09/2023 | JK | Review amended counterclaims w/ Jt. | 0.75 | $325.00 | $243.75 |
| 06/14/2023 | JK | Review settlement agreement. | 0.25 | $325.00 | $81.25 |
| 06/21/2023 | JF | Conference call w/ all counsels. | 0.17 | $375.00 | $62.50 |
| 06/22/2023 | JF | Conversation w/ Darrick. | 0.17 | $375.00 | $62.50 |

| | | **For professional services rendered** | **9.77** | | **$3,245.83** |

| | | **Invoice Amount** | | | **$3,245.83** |

| | | **Previous Invoices Balance** | | | **$18,733.76** |
| | | **Balance Due** | | | **$21,979.59** |

| | | **Retainer Balance (as of 06/22/2023)** | | | **$0.00** |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

## INVOICE

**Date:** 06/05/2023
**Invoice #:** 2574
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 07/05/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|------|---|---------|-------|------|--------|
| 05/15/2023 | JK | Conversation w/ Jt Fox. | 0.17 | $325.00 | $54.17 |
| 05/15/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 05/16/2023 | JK | Conversaiton w/ client. Call 3rd party law firm. | 0.37 | $325.00 | $119.17 |
| 05/17/2023 | JK | Conversation w/ subpoenaed 3rd party. | 0.05 | $325.00 | $16.25 |
| 05/18/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 05/18/2023 | JK | Conversation w/ client. | 0.12 | $325.00 | $37.92 |
| 05/18/2023 | JK | Email to opposing counsel. | 0.25 | $325.00 | $81.25 |
| 05/23/2023 | JK | Prepare amended counter claims. | 2.50 | $325.00 | $812.50 |
| 05/23/2023 | JK | Follow up w/ subpoenas. Conversation w/ Jt Fox. | 0.42 | $325.00 | $135.42 |
| 05/24/2023 | JK | Prepare amended counterclaims. | 1.25 | $325.00 | $406.25 |
| 05/25/2023 | JK | Conversaiton w/ client. | 0.18 | $325.00 | $59.58 |
| 05/25/2023 | JK | Meeting w/ insurance counsel & client. | 0.50 | $325.00 | $162.50 |
| 05/25/2023 | JF | Call w/ Darrick. | 0.17 | $375.00 | $62.50 |
| 05/26/2023 | JK | Call w/ client. | 0.10 | $325.00 | $32.50 |

| | | **For professional services rendered** | **6.23** | | **$2,034.17** |
|---|---|---|---|---|---|

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| | |
|---|---:|
| **Invoice Amount** | **$2,034.17** |
| **Previous Invoices Balance** | **$16,699.59** |
| **Balance Due** | **$18,733.76** |
| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

**Law Offices of Jt Fox**

556 s. Fair Oaks Ave.

No. 444

Pasadena, CA 91105

Phone: (888) 750-5530 Fax: (888) 750-5530

[Click here to pay this invoice.](#)

## INVOICE

**Date:**05/15/2023
**Invoice #:** 2553
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 06/15/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 03/23/2023 | JK | Zoom call w/ Story. | 0.33 | $375.00 | $125.00 |
| 04/03/2023 | JK | Prepare opposition to Motion to Dismiss. | 4.42 | $325.00 | $1,435.42 |
| 04/04/2023 | JK | Prepare email to magastrate clerk. | 0.33 | $325.00 | $108.33 |
| 04/04/2023 | JK | Conversation w/ Clifford Jung. | 0.33 | $325.00 | $108.33 |
| 04/04/2023 | JK | Conversation w/ client. | 0.67 | $325.00 | $216.67 |
| 04/04/2023 | JK | Conversation w/ Clifford Jung. | 0.42 | $325.00 | $135.42 |
| 04/05/2023 | JK | Conversation w/ Clifford Jung. | 0.25 | $325.00 | $81.25 |
| 04/05/2023 | JK | Appear at IDC. | 0.75 | $325.00 | $243.75 |
| 04/05/2023 | JK | Conversation w/ client. | 0.13 | $325.00 | $43.33 |
| 04/05/2023 | JK | Conversation w/ Clifford Jung & Jt. | 0.25 | $325.00 | $81.25 |
| 04/05/2023 | JK | Meet & Confer w/ opposing counsel. | 0.25 | $325.00 | $81.25 |
| 04/05/2023 | JK | Call w/ Clifford Jung. | 0.17 | $325.00 | $54.17 |
| 04/06/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 04/06/2023 | JK | Conversation w/ client. | 0.75 | $325.00 | $243.75 |
| 04/06/2023 | JK | Meet & confer w/ opposing counsel. | 0.42 | $325.00 | $135.42 |
| 04/06/2023 | JK | Prepare email to opposing counsel. | 0.50 | $325.00 | $162.50 |
| 04/06/2023 | JK | Prepare Protective Order. | 1.67 | $325.00 | $541.67 |

# Law Offices of Jt Fox
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 04/07/2023 | JK | Prepare memo for hearing. | 0.25 | $325.00 | $81.25 |
| 04/07/2023 | JK | Prepare Protective Order. | 0.50 | $325.00 | $162.50 |
| 04/07/2023 | JK | Conversation w/ Verizon re: subpoena. | 0.42 | $325.00 | $135.42 |
| 04/07/2023 | JK | Prepare memo re: hearing on ex-parte application. | 1.17 | $325.00 | $379.17 |
| 04/07/2023 | JK | Conversation w/ Clifford Jung. | 0.08 | $325.00 | $27.08 |
| 04/17/2023 | JK | Conversation w/ Clifford Jung. | 0.17 | $325.00 | $54.17 |
| 04/17/2023 | JK | Email conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 04/17/2023 | JK | Meet & confer w/ opposing counsel. | 0.50 | $325.00 | $162.50 |
| 04/17/2023 | JK | Conversation w/ client & Clifford Jung. | 0.33 | $325.00 | $108.33 |
| 04/17/2023 | JK | Prepare protective order. | 0.25 | $325.00 | $81.25 |
| 04/17/2023 | JK | Meet & confer call w/ Clifford. | 0.17 | $325.00 | $54.17 |
| 04/18/2023 | JK | Conversation w/ client. | 0.25 | $325.00 | $81.25 |
| 04/18/2023 | JK | Conversation w/ Clifford Jung. | 0.08 | $325.00 | $27.08 |
| 04/18/2023 | JK | Finalize & file protective order. | 0.25 | $325.00 | $81.25 |
| 04/19/2023 | JK | Conversation w/ Clifford Jung. | 0.20 | $325.00 | $65.00 |
| 04/19/2023 | JK | prepare subpoena. | 0.42 | $325.00 | $135.42 |
| 04/19/2023 | JK | Conversation w/ client. | 0.13 | $325.00 | $43.33 |
| 04/19/2023 | JK | Conversation w/ Clifford Jung. | 0.33 | $325.00 | $108.33 |
| 04/19/2023 | JK | Conversation w/ client. | 0.25 | $325.00 | $81.25 |
| 04/19/2023 | JK | Email to opposing counsel. | 0.25 | $325.00 | $81.25 |
| 04/19/2023 | JK | Conversation w/ counsel for 3rd party (meta). | 0.33 | $325.00 | $108.33 |
| 04/20/2023 | JK | Conversation w/ counsel for Google LLC. | 0.40 | $325.00 | $130.00 |
| 04/21/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 04/21/2023 | JK | Review complaint. | 0.17 | $325.00 | $54.17 |
| 04/24/2023 | JK | Conversation w/ opposing counsel. | 0.20 | $325.00 | $65.00 |
| 04/24/2023 | JK | Conversation w/ client. | 0.13 | $325.00 | $43.33 |
| 05/01/2023 | JK | Appear at hearing on Motion to Dismiss. | 2.50 | $325.00 | $812.50 |
| 05/01/2023 | JK | Conversation w/ client. | 0.50 | $325.00 | $162.50 |
| 05/04/2023 | JK | Email to Charter Communications re: subpoena. | 0.17 | $325.00 | $54.17 |
| 05/09/2023 | JK | Prepare discovery. | 1.00 | $325.00 | $325.00 |
| 05/09/2023 | JK | Conversation w/ client. | 0.25 | $325.00 | $81.25 |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| Date | | Description | Hours | Rate | Amount |
|------|----|-------------|-------|------|--------|
| 05/10/2023 | JK | Organize file. | 0.08 | $325.00 | $27.08 |
| 05/11/2023 | JK | Draft email to magastrate clerk. | 0.33 | $325.00 | $108.33 |
| 05/11/2023 | JK | Email to client. | 0.08 | $325.00 | $27.08 |
| 05/11/2023 | JK | Review annotate Judge's order re: Motion to Dismiss. | 0.42 | $325.00 | $135.42 |

|  | | | | |
|---|---|---|---|---|
| **For professional services rendered** | | **24.45** | | **$7,962.92** |

| **Invoice Amount** | **$7,962.92** |
|---|---|
| **Previous Invoices Balance** | **$8,736.67** |
| **Balance Due** | **$16,699.59** |

| **Retainer Balance (as of 06/22/2023)** | **$0.00** |
|---|---|

Invoice # 2553     www.jtfoxlaw.com     Page 3 of 3

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
[Click here to pay this invoice.](#)

# INVOICE

**Date:** 04/19/2023
**Invoice #:** 2525
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 05/19/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

### Professional Services

| Date | | Details | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| 03/21/2023 | JK | Print & send Notices of Subpoenas. | 2.50 | $325.00 | $812.50 |
| 03/21/2023 | JK | Prepare opposition to Ex-Parte Application. | 2.75 | $325.00 | $893.75 |
| 03/22/2023 | JK | Prepare opposition to Ex-Parte Application. | 3.50 | $325.00 | $1,137.50 |
| 03/23/2023 | JK | Prepare opposition to ex-parte. | 1.75 | $325.00 | $568.75 |
| 03/23/2023 | JK | Prepare opposition to ex-parte. | 0.50 | $325.00 | $162.50 |
| 03/24/2023 | JK | Prepare opposition to ex-parte. | 1.50 | $325.00 | $487.50 |
| 03/27/2023 | JK | Prepare opposition to ex-parte. | 9.50 | $325.00 | $3,087.50 |
| 03/28/2023 | JK | Email Converstion w/ client. | 0.17 | $325.00 | $54.17 |
| 03/28/2023 | JK | Prepare opposition to motion to dismiss. | 4.50 | $325.00 | $1,462.50 |
| 03/29/2023 | JK | Phone call w/ client. | 0.23 | $325.00 | $75.83 |
| 03/29/2023 | JK | Prepare opposition to Motion to Dismiss. | 0.58 | $325.00 | $189.58 |
| 03/29/2023 | JK | Prepare stipulation. | 1.00 | $325.00 | $325.00 |
| 03/29/2023 | JK | Conversation w/ Clifford Cheung. | 0.33 | $325.00 | $108.33 |
| 03/29/2023 | JK | Prepare opposition to Motion to Dismiss. | 3.00 | $325.00 | $975.00 |
| 03/30/2023 | JK | Prepare opposition to Motion to Dismiss. | 4.00 | $325.00 | $1,300.00 |
| 03/31/2023 | JK | Prepare opposition to Motion to Dismiss. | 4.00 | $325.00 | $1,300.00 |
| 04/04/2023 | JF | Conference call w/ Darrick & Justin. | 0.33 | $375.00 | $125.00 |

# Law Offices of Jt Fox
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| Date | | Details | | | |
|------|----|---------|------|---------|---------|
| 04/10/2023 | JK | Appear at hearing. | 0.58 | $325.00 | $189.58 |
| 04/10/2023 | JK | Conversation w/ client. | 0.42 | $325.00 | $135.42 |
| 04/10/2023 | JK | Conversation w/ Comcast legal. | 0.17 | $325.00 | $54.17 |
| 04/10/2023 | JK | Conversation w/ client. | 0.17 | $325.00 | $54.17 |
| 04/11/2023 | JK | Conversation w/ client. | 0.25 | $325.00 | $81.25 |
| 04/11/2023 | JK | Conversation w/ AT&T legal compliance. | 0.25 | $325.00 | $81.25 |
| 04/11/2023 | JK | Conversation w/ Charter Communication legal compliance. | 0.25 | $325.00 | $81.25 |
| 04/11/2023 | JK | Prepare email to Crem for magistrate judge. | 0.25 | $325.00 | $81.25 |
| 04/11/2023 | JK | Conversation w/ Clifford Jury. | 0.25 | $325.00 | $81.25 |
| 04/13/2023 | JK | Conversation w/ Jt Fox. | 0.17 | $325.00 | $54.17 |
| 04/13/2023 | JK | Prepare & file stipulation re: Charter subpoena. | 0.42 | $325.00 | $135.42 |
| 04/13/2023 | JK | Email to DDS legal review subpoena response & objections. | 0.58 | $325.00 | $189.58 |
| 04/13/2023 | JK | Conversation w/ client. | 0.17 | $325.00 | $54.17 |
| 04/14/2023 | JK | Conversation w/ Clifford Jung. | 0.17 | $325.00 | $54.17 |
| 04/14/2023 | JK | Conference call w/ client & Clifford Jung. | 0.50 | $325.00 | $162.50 |
| 04/14/2023 | JK | Call w/ Clifford Jung. | 0.17 | $325.00 | $54.17 |
| 04/14/2023 | JK | Conversation w/ client. | 0.42 | $325.00 | $135.42 |
| 04/14/2023 | JK | Conference call w/ client & Clifford Jung. | 0.50 | $325.00 | $162.50 |

**For professional services rendered**   45.82   **$14,907.08**

**Additional Charges**

| Date | | Details | Quantity | Rate | Amount |
|------|----|---------|----------|------|--------|
| 03/21/2023 | JK | Postage<br>Notices of Subpoenas. | 1 | $17.94 | $17.94 |

**Total additional charges**   **$17.94**

**Invoice Amount**   **$14,925.02**

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| | |
|---|---|
| **Payment Received** | **$6,188.35** |
| **Remaining Balance** | **$8,736.67** |
| **Balance Due** | **$8,736.67** |

| | |
|---|---|
| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

# INVOICE

**Date:** 03/24/2023
**Invoice #:** 2495
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** Due Upon Receipt

**Payments received after 06/22/2023 are not reflected in this statement.**

### Professional Services

| Date | | Details | Hours | Rate | Amount |
|------|---|---------|-------|------|--------|
| 02/21/2023 | JK | Prepare third amended counterclaims. | 2.25 | $325.00 | $731.25 |
| 02/22/2023 | JK | Prepare 3rd party complaint. | 2.00 | $325.00 | $650.00 |
| 02/23/2023 | JK | Draft email to opposing counsel. | 0.67 | $325.00 | $216.67 |
| 02/23/2023 | JK | Prepare amended counter claims. | 1.00 | $325.00 | $325.00 |
| 02/23/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 02/24/2023 | JK | Prepare 3rd amended counterclaims. | 0.42 | $325.00 | $135.42 |
| 02/24/2023 | JK | Review emails & compile for IRDC. | 0.08 | $325.00 | $27.08 |
| 02/27/2023 | JK | Prpare amended complaint, answer. | 0.75 | $325.00 | $243.75 |
| 02/27/2023 | JK | Email to opposing counsel. | 0.25 | $325.00 | $81.25 |
| 02/27/2023 | JK | Email to court clerk. | 0.25 | $325.00 | $81.25 |
| 02/27/2023 | JK | File pleadings (counterclaims, answer, third-party complaint). | 0.33 | $325.00 | $108.33 |
| 02/28/2023 | JK | Prepare joint IDC report. | 1.25 | $325.00 | $406.25 |
| 02/28/2023 | JK | Retrieve filing receipts. | 0.08 | $325.00 | $27.08 |
| 02/28/2023 | JK | Revise & file summons. | 0.17 | $325.00 | $54.17 |
| 02/28/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 03/01/2023 | JF | Prepare & file request for dismisal re: state case. | 0.25 | $375.00 | $93.75 |
| 03/01/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |

# Law Offices of Jt Fox
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| 03/01/2023 | JK | Prepare subpoenas. | 1.25 | $325.00 | $406.25 |
| 03/01/2023 | JK | Prepare subpoenas. | 0.25 | $325.00 | $81.25 |
| 03/01/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 03/02/2023 | JK | Conversations w/ client. | 0.17 | $325.00 | $54.17 |
| 03/02/2023 | JK | Email DDS. | 0.08 | $325.00 | $27.08 |
| 03/02/2023 | JK | Send subpoenas to 3rd parties via email. | 0.17 | $325.00 | $54.17 |
| 03/03/2023 | JK | Email to opposing counsel. | 0.17 | $325.00 | $54.17 |
| 03/03/2023 | JK | Review status of subpoenas. | 0.17 | $325.00 | $54.17 |
| 03/06/2023 | JK | Conversation w/ client. | 0.50 | $325.00 | $162.50 |
| 03/06/2023 | JK | Email to opposing counsel. | 0.17 | $325.00 | $54.17 |
| 03/06/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 03/07/2023 | JK | Call w/ Jt. | 0.08 | $325.00 | $27.08 |
| 03/07/2023 | JK | Draft email. | 0.08 | $325.00 | $27.08 |
| 03/08/2023 | JK | Call DDS. | 0.08 | $325.00 | $27.08 |
| 03/08/2023 | JK | Call w/ opposing counsel. | 0.13 | $325.00 | $43.33 |
| 03/08/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 03/08/2023 | JK | Prepare subpoenas. | 0.75 | $325.00 | $243.75 |
| 03/08/2023 | JK | Email to opposing counsel. | 0.25 | $325.00 | $81.25 |
| 03/08/2023 | JK | Email to DDS legal. | 0.08 | $325.00 | $27.08 |
| 03/08/2023 | JK | Update order on DDS legal. | 0.92 | $325.00 | $297.92 |
| 03/08/2023 | JK | Prepare subpoenas. | 0.42 | $325.00 | $135.42 |
| 03/09/2023 | JK | Prepare subpoenas. | 2.00 | $325.00 | $650.00 |
| 03/09/2023 | JK | Email to opposing counsel. | 0.17 | $325.00 | $54.17 |
| 03/09/2023 | JK | Prepare interrogatories. | 0.50 | $325.00 | $162.50 |
| 03/09/2023 | JK | Conversation w/ DDS legal. | 0.17 | $325.00 | $54.17 |
| 03/10/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 03/10/2023 | JK | Conversation w/ DDS. | 0.08 | $325.00 | $27.08 |
| 03/10/2023 | JK | Meet & confer call w/ Hinkle. | 0.20 | $325.00 | $65.00 |
| 03/13/2023 | JK | Prepare subpoenas. | 0.25 | $325.00 | $81.25 |
| 03/13/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 03/13/2023 | JK | Prepare interrogatories. | 0.83 | $325.00 | $270.83 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| 03/14/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 03/14/2023 | JK | Prepare discovery questions. | 0.50 | $325.00 | $162.50 |
| 03/15/2023 | JK | Conversation w/ opposing counsel. | 0.08 | $325.00 | $27.08 |
| 03/15/2023 | JK | Organize subpoena responses. | 0.25 | $325.00 | $81.25 |
| 03/15/2023 | JK | Email to subpoenaed party. | 0.08 | $325.00 | $27.08 |
| 03/16/2023 | JK | Conversation w/ Jt re: ex-parte application. | 0.17 | $325.00 | $54.17 |
| 03/16/2023 | JK | Prepare declaration. | 3.33 | $325.00 | $1,083.33 |
| 03/17/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 03/17/2023 | JK | Prepare opposition to ex-parte. Conversation w/ Jt. | 0.50 | $325.00 | $162.50 |
| 03/17/2023 | JK | Email to DDS. | 0.08 | $325.00 | $27.08 |

|  | **For professional services rendered** | **25.50** | | **$8,300.00** |

## Additional Charges

| Date | | Details | Quantity | Rate | Amount |
|---|---|---|---|---|---|
| 03/01/2023 | JF | Court Costs LASC fee. | 1 | $7.26 | $7.26 |

| **Total additional charges** | **$7.26** |

| **Invoice Amount** | **$8,307.26** |

| **Payment Received** | **$8,307.26** |
| **Balance Due** | **$0.00** |

| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

# Law Offices of Jt Fox
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
[Click here to pay this invoice.](#)

## INVOICE

**Date:** 02/22/2023
**Invoice #:** 2464
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 03/22/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

### Professional Services

| Date | | Details | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| 01/15/2023 | JK | Prepare 1st amended answer. | 0.50 | $325.00 | $162.50 |
| 01/15/2023 | JK | Prepare 2nd amended counter claim. | 0.50 | $325.00 | $162.50 |
| 01/18/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 01/23/2023 | JK | Email Conversation. | 0.08 | $325.00 | $27.08 |
| 01/23/2023 | JK | Prepare discovery plan. | 0.50 | $325.00 | $162.50 |
| 01/23/2023 | JK | Prepare 26 joint discovery conference. | 1.08 | $325.00 | $352.08 |
| 01/24/2023 | JK | Draft email to opposing counsel. | 0.17 | $325.00 | $54.17 |
| 01/25/2023 | JK | Prepare email to opposing counsel. | 0.25 | $325.00 | $81.25 |
| 01/25/2023 | JK | Pepare FRCP 26 joint report. | 2.00 | $325.00 | $650.00 |
| 01/25/2023 | JK | Prepare joint stipulation. | 0.17 | $325.00 | $54.17 |
| 01/26/2023 | JK | Prepare FRCP 26 joint report. | 1.67 | $325.00 | $541.67 |
| 01/27/2023 | JK | Prepare FRCP 26 joint report. | 0.67 | $325.00 | $216.67 |
| 01/30/2023 | JK | Prepare FRCP 26 joint report. | 1.33 | $325.00 | $433.33 |
| 01/30/2023 | JK | Prepare local rule 37 letter. | 2.17 | $325.00 | $704.17 |
| 01/30/2023 | JK | Prepare initial disclosures. | 0.17 | $325.00 | $54.17 |
| 01/31/2023 | JF | Review Joint Report. | 0.17 | $375.00 | $62.50 |
| 01/31/2023 | JK | Prepare FRCP 26 Report. | 1.08 | $325.00 | $352.08 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530

[Click here to pay this invoice.](#)

| 01/31/2023 | JK | Prepare LR-37 meet & confer letter. | 0.75 | $325.00 | $243.75 |
| 01/31/2023 | JK | Prepare initial disclosures. | 0.75 | $325.00 | $243.75 |
| 01/31/2023 | JK | Email conversation w/ client. | 0.10 | $325.00 | $32.50 |
| 02/01/2023 | JK | Review FRCP-26 Report. | 0.33 | $325.00 | $108.33 |
| 02/01/2023 | JK | Pay Pacer fee. Email to opposing counsel. | 0.17 | $325.00 | $54.17 |
| 02/02/2023 | JK | Conversation w/ client (email). | 0.17 | $325.00 | $54.17 |
| 02/02/2023 | JK | Call Precise Subpoena. | 0.17 | $325.00 | $54.17 |
| 02/02/2023 | JK | Review client's file. | 0.17 | $325.00 | $54.17 |
| 02/02/2023 | JK | Obtain subpoena from deposition officer. | 0.33 | $325.00 | $108.33 |
| 02/02/2023 | JK | Conversation w/ client (phone). Revise joint report. | 0.58 | $325.00 | $189.58 |
| 02/03/2023 | JK | Review FRCP 26 Joint Report. | 0.17 | $325.00 | $54.17 |
| 02/03/2023 | JK | Draft meet & confer letter (email). | 0.50 | $325.00 | $162.50 |
| 02/08/2023 | JK | Prepare FRCP-26 initial disclosures. Conversation w/ client (text). | 0.58 | $325.00 | $189.58 |
| 02/08/2023 | JK | Meet & confer call w/ opposing counsel. | 1.75 | $325.00 | $568.75 |
| 02/08/2023 | JF | Meet & confer call. | 0.25 | $375.00 | $93.75 |
| 02/09/2023 | JK | Call w/ client re: subpoenas. | 0.58 | $325.00 | $189.58 |
| 02/09/2023 | JK | Draft email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 02/09/2023 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 02/09/2023 | JK | Research Judge's procedure/rules. | 0.08 | $325.00 | $27.08 |
| 02/13/2023 | JK | Conversation w/ Jt. | 0.25 | $325.00 | $81.25 |
| 02/13/2023 | JK | Appear at scheduling conference. | 2.25 | $325.00 | $731.25 |
| 02/13/2023 | JK | Conversation w/ client. | 0.08 | $325.00 | $27.08 |
| 02/13/2023 | JK | Draft LR-37 letter to opposing counsel. | 0.75 | $325.00 | $243.75 |
| 02/14/2023 | JK | Call w/ client. | 0.33 | $325.00 | $108.33 |
| 02/15/2023 | JK | Obtain & review documents from PACER. | 0.25 | $325.00 | $81.25 |
| 02/15/2023 | JK | Review stipulation & draft email to opposing counsel. | 0.25 | $325.00 | $81.25 |
| 02/15/2023 | JK | Revise & file stipulation. | 0.17 | $325.00 | $54.17 |
| 02/15/2023 | JK | Prepare proposed order. | 0.17 | $325.00 | $54.17 |
| 02/15/2023 | JK | File joint stipulation. | 0.08 | $325.00 | $27.08 |
| 02/15/2023 | JK | Calendar pre trial, trial dates. | 0.25 | $325.00 | $81.25 |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
[Click here to pay this invoice.](#)

| | | | |
|---|---|---:|---:|
| **For professional services rendered** | | 25.02 | $8,151.25 |

**Additional Charges**

| Date | | Details | Quantity | Rate | Amount |
|---|---|---|---:|---:|---:|
| 02/01/2023 | JK | Search Fees PACER fee. | 1 | $49.90 | $49.90 |

| | |
|---:|---:|
| **Total additional charges** | $49.90 |
| **Invoice Amount** | $8,201.15 |
| **Payment Received** | $8,201.15 |
| **Balance Due** | $0.00 |
| **Retainer Balance (as of 06/22/2023)** | $0.00 |

# Law Offices of Jt Fox
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

## INVOICE

**Date:** 01/19/2023
**Invoice #:** 2419
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 02/18/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| 12/14/2022 | JK | Conversation. | 0.10 | $325.00 | $32.50 |
| 12/19/2022 | JK | Email to Lawrence re: rule 26 conference. | 0.33 | $325.00 | $108.33 |
| 12/19/2022 | JF | Conversation w/ client. | 0.10 | $375.00 | $37.50 |
| 12/20/2022 | JK | Conversation re: cross complaint. | 0.42 | $325.00 | $135.42 |
| 12/20/2022 | JK | Meet & confer call w/ Hinkle. | 2.50 | $325.00 | $812.50 |
| 12/21/2022 | JK | Email to opposing counsel re: Meet & Confer. | 0.75 | $325.00 | $243.75 |
| 12/21/2022 | JK | Email to opposing counsel. | 0.08 | $325.00 | $27.08 |
| 12/21/2022 | JK | Prepare second amended cross complaint. | 2.75 | $325.00 | $893.75 |
| 12/22/2022 | JK | Email to opposing counsel re: stipulation. | 0.17 | $325.00 | $54.17 |
| 12/22/2022 | JK | Prepare 2nd amended cross complaint. | 1.50 | $325.00 | $487.50 |
| 12/23/2022 | JK | Prepare 2nd amended cross complaint. | 0.50 | $325.00 | $162.50 |
| 12/27/2022 | JK | Call w/ client re: discovery plan. | 0.33 | $325.00 | $108.33 |
| 12/29/2022 | JK | Conversation w/ client. | 1.67 | $325.00 | $541.67 |
| 12/29/2022 | JK | Prepare 2nd amended counter claims. | 1.50 | $325.00 | $487.50 |
| 12/30/2022 | JK | Prepare 2nd amended counter claim. | 3.00 | $325.00 | $975.00 |
| 01/03/2023 | JK | Prepare amended complaint. | 0.75 | $325.00 | $243.75 |
| 01/05/2023 | JF | Conversation w/ Lawrence & Stephanie. Conversation w/ Justin. Split in half. | 0.50 | $375.00 | $187.50 |

# Law Offices of Jt Fox
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 01/05/2023 | JK | Call w/ opposing counsel re: subpoenas. Draft emails to counsel. | 0.50 | $325.00 | $162.50 |
| 01/06/2023 | JK | Draft email to opposing counsel. | 0.17 | $325.00 | $54.17 |
| 01/06/2023 | JK | Prepare complaint. | 1.00 | $325.00 | $325.00 |
| 01/09/2023 | JK | Prepare 2nd amended cross complaint. | 4.08 | $325.00 | $1,327.08 |
| 01/10/2023 | JK | Prepare email (meet & confer). | 0.33 | $325.00 | $108.33 |
| 01/10/2023 | JK | Prepare 2nd amended counter complaint. | 0.33 | $325.00 | $108.33 |
| 01/10/2023 | JK | Legal research re: FRCP 26. | 0.17 | $325.00 | $54.17 |
| 01/11/2023 | JK | Prepare 2nd amended counter complaint. | 0.50 | $325.00 | $162.50 |
| 01/11/2023 | JK | Prepare stipulation. | 0.58 | $325.00 | $189.58 |
| 01/11/2023 | JF | Review & edit stip. | 0.08 | $375.00 | $31.25 |
| 01/12/2023 | JK | Research re: federal answer. Conversation w/ client. | 0.42 | $325.00 | $135.42 |
| 01/13/2023 | JK | Prepare counter claims. | 1.75 | $325.00 | $568.75 |
| 01/13/2023 | JK | Prepare amended answer. | 2.50 | $325.00 | $812.50 |
| 01/13/2023 | JK | Prepare counter claims. | 1.50 | $325.00 | $487.50 |
| 01/13/2023 | JK | Prepare amended answer. | 0.50 | $325.00 | $162.50 |
| 01/14/2023 | JK | Prepare counter claims. | 0.25 | $325.00 | $81.25 |
| 01/16/2023 | JF | Edit & file 2nd. Amend CPL & answer. | 0.33 | $375.00 | $125.00 |

| | | |
|---|---|---|
| **For professional services rendered** | **31.95** | **$10,434.58** |

| | |
|---|---|
| **Invoice Amount** | **$10,434.58** |
| **Payment Received** | **$10,434.58** |
| **Balance Due** | **$0.00** |
| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

Invoice # 2419                    www.jtfoxlaw.com                    Page 2 of 2

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

## INVOICE

**Date:** 12/13/2022
**Invoice #:** 2399
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 01/13/2023

**Payments received after 06/22/2023 are not reflected in this statement.**

### Professional Services

| Date | | Details | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 11/01/2022 | JF | Work on CC & answer. | 0.75 | $375.00 | $281.25 |
| 11/01/2022 | JK | Prepare answer | 3.33 | $150.00 | $500.00 |
| 11/01/2022 | JK | Draft cross complaint | 5.00 | $150.00 | $750.00 |
| 11/08/2022 | JF | Conversation w/ counsel. | 0.12 | $375.00 | $43.75 |
| 11/09/2022 | JF | Internal Meeting. Conversation w/ client. | 0.25 | $375.00 | $93.75 |
| 11/10/2022 | JF | Conversation w/ opposing counsel. | 0.25 | $375.00 | $93.75 |
| 11/15/2022 | JF | Work on stip. Conversation w/ client. | 0.17 | $375.00 | $62.50 |
| 11/21/2022 | JF | Conference call w/ Darrick & Justin. | 1.17 | $375.00 | $437.50 |
| 11/21/2022 | JK | Conversation and research regarding injunction compliance meet and confer letter | 2.25 | $150.00 | $337.50 |
| 11/22/2022 | JF | Meet & Confer call re: Injunction Compliance. | 1.00 | $375.00 | $375.00 |
| 11/22/2022 | JK | Prepare cross-complaint | 2.50 | $150.00 | $375.00 |
| 11/23/2022 | JF | Conversation w/ client. Prepare email. | 0.75 | $375.00 | $281.25 |
| 11/28/2022 | JK | Call regarding federal counterclaims | 0.17 | $150.00 | $25.00 |
| 11/28/2022 | JK | Prepare counterclaim | 2.25 | $150.00 | $337.50 |
| 11/29/2022 | JF | Conversation w/ Justin & Darrick re: subpoenas. | 0.25 | $375.00 | $93.75 |
| 11/29/2022 | JK | Call Re subpoenas | 0.67 | $150.00 | $100.00 |
| 11/29/2022 | JK | prepare subpoenas | 3.75 | $150.00 | $562.50 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.

No. 444

Pasadena, CA 91105

Phone: (888) 750-5530 Fax: (888) 750-5530

[Click here to pay this invoice.](#)

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 11/30/2022 | JK | Prepare subpoenas | 2.00 | $150.00 | $300.00 |
| 12/01/2022 | JK | Prepare subpoenas | 1.17 | $150.00 | $175.00 |
| 12/02/2022 | JK | Prepare subpoenas | 0.50 | $150.00 | $75.00 |
| 12/05/2022 | JF | Conversation w/ client. Prepare & file dismissal. | 1.00 | $375.00 | $375.00 |
| 12/05/2022 | JF | Meet & confer call w/ Lawrence & Stephanie. | 0.83 | $375.00 | $312.50 |
| 12/05/2022 | JK | Prepare subpoenas | 0.50 | $325.00 | $162.50 |
| 12/06/2022 | JK | Prepare subpoenas | 0.42 | $325.00 | $135.42 |
| 12/06/2022 | JK | Research re rights to company email | 0.42 | $325.00 | $135.42 |
| 12/08/2022 | JK | Prepare subpoenas | 2.25 | $325.00 | $731.25 |
| 12/12/2022 | JK | Prepare subpoenas | 6.00 | $325.00 | $1,950.00 |
| 12/12/2022 | JK | Research re right to company emails | 0.75 | $325.00 | $243.75 |
| 12/12/2022 | JF | Conversation w/ Angelone & Justin. | 0.95 | $375.00 | $356.25 |
| 12/13/2022 | JK | Prepare subpoenas | 2.17 | $325.00 | $704.17 |
| 12/13/2022 | JF | Conversation w/ Justin. Email to opposing counsel. | 0.17 | $375.00 | $62.50 |

| | | | | |
|---|---|---|---|---|
| **For professional services rendered** | | **43.73** | | **$10,468.75** |

| | |
|---|---|
| **Discount** | **$(5,000.00)** |
| **Invoice Amount** | **$5,468.75** |
| **Payment Received** | **$5,468.75** |
| **Balance Due** | **$0.00** |
| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

## INVOICE

**Date:** 11/02/2022
**Invoice #:** 2365
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 12/02/2022

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|------|--|---------|-------|------|--------|
| 09/28/2022 | JF | Prepare Motion. | 2.00 | $375.00 | $750.00 |
| 09/29/2022 | JF | Travel to & from & attend Motion. Conversation w/ client. | 3.00 | $375.00 | $1,125.00 |
| 09/30/2022 | JF | Conversation w/ client. | 0.38 | $375.00 | $143.75 |
| 10/02/2022 | JF | Emails. | 0.08 | $375.00 | $31.25 |
| 10/04/2022 | JF | Conversation w/ client. | 1.25 | $375.00 | $468.75 |
| 10/05/2022 | JK | Conversation regarding declaration showing compliance with court order | 1.17 | $150.00 | $175.00 |
| 10/05/2022 | JK | drafting compliance declaration | 4.33 | $150.00 | $650.00 |
| 10/05/2022 | JK | Conversation regarding compliance decl. | 0.17 | $150.00 | $25.00 |
| 10/05/2022 | JF | Conversations w/ client. | 0.52 | $375.00 | $193.75 |
| 10/11/2022 | JK | Preparing ex parte application for leave to file SAC | 2.67 | $150.00 | $400.00 |
| 10/11/2022 | JF | Prepare 2nd amend CPL. | 1.00 | $375.00 | $375.00 |
| 10/12/2022 | JF | Conversation w/ client. | 0.13 | $375.00 | $50.00 |
| 10/12/2022 | JK | Prepare declaration Re: compliance with injunction | 0.75 | $150.00 | $112.50 |
| 10/12/2022 | JK | Prepare declaration Re: compliance with injunction | 0.75 | $150.00 | $112.50 |
| 10/12/2022 | JF | Conference call w/ FTI, opposing counsel & client. | 0.75 | $375.00 | $281.25 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530

Click here to pay this invoice.

| Date | | Description | | | |
|---|---|---|---|---|---|
| 10/13/2022 | JK | Prepare declaration<br>Re: compliance with injunction | 1.42 | $150.00 | $212.50 |
| 10/24/2022 | JF | Conversation w/ client. Amend CPL. | 1.25 | $375.00 | $468.75 |
| 10/24/2022 | JK | Research Re remand/dismissal in federal court | 0.50 | $150.00 | $75.00 |
| 10/24/2022 | JK | Formatted and revised Second Amended Complaint | 1.00 | $150.00 | $150.00 |
| 10/25/2022 | JF | Final review ex-parte papers. | 0.33 | $375.00 | $125.00 |
| 10/25/2022 | JK | Prepare motion to dismiss | 2.75 | $150.00 | $412.50 |
| 10/25/2022 | JF | Legal research. | 0.17 | $375.00 | $62.50 |
| 10/26/2022 | JK | Prepare motion to dismiss | 4.75 | $150.00 | $712.50 |
| 10/26/2022 | JF | Appear at ex-parte hearing re: second CPL. | 0.75 | $375.00 | $281.25 |
| 10/27/2022 | JK | Prepare motion to dismiss | 2.50 | $150.00 | $375.00 |
| 10/27/2022 | JK | Research in preparation for demurrer hearing | 2.50 | $150.00 | $375.00 |
| 10/27/2022 | JF | Meet & Confer re: Motion to Dismiss. | 1.00 | $375.00 | $375.00 |
| 10/27/2022 | JF | Legal review & emails. | 0.50 | $375.00 | $187.50 |
| 11/01/2022 | JF | Work on answer & Cross Complaint. | 1.00 | $375.00 | $375.00 |

| | | | |
|---|---|---|---|
| **For professional services rendered** | **39.37** | | **$9,081.25** |

## Additional Charges

| Date | | Details | Quantity | Rate | Amount |
|---|---|---|---|---|---|
| 10/25/2022 | JF | Court Costs<br>LASC ex-parte fee. | 1 | $68.91 | $68.91 |

| | |
|---|---|
| **Total additional charges** | **$68.91** |

| | |
|---|---|
| **Invoice Amount** | **$9,150.16** |
| **Payment Received** | **$9,150.16** |
| **Balance Due** | **$0.00** |

Invoice # 2365

www.jtfoxlaw.com

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.

No. 444

Pasadena, CA 91105

Phone: (888) 750-5530 Fax: (888) 750-5530

[Click here to pay this invoice.](#)

**Retainer Balance (as of 06/22/2023)**                    **$0.00**

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
[Click here to pay this invoice.](#)

# INVOICE

**Date:** 09/30/2022
**Invoice #:** 2342
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 11/02/2022

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|------|------|---------|-------|------|--------|
| 09/23/2022 | JF | Work on opposition re: preliminary injunction. | 5.00 | $375.00 | $1,875.00 |
| 09/28/2022 | JF | Conversations w/ client & Justin. | 0.17 | $375.00 | $62.50 |
| 09/28/2022 | JF | Conversation w/ client. | 0.18 | $375.00 | $68.75 |
| 09/28/2022 | JF | Video call w/ Smith counsel. | 0.17 | $375.00 | $62.50 |
| 09/28/2022 | JF | File documents re: reply. | 0.83 | $375.00 | $312.50 |
| 09/28/2022 | JK | Conversation Re Reply | 0.50 | $150.00 | $75.00 |
| 09/28/2022 | JK | Draft declaration and review | 5.33 | $150.00 | $800.00 |
| 09/29/2022 | JK | Hearing on motion for preliminary injunction | 2.00 | $150.00 | $300.00 |
| | | **For professional services rendered** | **14.18** | | **$3,556.25** |

**Additional Charges**

| Date | | Details | Quantity | Rate | Amount |
|------|------|---------|----------|------|--------|
| 09/29/2022 | JF | Parking Court. | 1 | $24.00 | $24.00 |
| 09/29/2022 | JK | Parking Court | 1 | $7.00 | $7.00 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.

No. 444

Pasadena, CA 91105

Phone: (888) 750-5530 Fax: (888) 750-5530

Click here to pay this invoice.

| | |
|---|---:|
| **Total additional charges** | **$31.00** |
| | |
| **Invoice Amount** | **$3,587.25** |
| | |
| **Payment Received** | **$3,587.25** |
| **Balance Due** | **$0.00** |
| | |
| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
<u>Click here to pay this invoice.</u>

## INVOICE

**Date:** 09/28/2022
**Invoice #:** 2335
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 10/28/2022

**Payments received after 06/22/2023 are not reflected in this statement.**

**Professional Services**

| Date | | Details | Hours | Rate | Amount |
|------|----|---------|-------|------|--------|
| 09/19/2022 | JK | Review and draft client declaration | 2.50 | $150.00 | $375.00 |
| 09/19/2022 | JK | Review and draft client declaration | 2.75 | $150.00 | $412.50 |
| 09/20/2022 | JK | Review client declaration | 0.67 | $150.00 | $100.00 |
| 09/20/2022 | JK | Conversation w/ client | 0.17 | $150.00 | $25.00 |
| 09/20/2022 | JK | Drafting opposition to order seeking preliminary injunction | 6.25 | $150.00 | $937.50 |
| 09/21/2022 | JF | Conference call w/ Justin. | 0.50 | $375.00 | $187.50 |
| 09/21/2022 | JK | Drafted certification of interested parties | 0.25 | $150.00 | $37.50 |
| 09/21/2022 | JK | Drafting opposition to order seeking preliminary injunction | 3.00 | $150.00 | $450.00 |
| 09/21/2022 | JK | Conversation w/ client | 0.25 | $150.00 | $37.50 |
| 09/22/2022 | JK | Review and revise client declaration | 3.00 | $150.00 | $450.00 |
| 09/22/2022 | JK | Draft opposition to order seeking preliminary injunction | 4.25 | $150.00 | $637.50 |
| 09/22/2022 | JK | Conversation w/ client | 0.08 | $150.00 | $12.50 |
| 09/22/2022 | JK | Conversation w/ client | 0.08 | $150.00 | $12.50 |
| 09/22/2022 | JK | Draft opposition to order seeking preliminary injunction | 4.00 | $150.00 | $600.00 |
| 09/23/2022 | JK | Draft opposition to order seeking preliminary injunction | 4.00 | $150.00 | $600.00 |
| 09/23/2022 | JK | Finalized opposition to order seeking preliminary injunction | 3.00 | $150.00 | $450.00 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
[Click here to pay this invoice.](#)

| Date | | Description | Hours | Rate | Amount |
|------|---|-------------|-------|------|--------|
| 09/26/2022 | JF | Conversation w/ client. | 0.17 | $375.00 | $62.50 |

| | | | |
|---|---|---|---|
| **For professional services rendered** | 34.92 | | $5,387.50 |
| **Invoice Amount** | | | $5,387.50 |
| **Payment Received** | | | $5,387.50 |
| **Balance Due** | | | $0.00 |
| **Retainer Balance (as of 06/22/2023)** | | | $0.00 |

**Law Offices of Jt Fox**
556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
[Click here to pay this invoice.](#)

## INVOICE

**Date:** 09/21/2022
**Invoice #:** 2323
**Matter:** civil
**File #:**

**Bill To:**
Darrick Angeline

**Due Date:** 10/21/2022

**Payments received after 06/22/2023 are not reflected in this statement.**

### Professional Services

| Date | | Details | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 07/29/2021 | JF | Conversation w/ IP Lawyer. | 0.08 | $375.00 | $31.25 |
| 08/15/2022 | JF | Conversation w/ opposing counsel (2x). | 0.47 | $375.00 | $175.00 |
| 08/16/2022 | JF | Conversation w/ client. Conversation w/ Lawrence. | 0.67 | $375.00 | $250.00 |
| 08/17/2022 | JF | Conversation w/ opposing counsel. Emails. | 0.25 | $375.00 | $93.75 |
| 08/18/2022 | JF | Review emails. Emails. | 0.17 | $375.00 | $62.50 |
| 08/19/2022 | JF | Conversation w/ opposing counsel. | 0.50 | $375.00 | $187.50 |
| 08/19/2022 | JF | Conversation w/ client. | 0.32 | $375.00 | $118.75 |
| 08/24/2022 | JF | Conversation w/ client. | 0.03 | $375.00 | $12.50 |
| 08/25/2022 | JF | Conversation w/ client. | 0.77 | $375.00 | $287.50 |
| 08/25/2022 | JF | Conversation w/ client. | 0.70 | $375.00 | $262.50 |
| 08/26/2022 | JF | Conversation w/ Lawrence. | 0.45 | $375.00 | $168.75 |
| 08/26/2022 | JF | Conversation w/ client. | 0.28 | $375.00 | $106.25 |
| 08/29/2022 | JF | Conversation w/ client. | 0.17 | $375.00 | $62.50 |
| 09/07/2022 | JK | Drafting complaint<br>Began drafting complaint | 6.00 | $150.00 | $900.00 |
| 09/08/2022 | JK | Drafting complaint | 1.00 | $150.00 | $150.00 |
| 09/09/2022 | JK | Drafting complaint | 2.50 | $150.00 | $375.00 |
| 09/12/2022 | JK | Drafting complaint | 5.00 | $150.00 | $750.00 |

# Law Offices of Jt Fox

556 s. Fair Oaks Ave.
No. 444
Pasadena, CA 91105
Phone: (888) 750-5530 Fax: (888) 750-5530
Click here to pay this invoice.

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 09/13/2022 | JK | drafting complaint | 6.00 | $150.00 | $900.00 |
| 09/13/2022 | JF | Conversation w/ Justin. | 0.67 | $375.00 | $250.00 |
| 09/13/2022 | JF | Conversation w/ client. | 0.42 | $375.00 | $156.25 |
| 09/14/2022 | JK | Drafting complaint | 6.00 | $150.00 | $900.00 |
| 09/14/2022 | JK | Conversation<br>Spoke with client regarding details of complaint | 0.17 | $150.00 | $25.00 |
| 09/14/2022 | JK | Conversation<br>Spoke with client regarding details of complaint | 0.17 | $150.00 | $25.00 |
| 09/14/2022 | JK | Conversation<br>Spoke with client regarding details of complaint | 0.50 | $150.00 | $75.00 |
| 09/15/2022 | JF | Review & file lawsuit. Review TRO papers. | 1.00 | $375.00 | $375.00 |
| 09/16/2022 | JK | Conversation<br>call Re TRO papers | 0.08 | $150.00 | $12.50 |
| 09/16/2022 | JK | Opposition<br>drafting opposition to application for ex parte TRO and preliminary injunction | 3.50 | $150.00 | $525.00 |
| 09/16/2022 | JK | Review Declaration | 0.25 | $150.00 | $37.50 |

| | | | |
|---|---|---|---|
| **For professional services rendered** | **38.10** | | **$7,275.00** |

| | |
|---|---|
| **Invoice Amount** | **$7,275.00** |
| **Payment Received** | **$7,275.00** |
| **Balance Due** | **$0.00** |
| **Retainer Balance (as of 06/22/2023)** | **$0.00** |

# EXHIBIT "F"

# J.T. FOX, ESQ.

(888) 750-5530 Work (888) 750-5530 Fax

556 S. Fair Oaks Ave., Suite 444
Pasadena, CA 91105
www.JTFOXLAW.COM

California State Bar No. 195063
E-Mail: JT@JTFOXLAW.COM

**QUALIFICATIONS**   Experienced in all areas of California Civil and Criminal Litigation.

**Notable Jury Trials** - lead attorney in **Ruiz v. Karr**, L.A.S.C. Case No. 97V00705, **Perales v. Sarian**, L.A.S.C. Case No. 97C00201, **People v. Carter**, L.A.S.C. Case No. BA171246; **People v. Contreras**, L.A.S.C. Case No. 9WL00089; **People v. Furman**, L.A.S.C. Case No. 9MT00280; **Brimhall v. Francis**, L.A.S.C. Case No. 98C03919; **Brimhall v. Francis II**, Case No. 98C03919; **Redman-Baker v. Kubota**, L.A.M.C. Case No. 99C00594; **McMillon v. Hauser**, L.A.M.C. Case No. 97C003567; **People v. Henson**, L.A.S.C. Case No. PA040557 (Capital Case - See Daily News Front Page Dated August 14, 2003); **People v. Williams**, L.A.S.C. Case No. TA069364 (Capital Case); **People v. Gonzalez**, L.A.S.C. Case No. 4DW06418; **People v. Jones**, L.A.S.C. Case No. BA302966; **Godfrey vs. Ahola**, L.A.S.C. Case No. 21STCV11951; **Hidden Empire Holdings, LLC vs. Angelone, et al.**, U.S.D.C. Case No. 2:22-cv-06515-MWF (AGRx).

**Notable Bench Trials** - lead attorney in **Layos v. Coldwell Banker John Douglas**, L.A.S.C. Case No. BC190038; **Lillie v. Brown**, L.A.S.C. Case No. 00U11235; **S.O.S. Enterprises, Inc. v. Williams**, L.A.S.C. Case No. 00C00368; **Nicolas Correa, USA., Inc. v. Regal Machine & Engineering, Inc.**, L.A.S.C. Case No. VC033660; **Gensler v. Dubrow**, O.C.S.C. Case No. 02HL04703, **Action Packaging & Design. Inc. v. Genesis Today**, L.A.S.C. Case No. BC309394; **Brown v. Dexter**, L.A.S.C. Case No. PC047589 (See Los Angeles Times Front Page Dated August 22, 2012); **Barnes v. Larpac, LLC**, L.A.S.C. Case No. BC509297; **Xiong v. Jason Chan**, L.A.S.C. Case No. KC062905, **Gelinas v. Greco Property Management, LLC**, L.A.S.C. Case No. 14M07821; **Judah v. Sea and Sun, LLC**, L.A.S.C. Case No. BC408225, **Mercury Casualty Co. v. Malek**, L.A.S.C. Case No. LC080350; **International City Escrow vs. Bodnar**, L.A.S.C. Case No. NC053913, and **Wujiang Rongfu Textile Co. vs. Shatto Fabric, Inc.**, L.A.S.C. Case No. BC504481, **Kreshek vs. Long**, L.A.S.C Case No. LD049883 (Contempt Matter), **Weidman vs. Witz**, L.A.S.C. Case No. SD031151, **Cicchetti vs. Goodwin**, L.A.S.C., Case No. PF006131, **Bitton vs. Li,** L.A.S.C. Case No. 18STR001508, **Sedillo v. Tunell**, R.C.C Case No. PRRI1901886, **Schall v. Avalon by the Sea, Inc.**, L.A.S.C. Case No. SC127290, **Archland Enterprises, LLC vs. Tsaturyan**, L.A.S.C., Case No. 17B02228, **Visner v. Simmons**, L.A.S.C. Case No. 18CHR001271, **Verdugo vs. Fuentes**, S.B.C. Case No. CIVDS1819108, **John Blair vs. Power  Elixir, LLC**, S.C.C. Case No. 34-2018-00233740, **Chad Blair vs. Power Elixir**, S.C.C Case No. 34-2018-00233741, **Ball vs. Ngo**, L.A.S.C. Case No. BF042374, (Contempt Trial), **Stout vs. Grieve**, L.A.S.C. Case No. PC058053, **+Red Elixir, LLC vs. L.A. Distribution Co.**, L.A.S.C. Case No. BC687465, **Alejandro vs. Gunsberg**, L.A.S.C. Case No. PS019182, **Maldonado vs. Robertson**, L.A.S.C. Case No. 17AVFL00710 **Kreshek vs. Bruce Long** (Civil Contempt Trial No. 2) L.A.S.C. Case No. LD049883, **Seven Lions, Inc. v. Tiffany Wolff**, L.A.S.C. Case No. 19STCV11341, **Michael Ball vs. Nini Ngo**, L.A.S.C. Case No. BF042374, **Pacific Building Contractors, Inc. vs. Patricia Vergara**, L.A.S.C. Case No. 19AVCV00395, **Ctr. for Spiritual vs. Ohana Hardware**, L.A.S.C. Case No. 21PDSC01245, **La Pietra vs. Lopez**, L.A.S.C. Case No. 19STCV26507, **Pacific Building Contractors, Inc. vs.**

**Louisa McLean**, L.A.S.C. Case No. 22VECV01063, **Wujiang Textile vs. Shannon Rasson**, L.A.S.C. Case No. BC719938, **Jessica Hutcheson vs. Simon Caudley**, L.A.S.C., Case No. 21STFL01821, **Garcia vs. Contreras**, L.A.S.C. Case No 23PSPT00017, **Watanabe vs. Hightimes Holding Corp.**, L.A.S.C. Case No. 23STCV16481, **Asael Herrera Lopez vs. Eugene La Pietra Foundation**, L.A.S.C., Case No. 20STPB07984 and **Saloj vs. Cedar Restaurant Group, LLC**, L.A.S.C., Case No. 24STSC05011, Kelley vs. Mehetemetian, L.A.S.C., Case No. 23PDRO0119, Marriage of Barritt, L.A.S.C., Case No. 21CHFL00310

Notable Binding Arbitration Hearings: **Cintas Corp. vs. Bestway Sandwiches, Inc., Judicate West, Case No. A262809. Klugerman vs. 811 Fitness, LLC**, AAA Case No. Case Number: 01-24-0007-7882.

| | |
|---|---|
| Appellate Advocacy - | experience in arguing and drafting opening briefs, reply briefs, and petitions for rehearing en banc for the Ninth Circuit Court of Appeals and the State 2nd District. Binding Arbitrations and Private Mediations. |

Law and Motion - solid law and motion skills in both California and Federal Courts.
Transactional Work - experience in contract negotiating; business start-up; business financing; drafting contracts, commercial leases, partnership, stock purchase, buy-sell, opinion letters, and operating agreements.
Notable Labor Board Hearings - **Jason Behr v. Marv Dauer**, D.S.L.E., Case No. TAC-21; **Bowling v. True Ineractive.com, Inc.**, D.S.L.E., Case No. 17-21675BW; **Ferrari v. Casa Antigua**, D.S.L.E., Case No. 06-75298. **John Blair vs. Power Elixir, LLC**, D.S.L.E., Case No. 08-79057. **Chad Blair vs. Power Elixir, LLC**, D.S.L.E., Case No. 08-79058.
Notable Workers Compensation Appeals Board Hearing, **Klayman v. Los Angeles Clinical Trials**, Case No. 1451876.
Summary Judgment Motions/Hearings - drafted and argued numerous summary judgment and summary adjudication motions.

| | | |
|---|---|---|
| **PROFESSIONAL EXPERIENCE** | **Partner** | **9/05-present** |

LAW OFFICES OF J.T. FOX & ASSOCIATES, APC
Focus on business startup and management of business operations from business and legal perspective with emphasis in the restaurant, club and bar industry. Experience in all aspects of business, employer-employee, real property, commercial landlord-tenant, pre-litigation and litigation, premises liability defense, business start-up, corporate counseling and contract negotiations.

**Senior Associate**
LAW OFFICES OF ARTHUR H. BARENS    **4/99-8/05**
Experience in all aspects of business, employer-employee, aviation, real property, landlord-tenant, marital and personal injury pre-litigation and litigation, business start-up, criminal misdemeanor and felony defense both federal and State, transactions, simple estate planning, corporate counseling, collections and contract negotiations.

**Associate**    **5/98-4/99**
LAW OFFICES OF RONALD RICHARDS
Experience in California and Federal civil litigation with emphasis in business litigation, insurance defense and transactional work; depositions; pleadings; law and motion; and discovery. Responsibility for managing civil case files, negotiating settlements and responsibility for bringing in new clients. Experience in Federal Appellate Advocacy; draft appellate briefs,

motions and petitions. Experience in California criminal defense; trials; preliminary hearings; draft and argue pre-trial and trial motions; pleas; restitution hearings; probation violation hearings; bail reduction hearings; and plea bargain felony and misdemeanor cases.

**Certified Law Clerk**                                                    **3/97-4/98**
LAW OFFICES OF RONALD RICHARDS
Appeared in criminal and civil court on preliminary matters; drafted appellate briefs, reply briefs, oppositions, complaints, answers, motions to compel, trial briefs, motions to strike, general demurrers, modified jury instructions, meet and confer letters and correspondence; responded to and propounded discovery; negotiated settlements; managed civil case files; and prepared cases for trial.

**Law Clerk**                                                             **4/96-10/96**
LAW OFFICES OF NEAL C. TENEN
Drafted numerous complaints, answers, subpoenas, legal points and authorities and discovery documents; attended depositions and interviewed clients.

**Law Clerk**                                                             **6/95-3/96**
LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE
Drafted points and authorities and special jury instructions; interviewed and prepared cases and witnesses for trial; and participated in plea bargain negotiations.

**EDUCATION**      **University of La Verne, College of Law, La Verne, CA**
Juris-Doctor in Law, December 1997.
Graduated top 10% of class. Ranked 2nd in class.  Dean's List.

**University of Arizona, Tucson, AZ**
Bachelor of Arts in Political Science, December 1992.

**University of London, London, England**
Abroad Program, Fall 1990.

**AFTER WORK**     **Board Member**
GIL GARCETTI'S ELECTION COMMITTEE 2000
Met bi-weekly with Gil Garcetti and other committee members to discuss campaign strategies and election issues.

**Committee Member** - 2001-2002
LOS ANGELES COUNTY BAR ASSOCIATION - ETHICS COMMITTEE

**Board Member**
ERIC GARCETTI'S FINANCE COMMITTEE 2004
Met bi-monthly with Eric Garcetti and other committee members to discuss finance campaign strategies and issues.

**Board Member**
ERIC GARCETTI'S FINANCE COMMITTEE 2008
Met bi-monthly with Eric Garcetti and other committee members to discuss finance campaign strategies and issues for 2009 bid for re-election.

**Board Member**
HOLLYWOOD ARTS COUNCIL BOARD OF DIRECTORS 2010
The Hollywood Arts Council is a non-profit benefit corporation dedicated to

contributing to the quality of life in the community of Hollywood by promoting, nurturing and supporting the arts.

**CERTIFICATION
& TRAINING**

Los Angeles Police Department – Standard Training for Alcohol Retailers 2007.
Department of Alcohol Beverage Control – Lead Training Program 2007.

**COURT
CERTIFICATION**

Member State Bar of California – Since May 27, 2008 (Good Standing).
Member United States of America Ninth Circuit Court of Appeal – August 19, 1998.
Member United States District Court – Southern District of California – June 23, 1998.
Member United States District Court – Eastern District of California – June 5, 2003.
Member United States District Court – Central District of California – June 30, 1998.
Member United States District Court – Northern District of California – May 16, 2008.
Member San Manuel Tribal Court (San Manuel Bar Identification Number 22).
Member California Supreme Court.

## <u>PROOF OF SERVICE</u>

I am a resident of the State of California, County of Los Angeles; I am over the age of eighteen years and not a party to the within action; my business address is 556 S. Fair Oaks Ave., Suite 444, Pasadena, California 91105.  My email address is: justin@jtfoxlaw.com.

**On March 16, 2026, I served on the interested parties in this action the within document(s) entitled: DEFENDANTS AND COUNTERCLAIMANTS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO SECTION 17 U.S.C. SECTION 505, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND DECLARATION OF SANDY CALIN, ESQ., DECLARATION OF J.T. FOX, ESQ. AND ATTACHED EXHIBTS**

☒      BY ELECTRONIC SERVICE: via electronic e-file transmission from my business email address of jt@jtfoxlaw.com to the following email address as set forth below.

| | |
|---|---|
| FELTON T. NEWELL (State Bar #201078) felton@newellpc.com NEWELL LAW GROUP PC 1801 Century Park East, 24th Floor Los Angeles, CA 90067 Telephone: (310) 556-9663<br><br>SABRINA NARAIN (State Bar #299471) sabrina.narain@nm-llp.com NARAIN MACLEAR LLP 300 S. Grand Street, Suite 3950 Los Angeles, CA 90071 Telephone (213) 612-3773<br><br>Attorneys for Plaintiffs and Counterclaim Defendants **HIDDEN EMPIRE HOLDINGS,** | |

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**

| **LLC, HYPER ENGINE, LLC,** and **DEON TAYLOR;** and Third-Party Defendant **ROXANNE TAYLOR** | |

I declare under the laws of the United States under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2026, at Los Angeles, California.

*/s/ J.T. Fox*
J.T. Fox, Esq.

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**